<pre>
 1                    IN THE UNITED STATES DISTRICT COURT

 2            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA (HARRISBURG)

 3                                  - - -

 4

       UNITED STATES OF AMERICA,       :   CRIMINAL ACTION
 5                                      :
                        Plaintiff,     :
 6                                      :
            vs.                         :
 7                                      :
       KEITH THOMAS DOUGHERTY,          :
 8                                      :
                        Defendant.      :   NO. 19-00140-CFC-1
 9

10                                  - - -

11                                  Wilmington, Delaware
                                    Monday, April 12, 2021
12                                  1:03 o'clock, p.m.

13                                  - - -

14     BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

15                                  - - -

16     APPEARANCES:

17               JEFFREY A. FINUCANE, ESQ.
                 United States Attorney's Office
18               (Martinsburg, West Virginia)

19                    Counsel for Plaintiff

20
                 THOMAS J. YOUNG, ESQ.
21               Federal Defender of New Jersey

22
                      Standby Counsel for Defendant
23

24                                  Valerie J. Gunning
                                    Official Court Reporter
25
</pre>

```
 1                        P R O C E E D I N G S

 2

 3                 (Proceedings commenced in the courtroom

 4      beginning at 1:03 p.m.)

 5

 6                 THE COURT:  All right.  Please be seated.  All

 7      right.  Good afternoon, Mr. Finucane.

 8                 MR. FINUCANE:  Good afternoon.

 9                 THE COURT:  And, Mr. Dougherty, I wanted to have

10      this conference because the Third Circuit has still not

11      ruled and I wanted to offer you the opportunity,

12      Mr. Dougherty, to say, look, you've reconsidered.  Let's try

13      and get a trial so you can get a trial.

14                 I will reiterate, you, and I will say that

15      you're not losing your right to appeal and this way you can

16      get a trial, which is what we talked about last time.  You

17      didn't want to do that.  I don't know if having now had to

18      spend this amount of time to change your mind and maybe

19      you're ready to say let's go ahead and try it and you can

20      preserve your rights to appeal.

21                 So that's the whole purpose of this conference,

22      because I was worried that the Third Circuit wouldn't rule

23      and they have not ruled.  It's out of my hands to get them

24      to rule.

25                 Do you want to rethink it and would you prefer
```

1   to just go, let's try it?  I will contact the judges in the

2   Middle District and try to schedule a trial and that way we

3   can get you a trial and you can still preserve your rights

4   to challenge the arguments or, rather, my rulings.  And what

5   do you think about that?

6                THE DEFENDANT:  Well, Your Honor, it's not that

7   I'm against, you know, anything that you laid out and I

8   understand the course that I've decided on since October 1st

9   was my own doing in terms of delay, but I believe it's

10  important to get at least some sort of denial as to the

11  procedural arguments that I've made, that it's invalid,

12  inappropriate.

13               THE COURT:  But, see, you're going to keep

14  waiving.  I mean, and if it's just procedural, you'll at

15  least have had your trial.  I mean, if you get acquitted,

16  you're a free man.  If you get convicted, you are going to

17  have to wait anyway.

18               THE DEFENDANT:  Well, again, my concern is some

19  of the things that I thought had been left unresolved in

20  terms of if I were going to trial, I'd want some surety as

21  to, in essence, what defenses would be allowed, how somebody

22  would be permitted to proceed.  If, in fact, we're going to

23  foreclose this, that or the other, then that's all part of

24  it.  So it is a circumstance where I'm not adverse to the

25  idea of going to trial eventually, but at the same token

1   I've looked at certain other cases where people have taken

2   plea deals, ultimately prevailed, and their victory was

3   purest because they, in fact, got nothing out of it.

4                    THE COURT:  Wait.  I didn't say a plea deal.

5                    THE DEFENDANT:  I'm sorry?

6                    THE COURT:  I didn't say anything about a plea

7   deal.

8                    THE DEFENDANT:  Okay.  Well, maybe you're not

9   involved in that particular --

10                   THE COURT:  I'm not.

11                   2THE DEFENDANT:  But my point being --

12                   THE COURT:  Well, wait, because I don't know

13  anything about a plea deal.  I'm saying is if you want to go

14  to trial.

15                   THE DEFENDANT:  Okay.

16                   THE COURT:  I will once again say, you're not

17  losing your right to appeal the issues that you've raised

18  before.  What has happened, I feel, you know, when we were

19  here last time, I spent a number of minutes telling that I

20  was concerned by you insisting on having the Third Circuit

21  rule, that it may not happen for a long time.

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  And I said the spring.  And we're

24  now into spring and they have not ruled.  So you can go to

25  trial.  As a plea, you've got to work out a plea with the

1    government.  That has got nothing to do with me.

2               THE DEFENDANT:  I was conflating those things

3    improperly.  Then the point being that I'm not interested in

4    changing the path that I am on right now and I have been

5    complying with your previous order to keep you up to date as

6    to what's going on.

7               THE COURT:  Right.

8               THE DEFENDANT:  Consequently, I was kind of

9    taken aback by you setting this status conference, so I

10   thought you had something to do with collateral issues that

11   were going on, so forgive me.

12              So the point being that there are technically

13   three issues pending in the Third Circuit and they're all

14   still active and they've had certain other procedural

15   disagreements between me and the Third Circuit about

16   repaying the filing fees for what is the fifth or sixth

17   time.

18              THE COURT:  Wait, hold on.  That's in the other

19   case.  I don't think that's in the case -- so you've got two

20   Third Circuit case cases.

21              THE DEFENDANT:  Technically, three.

22              THE COURT:  Okay.  I'm aware of 20-3394, which

23   is the case that matters for me.  That's the case where

24   you're appealing my ruling and you're appealing -- well,

25   what you are really appealing is the habeas position filed

```
1    with Judge Wolfson.
2                    THE DEFENDANT:  Correct.
3                    THE COURT:  And then Judge Wolfson denied your
4    motion for reconsideration and that is on appeal and that's
5    the 20-3394.  Right?
6                    THE DEFENDANT:  Technically, that's a mandamus.
7    It's not really an appeal.
8                    THE COURT:  Okay.
9                    THE DEFENDANT:  What I did --
10                   THE COURT:  It's the same --
11                   THE DEFENDANT:  Again, no, it's not.  The
12   mandamus is to actually remove you, Judge Wolfson and Judge
13   Diamond from the three interrelated cases and a writ of
14   prohibition against reference to Reed versus Ward in FDC
15   Philadelphia as a try by jurisdictional ruling that can be
16   accorded no precedential effect according to the Supreme
17   Court super precedent, Fort Bend County Texas versus Davis.
18   You're not allowed to establish local rules in the Circuit
19   Court that limit subject matter jurisdiction.  The subject
20   matter jurisdiction at issue is 224(c)(3).
21                   Now, in addition to that, because as we had
22   discussed on September 12, 2019, the previous victory in my
23   motion in 1126-31, order issued by Judges Barry and Fisher
24   to file a brief on these issues was quashed by an improper
25   panel of former Chief Sirica, current Chief Smith, future
```

1   Chief Chagares and then they combined multiple cases, which

2   violates All v. Hall and was reversed nine to nothing by the

3   Supreme Court.  So those orders are all void and the only

4   valid order was the one order issued by Judge Fisher in

5   Barry related to my victory in my motion to proceed to file

6   a brief.

