```
 1              IN THE UNITED STATES DISTRICT COURT

 2            MIDDLE DISTRICT OF PENNSYLVANIA (Harrisburg)

 3                            - - -

 4
     UNITED STATES OF AMERICA,     :   CRIMINAL ACTION
 5                                 :
                    Plaintiff,     :
 6                                 :
         vs.                       :
 7                                 :
     KEITH THOMAS DOUGHERTY,       :
 8                                 :
                    Defendant.     :   NO. 19-140-CFC-1
 9
                              - - -
10
                                Wilmington, Delaware
11                              Tuesday, June 8, 2021
                                10:21 o'clock, a.m.
12
                              - - -
13
     BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.
14
                              - - -
15
     APPEARANCES:
16

17         DAVID J. PERRI, ESQ. (Via telephone)
           Special Assistant United States Attorney
18         (Martinsburg, West Virginia)

19
                 Counsel for Plaintiff
20

21         THOMAS A. YOUNG, ESQ.
           Federal Defender of New Jersey
22

23              Standby Counsel for Defendant

24                                      Valerie J. Gunning
                                        Official Court Reporter
25
```

```
 1                    P R O C E E D I N G S
 2
 3              (Proceedings commenced in the courtroom,
 4     beginning at 10:21 a.m.)
 5
 6              THE COURT:  All right.  Good morning.  Please be
 7     seated.
 8              Mr. Perri, you're on the phone?
 9              MR. PERRI:  Yes, Your Honor.
10              THE COURT:  You can hear us obviously, then.
11     Right?
12              MR. PERRI:  Yes.  Thank you, Judge.
13              THE COURT:  Mr. Dougherty is here and his
14     standby counsel, Mr. Young, is sitting in the public arena.
15     And for the benefit of you all following the CDC guidance, I
16     do not require vaccinated persons to wear a mask in the
17     courtroom, and you are free though, if anybody who wants to
18     wear a mask is allowed to wear a mask and feel comfortable
19     doing so.  All right?  But I will not be wearing one.
20              So, Mr. Dougherty, when we last left off, I want
21     to make clear, like, I had, during the course of the last
22     hearing, I had indicated to you that I, initially I said I
23     was going to issue an order immediately after that would
24     just confirm essentially that I would deny what we agreed to
25     construe as a motion for reconsideration of Judge Burke's,
```

```
 1    Magistrate Judge Burke's prior detention order, but then, as
 2    you may recall, what happened during the hearing was, we
 3    started talking about, well, wait.  Maybe given what had
 4    been disclosed about the Government's position on a plea, it
 5    would be appropriate for me to consider again whether you
 6    should be released pending the October 4th trial, and to
 7    that end I asked you to confer with the Probation Office to
 8    determine if there was individuals that could serve as
 9    third-party custodians for you.
10             THE DEFENDANT:  Mm-hmm.
11             THE COURT:  So far, so good.  You agree?
12             THE DEFENDANT:  Yes.
13             THE COURT:  What happened as a result of that, I
14    didn't put on the docket a formal order that memorialized in
15    writing a denial of a motion for reconsideration of the bail
16    because we were going to have this hearing.
17             I've been provided a report by the pretrial
18    services office, which I understand have a copy of, that you
19    were only given it today, although so was I.  I was only
20    given it today.
21             THE DEFENDANT:  Correct.
22             THE COURT:  I did confer with the pretrial
23    services officer both last week and yesterday just to find
24    out what, if any, progress had been made, and my
25    understanding from my conversations with the pretrial
```

1   officer is consistent with what is set forth in the report
2   that you have before you, which is that the two folks that
3   you had identified as potential third-party custodians just
4   didn't respond.
5              THE DEFENDANT:  Mm-hmm.
6              THE COURT:  So I mean, that puts me in a
7   position where I really would have to just continue your
8   detention.  I don't see in the absence of that, and, in
9   fact, frankly, the people didn't respond suggests that, or I
10  should say would confirm the finding that you could pose a
11  risk of flight and danger to the community.  I'm willing to
12  listen to you though.
13             THE DEFENDANT:  Again, I, when I came here the
14  last time, I hadn't made any of the initial, you know,
15  contacts or explanations, and I, myself, have never been
16  able to reach Michael Brady at his phone.  I communicated to
17  him through his brother by e-mail and he had indicated that
18  all of that would be okay.  So I'm assuming there's some
19  sort of problem.  I didn't realize it automatically goes to
20  this workday help line.  He is a, an officer for a
21  securities firm and apparently he's using that as his
22  business line and personal phone.  I didn't realize that.
23             But the other circumstance was something that
24  Dr. Berkowitz had requested that I do if, in fact, I were
25  released to stay in the area nearby.  So I'm assuming none

