```
                IN THE UNITED STATES DISTRICT COURT

              MIDDLE DISTRICT OF PENNSYLVANIA (Harrisburg)

                              - - -


   UNITED STATES OF AMERICA,       :   CRIMINAL ACTION
                                   :
                 Plaintiff,        :
                                   :
       vs.                         :
                                   :
   KEITH THOMAS DOUGHERTY,         :
                                   :
                 Defendant.        :   NO. 19-140-CFC-1

                              - - -

                                    Wilmington, Delaware
                                    Thursday, September 30, 2021
                                    9:30 o'clock, a.m.
                                    ***Telephone conference

                              - - -

   BEFORE:   HONORABLE COLM F. CONNOLLY, Chief Judge

                              - - -

   APPEARANCES:


           DAVID J. PERRI, ESQ. and
           SHAWN W. ADKINS, ESQ.,
           Special Assistant United States Attorneys
           (Martinsburg, West Virginia)


               Counsel for Plaintiff


           THOMAS A. YOUNG, ESQ.
           Federal Defender of New Jersey


               Standby Counsel for Defendant

                                        Valerie J. Gunning
                                        Official Court Reporter
```

```
 1                   P R O C E E D I N G S
 2
 3              (The following telephone conference was held in
 4    chambers, beginning at 9:30 a.m.)
 5
 6              THE COURT:  All right.  Counsel, are you on the
 7    line?
 8              MR. PERRI:  Yes.  Hi, Judge.  How are you?
 9              THE COURT:  I'm very well.  Okay.  Just for the
10    record, I've got a court reporter.  Let's identify who is on
11    the phone.
12              MR. PERRI:  David Perri from the Northern
13    District of West Virginia along with Shawn Adkins, also from
14    the Northern District of West Virginia.
15              THE COURT:  Thank you.
16              MR. YOUNG:  And, Judge, Tom Young, standby
17    counsel for Mr. Dougherty.
18              THE COURT:  Thank you, Mr. Young.  Obviously,
19    I'm in an unfortunate situation that I can't obviously bring
20    in the defendant, and I know he does not appreciate
21    Mr. Young serving as standby counsel, but I didn't think I
22    had a choice, so I wanted you on the line.  I wanted to be
23    on the record.
24              Mr. Perri, I'm in receipt of the government's
25    motion for a continuance, and I think it might be just
```

because you're trying to be polite or deferential, but the thing with the motion, what's not clear to me is just are you saying that the case agent cannot be there on Monday and cannot prepare?  In other words, you say in the motion that the case agent's wife has tested positive and is suffering significant symptoms.  You say that his grandmother, who lives with him, has tested positive for Covid.  You say that he is suffering symptoms, but he doesn't know for sure right now whether he tested positive and you say he "is feeling okay."

And then you say that -- well, and this is where I need some clarity.  It appears that you're saying that because of his situation that I've just described, he is prohibited by his agency from going in and obtaining the necessary materials, although I guess maybe somebody could provide those materials for him.

I just don't know and I need to understand this because, look, the truth is, even if it's, let's say, cumbersome for the government, we have just been putting this trial off and off and off, and even though the defendant appears to have asked for a continuance in DI 189, I think we need to move forward for trial unless the government is saying, look, there's something about the current circumstances that just make that very, very prejudicial to the government and the government is really

1  not prepared to move forward.

