1              IN THE UNITED STATES DISTRICT COURT

2         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA (HARRISBURG)

3                           - - -

4

     UNITED STATES OF AMERICA,      :   CRIMINAL ACTION
5                                    :
                    Plaintiff,       :
6                                    :
          vs.                        :
7                                    :
     KEITH THOMAS DOUGHERTY,         :
8                                    :
                    Defendant.       :   NO. 19-00140-CFC-1
9

10                           - - -

11                               Wilmington, Delaware
                                 Tuesday, May 25, 2021
12                               10:10 o'clock, a.m.

13                           - - -

14   BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

15                           - - -

16   APPEARANCES:

17

                 DAVID J. PERRI, ESQ.,
18               Special Assistant United States Attorney
                 (Martinsburg, West Virginia)
19
                      Counsel for Plaintiff
20

21

                 KEITH THOMAS DOUGHERTY,
22               Pro Se

23

24

                              Valerie J. Gunning
25                            Official Court Reporter

```
 1                     P R O C E E D I N G S

 2

 3              (Proceedings commenced in the courtroom

 4     beginning at 10:10 a.m.)

 5

 6              THE COURT:  All right.  Good morning.  Please be

 7     seated.

 8              So I follow the CDC guidance and therefore in my

 9     courtroom if you have been vaccinated, you do not have to

10     wear a mask.  You are welcome to wear a mask if you want to

11     wear a mask.  The exception to the rule is when we have a

12     witness testify, we do require that witness to remove their

13     mask, but everybody is free to wear a mask if they want, but

14     if you have been vaccinated, you don't have to.

15              MR. PERRI:  Thank you, Your Honor.

16              THE COURT:  All right.  So let's have

17     introductions.

18              MR. PERRI:  Good morning, Your Honor.  I'm David

19     Perri from the Northern District of West Virginia.

20              THE COURT:  Okay.

21              MR. PERRI:  Taking over for Jeff Finucane.

22              THE COURT:  Okay.  Thank you, Mr. Perri.  Are

23     you an AUSA in West Virginia then?

24              MR. PERRI:  I am, Your Honor.

25              THE COURT:  Okay.
```

1          MR. PERRI:  And I believe the paperwork has all

2    gone through for me to be appointed as the SAUSA on this

3    case.

4          THE COURT:  All right.  Thank you very much.

5    Mr. Dougherty, good morning.

6          THE DEFENDANT:  Good morning.

7          THE COURT:  Have you had an ability to be

8    vaccinated yet?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.

11          THE DEFENDANT:  But I rejected that.  I was

12    tested positive for Covid twice, so I don't need it.

13          THE COURT:  Okay.  All right.  All right.  Well,

14    so here's where things stand.  I've spoken with the Chief

15    Judge of the Middle District and they are so overwhelmed

16    with trials, you know, because of Covid, the earliest he can

17    get me is October.

18          Now, I have more discretion here.  I will offer

19    to you again, and my guess is you don't want to wait or you

20    would rather wait, but if Mr. Dougherty wanted to be tried

21    by a jury here in Delaware, then I will get you a trial as

22    soon as I possibly can, which would be before -- it would

23    definitely be before October 4th.

24          What's your wish?

25          THE DEFENDANT:  It hasn't changed, Your Honor.

1          THE COURT:  Okay.  Then by that, you want to

2    demand your right, and you have a right to be tried by a

3    jury in the Middle District of Pennsylvania and that is the

4    right you wish to pursue.  Correct?

5          THE DEFENDANT:  Correct.

6          THE COURT:  All right.  In light of that, let's

7    set trial then for Monday, October 4th.  That puts us -- it

8    is far out, but I can't do it, and under the Speedy Trial

9    Act, there's an interest of justice waiver.  And there has

10   to be an interest of justice because you have to have a jury

11   trial and we are unable to do that under the conditions of

12   the pandemic.  All right.

13          Yes, Mr. Dougherty?

14          THE DEFENDANT:  Yes.  Again, I just want to

15   clarify that I'm not waiving the fact that we had violated

16   the Speedy Trial Act before Covid 19 ever came into play.

17          THE COURT:  That's true.

18          THE DEFENDANT:  So that is --

19          THE COURT:  And you absolutely have preserved

20   that right.

21          THE DEFENDANT:  Correct.

22          THE COURT:  I told you regardless even of the

23   Third Circuit ruling, I told you you preserved that right to

24   make that argument.  Yes, sir.

25          THE DEFENDANT:  And I don't know if I've made

1    myself clear in the update, but the Third Circuit has agreed

2    to waive all the defects that you had given to me in that

3    order when I was last here and they have circulated that for

4    en banc panel review, 20-3303.

5            THE COURT:  Right.  So I believe you filed a

6    paper that may have made a reference to the appeal, the case

7    number you just recited, which was 30 --

8            THE DEFENDANT:  When I was here on April 12th --

9            THE COURT:  No.  Just let me finish.  I will

10   come back to April 12th.

11           THE DEFENDANT:  Okay.

12           THE COURT:  The case you just made reference to?

13           THE DEFENDANT:  20-3303.

14           THE COURT:  Okay.  Right.

15           THE DEFENDANT:  You had given me the order of

16   deficiency when I was here on April 12th.  I then filed the

17   motion to suspend all rules and I think you've misread what

18   they've done.  They actually combined the mandamus and that

19   and circulated it to the en banc Court for review as to

20   whether they're going to grant review or not.

21           THE COURT:  Okay.  Just to be clear, all of that

22   I will just accept as true, okay, but as far as I'm

23   concerned, it has no bearing on scheduling of trial.  I had

24   at your request stayed the trial.

25           THE DEFENDANT:  Correct.

1          THE COURT:  Pending Judge Wolfson's decision on

2    your motion for reconsideration.

3          THE DEFENDANT:  Correct.

4          THE COURT:  And any appeal from that.  And you

5    pursued a writ of mandamus from Judge Wolfson's denial,

6    which was docketed as 20-4177.

7          THE DEFENDANT:  Mm-hmm.

8          THE COURT:  And the Court of Appeals for the

9    Third Circuit docketed that writ of mandamus at Appeal No.

10   20-3394.

11         THE DEFENDANT:  Correct.

12         THE COURT:  And that was the appeal.  I know you

13   have other appeals, but it was the 3394 that was the case

14   for which a stay had been issued by me at your request.

15         THE DEFENDANT:  Okay.

16         THE COURT:  All right.  And now that the Third

17   Circuit has dismissed that appeal --

18         THE DEFENDANT:  Okay.

19         THE COURT:  -- then under the terms of my order,

20   we now should set trial.

21         THE DEFENDANT:  Okay.

22         THE COURT:  Are you asking for another

23   continuance?

24         THE DEFENDANT:  Yes, Your Honor, because I think

25   you've misstated what's going on and I just want to clarify

1    if I can.

2              The Third Circuit had taken my direct -- in

3    other words, you keep characterizing the mandamus as an

4    appeal.  It is not.  The mandamus was to forcibly remove

5    Judge Wolfson from the habeas and remove you from the

6    criminal proceeding and issue a writ of prohibition against

7    any reference to Reese versus ward in Philadelphia FDC.

8              THE COURT:  All right.  Let me ask you this:

9    You titled it a writ of mandamus.

10             THE DEFENDANT:  Correct.

11             THE COURT:  The Third Circuit treated it as an

12   appeal.  But let me just ask you this:  Did you file an

13   appeal from Judge Wolfson's denial of the reconsideration

14   motion?

15             THE DEFENDANT:  I filed a subsequent habeas

16   directly to Judge Fisher under 20-3303 and you gave me a

17   copy of the order for that case when I was here on

18   April 12th, so I thought you understood what was going on.

19             THE COURT:  Well, hold on.  I understood that

20   you had opened up another case.

21             THE DEFENDANT:  That's not an appeal though.

22             THE COURT:  October.

23             THE DEFENDANT:  That is an actual original

24   habeas.

25             THE COURT:  That's fine.

1              THE DEFENDANT:  I just want to clarify.  I

2    received an order from Judge Wolfson yesterday.  It's very

3    helpful to what we're going through, the disagreements.  He

4    wrote an order to say that it is his judicial determination

5    that Keith Dougherty has no jurisdiction in the Eastern

6    District of Pennsylvania.

7              Now, you disagree, Judge, as I do, that because

8    FDC Philadelphia is in the Eastern District, it had to be

9    brought in the Eastern District.  That's a correct reading

10   as far as I'm concerned.  That is now being considered by

11   Justice Thomas in the Supreme Court.  That is all related to

12   the fact that the habeas has never been given what it is

13   required, which is mere due process.

14             THE COURT:  Okay.

15             THE DEFENDANT:  Nothing more, nothing less.

16             THE COURT:  All right.  Did you ever appeal

17   Judge Wolfson's denial --

18             THE DEFENDANT:  No, because it was not an actual

19   adjudication.  He rejected jurisdiction.  So I filed a

20   subsequent habeas directly to the clerk under 28 U.S.C., 28

21   U.S.C., 2241(a) Clause 4, that gives the petitioner the

22   right to say I'm sending this to a single circuit judge.

23   They made the mistake of treating it as though it were an

24   appeal and assigned it to a three-judge panel.

25             I clarified in my recent filing to them.  They

```
 1    agreed with that.  They've suspended all rules.  And where
 2    you think they dismissed the mandamus, they have not.
 3    They've never sent me such a notice.
 4              THE COURT:  Oh, well, wait.  I will give you
 5    that though.
 6              THE DEFENDANT:  But listen to what I'm saying,
 7    Your Honor.  I'm simply trying to tell you, they combined
 8    the mandamus with the issue that they're considering.  Now,
 9    it may still be the same result.  It may be we've decided
10    not to grant en banc review, but they've combined it
11    together and circulated it to the en banc Court.
12              THE COURT:  And when you say combined it, you're
13    telling me that they've combined the 3394?
14              THE DEFENDANT:  Yes.
15              THE COURT:  Okay.  All right.
16              THE DEFENDANT:  They've just put it together
17    saying we're lifting all document numbers, filings,
18    whatever, putting it all together as Rule 2 allows them to
19    do and they're going to make a decision whether there's any
20    reason to look at it or dismiss it as it stands.  But before
21    that happened, I had already filed directly to Justice
22    Thomas for the enforcement of Menrique as to the district
23    clerks where, in fact, my position is since the prosecution
24    has defaulted, there's nothing anyone can do to save them
25    based under Boles versus Russell.
```

1          THE COURT:  All right.

2          THE DEFENDANT:  The Supreme Court then sent me

3   back a request that I submitted as a petition for writ of

4   certiorari to the nine-member Court.  I don't want that.  It

5   is much more favorable to me to have Justice Thomas review

6   and resolve that one issue.

7          It is --

8          THE COURT:  I'm just curious.  Why Justice

9   Thomas?  Isn't Justice Alito the Third Circuit Justice who's

10  responsible for the Third Circuit?

11         THE DEFENDANT:  Yes.  The point is I'm allowed

12  to pick them, and the Justice that wrote Menrique and Boles

13  versus Russell, which means I've already won, is Justice

14  Thomas.  That's why I've sent it to him.

15         THE COURT:  I see.

16         THE DEFENDANT:  If he confirms Menrique and even

17  in that they referred to the difference between mandatory

18  claims processing rules, jurisdictional rules and statutory

19  provisions, that's all in Boles versus Russell from pages

20  209 to 213 explaining this very complicated six-statute

21  process called writ of habeas corpus.

22         THE COURT:  Okay.  Well, what I will do then is,

23  I'm not going to decide whether you're right or wrong about

24  all of that.  I'm just going to go ahead and we'll have a

25  trial October 4th.  That's the earliest I can get you a

1     trial.

2             THE DEFENDANT:  Well, it should be resolved by

3     then anyway.

4             THE COURT:  And if, as you say, it got resolved,

5     then it's going to take care of itself.  So we'll do that.

6     Let's set a trial.

7             Mr. Perri, that's acceptable to the government?

8             MR. PERRI:  Yes, Your Honor.

9             THE COURT:  Okay.  Now, I believe I ruled on all

10    of the outstanding pretrial motions except for a couple of

11    motions that have been filed by the government I believe is

12    my recollection.  I might be wrong on that because there

13    have been so many hearings.

14            Was there anything the government thought we

15    needed to resolve today?

16            MR. PERRI:  I was looking at the same thing,

17    Your Honor.  I have a copy of the docket sheet that was

18    provided to me by Mr. Finucane.  Unfortunately, it's not as

19    current as I would like it to be, so it does reflect a few

20    docket entries that don't seem to have a corresponding

21    order.

22            THE COURT:  Okay.

23            MR. PERRI:  If I -- if perhaps you have the

24    sheet in front of you, maybe I could refer to a few.

25            THE COURT:  Yes.  Hold on one second.  I have a

1   docket sheet in front of me.  Go ahead.

