1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE MIDDLE OF PENNSYLVANIA

3  UNITED STATES OF AMERICA )
                     )

4                     )  No. 19-cr-140-CFC
   v.               )

5                     )
  KEITH THOMAS DOUGHERTY  )

6                     )
         Defendant.     )

7

8

9

10              Thursday, March 24, 2022
                  12:03 p.m.

11                  Sentencing

12

13              844 King Street
              Wilmington, Delaware

14

15  BEFORE: THE HONORABLE COLM F. CONNOLLY
  United States District Court Judge

16

17

18  APPEARANCES:

19

20           UNITED STATES ATTORNEY'S OFFICE
           BY:  DAVID PERRI, ESQ.

21                Counsel for the Government

22

23

24        BY:  KEITH THOMAS DOUGHERTY, pro se

25             - - - - - - - - - -

1                    P R O C E E D I N G S

2

3          (Proceedings commenced in the courtroom beginning at

4     12:03 p.m.)

5                    **THE COURT:**  All right.  Good afternoon.  Please

6     be seated.

7                    So Counsel and Mr. Dougherty, this is the time

8     the Court has set aside for sentencing in the case of

9     United States against Keith Thomas Dougherty, and it's

10    Criminal Action Number 19-140, right?

11                   So first of all, before we get started with the

12    sentencing, there is outstanding, right now, the

13    defendant's motion titled Combination Rule 29 and 33, as

14    well a Federal Rule of Civil Procedure Partial Summary

15    Judgment Motion, unquote.  That's DI234.

16                   I have written a short order that will be

17    entered right after this hearing.  I'm going to read,

18    summarize it, really, into the record, just for the

19    parties' benefit.

20                   So the defendant brought this motion having

21    been found guilty by a jury of one count of mailing

22    threatening communications in violation of 18 U.S.C.

23    Section 876(c)and two counts of interstate communications

24    with threatening to injure in violation of 18 U.S.C.

25    Section 875(c).

1          As this is a criminal case, and because Mr.

2     Dougherty is an incarcerated pro se defendant, with

3     apparently limited access to a computer, I will treat the

4     motion as a timely filed motion for judgment of acquittal

5     under Federal Rule of Criminal Procedure 29 and for a new

6     trial under Federal Rule of Criminal Procedure 33.

7          Rule 29 provides that the Court on the

8     defendant's motion must enter a judgment of acquittal of

9     any offense for which the evidence is insufficient to

10    sustain a conviction.

11         In ruling on such a motion, the District Court

12    must review the record in the light most favorable to the

13    prosecution to determine whether any rational trier of

14    fact could have found proof of guilt beyond a reasonable

15    doubt based on the available evidence.

16         That proposition is supported by Third Circuit

17    case titled *United States against Smith* found at 294 F.3d

18    473, specifically at Page 476.

19         Rule 33 provides that a court may vacate any

20    judgment and grant a new trial if the interest of justice

21    so requires.  A District Court can order a new trial only

22    if it believes that there is a serious danger that a

23    miscarriage of justice has occurred; that is, that an

24    innocent person has been convicted.

25         That proposition of law can be found in the

1    *United States against Johnson,* a Third Circuit case, that

2    is found at 302 F.3d 139 at Page 150.

3            Like dozens of other motions that he has filed

4    in this case, Dougherty's pending motion is difficult to

5    decipher.  As best I can tell, he makes two arguments in

6    support of the motion.  He argues, first, that the

7    Government presented, and I quote here, no evidence

8    required under the *Elonis* subjective intent element of the

9    crime that the communication was transmitted as a threat

10   to any person, unquote.  That's found at Page 7 of the

11   motion.

12           I assume that Dougherty is referring here to

13   *Elonis against United States*, a Supreme Court case found

14   at 575 U.S. 723.  The Court held in *Elonis* that the mental

15   requirement for Section 875(c) is satisfied if the

16   defendant, quote here, transmits a communication for the

17   purpose of issuing a threat or with knowledge that the

18   communication will be viewed as a threat, unquote.  That's

19   at Page 740.

20           Although Elonis addressed Section 875(c), the

21   language of Section 876(c) tracks in relevant part Section

22   875(c).

23           So for instance, at 875(c), the statute reads:

24   Whoever transmits in interstate or foreign commerce any

25   communication containing any threat to injure the person

1    of another shall be fined or punished under statute.

2          Similarly, if one looks at 876(c), you will

3    find the following language, and I have some ellipses in

4    here.  But it reads in relevant part:  Whoever knowingly

5    deposits in the mail or causes to be delivered any

6    communication addressed to any other person, and

7    containing any threat to injure the person of the

8    addressee.  So basically the statutes parallel each other.

9          Consistent with *Elonis's* holding, I instructed

10   the jury that an essential element of each count was that,

11   and I quote, the defendant either intended the

12   communication to be a threat or had knowledge that it

13   would be viewed as a threat, unquote.  Those are jury

14   instructions four and five.

15          Dougherty's May 6, 2017 letter, and Chief Judge

16   Conners' testimony about that letter, provided ample

17   evidence to support the jury's finding that this element

18   was satisfied.

19          Dougherty seems to believe that to meet this

20   element, the alleged threatening communication must have

21   been made directly to the threatened person, but he is

22   mistaken.  Nothing in the language of either 875(c) or

23   876(c) requires that the threat be made directly to the

24   intended target.  Instead, the statute simply prohibit,

25   and I quote, any threat to injure the person, unquote, or

1    another.

2            And I would point the parties to *United States*

3    *against Stoner*.  It's a Third Circuit opinion from 2019,

4    found at 781F at App'x at 81, but it's at footnote six.

5    And there the Court wrote, quote, the language of Section

6    875(c) does not require that the threat be made directly

7    to the intended target.  It simply prohibits any threat to

8    injure the person of another made in interstate commerce.

9            Dougherty's second argument appears to be that

10   his threatening communications were made in self defense

11   and protected by the Pennsylvania Constitution.  I have

12   addressed this contention on numerous occasions, and I

13   have explained to Mr. Dougherty many, many times that

14   Pennsylvania's self defense laws have no application to

15   this case and do not excuse or justify his threatening

16   communications to Federal judges.  And for those reasons,

17   I'm going to deny the motion.

18           And Mr. Dougherty, you can take that issue up

19   on appeal, which I understand you intend to do.  So I

20   formally deny the motion, and I will have that order

21   docketed shortly.

22           So then, we turn I think to the sentencing.

23   Are there any other issues we need to address other than

24   sentencing?  Mr. Perri?

25           **MR. PERRI:**  Not from us, Your Honor.

1          **THE COURT:**  Mr. Dougherty?

2          **THE DEFENDANT:**  The habeas ruling I never heard

3     anything about that.

4          **THE COURT:**  That's in the Third Circuit or if

5     the Third Circuit has not disposed of it, but I don't have

6     a habeas petition before me.

7          **THE DEFENDANT:**  ECF108 and 115 I thought you

8     were going to issue some sort of ruling related to that.

9     You indicated numerous times that was preserved for

10    appeal.  I assumed it was being preserved just like a

11    Rule 29 would be until after trial if there were certain

12    issues.