7            THE COURT:  Okay.

8            THE DEFENDANT:  So wait a minute.  Now then I

9   filed habeas directly to him as a separate matter under --

10  that's now characterized under 20-3303, but here is the

11  problem.  Local rule mistake made by the Chief Clerk of the

12  Circuit, she issued show cause to me as opposed to what 28

13  U.S.C., 1657 required, and 28 U.S.C., 2243.

14           THE COURT:  And just so I know, is that of the

15  noncompliance order?

16           THE DEFENDANT:  It --

17           THE COURT:  That was issued on April 7th?

18           THE DEFENDANT:  I'm not sure of the date.

19           THE COURT:  We've got an April 7th noncompliance

20  order was issued on a petition for rehearing in 3303.

21           THE DEFENDANT:  There is a petition for

22  rehearing, but that wasn't filed in April.

23           THE COURT:  No, not the petition.  The

24  noncompliance order was filed on April 7th.

25           THE DEFENDANT:  Oh, I don't have a copy.

1              THE COURT:  Hold on a second.  I will get you a

2       copy.  All right.  But let's just -- I think the most

3       important thing is, that is all the 3303 case, and the

4       point is that the only case that matters, the case that

5       matters for our purposes is the 3394 case.  That is where

6       your trial is stayed.  There has been no activity on that

7       case.  Right?

8              THE DEFENDANT:  Well, no.  What's holding that

9       up, they had said I would either have to file IFP petition

10      or pay the $500 filing fee.  It was not paid by me until

11      February -- actually, I mailed it on the 11th.  They

12      docketed it on the 23rd, but then nothing -- February 23rd,

13      and then from that, just this past week, they've now

14      refunded the fee.  So --

15             THE COURT:  Okay.  Hold up.  And you think this

16      is in the -- this is in the 3394 action?

17             THE DEFENDANT:  That's 3394.

18             THE COURT:  All right.  Hold on.  Let me just

19      look then.  I've got the docket.

20             THE DEFENDANT:  And let's that was the

21      noncompliance.

22             THE COURT:  Okay.  So here's what I have as far

23      as action taken with the 3394 case.

24             THE DEFENDANT:  Mm-hmm.

25             THE COURT:  And just so we're all on the same

1    page, you agree, right?  The 3394 is the action that matters

2    for our case?

3                THE DEFENDANT:  Well, no.

4                THE COURT:  No?

5                THE DEFENDANT:  The 3303 could be taking over

6    for Judge Wolfson.  The other case is basically as a

7    supervisory mandamus, or Gerstein versus Pugh, a class

8    action lawsuit, because it involves a number of cases.

9                THE COURT:  Right.  But you filed the petition

10   for a writ of mandamus from Judge Wolfson's denial of your

11   motion for reconsideration.  You filed that on November 25th

12   and that is what started the 3394 action.  You at least

13   agree with that.  Right?

14               THE DEFENDANT:  Well, again, one is a

15   procedural -- mandamus is procedural.

16               THE COURT:  Okay.

17               THE DEFENDANT:  The separate habeas is actually

18   a different way of addressing the same issue.  Just like

19   when I sent 115 to you as a notice copy and you treated it

20   as a motion, it then had to be filed directly --

21               THE COURT:  Okay.  So then if I treat them both,

22   we still have this problem, is that the way I stayed the

23   case at your request, was that it would be the earlier of

24   either Judge Wolfson changed his mind and granted your

25   motion for reconsideration, which that didn't happen.  You

1    agree with that?

2              THE DEFENDANT:  Correct.

3              THE COURT:  All right.  Or the Third Circuit

4    would rule --

5              THE DEFENDANT:  Right.

6              THE COURT:  -- on your appeal or whether it was

7    done by mandamus or otherwise, your appeal of that order.

8    Do you agree with that?

9              THE DEFENDANT:  Correct.

10             THE COURT:  Okay.  And what you are saying, I

11   think, is that, so that would include both the 3394 and the

12   3303 action.

13             THE DEFENDANT:  Correct.

14             THE COURT:  Okay.  So I'm good with that.

15             THE DEFENDANT:  Okay.

16             THE COURT:  I will just accept that.

17             THE DEFENDANT:  Okay.

18             THE COURT:  We still have the problem that there

19   has been no ruling in the 3394.

20             THE DEFENDANT:  Correct.

21             THE COURT:  Okay.  And that goes back to what

22   started me, which is so that therefore, what I'm really

23   wondering is, would you not agree to let's go forward with

24   the trial and I will take the stay off.  Have your trial and

25   you preserve all of your rights, and I will even add we'll

1    say the rights that you are asserting in the 3394 and the

2    3303 action, but that way you could at least have a trial.

3                     THE DEFENDANT:  Mm-hmm.

4                     THE COURT:  Because if you were to be acquitted,

5    all of those things wouldn't matter.  You would win.

6                     THE DEFENDANT:  Correct.

7                     THE COURT:  And if you lose, I'm telling you

8    like I told you last fall, you'll still have the right.

9    Those appeals or mandamus action will still exist.

10                    So is that something you would be interested in

11   doing?

12                    THE DEFENDANT:  No.

13                    THE COURT:  Okay.

14                    THE DEFENDANT:  Did you get a copy of my status

15   conference memoranda that I brought with me today?

16                    THE COURT:  No.  They've copied them.  This is

17   the first I'm seeing them, but I heard you filed it.

18                    THE DEFENDANT:  So maybe that would explain my

19   position a little bit better.