1     of that has been confirmed through her or --
2              THE COURT:  No.  In fact, she has not returned
3     the contact made by the pretrial office.  You understand
4     what position that puts me in.  Right?
5              THE DEFENDANT:  Yes.  I don't blame you at all.
6     I was not prepared when I came in the hearing last time and
7     I'm just finding out now that you have had the same
8     difficulties communicating with them as I do.
9              My phone, voice phone system at FTC won't work
10    at all.  I never use it.  I only communicate minimally
11    through e-mails, and so I can, in fact, contact both Michael
12    Berkowitz, who is the attorney's son that acts as the
13    intermediary between me and Dr. Berkowitz, to get
14    confirmation, and also with David Brady relative to Michael
15    Brady to see if, you know, David Brady had offered that I
16    could come to Massachusetts and, in fact, he said obviously,
17    Maryland was always open.
18             I said, well, there's just certain things
19    pending where I might need to stay locally for a limited
20    period of time, but this, you know, I don't know.  I don't
21    even know that that phone number, it was put into my system
22    by Dr. Berkowitz, that this is the contact information
23    before he was sent for a psych evaluation, so I never had
24    spoken directly to him myself.
25             So the only thing I can say is --

1          THE COURT: Has he been moved from FDC? Is he
2     getting a psych evaluation somewhere else?
3          THE DEFENDANT: He had already been and
4     returned. They kept us separated. They have him on Six
5     North, so we can't communicate, and I communicate with him
6     through his two sons that are attorneys and they pass
7     messages back and forth.
8          So I'm just saying that maybe I can advise them
9     that, you know, this is what has happened. You're going to
10    have to make some arrangements or get some contact and we
11    can go from there. But that's all I can say.
12         THE COURT: All right. So here's what I was
13    going to propose, and, Mr. Perri, you've heard all of this,
14    I hope?
15         MR. PERRI: Yes, I have, Your Honor.
16         THE COURT: So hold on one second. So at the
17    last hearing, my recollection, Mr. Dougherty, is that you
18    were looking for me to put on the docket a written order
19    denying what you believed was a motion for reconsideration
20    of the bail order of Judge Burke in DI 108. Right?
21         THE DEFENDANT: Correct.
22         THE COURT: Okay. And so what I propose, and
23    that's what I said prior to us coming up with, well, maybe,
24    you know, you could find a third-party custodian and you
25    could be released pending trial. In light of the

1   third-party custodian issues not working out, what I would
2   propose then is I go ahead then and put on the docket an
3   order which formally denies DI 108 to the extent at this
4   time was to be construed as a motion for reconsideration of
5   Magistrate Judge Burke's detention order.
6            THE DEFENDANT:  Mm-hmm.
7            THE COURT:  And then you can take a writ or you
8   can do whatever you want to do to the Third Circuit from
9   that and that in the event you are able to make contact with
10  a third-party custodian candidate and you want to renew your
11  motion or bring a new motion to be released pending trial, I
12  would consider it if you filed that and we would have to
13  then track down whether there's a third party custodian.
14           THE DEFENDANT:  Yes, understandable.
15           THE COURT:  What does that sound like that to
16  you?
17           THE DEFENDANT:  It sounds like the only
18  solution.
19           THE COURT:  Okay.
20           THE DEFENDANT:  In other words, I'm operating
21  off of what they have recommended and that there's not a
22  problem, it's just a communication problem.
23           THE COURT:  Okay.  We'll see.  You understand
24  why it may be.  Look, I can't promise you.  The pretrial
25  services officer finally may make contact with these people