2            So can you basically explain to me or clarify
3  for me some of the things that are set forth in your motion?
4            MR. PERRI:  Sure, Judge.  What I tried to do is
5  lay out all of the information that is available to us at
6  this time and unfortunately, we don't have a definitive test
7  result.  We hope to have that today, but being aware of how
8  close the trial date is and how many -- I mean, obviously,
9  this is a recusal case both for the U.S. Attorney's Office
10 and for the Public Defender and for the Court, so there are
11 a lot of moving parts that have to be scheduled and lined up
12 and transported and traveled and all of that.
13           So we didn't -- we felt like we really couldn't
14 wait any longer to pull the trigger and ask for this
15 continuance.  All of the indications are that the case agent
16 is going to be positive for Covid based on everything that,
17 all the information that we have.  He is a crucial witness.
18 I don't think we can present this case without him and so we
19 need to ask for a continuance.
20           THE COURT:  But can I stop you on that?  Are you
21 saying that he can't appear even if he tested negative for
22 Covid or are you saying that you're asking for the
23 continuance now because you think there's a good chance that
24 he's going to test positive, because there are two different
25 things, and, for instance, if you're of the mind that if he

```
 1    tested negative, he can go forward, well, then, shouldn't we
 2    wait until he tests, until the test results come back?  On
 3    the other hand, if you're saying, no, the quarantine rules
 4    that are in place, his agency rules that are in place, for
 5    all I know, the Pennsylvania regulations that are in place,
 6    although I don't believe there are any, would say that under
 7    the situation that he's in right now, he can't testify even
 8    if he had a negative test.  I am trying to get clarity on
 9    what the government's position is on that.
10              MR. PERRI:  That's hard for me to answer, Judge,
11    because I don't know what the Court's, I don't know what the
12    Middle District of Pennsylvania's policy is for somebody who
13    has been in contact with someone else who has been, who has
14    tested positive and whether or not they would be allowed in
15    the courthouse.  I don't know the answer to that.
16              What I am saying, I mean, if he tests negative,
17    that's okay with me.  If he tests negative, I'm willing to
18    put -- to take him into court with us, but if he tests
19    positive, then definitely, we can't do this.
20              THE COURT:  So I agree if he tests positive,
21    trial is off.  I agree with that.  What I'm struggling with
22    is what if he tests negative.
23              MR. PERRI:  I understand, Judge.
24              THE COURT:  And I just wanted to get what's the
25    government's position on if he tests negative.
```

```
 1                MR. PERRI:  If he tests -- Shawn, do you have
 2   any insight on this, Shawn?
 3                MR. ADKINS:  It's my understanding, and this is
 4   just in short discussion with our Criminal Chief yesterday,
 5   although, Judge, I have not seen this with my own eyes, but
 6   that if he tests negative, since he has been vaccinated,
 7   there is no quarantine period.
 8                THE COURT:  Okay.  So then it seems to me --
 9                MR. ADKINS:  That's my understanding though.
10                THE COURT:  Okay.  Mr. Young, do you have any
11   insights?
12                MR. YOUNG:  Only, Judge, that perhaps the U.S.
13   Attorney could contact the Middle District.  I know we have
14   a standing order in New Jersey which is pretty explicit
15   about what conditions have to be met before you can enter
16   the courthouse and I would imagine that the Middle District
17   might have something like that, and if they don't, then they
18   don't.  Then I think then the negative test would be
19   sufficient.  But they also might have a standing order.
20                THE COURT:  All right.
21                MR. YOUNG:  One last thing, Judge.  I don't know
22   if this would be any help, but I told the government earlier
23   before you came on the line that I am scheduled to speak to
24   Mr. Dougherty on a separate matter just about his clothing
25   size at 11:00 o' clock this morning.  I don't know if that
```

```
 1   is going to be useful in allowing him to have some access to
 2   this conversation or not.  I just want to let the Court be
 3   aware of that.
 4            THE COURT:  In other words, oh, you're talking
 5   to him by telephone, so you could conference him in?
 6            MR. YOUNG:  In theory, I could.  I wondered.  A
 7   couple things I don't know for sure.  One, although I have
 8   set it up with Dauphin County prison to have him call me, I
 9   can't guarantee that he will call me, so he may not call
10   even though he has been asked to do so.  But if he does call
11   me, at least I could segue in at least one party.  I don't
12   know if I can get two people on the line.  I'm not really
13   sure how to do that.  He's calling my phone that I have and
14   I can merge one other person on.
15            THE COURT:  Well, let's do this.  You're
16   speaking with him at 11:00.
17            MR. YOUNG:  Right.
18            THE COURT:  Okay.  You're going to probably want
19   to talk with him.  Well, assuming he even calls you and he
20   wants to talk with you, but you would probably have some
21   kind of conversation with him before.
22            I think then what we ought to do is, I will
23   arrange to have a court reporter here at 11:00 o'clock.  You
24   should arrange to, if you get a call from Mr. Dougherty, to
25   try to call in as soon as you can after you speak with him
```

```
 1    privately.  I will at that point have our chambers try to
 2    patch in Mr. Perri.
 3              MR. YOUNG:  Okay.
 4              THE COURT:  Mr. Perri, here's what I would like
 5    to know is, if we are unable to patch you in, do you object
 6    to me speaking with Mr. Dougherty ex parte to review this
 7    very issue about Covid and just to get his position on the
 8    record?
 9              MR. PERRI:  I don't.
10              THE COURT:  Okay.  So we will try in the first
11    instance to patch you in, but if that fails, for
12    technological reasons, if it fails, I would go ahead and
13    just confer with Mr. Dougherty essentially the way I'm
14    conferring with you, just to get what his position would be.
15    In the meantime between now and 11:00 I would like the U.S.
16    Attorney's Office to reach out to its counterpart U.S.
17    Attorney's Office in the Middle District and to try to
18    ascertain what it understands the policies are, and I'm
19    going to reach out.  And if it finds out, if it could just
20    forward by an e-mail whatever the information is, if there's
21    a policy or something, to our deputy clerk just to let us
22    know.  I'm going to try to reach out to the Chief Judge of
23    the Middle District to do the same, and hopefully, we can
24    get that information in our hands before 11:00 o'clock.
25              I will tell you, Mr. Young, my recollection is I
```

1  read that standing order many months ago and I just don't
2  think it addresses this particular situation.  I will also
3  add, I had my clerk research the CDC guidelines.  The way I
4  understand the current CDC guidelines are that if you have
5  been vaccinated, even if you are exposed to somebody, you
6  don't have to quarantine.  However, that guideline, there's
7  a lot in flux here and so I just don't know if that is still
8  the current thinking of the CDC.
9              So if anybody wants to look into that, that
10 would also help, because, look, unfortunately, I mean,
11 it's not something frankly I'm really looking forward to,
12 going to stay in a hotel under these circumstances, going
13 to have to do it all under a mask, but I also just think,
14 you know, this case has just been going on and on and on
15 and we really ought to do everything we can to bring it to
16 a resolution.
17             MR. YOUNG:  Understood.  As long -- Judge, one
18 last thing.  We only will have 15 minutes on that phone
19 call.  That's the maximum.  They cut off.  They can maybe
20 renew it.  But my understanding is that the phone calls,
21 they take place in 15-minute increments in the Dauphin
22 County Prison.
23             THE COURT:  All right.  We'll be ready right at
24 11:00 o'clock.  As soon as you are, just call our chambers
25 and we will be looking out for the call.

```
 1                    MR. YOUNG:  Got it.  And I've got the chambers
 2      line that was sent.  I will just call that number.
 3                    THE COURT:  Thank you much very.  Okay.
 4      Anything else?
 5                    MR. PERRI:  No.  Thank you.
 6                    THE COURT:  Thank you, all.  Take care.
 7      Bye-bye.
 8                    (Telephone conference concluded at 9:50 a.m.)
 9                             -  -  -
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```