2             MR. PERRI:  Okay.  Number 108, has that been

3   disposed of, Your Honor?

4             THE COURT:  That's a motion by the defendant?

5             MR. PERRI:  Yes.

6             THE COURT:  Hold on one second.  Okay.  I

7   resolved it at the hearing.  I'm just going to get you the

8   date.  I did actually address that order.

9             MR. PERRI:  Thank you, Your Honor.

10            THE COURT:  Or that motion.

11            MR. PERRI:  Was that at the April hearing

12   perhaps?

13            THE COURT:  We're double-checking.  Hold on.

14   Yes.  I resolved that by an order dated October 15th, 2020,

15   which is marked at DI 145.

16            MR. PERRI:  145?  Thank you, Your Honor.

17            THE COURT:  Sure.

18            MR. PERRI:  I really appreciate it.

19            THE COURT:  No, no, I can't fault you because

20   you had to come into this midstream.  So let's keep going.

21   I want to make sure everybody is on the same page.  I'm

22   going to ask Mr. Dougherty what he thinks needs to be

23   addressed as well.

24            MR. PERRI:  How about 115, Your Honor?  It's a

25   motion for habeas.

```
 1                    THE COURT:  That was also resolved by order
 2    dated October 15th, the same order, which is found at DI
 3    145.
 4                    MR. PERI:  145.  Okay.  And then there's number
 5    117, which is titled an expedited motion.
 6                    THE COURT:  Yes.  I found that as moot, also DI
 7    145.
 8                    MR. PERRI:  Okay.  Number 121 is a motion in
 9    limine by the United States.
10                    THE COURT:  That has not been ruled on.
11                    MR. PERRI:  Okay.  Number 129 is a provisional
12    motion in limine by the defendant.
13                    THE COURT:  That has not been ruled on.
14                    MR. PERRI:  Okay.  All right.  I think that's
15    it, Your Honor.  I know that a letter was filed this morning
16    by the defendant.  I have not had a chance to see that.  I
17    assume it is a letter and not actually a motion.
18                    THE COURT:  Right.  And I should also say the
19    129, it's titled at least as a provisional motion in limine,
20    so --
21                    MR. PERRI:  Okay.
22                    THE COURT:  All right.  So, all right.  So as
23    far as you're concerned, I need to rule on DI 121, which is
24    your motion in limine.
25                    MR. PERRI:  Yes.
```

1          THE COURT:  And then give clarification or rule

2     on DI 129, a provisional motion in limine filed by the

3     defendant.

4          MR. PERRI:  Yes.  Thank you for indulging me on

5     that, Your Honor.

6          THE COURT:  That's fine.  You filed proposed

7     jury instructions.  The way I look at it is, the motion in

8     limine I did speak briefly about in court and I need to

9     understand better how a pro se trial would function and

10     basically address the motion.  I think the biggest issue is

11     to what extent is a defendant engaging in argument versus

12     testimony.  He's obviously, if he's going to testify, he has

13     to be subject to cross-examination, so I actually have to

14     really read up on that and understand it.  So, all right.

15          Mr. Dougherty?  Anything else?

16          MR. PERRI:  Just one other thing, Your Honor.  I

17     believe there were some proposed stipulations, but I can't

18     see from any of this, any of these documents or notes

19     whether or not they were ever accepted.  Are those still

20     kind of up in the air as far as the Court knows?

21          THE COURT:  As far as I know, yes.

22          Mr. Dougherty, do you know anything about any

23     stipulations?

24          THE DEFENDANT:  Yes.  I know I had discussed I

25     would be willing to stipulate and instead of ever

1    communicating directly, Thomas Young was supposed to be the

2    one who was going to be acting as go-between.  He

3    disappeared from the process.  And then --

4                THE COURT:  Well, wait.  We can get him active

5    as a go-between.  He remains standby counsel.  He's not able

6    to be here today.  He's standby counsel, he's not your

7    counsel, so I decided to go forward with the hearing.  He's

8    still standby counsel.  And if you want him to do something

9    like that -- Mr. Perri, do you oppose that?

10               MR. PERRI:  Certainly not, Your Honor.

11               THE COURT:  Okay.  So we can have that done.  Do

12   you want me to order him --

13               THE DEFENDANT:  No.  I'm trying to get an answer

14   to your question on this issue.  I had made a couple

15   requests and proposals to him that he either did not take

16   action on or were rejected by Jeffrey Finucane.  There's no

17   way for me to know that.  That then changed into Jeffrey

18   Finucane making a plea offer on January 22nd and then

19   modifying it on April 12th to a conditional plea.

20               THE COURT:  I saw all of that.  I really wish I

21   hadn't.  You filed it.

22               THE DEFENDANT:  Again, we have no way of

23   communicating to the prosecution because he would not

24   communicate with me.  That's what the letter today says

25   outlining what is the process of communication with a

```
 1    pro se litigant and whoever replacement prosecution is going
 2    to be.
 3                I listed a couple of the things that were
 4    decided, how it's going forward and what additional things
 5    that I needed.
 6                Thomas Young, he met with me prior to the
 7    meeting on April 12th and he took notes that I specifically
 8    needed something from him and, once again, simply did not do
 9    what was asked.  So I simply said he, as we had discussed on
10    January 27th in a phone call, has to request of you to be
11    removed from the case.
12                THE COURT:  I'm not going to remove him as
13    standby counsel.
14                THE DEFENDANT:  Well, again, someone has to be
15    able to do what needs to be done.
16                THE COURT:  So you say that this is where you
17    want to go pro se, so you don't have counsel, you have
18    standby counsel.  There's a difference between standby
19    counsel and counsel.
20                THE DEFENDANT:  Okay.
21                THE COURT:  Standby counsel is there to protect
22    your rights but at the request of the Court to facilitate
23    the functioning of the proceeding because you're not a
24    lawyer.
25                THE DEFENDANT:  Okay.
```

1          THE COURT:  And I warned you, this is part of

2     the problem going pro se.  So let's at least do this though.

3     What is it you want standby counsel to do?

4          THE DEFENDANT:  I needed the video of the

5     initial appearance, April 6, 2019, in front of the

6     Magistrate Burke.  He was either going to get the video or

7     the transcript and --

8          THE COURT:  Why do you need that?

9          THE DEFENDANT:  Because it comes into the

10    defense that I'm presenting.  Magistrate Burke made a

11    favorable ruling relative to the issues subject to the

12    self-defense that I'm presenting.

13         THE COURT:  Okay.  Just hold on one second.

14         Mr. Perri, are there any charges for conduct

15    that postdates April 6th, 2019?

16         THE DEFENDANT:  Yes.  I was arrested on Counts 3

17    and 4.

18         THE COURT:  What are the dates of the alleged

19    criminality in Counts 3 and 4?

20         THE DEFENDANT:  November --

21         MR. PERRI:  The 19th of November 2019.

22         THE COURT:  So this video occurred before those

23    charges.  Okay.  Well, even if we have a video.  I don't

24    even know if a video exists.

25         MR. PERRI:  Okay.

1              THE DEFENDANT:  It was a video conference, so I

2      just assumed it was recorded and he said it would possibly

3      be audio.  It could be a transcript.  But I need the

4      transcript video.

5              THE COURT:  Okay.  Here's what I'm going to do.

6      I will take it upon myself to determine whether or not there

7      is a transcript of the April 6th, 2019.  And just hold on

8      one second.

9              THE DEFENDANT:  May 6, 2019.

10             THE COURT:  You think it's May 6th?

11             THE DEFENDANT:  Yes.  If I said April, that's a

12     mistake.

13             THE COURT:  All right.  Let me just check, make

14     sure we're all on the same page here.

15             Okay.  We've confirmed there was a May 6th

16     hearing and I will take it upon myself to determine whether

17     there is an audio recording and a transcript.  My

18     understanding is we don't typically transcribe the hearing.

19     If we have a recording, I will have a transcription made of

20     it by a court reporter and I will provide it to both

21     parties.  All right?  So that takes care of that issue, I

22     think.  Right?

23             THE DEFENDANT:  Right.

24             THE COURT:  What else did you need standby

25     counsel to do?

1             THE DEFENDANT:  Well, I was talking about

2    certain evidentiary issues and what defense is going to be

3    allowed, which is all tied into what you were just

4    discussing about your motion in limine.  So apparently

5    you're going to be reviewing that and there will be some

6    further discussion before we go forward.

7             THE COURT:  Okay.  I will review that.

8             All right.  Is there anything else?  Any

9    subpoenas, anything like that that you want?

10            THE DEFENDANT:  Well, that was what all that was

11   going to be related to it.  If you are going to disallow

12   certain defenses, subpoenas, it would be inappropriate or

13   not relevant.

14            There is still the issue that you had indicated

15   you were taking under advisement, whether you were going to

16   issue the orders related to the bail motions and the denial

17   from the March 23rd order.

18            You said on --

19            THE COURT:  Yes.  I looked into that and I have

20   done -- I've complied with all the necessary procedures.  I

21   believe Judge Burke has complied with all the necessary

22   procedures.  There were orders.  Any order that was required

23   to be issued was issued, and you made a reference.  I went

24   back and looked at the transcript.  You made a reference to

25   a statute and you implied or suggested at the hearing that

1    the motion was -- had to do with that particular statute and

2    I looked, and in the dozens of pages you filed, there was a

3    single reference to the statute.  And, in fact, I will be

4    candid with you.  I forget the number right now, what the

5    number was.

6                    THE DEFENDANT:  Okay.  Well, let me just clarify

7    for the record.  I had filed in the omnibus motion an 18

8    U.S.C. 3148, which basically says that once the arrest

9    warrant had been converted from an information to an

10   indictment, a Magistrate does not have tribunal jurisdiction

11   to, in fact, dismiss an indictment, so he had to find that a

12   crime had been committed before deciding whether or not I

13   was a risk relative to the bail hearing.

14                    So under Gerstein versus Pugh, that was an

15   improper hearing.

16                    THE COURT:  Right.  And I read Gerstein versus

17   Pugh and I reject this argument.  I don't think that

18   Gerstein versus Pugh requires what you say and I do not

19   think that the Magistrate did anything unlawful.

20                    THE DEFENDANT:  Again, I'm not saying he did

21   anything lawful.

22                    THE COURT:  Okay.

23                    THE DEFENDANT:  Again, I'm saying he was without

24   tribunal jurisdiction.

25                    THE COURT:  That, by definition, is unlawful.

1    If he did something for which he had no jurisdiction, he

2    would have acted unlawfully and I find he did not.

3                    THE DEFENDANT:  And then in addition to that, I

4    filed the bail appeal to you directly, 3145.  You never

5    provided me an order that said the actual word 18 U.S.C.,

6    3145 is denied, so that I can appeal that to the Third

7    Circuit.  And Judge Wolfson --

8                    THE COURT:  And I disagree with you and I don't

9    think you've actually described that you filed a rule -- a

10   motion, rather, pursuant to 3145.

11                   THE DEFENDANT:  Mm-hmm.

12                   THE COURT:  But to the extent that you alluded

13   to or made reference to 3145 in your many, many papers, I

14   denied that the Magistrate's rulings should be overturned.

15                   So if had you wished to take a timely appeal,

16   you could have taken a timely appeal.  If you wish to take

17   an appeal now for the record, I do not think you have been

18   unlawfully detained by the Magistrate Judge.

19                   THE DEFENDANT:  And, again, I was saying in

20   Menrique -- it specified in Menrique that no criminal

21   defendant can appeal until you put the order in the docket

22   referencing the issue, 3145 has been denied.  That's what

23   Menrique said.

24                   THE COURT:  Right.  That's part of the problem.

25   When you act pro se as you've insisted acting, even assuming

1    you are correct, and I'm not going to assume that, but you

2    did not formally put before me a 3145 motion or appeal.

3             THE DEFENDANT:  Okay.

4             THE COURT:  You did not, and so to the extent,

5    you know, I didn't have a notice of appeal filed pursuant to

6    3145 from the Magistrate Judge's ruling and so to the extent

7    there's not a specific docket number that addresses that,

8    that would be your fault for not getting a lawyer and

9    putting it in front of me the way it normally would be.

10            THE DEFENDANT:  I just want to clarify because

11   the new counsel, I think he made reference to what is

12   docketed as 108.  Since I don't have copies of it, I don't

13   know what it is.

14            If you look at all of the pages, one of the

15   pages is titled 3148.  The other one is titled 3145, and you

16   are saying it's not written and therefore it's not legible

17   and I'm working off of memory.  I don't even have a copy of

18   it.

19            THE COURT:  So 108 is a motion to dismiss

20   Counts 3 and 4.

21            THE DEFENDANT:  Okay.

22            THE COURT:  Along with unresolved issues

23   relating to Counts 1 and 2.

24            THE DEFENDANT:  Right.

25            THE COURT:  As well as stipulations for witness

1    testimony.  That's what it is.