13         **THE COURT:**  Hold on one second.  So I believe

14    I've adjudicated all motions, including 108.  And you

15    know, frankly, Mr. Dougherty you filed a lot of motions.

16    But my recollection is I've dealt with 108 on a number of

17    occasions.  You can't have a habeas petition filed in this

18    Court.  You don't even reside in Delaware.  Actually, you

19    weren't held -- well, the habeas petition, to the extent

20    it existed, should have been brought in the Eastern

21    District of Pennsylvania where you confined.  And I

22    believe you did bring a habeas petition, right?

23         **THE DEFENDANT:**  Again, just to clarify,

24    according to *Rasul v. Bush* from 2004, that because you

25    have jurisdiction over the detainers of me, you had

1    subject matter jurisdiction.  And that was then resolved

2    finally in *Boumediene v. Bush*, 2008, the Supreme Court

3    indicated that because I was detained in FDC Philadelphia,

4    where you exercise jurisdiction over the facility, you had

5    to take up the habeas corpus petition because it is a

6    jurisdictional statute.  The fact that you didn't was a

7    jurisdictional default of the tribunal.  And that was

8    indicated in some subsequent filings that I think it got

9    missed because as it was going back and forth, it was then

10   suggested to me to go ahead and file in the Eastern

11   District.

12           **THE COURT:**  Which I think you did in front of

13   Judge Wolson.

14           **THE DEFENDANT:**  And he basically felt that the

15   only solution was a bail motion back here which had been

16   pending in ECF108 since March 23.  You finally ruled to a

17   certain degree on that on June 11, 2021.  But it never

18   addressed the ECF issues as part of the other elements

19   that I outlined if, in fact, as Justice Elido says in his

20   opinion, if I wanted to challenge the jury instructions

21   that you had used, I would have had to give you specific

22   notice as to what objections I was complaining of.  And

23   it's contained in ECF108.  You never ruled on that as

24   being acceptable, deficient in some way or whatever the

25   case may be.  So I assumed you were going to do that as

1    part of the 29 motion.

2              THE COURT:  Well, I will tell you what, I will

3    then.  To the extent the motion or aspects of the motion

4    weren't ruled upon, I hereby deny them.

5              THE DEFENDANT:  If you could just put that note

6    in the order, then, in fact, it becomes appealable.  But

7    until you put it in the docket, I can't even appeal.

8              THE COURT:  Well, actually, here's the thing,

9    you can now -- after today, you get to appeal anything and

10   everything you want that's been part of this criminal

11   action.  So any filing you've made in the criminal action,

12   you will be able to appeal.

13             THE DEFENDANT:  I mean, that just brings us

14   back to the habeas because that has --

15             THE COURT:  And so to the extent you filed any

16   kind of petition, no matter what it is -- hold on a

17   second.

18             Yeah, I denied -- just for the record, on

19   October 15, 2020, I denied DI108.  That's Docket

20   Number 145.  But here's the thing, the bottom line is to

21   make it easy for you.

22             When we complete your sentencing, at that point

23   or shortly thereafter, a judgment will be entered.  And

24   then within 14 days, is that right, within the judgment?

25   But you should check with Mr. -- I think it's 14 days,

1   right.  And I'll confirm that.  You will have an

2   opportunity to file an appeal with the Third Circuit.  And

3   at that point, sir, you can raise any and all issues about

4   my rulings in this case.

5         **THE DEFENDANT:**  I don't mean to be

6   disrespectful.  But my reading of Rule 12(d)indicated that

7   if you deny 108 on that date that you would outline the

8   facts that you indicated were being denied and used in

9   that type of thing.  That's what I kept submitting

10   additional requests for.  So is that going to appear

11   anywhere in the order?

12         **THE COURT:**  No.  I'm not going to say anything

13   further about 108.

14         **THE DEFENDANT:**  So the habeas, that is actually

15   jurisdictional.  In fact, I am suggesting to you that I,

16   at your order to go ahead and file in the Eastern District

17   of Pennsylvania in my subsequent filings.  I could

18   understand why Judge Wolson didn't want to take

19   responsibility for what I'm now declaring is a default of

20   jurisdictional concerns, not just a simple Rule 55.

21         **THE COURT:**  But you can raise jurisdictional

22   concerns with the Third Circuit.  You have that

23   opportunity.

24         **THE DEFENDANT:**  So then, as far as the habeas

25   is concerned, you've made no ruling on that or you won't

1    make a ruling on it?

2              **THE COURT:**  To the extent you have -- you

3    believe DI108 is a habeas?

4              **THE DEFENDANT:**  No, 115 would be the habeas.

5              **THE COURT:**  I have disposed of all motions

6    pending in this case.

7              **THE DEFENDANT:**  Good enough.

8              **THE COURT:**  Thank you.  All right.  And so I do

9    want to stand corrected.  There were apparently two other

10   items.  They were titled motions.  And I will deny them.

11             For the record, DI213, which was titled Motion

12   to Supplement Under 28 U.S.C. Section 2242, and to Set

13   Aside ECF134 Under Rule 60(b)4 Undecipherable as Invalid.

14   That's the title of that motion.  I hereby deny that.

15             There's DI238, which was titled Motion for

16   Panel Rehearing or Review, I will similarly deny that.

17   Okay.

18             **THE DEFENDANT:**  That was a courtesy copy for

19   you.

20             **THE COURT:**  That's why I'm saying, so both of

21   those were courtesy copies.

22             **THE DEFENDANT:**  No.  The one was specifically

23   to address the habeas that we were just talking about.

24             **THE COURT:**  So that I denied.  You can take

25   that up to the Third Circuit.

12

1          **THE DEFENDANT:**  The other has to do with the

2    bail motion that we were just referring to that Judge

3    Wolsen set.  They finally sent me an order on it six

4    months late indicating that it was now moot.  And I said,

5    well, there were issues that avoid the mootness doctrine

6    because capable of repetition and never getting a ruling

7    just as we're talking about here now.

8          **THE COURT:**  All right.  Well, I've done my

9    best.  You can take it up on appeal to the Third Circuit.

10   All right.  So that disposes of all motions.  So then, we

11   should turn to the sentencing.

12          Mr. Dougherty, did you submit anything for me

13   to consider with respect to sentencing?

14          **THE DEFENDANT:**  No, I did not get anything back

15   on the 29.  I thought I would get that first and then I

16   would submit the recommendation at that point.

17          **THE COURT:**  So do you want to submit anything?

18          **THE DEFENDANT:**  I, frankly, hadn't read over --

19   this is the first I'm seeing the recommendation from the

20   Government.  I thought I would get this and then I would

21   be able to respond to that, but apparently not.

22          **THE COURT:**  I want to make sure you have an

23   opportunity to be heard.

24          **THE DEFENDANT:**  Well, then, I need time to

25   respond to this.  I'm just receiving it for the first time

1   today.

2           **THE COURT:**  Okay.  All right.  Mr. Perri?

3           **MR. PERRI:**  Judge, I think he did submit a

4   document where he appears to raise two objections to the

5   PSR.  I'm not sure that was actually filed with ECF.  But

6   I think it was submitted to the Court.  And it doesn't

7   really have a title on it, but there's a date of

8   February 24, 2022 where -- there is a file stamp on the

9   front of it.  And I know that Mr. Williams addressed those

10  objections.