20                    THE COURT:  Okay.

21                    THE DEFENDANT:  Because I'm asserting if, in

22   fact, I am correct and have a constitutional right not to be

23   tried --

24                    THE COURT:  Yes?

25                    THE DEFENDANT:  -- that is what the case law

```
 1    stipulates.
 2              THE COURT:  Yes, okay.  Suppose you're right.
 3    Let's suppose that you are right.
 4              THE DEFENDANT:  Okay.
 5              THE COURT:  I'm wrong.
 6              THE DEFENDANT:  Okay.
 7              THE COURT:  That I should dismiss the charges
 8    right up front.
 9              THE DEFENDANT:  Correct.
10              THE COURT:  Okay.  So that's the case.
11              THE DEFENDANT:  Correct.
12              THE COURT:  You're going to have the right to,
13    even if we had a trial and even if you were convicted, you
14    would still have the right to get the Third Circuit to
15    overturn your conviction and to tell me that I was wrong.
16    You have that right.
17              THE DEFENDANT:  Again, maybe I'm not being very
18    clear.  I think that sounds like a moot victory.
19              THE COURT:  No, because they would vacate your
20    conviction.  It wouldn't be moot.  It happens all the time.
21    Well, I can't say it happens a lot.
22              THE DEFENDANT:  No.
23              THE COURT:  But you know the victory you get is,
24    if you were to get that victory, the victory would be, you
25    don't have a conviction.
```

1          THE DEFENDANT:  Mm-hmm.

2          THE COURT:  And that I was told I erred.  I

3  should never have had trial.  I should not have forced you

4  to go to trial.

5          THE DEFENDANT:  Right.

6          THE COURT:  That's the victory.  I mean, that's

7  the way we live.  What else would you want?

8          THE DEFENDANT:  Well, that's my point.  In other

9  words, like, that can be accomplished by a successful

10  habeas, or in the --

11          THE COURT:  It is possible, but what I'm worried

12  about is even if you were to win, you wouldn't find out

13  until a year from now.  I mean, they've done nothing on the

14  case for six months.  I mean, at some point, you know, you

15  talk about a plea.  I mean, I don't know if the government

16  has even offered you a plea.  I don't know if the government

17  would consider offering you a plea.  There's a thing called

18  a conditional plea.

19          THE DEFENDANT:  Yes.

20          THE COURT:  I just entered one for a defendant,

21  I don't know, maybe it was four weeks ago where the

22  defendant said, I've got a Fourth Amendment right against

23  unreasonable searches and seizures.  And so what happened

24  is, but the defendant pled guilty and is now appealing the

25  Fourth Amendment ruling.  If the defendant wins on the

1    appeal, the Fourth Amendment ruling, then his conviction,

2    his guilty plea, will be vacated, like it never happened,

3    and I will have been told I was wrong, I should not have

4    denied the motion to suppress.

5              THE DEFENDANT:  Okay.

6              THE COURT:  So that's what would happen.  I

7    mean, the problem with what you are proposing is, and I

8    think you've already suffered from it, is you're just going

9    to wait in jail until you even hear from the Third Circuit,

10   and then if they rule against you, then you're not going --

11   then you'll have to go to trial and it will be so far down

12   the road, you will have spent all this time in jail.

13             THE DEFENDANT:  I think I understand that, but,

14   you know, the point is that, again, the habeas that's

15   pending with regard to Judge Fisher actually seeks a finding

16   that it was a suspension called a violation, and as

17   additional relief as under the Supreme Court case cited in

18   2020, I'm seeking a Federal Grand Jury as a private citizen

19   under Pennsylvania law.

20             THE COURT:  Well, again, I don't know of any

21   precedent that would establish that, but if you have a

22   different view, if you would get to do it at that point.

23   And then --

24             THE DEFENDANT:  But my point it --

25             THE COURT:  You're going to sit in jail while

1    all this is going on.

2              THE DEFENDANT:  Yes, but my point is it's ripe

3    as it is combined to Judge Fisher right now and it would be

4    the same kind of protracted time frame to get these matters

5    reviewed if, in fact, I was to drop or withdraw, and I would

6    be starting the clock all over again for that.  And it's

7    very important that we put an end to Simbraugh versus U.S.

8    and Reese versus Warden FDC Philadelphia.  That is essential

9    if I'm ever going to get my life back.

10             THE COURT:  But you say get your life back.  I

11   mean, isn't getting your life back to get out of prison and

12   back to home?

13             THE DEFENDANT:  Well, take, for instance,

14   Carolyn Bond.  She was convinced by her attorney to plead

15   guilty to one count.  It took -- the sentence was six years

16   in prison.  She served all of her six years.  The Supreme

17   Court determined that, in fact, what she was charged with

18   was not a federal crime.

19             THE COURT:  Okay.

20             THE DEFENDANT:  And the prosecutor fought

21   expunging her record.  Now, again, if she had used the

22   technique that I've employed --

23             THE COURT:  Is that the Bridgegate case?

24             THE DEFENDANT:  No.  Carolyn Bond versus United

25   States.  It was a chemical weapons ban treaty.

1            THE COURT:  I'm not familiar with it.

2            THE DEFENDANT:  It's the same conflict of

3    sovereign that I'm arguing.  If Pennsylvania says Keith

4    Dougherty has a constitutionally protected right to defend

5    his property against crime even if committed by government

6    employees of the federal government, then you can't charge

7    me with threatening them when I provide a warning that is

8    required by state law if I'm going to use that defense.  So

9    we have a situation where I have to warn them, and if I warn

10   them, you say I've committed a federal crime, so we have a

11   conflict.  It has got to be resolved.

12           THE COURT:  I understand that and I don't even

13   disagree with it, but why not get it resolved and at the

14   same time go ahead and have your trial so that -- because

15   it's going to get resolved.  If you have a jury trial and

16   you win, to a certain extent, it was resolved.  You won.

17   Right?

18           THE DEFENDANT:  Correct.

19           THE COURT:  Okay.  So why not have that occur?

20   Let's get that in motion so that you could at least have

21   that victory and you are preserving -- as I say, you're

22   preserving, guaranteeing your right to pursue all of these

23   petitions in the Third Circuit.

24           THE DEFENDANT:  And I'm not disagreeing with

25   you, so please understand when I'm revisiting this subject

Case 1:19-cr-00140-CFC   Document 251   Filed 06/24/22   Page 17 of 45

17

1    one more time.

2              THE COURT:  All right.

3              THE DEFENDANT:  If you were to read the motion

4    for reconsideration and en banc panel review submitted to

5    the 3303 panel, now, I want you to just clarify.  The reason

6    that is being considered for rehearing is because it was

7    submitted under 2241(a), Clause 4 to a single circuit judge.

8              The Third Circuit Clerk because of local custom

9    issued a show cause order to me when, in fact, she had no

10   jurisdictional authority to do that.  Now, that is one of

11   the other embedded issues.  You refused to rule on that

12   preliminary injunction related to IOP 10.6 LAR 27.4.  It's

13   pending from the civil matter that his standing sought a

14   stay related to this case.  That was the first thing the

15   prosecution did, to seek a stay in that case.

16             So all of that is embedded in this and dragging

17   out because we don't want to adhere to what is now mandatory

18   claims processing rules and the procedures for establishing

19   them, and the pretrial habeas that has tried to be abandoned

20   in this circuit, they don't want it anymore.