1   and not be satisfied, or not make me satisfied that that
2   would be sufficient or that they would be an appropriate
3   custodian.
4              THE DEFENDANT:  Okay.
5              THE COURT:  But we don't even get there until we
6   have contact with them.
7              THE DEFENDANT:  Yes, I can understand that.
8              THE COURT:  So we're still on for the
9   October 4th trial.  I will put on the docket a formal order.
10             As I say, I will repeat what I did at the last
11  hearing.  I think I have already orally addressed and ruled
12  and primarily in response to an application by Mr. Young for
13  your release and for reconsideration of Magistrate Judge
14  Burke's order, but -- and I did not construe, I will also
15  say or add, from the writing, since my recollection is it
16  was a single reference in the dozens of pages through 3145,
17  I didn't construe it as a motion for reconsideration.  But
18  based on the hearing we had last time, I will do so.  I'm
19  going to deny it.  I do think Judge Burke complied with the
20  law, and I don't agree with any legal arguments you've made
21  that would call that into question, and you can take that
22  issue up to the Third Circuit.
23             THE DEFENDANT:  And just for clarification
24  purposes, you indicated it was a single reference.  If you
25  go to page 11 of ECF 108, you find it's listed as a new

1  matter.
2              THE COURT:  Let me find it.  Hold on a second.
3  Found it.
4              THE DEFENDANT:  Okay.  So this, 11, 12, 13 and
5  14 is the entirety of the motion for reconsideration of the
6  bail rejection based on United States versus Timmons, citing
7  the Eighth Circuit case, February 24th, and also indicating
8  because of the subsequent super indictment, obviously,
9  Magistrate Burke's hands were tied.  He had no --
10             THE COURT:  No.  I get it.  And my point is just
11 that I only see 3145.  As far as I can tell, it's only
12 listed once and it's on page 11.
13             THE DEFENDANT:  Yes.  The first portion has a
14 conclusion.
15             THE COURT:  Right.
16             THE DEFENDANT:  And then this picks up as a new
17 motion.
18             THE COURT:  Right.  But you have to understand,
19 this is part of the problem, which I've been telling you
20 from the start.  If you have an attorney, they can help you
21 frame your argument and put motions together in a way that I
22 would understand.  I did not understand it to be a motion
23 for reconsideration.  So based on the way you explained at
24 the last hearing, I'm willing to do that.
25             THE COURT:  Okay.

1          **THE DEFENDANT:  But on the merits, I'm going to**
2  **deny it.  I read Timmons.  I don't agree with your reading**
3  **of Timmons.  I don't believe that Judge Burke did anything**
4  **inappropriate.  I think he was required to give weight to**
5  **the indictment and to treat it as a probable cause finding**
6  **that you had committed the offense and, of course, that**
7  **would be a violation of the conditions of your release.  So**
8  **I'm upholding his ruling once again, but I will do it in a**
9  **written order just then so that you have that vehicle, if**
10 **you will, to seek review by the Third Circuit.**
11         **THE DEFENDANT:  And if you would be so kind to**
12 **make reference to the Gerstein versus Pugh issue.**
13         **THE COURT:  Well, what I will do, yes.  I've**
14 **read Gerstein against Pugh and I've read --**
15         **THE DEFENDANT:  And that --**
16         **THE COURT:  I'm happy to make a reference to it.**
17 **I just don't agree that they're applicable or that they**
18 **would warrant your release.**
19         **THE DEFENDANT:  Yes.  So just so we're clear,**
20 **I'm saying under Gerstein versus Pugh, it's perfectly okay**
21 **to re-indictment me, but just like in the United States**
22 **versus Lance Green case, you have to have a new appearance**
23 **within 72 hours.**
24         **THE COURT:  Okay.**
25         **THE DEFENDANT:  It took 23 days.**

```
 1                THE COURT:  Right.  And you can make that
 2   argument, and --
 3                THE DEFENDANT:  And that's what the issue was.
 4   So it's not like I'm complaining about Magistrate Judge
 5   Burke.  But then if, in fact, Gerstein is adhered to, it
 6   would be an arrest warrant, perfectly fine.  He could have
 7   heard it.  He could not hear the indictment.  So therefore
 8   it had to be heard directly by you and, in fact, it wasn't.
 9                THE COURT:  Okay.
10                THE DEFENDANT:  That was my point.  And so then
11   when that happened, the only solution is to dismiss the
12   indictment and now we have to have a probable cause hearing.
13   We're both -- whoever the victims were --  that was another
14   point I want to bring up, if I could.
15                When I was hear the last time, you made inquiry
16   to the new prosecutor as how the victims felt about the
17   potential of me being released for time served, and he had
18   indicated they wanted some, you know, supervised release
19   circumstances into consideration, and I just was curious if
20   there was a way that I could find who the victims are as
21   part of the recommendation to Thomas Young, who I will need
22   to subpoena when we actually do get to trial, because
23   according to Jeffrey Finucane, on April 12th, when I
24   indicated by virtue of the changes he had made to the
25   stipulation, there was no victim in Count 1, he said
```