2              THE DEFENDANT:  Okay.  So, in other words, that

3    is not the one that has 3148 as one of the pages?

4              THE COURT:  I mean, you know, this is a problem.

5    If you put within a, you know, a hundred-page filing, just

6    refer to a particular statute --

7              THE DEFENDANT:  I was in 23-hour lockdown at the

8    time and I had to put it in the prison mailbox system by

9    March 23rd, which I did.  I never received a copy.  I don't

10   have a copy of it now.

11             I'm working off of memory of what I wrote on

12   March 23rd, 2020, and you're telling me it says things other

13   than what I remember.

14             THE COURT:  All right.

15             THE DEFENDANT:  I don't know what to say.

16             THE COURT:  Okay.  Hold on one second.

17             Right.  So I'm looking at 108 and I'm actually

18   going to have a copy handed to you.

19             THE DEFENDANT:  All right.

20             THE COURT:  So I reviewed it after we had the

21   had the last hearing and I found a single reference to 3145

22   found at page 5 of the filing.

23             THE DEFENDANT:  Okay.

24             THE COURT:  And it's in the middle of a long

25   discussion about tribunal injuries.

1              THE DEFENDANT:  Okay.

2              THE COURT:  And all it says is, "The fact that

3    3145 exists cannot cure the Gerstein against Pugh violation

4    as longstanding Supreme Court precedent."

5              I also read Gerstein and Pugh.  I find they have

6    no applicability to this case.

7              And I did not DI 108, this filing, which again

8    we're going to get to in a second.

9              THE DEFENDANT:  Okay.

10             THE COURT:  But I did not read it as an appeal

11   from a detention order, and I will even note so far that the

12   reference to 3145 doesn't even have a reference to Title 18.

13   So it would not have been comprehended by me or any

14   reasonable jurist to mean that there was some kind of appeal

15   taken pursuant to 18 U.S.C., Section 3145.

16             THE DEFENDANT:  So, again --

17             THE COURT:  So that's where we are.  You're

18   right, I did not issue, to use your words, a formal order

19   that disposed of an appeal allegedly brought pursuant to

20   3145.  You're right.

21             THE DEFENDANT:  Again, in Menrique it says if

22   you had issued the order denying the 3148 motion and 3145

23   and I entered a notice of appeal in the docket, it would be

24   premature and they would wait until the final order was

25   rendered in the docket and that's when they would link

1  them up and I could proceed with the appeal in the Third

2  Circuit.

3              THE COURT:  You know --

4              THE DEFENDANT:  And it's Judge Wolfson who said

5  that is your only objection.  And like I just said, I

6  received an order from him yesterday reaffirming that

7  position, that the only jurisdiction Keith Dougherty has is

8  in the Middle District of Pennsylvania in a bail reform

9  motion and then appeal from that, that there is no habeas

10  jurisdiction as far as he's concerned.

11              So we have a Catch 22 situation.  You say it's

12  his fault.  He says it's your fault.  Everyone now --

13              THE COURT:  Okay.  What I'm happy to do is, you

14  want to appeal Judge Burke, Magistrate Judge Burke's

15  determination that you should be detained.

16              THE DEFENDANT:  No.  I want to appeal the fact

17  that once an arrest warrant that would be perfectly

18  appropriate for the officer who set my terms of release, it

19  must be reviewed by him, only him, but once you converted it

20  into an indictment, he has to accept the indictment that a

21  crime had been committed, so therefore you have put him in a

22  position where he has no discretion other than to find a

23  crime has been committed and therefore I must be detained

24  unless I can come up with an excuse as to how I'm not a

25  threat to continue to commit crimes under my pretrial

1    release conditions.

2              Gerstein versus Pugh says I must be put in front

3    of someone that has jurisdiction.  He had no power to

4    disagree with the grand jury.  Once the grand jury issued

5    the indictment, he has to accept the fact that a crime had

6    been committed even though it was an improper presentation

7    to an unsuspecting grand jury as I've made clear relative to

8    the arguments around Elonis versus U.S. in talking about

9    subjective intent through threat, watch standard, stop

10   standard, that you have refused to take a look at.

11             So my point is that you could have looked at the

12   3148 issues to see if, one, there had been a crime committed

13   separately; and, two, if, in fact, there was no condition

14   upon which I could remain on the street and not a threat to

15   society one way or another.  In fact, what you simply did

16   was say I think he had authority to proceed when, in fact,

17   there is no dispute that a Magistrate does not have power to

18   dismiss an indictment.

19             So at the hearing in Baltimore, the probation

20   department said there has been no violation and the only

21   issue that could cause my pretrial release to be violated is

22   if a crime had been committed and you put Magistrate Burke

23   in a position where he had no discretion.  That is not due

24   process of law.

25             THE COURT:  Okay.

```
 1              THE DEFENDANT:  Under Marshal versus Jericho,

 2   I'm entitled to have a neutral, impartial and disinterested

 3   arbiter determine whether I am facing a valid claim.  In

 4   addition to that, I also explained that the Eighth Circuit

 5   found that in this circumstance, when, in fact, you have a

 6   situation where someone's liberty is denied based on the

 7   proposed commission of a crime, the defendant in that

 8   instance is entitled to confront the witnesses against him.

 9              So I suggested in that you needed to bring in

10   FBI Agent Cruz and Taylor and Aniston and I would

11   cross-examine them as to whether I actually committed a

12   crime, because Counts 3 and 4 were never constructively

13   transmitted to the proposed victim, that being former Chief

14   Connor and former Chief Conti.  It never was transmitted to

15   me.

16              THE COURT:  Okay.  I just want to make sure.  Is

17   one of your arguments that the Magistrate Judge lacked

18   authority to detain you?

19              THE DEFENDANT:  No.  To reverse the indictment.

20              THE COURT:  Okay.

21              THE DEFENDANT:  That is the only way I could

22   have retained my liberty.

23              THE COURT:  Okay.  So I agree, the Magistrate

24   Judge lacked the authority to overturn the grand jury

25   indictment.
```

1              THE DEFENDANT:  So therefore his hands were

2      tied.  I have no complaint about what he did.  He was

3      handcuffed into a situation where once they present it to a

4      grand jury, he has no authority, but he was the --

5              THE COURT:  Well, what he has to do is, he has

6      to except for the purposes of a 3145 --

7              THE DEFENDANT:  3148.

8              THE COURT:  For the purposes of determining

9      whether you should be detained or not, he is to give credit

10     to the grand jury.  He cannot sua sponte vacate or overturn

11     a grand jury indictment.  That is true.

12             THE DEFENDANT:  Okay.

13             THE COURT:  So it will help you.  I am making

14     that ruling right now and, again, I will reiterate, and I've

15     also reiterated we had a hearing on this where your counsel

16     actually asked for the conditions of your release.

17             THE DEFENDANT:  That counsel had no authority to

18     speak to you on my behalf.

19             THE COURT:  All right.

20             THE DEFENDANT:  Because this issue was still

21     pending.  As you can see, it's still pending now.

22             THE COURT:  Hold on.  Where I'm going to help

23     you, I think, is, so just for your benefit and only for your

24     benefit, I will reiterate that the Magistrate Judge acted

25     appropriately and with authority to order your detention and

1   he gave due regard to the grand jury indictment in making

2   that determination, and I understand your argument to be

3   that he, the Magistrate Judge, lacked jurisdiction to order

4   your detention and I reject that argument.

5         If you like, and this is what your request is, I

6   will put a docket number today, an order that will clarify

7   that I rejected your motion to appeal the detention order.

8         THE DEFENDANT:  Again, just so you understand,

9   I'm asserting a case of first impression in the Third

10  Circuit that under 3148, you have handcuffed the Magistrate

11  to where he is the one that had to hear the matter because

12  he was the one that set my initial bail, pretrial release.

13        THE COURT:  That's fine.  All I want is, what is

14  it that you want me to do?

15        THE DEFENDANT:  The order must say that 18

16  U.S.C. 3148 as proposed by the defendant is denied.

17        THE COURT:  Okay.  Hold on.  You just said that

18  you want me to say that a statute as proposed by you is

19  denied.  Just tell me, what is your motion and I will

20  adjudicate it.  What is your motion?  You want me to

21  overturn the Magistrate's determination?

22        THE DEFENDANT:  No.  The motion was to indicate

23  the Magistrate had no tribunal jurisdiction.  I don't know

24  how to say that to you more clearly than I already have.

25        THE COURT:  All right.

1              THE DEFENDANT:  And that is clarified in Savilus

2     versus --

3              THE COURT:  Don't argue the merits.  I just

4     want to get what you want so I can give it to you.  All

5     right?

6              THE DEFENDANT:  Okay.  But --

7              THE COURT:  So you want a motion -- just

8     clarify, title the motion you want.

9              THE DEFENDANT:  The Bail Reform Act motion

10    presented by the defendant is denied.

11             THE COURT:  Okay.  And that Bail Reform Act

12    motion was made this morning?

13             THE DEFENDANT:  No.  It was actually made on

14    March 23rd, 2020.

15             THE COURT:  Okay.  In DI 108?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.

18             THE DEFENDANT:  It was part of the omnibus

19    motion that Magistrate Burke had ordered that I had to

20    submit by that time.  Even though I was in lockdown 23 hours

21    a day, working with a typewriter with no supplies, I rushed

22    to get it done and it has never been properly entered upon

23    the docket, and according to Judge Wolfson, that is the only

24    tribunal jurisdiction that exists for me.

25             THE COURT:  And the Bail Reform Act motion is

1    premised on your argument that the Magistrate Judge lacks

2    tribunal jurisdiction to detain you?

3                    THE DEFENDANT:  No.  To rule on the bail, the

4    pretrial release violation.  He had no tribunal jurisdiction

5    to rule on the pretrial release violation.

6                    THE COURT:  Okay.  All right.  I'm going to

7    state for the record that I've already denied DI 108.  That

8    this morning the defendant has argued that DI 108 contained

9    a bail reform action motion and that that motion is based on

10   the defendant's argument that the Magistrate Judge lacks

11   tribunal jurisdiction to rule on the pretrial release

12   violations.  I am going to treat the defendant's arguments

13   this morning as a motion to reconsider DI 108 and I'm going

14   to deny it.

15                   All right.  Do you have the ruling you need?

16                   THE DEFENDANT:  Again, I would like the

17   reference to the bail reform --

18                   THE COURT:  I did reference it, I think.

19                   THE DEFENDANT:  Okay.  So 18 U.S.C., 1845.  If

20   you could write those numbers in your letter, I will be

21   forever in your debt.

22                   THE COURT:  All right.  And what I will do is, I

23   will issue and I will put on the docket after the hearing

24   today an oral order that says, to the extent that defendant

25   maintains that DI 108 was a motion made pursuant to 18

 1    U.S.C., Section 3145, it is denied.

 2              THE DEFENDANT:  There we go.

 3              THE COURT:  All right.  I will do that when we

 4    leave today.  I will make sure I do that.

 5              THE DEFENDANT:  Thank you.

 6              THE COURT:  Okay.  All right.  Is there anything

 7    else I need to attend to, Mr. Dougherty?

 8              THE DEFENDANT:  No.

 9              THE COURT:  Okay.  So then we're set for an

10    October 4th trial in Harrisburg.  We will have to have a

11    conference in September in this court in order to address

12    pretrial matters, how jury voir dire will be conducted and

13    all of that.

14              I mean, this is a very fluid situation with

15    Covid because now that we're moving out, like, for instance,

16    in our courtroom, in this courtroom right here I'm not

17    requiring masks, but Courts are treating Covid differently

18    all over the country and within the Third Circuit and even

19    courtrooms in this building are treated differently because

20    the CDC guidance keeps changing.

21              We are hopeful in our building that we'll be

22    able to have more than one jury trial at a time perhaps in

23    July, but right now the Court Order issued by the Chief

24    Judge of this district is we can only have one jury trial at

25    a time.  And as I say, the Chief Judge of the Middle

```
 1    District, whose Court we're in in this case, has advised me
 2    that the earliest that we can right now try this case is
 3    October 4th, so that is the date I've asked him to set and
 4    that's what we'll do.  All right?
 5              And I believe we have to get you transported
 6    ultimately to Harrisburg, and I think it's, like, a ten-day
 7    window you need.  Is that right?
 8              U.S. MARSHAL:  Yes.
 9              THE COURT:  That means we'll have to schedule
10    the pretrial conference more than ten days in advance of
11    October 4th.  I will do that.
12              I'm going to look at the provisional motion in
13    limine provided, that was filed by the defendant, and there
14    was a request in a paper filed yesterday by the defendant
15    for standby counsel for subpoenas.  Is that correct?
16              THE DEFENDANT:  Yes.  In other words, I'm
17    assuming all of that will make sense when you decide --
18              THE COURT:  The motion in limine.
19              THE DEFENDANT:  The motion in limine.
20              THE COURT:  Okay.
21              THE DEFENDANT:  And then I know what subpoenas
22    would even be appropriate.
23              THE COURT:  Okay.
24              THE DEFENDANT:  Until that's decided...
25              THE COURT:  What I'm going to do is, I will
```

1 decide that motion and then I will also instruct standby

2 counsel to communicate with you, Mr. Dougherty, with respect

3 to potential subpoenas.