11          **THE COURT:**  Hold on.  I just want to make sure.

12  Is this DI237 that you are talking about?

13          **MR. PERRI:**  Yeah, I don't see the ECF markings

14  that we typically see.  But Mr. Williams did address those

15  objections.

16          **THE COURT:**  Right.  So I read the PSR.  We will

17  get to that.  But I just want to --

18          **MR. PERRI:**  I have an extra copy of it, Judge,

19  if you would like.

20          **THE COURT:**  Sure.  You want to send it up.

21          **THE DEFENDANT:**  I am saying for the first time

22  I received United States Sentencing Memorandum.  So I

23  thought I would get this and respond to it.

24          **THE COURT:**  And that's fair.

25          Yes.  So what you've just handed up, Mr. Perri,

1    I have as DI237.

2              **MR. PERRI:**  Under United States, also, we filed

3    a response to the defendant's objections, which I'm sure

4    the Court has.

5              **THE DEFENDANT:**  I've never seen that.

6              **THE COURT:**  Okay.

7              **MR. PERRI:**  We sent -- just for the record,

8    Your Honor, we sent copies of all these things to the

9    defendant through snail mail, so that he would receive it

10   at his correctional facility in plenty of time.

11             **THE COURT:**  Snail mail is part of the problem.

12   What do you call snail mail?  What does snail mail

13   actually mean?

14             **MR. PERRI:**  As opposed to e-mail, it means it

15   is not instantaneous.

16             **THE COURT:**  Well, that's true.  You mean like

17   the U.S. mail?

18             **MR. PERRI:**  Yes, Your Honor.  Snail mail is a

19   very appropriate characterization of that.  Okay.  I mean,

20   I don't want to delay things, but I want to make sure that

21   Mr. Dougherty has a full opportunity to respond.

22             Mr. Dougherty, I'm happy to let you read it

23   now, the Government papers that you were just provided.

24   And do you want to look at that and tell me if you -- what

25   you'd like to do.

1          THE DEFENDANT:  Again, I continue to see

2    references about how I am inflexible with, you know, in

3    terms of accepting this.  And I assumed that in the

4    Rule 29, you ruled on my first amendment argument relative

5    to the petition cause protecting the transmittal to

6    justice -- or to the judge -- Chief Judge Conner.  And, in

7    fact, that's --

8          THE COURT:  Well, so I recall the words -- in

9    fact, I think you had them quoted petition to redress.  I

10   think it was on the same page as your reference to *Elonis*

11   is my recollection.  Is that right?

12         THE DEFENDANT:  Again, I'm working off of

13   memory.

14         THE COURT:  Well, hold up.  Let me just look.

15         THE DEFENDANT:  But my point --

16         THE COURT:  Hold on.  Give me a second, please.

17   All right.

18          It's not the same page as *Elonis*.  It is the

19   same page as the self defense argument, so it's Page 12.

20   And this is where you said, quote, because it was a, in

21   your quotes, petition for redress, unquote, against the

22   Pennsylvania corporate entity from the franchise

23   department was constitutionally protected.  So I

24   interpreted this whole argument as part of your self

25   defense argument.

1          This is part of the problem we've had

2    throughout this case.  And that's one of the great things

3    about our system.  We have appeal courts, so that you will

4    be able to make whatever arguments you want to make to an

5    appeals court.

6          So what I would say is this:  To the extent

7    your, quote, petition for redress argument is something

8    different than your self defense argument, I would deny

9    it.  Because the bottom line is that there's no state law

10   exception to the federal criminal laws that prohibit a

11   person from making threatening communications to federal

12   judges.  And so --

13        **THE DEFENDANT:**  Again, I don't want to argue

14   that.  In reference to what you are asking me about this

15   sentencing memorandum, Paragraph 46 indicates that if you

16   have accepted responsibility except for the fact that you

17   have a constitutional challenge, you can still qualify for

18   the two-point reduction.

19        So my position was it was a petition for

20   redress.  And to do that, under *Gurney*, you had to state a

21   matter of public concern.  And it had to be something that

22   was sent to whoever the Government official was.  That was

23   the basis of Count 1.  I was sending it to the Chief Judge

24   of the Middle District of Pennsylvania, alleging crimes

25   being committed by the clerk and the other judges.

1          Now, again, if you would address that in your

2     order, then I could understand that it's been properly

3     adjudicated, dismissed or denied.

4          **THE COURT:**  Well, I will address it right now

5     because this came up at your trial, and here's the bottom

6     line.  There's no state law exception.

7          **SPEAKER:**  Your Honor --

8          **THE COURT:**  Excuse me.  Excuse me.

9          There's no state law exception to Section

10    875(c) or Section 876(c).  And you do not have the right,

11    as aggrieved as you might feel, to put in a,

12    quote-unquote, petition for redress or any communication

13    to the chief judge of the Middle District threats.  And

14    that's the problem.  You didn't stop with your petition

15    for redress.  You went on to make numerous threats.

16          The jury found them to be threats, and they

17    found you guilty.  And you don't get to qualify for the

18    two points acceptance responsibility based on the

19    reservation of preserving your constitutional rights.

20          What that provision in the guidelines is

21    intended to do is to allow people who want to make a good

22    faith argument that their fourth amendment rights were

23    being transgressed by the Government.  That they had a

24    fifth amendment right against self incrimination that had

25    been ignored.  They want to preserve those rights to go up

1     on appeal.

2              But your right that you want to preserve, which

3     you claim is a first amendment right, you've got that

4     right, there is no such right that would allow for threats

5     to be made against a Federal judge.

6          **THE DEFENDANT:**  Again, the thing that I have

7     struggled with in communicating with you all along.  That

8     is nothing in the way of what I put in my Rule 29 motion.

9              First off, I said if it was a third-party

10    threat, okay, according to *United States v Fenton*, a

11    24-year-old precedent written by Brooks Smith.

12         **THE COURT:**  Before *Elonis*.

13         **THE DEFENDANT:**  Before *Elonis*.

14         **THE COURT:**  Right.

15         **THE DEFENDANT:**  He indicated, citing these very

16    same 876(c) issues that you couldn't charge someone with

17    this crime unless there was a demonstration that there was

18    instruction in it to convey it to the victim or there was

19    a way that the victim could have become aware of it or

20    someone who knew the victim could become aware of it that

21    would fall into the recklessness suggestion that was part

22    of the ECF argument that you never addressed.

23             But I'm not suggesting that here.  I'm saying

24    here that the -- and it says this in the Rule 29 motion,

25    that Keith Dougherty is as the petition clause as Westboro

1    Baptist church was to, you know, *Snyder v. Phelps,* which

2    is the famous first amendment case where you could not say

3    that something was actionable by the Government because of

4    the offensive conduct.

5              So again, I'm using a very narrow circumstance

6    where I took full responsibility for having mailed it to

7    Chief Judge Conner.

8              **THE COURT:**  Let me ask you this, do you take

9    full responsibility that a person who received that letter

10   would feel threatened?