21             Now, at that point, it goes -- you can submit it

22   to the Supreme Court as a forum to an individual justice, to

23   an individual circuit judge, or to the District Court, all

24   of which have been denied in the Third Circuit.

25             Now, the next step may very well be to submit it

1    to a single Supreme Court Justice, but there's no doubt that

2    the statute exists.  It's just being invalidated by what is

3    a local Court rule.

4              Now, that is being sent, being reconsidered,

5    because they submitted it -- first, they submitted show

6    cause to me and then they put it in front of a three-judge

7    panel and the panel acted completely confused, as if it were

8    a mandamus, that it was a habeas, and they said, well, if it

9    were a mandamus, we would deny it.  No further explanation.

10              THE COURT:  So here's the thing.  Let's say

11    you're right.

12              THE DEFENDANT:  Okay.

13              THE COURT:  Wouldn't you rather be out?  I mean,

14    put aside the case.  Let me just ask you some questions.

15              THE DEFENDANT:  Okay.

16              THE COURT:  What are the conditions where you

17    are?

18              THE DEFENDANT:  Pardon me?

19              THE COURT:  What are the conditions where you

20    are?

21              THE DEFENDANT:  Here are the circumstances.  I

22    don't mean to make light of this or be flippant, but while I

23    was in prison, and I think I sent you a kind of a rhetorical

24    comment about it, I was approached by a doctor, and, in

25    fact, if, in fact, my theory on this is correct, then, in

1    fact, he winds up benefiting in the same way I benefit from

2    the standpoint that his guilty plea is withdrawn.  In fact,

3    his 42-count indictment must be dismissed with prejudice.

4    And because of my contract with him, my earnings would be

5    $3.233 million while I was in prison.

6            Now, I know that to you that sounds fanciful and

7    ridiculous, but if, in fact, that is even a possibility, it

8    falls into the same category as the case that's being cited

9    relative, that's the third case that you think is not

10   involved, but I'm the applicant in his case along with being

11   the applicant and detainee in both of my cases.

12           And, in fact, in NAACP versus Button --

13           THE COURT:  All right.  I just want to talk on a

14   human level for a second.

15           THE DEFENDANT:  Okay.

16           THE COURT:  I don't want any law stuff.  All

17   right?  Just indulge me.

18           THE DEFENDANT:  Mm-hmm.

19           THE COURT:  And none of this can be used by the

20   government.

21           THE DEFENDANT:  Okay.

22           MR. FINUCANE:  Understood, Your Honor.

23           THE COURT:  All right.  Are you by yourself in

24   the cell?

25           THE DEFENDANT:  Pardon me?

```
1              THE COURT:  Are you by yourself in a cell?

2              THE DEFENDANT:  No.  There's a --

3              THE COURT:  A cellmate?

4              THE DEFENDANT:  A cellmate, yes.

5              THE COURT:  And it's not the doctor.  Right?

6    It's somebody else?

7              THE DEFENDANT:  No.  Somebody else.

8              THE COURT:  Okay.

9              THE DEFENDANT:  But, in fact --

10             THE COURT:  Did you get along with the cellmate?

11             THE DEFENDANT:  This is my point.  I have

12   provided him with habeas corpus assistance where he's

13   challenging --

14             THE COURT:  Right.  Don't get into the merits.

15   I just want to do human level for a second.

16             THE DEFENDANT:  Mm-hmm.

17             THE COURT:  Do you understand?  How are the

18   meals?

19             THE DEFENDANT:  They're, you know, poor to

20   whatever.

21             THE COURT:  Do you get to watch TV?

22             THE DEFENDANT:  Barely.

23             THE COURT:  Do you get access to a computer?

24             THE DEFENDANT:  No.

25             THE COURT:  How are you keeping up with the
```

1    events going on in the world?

2              THE DEFENDANT:  You know, fits and starts on the

3    TV that we're able to see.

4              THE COURT:  Do you have any family?

5              THE DEFENDANT:  I have family, yes.

6              THE COURT:  Are you in touch with them?

7              THE DEFENDANT:  No.

8              THE COURT:  Are you in touch with anybody on the

9    outside?

10             THE DEFENDANT:  I purposely have divested myself

11   from family communications so they're not bothered by what

12   has to be done and resolved as far as I'm concerned.

13             THE COURT:  Do you have any friends that you are

14   talking to that are outside?

15             THE DEFENDANT:  Not in the context that you are

16   using it, no.

17             THE COURT:  When you say "the context," do you

18   have any friends?

19             THE DEFENDANT:  I don't have friends.

20             THE COURT:  All right.  Do you get to read any

21   books?

22             THE DEFENDANT:  No.  Basically, all of my time

23   is spent on these --

24             THE COURT:  On the legal issues?

25             THE DEFENDANT:  Yes.  So --

1      THE COURT:  Weren't you like a track star?  You

2  were a track star?

3      THE DEFENDANT:  Pardon me?

4      THE COURT:  Weren't you a really good runner in

5  high school?

6      THE DEFENDANT:  No.  I was an all state running

7  back, national champion in javelin, all ECA in college.

8      THE COURT:  Are you getting to do any sports?

9      THE DEFENDANT:  I'm able to keep physically

10  active in the prison because that's part of my makeup.

11      THE COURT:  But what do you do?

12      THE DEFENDANT:  I run the steps.  The two-story

13  common area where, in fact, I can run figure eights up and

14  down steps, yeah.

15      THE COURT:  Do you miss the newspapers and the

16  TV?

17      THE DEFENDANT:  The newspapers, absolutely not.

18  And TV is mainly garbage, but I do, believe it or not.

19      THE COURT:  I have to agree with you

20  incidentally on that.

21      THE DEFENDANT:  Believe it or not, I actually

22  have enjoyed being in prison because of some of -- I had

23  been introduced to a what I would call crazy preacher

24  program that I found very entertaining, but -- so in terms

25  of my activities outside of prison would only be different

1    if I were to be flying my airplanes, sailing large boats and

2    playing golf, and all of that can wait for when this is

3    resolved, because I believe this is my civic responsibility,

4    because I'm in a unique position to be able to go through

5    this, and hopefully, it will benefit others that come behind

6    me.

7              THE COURT:  So what about though you have your

8    trial and you would carry on that civic duty you talked

9    about.