1  they didn't need one, so that's where I'm a little bit
2  confused.
3          THE COURT:  Well, first of all, I can't speak to
4  the government.
5          THE DEFENDANT:  Okay.
6          THE COURT:  But I will speak to what I meant
7  when I used the word victims at the hearing, and the victims
8  I had in mind were the two federal judges, that the
9  indictment alleges that you threatened them, and, of course,
10 you have not been found guilty.
11         THE DEFENDANT:  Right.
12         THE COURT:  They're only allegations.  They're
13 in an indictment.  But that's the terminology we use, is
14 victims, both before and after a trial takes place, and so
15 those are the individuals to whom I was referring.
16         THE DEFENDANT:  Okay, good, because, again, in
17 his stipulation, Judge Conner was removed as a victim, and
18 that was my --
19         THE COURT:  I can't speak to that.  It was so
20 unusual, and there are many unusual things about this case,
21 but what was particularly unusual about the last hearing is
22 that I was shown a plea agreement, and as I explained to
23 you, and you made reference to a plea agreement as if it was
24 something that would come across my desk and it doesn't and
25 I'm usually not privy to it at all.

1           And the only reason that I, what we say
2     sua sponte, in other words, by my own initiative raised
3     should I reconsider your bail status was because the
4     government had, it turns out, offered you a plea deal, and
5     had you accepted it, you would have already been out on the
6     street.  And so I thought that warranted me to reconsider
7     whether it was appropriate to have you detained.  And I am
8     frustrated that we can't go to trial earlier than
9     October 4th in Harrisburg.
10              THE DEFENDANT:  And I fully understand that.
11              THE COURT:  All right.
12              THE DEFENDANT:  I'm just saying that was some of
13    the confusion that was brought up.  Just as he refers in the
14    stipulation that you can file a motion for habeas corpus,
15    which, in fact, would require an amendment to the
16    Constitution, so I don't know if any of it was clear.
17              THE COURT:  Okay.  Well, I can't speak to what
18    was in the prosecutor's head just like I can't speak to
19    what's in your head.
20              All right.  Mr. Perri, is there anything else we
21    need to address today?
22              MR. PERRI:  No, Your Honor.  I think you have
23    laid it out pretty clearly.  I don't have any questions.
24              I understand the idea behind wanting a firm
25    release plan and identifiable person who is willing and able

```
 1    to take in the defendant.  I understand the idea behind
 2    that.  Probation, of course, does not want to place him in a
 3    situation where he's sort of set up for failure.  They want
 4    to make sure that he has got a place to live and that he'll
 5    be situated in terms of his living circumstances and not
 6    just out and about and therefore unlikely to appear for any
 7    hearing.
 8              THE COURT:  All right.
 9              MR. PERRI:  I get that.  I understand that
10    concern.  I'm pretty sure that that is what they are trying
11    to work through.  Maybe he'll be able to come up with
12    something like that and we'll be able to revisit the issue.
13    I don't know.  But I totally understand the Court's approach
14    to the situation.  Thank you.
15              THE COURT:  All right.  Thank you.  And I think,
16    Mr. Dougherty, there's no dispute.  I think, as you said, I
17    don't really have a choice.
18              THE DEFENDANT:  Yes.
19              THE COURT:  Your words and I agree.
20              THE DEFENDANT:  Mm-hmm.
21              THE COURT:  Mr. Young, do you have anything to
22    offer?
23              MR. YOUNG:  No, Judge.  Thanks for asking.
24              THE COURT:  Mr. Dougherty, anything else?
25              THE DEFENDANT:  No.
```

1            THE COURT:  We're on for October 4th.  We're
2    going to keep all the deadlines we discussed at the last
3    hearing.
4            Just for the record, we left on your table
5    today, Mr. Dougherty, for you to take with you at your
6    request a copy of the transcript of the Judge Burke hearing.
7            THE DEFENDANT:  Mm-hmm.
8            THE COURT:  Right.  And I think that's it.  We
9    are adjourned.  Thank you very much.
10           (Hearing concluded at 10:37 a.m.)
11                        -  -  -