4     THE DEFENDANT:  Exactly.

5     THE COURT:  Okay.  I will do that.  And then is

6 there anything else I need to address?

7     MR. PERRI:  Just, if I could just revisit the

8 stipulations, Your Honor.

9     THE COURT:  Yes.

10     MR. PERRI:  I was taking notes frantically,

11 trying to get up to speed with all of these issues, so I

12 apologize.  But has the defendant decided whether he would

13 be willing to enter into the stipulation proposed by the

14 United States?

15     THE COURT:  Well, let's ask him.

16     THE DEFENDANT:  I hadn't actually reviewed them

17 in specific detail as to what he's referring to.

18     THE COURT:  Okay.

19     THE DEFENDANT:  Because Jeffrey Finucane made

20 two modifications to the stipulations on January 22nd and

21 April 12th.  Have you changed what he has decided to say

22 since then?

23     MR. PERRI:  I have not changed anything, Your

24 Honor.  I'm just wondering if they have been reviewed and

25 accepted by the defendant.

1          THE COURT:  Have you reviewed and accepted the

2     last version that Mr. Finucane provided to you?

3          THE DEFENDANT:  That's why I provided copies of

4     it.  He scribbled all over it and wrote over it.  It doesn't

5     make sense.

6          THE COURT:  When you say stipulation, what you

7     filed and there was scribbling on, I thought that was a plea

8     agreement.

9          THE DEFENDANT:  No.  That was the portion that

10    he's talking about now was what we would stipulate to when

11    we were having that face-to-face conversation.  You realize

12    that's only the second time I've ever talked to Jeffrey

13    Finucane.

14         THE COURT:  Okay.  Hold on a second.  Hold on.

15    So, Mr. Dougherty, I'm giving you a copy of DI 108 you'll

16    have.

17         THE DEFENDANT:  Thank you.

18         THE COURT:  All right.

19         MR. PERRI:  Judge, I think I have some blank

20    copies of the stipulations if that would help.

21         THE COURT:  That would help.  Can you give a set

22    to him and me?

23         MR. PERRI:  Yes, Your Honor.

24         THE COURT:  Okay.  Why don't we do that.  And,

25    Mr. Dougherty, can you see this?  I mean, no?

```
1                    THE DEFENDANT:  No.

2                    THE COURT:  I will tell you what.  I will get a

3      copy for you.

4                    THE DEFENDANT:  Okay.

5                    THE COURT:  Mr. Perri, if you want, once you get

6      the copies, if you could take a set and give Mr. Dougherty a

7      set?

8                    MR. PERRI:  I will, Your Honor.

9                    THE COURT:  Thank you.  All right.  So let's do

10     this.  Let's start with stipulation of fact number one.

11                    Did you have a chance to see that,

12     Mr. Dougherty?

13                    THE DEFENDANT:  See Jeffrey Finucane's document

14     from -- yes, stipulation fact number one.

15                    THE COURT:  Okay.  Are you willing to sign that

16     stipulation?

17                    THE DEFENDANT:  Your Honor, I'm going to have to

18     tell you at this time I'm going to have to take this, review

19     it compared to what we have here, and I will make a

20     counterproposal through standby counsel that can be

21     addressed with the prosecution.

22                    THE COURT:  Okay.

23                    THE DEFENDANT:  Okay?

24                    THE COURT:  Now, when you said this, I also

25     had -- I handed it to you or through Mr. Perri.  So you now
```

1    have in front of you DI 163.

2              THE DEFENDANT:  163.  Yes.

3              THE COURT:  Is that what you were referring to,

4    you have to compare the stipulations to DI 163?

5              THE DEFENDANT:  Yes.  Up here, all changes made

6    by Jeffrey Finucane.  He's the one who lined through Chief

7    and lined through other things.

8              Then he has written down here, Mr. Dougherty

9    maintains he did not intend to threaten Judge Connor, will

10   appeal the issue consistent with the plea.  So this is what

11   he made in terms of these changes on April 12th, 2021.

12             THE COURT:  All right.  And this is a very

13   unusual situation.  Normally, a judge would never be privy

14   to plea discussions, but, Mr. Perri, Mr. Dougherty brought

15   this to my attention, so if I'm doing something that the

16   government thinks I shouldn't be doing, you should let me

17   know.

18             MR. PERRI:  I have no objection, Your Honor.  I

19   think that the unique circumstances of this situation

20   actually call for any clarification the Court can provide.

21             THE COURT:  All right.  Thank you.

22             So, Mr. Dougherty, this DI 163 I'm looking at --

23             THE DEFENDANT:  Okay.

24             THE COURT:  So the first page, I'm assuming that

25   is -- that was typed up by the U.S. Attorney's Office and

1    given to you.  Is that right, the first page?

2              THE DEFENDANT:  The first page?

3              THE COURT:  I mean, it's on U.S. Attorney

4    letterhead.

5              THE DEFENDANT:  Well, again, I don't know who

6    separated this out.

7              THE COURT:  Okay.  Hold on a second.  You know

8    what, let Mr. Perri clarify.

9              Mr. Perri, can you get the three-page DI 163 and

10   just bring it back here so we can get both you and

11   Mr. Dougherty unstapled copies?  They're different from the

12   stipulation.

13             THE DEFENDANT:  Let me clarify something.  That

14   appears to be something I mailed, but it wasn't just those

15   three pages.  That's my point.  I'm confused by that.

16   Someone else --

17             THE COURT:  I now know what happened.  We'll

18   clarify it for you.

19             THE DEFENDANT:  Someone separated it out --

20             THE COURT:  Yes.  Here's why, here's why.  All

21   right.  So, Mr. Dougherty, you have now in front of you a

22   three-page document, which is also docketed by the Court,

23   and it's called Document 163, DI 163.

24             THE DEFENDANT:  Right.

25             THE COURT:  You gave this to the Court and it

 1   was attached to a bigger filing.

 2            THE DEFENDANT:  Correct.

 3            THE COURT:  Which is at DI 162.

 4            THE DEFENDANT:  I see.  Mm-hmm.

 5            THE COURT:  But because this was a plea, I

 6   thought that is not the kind of thing you put on a docket,

 7   you know, so we put it under seal so that you could still

 8   see it and the government could see it.

 9            THE DEFENDANT:  Right.  I'm just trying to bring

10   some clarity.

11            THE COURT:  I'm looking for clarity.  So now put

12   aside, if you want to refer to DI 162, which is a big part

13   of the filing, that's fine.  What I want to focus on, so

14   this three-page DI 163.

15            THE DEFENDANT:  Correct.

16            THE COURT:  All right.  That's the first page.

17   I mean, I'm assuming that is from the government to you.

18            THE DEFENDANT:  Yes.

19            THE COURT:  They sent it to you?

20            THE DEFENDANT:  No.  This is what Jeffrey

21   Finucane hand-delivered on April 12th, 2021.  This was the

22   whole reason for that meeting that day.

23            THE COURT:  Okay.  Oh, this was right before my

24   hearing?

25            THE DEFENDANT:  Yes.  And that was the only

1    reason --

2              THE COURT:  It makes sense.  When I walked in,

3    you started talking about a plea.

4              THE DEFENDANT:  Correct.

5              THE COURT:  Now I get what's going on.  Before

6    the hearing, Mr. Finucane gave you this letter?

7              THE DEFENDANT:  Correct.

8              THE COURT:  Okay.  The second page of the

9    document, that also appears to be from Mr. Finucane to you.

10   That's just the second page of the letter?

11             THE DEFENDANT:  That's correct.

12             THE COURT:  All right.  And incidentally,

13   there's some crossing X here or something over the Keith

14   Dougherty line.

15             THE DEFENDANT:  Right.

16             THE COURT:  Whose handwriting is that?

17             THE DEFENDANT:  That's me.  I did not want to

18   give anyone the impression that this was potentially signed

19   by me.

20             THE COURT:  Got you.

21             THE DEFENDANT:  As you can see, number four, it

22   says the following:  The parties do not stipulate to

23   relevant conduct in this matter.

24             THE COURT:  Yes, okay.

25             THE DEFENDANT:  Now just --

1          THE COURT:  Then we get to the next page.

2          THE DEFENDANT:  Okay.

3          THE COURT:  Where does the next page come from?

4          THE DEFENDANT:  Jeffrey Finucane pulled this out

5   of the version of the plea offer that was dated January 22nd

6   and this was contained as an attachment to that and he

7   started making these changes that, whatever, and then

8   announced to me that he had no power in this case, that both

9   he and you were assigned by a higher power and this case was

10  being conducted under what would be star chamber law

11  processes.  Under executive or political law, nothing could

12  be done to resolve anything by pretrial motion, or in the

13  case of a habeas that, in fact, this mattered was either

14  going to result in a plea and then appeal or a trial.

15          THE COURT:  Okay.  He said all of that to you in

16  this courtroom?

17          THE DEFENDANT:  Yes.

18          THE COURT:  In April?

19          THE DEFENDANT:  Mm-hmm.

20          THE COURT:  All right.  And then did he give you

21  this copy, which is at DI 163, page 3?

22          THE DEFENDANT:  That's him.

23          THE COURT:  Who handwrote and crossed out and

24  wrote "Chief" and crossed out "Containing threatening

25  statements"?

1              THE DEFENDANT:  Jeffrey Finucane did all of

2    that.   I put on the top of the document, "All changes made

3    by Jeffrey Finucane."

4              THE COURT:  When did he make these changes?

5              THE DEFENDANT:  April 12th, right in front of me

6    while we were discussing, trying to say I can change all of

7    this and we can stipulate so that you can accept.

8              THE COURT:  I see.  Okay.

9              THE DEFENDANT:  And when he crossed out the

10   Chief, I said, do you understand, this letter was sent to

11   Chief Judge Connor in his executive function?  He never was

12   presiding over any of Keith Dougherty's cases.  Well, then

13   he wrote Chief back in.

14             THE COURT:  I see.

15             THE DEFENDANT:  Then he scribbled through it.

16   And you've attributed here that I'm the one that said join a

17   revolution.  That is quoting Justice Scalia, West Beach in

18   Cambridge.  He said, if you believe our Constitution is

19   unconstitutional, join a revolution.  He's saying that that

20   was threatening somehow to the federal judiciary when I

21   wrote that in the letter.

22             THE COURT:  Right.  But as I understand it, what

23   he was saying to you in April was that he would not require

24   you to stipulate to these facts anymore.

25             THE DEFENDANT:  He said he was willing to modify

1    the stipulation to whatever it needed to be to get my

2    agreement on the conditional plea.

3                THE COURT:  I see.

4                THE DEFENDANT:  To where I could actually plead

5    conditionally guilty, it goes through the entire appeals

6    process.  If I lose, I can then go to trial.  And I said,

7    this is getting a little bit crazy because I have a

8    difficulty understanding the difference between a

9    conditional plea and bail, but you would have to talk to

10   Jeffrey Finucane about that.

11               Now, another issue I had concern with --

12               THE COURT:  And I don't understand it.  I wasn't

13   privy to this discussion, so I don't understand what was

14   written here or crossed out.

15               THE DEFENDANT:  But we do understand the

16   conditional nature of the plea.  Right?

17               THE COURT:  Well, actually, I don't.  I mean, I

18   just didn't read the letter.

19               THE DEFENDANT:  Well, again, a conditional plea

20   would permit me to file the appeals and habeases as they've

21   been filed, and if I do not prevail, could then come back,

22   withdraw the guilty plea and go to trial.  That sounds

23   strangely like being on bail.

24               THE COURT:  All right.  Hold on a second.  I

25   will look and see.

1           Mr. Dougherty, how many months have you been in

2    jail so far?

3           THE DEFENDANT:  I've been in jail since

4    January 28th of 2020.

5           THE COURT:  So more than 12 months?

6           THE DEFENDANT:  Yes.  This not only says he's

7    willing to accept time served, but a conditional plea, which

8    means if I do not prevail in the Supreme Court or wherever,

9    I could just withdraw the guilty plea and then we go to

10   trial.

11          THE COURT:  Mr. Perri, is the government's

12   position still what's in this letter?

13          MR. PERRI:  Your Honor, I'm aware that Mr.

14   Finucane offered the defendant a conditional plea.  I am not

15   privy to the discussions that took place between them.

16          I do have several different iterations of that

17   plea agreement.  It does appear to me that Mr. Finucane was

18   trying to come up with some modifications that would be

19   palatable and acceptable to the defendant.

20          I think that we probably could agree to some

21   sort of conditional plea, but there are so many things

22   crossed out here, I'm just having a hard time figuring out

23   what the exact terms of it were.