11             **THE DEFENDANT:**  No.  That's the point --

12             **THE COURT:**  That's my point.  Do you take full

13   responsibility that when you give a letter to a Federal

14   agent, a Federal agent charged with protecting the safety

15   of a Federal judge and you put in the letter a threat to

16   the Federal judge, do you take responsibility that that

17   could be forwarded to the judge and could cause that judge

18   to feel the angst that Chief Judge Conner expressed?

19             That's a yes or no.  Do you take responsibility

20   for that?

21             **THE DEFENDANT:**  I take responsibility for the

22   way you are characterizing it, yes.

23             **THE COURT:**  Okay.

24             **THE DEFENDANT:**  In other words, I'm

25   characterizing it differently, and I think that's room for

1    disagreement.  Based on that, in other words, I said on

2    the stand, Yes, I'm the one who wrote this letter.  Yes,

3    I'm the one that mailed this letter.  But I am saying to

4    you that this letter is protected as a petition, and, in

5    fact, it is not a threat.

6          There are two different circumstances there.  I

7    believe the Brody instruction would have been correct.

8    You chose not to use that.  I also believed that *Elonis*

9    specifically said you are not allowed to continue to use

10   the phrase reasonable person.  I believe the Supreme Court

11   upheld that.

12         In a case most recently I think *Boumediene* or

13   whatever, they specified you could not upgrade someone to

14   a career criminal sentencing if the standard was

15   recklessness.  You could not use the Armed Career Criminal

16   Act if, in fact, one of the predicate convictions was

17   based on recklessness or less.  So that was the argument I

18   was trying to make in ECF108, that this would be that

19   suggestion that I pointed out.

20         According to Justice Elido, I had to give you

21   specific instructions of what I would suggest what

22   recklessness would look like.  That's in ECF108.  You

23   never ruled on that.

24         I'm saying you are not allowed to use the

25   phrase reasonable person in jury instructions at all

1    anymore.   That's what I'm suggesting.

2            *Brody* may have been modified to whatever point

3    that you thought was appropriate.   But it does not make

4    any reference to the phrase reasonable person.   And *Brody*

5    also includes the subjective element right in the jury

6    instructions so the jury doesn't become confused, as

7    Mr. Perri would say.

8            So I'm simply saying when it came to the

9    two-point reduction for taking responsibility, I did take

10   responsibility.   And the arguments are that:   One, I do

11   not believe that the communication was threatening to

12   Chief Conner because he said under oath, he did not

13   perceive it as a judge.   He was only acting in an

14   executive capacity in any of my cases, that all of them

15   were transferred.   And he didn't understand why that would

16   be addressed to him.   And again, I was using it as a

17   rhetorical device.

18           But none of it was directed at him.   It was

19   directed at 39 unnamed judges in various circumstances to

20   make my point.   But that again, could be clarified as

21   being offensive.   Well, that was the statement raised in

22   the *Westboro Baptist Church* case.   They said although the

23   language used by them was vulgar and offensive, it

24   couldn't be actionable, and therefor the case was reversed

25   on those bases.

1          So I'm saying that is the argument I intend to

2     present in the Third Circuit relative to my communication

3     to Judge Conner.  And I specifically took responsibility

4     for sending it, writing it.  There was no proof there, and

5     I didn't object to it.  When, in fact, under

6     cross-examination, I said it was not a joke.  It was not a

7     lark.  It was made for specific purpose, that was to

8     address a matter of public concern that, in fact, I

9     believe the clerks are committing crimes.  And, in fact,

10    no one is supervising them.  And Judge Conner did testify

11    under oath he believed they supervised themselves.  So all

12    of that was part of the record.

13         The other two counts, that are Count 2 and 4, I

14    specifically indicated that they were sent to individuals

15    in a confidential communication, and, in fact, it is a

16    state crime, criminal coercion 18 PACS 2906 to take that

17    information and forward it.  No different than when

18    Attorney General Cane was indicted for releasing

19    confidential grand jury information where she was

20    impeached, indicted, convicted, and removed.

21         That is the way I look at the concept of taking

22    that information in their official capacity.  And rather

23    than doing their jobs as state officials, have taken this

24    information to a grand jury to use that information

25    against me.

1              Counts 1 and 2 of the State statute says if you

2    use confidential information in that manner, you've

3    committed a Federal crime.  But part of my defense is that

4    once I had moved for default in the case against the

5    corporate fed income tax department, and in the case of --

6    one of the cases involving Judge Conner, Caroll Tire

7    Company, it is a crime for the clerk not to enter default,

8    and therefore, any effort to transfer and delay the

9    commerce is covered fully in *Ocasio v. United States*,

10   citing evidence.

11             And evidence was very clear that it's a common

12   law status -- statute that indicated a Government

13   official, acting outside of their official authority, is

14   guilty of extortion.  And they don't even have to make a

15   demand for that regard.  You're acting like I'm simply

16   saying this is a state self defense issue, when, in fact,

17   I repeatedly said Heller -- *DC v. Heller* was the cite on

18   self defense.  And that's a Federal right, because under

19   the ninth amendment, it preexisted the 1789 Constitution.

20             So I'm not simply arguing with the State.  I am

21   simply saying that self defense existed before the

22   Constitution did, and, therefore, it's protected by the

23   ninth amendment.  That's how *Heller* was decided.  But the

24   two-point issue relative to the sentencing that we're

25   talking about was based on the fact that I am preserving

1   this while taking full responsibility for the facts that

2   you have alleged that I mailed it, I wrote it, it wasn't a

3   joke, wasn't hyperbole.

4           It is a challenge to the petition for redress

5   relative to the fact that there seems to be no one

6   supervising the chief clerk of the District Court in any

7   of these circumstances.  And the argument it has in it,

8   the *Lucia verses SEC* argument, where since 1933,

9   administrative law judges for the SEC have been appointed

10  in violation of the appointments clause.  And that the

11  amicus and the petitioner presented to the Court an

12  argument that anytime a Federal employee has the power to

13  bind the United States or third parties in their own name,

14  they are an inferior constitutional officer and they have

15  to be appointed under the appointments clause.

16          My position is, I'm stating it here, I guess,

17  because there's no other way to convey it.  Rule 55(a) and

18  (b) are given authority from the Supreme Court to the

19  chief clerk of the District Court to enter default against

20  the United States and against third parties in limited

21  circumstances.

22          As such, they cannot be employees of the

23  District; they must be employees of the Supreme Court.

24  That was the remedy that was employed in *Lucia v. SEC*.

25  And there is an incentive in Footnote 5 in the opinions

1   saying when someone such as myself reserves such an

2   argument, they are entitled to a new judge and a new

3   trial.

4            THE COURT:  All right.  Mr. Dougherty, did

5   you -- do you admit that you intended the communications

6   to be a threat?

7            THE DEFENDANT:  Not a threat, no.

8            THE COURT:  Okay --

9            THE DEFENDANT:  -- Government purposes.

10           THE COURT:  That's what I asked.  Do you admit

11   that you knew that the communications would be viewed as a

12   threat?

13           THE DEFENDANT:  No.

14           THE COURT:  Okay.  Thank you.

15           THE DEFENDANT:  It was confidential, and it

16   could not be used for anything other than official

17   purposes.  No different than doing an investigation and --

18   you know.