10              THE DEFENDANT:  Now, here's the problem, Your

11    Honor.

12              THE COURT:  Yes?

13              THE DEFENDANT:  This has been going on for

14    13 years, okay, this battle between the Third Circuit trying

15    to prevent Keith Dougherty from appearing in a courtroom and

16    representing himself, and each step along the way I've been

17    able to convince the rules committee to modify Rule 1, 6,

18    16, 55, establish the precedent for de facto takings in the

19    Third Circuit, assisted in other areas.

20              I have been directly responsible for the IRS

21    modifying W-9 in 2014 and then again in 2018, yet Judge

22    Connor has made it a personal vendetta to make sure that

23    none of my cases will even see the light of day, and we're

24    going to resolve that.

25              THE COURT:  But that won't get resolved by the

1    criminal case.

2              THE DEFENDANT:  Oh, it will.  If I'm correct, I

3    am entitled to a grand jury under Pennsylvania colonial law.

4              THE COURT:  Right.  But all I'm telling you is

5    this.  If you're right, that will not be resolved by the

6    jury.  That might get -- it might get resolved by the Third

7    Circuit.

8              THE DEFENDANT:  The point is, if I were to be

9    entitled to a habeas --

10             THE COURT:  Right.

11             THE DEFENDANT:  -- there will be no trial and

12   that's part of what --

13             THE COURT:  But what I'm telling you is, you're

14   not waiving your right to challenge that habeas even if you

15   go forward.

16             Let me ask you this.  Mr. Finucane, what's the

17   maximum penalty for the charges pending against

18   Mr. Dougherty?

19             MR. FINUCANE:  Count 1 is ten years and for each

20   subsequent, it's five years.  It's 25 years if you ran them

21   consecutively.

22             THE COURT:  Mr. Dougherty, at times you try my

23   patience.  You make arguments that I think a lot of times

24   are silly.  You've made some okay arguments and I've ruled

25   in your favor early on in the case.

1                    Do you remember that?

2                    THE DEFENDANT:  I thought you ruled twice, but

3     you backed away from one of them.

4                    THE COURT:  All right.  At least once I ruled in

5     your favor.

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  I think twice, but we can vary on

8     that.  You know, I just hate to see you spending time in

9     jail unnecessarily, you know.  And I'm not saying -- I don't

10    know what the jury is going to rule.  You know, if the jury

11    convicted you, then, yes, you would have to spend some time

12    in jail.  Of course, it could happen that by the time they

13    convict you, you would have already spent your sentence in

14    jail.

15                   THE DEFENDANT:  Well, again --

16                   THE COURT:  What are the guidelines range?  Do

17    you know?

18                   MR. FINUCANE:  I do, Your Honor.  Of course, it

19    depends on how you do the enhancement.  You know, he's

20    looking at a 36 to 48-month range.  You know, if you don't

21    take any points off for acceptance, that's a very reasonable

22    outcome.

23                   THE COURT:  Well, look.  I just wanted to have a

24    frank conversation with you.

25                   THE DEFENDANT:  Mm-hmm.

```
 1                    THE COURT:  I wanted to give you the opportunity
 2       if you wanted, I would withdraw the stay and we'd schedule
 3       the trial, but it sounds to me like you don't want it.  You
 4       want to keep waiting.
 5                    THE DEFENDANT:  Yes.  I'm waiting for at least
 6       the barest segment of due process of law to see it if exists
 7       in the Third Circuit.  I'm doubtful, but at some point if I
 8       don't push it to the limits, I don't think anybody else will
 9       either.
10                    THE COURT:  All right.  So, Mr. Finucane, where
11       does the government stand on things?
12                    MR. FINUCANE:  I would just like to briefly make
13       the record, Your Honor, if that's acceptable.
14                    THE COURT:  Yes.
15                    MR. FINUCANE:  We did appear -- in regard to a
16       lot of what happened, we did have a chance to speak before
17       and I appreciate the Court's indulgence.
18                    THE COURT:  Yes.  So there was a reference to a
19       plea or something.  I think I need to clarify.  Did the
20       government offer a plea?
21                    MR. FINUCANE:  Yes.  I would like to describe
22       that.
23                    THE COURT:  Please do.
24                    MR. FINUCANE:  Just briefly, it does matter
25       going forward.  The parties did appear on October 1st, 2020,
```

1    and every legal issue raised by Mr. Dougherty was

2    adjudicated at the pretrial conference, and there are no

3    outstanding issues before this Court.

4              I understand that there's a habeas.  There's

5    Third Circuit --

6              THE COURT:  Correct.  I know that.

7              MR. FINUCANE:  But there are no outstanding

8    issues in front of this court prior to trial except

9    possibly, you know, a procedural -- an exhibit, something

10   like that.  There are no substantive dispositive motions

11   existing before this Court prior to trial.

12             THE COURT:  And the deadlines for motions has

13   passed.

14             MR. FINUCANE:  The deadline has passed by a

15   significant period of time.

16             Specifically with regard to the plea, Your

17   Honor, the government extended a plea today to

18   Mr. Dougherty.  I provided a copy to Mr. Young.

19             Mr. Dougherty has, I would say, rejected --

20             THE COURT:  Mr. Young just held up a piece of

21   paper.

22             MR. FINUCANE:  I think that's it.

23             THE COURT:  Okay.

24             MR. FINUCANE:  I would prefer not to put the

25   terms on the record, Your Honor.

1              THE COURT:  Fine.

2              MR. FINUCANE:  But I would like to say from the

3    government's point of view, that plea is open until Friday,

4    April 23rd, and I will come back any day until Friday,

5    April 23rd.  At that point that is no longer in my control

6    and that plea is withdrawn.

7              THE COURT:  Okay.

8              MR. FINUCANE:  But for the record, Mr. Dougherty

9    has a plea.  He has a plea offer.  We have indicated a high

10   willingness to work with him.

11             THE COURT:  Does the plea include a right to

12   appeal the rulings that I've made?

13             MR. FINUCANE:  Absolutely.  It's an 11(a)(2)

14   conditional plea enumerated.  Continue the matters he has

15   currently filed and appeal all of the rulings this Court

16   made at the October 1st, 2020 pretrial conference, which is

17   everything he has reiterated today, the process, the grand

18   jury was corrupt, the prosecutor was malicious, the Court is

19   biased.  Every single one of those rights to appeal are

20   preserved in the plea.

21             THE COURT:  All right.  And is the government

22   saying we need to go forward -- to me, I'm just very

23   reluctant, because we still have Covid.  We're all wearing

24   masks.  We're not through Covid yet.  That says to me, okay.

25   Then let Mr. Dougherty have his wish and not try the case.

1    I don't know where the government is on that.

2            MR. FINUCANE:  Well, there is a point where this

3    becomes absurd, the continuance.  It has been six months.  I

4    mean, he was warned extensively that appellate issues are

5    slow and that he said that he was emphatic and emphatic

6    today.