24          THE COURT:  Well, I meant if it was just the

25   first two pages.

```
 1              MR. PERRI:  Yes.  I don't know what the role of

 2    the third page was supposed to be.

 3              THE COURT:  I'm pretty sure the third page came

 4    from an earlier plea agreement that was given to

 5    Mr. Dougherty in January and it looks like the government

 6    changed its position and that basically, according to the

 7    original plea, Mr. Dougherty had to stipulate to certain

 8    facts and then the government said in April they don't

 9    require him to stipulate to those facts.

10              Mr. Dougherty, here's what I'm concerned about

11    now.

12              THE DEFENDANT:  Okay.

13              THE COURT:  Normally, a judge doesn't get

14    involved in plea, but it looks like the government is

15    willing to let you, if you pled guilty today, the government

16    is saying you can get released.

17              THE DEFENDANT:  That's correct.

18              THE COURT:  And you could still appeal your

19    right to challenge the condition.

20              Now, Mr. Dougherty, on a human level, if the

21    government -- if you have already served the sentence that

22    the government is asking for, why don't you take their plea

23    and, you know -- why are you going to sit in jail for that?

24              THE DEFENDANT:  And I'm going to answer you as I

25    answered Thomas Young and Jeffrey Finucane that day.  When I
```

1    reviewed the stock through threat standard and appeal in an

2    opinion written by Justice, or Judge Fisher, he indicated

3    that the first half of the threat clearly was a threat, a

4    complete threat, complete thought, everyone would accept it

5    as a threat, and then he withdraws it in the second half of

6    his posting.  And they said --

7                    THE COURT:  What do you mean, in a case?

8                    THE DEFENDANT:  In a case.  Just listen, follow

9    through.  It will make sense to you in a second if you just

10   have a little bit of patience.

11                   They were able to say in that case even though

12   the plea was clearly withdrawn in his posting, a jury still

13   could have convicted him on the first portion of the threat.

14   So if I plead guilty, I'm in the stock true threat box

15   without a determination that I have a what?  True threat

16   protection.

17                   I cannot plead guilty unless I'm exposing myself

18   to a potential -- an appeal judge saying, well, we could

19   have done that, a jury might have done that, whereas now if

20   I go to trial, you must prove beyond a reasonable doubt that

21   I had a subjective intent to threaten anyone.

22                   THE COURT:  I get it.  So let me put it in my

23   words.  What you are saying is that if you go to trial, you

24   could persuade a jury, look, the first thing I said, you

25   might read it in isolation and interpret it as a threat, but

1    you've got to read the second part, and when you read the

2    second part, I clearly didn't intend to threaten anyone.

3                    THE DEFENDANT:  Correct.  That's what Elonis

4    says.

5                    THE COURT:  And you're afraid that if you just

6    go up to the Court of Appeals, the Court of Appeals is going

7    to say, hey, you said the first thing and that's good

8    enough.

9                    THE DEFENDANT:  A jury could have found you

10   guilty on that alone.

11                   THE COURT:  So I'm interpreting your argument

12   correctly?

13                   THE DEFENDANT:  Correct.

14                   THE COURT:  All right.  So I get that.

15                   THE DEFENDANT:  And that was the danger behind

16   you not producing a Rule 12(d) opinion outlining those

17   specific details.

18                   THE COURT:  Okay.

19                   THE DEFENDANT:  Which then they could have been

20   appealed separately.

21                   THE COURT:  So, Mr. Perri, do you know, have the

22   victims in this case, are they okay with the government's

23   recommendation that Mr. Dougherty has already served any

24   sentence he should?

25                   MR. PERRI:  My understanding is that they

1    would -- they would be.  They have some preferences and

2    recommendations as to sentencing, but they would be okay

3    with that.

4                THE COURT:  Well, what do you mean?  They have

5    some preferences they want him to get more than time served?

6                MR. PERRI:  Like supervised release.

7                THE DEFENDANT:  All of that is totally rejected.

8                THE COURT:  Well --

9                THE DEFENDANT:  Totally rejected.

10               THE COURT:  All right.  You understand if you go

11   and you're found guilty, the Court, you know, me, would

12   impose the terms of supervised release.

13               THE DEFENDANT:  Right.

14               THE COURT:  You might reject it, but I would

15   impose it.

16               THE DEFENDANT:  Right.

17               THE COURT:  Okay.

18               THE DEFENDANT:  So my point is I'm protected by

19   a much higher burden at trial than with what you're

20   proposing.

21               THE COURT:  Right.

22               THE DEFENDANT:  In other words, Elonis is clear.

23               THE COURT:  We don't need to do any more Elonis.

24               THE DEFENDANT:  Okay.

25               THE COURT:  I understand your argument.

```
1              THE DEFENDANT:  But you have not ruled on it.

2              THE COURT:  The reason why I have not ruled on

3    it is because if you think of your own logic, okay, that you

4    said the Third Circuit could say that it was deficient to

5    have the first statement for the jury to find you guilty.

6              THE DEFENDANT:  But the element that I'm

7    expressing to you on Counts 3 and 4, they were never

8    constructively transmitted.

9              THE COURT:  Oh, I have not even gotten to --

10             THE DEFENDANT:  The Supreme Court said the

11   parties agree, the government in the Third Circuit agrees.

12             THE COURT:  But even if -- look, I've got to go

13   back.  I think I may have already ruled on Counts 3 and 4,

14   but the point would be anyway, even if you got rid of Counts

15   3 and 4, you've got Counts 1 and 2?

16             THE DEFENDANT:  Yes.  That's why the habeas

17   triggers double jeopardy.  You must dismiss Counts 1 and 2

18   and you cannot re-indict.  That's the whole basis behind the

19   habeas.

20             THE COURT:  You can make that argument to the

21   Third Circuit.

22             THE DEFENDANT:  Very good.

23             THE COURT:  The question I'm trying to figure

24   out is, if the defendant has already served what the

25   government is seeking, should I -- should we revisit
```

1     detention?

2              THE DEFENDANT:  That would be the simplest

3     solution.

4              THE COURT:  But if I were to release you, you

5     would be subject to very strict supervision.

6              THE DEFENDANT:  All of the same conditions or

7     more that I've already been out on, which is the same thing

8     as this conditional plea offer.

9              THE COURT:  Mr. Perri, I know it's very unusual,

10    but --

11             THE DEFENDANT:  I'm just --

12             THE COURT:  It's a very unusual situation.  I

13    mean, I had not read this.

14             MR. PERRI:  I guess I'm having trouble seeing

15    what purpose that would serve, to release the defendant.

16             THE COURT:  Well, I just feel like -- well, the

17    question is, I mean, because he has already been in jail

18    more times than the government is going to recommend.  I

19    guess maybe that's not right.  Maybe your position is what,

20    if he goes to trial, you're going to recommend more than

21    this?  That's what it would be?

22             MR. PERRI:  Yes, Your Honor.

23             THE COURT:  Okay.

24             THE DEFENDANT:  Then you would be punished for

25    asserting your Sixth Amendment right.

```
1              THE COURT:  That happens all the time.

2              THE DEFENDANT:  Okay.

3              THE COURT:  Somebody pays a price to go to trial

4    and what happens is the government gives you a cushy deal if

5    you will take a plea.

6              THE DEFENDANT:  Okay.

7              THE COURT:  And that really is what's going on

8    here.

9              MR. PERRI:  It's actually the opposite.  We

10   offered the defendant leniency, we offered the defendant

11   less than what we think is an appropriate sanction.

12             THE COURT:  Right, right.

13             MR. PERRI:  In exchange for him --

14             THE COURT:  Pleading guilty.

15             MR. PERRI:  Being willing to accept

16   responsibility and save us all the trouble and resources of

17   going through trial.  So if he insists on going to trial,

18   then we feel free to impose the sentence that we think is

19   appropriate.

20             THE COURT:  And that is understandable and I

21   oversimplified and, frankly, mischaracterized what the

22   provision is in the plea agreement.  I mean, this is why

23   judges shouldn't be given plea agreements ahead of time,

24   because it causes us to engage in exactly what I've just

25   engaged in.  I've never seen a case before where the
```

1    judge was handed the plea agreement ahead of time by a

2    defendant.

3              MR. PERRI:  I guess what I would be interested

4    to know is if the defendant were released, would that

5    facilitate some kind of plea in this case?

6              THE COURT:  It's not going to because he wants

7    to be clear.  He never wants to be a convicted felon based

8    on this.  He's never going to agree to a plea.  Am I right,

9    Mr. Dougherty?

10             THE DEFENDANT:  That's right.

11             MR. PERRI:  Okay.

12             THE COURT:  That's never going to happen.

13             MR. PERRI:  As long as I know.  I would also

14   indicate I believe he violated the condition --

15             THE COURT:  No, he did, and that's what makes me

16   very reluctant to put him back out on the streets again.

17             MR. PERRI:  So there's some concern as to what

18   it means to have an ability to form militia at all.

19             THE COURT:  Keep in mind, and I think this is

20   what prompted my discussion.  If he had taken the plea, he

21   would have gotten time served.

22             MR. PERRI:  I understand, Your Honor.

23             THE COURT:  So --

24             THE DEFENDANT:  And, again, in the -- because of

25   the West Virginia prosecutor being unfamiliar with

1    Pennsylvania self-defense law and something that you

2    originally rejected out of hand at the September 12th, 2019

3    hearing, I need to clarify once again, Pennsylvania has a

4    self-defense doctrine that's different than what exists in

5    New Jersey, for instance.  It's 18 PA CFA 505, 506 and 507.

6            507 says if you are going to use any kind of

7    force in self-defense, you must warn the person that you

8    intend to use the force against.

9            THE COURT:  Right.

10           THE DEFENDANT:  So Keith Dougherty's position is

11   the 5/5 2017 letter is the warning required by 507(c)(1).

12   Therefore, there could never be a beyond a reasonable doubt

13   proof that the subjective intent was to threaten.  Rather,

14   in fact, it was a presentation to the Chief Judge that if we

15   don't resolve this interference with Keith Dougherty's

16   commerce, he would have to order a militia to come to his

17   aid, and in D.C. versus Heller at page 24, it says a militia

18   is the last defense of a free society.

19           THE COURT:  Right.

20           THE DEFENDANT:  When, in fact, no one else will

21   take action, that's where you go.

22           THE COURT:  Right.

23           THE DEFENDANT:  Now, again, you had not

24   addressed the fact that I attached to you what's going on in

25   front of the Supreme Court now.

1          THE COURT:  No, I do.  I don't agree with your

2    reasoning.  I think you've connected a lot of things --

3          THE DEFENDANT:  But in 2015, Justice Thomas

4    restated the Court's precedent that these determinations are

5    made relative to the efficient operation of a militia and

6    whether or not a lawful citizen retains a right to

7    self-defense.

8          You have indicated in your transcript on

9    September 12th, there is no self-defense, and this document

10   being characterized as a threat when, in fact, it's a

11   warning, that is a misstatement.

12         THE COURT:  Right.  So I don't want to go over

13   that again.  I do think it's sad because I think you are

14   taking little piece of tidbits from a statute and cases and

15   putting them together to justify sending communication that

16   a reasonable person would read as threatening.

17         And I don't want to have -- I'm very patient

18   with you.  I've given you -- we've been here for more than

19   an hour and 15 minutes.

20         THE DEFENDANT:  Okay.

21         THE COURT:  I don't want to go over that

22   argument anymore.  You've made that argument.

23         So, you know, I just don't see a way around

24   this.  I mean, the government is right.  They offered you a

25   very lenient sentence of time served.  You rejected it.

1    They're not willing to offer that if you go to trial and I

2    can't force them to offer that.  That's the choice they make

3    and you make choices, too.  You've got the freedom to not

4    enter a plea.  You have the freedom to do a conditional plea

5    and take it up to the Third Circuit.  I actually understand

6    why you don't want to do that, because your prediction is if

7    you do, the Third Circuit is only going to affirm the

8    conviction and you don't want that and you think you have a

9    better chance of winning on appeal or, rather, you think you

10   have a better chance of getting a jury to acquit you than

11   you do to go to the Third Circuit on appeal.

12              THE DEFENDANT:  I want to clarify that one

13   twist.

14              THE COURT:  Yes?

15              THE DEFENDANT:  If I take the conditional plea,

16   then I'm out on whatever, supervised conditions or whatever

17   between then and then I lose at the Third Circuit.

18              THE COURT:  Right.

19              THE DEFENDANT:  Then I can withdraw the guilty

20   plea and go to trial.

21              THE COURT:  No, they never said that.

22              THE DEFENDANT:  That's what the conditional plea

23   says.  If it's not a plea, it's a conditional plea.  I can

24   withdraw it when I lose.

25              THE COURT:  Wait.

1              THE DEFENDANT:  By definition, conditional means

2     you can withdraw it.

3              THE COURT:  That's -- is the word conditional

4     plea?