19           THE COURT:  Okay.  All right.  Thank you.  All

20   right.  Now, you have expressed that's why you are

21   objecting to the two level or the failure of the report to

22   give you a two level acceptance responsibility reduction.

23   All right.

24           You also object to the victim related

25   adjustment, correct?

1          **THE DEFENDANT:**  Yes, he admitted he wasn't a

2     victim.

3          **THE COURT:**  Right.  I've read that.  All right.

4          Now, is there -- you've now had an opportunity

5     to read the Government's filings; is that right?

6          **THE DEFENDANT:**  Pretty much, yes.

7          **THE COURT:**  Okay.  And I've reviewed your

8     filings, in particular your filing 237, which we

9     discussed, in which you do articulate the objections to

10    the victim related adjustment, which is discussed at

11    Paragraph 51 of the presentence report, and also the

12    acceptance responsibility of the fact you didn't get it,

13    which is at Paragraph 56.  All right.

14         Are there any other materials I should have

15    reviewed in connection with your sentencing.  I reviewed

16    the PSR.  I reviewed the government's memo.  I reviewed

17    your filings.  I've listened to you today.

18         Is there anything else that I should have

19    considered?

20         **THE DEFENDANT:**  As far as I know, That would be

21    it.

22         **THE COURT:**  Mr. Perri, is there anything else

23    that I should have considered?

24         **MR. PERRI:**  I would just note for the record,

25    Your Honor, that the sentencing memorandum that the United

1    States filed and that the defendant apparently did not get

2    a copy of, it's only two pages.

3             **THE COURT:**  Right.  To his credit, he just said

4    he had a chance to review it.

5             **MR. PERRI:**  I think that document Number 240

6    was a reply to the United States response to the

7    defendant's Rule 29 and Rule 33 motions, that's at least

8    as best I can tell.  It's very lengthy, a 51-page

9    document.  That's 240, Your Honor, just in case you wanted

10   to mention that.

11            **THE COURT:**  I have reviewed all filings.  So

12   let me issue some rulings on the objections.  So let's

13   start with the two-point reduction that was denied to you

14   for acceptance of responsibility in Paragraph 56.  I'm

15   going to overrule your objection.

16            And to cut to the chase, in order for this

17   two-level reduction to be awarded to somebody who wants to

18   stand up for constitutional arguments, you still have to

19   admit to all the elements of the offense.  And you have

20   not.

21            Because one of the elements of the offense

22   under *Elonis* is that the defendant either intended the

23   communication to be a threat or had knowledge that it

24   would be viewed as a threat.  And as you just acknowledged

25   within the last five minutes, you don't admit to those two

1    things, to either of those two things.  Therefore, you

2    don't accept responsibility of the offense.  And so for

3    that reason, I agree with the probation officer's

4    Guideline calculation and his decision to deny you

5    acceptance of responsibility.

6            Then we turn to the -- and by the way, so then,

7    what you did was the Government had to go forward at trial

8    and prove your subjective intent, your mens rea.  And I

9    also would note that I found persuasive in this regard the

10   *United States against New York City* at 177 Fed. App. 235

11   239.

12           And in that case, the defendant, like you,

13   claimed entitlement for accepting responsibility.  And

14   despite having gone to trial, because in that case he did

15   not deny essential elements of the crimes charged.  And

16   here you do, you do deny essential elements of the crimes

17   charged.  And so that put the Government to its burden of

18   proof what is a factual element beyond a reasonable doubt.

19   So it's not a legal issue; it's a factual issue.

20           So then, we turn to the -- no, let's wait.

21   Let's turn to the adjustment for official victims.  And

22   here, the probation officer, following USSG Section

23   3A1.2(b), applied six-level enhancement because the victim

24   was a Government officer or employee.  And basically the

25   defendant's objection is that the victims were, quote,

1    engaged in crimes, unquote.

2          And he also takes issue with the status of

3    Chief Judge Conner playing an administrative role.  And

4    that administrative role is, in fact, still a judicial

5    role.  And he was at all times a Federal District Court

6    judge.  And the same applies to Judge Conti.  She was at

7    all times here a judicial officer of the United States.

8    They were acting within their constitutional authority to

9    fulfill their responsibilities as federal judges.

10          And I think the trial testimony just showed

11    beyond doubt that the offenses were motivated by their

12    status as federal judges.  So I think the six level

13    enhancement is appropriate.

14          So the base offense level is a 12 under section

15    2A6.1.  And then there were more than two threats;

16    therefore, two level enhancement is applied pursuant to

17    section 2A6.1B2.

18          And then the six-level enhancement under

19    Section 3A1.2(b) that we discussed because of the status

20    of the victims.  And then that leaves us with adjusted

21    offense level of 20.  And because as I've ruled, the

22    presentence report is correct in my view that acceptance

23    of responsibility is not warranted.  That leaves a total

24    offense level of 20.

25          The defendant does not have any criminal

1    history points, so he's criminal history category one.

2    And that leaves a Guideline range of 33-to-41 months.  All

3    right.

4               Are there any motions for departure from the

5    Government?

6               **MR. PERRI:**  No, Your Honor.

7               **THE COURT:**  From defendant?

8               **THE DEFENDANT:**  Again, just in response what I

9    heard from Mr. Perri about the lengthy reply brief, I

10   assume that was incorporated in your denial of the 29 and

11   33.  So I was just kind of surprised that he brought that

12   up now.  But that specifically indicates that under no

13   circumstances have I ever implied or suggested that any

14   judge acting with tribunal jurisdiction can be threatened

15   or harmed in any way, but rather the accusation which will

16   be brought up in the appeal, is that when a judge acts

17   without tribunal jurisdiction, they are equivalent to a

18   private citizen, no different than if --

19               **THE COURT:**  Right.  I totally get that.  And

20   just for the record, what you really mean, whether you

21   intended it or not, I can't get inside your head, though,

22   that is when the judge doesn't do what you think the judge

23   should do, the judge is acting outside his or her tribunal

24   jurisdiction.  And then in your view of the world, is game

25   to be threatened.

1          **THE DEFENDANT:**  Give me leeway here.  I never

2     suggested that.  If you had ruled on ECF that, you know,

3     before the Court is this and I denied it, then you are

4     acting within your tribunal jurisdiction.  However, this

5     the argument that will be brought out fuller.  And I

6     cannot believe that we haven't resolved it yet.

7          That once a defendant -- a plaintiff, pardon

8     me, properly moves for default in a civil manner, that

9     strips the District Court judge of any tribunal

10    jurisdiction until one of two possible events, one either

11    the defendant files an acceptable pleading to the Court, a

12    Rule 55(c) motion, or the plaintiff waives the right to

13    win by default judgment.

14          Otherwise, you understand Rule 55(b) is

15    superfluous.  There is no reason to have it.  A default

16    judgment by the clerk has no meaning because at any point,

17    a District Court judge can ignore its limitations and turn

18    around and start issuing show cause or do other things in

19    the case because they don't want the plaintiff to win by

20    default.

21          **THE COURT:**  You know, here's the thing.  I have

22    to tell you, you might be right.