7            THE COURT:  Okay.

8            MR. FINUCANE:  He wants the process to work

9    through the Circuit Court.  I believe the Court is working

10   fairly.  Six months past does not mean he's getting a ruling

11   in three weeks.  I've heard it can easily be six months.

12           I concur with the Court, Your Honor, this is not

13   an easy time to do a trial.  I don't know what they are

14   doing in the Middle District of Pennsylvania.  I know in our

15   jurisdiction, there's glass everywhere.  It's a complete

16   fiasco to pick a jury.

17           THE COURT:  Well, I told you before, when you

18   have a pro se defendant, picking a jury -- and, again, I

19   can't even imagine how we can do it.  But you kind of mooted

20   it because you don't want to go to trial anyway.

21           MR. FINUCANE:  Your Honor, if it provides some

22   comfort, maybe we should another status on the calendar, I

23   hate to say three months.  I don't know what's reasonable,

24   the way we're proceeding here.  At least it doesn't fall

25   through the cracks.

```
 1              THE COURT:  It's not going to fall.  I told you
 2    that I -- I told you both I would be surprised if we were
 3    going to try this thing by the spring because I didn't think
 4    the Third Circuit would rule.  It hasn't ruled.  I don't
 5    know when they will rule.
 6              And, Mr. Dougherty, by your own agreement, that
 7    if the Third Circuit denies the 3394, you're ready to go to
 8    trial?
 9              THE DEFENDANT:  Again, Your Honor, it would --
10    I'm looking at the three cases together.  You don't seem to
11    want to do that.
12              THE COURT:  The 3394 and the 3303?
13              THE DEFENDANT:  It seems to me that the one
14    that you are not mentioning would probably be more
15    dispositive on --
16              THE COURT:  What is the number of the one I'm
17    not mentioning?
18              THE DEFENDANT:  20-3047.  I told you, that's why
19    I tried to consolidate --
20              THE COURT:  Hold on, hold on, hold on.
21              THE DEFENDANT:  Again --
22              THE COURT:  I don't think I -- hold on a second.
23    You think it's a Third Circuit, 20-dash-what?
24              THE DEFENDANT:  3047.
25              THE COURT:  Okay.  Hold on a second.  Okay.
```

1    That's the Berkowitz case.

2              THE DEFENDANT:  Correct.

3              THE COURT:  Oh, okay.  Sorry.  I do know what

4    you are talking about.  Okay.

5              THE DEFENDANT:  Now, I had filed --

6              THE COURT:  And you think I should wait to try

7    you until that case --

8              THE DEFENDANT:  No.  I'm saying that's further

9    along the path and would be dispositive in terms of

10   information before the other two I believe would be in that

11   position, so it may happen sooner.  That's my point.

12             THE COURT:  Oh, so are you saying that if the

13   Third Circuit ruled against Berkowitz, then you would be

14   ready to try?

15             THE DEFENDANT:  Depending on what the decision

16   is.  Okay?  Now, again, that issue is directly related to

17   what I'm arguing and is being argued in the other cases that

18   I've put together.

19                  Now, it may be dismissed, it may be treated as a

20   supervisory mandamus.  It may be treated as a Gerstein

21   versus --

22             THE COURT:  Here's what I'm going to do.  I'm

23   going to monitor that case.

24             THE DEFENDANT:  Okay.

25             THE COURT:  So I'm going to monitor all three

1    cases.

2            THE DEFENDANT:  Okay.

3            THE COURT:  To see if the Third Circuit issues

4    some kind of ruling that addresses the merits of what you

5    say I've done wrong.

6            THE DEFENDANT:  No, it's not the merits.  That

7    is the procedural issue surrounding 2443.  Does it still

8    exist?

9            THE COURT:  It's an argument.  Fine.  My point

10   would be will monitor it, okay, because here's where I am

11   ultimately.  I'm granting your wish.

12           THE DEFENDANT:  Okay.

13           THE COURT:  To not go forward with a trial.

14           THE DEFENDANT:  Mm-hmm.

15           THE COURT:  Part, a big part of the reason why

16   I'm granting your wish is because we are living with the

17   pandemic and, you know, and so when I put those two things

18   together, I'm willing to forego a trial right now.  But we

19   will monitor the three appeals, and I will, if appropriate,

20   bring the government and Mr. Dougherty in for a status

21   conference, and I would like to see a more speedy resolution

22   of all of your arguments.

23           THE DEFENDANT:  So would I.

24           THE COURT:  In this case.  Okay.  Anything else,

25   Mr. Dougherty?

1          THE DEFENDANT:  Other than the October 1st

2    hearing, there were still what I thought was the unresolved

3    motion of the government to prevent me from being able to --

4          THE COURT:  That's true.  The government has got

5    motions pending, motions in limine, that's right, about how

6    we will conduct the trial, but there is no point in

7    addressing that.  I mean, that we're going to do when we get

8    to a pretrial conference and that's the appropriate time to

9    resolve that issue.

10          THE DEFENDANT:  And, again, and I'm just

11   operating off of what Judge Wolfson said.

12          THE COURT:  Yes.

13          THE DEFENDANT:  That the only way for me to have

14   proceeded in this case, was a 3145 motion that you never put

15   on the docket.  You never put your denial on the docket

16   because you said that was entitled to an expedited appeal to

17   the Third Circuit, so even if I were going to trial, I would

18   be on the outside because he thought it was just a bail

19   issue.

20          THE COURT:  Well, we had -- I recall we did have

21   a bail hearing and that I did rule.  That's my recollection.

22          THE DEFENDANT:  But under Manreek, (phonetic)

23   until it's actually entered into the docket, I can't appeal

24   it.  And I send you a number of letters asking for a 12(d)

25   opinion asking why my bail was denied.

1            THE COURT:  I thought I gave oral rulings, which

2    I'm permitted to do, and I believe even Mr. Young, he

3    participated in the argument on your behalf is my

4    recollection and I made an oral ruling.

5            And just hold on one second.  Hold on.  Give me

6    a second.

7            THE DEFENDANT:  It was part of the October 1st

8    hearing.

9            THE COURT:  All right.  Hold up.  Hold on one

10   second.

11           So I'm not familiar with what Judge Wolfson

12   said.  I'm just waiting to get a piece of paper just to see,

13   but I mean, I made a ruling.  Anybody can appeal that

14   ruling.

15           THE DEFENDANT:  Okay.  So to clarify, in

16   Menrique, he was convicted or actually pled guilty and the

17   judge entered the guilty plea into an order and made the

18   proper recommendation.  Then at the restitution hearing, the

19   judge issued the restitution but did not tell him of his

20   right to appeal, and consequently, the issue was presented

21   to the Supreme Court in a little four-and-a-half page

22   opinion.  I put it in my documentation.  Apparently, you

23   have not had a chance to review it.