5              THE DEFENDANT:  Yes.  Paragraph 1.

6              THE COURT:  Right.

7              THE DEFENDANT:  Keith Dougherty will enter a

8     conditional plea.

9              THE COURT:  Right.  All that means, just so

10    you'll know, conditional plea of guilty, all it means is

11    conditioned on your right to appeal.  It doesn't mean you

12    can withdraw if you lose the appeal.

13             THE DEFENDANT:  Well, then, that would be my

14    counteroffer.

15             THE COURT:  Well, you can make that.

16             THE DEFENDANT:  I'm just suggesting.  The plain

17    and ordinary meaning of conditional plea would be it's

18    conditioned based on me taking the appeal.  If I lose, what

19    benefit is it?  It would be the Carol Ann Bond situation

20    where it's moot.  You've already served all your time.  You

21    pled guilty and now she's not guilty and he gets nothing for

22    everything that she went through.

23             THE COURT:  No.  Actually, what she gets -- I

24    don't know who this person is.  So a conditional plea, and I

25    can tell you this, because not only as a judge, but as a

```
 1    defense lawyer and as a prosecutor, before I became a judge,

 2    I was involved in cases with conditional pleas.  They're

 3    very rare.  In fact, I think you still have to go to the

 4    DOJ.  You have to sign off from the U.S. Attorney probably

 5    personally to do a conditional plea is my guess.

 6                MR. PERRI:  That's correct, Your Honor.

 7                THE COURT:  Yes.

 8                MR. PERRI:  And I can represent to the Court

 9    that in all the years I've been a federal prosecutor, I

10    think I've done one or two in 18, 19 years.

11                THE COURT:  Yes.  They're very, very rare.

12                Now, what a conditional plea means, whether it

13    makes sense in common sense, it doesn't matter.  What it

14    means to people who practice criminal law in the Federal

15    Court, it means that the defendant is pleading guilty but is

16    reserving the right to challenge a legal issue to the Court

17    of Appeals.

18                THE DEFENDANT:  Mm-hmm.

19                THE COURT:  And if the defendant wins, then the

20    plea of guilty is gone.  All right?  It was conditional.

21    But if the defendant loses, the guilty plea is maintained.

22    That's what it means.

23                THE DEFENDANT:  Okay.  And what I was saying to

24    you, and just --

25                THE COURT:  Do you understand what I just said
```

1    though?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.

4              THE DEFENDANT:  And I'm trying to explain to you

5    what I say.

6              THE COURT:  Okay.

7              THE DEFENDANT:  That in an actual conditional

8    plea in the Third Circuit in 2014, Carol Ann Bond entered a

9    conditional guilty plea with a sentencing recommendation of

10   six years, served all six years.  And the Supreme Court of

11   the United States said the prosecution in the Eastern

12   District of Pennsylvania was incorrect.  They had no lawful

13   authority to charge her with that crime and therefore it was

14   removed from her conviction.

15             THE COURT:  Right.

16             THE DEFENDANT:  What did Carol Ann Bond get out

17   of that?

18             THE COURT:  I don't know.

19             THE DEFENDANT:  Nothing.

20             THE COURT:  Right.

21             THE DEFENDANT:  That's my point.

22             THE COURT:  Okay.

23             THE DEFENDANT:  So if she had done it as a

24   habeas --

25             THE COURT:  Actually, I will tell you what she

1   got out of it.  She's not a convicted felon.  That's a big

2   thing.  I thought that's what you are trying to protect.

3               THE DEFENDANT:  But here is the punchline.  She

4   did not do it in the form of a habeas.  Therefore, she could

5   not make the claims that I'm making, that once they found

6   that the primary charge was not, in fact, a federal crime,

7   it violated the Constitution to pursue it, she had to stick

8   with the mailbox violation that stayed on her record whereas

9   if she had done a habeas, that would have been removed and

10  they would have been precluded from pursuing lesser charges.

11  That's what I've been saying all along.

12              THE COURT:  Okay.  That doesn't -- I just don't

13  understand what you are saying.

14              THE DEFENDANT:  Okay.  It's the double jeopardy

15  nature of the Pennsylvania double jeopardy clause.  If you

16  overcharge a Pennsylvania defendant and that is determined

17  by the Court that it never was a charge, you never should

18  have brought it, just to get them to accept the plea deal,

19  the Supreme Court of Pennsylvania has declared that could be

20  prosecutorial misconduct.  The sanction is removal of the

21  charge and prevention from re-indictment.

22              THE COURT:  Okay.

23              THE DEFENDANT:  Before trial.

24              THE COURT:  And even if what you say is true,

25  that's Pennsylvania law and we deal with federal law.

1              THE DEFENDANT:  And that's why it's in a habeas,

2      because in federal law, 28 U.S.C., 1652, which I addressed

3      to you September 12th, 2019, if it was brought as a habeas,

4      you must accept the better protections of the Pennsylvania

5      Supreme Court.  That was the difference.  Not the criminal

6      proceeding, but in the habeas proceedings, and why it's not

7      an abuse of process to bring a habeas before trial in that

8      unique circumstance.

9              THE COURT:  All right.

10             THE DEFENDANT:  That's what it's all about.

11             THE COURT:  Like I said, that decision of the

12     Pennsylvania Supreme Court, even if you are right, if you

13     are -- even if you are correctly summarizing them, they

14     don't bear on these charges here.

15             THE DEFENDANT:  In habeas, they would.

16             THE COURT:  But what you are preserving is, by

17     going to trial is your right to have a jury decide as

18     opposed to the Third Circuit in a conditional plea context.

19             THE DEFENDANT:  Correct.

20             THE COURT:  Whether or not the government has

21     presented sufficient evidence to show that you had an intent

22     to threaten.

23             THE DEFENDANT:  Yes, beyond a reasonable doubt.

24             THE COURT:  Correct.

25             THE DEFENDANT:  Whereas it would only be, could

1    a reasonable jury have found.

2              THE COURT:  I'm just curious.  Why is it so

3    important for you to have the case tried in Harrisburg as

4    opposed to here?  Again, you have every right to do that.  I

5    know we can get it done faster here.  And you don't have to

6    tell me, but if you would, great.

7              THE DEFENDANT:  Well, I think it's appropriate

8    for you to ask.  In other words, I sent it in the form of a

9    letter to you on May 18, 2020, where the six counties

10   surrounding Harrisburg had an armed conflict with Governor

11   Wolfson's executive orders.  It's a heavily Republican

12   circumstance.  85 percent of the Republicans feel that the

13   Covid --

14             THE COURT:  You think you have a better chance

15   of winning?

16             THE DEFENDANT:  Yes.

17             THE COURT:  I get that.  I was just curious if

18   that's what it was.

19             THE DEFENDANT:  They understand the self-defense

20   doctrine I'm talking about.  They understand government

21   overreach.  They have that as a political belief, so they

22   are willing to accept that, in fact, if the government was

23   required to prove subjective intent in the threat as opposed

24   to you keep making reference to a civil standard, that being

25   negligence or a reasonable person could understand to be

 1    threatened.

 2              THE COURT:  I'm not making any reference to a

 3    civil standard.

 4              THE DEFENDANT:  Well, that's what Jeffrey

 5    Finucane did.

 6              THE COURT:  Okay.  You just said I did.  To be

 7    clear --

 8              THE DEFENDANT:  What a reasonable person would

 9    interpret to be a threat is exactly what the Supreme Court

10    rejected.

11              THE COURT:  Okay.  So what I was referring to,

12    just so it's clear, is what an appellate court would do.  If

13    you were found guilty --

14              THE DEFENDANT:  Right.

15              THE COURT:  -- or if you pled guilty --

16              THE DEFENDANT:  Correct.

17              THE COURT:  You were talking about a conditional

18    plea.  The standard that an appellate court would use would

19    say would a reasonable juror have found sufficient evidence

20    to convict you, and I think you even agreed that that is

21    what would go on.

22              THE DEFENDANT:  Again, you restated it slightly

23    differently, indicating that it's actually enough for a

24    reasonable person to think something in the form of

25    communication is a threat.  The Supreme Court rejected that

1    out of hand.  That's the one thing.  They overturned nine

2    circuit courts of appeals who had read the threat statute

3    that way.

4              THE COURT:  All right.  Well, you'll have your

5    opportunity when it comes to jury instructions.  We'll make

6    sure that they comply with the law, the Supreme Court case

7    law.

8              THE DEFENDANT:  And the self-defense portion of

9    it?

10             THE COURT:  I have not figured that out because

11   you're not allowed to just present irrelevant material,

12   and --

13             THE DEFENDANT:  Well, that was my point about

14   the Pennsylvania statute of self-defense, requiring warning,

15   and I think that is the thing we keep missing.

16             In the Virgin Islands case that I presented,

17   which is Third Circuit precedent, they said if you chose not

18   to put the self-defense defense into the jury instructions,

19   it was plain error, so we would have to come back again and

20   do it again anyway.

21             THE COURT:  I will listen to you on that.

22   Mr. Perri is probably not prepared to discuss that today,

23   but maybe you are.

24             MR. PERRI:  No, Your Honor.  I definitely do

25   think that's something that will have to be hashed out in

1  advance.

2              THE COURT:  All right.

3              MR. PERRI:  We certainly don't want --

4              THE COURT:  You submitted, or the government

5  submitted jury instructions?

6              MR. PERRI:  Mr. Finucane did, Your Honor.

7              THE COURT:  He did as well?

8              MR. PERRI:  Yes.

9              THE COURT:  Do you know, did Mr. Finucane

10  respond to the defendant's proposed jury instructions?

11              THE DEFENDANT:  No, he didn't.  That was the

12  thing we were talking about.  On July 30th, I never received

13  it.  He was under the impression I was still receiving ECF

14  communications while I was in prison.

15              THE COURT:  Okay.

16              THE DEFENDANT:  Whereas that's the way I was

17  getting everything before.

18              THE COURT:  All right.  Well, Mr. Perri, we've

19  got a number of months now, so if the government could

20  respond to Mr. Dougherty's jury instructions.

21              Mr. Dougherty, if you care to respond to the

22  government's jury instructions, you can do that.

23              THE DEFENDANT:  Mm-hmm.

24              MR. PERRI:  Will the Court make a ruling on that

25  in advance or will the Court require another -- a hearing,

1      an in-person?

2                      THE COURT:  I will certainly decide no later

3      than the pretrial conference, but why don't we do this.  How

4      much time do you want to -- I know you have a lot to catch

5      up here, to get up to speed.  How much time do you want to

6      look at his proposed jury instructions and respond?  And

7      I've got 600 cases, so it's not like I need to get this done

8      tomorrow.  Unfortunately, we can't do a trial earlier than

9      October 4th and I understand why the defendant wants to try

10     it in Harrisburg.

11                     MR. PERRI:  Yes, Your Honor, I understand.  I

12     have a trial that's going to be sometime in June.  It

13     appears it's not going to go away.

14                     THE COURT:  Okay.

15                     MR. PERRI:  So I don't know how soon the Court

16     would like --

17                     THE COURT:  I mean, I've got to make a decision

18     by September.  Right?  I think we should try to decide it at

19     the pretrial conference.  So would August, the first week of

20     August be okay?

21                     MR. PERRI:  That sounds fine.

22                     THE COURT:  Are you sure?

23                     MR. PERRI:  Yes.

24                     THE COURT:  Mr. Dougherty?  All right.  Why

25     don't we say -- how about August 6th?  Would that work?

1          THE DEFENDANT:  I've got nothing on my social

2    calendar.

3          MR. PERRI:  Your Honor, if I could just offer a

4    few thoughts.  It appears to me that there may be a

5    misunderstanding about what a conditional plea is and I

6    think the Court touched on that.

7          THE COURT:  Wait.  That I had a

8    misunderstanding?  If you do --

9          MR. PERRI:  No.  That the defendant, his

10   understanding what a conditional plea is.  I'm not sure that

11   Mr. Finucane, perhaps maybe he didn't fully explain that to

12   the defendant.  But I would just like to point out and ask

13   the defendant to consider the possibility that a conditional

14   plea has a meaning under the Federal Rules of Criminal

15   Procedure and in federal criminal practice that may be

16   different from his layman's understanding of the word

17   conditional.  I would just ask that, you know, put that out

18   there for his consideration.

19         THE COURT:  And I actually tried to articulate

20   that because I agree with you.  I think though what the

21   defendant's point is, I think what the defendant wants is

22   the right to go to the Third Circuit and lose and then come

23   back and withdraw his guilty plea.

24         THE DEFENDANT:  That's right.

25         THE COURT:  Right.  So I mean --

1          MR. PERRI:  And how would that benefit the

2    United States?

3          THE COURT:  Well, it wouldn't.  That's the

4    point.  I mean, the government would never do that.  If you

5    think about it, everybody would plead guilty.