23          **THE DEFENDANT:**  That's what I'm saying.

24    There's no animus.

25          **THE COURT:**  You might be right.  And when you

1    say "there's no animus," the problem is that you then

2    wrote letters, which were threatening.  And I got to tell

3    you, I'm kind of getting ahead of myself because we're

4    getting to -- throughout this case.  I've been presiding

5    over this case for years.  And Mr. Perri didn't join the

6    case until -- when did you join the case, Mr. Perri?  It

7    was relatively recently.

8              **MR. PERRI:**  I think it was --

9              **THE DEFENDANT:**  May 21st.

10             **THE COURT:**  My point is that -- the reason why

11   I was getting to this is until we got to trial, I had not

12   read the threatening communication in its entirety.  And,

13   I can't tell you how distressing and disturbing it was to

14   have Chief Judge Conner walk through in response to

15   questions from the prosecutors, the line by line of the

16   letter.  That jury did not take long to reach its verdict,

17   and I'm not surprised.  Because when you read that letter,

18   it's frightening.

19             So you say you have no animus.  A judge can

20   never read the heart of a person definitively.  You can

21   only discern intent by making inferences.  And we're not

22   truth sayers.  So words matter, actions matter.  And it's

23   from those things that judges and juries infer intent.

24             So you say here you don't have animus, but that

25   letter conveyed animus.  I don't think it's even a close

1    call.

2               You are at times very respectful to me.  I feel

3    bad for you, frankly, at times.  And I try to see good in

4    everybody, but you can't write a letter like that.  And

5    the words convey animus.  They convey hate, and they are

6    scary.

7               And we can't live in a country where our judges

8    have to worry that because they rule on a default judgment

9    in a civil case in a way that the plaintiff doesn't like,

10   they're going to be subjected to threats.  The

11   constitutional government will not work if that's allowed

12   to go unpunished.

13              THE DEFENDANT:  My position would be simply, if

14   a judge acts without constitutional authority, they are no

15   different than any other thief or criminal coconspirator.

16              THE COURT:  Right.  And I get your point.

17              THE DEFENDANT:  That's what *Ocasio* says.

18              THE COURT:  And that's what you say.

19              THE DEFENDANT:  You can abuse your --

20              THE COURT:  You will get your final elocution.

21   If you want to expand on that point, you can.  You have

22   expounded for hours since this case was begun on that

23   point.

24              All right.  Are there any motions for

25   departure?

34

1          **THE DEFENDANT:**  That's it, yes.

2          **THE COURT:**  So then, we have essentially if

3     there's a motion for a variance or for whatever the

4     sentence -- and I will just put them together.  So there

5     being no other objections to the presentence report, I

6     will adopt the findings of fact and conclusions of law of

7     the presentence report.

8          Are there any victims present, Mr. Perri?

9          **MR. PERRI:**  No, Your Honor.  They were

10    consulted and any statement that they may have made were

11    included in the PSR.

12         **THE COURT:**  I have read the one statement from

13    Chief Judge Conner.

14         All right.  So Mr. Perri, do you wish to make

15    argument for sentencing?  I read the Government

16    submissions.

17         **MR. PERRI:**  Your Honor, we would just reiterate

18    what we indicated in the memorandum.  Perhaps the most

19    shocking thing about this case is that the defendant, even

20    though it's been made clear to him a hundred times a

21    hundred different ways that what he did was wrong, it was

22    frightening, it was unacceptable, it was against the law,

23    he continues to claim that what he did was justified as if

24    tomorrow he would do it again.  That, to us, is

25    astonishing.

1        And although I see indications that, you know,

2   perhaps, there is some good in Mr. Dougherty, I think the

3   fact that he is unwilling to see that he did something

4   wrong arguably makes him at higher risk to do it again.

5   That's where we are coming from, Your Honor.

6        And even in his most recent filing, which was

7   filed March 18 of this year, that's Document Number 240,

8   he continues to use worrisome language, disrespectful

9   language that seems to come from a place of anger and

10  frustration.  And he is, again, claiming that the judges

11  were engaged in crimes.  He says it over and over again.

12  And he writes it over and over again.  And he just won't

13  hear anything different.

14       And to say that they engaged in the crime of

15  delaying his commerce, well, how absurd is that when

16  you -- let me get this straight.  Anytime a civil litigant

17  loses a case in civil court, that ruling is necessarily

18  going to affect his business.  And it's going to, even by

19  the defendant's phrasing, delay his commerce, necessarily.

20  Is it then true that the litigant gets to say, Judge, you

21  committed a crime.  And if I asked the militia to shoot

22  you in the head, you deserve it.  And if you don't change

23  your ruling, that's what's going to happen.  That is

24  absolutely absurdity.

25       The defendant, he's a very smart man, he's a

1    very smart man.  The fact that he can't see that, it's

2    worrisome to us, Your Honor.  And so we would stand on the

3    position expressed in our memorandum.  Thank you.

4         THE COURT:  Which is, really, it's toward the

5    high end of the Guideline.  It's nothing particular,

6    right?  I'm not asking for anything more.  I just want to

7    make sure that's what I understood.

8         MR. PERRI:  We would ask for the high end.

9    Thank you, Your Honor.

10        THE COURT:  All right.  Mr. Dougherty, this is

11   your last chance in front of me, at least, to --

12        THE DEFENDANT:  I'm very grateful for

13   Mr. Perri's characterization that he just put forth.

14   That's the closest thing that I've seen to an honest

15   assessment of my argument thus far.  Let me just clarify

16   once again.

17             If we were to get a ruling from the Third

18   Circuit that, in fact, the doctrine that is now Supreme

19   Court super precedent is no longer valid in the Third

20   Circuit, that would be something that then could be

21   finally resolved by the Supreme Court.

22             But what happens in a circumstance such as this

23   is a denial of any due process.  And you have heard me say

24   this over and over again, *Marshall v. Jerrico* then

25   *Sebelius v. Auburn Regional.*  Very simply, what it says is

1    that there is a difference between mandatory claims

2    processing rules and normal claims processing rules.   In

3    fact, there is a difference between jurisdiction.

4              And the thing that the Third Circuit has

5    struggled with, and I cited where they have been reversed

6    time and time again -- they are going to come to the

7    realization at some point that I'm not exaggerating.   I'm,

8    in fact, right as you postulated might be a mere

9    possibility that when someone moves in a civil pleading

10   for a default, it means the defendant has simply waived

11   Rule 12(b)2 through 12(b)5, no harm done to anyone.   But

12   it moves to a final resolution on the merits.

13             But what's happened here is I have been

14   identified as a vexatious person and therefore, none of my

15   cases will ever come to a decision on the merits.   We've

16   basically said that you are -- Keith Dougherty is a victim

17   of a judicial detainer.   And the question will be

18   resolved, I believe, when the Court finally admits that

19   Singral, Inc. is actually a crime of extortion as

20   identified in *Ocasio v. U.S.*

21             Very simply, it says if a Government official

22   tells a business owner, such as myself, you must do

23   business with a friend of mine, it is in evidence, it's

24   clearly established in the opinion, the rough equivalent

25   of extorting a third-party bribe.   Now, he doesn't want to

1    accept that, I can understand, that to be forced to hire

2    an attorney as a business owner is a crime would be

3    apparently disappointing.