24           THE COURT:  No.  Mr. Dougherty, in fairness to

25   me, I do try to read your stuff.  It's hard to read.

1          THE DEFENDANT:  I understand.

2          THE COURT:  I know you took offense about

3    something I said about I wasn't able to understand it all.

4    I can only do what I can do.  I mean, I'm only capable --

5          THE DEFENDANT:  I'm not challenging that, Your

6    Honor.  I'm just saying that in that case, it specified that

7    the defendant, criminal defendant, was not allowed to appeal

8    the order until it had been specifically entered in the

9    docket with the detail, and if he had filed a notice of

10   appeal before, even though it had been ruled on from the

11   bench, that the new rule was that you link up the oral order

12   with the premature appeal notice when the judge finally

13   issued the written order into the docket and that became the

14   date that the notice of appeal was filed.

15          Since your orders do not mention either 18

16   U.S.C., 3148, 18 U.S.C. 3145, or Rule 12.3, I can't do what

17   Judge Wolfson told me to do, which was appeal it to the

18   Third Circuit as a bail issue, and, in fact, that is what

19   I've sent.  I sent a couple of letters to you like, are you

20   going to file a Rule 12(d) opinion and order or, you know,

21   whatever.

22          Now, the order that I received was everything

23   has been denied and it doesn't mention anything whereas

24   Judge Wolfson believed the only way to proceed was through a

25   Bail Reform Act motion and then subsequent appeal to the

```
1    Third Circuit as referenced in Reese versus Warden FDC
2    Philadelphia.
3              THE COURT:  All right.  Hold on a second.  Just
4    give me a second.  I found the transcript.  I'm just going
5    to read it for a second.  All right?
6              (Pause.)
7              THE COURT:  All right.  So I am looking at
8    the transcript and it's consistent with my recollection
9    of the hearing, which is that you did talk about Judge
10   Wolfson and you did talk about his ruling and you did talk
11   about that you wanted to have his ruling reviewed by the
12   Third Circuit.
13             THE DEFENDANT:  Correct.
14             THE COURT:  And including his ruling that your
15   petition should be dismissed because it should have been
16   considered as a reconsideration of bail.
17             THE DEFENDANT:  No.
18             THE COURT:  Or a bail motion, I should say.
19             THE DEFENDANT:  He never even looked at my
20   petition.  He said the only way to proceed was in a bail
21   reform motion in this court.
22             THE COURT:  Right.
23             THE DEFENDANT:  Which had been filed as part of
24   the omnibus motion.
25             THE COURT:  Okay.
```

1            THE DEFENDANT:  On May 23rd, 2020.

2            THE COURT:  Yes.

3            THE DEFENDANT:  I brought up to you when you

4    said --

5            THE COURT:  Well, I'm going to get to what else

6    you brought up, because then we dispensed with that, stayed

7    it, and then you questioned, you brought up whether

8    Magistrate Burke had the authority to detain you.

9            THE DEFENDANT:  Correct.  Correct.

10           THE COURT:  And I said he did.

11           THE DEFENDANT:  Right.

12           THE COURT:  And then we walked through many of

13   the motions that you had, the omnibus filing.

14           THE DEFENDANT:  Got to 3145.  You said that is a

15   bail motion.

16           THE COURT:  Right.  Hold on.  Okay.  Then you

17   raised DI, or you raised 3145 to his attention at page 83 of

18   the transcript.

19           THE DEFENDANT:  Mm-hmm.

20           THE COURT:  You brought again the whole issue of

21   the authority of Magistrate Judge Burke.

22           THE DEFENDANT:  Mm-hmm.

23           THE COURT:  And then I made an explicit finding

24   on page 93 that Magistrate Judge Burke's decision did not

25   violate Section 3148.

1              THE COURT:  Okay.

2              THE DEFENDANT:  Okay.

3              THE COURT:  All right.  So I upheld Judge

4     Burke's, or at least I rejected the argument that you made,

5     that he lacked the authority to do that.

6              I seem to recall -- Mr. Finucane, do you

7     remember another occasion?

8              MR. FINUCANE:  Outside of the October 1st

9     hearing?

10             THE COURT:  Yes, where it came up?

11             MR. FINUCANE:  Your Honor, that's a difficult

12    question because there were so many issues all at once.

13             THE COURT:  I realize that.  It's okay if you

14    don't.

15             MR. FINUCANE:  I do think to the extent we sort

16    of object to going fishing for everything he brings up at

17    the last second.  You know, the motions are not organized.

18             THE COURT:  No.

19             MR. FINUCANE:  There was never a 3145.  It's a

20    stray line and an omnibus motion never addressed the issues.

21    The Court graciously handles them in court as he brings them

22    up orally.  I don't know what he wants us to do.

23             THE COURT:  Well, I will just say this.  I mean,

24    if there's an application for a release under pretrial,

25    if you want to make it, you can file it.  You can just file

1    it.

2                    THE DEFENDANT:  Your Honor, I wanted to say if

3    you go back to the omnibus motion, one of the cover pages

4    actually states a separate 18 U.S.C. 3145 that was filed on

5    March 23rd.

6                    Now, that's not the issue.  I understand

7    that you denied both the argument that Magistrate Burke

8    had been -- it had been a Gerstein versus Pugh violation to

9    delay from the arrest to the first hearing to February 20th.

10   That was I then said because in the meantime, the

11   prosecution had converted the arrest warrant into an

12   indictment.

13                   A magistrate doesn't have tribunal jurisdiction

14   to dismiss the indictment.  Consequently, that is what made

15   a furtherance of the Gerstein versus Pugh violation that

16   I've submitted in the documents today.  It talks about how

17   that is in violation of the process.

18                   I had also submitted at the time an Eighth

19   Circuit case that in that instance where, you know, your

20   pretrial release has been determined to be revoked because

21   of a crime being committed, then, in fact, you're allowed to

22   face your accuser and had the right of confrontation.  So

23   that is what the whole development of that argument was.

24                   Now, setting that aside for a second, a 3145

25   then would be an appeal to you directly that his

1    determination that I was a risk or threat or some other

2    factor was never put in a written order denying that motion

3    and I can't appeal it until it's entered into the docket,

4    specifically citing 18 U.S.C. 3148, 18 U.S.C. 3145.  And you

5    also had made a ruling that you were denying my Rule 12.3

6    and I indicated that you lacked discretion to do so, and

7    later then you brought up and you said, Mr. Finucane,

8    wouldn't he be allowed to raise that argument from the

9    witness chair if he would be willing to do that?  So I

10   assumed that would be written in an order denied in the same

11   fashion.