6          THE DEFENDANT:  Yes.

7          MR. PERRI:  A plea agreement is a give-and-take.

8          THE COURT:  Right.

9          MR. PERRI:  Each side gives up a little bit to

10   arrive at a settlement, essentially a settlement where each

11   side gives up a little to get a result, and that would be of

12   absolutely no benefit to the United States and we would not

13   agree to that.

14          I would also like to note one thing.  With

15   respect to Pennsylvania law and federal law, any habeas

16   petition that the defendant files in Federal Court is going

17   to be determined with reference to federal law, not

18   Pennsylvania law.  I mean, that's just a fact and it's not

19   something that is my preference or your preference, Judge.

20   It's in the Constitution that federal constitutional law

21   takes precedence over state law.  So I would just like to

22   make that clear.  Thank you.

23          THE COURT:  Thank you, Mr. Perri.

24          THE DEFENDANT:  I just want to respond to that

25   briefly.  Not to be contentious, it is the Federal Congress

1  under its Article 1, Section 8, powers that enacted 28

2  U.S.C. 1652, where they say in any civil pleading you must

3  use in Federal Court the state statutes of the forum state.

4  That is the argument that is being presented and that is

5  what it is.  Otherwise, just as in Carol Ann Bond, the

6  conviction would have stood because the federal power to

7  institute crimes would oversee the state, but, in fact, the

8  Supreme Court disagreed and there was contention on the

9  Court where they wanted to strike down the entire treaty and

10  three of the justices wanted to take that path.  The other

11  one said it would be conducted under Ashwander.

12          Ashwander requires that you use the lowest level

13  of dispute, whether it be court rule, statute, bill of

14  rights, and then lastly, the Constitution.  They don't want

15  to open everything in the Constitution all the time.

16          Here we have a simple situation.  A citizen of

17  Pennsylvania has self-defense rights that do not exist in

18  New Jersey, for instance.  There's no self-defense

19  whatsoever.  Pennsylvania had, and I use as an example, in a

20  communication to the Department of Justice, FBI agent, the

21  circumstance where a Philadelphia mob beats a carjacker to

22  death in defense of a third person, and, in fact, they could

23  not bring any charges against them because of that

24  self-defense.

25          THE COURT:  Now, incidentally, I don't see how

1    you'll get that in front of the jury.

2              THE DEFENDANT:  Well, the point is, that's what

3    I'm charged with in Count 3.  By reporting that fact, they

4    said that was a threat and it never got transmitted to

5    anyone.  Telling the story that a mob beat the jury, beat

6    the carjacker to death and he couldn't be indicted.  By

7    telling the FBI agent that story, they cannot charge me with

8    Count 3.

9              So it was never transmitted to Judge Connor or

10   Judge Conti.  It's not a threat and it's just a lawful

11   description of what actually happened in Philadelphia.

12   That's not a threat.

13             THE COURT:  Well, the government will have its

14   burden.

15             Mr. Perri, the thing I didn't -- I know Mr.

16   Finucane had expressed great concern about the ability or

17   permissibility, I should say, of the defendant essentially

18   arguing in front of the jury as opposed to testifying, and I

19   would encourage you to go back and look at the government's

20   papers.  I have not looked at them yet, but, you know, the

21   government needs to make sure it has provided the Court with

22   sufficient case law that would support its positions and its

23   recommendations.

24             And, Mr. Dougherty, if you think there's case

25   law that addresses the permissibility of argument available

1  to a pro se defendant, you should also bring that to my

2  attention.

3          THE DEFENDANT:  Again, I was under the

4  impression that all of the motions in limine and related

5  issues would address that and then I would simply be

6  permitted to do my opening and we would conduct a trial

7  normally and then I would do a closing.

8          It seems to me that Jeffrey Finucane felt that

9  he wanted to prevent me from doing an opening because --

10          THE COURT:  You're right.

11          THE DEFENDANT:  -- I would mislead the jury.

12          THE COURT:  Right.  He raised the possibility of

13  you not being able to do an opening.  That is exactly right.

14  It's a very hard issue for the Court to decide because

15  there's a fine line, right, between testifying, and if you

16  testify, you're subject to cross-examination and making an

17  argument and so that's what we need to address.

18          Are you going to take the stand?

19          THE DEFENDANT:  I can't see a way around it,

20  quite honestly.  That's what I was --

21          THE COURT:  Right.  I have to figure that out,

22  because you could conceive of a situation, right, where a

23  defendant would say, well, get up in an opening statement,

24  say all the things that you have just said, and then not

25  take the stand, you see, and then you will have put in front

1    of the jury those arguments -- and I'm using my fingers in

2    quotation marks -- arguments in lieu of testimony and not

3    being subject to cross-examination.  See, that is very

4    unfair to the government.

5              And I don't have a side here, your side or the

6    government's side.  I'm the neutral arbitrator trying to be

7    fair, so I want to be fair about that.  You need to figure

8    out a way to do it so that you can make your defense, but

9    under the rules, and under the normal rules, you couldn't

10   make that defense without taking the stand.

11             THE DEFENDANT:  Mm-hmm.

12             THE COURT:  For me to figure out what to do, and

13   I don't know.  I can see why it makes sense from the

14   government's perspective to say you don't get to do an

15   opening statement.  You have to do it by taking the stand if

16   that makes sense on some level and I need to understand the

17   case law better.

18             THE DEFENDANT:  Mm-hmm.

19             THE COURT:  So I'm giving you the opportunity on

20   that.  If you know of cases that you think would be helpful

21   to your side of the argument, you should feel free to submit

22   those to me.

23             MR. PERRI:  Your Honor, I share Mr. Finucane's

24   concern 100 percent on that, and I would note, if I could

25   just put in layman's terms, the opening statement, generally

1   speaking, is not intended to be a vehicle to deliver

2   argument.

3            THE DEFENDANT:  Yes.

4            THE COURT:  Of course, it's not.

5            MR. PERRI:  You're supposed --

6            THE DEFENDANT:  You're supposed to lay out your

7   desire to keep me from making one.

8            THE COURT:  Right.

9            MR. PERI:  You are supposed to lay out what the

10  evidence is going to be in the case.  Right.

11           THE COURT:  What the fine line is though, if the

12  defendant says here's what the evidence is going to be, I'm

13  going to testify to A, B and C.  That's why I need case law.

14  I need help to understand.

15           MR. PERRI:  I understand, Your Honor.

16           THE COURT:  All right.  Anything else?

17           THE DEFENDANT:  One last question.  With regard

18  to this ongoing concern about Covid 19 and bail, I would

19  like the Court to review United States versus Lance Green,

20  the case recently decided in the Middle District of

21  Pennsylvania, when, in fact, after successive motions by the

22  defendant, there were two instances of Speedy Trial Act

23  violations, some of which were attributed to the defendant,

24  but ultimately, it fell to the responsibility of the Court.

25           The first initial grant of the Speedy Trial Act

1    violation resulted in immediate re-indictment because it was

2    simply without prejudice.  Because the time is not flexible,

3    it has to be adhered to, reinstated.

4            And then the second time with regard to changing

5    attorneys, standby counsel, the judge was also changed, and

6    because of the scheduling conflicts, the bail reform issue

7    or bail motion was revisited, so even though the indictment

8    was reinstated, Green was put out on some conditions of

9    release and that was a gun charge.

10           So, again, just like you say, the Constitution

11   is superior to federal, you know, understanding and, in

12   fact, certainly, it's superior to a district court judge

13   issuing a local order.  28 U.S.C. 2071(b) provides it has to

14   be a certain process, public open comment and the like.

15           And, again, in United States versus Jeffrey

16   Olsen out of the Ninth Circuit, the case was dismissed with

17   prejudice even though the chief judge had exempted all trial

18   based on the Speedy Trial Act violations.  There is no such

19   exemption to the Constitution and therefore to the Speedy

20   Trial Act.

21           So, you know, we're going to have to address the

22   issue of being on bail even if we're going to trial if only

23   through the Speedy Trial Act violation.

24           THE COURT:  Okay.  Mr. Dougherty, you've come

25   into court and for the most part, and by far the most part,

1   you're very civil, you're very respectful.  On occasion

2   you've been disrespectful, like when you tell me to be

3   patient or if I would only listen, but for the most part,

4   you're very respectful.  And when I know the government was

5   prepared to offer a conditional plea, even if I -- and,

6   Mr. Perri, you make a very good point, which is, look, that

7   is basically a sweet deal to be done with this case.  I get

8   it.  I get that.

9            MR. PERRI:  I can't even describe how unusual it

10  is for us as an office to do this and for me personally to

11  do this, and I'm not sure the defendant understands it.

12           We suggest that it's really important for all of

13  us to see the forest for the trees and recognize what this

14  is.  And if there's any way that I could perhaps go back and

15  talk to Mr. Finucane to see if he has another idea, I'm

16  willing to do that, Judge.

17           THE COURT:  No.  I'm not trying to get a plea.

18  I'm sorry.  All I meant is there was a point recently where

19  the government was willing.

20           MR. PERRI:  You're correct.

21           THE COURT:  What I'm about to say is that all of

22  this makes me want to rethink detention pretrial.  That's

23  all.  All right?  And yet what makes me think that that is a

24  really bad idea to reconsider is, Mr. Dougherty, you double

25  down.  You don't recognize that you can't send federal

1    judges communications that convey the kind of threats that

2    are in the communications that you've sent.

3                  THE DEFENDANT:  Mm-hmm.

4                  THE COURT:  And that makes me think, well, how

5    in the world could I let you out right now pending trial,

6    because you don't seem to get it.  I mean, for all I know,

7    you'll start threatening me.  Right?  And, you know, I don't

8    know if there are some kind of restrictions, you know, that

9    you would be willing to abide by.  You know, that's what I

10   am struggling with, because this is a very serious thing.

11   We can't have a system where people threaten judges.  You

12   have not been found guilty.

13                 THE DEFENDANT:  Correct.

14                 THE COURT:  You have not been found guilty, but

15   yet when you are on supervised release and you write the

16   kind of communication you did, that suggests strongly that

17   you need to be detained and that's why I'm not willing to

18   overturn Judge Burke's detention order.

19                 THE DEFENDANT:  And, again, Your Honor, I'm

20   simply saying that because of the Speedy Trial Act

21   violation, you do have a right to act according to the act

22   and dismiss the indictment and simply restate it.

23                 THE COURT:  There's no Speedy Trial Act

24   violation in my mind.

25                 THE DEFENDANT:  According to Green, there is.

1          THE COURT:  But I'm not there.

2          THE DEFENDANT:  I'm simply saying that is what

3    the case says.  And, again, it addresses in United States

4    versus Jeffrey Olsen, it addresses your understanding of a

5    chief judge from a District Court being able to exempt all

6    of the trials out of the Speedy Trial Act that was summarily

7    rejected, and, in fact, the indictment was dismissed with

8    prejudice and two people died from his prescription drug

9    overdoses in that case.  Very simple.  And there have been

10   other cases that keep coming along.

11          Now, again, if you look at the -- there's one

12   opinion in this, in this circuit as to the executive order

13   overreaches, and that happens to be County of Butler versus

14   Governor Wolf.  It was ruled upon by a federal judge in the

15   Western District of Pennsylvania, case number 20-CV-677.  He

16   made a ruling on September 14th, 2020, that, in fact, there

17   is no Covid 19 exception to the Constitution.

18          THE COURT:  Okay.

19          THE DEFENDANT:  So the understanding that a

20   district court judge could suspend all of the trials out of

21   the Speedy Trial Act was not accepted and it's in the

22   Supreme Court now.

23          THE COURT:  Again, so we've off on a different

24   issue.

25          THE DEFENDANT:  Yes, but my point is --

1              THE COURT:  You can litigate that.  That's not

2      the issue I was raising.

3              THE DEFENDANT:  My point was the solution there

4      was they, instead of dismissing his indictment with

5      prejudice, they reinstated the indictment and they revisited

6      his bail because of the added time concerns.

7              THE COURT:  Right.

8              THE DEFENDANT:  That's all I was saying.  They

9      did it as a combination in this case.

10             THE COURT:  Right.  And I wasn't addressing the

11     Speedy Trial Act.  I was addressing revisiting bail in light

12     of the situation that we're put currently in.

13             Mr. Perri, does the government have a position

14     on -- put aside all the legal arguments that Mr. Dougherty

15     made.  Does the government have a position on whether the

16     Court should or should not revisit detention given that we

17     now have a trial date for October 4th?

18             MR. PERRI:  Based on my understanding of the

19     defendant's persistence in the statements that he makes and

20     his firm belief that it's okay to make them, we would oppose

21     that, Your Honor.

22             THE COURT:  Mr. Dougherty, in making an

23     application for a reconsideration of, or are you making a

24     new application to be released?

25             THE DEFENDANT:  Technically, Your Honor, I think

1    what you say you were going to put in this order would be

2    sufficient for what I'm going to do, but I'm just putting

3    you on notice that that issue will be raised before this is

4    all played out.