4            There is a reference to the *Horn* case in the

5    threat letter was about when the Supreme Court indicating

6    that when Government acts as a federal agency or otherwise

7    to appropriate something, it is subjectable to the just

8    compensation clause even if it is personal property.

9    There it was raisins.  They explained a patent could be

10   infringed in the same way.

11           So if you were a business owner, you couldn't

12   be forced to give a certain amount of offices to a vendor,

13   for instance, they used in the example, and not receive

14   compensation.  So I said all along, all you have to do is

15   let it go to the merits and make a decision on these

16   things.  But, in fact, you had to do it with tribunal

17   jurisdiction.

18           **THE COURT:**  Let me ask you this, because this

19   is your opportunity at sentencing.  You've made all these

20   legal arguments.  Is there any --

21           **THE DEFENDANT:**  But I never had an opportunity

22   to address them as Mr. Perri just --

23           **THE COURT:**  All right.

24           **THE DEFENDANT:**  I'm suggesting that I'm not

25   creating some wild notion about crimes.  I'm simply saying

that it would be resolved if Singral, Inc. were resolved
on the merits to be a violation of *Ocasio*, and *Evans* is
fully supportive.

And at some point, this could have been
resolved by decision on the merits, instead of the
constant reference to you need to hire an attorney.

And in fact, you were insistent throughout the
process what I should allow Mr. Young.  And I said, well,
that would be counter to the argument that I have been
trying to get before the Court now for over 11 years that,
in fact, you can't force me to hire or do business with a
third person.  That's all this is about.

If you cannot force a citizen to buy health
insurance under the Affordable Care Act, you can't force a
business owner to hire an attorney or do business with an
attorney.

It wasn't until 2016 that the Supreme Court of
the United States, somewhat addressing my argument said,
if you as a Government official say, whether it be a
clerk, magistrate or a judge to a business owner, you
can't appear on behalf of your contract to collect money
that's owed to you unless you pay a third-party bride to
an American Bar Association member, that's a crime.

Now, once that's ruled on, all of this is
resolved.  You could not convict me for saying it, and I'm

1   just trying to enforce my property rights that happen to

2   be available to me under the Fifth Amendment of the Just

3   Compensation Clause.

4           You could buy my company from me, but you can't

5   seize my contracts because you would rather see an

6   attorney get 30 or 40 percent of them.  That's what this

7   is all about.

8           **THE COURT:**  Okay.

9           **THE DEFENDANT:**  And that's all it was.  It

10  never was that I disagreed with a ruling on the merits.  I

11  disagreed with the fact that once default was entered or

12  it was sought, it is a crime if the District Court clerk

13  will not enter the default.  So I said who enforces this

14  law?  That's been the question.  If someone enforced it,

15  this would be over.

16          **THE COURT:**  Would you like to say anything else

17  about anything other than that that I should consider?

18          **THE DEFENDANT:**  Again, if these things are true

19  then, in fact, this could not be a crime.  It's that

20  simple.

21          **THE COURT:**  Okay.  All right.  Under the law,

22  the sentence that I'm supposed to impose is to be

23  sufficient but not greater than necessary to achieve the

24  purposes of sentencing.  And Congress has said that there

25  are a number of purposes to sentencing.  So one thing is

1    to provide for a sentence that reflects the seriousness of

2    the offense, the nature of the offense, and we have a very

3    serious offense here.

4            You like to refer to the Constitution.  We live

5    in a country that really was created out of an idea or

6    ideas that -- ideas that were first really articulated in

7    the Declaration of Independence, but that were implemented

8    pursuant to the Constitution.  And the Constitution

9    creates a tripartite government, and one of the branches

10   of the government is the judiciary.  And for the

11   Constitution to work, for our country to endure, we have

12   to have judges that are fair and impartial, that interpret

13   the law, and do that to the best of their ability.  No

14   human is perfect, judges can make mistakes.

15           But we wouldn't have a constitutional

16   Government survive if every time a judge was thought to

17   make a mistake, the judge could be threatened or

18   intimidated or harmed.  And we can't have a government

19   function if judges have to rule out of fear that they will

20   be threatened or harmed based on the substance of their

21   rulings.

22           So Congress passed specific statutes to make

23   sure that people who felt that they were entitled, or

24   otherwise, to threaten public officials, in this case

25   particularly judges, would pay a price.  These are were

1    very, very serious offenses.  They go to the integrity of

2    the government, the functioning of the government.  So

3    they are very serious offenses.

4            Another purpose of sentencing is to consider

5    the nature of the defendant.  We start with the

6    guidelines.  The guidelines are there to try to achieve

7    uniformity.  We treat like defendants the same.  So I

8    start with the guidelines here, this range of 33-to-41

9    months.

10           You didn't say anything, Mr. Dougherty, today

11   about your history, about your family.  At times I've

12   tried to question you about them during the course of bail

13   proceedings, for instance.

14           I did read the presentence report.  The

15   presentence officer spoke with your daughter.  She had

16   very nice things to say about you.  I read about your

17   upbringing.  One of the sad aspects of the case is that

18   you had this family, you apparently practice your

19   religion.  I don't know.

20           And it's hard in ways to reconcile what you

21   read about your upbringing, your daughter's relationship

22   with you, with the threats that are in the letter.  You

23   don't have any criminal history.  I guess you had the one

24   DUI many, many years ago.  But as I understand it, you

25   don't drink anymore.

1          So I have factored into my decision making your

2    personal history.  Another purpose of sentencing is

3    deterrence.  And to some extent, that's related to the

4    seriousness of the offense.  There's two types of

5    deterrence.  There's general deterrents, and there's

6    specific deterrence.  And general deterrence, as I say,

7    there's some overlap between that and the seriousness of

8    the offense.

9          I think I have no choice but to make sure that

10    people understand generally that they can't threaten

11    judges.  So that calls for a significant sentence.

12    Specific deterrence is a curious thing in this case.  I

13    think Mr. Perri is right.  I think I could probably give

14    you 100 years, and I don't think you would come off of

15    your position, if you will.

16          Do you recall where you had an interchange

17    once, and I told the Government they couldn't use it

18    against you.  I asked you questions about how is it going

19    in prison?  And you made a comment to me to the effect

20    that it wouldn't be that different to be on the outside.

21          Do you recall that conversation?

22          **THE DEFENDANT:**  I believe you were asking me

23    about why I wouldn't take the plea deal that was being

24    offered.

25          **THE COURT:**  No, no.  I put all that aside, just

1    kind of at the end of one of our hearings.  And I just

2    said how is it going?  Obviously, it had to be tough

3    during Covid.  And I was trying to see if it would be

4    possible for you to get released to a third-party

5    custodian.

6           Do you recall that?

7           And I asked, I said what is it like with the

8    food and all that?  You made a comment, to the best of my

9    recollection, that it wasn't like you were looking forward

10   to going on the outside that there was that much to be

11   offered.