12                THE COURT:  All right.  Hold up.  I think I

13   figured this out and now I know what it was I was thinking

14   of.  We had a hearing in July.  It was July 30th at 1:30,

15   and there was an application made by Mr. Young --

16                THE DEFENDANT:  Correct.

17                THE COURT:  -- to get you released.

18                THE DEFENDANT:  Correct.

19                THE COURT:  And I denied the application.

20                THE DEFENDANT:  Correct.

21                THE COURT:  So that was your ruling.

22                THE DEFENDANT:  But, Your Honor --

23                THE COURT:  See, that's independent of all other

24   rulings, that it was put before me to decide whether you

25   should be released, and we went through and I remember it.

1        That's why I said I knew I remembered it.  I just got

2        confused because of the nature of this case, and I was

3        looking in the October hearing transcript for a description,

4        because I remember distinctly us discussing the standards

5        that apply to the statute and hearing from you and hearing

6        from Mr. Young and hearing from Mr. Finucane, and I made a

7        decision on the record weighing the factors and the statute

8        that your application to be released pending trial was

9        denied.  You did have a ruling.  It was not in October, it

10       was in July.

11               THE DEFENDANT:  Okay.  But, Your Honor,

12       respectfully, standby counsel is not representing me.

13               THE COURT:  No, no.  It doesn't matter.  I'm

14       just saying he initiated the application, but then I gave it

15       due consideration.

16               THE DEFENDANT:  Yes, but I'm trying to get to a

17       different point.

18               THE COURT:  Well, I know you are.  Just so it's

19       clear, regardless of whatever Judge Wolfson said, I made a

20       ruling on pretrial detention.

21               THE DEFENDANT:  My point is you, for whatever

22       reason, held off ruling on my 3145 until October 1st and,

23       you know, I understand --

24               THE COURT:  You keep saying your.  Because of

25       the way you do motions, there was no ruling on your "3145,"

1    and I think that's what Mr. Finucane is trying to say is,

2    this is one of the problems when you file these omnibus

3    motions that are hundreds of pages long.

4                THE DEFENDANT:  Well, that one is not.

5                THE COURT:  Well, even if they're dozens of

6    pages long, which that one is, it was not framed for me that

7    it was another attempt to reconsider detention.

8                THE DEFENDANT:  No.

9                THE COURT:  The important thing is that there

10   was an order put in effect in July of last year in which I

11   explicitly addressed the issue of pretrial detention.

12               THE DEFENDANT:  And, again, Your Honor, it would

13   be my recollection of the order, and I have attached it to

14   the one issue is that is going to be -- that was submitted

15   in the Third Circuit was you were speaking directly to

16   Thomas Young and me not responding directly to that show

17   cause because I said there was this omnibus motion pending

18   since March 23rd.

19               So then at that point, again, included in this,

20   I put together -- I just put a cover page for the United

21   States versus Lance Green, Case Number 319 CR 233, Middle

22   District of Pennsylvania, and it is kind of a similar

23   circumstance where originally, he was deemed to have been

24   responsible for the Speedy Trial Act violation because of

25   certain motions or whatever and dismissal of counsel.  And

1    back in -- and then Covid 19 came in, and in this particular

2    case they had to do an accounting of what Speedy Trial Act

3    time actually was properly exempted, and not only was it a

4    violation of the Speedy Trial Act once, but twice, and the

5    second time he was given bail on his own recognizance

6    because of the Speedy Trial Act violation.  So in the case

7    of the omnibus motion, according to the rules, it would be

8    given 30 days unless a hearing was held.  So from March

9    23rd, 2020 until October 1st is well beyond the time.

10           So, in fact, when we first met on September 12,

11   2019, I asked to discuss that issue, and you told me we

12   weren't going to be discussing that at that time because we

13   were just going to be discussing Keith Dougherty

14   representing himself.

15           THE COURT:  Okay.

16           THE DEFENDANT:  And so now here we have a

17   situation where I made a written heading, 3145 on March

18   23rd, 2020, and, in fact, it was not ruled on in April, May,

19   June, July or August, September, and on October 1st you

20   indicated that the argument of the Gerstein versus Pugh

21   violation was being dismissed, and then you made the overall

22   comment that it was preserved for appeal just like you're

23   talking about now when, in fact, there is no way to appeal a

24   Gerstein versus Pugh violation.

25           Once the case is over, it becomes moot, and I

1   submitted that to you in terms of the recent Supreme Court

2   precedent discussing it, that it had to be resolved, and

3   once again it's being addressed in this status conference

4   memoranda with relevant citations, and that is why the

5   habeas is pending, to, in fact, try to resolve this.

6                MR. FINUCANE:  Your Honor --

7                THE COURT:  Why don't we do this.  I will take

8   it under advisement.  I will look at your filing, see if it

9   changes my mind.

10                THE DEFENDANT:  Again, I'm simply looking for an

11   order that says Keith Dougherty's Rule 12.3 motion is denied

12   or enforcement motion is denied.  Keith Dougherty's 18

13   U.S.C. 3148 is denied.  Keith Dougherty's 3148, 3145 is

14   denied, and then I can comply with Manreek.  That becomes an

15   order entered on the criminal docket that becomes appealable

16   of which then I could file an appeal to the Third Circuit

17   according to what Judge Wolfson had recommended.

18                MR. FINUCANE:  And, Your Honor, the government

19   objects.  This process, it occurred.  We object to

20   additional unnecessary orders being entered on the docket.

21                THE DEFENDANT:  Again, if you can produce an

22   order for me that shows me those things.

23                MR. FINUCANE:  These matters have been

24   litigated.  He's just going in circles.

25                THE COURT:  Yes, I hear you.  I will take it

1    under advisement.

2              MR. FINUCANE:  Thank you.

3              THE COURT:  And I will look at it.

4              Where we are right now is that the defendant

5    remains detained pending trial.  I've offered an opportunity

6    if he wanted to deny his -- change his mind and go to trial

7    as expeditious as he can.  He wants to wait out the Third

8    Circuit ruling.  I'm going to do that, as I say, in large

9    part because of the Covid situation in any event, but also

10   because he has asked.

11             And I think we've had a full colloquy here

12   today.  I've made it clear to the defendant the

13   repercussions that come with having a stay.  And we'll

14   monitor the three cases that are pending before the Court of

15   Appeals, and if the occasion, it seems to me, arises, it is

16   in the interests of justice to bring you back in here for a

17   status conference to schedule a trial, I'm going to do that

18   as soon as I can.

19             All right?  All right.  Anything else,

20   Mr. Finucane?

21             MR. FINUCANE:  No.  Thank you, Your Honor.

22             THE COURT:  All right.  Thank you, then.  We're

23   adjourned:

24             (Hearing concluded at 2:14 p.m.)

25                      -  -  -