5              THE COURT:  Do you have any proposed -- see, if

6    you were represented by counsel, you know, a lawyer would do

7    what Mr. Young did on your behalf, and I know you rejected

8    it, and he would make a proposal to the Court.

9              THE DEFENDANT:  Well, again, my only objection

10   to Mr. Young was the fact that this issue related to the

11   order that you just said you were going to produce today was

12   pending at that time.  I said it would be better for us to

13   get that done formally than to simply ad hoc take a look at

14   whether or not we should review this bail issue on a whim or

15   as he was presenting it.

16             So if the motion was already pending and hadn't

17   been ruled on, I thought it would be more efficient to, in

18   fact, say, well, no.  Why don't we go ahead and address, you

19   know, 108, ECF 108 in its entirety and get that out of the

20   way before addressing this circumstance being that because

21   of Covid 19, I should be on supervised release.  That's what

22   I was suggesting.

23             In fact, I thought we had scheduled the status

24   conference for July 15th.  That got canceled.  We then did

25   that by video conference on July 30th and all of these

 1      issues were brought up at that point.  So I thought we were

 2      going to resolve all of them.  None of that was resolved.

 3      And, in fact, again, we're finally at this point now.

 4               But my position is clear, and you know this,

 5      we've discussed this, that there is no way for a chief judge

 6      of a district court to exempt the time out of the Speedy

 7      Trial Act the way --

 8               THE COURT:  I know you're making that --

 9               THE DEFENDANT:  That's what I'm saying.

10               THE COURT:  I get that.  I get that.

11               All right.  Hold on a second.  Okay.  What we're

12      going to do is we're going to recess until 12:30.  Let's do

13      that so I can attend to something and then I will pick up

14      where we left off.

15               All right?  Hold on.  So, yes.  12:30.  I don't

16      think we'll be very long.  All right.  We'll plan on 12:45.

17      All right?  All right.  Thank you.

18               (Recess taken.)

19                       -  -  -

20               (Proceedings resumed after the recess.)

21               THE COURT:  All right.  Please be seated.  Okay.

22      Mr. Dougherty, you need to move this way.

23               All right.  I've treated your statements earlier

24      as an application to revisit the conditions of your pretrial

25      status.  Now, normally, when a defendant makes such an

1    application, they present conditions of a release that they

2    believe would establish to the Court's satisfaction that

3    they would not pose a risk to the community, a risk of

4    danger or a risk of flight.  You don't have a lawyer.  This

5    is, you know, one of the things, an example of what we run

6    into.

7            So here's the plan of action I have, is to give

8    you due consideration of the application, is to provide an

9    opportunity for you to meet with pretrial services to

10   propose a plan of action and then to have a hearing.

11           Does that strike you as fair?

12           THE DEFENDANT:  Yes.

13           THE COURT:  All right.  Now, Mr. Perri, I know

14   you have to travel a long way.  I'm not sure exactly how

15   long, but my guess is you probably have to come the night

16   before the hearing.

17           MR. PERRI:  Most likely, Judge, unless it would

18   be, like, maybe late afternoon.

19           THE COURT:  And then you would probably run into

20   issues -- let me ask this, and I have no time to do the

21   hearing next week.  The earliest I can do it, it looks like

22   I could do it June 7th.  That's a Monday, or June 8th, which

23   is a Tuesday.

24           Are the Marshals limited as to how many folks

25   you can bring in at a time, because I have a proceeding I

1    think at 9:00 and 11:00, 9:00 and 12:00.  So there are

2    already two criminal proceedings I have.  I don't know what

3    the other judges have.

4              U.S. MARSHAL:  I would have to check, Judge.

5    Usually four because of the vehicle.

6              THE COURT:  So is that four per day right now?

7    Yes.  I don't know.  Is June 8th even do-able for you?

8              MR. PERRI:  It might be.  Would the Court

9    consider doing it by Zoom perhaps since it's a relatively

10   minor --

11             THE COURT:  Yes.  Actually, I could do that.

12   Well, I'm going to have the defendant brought in here, but I

13   could have you appear by Zoom.

14             MR. PERRI:  Yes.

15             THE COURT:  That has to be workable, isn't it?

16             MR. PERRI:  We've done that a few times in my

17   jurisdiction.  I'm sure it's just a question of technical --

18             THE COURT:  The only problem is I don't know if

19   the defendant could see you on Zoom.

20             THE DEFENDANT:  That's the way I was --

21             THE COURT:  No.  I'm not going to have you by

22   Zoom here.  I'm going to have you here.

23             THE DEFENDANT:  I was present in the courtroom

24   in Harrisburg and Magistrate Burke, both at my arrest and

25   arraignment, was by Zoom on the video.  You can watch the TV

1    and communicate.

2              THE COURT:  Right.  I just don't know that that

3    particular TV that I'm pointing to, which is at your table

4    where you're sitting, works for Zoom.

5              Let me ask you this:  Would you be willing to

6    waive your right to see the prosecutor if I did that?

7              THE DEFENDANT:  Yes.  A phone call is perfectly

8    fine as well.  That would be even more convenient.

9              THE COURT:  We'll work it out.  We'll have

10   Mr. Peri appear by phone or by video.  And then I had

11   Mr. Matthews, who is the head of our Pretrial Services, is

12   in the courtroom right behind you.

13             And can we arrange for Mr. Matthews to have an

14   opportunity to meet with -- is that right, Mr. Matthews, you

15   could do that this afternoon?

16             MR. MATTHEWS:  I can, Your Honor.

17             THE COURT:  Do you want to do it in the

18   courtroom or can you do it downstairs?

19             MR. MATTHEWS:  If they can accommodate the

20   courtroom?  If not, the interview room.

21             THE COURT:  Okay.  Is the interview room okay?

22             U.S. MARSHAL:  Either way, Judge.

23             MR. MATTHEWS:  We shouldn't be very long.

24             THE COURT:  What's your preference?

25             MR. MATTHEWS:  Here at the table.

```
 1                    THE COURT:  All right.  Are you good with that?

 2                    U.S. MARSHAL:  Yes.

 3                    THE COURT:  What we'll do, we'll clear the

 4       courtroom.  The Marshals have to be here.

 5                    MR. MATTHEWS:  Absolutely.

 6                    THE COURT:  Is that all right?

 7                    THE DEFENDANT:  Yes.

 8                    THE COURT:  So here's my concern.  I've been

 9       grappling with your situation from the beginning.  As I

10       said, you come in and at times you appear very civil and

11       respectful and then, you know, but you write these things

12       and you seem intent on insisting on being able to write

13       those things.  And, you know, if that's the position you

14       want to take between now and trial, that you get to just

15       continue along that line of conduct, then you probably

16       shouldn't even -- I mean, it's probably a non-starter.  But

17       if you are willing to subject yourself to certain

18       limitations?

19                    THE DEFENDANT:  Yes, yes.  Fully willing, Your

20       Honor.  In fact, I still believe that the ones that wound

21       up me getting arrested the second time were never

22       transmitted.

23                    THE COURT:  And I will deal with that at a later

24       date.

25                    THE DEFENDANT:  I'm just saying, I didn't
```

1    purposely violate the order.  It says I must know I'm

2    communicating.  I wasn't communicating as far as I

3    understood it.

4                THE COURT:  Okay.  All right.  Yes.  Hey, look,

5    for all I know, the government is going to decide to try you

6    in October on only the first two counts.  You understand the

7    government can make that call.  Right?

8                THE DEFENDANT:  I understand it.

9                THE COURT:  Can simplify its case and say I'm

10   only going to bring these first two.

11               THE DEFENDANT:  That's the impression Mr.

12   Finucane gave me.  You've been complaining about these.

13   We're going to drop these counts.

14               THE COURT:  Oh, he actually said that?

15               THE DEFENDANT:  Yes.

16               THE COURT:  And I only say this because I know

17   from experience.  Again, both a defense lawyer and a

18   prosecutor, that happens, that the prosecution wants to

19   streamline the case.  So that could very well happen to you,

20   in which case you would win on those two counts.

21               MR. PERI:  I assume that was in the context of

22   the plea negotiation.

23               THE COURT:  Hold on.  I'm not holding the

24   government -- I'm not at all saying, confirming that the

25   government actually said that.

```
1              THE DEFENDANT:  We were just confirming that

2     there was an argument back and forth on that subject.

3              THE COURT:  And that's your position.  That's

4     fair.  Anyway, you know, Mr. Perri, I'm not holding the

5     government to that at all.  I'm actually just trying to

6     forewarn Mr. Dougherty that that could happen.

7              MR. PERRI:  Understood.

8              THE COURT:  I had no idea that there was any

9     discussion between Mr. Finucane and Mr. Dougherty about

10    that.  For that matter, I didn't have any knowledge about

11    the particulars of their discussion until this morning.

12             And just so it's clear, I'm not accepting just

13    your view of it, Mr. Dougherty.  I mean, Mr. Finucane wasn't

14    here.  I'm not making any decision based on the

15    conversations you had.

16             THE DEFENDANT:  And I'm just trying to comply

17    with your order to keep you up to date as to what has been

18    going on.

19             THE COURT:  Okay.  So your point would be, you

20    would be willing to subject yourself to conditions that

21    would limit what kind of communications you can have?

22             THE DEFENDANT:  Certainly.

23             THE COURT:  Okay.  And there has to be pretty

24    strict supervision and I'm going to leave all of that to

25    Probation.  And I'm not prejudging it.  I've got to hear
```

1    what you are going to make.  In other words, you're going to

2    make your case for pretrial release based on whatever you're

3    going to propose to this presentence officer today and

4    perhaps you can have the opportunity to discuss further next

5    week with the presentence officer.

6             And what we will do is, we'll set a hearing.  So

7    the only problem is doing it June 8th is if you already have

8    three defendants in the building, you can't bring them in?

9             U.S. MARSHAL:  Transporting, Judge.

10            THE COURT:  Yes.  Actually, hold on.  If you

11   have to bring him back to FDC, you're saying it doesn't

12   matter what time?

13            U.S. MARSHAL:  It doesn't matter what time.

14            THE COURT:  Mr. Matthews, if the defendant were

15   to be released on a Monday, do you have to do some kind of

16   process?  I mean, like, what's the latest you would want?

17            MR. MATTHEWS:  I would say early to

18   mid-afternoon, Your Honor.

19            THE COURT:  So if we did it like 2:00 o'clock,

20   that would give you enough time?  I'm going to assume you're

21   going to want to end up in Maryland if you had your wishes.

22   Is that right?

23            THE DEFENDANT:  I have not -- I have not even

24   considered any of that as yet.  I have not been able to

25   contact anyone from Maryland.

1              THE COURT:  Right.

2              THE DEFENDANT:  I have not even considered any

3     of that.

4              THE COURT:  Okay.  So apparently there are three

5     criminal proceedings in the building on Tuesday, so I'm

6     going to make this the fourth.

7              U.S. MARSHAL:  Okay.

8              THE COURT:  All right.  And it's going to be

9     for -- we're going to plan it for 10:00 o'clock on June 8th,

10    the morning, of June 8th.  Now, there's a plea hearing right

11    before it, so you may not start right at 10:00, and so if

12    you are going to be calling in, call in right before 10:00,

13    but it may be that we don't actually start the hearing until

14    a few minutes thereafter.

15             MR. PERRI:  Okay.

16             THE COURT:  And basically, it will be a hearing

17    on defendant's application to modify the conditions of

18    pretrial detention and we'll also notify Mr. Young.  He

19    won't represent you at that hearing, but he's standby

20    counsel, and at the very least it will afford you the

21    opportunity to speak with him about subpoenas and what else

22    you need in terms of trial preparation.  All right,

23    Mr. Dougherty?

24             THE DEFENDANT:  Mm-hmm.

25             THE COURT:  Mr. Perri, anything else?

1            MR. PERRI:  No.  Thank you, Judge.

2            THE COURT:  All right.  And, Mr. Dougherty,

3    anything else?

4            THE DEFENDANT:  No.

5            THE COURT:  Mr. Matthews, I will leave it to you

6    then to speak with Mr. Dougherty, and if necessary, to

7    arrange for some kind of ability to communicate with him

8    next week in case -- it sounds like at the very least, his

9    proposed plan at this stage would be very, and not in any

10   kind of definitive form because he has not had an

11   opportunity to speak with people.  Okay.

12           And then also we've got an August 6th deadline

13   for any responses to the proposed jury instructions.  That

14   applies to both sides.  That's due August 6th.  There should

15   be no further motions.  We've already dispensed with all of

16   the motions.  And I think that takes care of it.

17           Mr. Perri, anything else?

18           MR. PERRI:  No.  Thank you, Your Honor.

19           THE COURT:  Mr. Dougherty, anything else?

20           THE DEFENDANT:  No.

21           THE COURT:  All right.  We're adjourned.  Thank

22   you very much.

23           (Hearing concluded at 1:02 p.m.)

24                   -  -  -

25