12          Do you remember that at all?

13          **THE DEFENDANT:**  Well, again, the context of it

14   was you had brought up on your own that you were going to

15   release me pending trial because of the plea deal that had

16   been offered, where I could sign and walk out the door and

17   continue my appeal for time served.  That was the basis of

18   it.

19          And the issue is I am looking forward to having

20   a finalization that we can rely on.  Fifty-five is either

21   a law that's going to be enforced or not, and we should

22   close the book on any further discussion of it.

23          But to -- if, in fact, this is what I had to do

24   to get to a point where I'm finally going to get an answer

25   on this particular subject, then apparently that is in my

1    life God's will.

2            So, but to turn around and say that I would be

3    willing to take a deal where I signed and I walked out the

4    door, time served, guaranteed, and continue the appeal

5    into the circuit relative to ECF108 and 115, I was fearful

6    that it would be given the same dismissive --

7            **THE COURT:**  I've got your legal argument.  I

8    remember the legal argument, and I respect the legal

9    argument.

10           And the way I would phrase it is you realize

11   that if you accepted the plea, then if you went up on

12   appeal, the Government would argue that they had

13   sufficient evidence for a jury to find you guilty and

14   sufficient evidence to justify the plea.  And therefore,

15   you essentially didn't get to make your appeal to the

16   jury, and ultimately to the Third Circuit.  That was

17   your --

18           **THE DEFENDANT:**  In other words, the deal was I

19   would be able to continue the appeal on ECF108, that you

20   had not ruled on, and ECF115 habeas corpus, where, in

21   fact, someone was implying you could suspend habeas corpus

22   in the Third Circuit.

23           And I said those two things are too important

24   to simply say as a matter of convenience, I could walk out

25   guaranteed 12 months time served and continue the appeal

1    if, in fact, we were going to have a situation that

2    occurred where we could dismiss it under a local

3    procedure, nothing to see here, move along.  That's what

4    was my motivation.

5              THE COURT:  Okay.  Well, so I factored into my

6    sentence your personal history.  I factored into it that

7    you have been respectful at times and civil in front of

8    me.  And again, that's hard to reconcile with the letter,

9    in particular.  I'm not singling out the letter to Conner.

10   You made reference to Judge Conti as well.

11             And I just find it very difficult, as I say, to

12   solve this puzzle to figure out why at times you can be

13   very civil and respectful and then yet you can write real

14   vile things, as I say I've already articulated that

15   earlier in the hearing, scary things.  And you can't seem

16   to come to any resolution of that.

17             THE DEFENDANT:  Trying to get a final answer

18   here.

19             THE COURT:  That's your position.  Your

20   position is you are trying to get a final answer.

21             THE DEFENDANT:  If, in fact, we got the final

22   answer.

23             THE COURT:  I let you speak.  I need to put on

24   the record why I'm going to do what I'm going to do.  And

25   I think it's a sad day.  It's a sad day that you can't

1    reconcile your desire for a final legal answer with an

2    appreciation for what it means to put threats on paper and

3    to deliver them to Federal agents.

4            And the only inference you can draw is that the

5    federal agents, themselves, would have to take immediate

6    action.  And that the Federal agents would be concerned

7    about the threatening nature of the communication.  And

8    that that would be imparted to the judge, as it was,

9    judges.  And we heard from one of them just how disruptive

10   it was to the court system in Harrisburg and to the judge,

11   and how concerning it was to the judge.

12           And I feel that I really have no choice but to

13   give you the top of the guideline range because you won't

14   recognize anything.  You just refuse to appreciate the

15   consequences of your actions.

16           The judicial system is not perfect.  It can't

17   be because it's run by humans.  There's going to be

18   mistakes.  And we can't have disgruntled litigants think

19   it's okay to threaten the judges or the clerks, lawyers in

20   the system just because the litigant doesn't get the

21   result the litigant thought it was entitled to.

22           So I think it's incumbent upon me I feel it's

23   the most just punishment in this case to give you the top

24   of the guideline range.

25           I hope that at some point, you could step back,

1    Mr. Dougherty, and appreciate that your words bring harm.

2    That you ought to be careful about what words you choose.

3    I hope it because I've seen some good in you, respect at

4    times, and I've read some good things about you in the

5    presentence report.  From your daughter, in particular.

6               So there is a small part of me that, you know,

7    hopes with realism that that could be achieved.  But I

8    have to agree with Mr. Perri, your actions to date made

9    that hope just appear very, very slim, but I'm going to

10   hold onto it.

11              And I say that because after you serve your

12   term, you will be put on supervised release for a period

13   of three years.  And there will be conditions for you to

14   abide by.  And I can't stress enough how important it is

15   that you abide by the conditions.  All right.  So this is

16   the sentence that I'm going to impose.

17              Pursuant to the Sentencing Reform Act of 1984,

18   it is the judgment of the Court that the defendant Keith

19   Thomas Dougherty is hereby committed to the custody of the

20   Bureau of Prisons, to be imprisoned for a total term of 41

21   months for Counts 1, 2 and 4 served concurrently.  The

22   Court has considered all the factors set forth under 18

23   U.S.C. Section 3543(a) and finds the sentence to be

24   reasonable and appropriate.

25              Upon release from prison, you shall be placed

1    on supervised release for a term of 36 months on Counts 1,

2    2 and 4 to be served concurrently.  Within 72 hours of

3    release from the custody of the Bureau of Prisons, you

4    should report in person to the Probation Office in the

5    district to which you are released.

6         While on supervised release, you should not

7    commit another federal, state or local crime.  You should

8    comply with the standard conditions that have been adopted

9    by this Court.  And you shall comply with the mandatory

10   and special conditions listed in paragraphs of the

11   Presentence Investigation Report.

12        It is further ordered you shall pay the United

13   States a special assessment of $300 due immediately.  The

14   Court finds you do not have the ability to pay the fine,

15   the Court will waive the fine in this case.

16        It is the order of the Court that the sentence

17   be imposed as just stated.  The clerk's office shall

18   prepare the judgment.  My deputy clerk shall enter

19   judgment of conviction.  It is ordered that a complete

20   corrective copy of the presentence report be prepared for

21   the Bureau of Prisons and the U.S. Sentencing Commission.

22   Any other copies of the presentence report shall remain

23   confidential.

24        You have the right, Mr. Dougherty, to appeal

25   within 14 days after entry of the judgment of conviction.

1    I would recommend that you discuss your right to appeal

2    with counsel.  If you cannot afford the cost of an appeal,

3    you may file a request for permission to file that appeal

4    without paying those costs.  If there is an appeal, and

5    you have counsel, counsel on appeal will be permitted

6    access to the presentence report, except that any

7    recommendations from the probation office are not to be

8    disclosed to counsel.

9              Any other matters, Mr. Perri?

10             **MR. PERRI:**  Nothing, Your Honor.

11             **THE COURT:**  Anything else, Mr. Dougherty?

12             **THE DEFENDANT:**  No.

13             **THE COURT:**  Good luck.  Court adjourned.

14

15      (The proceedings concluded at 1:21 p.m.)

<u>CERTIFICATE OF COURT REPORTER</u>

    I hereby certify that the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

                              <u>/s/ Bonnie R. Archer</u>
                              Bonnie R. Archer
                              Official Court Reporter
                               U.S. District Court