1

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
2              HARRISBURG DIVISION

3

UNITED STATES OF AMERICA          :   CASE NO.
4                                  :
            v.                     :   (Judge Connolly)
5                                  :
                                   :
6  KEITH THOMAS DOUGHERTY          :   1:19-CR-00140

7

8              TRANSCRIPT OF PROCEEDINGS
                   JURY TRIAL - DAY 1
9                 (Pages 1 through 237)

10

           Held before the HONORABLE COLM F. CONNOLLY
11          November 30, 2021, commencing at 8:42 a.m.
     Courtroom No. 1, Federal Building, Harrisburg, Pennsylvania

12

13

14

APPEARANCES:
15
DAVID PERRI, ESQUIRE
16  United States Attorney's Office
    Federal Building U.S. Courthouse
17  1125 Chapline Street, Suite 3000
    Wheeling, WV 26003
18      For the United States

19  SHAWN ADKINS, ESQUIRE
    United States Attorney's Office
20  Federal Building U.S. Courthouse
    1125 Chapline Street, Suite 3000
21  Wheeling, WV 26003
        For the United States

22

23

24

25

1    APPEARANCES CONTINUED:

2

     KEITH THOMAS DOUGHERTY, PRO SE
3    #76873-067
     FDC-Philadelphia Federal Detention Center
4    P.O. Box 562
     Philadelphia, PA 19105
5         Defendant

6    THOMAS J. YOUNG, ESQUIRE
     Federal Defender of New Jersey
7    800-840 Cooper Street, Suite #350
     Camden, NJ 08102
8         Standby Counsel for the Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

          Proceedings recorded by machine shorthand; transcript
23   produced by computer-aided transcription.

24   _____
                    Wendy C. Yinger, RMR, CRR
                       Official Court Reporter
25              wendy_yinger@pamd.uscourts.gov

3

```
              I N D E X   T O   W I T N E S S E S

FOR THE GOVERNMENT        DIRECT     CROSS    REDIRECT    RECROSS

Caleb Enerson               107       141        --         --

Eric Hanna                  177       195  (not completed on Day 1)
```

4

1          (Proceeding commences at 8:42 a.m.)

2          THE COURT:  All right.  Good morning, Mr. Dougherty.

3  Mr. Perri, why don't we do introductions for the record so we

4  have everybody.

5          MR. ADKINS:  Shawn Adkins, Your Honor.

6          MR. PERRI:  David Perri.

7          AGENT CRUZ:  Christopher Cruz.

8          MS. LESKO:  Teresa Lesko.

9          THE COURT:  All right.

10          MR. YOUNG:  Good morning, Judge.  Tom Young.

11          THE COURT:  And Mr. Dougherty.

12          MR. DOUGHERTY:  Keith Dougherty.

13          THE COURT:  All right, very well.  Okay.  So I've

14  ruled, I think, taking care of all the pending pretrial

15  motions.  Are there any issues that we need to address this

16  morning?  I thought we should do that before we bring in the

17  jury.

18          My understanding is we should expect the venire to be

19  fully comprised and randomized and then brought up here

20  probably around 9:30.  I also understand, starting tomorrow,

21  it's better for the Marshals to have Mr. Dougherty brought in

22  to start at 9:00 is my understanding.  Is that right?

23          DEPUTY MARSHAL:  Yes, Your Honor.

24          THE COURT:  So we'll do that, we'll start at 9.

25  Anything, other preliminary matters?

5

1          MR. PERRI:  Yeah, just a few, Your Honor.  I just

2     want to make sure that we will be able to use the podium and

3     walk around the courtroom, to a limited extent.  Would that be

4     all right?

5          THE COURT:  Yeah.  I guess I had been informed that

6     there is the Marshals' preference, for security reasons, to

7     limit Mr. Dougherty's --

8          DEPUTY MARSHAL:  Yes.

9          THE COURT:  -- movements?

10    DEPUTY MARSHAL:  Yes, Your Honor.

11         THE COURT:  And if he comes to the podium, it's going

12    to be an issue apparently?

13         DEPUTY MARSHAL:  No, I think that's okay if he goes

14    to the podium with the ear buds.  I don't think that would be a

15    problem.

16         THE COURT:  Is that satisfactory to the Government?

17    Or is there --

18         MR. PERRI:  Well, just when we're questioning the

19    witnesses, Your Honor, I'd like to do that from, you know, here

20    or if I'm giving an opening statement, I would prefer not to be

21    confined to my seat.

22         THE COURT:  Well, that's fine.  But the question is,

23    did you want to move up further?  That's what I'm asking.  What

24    is it you would like to do?

25         MR. PERRI:  Oh, okay.  I would definitely like to be

6

1   able to use the monitor.

2           THE COURT:  They're telling me Mr. Dougherty can do

3   that, so that's not a problem.

4           MR. PERRI:  Great.  And just to be able to stand here

5   and talk to the jury.

6           THE COURT:  Now that might be a problem, I don't

7   know.  Can Mr. Dougherty do that?

8           DEPUTY MARSHAL:  From the --

9           THE COURT:  He may not want to do that.  What do you

10  want to do?

11          MR. DOUGHERTY:  I just want equal treatment, Your

12  Honor.  Whatever is acceptable for the prosecution, I'd like

13  the same.

14          DEPUTY MARSHAL:  Were you referring to the sidebars,

15  Your Honor, or to --

16          THE COURT:  I guess the first thing I'm referring to

17  is just to make sure, because Mr. Perri raised the issue of the

18  podium, let's -- I'm not worried about sidebars for a second --

19  just, for instance, during opening statements.  Mr. Perri wants

20  to stand there.  Can Mr. Dougherty stand there?

21          DEPUTY MARSHAL:  That shouldn't be a problem.  I

22  guess we prefer to limit his movements since he is in custody.

23          THE COURT:  Well, I get that, but is he limited to

24  there or do you want to further limit it?

25          DEPUTY MARSHAL:  I guess I would prefer if he would

1   remain behind the podium.

2           COURTROOM DEPUTY:  Judge, if I can interject?  The

3   court reporter needs you to be on a mic.  When you walk around

4   in here, she'll lose you, so it does help if you're near a

5   microphone.

6           MR. PERRI:  But I'm only two feet away from --

7           COURTROOM DEPUTY:  We can move that around when we

8   get to the trial part.  We can slide that up and get a little

9   closer.  But walking around, it becomes difficult for her to

10  hear you.

11          MR. PERRI:  Sure.  I'm not asking you to walk around,

12  I'm just asking to be able to stand here and see my witness.

13          THE COURT:  Well, let's just deal with openings

14  first.  So for openings, you wanted to stand there?

15          MR. PERRI:  I can stand at the podium for openings.

16          THE COURT:  Let's do that.  All right.  Then, now so

17  openings everybody will be at the podium.  Both parties.  Fair?

18          MR. PERRI:  Yes.

19          THE COURT:  Okay.  Then questioning witnesses.  All

20  right.  First of all, questioning witnesses, my understanding

21  is the rule in this courtroom is if you're vaccinated, you can

22  take your mask off if you are speaking.  Now, Mr. Dougherty,

23  are you vaccinated?

24          MR. DOUGHERTY:  No.

25          THE COURT:  See, that's going to be a problem.  Now

8

1  the witnesses, we've already addressed.  The witnesses are

2  going to -- first of all, I understand they're vaccinated and

3  they're not going to wear a mask.  Is that right?

4          MR. PERRI:  That's my understanding.

5          THE COURT:  All right.  I don't know what we're going

6  to do with Mr. Dougherty.

7          COURTROOM DEPUTY:  I think, Judge, he's probably far

8  enough away from everybody if you get back to the social

9  distancing.

10          THE COURT:  Is he more than six feet?

11          COURTROOM DEPUTY:  It's over here, so we got a good

12  barrier here.  I think he'll be all right.

13          THE COURT:  Are people comfortable with that?

14          MR. YOUNG:  Yes.

15          THE COURT:  You are?

16          MR. PERRI:  Yes.

17          THE COURT:  Okay, that's what we'll do.  So when you

18  are speaking, you can take your mask off.  All right.  And then

19  the witnesses, we will require to take their masks off when

20  they're on the stand so the jury can assess the witness's

21  credibility.  I'm far enough, I'm going to take my mask off.

22  All right, okay.

23          So now let's talk about from where you conduct

24  examinations.  And you would like to -- I guess I'd like

25  clarity.  Do you want to move the podium forward or do you want

9

1  to leave the podium to question a witness?

2          MR. PERRI:  Judge, speaking candidly, I'm a walker.

3  And I'm trying to -- I understand your concerns.

4          THE COURT:  Well, do me a favor.  Just answer the

5  question because -- don't assume I have a concern.  I just want

6  to know the answer.  What do you want to do?

7          MR. PERRI:  I would like to -- I would like to not be

8  confined to this spot.  I would like to be able to step here

9  and just -- I'm not asking you, you know, to do laps.

10          THE COURT:  You can see where it poses an issue for

11  the Marshals, right?  And so that's what I'm trying to do is

12  balance it.  I mean, we have a Defendant.  He is innocent until

13  proven guilty.  But he's been accused of threatening judicial

14  officers.  So you can understand why the Marshals, to do their

15  job, they want to have limitations on the Defendant's

16  movability.

17          I don't know -- actually, what are the Marshals going

18  to do -- Mr. Dougherty, are you expected to take the stand?

19          THE DEFENDANT:  Yes.

20          THE COURT:  So what are you going to do when he

21  testifies?

22          DEPUTY MARSHAL:  Would he testify from over there

23  or --

24          COURTROOM DEPUTY:  He has to go here.

25          DEPUTY MARSHAL:  We would set up in advance.  Someone

1   would be over there behind him, so we couldn't follow him over

2   there, and then we would just need notice that he was going to

3   be --

4           COURTROOM DEPUTY:  I could have a chair put here.

5   They can be here already when he walks up.

6           THE COURT:  So make it subtle, all right?  That's

7   what we'll do.  Okay.

8           DEPUTY MARSHAL:  If I may interject?  If we could

9   recess before he would take the stand, too, so we would already

10  be there before the jury comes back in, if that would be

11  acceptable, Your Honor?

12          THE COURT:  That's acceptable.  I want to try to

13  please everybody, if I can.  I mean, one thing, would it be

14  possible -- I guess, do you have to be seated there?  Could you

15  be seated over here for the entire trial?

16          DEPUTY MARSHAL:  I could.

17          THE COURT:  Well, then -- because if you did that,

18  then maybe he could stand because you'd have a beeline for him.

19  I don't know.  I mean --

20          DEPUTY MARSHAL:  I guess I prefer, because it's

21  access up to here as well, I prefer not to sit over there the

22  entire time, Your Honor.

23          THE COURT:  Gotcha.  You're law enforcement?

24          AN AGENT:  Yes, sir.

25          THE COURT:  Frankly, what I'm wondering is if we

1   couldn't just, because it's easier to treat them equally, is if
2   I could allow Mr. Perri and Mr. Dougherty to stand roughly
3   where Mr. Perri is.  And I am just wondering if the two of us
4   plus we do have a law enforcement agent at the table on the
5   outer edge, if that --
6                DEPUTY MARSHAL:  That would be acceptable.
7                THE COURT:  We'll basically put you on notice that
8   you need to -- and I'm not suggesting at all, Mr. Dougherty,
9   that you are going to do anything but behave yourself, but I
10  just need to do my job and plan for potential events.
11               MR. DOUGHERTY:  Yes.
12               THE COURT:  So it's going to be incumbent upon you
13  to, you know, help out.
14               AN AGENT:  I will, Your Honor.
15               THE COURT:  I actually feel pretty confident we're
16  going to be okay.  I think we're going to be fine.  Okay, so
17  that's what we'll do.  So you may stray from the podium to that
18  area that I've just indicated.  Mr. Dougherty can do it, but he
19  also doesn't need to do it.
20               MR. PERRI:  Right.
21               THE COURT:  All right.  We've addressed that.  What
22  else?
23               MR. PERRI:  Your Honor, I'm not sure we talked about
24  it at the last hearing, but I was wondering if I could ask the
25  Court for a little clarification on what Mr. Young's role will

1  be as standby counsel.  I'm not clear on that.  And I notice
2  that, for the record, Mr. Young is seated next to the
3  Defendant.
4         If he's advising the Defendant, is he really standby
5  counsel?  Is he going to be suggesting objections that the
6  Defendant should make?  If he does that, I don't think he's
7  standby counsel.
8         So I know that at the previous hearings, Mr. Young
9  was seated in the spectator pews in the back of the court.  And
10 I know that the Defendant has been adamant that he does not
11 want any legal representation in this case despite the Court's
12 many efforts to speak to him about that.
13        THE COURT:  Pleading, I think, would be a fair word,
14 pleading him to take advantage of counsel, yes.
15        MR. PERRI:  So I just don't think that it's fair for
16 him to -- and I don't know if this is what he's decided or not.
17        THE COURT:  Right.  So that's a fair question.  So
18 let's hear.  What is -- I know in my court, the practice is
19 standby counsel does not sit at the table.  I don't know what
20 other courts have done.  Mr. Young, I think you do have
21 experience in this, so let me hear from you.
22        MR. YOUNG:  All right, Judge.  First of all, being
23 standby counsel is one of the most, I think, excruciating
24 experiences for a lawyer to have.  The role is not
25 well-defined.  There are -- there's a little leeway in how --

1   there's some discretion the courts have in determining how much

2   or how little standby counsel works with a defendant.

3          That being said, my understanding, and I will be glad

4   to hear from Mr. Dougherty, is that Mr. Dougherty is steering

5   his ship.  He is the captain.  He's making all the decisions.

6   I am merely here to help out with some menial tasks, including

7   getting him copies of things that he was unable to get while he

8   was housed or incarcerated.  I got some clothing for him.

9          THE COURT:  Thank you for doing that.

10          MR. YOUNG:  Sure.  I will be glad to assist Mr.

11   Dougherty in that manner.  If Mr. Dougherty wishes to have me

12   fulfill a function different than that, that goes beyond merely

13   providing him with services like that, but actual legal advice,

14   legal counsel, then I think it would be thoughtful and

15   practical for him to address that to the Court.

16          The Court can then make a decision.  We can hear from

17   the Government about how far or how little that may go.  But I

18   think that right now is my suggestion to the Court.

19          So for right now, unless Mr. Dougherty advises me

20   otherwise, my role is, I provided him with a little rules of

21   evidence book and some things about jury selection.  I have

22   given him the basics about the 10 perempts versus the 6, things

23   of that nature, just to give him some parameters to work with,

24   how openings work, things of that nature.

25          And I have not -- I did give him one more thing about

14

1   *Elonis*, maybe a little about jury instructions.  So to that

2   extent, I have advised him on some legal matters.

3              THE COURT:  Okay.

4              MR. YOUNG:  But as I said, I don't plan on being a

5   part of nudging him on the shoulder to object to things or

6   things of that nature.  However, if Mr. Dougherty wishes

7   something else, he can let me know and let you know and we can

8   figure out what to do.

9              THE COURT:  Okay.  Mr. Dougherty?

10             MR. DOUGHERTY:  Your Honor, again, Mr. Young being

11  here, I was just trying to avoid the same, you know,

12  inappropriate appearance that you're worried about with where

13  the Marshals would be sitting or whatever the case may be.

14             He's been more than willing to give me advice but

15  caution me that he's not acting as co-counsel or any kind of

16  hybrid role.  And please respect that, and I'm doing my best to

17  provide that.  But he's been helpful with the things that he

18  indicated.  But that's what I understood his role to be.

19             THE COURT:  So what I think is appropriate, I'm going

20  to follow the practice of my court historically.  I'm going to

21  ask Mr. Young not to sit at counsel table.

22             MR. YOUNG:  Sure.

23             THE COURT:  I think it could also confuse the jury

24  potentially.  Then I end up being in a position to describe

25  your role.  That could lead to all sorts of issues and that

1  unfair conclusions could be drawn against Mr. Dougherty

2  perhaps.  Now there's a table behind you.  What is that table

3  for?

4          COURTROOM DEPUTY:  He's free to sit there, Judge.

5  That's if we have multiple defendants.  So that would be great

6  if he could sit behind.

7          THE COURT:  Why don't we just do that.  That way --

8  and then during breaks, if Mr. Dougherty felt the need to ask

9  you for some of the, to do some of the tasks that you

10 described, we could do that.  I don't think that should occur

11 during trial.  And, of course, you're standby really at the

12 request -- well, not really, you are standby at the request of

13 the Court, so I may need to actually consult with you, so then

14 you're there.

15          And I think we will not describe your role, we'll

16 just leave it.  It's a different table.  And, Mr. Dougherty,

17 you should not be speaking with Mr. Young in front of the jury.

18 Having said that, if you have an epiphany and change your mind

19 that you think, in fact, you would be better served by having

20 counsel, and I've actually seen that happen, defendants think

21 twice, then I do think at that point we'll -- it would be

22 appropriate to speak with me, let me know that you want to

23 address that issue, and then we'll do so.  Does that make

24 sense?

25          MR. YOUNG:  It does to me, Judge.  I will sit right

1  back there.

2          THE COURT:  Thank you very much.  Again, I just want

3  to state for the record, I did before, but I do think you've

4  demonstrated, you know, such a degree of professionalism and

5  you've been a real credit to our profession, so I thank you on

6  behalf of the Court.

7          MR. YOUNG:  Oh, thanks, Judge, I appreciate that.

8  I'll be right here if he needs me.

9          THE COURT:  Okay.  All right.  That takes care of

10  that issue.  Anything else?

11          MR. PERRI:  Yes, Judge, a related matter.  I was

12  wondering if the Court planned in its preliminary discussions

13  with the jury to let them know that the Defendant is pro se in

14  this matter and that that's by his own choice.  I don't want

15  them to be wondering, hey, how come there's three people for

16  the Government and nobody for the Defendant?

17          And that that's something that he prefers and that he

18  wants and that he was -- it's an educated choice that the Court

19  has assured itself of, and that he will be expected to abide by

20  the same rules as everybody else since he's acting as his own

21  attorney.

22          THE COURT:  Okay.  Mr. Dougherty, do you disagree

23  with that?

24          MR. DOUGHERTY:  No.

25          THE COURT:  Okay.  So why don't I inform the jury --

1    actually, just one second.  So I put together some preliminary

2    instructions.  Let me hand them to you.  They're very, very

3    short.  So why don't you all take a look at these.  Could you

4    also give Mr. Young a copy?

5              MR. YOUNG:  Thanks, Judge.

6              THE COURT:  That's why I had six.

7              (Complied.)

8              MR. YOUNG:  Just so we're clear with everybody, I

9    would appreciate if I could be given copies of whatever is

10   floating around just because --

11             THE COURT:  No, I want that.  That was unintentional

12   that you were not given --

13             MR. YOUNG:  No, no, I understand that.  If the

14   Government could also be on notice that I should be provided

15   with anything that is being provided to Mr. Dougherty because

16   we don't know what's going to happen and I need to be able to

17   be ready to --

18             THE COURT:  Mr. Perri, do you agree with that?

19             MR. PERRI:  Yes, Your Honor.

20             THE COURT:  All right, thank you.  I'll also hand out

21   some voir dire.  I looked at the voir dire.  I condensed some,

22   you'll see.  You can take a look at that.  So let's do the

23   preliminary instructions first before we get to that.  Just

24   tell me when you're ready to discuss the preliminary jury

25   instructions.

1          MR. PERRI:  It looks fine to us, Judge.  It's pretty

2    basic stuff.

3          THE COURT:  Okay.

4          MR. PERRI:  And when you talk to the jury about the

5    pro se status, that will be in addition to --

6          THE COURT:  Yeah.  Do me a favor, let's wait until

7    Mr. Dougherty is ready and then we'll talk about amendments or

8    revisions.

9          (Pause.)

10         THE COURT:  Ready?

11         MR. DOUGHERTY:  Yes.

12         THE COURT:  Mr. Dougherty, do you have any objections

13   or any thoughts?

14         MR. DOUGHERTY:  No.

15         THE COURT:  No, okay.  So then what I would propose

16   to do is, when I get to the last sentence of kind of the

17   introduction, this would be on page 3, the Court describes the

18   role of the jury, at that point, what I would do is offer to

19   introduce the parties.  And then I would just say that Mr.

20   Dougherty has decided to represent himself in this case, all

21   right.

22         Did you think, Mr. Perri, I needed to say anything

23   other than he decided to represent himself?  And I will

24   explain, so he will be serving as his own lawyer, he's not a

25   lawyer, but he has made the decision to proceed that way.  And

1  I do think what I should say is, and, therefore, when he is

2  asking questions or making opening statements, at that point

3  he's acting in the role of an attorney.  All right.  I think I

4  should distinguish at that point that's different from taking

5  the stand and offering testimony.

6          Testimony is evidence, and I'm going to talk to you

7  about that later.  But -- and a Defendant in a criminal case

8  has a right under the fifth amendment not to present any

9  evidence.  So the -- but you're to view statements made by Mr.

10 Dougherty when he is standing at the podium, you don't treat

11 that as evidence, you treat that as lawyer discussion.  And --

12 I mean, I'm a little leery of saying too much about taking the

13 stand.

14         I have warned you, Mr. Dougherty, I want you to be

15 really careful about not testifying during your opening

16 statement.  We talked about that at length.  So you can say

17 things like, the evidence will show, I expect the evidence will

18 show this, but you can't effectively testify in your opening

19 and then not take the stand and try to rely on your opening as

20 if it were testimony.  Do you understand that?

21         MR. DOUGHERTY:  I think so, yes.

22         THE COURT:  Okay.  Mr. Young, do you have any

23 suggestions that you think in terms of what I ought to say or

24 not say with respect to introducing Mr. Dougherty, explaining

25 that he's pro se, saying that he may or may not take the stand,

20

1  that is a decision that he has, and you can't hold it against
2  him if he chooses not to put on evidence or take the stand; but
3  what he says as a lawyer in his role as representing himself is
4  not evidence and should not be considered as such, that should
5  be considered as the discussion of an attorney.
6          MR. YOUNG:  Yes.  I would just add one thing, Judge.
7  Just since he's acting as his own attorney, he may ask
8  questions of witnesses, he may give an opening statement, just
9  remember he will be acting as a lawyer in that capacity, so
10 that's not testimony.  If and when he takes the stand, you'll
11 know it, something to that effect.
12         THE COURT:  Okay.  All right, sounds good.
13         MR. PERRI:  One other thing, Judge.  I would ask that
14 the Court consider also saying something to the effect that
15 there are procedural evidentiary rules that apply in the
16 courtroom and the Defendant, acting as his own lawyer, will be
17 expected to abide by them just like any other lawyer in the
18 courtroom.
19         THE COURT:  I think that's fair.  Any objection, Mr.
20 Dougherty?
21         MR. DOUGHERTY:  No.
22         THE COURT:  Okay.  Anything else about the
23 preliminary jury instructions?
24         MR. PERRI:  No, Your Honor.
25         THE COURT:  All right.  And my intent is not to

21

1  distribute them, I thought I would just read them.

2          MR. PERRI:  No objection.

3          THE COURT:  You're good with that?

4          MR. DOUGHERTY:  Um-hum.

5          THE COURT:  Okay, so that takes care of that.  Now

6  let's look at the voir dire.  And I need to -- obviously,

7  there's some things I need to have you all fill in for me.  So

8  although you've been kind enough to orally represent or

9  introduce yourself, I'd like if you could submit something to

10 me in writing so I'm not going to forget a name, make sure I

11 have all the names correct.  Same for the witnesses.  Just let

12 me know if there are any objections to any of these questions.

13         (Pause.)

14         THE COURT:  Just let me know when you're all ready.

15         MR. PERRI:  No objection, Your Honor.

16         THE COURT:  Do you have a list of everybody at the

17 table and a list of witnesses, too?  If you could hand that up?

18 Thank you.

19         (Complied.)

20         (Pause.)

21         THE COURT:  Mr. Dougherty, do you have any objections

22 to the voir dire?

23         MR. DOUGHERTY:  I raised an objection to question 21,

24 but I see it's included anyway.

25         THE COURT:  You object to 21?

1          MR. DOUGHERTY:  Yes.

2          THE COURT:  And why?  I would have thought you would

3   almost want 21, so why do you object?

4          MR. DOUGHERTY:  Because it gives a premonition or it

5   implies that there's something wrong with that as being singled

6   out.  Why didn't you put down NAACP, ACLU, whatever?  Any other

7   constitutionally protected activity, I don't see mentioned in

8   these questions anywhere.  That is, in fact, a constitutionally

9   protected activity and, according to the *Holder* decision,

10  includes all able-bodied men.  And we're acting like --

11         THE COURT:  Let me ask you this -- sorry to

12  interrupt, but just to cut to the chase.  So I do recall that

13  you did say, well, why not have a question -- what if we had a

14  question that also then -- if we kept this question, but we had

15  another question that said, have you or a close friend or

16  family member ever been a member of -- and then you would want

17  to put what?  The ACLU?

18         MR. DOUGHERTY:  Yeah.

19         THE COURT:  Give me all of them.  I want to write

20  them down.

21         MR. DOUGHERTY:  ACLU, NAACP, Citizens United.

22         THE COURT:  Okay.  Anything else?

23         MR. DOUGHERTY:  That would be fine.

24         THE COURT:  So the Government, why don't I just add a

25  question then that says, have you or a close friend or family

1  member ever been a member of the ACLU, the NAACP or Citizens

2  United?  Any objection to that?

3          MR. PERRI:  NAACP?  I think that could create an

4  appellate issue, Judge, I really do.

5          THE COURT:  Why?

6          MR. PERRI:  Because it seems to be introducing race

7  into the jury selection process.

8          THE COURT:  Well, I think you're all trying to find

9  out information.  I mean, the National Association for the

10 Advancement of Colored People is not comprised solely of any

11 one particular race.  I mean, I think what Mr. Dougherty is

12 getting at is folks that would align themselves with the NAACP

13 might have certain views, and he might make jury selection

14 decisions based on that much the same way you're trying to find

15 out if members of the militia or members of a group that

16 considers itself to be militia might have certain views.  Do

17 you want to just scrap both questions?

18         MR. PERRI:  We won't object, Your Honor.

19         THE COURT:  Well, what do you want?

20         MR. PERRI:  I guess -- I don't see the political

21 dimension for NAACP.  And actually, I don't see whether or not

22 militia is a political question at all.  But I guess we won't

23 object.

24         THE COURT:  Well, let me ask you this.  Why do we ask

25 whether anybody has ever filed a lawsuit against another

1  person?

2         MR. PERRI:  Because we want to know what that their

3  experience is with the criminal justice system -- I mean, with

4  the court system.

5         THE COURT:  Well, we've already asked, have you ever

6  served as a juror?

7         MR. PERRI:  It goes along with the same lines.  But I

8  guess we don't object, Your Honor.

9         THE COURT:  Well, okay.  Then we'll just -- we can

10  ask.  Let me ask you, Mr. Dougherty, is there not a better way

11  of phrasing the question though that that is not so limiting?

12  In other words, I think what you're getting at was, these are

13  all groups that had litigated constitutional issues.  Isn't

14  that what you're really looking to find out?

15         MR. DOUGHERTY:  Again, I'm not looking -- I would say

16  it's improper to question anyone on their race, religion, or

17  affiliation with the militia as a constitution protected

18  activity.  If, in fact, you're saying that a question about

19  lawsuits and everything, that is appropriate, you know, because

20  that gives you certain indications of different things.

21         But to try and imply there's something wrong with any

22  of those groups, I agree with Mr. Perri, that creates the

23  impression that you are bringing racism in if you ask about

24  NAACP, just like you're implying there's negative purpose to

25  militias where, in fact, in my, you know, approach to it, I

1  believe the NAACP is a militia working through the partition

2  clause for good, just like the ACLU, just like Citizens United.

3          Now Citizens United would certainly not agree with

4  the NAACP, but it would give you some sort of balance.  You

5  asked me if I, you know, would balance the question.  I would

6  leave it out completely, that's just my point.

7          Because, again, no dispute that it indicates in the

8  second amendment a well-regulated militia being necessary for

9  the security of a free state, which is an accused absolute and

10 according to Justice Scalia when he wrote the opinion, it

11 pre-existed the founding of the country and, therefore, it's

12 protected by the ninth amendment.

13         We cannot read the constitution or any of the

14 statutes, laws, regulations to prohibit being part of one.

15 And, in fact, prior to the amendment to the Pennsylvania

16 Constitution, it was, you know, a mandatory function and it

17 basically included the original definition of all able-bodied

18 men.

19         So I believe it's a loaded question to even if you

20 don't have members of a militia, you're implying there's

21 something wrong with the militia, just like you would be

22 implying something wrong with someone being part of the ACLU.

23         THE COURT:  I'm going to strike question 21, and I'm

24 not going to ask the ACLU question.  I'm going to strike

25 question 21.  All right.  Anything else?  Okay.  I think we're

1  ready to go.

2          COURTROOM DEPUTY:  If we can, can we do a little run

3  through of the sidebar?

4          THE COURT:  Oh, yes.

5          COURTROOM DEPUTY:  Here are your headphones.

6          MR. PERRI:  Judge, there's one other thing.

7          THE COURT:  Yes, sorry, okay.

8          MR. PERRI:  There is one other thing, just one

9  second.  So my co-counsel reminded me.  Judge, there was a

10  motion in limine that we filed on 404(b) and the Court issued

11  an order on that granting the motion, but sort of reserving its

12  decision as to the May 8th, 2015, visit to the Defendant and

13  also a May 13th.

14          THE COURT:  Correct.  I didn't see that being other

15  crimes evidence.

16          MR. PERRI:  Right, Your Honor.

17          THE COURT:  I didn't understand it.

18          MR. PERRI:  Just to be clear, we don't think it is

19  either.  But we didn't want anybody saying, hey, this is bad

20  behavior by the Defendant, you know, you're trying to get in

21  under bad behavior by the Defendant.  In an abundance of

22  caution, we put that in there because we would like to talk at

23  least about the May 8th visit, and we wanted to be sure it's

24  okay to do that.

25          THE COURT:  Okay.  So the May 8th visit is

27

1  effectively an admission by the Defendant.  I mean, those are

2  admissions under the rules.

3          MR. PERRI:  True.

4          THE COURT:  So it's not hearsay.  The question is

5  relevance.  Maybe Mr. Dougherty doesn't even object.  So this

6  is an interview with -- was it Marshals?

7          MR. PERRI:  Yeah, the Marshals.

8          THE COURT:  On May 8th of 2019.

9          MR. PERRI:  No, 2015, Your Honor.

10         THE COURT:  2015.

11         MR. PERRI:  Yes.  And they went to talk to him about

12 an altercation that occurred.

13         THE COURT:  Correct.  Okay.  This was -- and you said

14 in the paper explicitly that the altercation did not involve

15 threats.

16         MR. PERRI:  Did not involve threats.

17         THE COURT:  Okay.  Mr. Dougherty may not even object

18 to it.  Let me hear that.  Mr. Dougherty, are you aware of this

19 interview that occurred in May of 2015?

20         MR. DOUGHERTY:  Yes, Your Honor, I was there.

21         THE COURT:  Right.  Do you object to the Government

22 adducing evidence about that interview?

23         MR. DOUGHERTY:  No.  I do object to it being

24 characterized as bad behavior.

25         THE COURT:  Well, I wouldn't let them describe it

1    that way.  They should just adduce facts.

2              MR. DOUGHERTY:  Right.  In fact, I did see in the

3    testimony of Christopher Cruz that he makes reference to the

4    incident and, in fact, is factually incorrect, which I intend

5    to demonstrate in terms of the documentation that I had asked

6    standby counsel to retrieve for me because I can't get through

7    here.

8              THE COURT:  Do you have that documentation?

9              MR. DOUGHERTY:  It's available in the ECF under

10   15-CV-582 from District Court.

11             THE COURT:  Do you need a hard copy of it?

12             MR. DOUGHERTY:  Yeah, that's what I need.  In other

13   words, I need the service affidavits to prove it wasn't me that

14   was doing the service and all of that ballyhoo was my service

15   processer that I actually had to drag out of the building.

16   They were going to try to tackle him and take the service back.

17             THE COURT:  Let's do two things.  One, it sounds like

18   there is no objection, so you can bring it up.  The second

19   issue though is a hard copy of the filing.

20             MR. DOUGHERTY:  Affidavits of service, you know,

21   sworn to by the service processer.

22             THE COURT:  All right.  Do we have hard copies

23   somewhere?

24             MR. PERRI:  He's talking about whether or not he

25   actually accomplished service in a particular way or not a

1  particular way, whether he did it right or wrong.  I mean,

2  that's neither here nor there.  We would not have copies of

3  that.

4           THE COURT:  The answer is, you don't have a copy.

5  Mr. Young, do you have a copy?

6           MR. YOUNG:  No, but if -- what Mr. Dougherty is

7  asking for, I can go to the public defender office.

8           THE COURT:  We can present a copy?

9           MR. YOUNG:  Yeah.

10          THE COURT:  How many pages are we talking?  Is this

11  voluminous?  Hundreds of pages?

12          MR. DOUGHERTY:  No, it's just the affidavit of

13  service for each of the departments, and I think it might have

14  been five, but it would prove it wasn't me.

15          THE COURT:  I don't want to go into what it's going

16  to prove or not prove.  What is the DI number?  Liz, do you

17  think we could look to see?  You said 58 something?

18          MR. DOUGHERTY:  It's 15-CV-582 District Court of

19  District of Columbia, and it's the affidavit of service.  You

20  would get it through the PACER system.

21          THE COURT:  Okay.

22          MR. DOUGHERTY:  Just hit the drop down box.

23          THE COURT:  Hold up.  So it's 15-CV-what?

24          MR. DOUGHERTY:  582.

25          THE COURT:  It's in the District Court of?

1          MR. DOUGHERTY:  For the District of Columbia.  It's

2   *Keith Dougherty versus Chief McKee, et al.*

3          THE COURT:  It's docket number, item number what?

4          MR. DOUGHERTY:  It's got to be in the first 10, I

5   think, because, again, it's the affidavit of service that has

6   to be filled out by the service processer.

7          THE COURT:  Okay.  Hold on a second.

8          (The Court confers with the law clerk.)

9          THE COURT:  All right.  Are you trying to get the

10  certificate of service by Stevens and Lee?

11         MR. DOUGHERTY:  It's not by Stevens and Lee, it would

12  be -- there is a form printed with the summons where the

13  service processer has to fill out who the summons was for and

14  when it was served.  And they sign that it was done or

15  accomplished on a given date.

16         THE COURT:  All right.

17         MR. DOUGHERTY:  And there would be one for the date

18  in question relative to the Harrisburg clerk as far as I

19  remember.  So that should be filled out by Michael Cobaugh, you

20  know, but -- it would be around the date of April 30th, 2015,

21  according to their testimony.

22         THE COURT:  All right.  There is a 58-page document

23  which says, complaint and summons, and has exhibits attached to

24  it.

25         MR. DOUGHERTY:  That's not what we're talking about.

31

 1   It should be docketed as an affidavit of service.  I don't know

 2   --

 3           THE COURT:  I'm looking at the docket sheet, as I

 4   speak.

 5           (Pause.)

 6           MR. DOUGHERTY:  Some of them would be by certified

 7   mail, but this one would actually have an affidavit.

 8           THE COURT:  I'm not seeing anything.

 9           (Pause.)

10           THE COURT:  Docket number 1 is a complaint.  And then

11   the next line does not have a docket number, and it says,

12   summons not issued as to all defendants, entered April 20,

13   2015.  Docket number 2 is a motion for a CM/ECF password by

14   you.  Docket number 3 is a motion to expedite issuance of

15   summons by you.  Docket number 4 is a motion for a preliminary

16   injunction by you.  The next entry is a summons issued as to a

17   number of people.

18           MR. DOUGHERTY:  Um-hum.

19           THE COURT:  It doesn't have a docket number

20   associated with it.  The next entry is docket number 5, and it

21   says, entered in error as a duplicate to docket number 6,

22   motion to dismiss for lack of jurisdiction.  Docket number 6 is

23   a motion to dismiss for lack of jurisdiction.  Docket number 7

24   is a corporate disclosure statement by Stevens and Lee.  I

25   could continue, but I just -- there is a return of service

1  affidavit.

2          MR. DOUGHERTY:  There we go.

3          THE COURT:  Is that it?

4          MR. DOUGHERTY:  That would be in that category, yes.

5          THE COURT:  All right, let me look.  And there's two

6  of those.

7          (Pause.)

8          THE COURT:  This is a proof of service, docket number

9  12, it's dated -- it was filed May 20th, 2015.  It's three

10 pages.

11         MR. DOUGHERTY:  We're talking about the one

12 specifically for the incident at the Harrisburg clerks.

13         THE COURT:  Right.  But I don't know what that is.

14 This one has three pages, including a certified mail receipt

15 copy.

16         MR. DOUGHERTY:  So that wouldn't be it.  This one was

17 hand delivered by Michael Cobaugh, and it happened at different

18 dates.  So it would be around the April 30th timeframe.

19         MR. YOUNG:  With the Court's permission, I've got the

20 docket on my phone.  May I approach Mr. Dougherty?  He can look

21 at it, if he'd like.

22         THE COURT:  Yes, that would be great.  Thank you.

23         (Complied.)

24         THE COURT:  Mr. Perri, what I'm trying to do is

25 quickly get this document, if it's possible, printed.  And then

33

1  let's move.

2          (Pause.)

3          THE COURT:  The thing I would focus on, if I were

4  you, is docket numbers 13 and 14, return of service affidavit.

5  Did you say by Michael Scott Cobaugh?

6          MR. DOUGHERTY:  Yes.

7          THE COURT:  Okay.  Docket number 13 is a proof of

8  service signed by him.  Do you want a copy of that?

9          MR. DOUGHERTY:  And who was it for?  Does it say?

10         THE COURT:  William Caldwell.

11         MR. DOUGHERTY:  Yes, that's it.

12         THE COURT:  That's the one you want?

13         MR. DOUGHERTY:  Yes.

14         THE COURT:  Okay.  Liz, can we get that printed?  I'm

15  going to download it, and I'll send you a PDF.

16         MR. YOUNG:  Yes, he's seeing it, Judge.

17         THE COURT:  That's what it is.  So it's a 26-page

18  document, and it's DI 13.  Is that correct?  Just confirm.

19  Right?

20         MR. DOUGHERTY:  I didn't realize it was attached to

21  other documents.

22         THE COURT:  No, well, the whole thing is 26 pages.

23         MR. YOUNG:  It's 26 pages.

24         MR. DOUGHERTY:  Oh, it's got everybody on there,

25  yeah.

34

1          THE COURT:  That's fine.  We will have it printed.
2   All right.  While we're getting that document.  Are there any
3   issues?
4          MR. ADKINS:  On this paper, I put the Government's
5   representation of all the witnesses.  I handwrote them in.
6          THE COURT:  All right.  Anything else?
7          MR. PERRI:  I think that's it, Your Honor.
8          THE COURT:  Is it Pat Armor?
9          MR. PERRI:  I think it just says, Armor.
10          THE COURT:  Okay.  And Caleb Enerson.  Michael
11   Corricelli.  Is that correct?
12          MR. PERRI:  Corricelli.
13          THE COURT:  Christopher Cruz.  Okay.  Mr. Dougherty,
14   are there any other people I should mention that are potential
15   witnesses?
16          MR. DOUGHERTY:  You're saying witnesses I wanted to
17   present?
18          THE COURT:  Yes.
19          MR. DOUGHERTY:  Well, again, I had made a number of
20   requests, as we had discussed, through Thomas Young, and --
21          THE COURT:  You made a request, I recall, to subpoena
22   certain judges.
23          MR. DOUGHERTY:  Certain judges and, for instance, the
24   former Clerk, Mary D'Andrea, Peter Welsh as a current Clerk,
25   and some various others.  But there was a discussion that that

35

1  would all have to be discussed and approved.

2          THE COURT:  But I don't recall ever receiving any

3  applications to subpoena them.  There was one discussion that I

4  recall about a judge, that was it.

5          MR. DOUGHERTY:  Well --

6          THE COURT:  And I said you had to go through process,

7  you couldn't just stand up in court and make a petition.

8          MR. DOUGHERTY:  Yes.  The point being that when I

9  spoke with you on, I think it was August 25th, I said, did you

10  want me to present these requests through Thomas Young or --

11  because I could not communicate directly with the prosecution

12  under Criminal Rule 16.1.  And you had indicated, yes.

13          So I had a running set of communications through Mr.

14  Young in the letter form.  But then he indicated to me when

15  meeting with me, his understanding of standby counsel was that

16  that activity would be considered hybrid.  I said, well, I had

17  spoken about this with the judge, you know, at one point

18  face-to-face.  And he said, yes, that would be the better way

19  to go, to present --

20          THE COURT:  The better way to go, but what I was

21  saying is you could ask Mr. Young kind of for how do you do

22  that, not that he would do it.  He's not your lawyer.  But that

23  was up to you.  So the bottom line is you did not issue any

24  subpoenas for any witnesses?

25          MR. DOUGHERTY:  I did not issue any subpoenas.

36

1           THE COURT:  Okay, all right.

2           MR. DOUGHERTY:  So the -- again, in my conversation

3    with you, and I hate to say that I misremembered, but I was

4    specifically asking you that since you had effectively rejected

5    the subpoenas I had tried to obtain earlier in the process --

6           THE COURT:  I don't know what you're referring to,

7    the subpoenas you tried to obtain.

8           MR. DOUGHERTY:  I tried to have depositions done.

9           THE COURT:  Depositions, okay, right.

10          MR. DOUGHERTY:  And you had rejected that at the

11   request of the prosecution.  So then I also indicated at that

12   point, since I am under the impression that in prison we don't

13   have access to the drop down box where you can printout a

14   subpoena, that I, in fact, had to make that request and it

15   would have to be approved through you.

16          So I was doing that, like I said, in the written

17   narrative with the headings along those lines.  In fact, most

18   recent one I had indicated, I requested activity from Thomas

19   Young that integrated a couple subpoenas being issued for

20   certain evidentiary matters.  And again, I was under the

21   impression that that's the role that he was playing.

22          In fact, we had had a conversation -- the only

23   communication I ever had of any substance with former

24   prosecution, Jeffrey Finucane, was on February 20th, and he at

25   that point indicated he would not communicate with me.

1          And I said, well, at that point the communication we
2   had spoken that Thomas Young would be the go-between actually
3   and make any of those kinds of requests.  But you're telling me
4   now that it had to be done by a subpoena.  That is different
5   than what my understanding was.
6          THE COURT:  Well, we're ready to bring a jury in now.
7   We've had many many hearings.  And again, you've decided to
8   proceed pro se.  I told you, you had to educate yourself about
9   the rules and whatnot.  I did say for sure that you could ask
10  Mr. Young to provide you information about what steps you have
11  to go through to obtain a subpoena and whatnot.  You haven't
12  subpoenaed any witnesses, so then I won't mention any.
13          Okay.  Anything else before we bring the jury in?
14  We're having the document printed for Mr. Dougherty?
15          COURTROOM DEPUTY:  Yes.
16          THE COURT:  We'll provide -- let's get --
17          COURTROOM DEPUTY:  I asked her for five.
18          THE COURT:  We'll get copies made so you have those.
19  All right.  Are we ready for the jury to go in?
20          COURTROOM DEPUTY:  We're going to do a test.
21          (All parties test the sidebar conference technology.)
22          THE COURT:  In my jurisdiction, for instance, they do
23  not go back with a Defendant, the jurors' lists.
24          COURTROOM DEPUTY:  I take them all and shred them.
25          THE COURT:  Okay, perfect.  All right.  So then we'll

 1   bring them in.  Mr. Dougherty, these people, they have been

 2   randomized and they are now in certain order.

 3            MR. DOUGHERTY:  Okay.

 4            THE COURT:  Okay.  And I'm going to follow your lead.

 5            (Courtroom deputy explains jury selection process to

 6             all parties.)

 7            (Prospective jurors are brought into the courtroom at

 8             9:59 a.m.)

 9            (Prospective jurors are sworn.)

10            THE COURT:  All right.  Good morning, everybody.

11   First of all, my name is Colm Connolly.  I'm actually a judge

12   from a different District of the United States, and I'm

13   presiding over this case.  It's a criminal case.

14            And I'm not wearing a mask, I'm vaccinated.  I'm so

15   far away from everybody, so that when I'm speaking, I will take

16   my mask off.  We are going to follow that rule throughout this

17   case.  Witnesses that testify will be required to take their

18   mask off.  They're at a distance.  And then when the lawyers or

19   the Defendant is speaking, they, too, will remove their mask,

20   but they'll be a distance away.  All right.

21            So first of all, thank you.  I thank you on behalf of

22   this District, the Middle District of Pennsylvania, that I've

23   been assigned to work on this matter.  You are fulfilling a

24   constitutional role, and so the Court is grateful.  It's an

25   important role that you all play in our constitutional system.

1          Let me tell you what we're going to do here.  The

2    first thing we're going to do is we're going to select a jury

3    among you to sit in regards to this case.  And so you're part

4    of what we call the panel of prospective jurors.

5          And this is a case that's been -- it's called United

6    States against Keith Thomas Dougherty.  It's a criminal case,

7    as I mentioned.  The Defendant, Keith Dougherty, is charged

8    with committing one count of mailing threatening communications

9    and two counts of interstate communications with threat to

10   injure in violation of federal criminal law.

11         From this panel, we will select a jury of 14, 12

12   jurors and then 2 alternates, who will be part of the trial.

13   And we have two alternates in the event that one or two of the

14   12 regular jurors becomes ill or is otherwise unable to serve.

15         We rely on juries in this country to decide cases

16   tried in our courts.  So service, as I mentioned, is an

17   important duty of citizenship.  And we require jurors to

18   conduct themselves with honesty, integrity, and fairness.

19         Under our system of justice, the role of the jury is

20   to find the facts of the case based on the evidence that is

21   presented at trial.  And that is from the evidence that's seen

22   and heard in the court.  And it's from that evidence that the

23   jury decides what the facts are and then applies those facts to

24   the law.

25         And the law comes from the Court.  So the law that

40

1  you will apply is the instructions that are given by the Court.

2  And my role as the trial judge is to make whatever legal

3  decisions need to be made during the trial and then to explain

4  to the jury the principles of law that will guide its

5  deliberations.

6          We recognize that you all are here at some sacrifice.

7  I always tell jurors there's only three things that the

8  Government can just mandate from you:  You pay taxes; if you're

9  drafted, you have to serve in the military; and then you have

10 to serve as a juror.  Those are really the only affirmative

11 things the Government requires of you.

12         And it does involve personal inconvenience.  But we

13 cannot serve -- we cannot excuse folks just based on mere

14 inconvenience.  So what we look to is whether service would

15 present a compelling hardship that might require your excusal.

16         Now you've already been sworn, and there's a reason

17 for that.  It's because we are about to conduct a process

18 called voir dire.  It's questioning of prospective jurors.  And

19 because it's important that you answer truthfully, you're

20 placed under oath.  And that's why we do that.

21         And a deliberate false answer to the questions that

22 are posed could actually result in severe penalties.  Basically

23 the questions you're going to hear I'm going to ask, they go to

24 finding out whether or not you're capable of rendering a fair

25 and impartial verdict.

1          We want to know if there's anything that might give

2   rise to circumstances that would make that difficult for you to

3   do, and that's why we're asking the questions.  The questions

4   are not intended to embarrass anybody.  And if you had a

5   response to a question that I posed that you don't want to

6   speak about in front of anybody else, just raise your hand and

7   then we can conduct it in a private setting.  We've got

8   mechanics here, you'll see, that we can put in air noise and

9   just question people privately over by my bench here.

10         Now during the voir dire process, there may be times

11  when we're going to have to speak, the lawyers and the

12  Defendant and myself.  And again, what we do then is we'll put

13  on ear phones, you'll all be out there, and we'll put up the

14  white noise.  And then we'll move people around here next to

15  microphones so we can speak and not be heard.  All right.

16         Now I'm going to have the parties introduce

17  themselves.  I'm going to start with the Government, the United

18  States.  And I'm going to ask Mr. Perri, who's an Assistant

19  United States Attorney, the lead prosecutor, to stand and

20  introduce himself to you and the folks that are with him.  All

21  right.

22         MR. PERRI:  Good morning, everybody.  My name is

23  David Perri.  I'm an Assistant United States Attorney.  I work

24  for the U.S. Attorney's office.  This is my co-counsel, Shawn

25  Adkins.  He's also an Assistant United States Attorney.  And

42

1  also seated at the table with us is the case agent, he's our
2  United States representative.  His name is Christopher Cruz.
3        THE COURT:  Thank you.  All right.  And then Mr.
4  Dougherty.  Mr. Dougherty has decided to proceed what's called
5  pro se.  So he is not represented by a lawyer, and he's not a
6  lawyer.  And so he is going to be -- he's playing two roles, if
7  you will.
8        So one is, he's acting himself, he's the Defendant
9  that's been charged with the three counts.  But he's
10 representing himself.  The law permits that to be done.  And
11 when he speaks to you in the role of lawyer, you're supposed to
12 treat that as if he were a lawyer.  And that is, it's not
13 evidence.
14       And that differs because when a witness takes the
15 stand, that's evidence.  Now a Defendant in a criminal case
16 does not have to take the stand.  They have a fifth amendment
17 right that makes that the case under our constitution, that the
18 burden of proof in a criminal case always rests with the
19 Government.
20       The Government has to establish guilt beyond a
21 reasonable doubt.  The Defendant is innocent until proven
22 guilty beyond a reasonable doubt.  And so the Defendant in our
23 country does not have to put on a defense.  So -- and you can't
24 hold it against a Defendant if the Defendant chooses not to
25 testify or not to put on a defense.

1          But a Defendant may elect to testify, he has that
2    right as well.  And when a Defendant testifies and sits here
3    and is under oath, that's evidence.  But when a Defendant
4    speaks to you in the capacity of a lawyer, that's not evidence,
5    and it's not to be treated as evidence.  It's to be treated in
6    the same way you would treat the statements from Mr. Perri and
7    his colleagues as a lawyer statement.
8          So, Mr. Dougherty, do you want to just stand and just
9    -- you can introduce yourself.
10         MR. DOUGHERTY:  Everything the judge has said is
11   true.  And my name is Keith Dougherty.  And I am the Defendant.
12         THE COURT:  All right.  Thank you very much.  All
13   right.  All right.  So we're now going to turn to voir dire,
14   all right.  So I'm going to ask you a bunch of questions.  So
15   you were just introduced to the Government and to Mr.
16   Dougherty.
17         And I'm just going to go over the names again.  So
18   it's David Perri, Shawn Adkins, Christopher Cruz, and Mrs.
19   Teresa Lesko.  And my first question is, are you related to or
20   personally acquainted with any of those individuals?  Okay.
21   (No response.)
22         Question number 2, the Defendant, you've heard, is
23   Keith Thomas Dougherty.  Do you or any member of your immediate
24   family or close friend have any connection with Mr. Dougherty?
25   All right.  (No response.)

44

1          There are some other individuals whose names have

2 been associated with this case, and they consist of Caleb

3 Enerson, Eric Hanna, Christopher Conner, Michael Corricelli,

4 Christopher Cruz, Pat Armor, Joy Conti.  Do you or any member

5 of your family or close friend have any connection to any of

6 those individuals?  Okay.  (No response.)

7          Have any of you read or heard anything about this

8 case?  All right.  (No response.)

9          Have you or any member of your family ever been a

10 witness to or a victim of or convicted of a crime?  So no

11 witnesses, victims, or persons charged with crimes?  Okay.  (No

12 response.)

13          Have you or any member of your family or close friend

14 been employed by or investigated by a law enforcement agency?

15 And that would include any local police or private security or

16 federal agency.

17          A PROSPECTIVE JUROR:  When you say family, immediate

18 family, like my father was involved in something years ago.

19          THE COURT:  Give me the nature of it.  Are you okay

20 with talking about that?

21          A PROSPECTIVE JUROR:  It was over 30 years ago.  I

22 don't know all -- remember all of the if's, and's, and but's,

23 but it was something with the Government from where he worked.

24          THE COURT:  Okay.  Well, he wasn't charged with a

25 crime, right?  Because you've already answered that.

1          A PROSPECTIVE JUROR:  We were here.  We were in

2     court.

3          THE COURT:  Were you?

4          A PROSPECTIVE JUROR:  Yeah.  And he had a fine.

5          THE COURT:  Okay.

6          A PROSPECTIVE JUROR:  There wasn't a jury, that I can

7     remember.

8          THE COURT:  All right.  Is there any reason because

9     of that experience that you had that you could -- would it make

10    you unable to be fair or impartial in this case?

11         A PROSPECTIVE JUROR:  I don't believe so.

12         THE COURT:  Okay.  And what's your juror number?

13         A PROSPECTIVE JUROR:  Four.

14         THE COURT:  Okay.  Anybody else?  Yes, ma'am?

15         A PROSPECTIVE JUROR:  I don't know if this is

16    relevant or not.  But right now, I think I have something going

17    on in family court with an issue with my son at school.

18         THE COURT:  Okay.

19         A PROSPECTIVE JUROR:  I don't know if that's relevant

20    or not.

21         THE COURT:  What's your number?

22         A PROSPECTIVE JUROR:  Number 8.

23         THE COURT:  All right.  Would it have any ability or

24    any impact -- I'm sorry, let me rephrase it.  Do you think it

25    would impact whatever experience you're having in state court

46

1    on your ability to be a fair and impartial juror in this case?

2            A PROSPECTIVE JUROR:  I don't think so.  It was to do

3    with bullying.  It just got to where the police were in on it

4    because the resource officer was there.

5            THE COURT:  Gotcha.

6            A PROSPECTIVE JUROR:  I guess just the nature of it.

7    But, no, I don't think so.

8            THE COURT:  And juror number 8, right?

9            A PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Okay, thank you.  All right.  Anybody

11   else?  (No response.)

12           Are you or any member of your family an official or

13   an employee of the United States Government?  All right.  A

14   couple people.  Yes, ma'am, what number are you?

15           A PROSPECTIVE JUROR:  One.  My spouse is just a

16   federal employee.

17           THE COURT:  And what does he do?

18           A PROSPECTIVE JUROR:  He's an IT guy.

19           THE COURT:  IT, okay.

20           A PROSPECTIVE JUROR:  Defense Logistics Agency, DLA.

21           THE COURT:  Gotcha.  Yes, sir.  Wait, we got a bunch

22   here.  So I'm going to go with you, sir.  Are you number 3?

23           A PROSPECTIVE JUROR:  I'm 3.  A nephew, I have a

24   nephew that's an agent, a federal agent.

25           THE COURT:  What kind?

47

1             A PROSPECTIVE JUROR:  FBI.

2             THE COURT:  FBI, okay.  Number 12, I think it is?

3             A PROSPECTIVE JUROR:  Yeah, 12.  My wife works for

4    NASA.

5             THE COURT:  Okay.  All right.  Yes, sir, you're 13?

6             A PROSPECTIVE JUROR:  Yep.  Technical expert, Social

7    Security Administration.

8             THE COURT:  And is that what you do?

9             A PROSPECTIVE JUROR:  Yes.

10            THE COURT:  Okay.  Yes, ma'am?

11            A PROSPECTIVE JUROR:  Would a husband of a cousin be

12   relevant?

13            THE COURT:  I'm going to save you that.  Yes, ma'am,

14   what number are you?

15            A PROSPECTIVE JUROR:  Twenty-one.

16            THE COURT:  Okay.

17            A PROSPECTIVE JUROR:  Does it have to be me or --

18            THE COURT:  No, a member of your family.

19            A PROSPECTIVE JUROR:  Oh, my fiancee is a federal

20   fireman.

21            THE COURT:  Where is he a federal fireman?

22            A PROSPECTIVE JUROR:  For the Pentagon.

23            THE COURT:  In DC?

24            A PROSPECTIVE JUROR:  Well, he's at Raven Rock.

25            THE COURT:  Okay, great.  You, sir, what number are

1  you?

2          A PROSPECTIVE JUROR:  Eighteen.  Did you say

3  immediate family?  Because my one cousin, I'm pretty sure he

4  works for Homeland, but I'm not -- like I don't know what he

5  does.  He just works -- I don't know.

6          THE COURT:  That doesn't count.  That doesn't count.

7  I'm going to limit to close family.  Yes, sir, what number are

8  you?

9          A PROSPECTIVE JUROR:  Twenty-eight.

10         THE COURT:  Twenty-eight.  Go ahead.

11         A PROSPECTIVE JUROR:  I'm a director for the Division

12  of Budget For Health and Human Services.

13         THE COURT:  Okay.  All right.  Ma'am, what number?

14         A PROSPECTIVE JUROR:  Thirty-five.

15         THE COURT:  Thirty-five.  And what's your answer?

16         A PROSPECTIVE JUROR:  My brother is a lawyer for the

17  Department of Justice.

18         THE COURT:  Is that in Washington?

19         A PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Okay.  All right.  Anybody else?  You're

21  36?

22         A PROSPECTIVE JUROR:  I'm 36.

23         THE COURT:  And how about you?

24         A PROSPECTIVE JUROR:  My son works for Letterkenny.

25         THE COURT:  And I'm sorry, I'm having a hard time

49

1    hearing?

2              A PROSPECTIVE JUROR:  My son works for Letterkenny.

3              THE COURT:  Letter committee?

4              A PROSPECTIVE JUROR:  Letterkenny.

5              THE COURT:  I'm not sure what that is.

6              A PROSPECTIVE JUROR:  He works in Chambersburg.  Army

7    Depot.  It's a military base.

8              THE COURT:  Oh, okay.  This is the problem from not

9    being from the area.  So, see.  All right.  So you've got a son

10   in the military or working on a military base?

11             A PROSPECTIVE JUROR:  Yeah.

12             THE COURT:  Okay.  Yes, sir, you're 37?

13             A PROSPECTIVE JUROR:  Thirty-seven.  I have a son

14   serving in the military currently.

15             THE COURT:  All right.  All right.  And then you're

16   38 then, ma'am?

17             A PROSPECTIVE JUROR:  Thirty-eight.  My son serves in

18   the military, too.

19             THE COURT:  Wow, that's very impressive to have both

20   of you so close and similar, isn't it?  All right.  So the next

21   row, the gentleman with the black --

22             A PROSPECTIVE JUROR:  Forty-four.  My father works at

23   Letterkenny Army Depot also, and then my brother is an active

24   member of the Air Force.

25             THE COURT:  Okay.  And you're 34?

50

1          A PROSPECTIVE JUROR:  Forty-four.

2          THE COURT:  Forty-four, okay, thank you.  All right.

3 Let's see, there's a lady behind you in the very back row, I

4 believe.  What number are you?

5          A PROSPECTIVE JUROR:  Fifty-six.

6          THE COURT:  Fifty-six.

7          A PROSPECTIVE JUROR:  And my brother worked for

8 Homeland Security out of Philadelphia.

9          THE COURT:  Okay.  Anybody else?  Yes, sir?

10          A PROSPECTIVE JUROR:  Forty-eight.

11          THE COURT:  Okay.

12          A PROSPECTIVE JUROR:  My cousin is a federal police

13 officer at Letterkenny.

14          THE COURT:  You are a federal police officer?

15          A PROSPECTIVE JUROR:  No, my cousin is.

16          THE COURT:  Okay.  You can put the mask back on, I

17 can hear you now.

18          COURTROOM DEPUTY:  Do you have your mask, sir?

19          A PROSPECTIVE JUROR:  I don't have one.

20          COURTROOM DEPUTY:  Do you need one?

21          A PROSPECTIVE JUROR:  Yeah.

22          (Complied.)

23          THE COURT:  Anybody else?  Yes, ma'am?  What number

24 are you?

25          A PROSPECTIVE JUROR:  Twenty-seven.  My stepbrother

51

1  is a U.S. Marine.

2            THE COURT:  Okay.  Yes, ma'am?

3            A PROSPECTIVE JUROR:  Do you need to know about

4  brother-in-laws, too?

5            THE COURT:  You spend a lot of time with him?

6            A PROSPECTIVE JUROR:  Not really.

7            THE COURT:  No, I don't need that.  You, sir?

8            A PROSPECTIVE JUROR:  Number 11.  My son is in the

9  military.

10            THE COURT:  All right.  Anybody else?

11            A PROSPECTIVE JUROR:  Thirty-two.

12            THE COURT:  Thirty-two.

13            A PROSPECTIVE JUROR:  My stepdaughter is AGR at Fort

14  Indiantown Gap.

15            THE COURT:  I apologize, with the mask, it's so hard.

16            A PROSPECTIVE JUROR:  She's AGR, Fort Indiantown Gap.

17            THE COURT:  Okay.  Okay.  All right.  Fair number of

18  you there.  We may follow-up with questions with those folks.

19  All right.  Now here's a question.  Would you give more or less

20  weight to the testimony of a law enforcement agent or police

21  officer than you would to that of a civilian witness simply

22  because he or she is employed as a law enforcement agent or

23  police officer?  All right.  (No response.)

24            Next question.  Is there anyone on the jury panel who

25  would not be able to sit in judgment of another individual

52

1  because of any personal beliefs?  (No response.)

2         Next question.  Do you believe that it is the

3  responsibility of the person accused to prove his or her

4  innocence?  All right.  (No response.)

5         Next, if you are selected as a juror in this case,

6  you will take an oath to render a verdict based upon the law as

7  given to you by the Court.  You will be required to accept the

8  law as given to you by the Court without regard to any personal

9  opinion you may have as to what the law is or should be.  Is

10  there any person who would not be able to reach a verdict in

11  accordance with the law as given to you in the instructions of

12  the Court?  (No response.)

13         Next, provided the Government proves the Defendant's

14  guilt beyond a reasonable doubt, would anything you might learn

15  about the Defendant concerning such things as age, health,

16  race, national origin, religious affiliation, family

17  circumstances, or economic circumstances prevent you from

18  finding him guilty?  (No response.)

19         Next, does anyone have a medical condition, for

20  instance, a visual or hearing impairment that might affect his

21  or her ability to devote full attention to this proceeding?

22  Yes, sir?

23         A PROSPECTIVE JUROR:  I have hearing aids.

24         THE COURT:  Does it affect -- are you able to hear

25  me?

53

1          A PROSPECTIVE JUROR:  Sometimes.

2          THE COURT:  All right.  But not all the time?

3          A PROSPECTIVE JUROR:  Sometimes it's hard to hear.

4          THE COURT:  Okay.  What number are you?

5          A PROSPECTIVE JUROR:  Forty-seven.

6          THE COURT:  Next, have any of you served as a juror

7    in a criminal or a civil case or as a member of a grand jury in

8    either the federal or state courts?  Okay.  So we'll start with

9    number 2.

10          A PROSPECTIVE JUROR:  To be honest, I don't remember

11   if it was state, but I was in on a murder case in Gloucester,

12   Virginia.

13          THE COURT:  Give me one second, all right.  All

14   right.  So you said it was a murder case in Virginia?

15          A PROSPECTIVE JUROR:  Right.

16          THE COURT:  Was there a verdict?

17          A PROSPECTIVE JUROR:  It was after a few days he took

18   a plea bargain.

19          THE COURT:  So there was no verdict?

20          A PROSPECTIVE JUROR:  No verdict.

21          THE COURT:  All right.  And that experience, did it

22   affect your ability to be fair or impartial in a case here?

23          A PROSPECTIVE JUROR:  No.

24          THE COURT:  Okay.  Who's next?  You, sir?

25          A PROSPECTIVE JUROR:  Number 3.  About 25 years ago,

54

1   I was on a federal one out in Philadelphia that took place.  So

2   it was in Philadelphia.  Then I also had one 10 years ago, it

3   was a county case.

4            THE COURT:  Was the county a civil or a criminal

5   case?

6            A PROSPECTIVE JUROR:  It was criminal, yeah.

7            THE COURT:  Were there verdicts reached in both

8   cases?

9            A PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Do you remember the verdicts?

11           A PROSPECTIVE JUROR:  The federal one was -- I think

12  they were both guilty.  They were both guilty, I want to say --

13  the last one was not guilty.  I'm sorry, the county one was not

14  guilty.  The federal one, it's been 25 years ago, I can't

15  remember.

16           THE COURT:  Yeah, it's okay.  I can't remember what

17  happened last week.

18           A PROSPECTIVE JUROR:  Yeah, yeah.

19           THE COURT:  How about the experience?  Was it a good

20  experience overall?

21           A PROSPECTIVE JUROR:  Yeah.

22           THE COURT:  And could you be a fair and impartial

23  juror here today?

24           A PROSPECTIVE JUROR:  Yes, yes.

25           THE COURT:  All right.  Anybody else?  Yes, ma'am?

1  Oh, wait, I got number 4.

2          A PROSPECTIVE JUROR:  I was on a jury in Franklin

3  County.

4          THE COURT:  All right.

5          A PROSPECTIVE JUROR:  And it's been years ago.

6          THE COURT:  Was it civil or criminal?  Do you

7  remember?

8          A PROSPECTIVE JUROR:  I don't really know what the

9  difference.

10          THE COURT:  Okay.

11          A PROSPECTIVE JUROR:  It was a school district

12  against a demolition company.

13          THE COURT:  Oh, that would be a civil case.  Okay.

14  And anything about that experience that would make you unable

15  to be fair and impartial as a juror in this case?

16          A PROSPECTIVE JUROR:  No.

17          THE COURT:  All right.  Number 5?

18          A PROSPECTIVE JUROR:  Yes.  I served in the York

19  court five days.  There was several cases I was on.  The

20  biggest one was a child who was in possession of a firearm.

21          THE COURT:  All right.

22          A PROSPECTIVE JUROR:  That was guilty.

23          THE COURT:  Okay.  And would that experience affect

24  your ability to be fair and impartial?

25          A PROSPECTIVE JUROR:  No.

                                                                  56

1              THE COURT:  All right.  Who else?  You, sir, what
2    number are you?

3              A PROSPECTIVE JUROR:  Eleven.

4              THE COURT:  Eleven.

5              A PROSPECTIVE JUROR:  It was an assault and battery
6    in Bel Air, Maryland.  It was a hung jury.

7              THE COURT:  All right.  That experience have any
8    impact on you or affect you such that you could not be fair and
9    impartial here?

10             A PROSPECTIVE JUROR:  No.

11             THE COURT:  No, okay.  I saw some other hands.  Yes,
12   sir, what number are you?

13             A PROSPECTIVE JUROR:  Number 16.

14             THE COURT:  Number 16.  Tell me about what your juror
15   experience.

16             A PROSPECTIVE JUROR:  Grand jury, Middle District of
17   Pennsylvania.

18             THE COURT:  Okay.  So for this district, a federal
19   grand jury?

20             A PROSPECTIVE JUROR:  Yes.

21             THE COURT:  How long did you serve?  Was it 18
22   months?

23             A PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Now you know that the burden of proof for
25   grand jury is very different than a burden of proof at trial.

57

1   You know that, right?

2           A PROSPECTIVE JUROR:  Yes.

3           THE COURT:  That experience, would that make you

4   unable to be a fair and impartial juror here?

5           A PROSPECTIVE JUROR:  It will not.

6           THE COURT:  Okay.  How about anybody else?  I saw

7   some other hands.  Okay, the third row, gentleman?

8           A PROSPECTIVE JUROR:  Number 51.

9           THE COURT:  Okay.

10          A PROSPECTIVE JUROR:  About 12, 13 years ago, it was

11  a county case.  It was a drug dealer that was found guilty.

12          THE COURT:  Okay.  Anything about that experience

13  that you had in any way make you unable to be fair and

14  impartial here today?

15          A PROSPECTIVE JUROR:  No.

16          THE COURT:  Okay.  Behind you, I see two hands.

17  Let's start with the lady.

18          A PROSPECTIVE JUROR:  Fifty-six.

19          THE COURT:  Okay.

20          A PROSPECTIVE JUROR:  A criminal case in Bucks

21  County, Pennsylvania.  And that was a mistrial.  And a civil

22  case in Bucks County.

23          THE COURT:  Okay.  Either of those experience affect

24  your ability to be fair and impartial here today?

25          A PROSPECTIVE JUROR:  No.

58

1          THE COURT:  No, okay.  Then the gentleman to your --
2  next to you.  Are you 57, sir?
3          A PROSPECTIVE JUROR:  Yes.
4          THE COURT:  And how about your experience?
5          A PROSPECTIVE JUROR:  Criminal case in Dauphin
6  County.
7          THE COURT:  Okay.  Was there a verdict returned?
8          A PROSPECTIVE JUROR:  Yeah.
9          THE COURT:  What happened?
10          A PROSPECTIVE JUROR:  It was a murder trial.  They
11  were convicted.
12          THE COURT:  It was guilty in a murder case, okay.
13  How about that experience, would that in any way impact you or
14  make you unable to be fair and impartial here today?
15          A PROSPECTIVE JUROR:  No.
16          THE COURT:  Okay.  All right.  Okay.  Let's go onto
17  the next.  Now if you are selected to sit as a juror in this
18  case, would you be unwilling or unable for any reason to render
19  a verdict solely on the evidence presented in the trial and on
20  the law as it will be given to you by the Court putting aside
21  any ideas or notions about the law that you may have previously
22  held?  All right.  (No response.)
23          Have any of you ever attempted to represent yourself
24  in a legal matter in court?  (No response.)
25          Have any of you ever filed a lawsuit against any

59

1    other person in either state or federal court?  Yes, sir?

2            A PROSPECTIVE JUROR:  Would that be like custody?

3            THE COURT:  No.  Okay.  Yes, ma'am?

4            A PROSPECTIVE JUROR:  I think back when I was a

5    teenager, I went to court.  I got attacked.  I got like

6    attacked by a group of other girls and we went to court.  I

7    mean, that was years.  I mean, I was in high school.

8            THE COURT:  That was civil?

9            A PROSPECTIVE JUROR:  It was in Maryland, I guess.

10           THE COURT:  Did you have an experience that would

11   make it, your view here, to be unable to be fair and impartial?

12           A PROSPECTIVE JUROR:  No.

13           THE COURT:  All right.  Yes, sir?

14           A PROSPECTIVE JUROR:  Twenty-five.

15           THE COURT:  Twenty-five.

16           A PROSPECTIVE JUROR:  Motor vehicle have anything?

17           THE COURT:  You had a motor vehicle accident?

18           A PROSPECTIVE JUROR:  Yes.

19           THE COURT:  All right.  Did you sue the person or get

20   sued?

21           A PROSPECTIVE JUROR:  It ended up settling out of

22   court.

23           THE COURT:  Did you initiate the suit or were you

24   sued?

25           A PROSPECTIVE JUROR:  Yeah, I was struck.

60

1          THE COURT:  You were struck.  Okay, so you were the

2   victim.  Did you think the system worked that you -- to the

3   extent you participated in it?

4          A PROSPECTIVE JUROR:  Yeah.

5          THE COURT:  You did.  Do you think that the

6   experience would make you unable to be fair and impartial here?

7          A PROSPECTIVE JUROR:  No.

8          THE COURT:  No, okay.  All right.  Have you or anyone

9   in your immediate family ever belonged to a group or endorsed

10  an ideology which advocates the violent overthrow of the

11  Government of the United States?  (No response.)

12         Next, are you familiar with an ideology called

13  sovereign citizen?  Yes, sir?  We got a couple people.  What's

14  your number?

15         A PROSPECTIVE JUROR:  Thirteen.

16         THE COURT:  Thirteen.  All right.  Tell me what you

17  do.

18         A PROSPECTIVE JUROR:  I deal with them at the Social

19  Security Administration.  Sometimes when we are processing

20  sovereign citizen cards, people don't think that they have to

21  follow the guidelines.  I've had people that say that their old

22  person has died and their new self has tried to claim benefits

23  on their past life because they don't feel that they're -- the

24  sovereign, they feel that's their dead and that's their old

25  energy and they want to claim all the benefits.  Just stuff

1  like that.

2          THE COURT:  Anything about that, what you've learned,

3  that would make you unable to be fair and impartial as a juror?

4          A PROSPECTIVE JUROR:  No.

5          THE COURT:  Okay.  How about over here?  Yes, ma'am

6  in the front row?  You're number what?

7          A PROSPECTIVE JUROR:  Thirty-five.

8          THE COURT:  Tell me what you've experienced.

9          A PROSPECTIVE JUROR:  I mean, I've heard of it.  I've

10  seen things in the media about it.  Somebody who believes they

11  are not subject to the laws of the land they live in, that they

12  are kind of their own country, so to speak.

13          THE COURT:  Um-hum.  So anything about what you've

14  read that would make you unable to look at solely the evidence

15  in the case and make a judgment fairly and impartially?

16          A PROSPECTIVE JUROR:  I don't think so.

17          THE COURT:  Okay.  Who's next?  Yes, sir, what number

18  are you?

19          A PROSPECTIVE JUROR:  Forty-six.

20          THE COURT:  All right.  Tell me what you know.

21          A PROSPECTIVE JUROR:  Just social media, like videos,

22  that sort of thing, interactions with police officers.

23          THE COURT:  Anything about what you've read on the

24  internet about sovereign citizenship that would make you unable

25  to just look at the evidence in the case and make a judgment

1  fairly and impartially?

2           A PROSPECTIVE JUROR:  Not really.

3           THE COURT:  All right, anybody else?  Okay.  Now

4  you're all wearing masks, and I've told you that we do have

5  restrictions, obviously, in the building and you have to wear a

6  mask.  The only exception in the courtroom is folks that are

7  talking.  And they are going to be distanced.  But with those

8  considerations in mind, is there anyone who would still feel

9  unsafe serving as a juror?  All right.  (No response.)

10          Is there anyone who would object to the requirement

11 wearing a mask throughout the trial?  All right.  (No

12 response.)

13          Is there anyone who's not been vaccinated against

14 COVID-19?  All right.  I'll tell you what, let's go through the

15 numbers.

16          A PROSPECTIVE JUROR:  Number 2, not vaccinated.

17          THE COURT:  Okay.

18          A PROSPECTIVE JUROR:  Number 4, not vaccinated.

19          THE COURT:  Anybody else?

20          A PROSPECTIVE JUROR:  Number 6.

21          A PROSPECTIVE JUROR:  Number 7.

22          A PROSPECTIVE JUROR:  Number 9.

23          A PROSPECTIVE JUROR:  Number 20.

24          A PROSPECTIVE JUROR:  Number 31.

25          A PROSPECTIVE JUROR:  Number 41.

1          A PROSPECTIVE JUROR:   Number 50.

2          A PROSPECTIVE JUROR:   Number 36.

3          A PROSPECTIVE JUROR:   Number 48.

4          A PROSPECTIVE JUROR:   Number 50.

5          A PROSPECTIVE JUROR:   Number 44.

6          A PROSPECTIVE JUROR:   Number 39.

7          A PROSPECTIVE JUROR:   Number 57.

8          THE COURT:  All right.  Anybody else?  I'm sorry,

9    ma'am?

10          A PROSPECTIVE JUROR:   Number 53.

11          THE COURT:  Fifty-three.  Did I hear somebody else?

12    No.  All right.  Now is there anyone who would be unwilling to

13    notify the Court -- well, let me just explain this.  We do have

14    a requirement that if somebody began to experience symptoms of

15    COVID during the trial or was exposed to somebody who was

16    experiencing symptoms, they have to notify the Court.  Would

17    that be a problem?  Could anybody not agree to do that?  All

18    right, good.  Thank you.  (No response.)

19          All right.  So what I'm going to do now is, I'm going

20    to do the white noise thing and I'm going to talk to Mr.

21    Dougherty -- yes, ma'am?

22          A PROSPECTIVE JUROR:  Sorry.  Your question was,

23    would you object to notifying you about, you know, being around

24    someone?  I was technically exposed to somebody with COVID and

25    just -- I mean, the exposure was like a brief thing and it was

64

1   over a week ago.

2          THE COURT:  Okay.  And were you wearing a mask at the

3   time?

4          A PROSPECTIVE JUROR:  No.

5          THE COURT:  Were you within three feet of the person?

6          A PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Do you know for how long?

8          A PROSPECTIVE JUROR:  It was my oldest son.  He has a

9   disability.  And he stopped in my office and I gave him a card

10  to go pump his gas, so like I handed him a card.  I did,

11  however, sanitize after he came back because I knew he wasn't

12  well and then found out after that he tested positive.

13         THE COURT:  Okay.

14         A PROSPECTIVE JUROR:  He went back to work on the

15  23rd.

16         THE COURT:  This sounds like -- I mean, how long was

17  the contact?  Sounds like 30 seconds or something?

18         A PROSPECTIVE JUROR:  Yeah, that's what I mean.  I

19  just want to make sure I'm being fully honest.

20         THE COURT:  No, it's good to be honest.  And you're

21  number 2?

22         A PROSPECTIVE JUROR:  Number 2.

23         THE COURT:  Okay.  Anybody else?  All right.  Well,

24  the good news is everybody is wearing a mask around you and,

25  according to CDC, is protected.  So all right.  So what I'm

1  going to do then is I'm going to speak briefly with Mr.

2  Dougherty and Mr. Perri on the white noise, so you'll hear this

3  white noise stuff, and we'll talk and then I'll be right back

4  to you, okay.  All right.

5           (Sidebar discussion held:)

6           THE COURT:  Okay.  Mr. Dougherty, can you hear me?

7           MR. DOUGHERTY:  Yes.

8           THE COURT:  Mr. Perri, can you -- let's get Mr. Perri

9  to put the ear phones in.  Mr. Perri, can you hear me now.

10          MR. PERRI:  I can, Judge.

11          THE COURT:  Okay, great.  The first thing I guess is,

12  are there any motions to strike for cause?  Actually, before I

13  ask that, are there any follow-up questions for any particular

14  member of the panel that either of you thought I needed to ask?

15          MR. DOUGHERTY:  No.

16          MR. PERRI:  Judge, I really don't have any follow-up

17  questions.  Maybe one with respect to the individual, I think

18  it's juror number 47, who has hearing issues.  I'm still not

19  clear on how -- I know there's no speaker back there, so it

20  might be different if he's in the box, he might be able to hear

21  better.  I'd like some clarification on that.

22          THE COURT:  One thing we could do is we'd just strike

23  him.  We've got so many people.  I'm tempted rather than pursue

24  it given the numbers is just to excuse him.

25          MR. PERRI:  No objection.

1           MR. DOUGHERTY:  No objection.

2           THE COURT:  There's no objection, Mr. Dougherty?

3           MR. DOUGHERTY:  No.

4           THE COURT:  Okay.  I'm going to strike number 47.

5  And I'm thinking we probably should strike number 2 for the

6  same reason, just so there's no concern among other jurors.  I

7  don't really feel comfortable letting her sit without further

8  discussion and more details about the fact that she's been

9  exposed to somebody.  So I would propose we just strike her for

10  cause.  Any objection, Mr. Dougherty?

11          MR. DOUGHERTY:  No.

12          MR. PERRI:  I don't think there's enough basis to

13  strike her, Judge.  I mean, as I understood it --

14          THE COURT:  I can excuse somebody for any reason.

15          MR. PERRI:  Well, for cause.  I mean, there has to be

16  a basis.

17          THE COURT:  Well, I think there's a basis for cause.

18          MR. PERRI:  Okay.  I guess -- I mean, the Court can

19  obviously make that ruling.  I don't see a basis for cause,

20  just for the record.

21          THE COURT:  I'm going to strike her for cause.  So

22  I'm going to excuse 47 and number 2 off the top.  So now I'll

23  hear if there are -- so just again, and I think I've already

24  asked this, but just my understanding is then there are no

25  other follow-up questions.  Correct, Mr. Dougherty?

67

1           MR. DOUGHERTY:  Correct.

2           THE COURT:  And correct, Mr. Perri?

3           MR. PERRI:  Correct.

4           THE COURT:  Then are there any applications to excuse

5   a juror for cause?  I'll start with Mr. Perri.

6           MR. PERRI:  No, Your Honor.

7           THE COURT:  Mr. Dougherty?

8           MR. DOUGHERTY:  No.

9           THE COURT:  Okay.  So then I think what we do is, we

10  will just seat the first 30, and then we will go about the

11  peremptories.  And then Mr. Dougherty will exercise 10, and the

12  Government will get to exercise 6.  Then we'll be down to 14.

13  And then the last two in the box will be the alternates.  Does

14  that make sense, Mr. Dougherty?

15          MR. DOUGHERTY:  Yes.

16          THE COURT:  Mr. Perri?

17          MR. PERRI:  Yes.

18          THE COURT:  Okay, that's what we'll do.  (Pause.)

19  The first 32, I've been corrected because I forgot my math.

20  Thank you very much.

21              (Sidebar discussion concluded.)

22          THE COURT:  Okay.  Thank you for being patient.  So

23  here's what we're going to do.  We're going to excuse a bunch

24  of you, all right.  And to those folks who came in, it was

25  important that you came in.  And you also probably get off the

1  wheel here, so you can check the box for a while, right.  But

2  again, I want to thank those folks up front, and then we're

3  going to keep 32 of you here for a reason.

4        So what I'd like to do is, so there's a juror number

5  33, and I'd like you to switch places with number 2.  All

6  right.  And then I'd like number 2 -- everybody is going to

7  stay now who is 1 through 33 will stay except for number 2.

8        COURTROOM DEPUTY:  You're already seated, so now

9  you're number 2.

10        THE COURT:  And number 2, you're magically now number

11  33.  Everybody from 33 on is excused.  Thank you very much.

12        (Prospective jurors 33 on are excused and left the

13        courtroom.)

14        THE COURT:  All right.  So this is the next part of

15  the process, it's called peremptory challenges.  There's that

16  long history in the common law, going back to England hundreds

17  of years, that when you pick a jury, both sides get to exercise

18  peremptory challenges.

19        And that means that they can strike you for any

20  reason they want; they don't like the color of the shirt you're

21  wearing.  We don't ask and they don't tell.  And they get to do

22  that, all right.  It's part of a process.  So we're down to 32,

23  right.  So they're going to exercise their peremptories now.

24        You're just going to sit there.  I'm going to sit

25  here.  And there will be a clip board going back and forth.

1    And at the end of the day, we'll be left with 14.  And then
2    we're going to excuse those folks, and then we're off to the
3    races.  So just be patient with us.
4            One thing is, do you have your phones with you?
5    Okay, no phones.  I got a reason.  I should have told you that
6    at the beginning.  But let's -- we don't want to be researching
7    or checking out the internet, so just lay off your phones.  If
8    you want to -- well, we can all just sit quietly, I guess.
9    That will be a good idea.  Rare day in this day and age.  All
10   right, we'll do that.
11           (Peremptory strikes are exercised.)
12           THE COURT:  We do things differently in my court, so
13   it's interesting to watch it be done this way.
14           COURTROOM DEPUTY:  Folks, we have our jury.  I'm
15   going to read out 14 numbers.  If this is your number, if your
16   lucky number comes up, then you stay seated.  If your number is
17   not read, you're going to be free to go.  We're only going to
18   keep 14.
19           So our jurors are going to be number 6, number 7,
20   number 9, number 10, number 15, number 16, number 18, number
21   20, and number 22, 23, 24, 27, 29, and 30.  If your number was
22   not called, you're free to go.
23           THE COURT:  Well, actually let's just do this though.
24   Rather than leave the room, let's make sure we have the right
25   14 before we let everybody go.  So if your number was --

1  basically if you weren't called, you want to step out of the

2  pews.  And then let's make sure we have 14.

3          COURTROOM DEPUTY:  Number 1 is now going to be number

4  6, so we're going to be down here.  Number 7 is going to be

5  number 2.  If you can remember where you're sitting after the

6  break, this is how we're going to start the trial.  Number 3 is

7  going to be number 9 or was number 9.  Number 10 is going to be

8  number 4.  Number 15 is going to be seat 5.  Number 16 will be

9  number 6.  Number 7 will be 18.  Number 8 in the back row will

10 be 20.

11          Why don't you sit for now and we'll see what we can

12 do here.  Number 22 will be seat 9.  Number 23 will be seat 10.

13 Number 24 will be seat 11.  And number 27 will be seat 12.

14 Number 29 will be seat 13.  And 30 will be seat 14.

15          If you guys can just have a seat in the back over

16 there for a minute, that would be great.

17          THE COURT:  We're going to do a sidebar.

18          (Sidebar discussion held:)

19          THE COURT:  Okay.  Can you hear me, Mr. Dougherty?

20          MR. DOUGHERTY:  Yes, I can.

21          THE COURT:  Mr. Perri?

22          MR. PERRI:  Yes, Your Honor.

23          THE COURT:  So we have an issue.  A juror just went

24 up to the deputy clerk and said there's some reason she can't

25 serve.  So I could question her.  I'm not sure where to put her

1   when I question her in this configured courtroom is the

2   problem.  Is there a microphone there?  Okay, let's do that.

3   Then we're going to arrange to have her brought in.

4           MR. PERRI:  Judge, that might be a good question to

5   ask everybody before we dismiss all of the other possible

6   jurors.  I don't think we really asked if anybody had prior

7   commitments that would make it difficult for them to serve.

8           THE COURT:  I'm not sure this is a prior commitment.

9   I did ask if anybody had a medical condition of any kind.

10          MR. PERRI:  I mean, having to be somewhere or not

11  being able to miss work.

12          THE COURT:  Right, yep, right.

13          MR. PERRI:  I just bring that up because that's often

14  the question that's asked.

15          THE COURT:  Right.  It's a question we always ask,

16  too, and I guess we just overlooked it.

17          COURTROOM DEPUTY:  Typically, Judge, when we pull

18  them in --

19          THE COURT:  Let's bring her up.

20          (Juror Number 20 was brought up to sidebar.)

21          THE COURT:  Okay.  What juror number are you?

22          A JUROR:  Number 20.

23          THE COURT:  I understand there's an issue?

24          A JUROR:  I only drive 25 miles from my home.  My

25  husband had to take off work today to bring me, and he's the

72

1   only one working right now in our household, so I don't really
2   want him to have to take off work to be able to bring me here.
3           THE COURT:  Okay.  All right.  Let me ask you to go
4   back to your seat for a second, okay.  Thank you.
5           (Juror Number 20 returned to her seat.)
6           THE COURT:  Mr. Perri, do you have any proposals what
7   to do?
8           MR. PERRI:  Judge, I watched her reaction when she
9   was told that she had been selected.  She had a visceral
10  reaction.  And I've been watching her body language, she
11  doesn't want to be here.
12          THE COURT:  Oh, no, she's crying.  I don't think
13  there's any doubt.  Mr. Dougherty, do you have a proposal what
14  to do?  Should we strike this juror?
15          MR. DOUGHERTY:  Yes.
16          THE COURT:  Now if we strike the juror, which I'll
17  do, I think that's the -- and the Government agrees with that?
18          MR. PERRI:  I have no objection to that.
19          THE COURT:  Okay.  So we will strike the juror.  The
20  question now is, do we put somebody back in the box?  Actually
21  we could do that because we could just pick whatever juror the
22  last person who wasn't selected, right.  We can do that.
23          MR. DOUGHERTY:  Yes.
24          COURTROOM DEPUTY:  Well, the last person --
25          THE COURT:  So in other words --

1          (The Court and the courtroom deputy confer.)

2          THE COURT:  So what we'll have to do is just proceed

3    with just one alternate.

4          MR. PERRI:  Okay.

5          THE COURT:  Unless -- I don't know -- the only other

6    way to proceed would be somebody goes back and decides to not

7    follow through with the peremptory.  I mean, I don't know what

8    the alternative is.  What do you think?

9          MR. DOUGHERTY:  Again, that would be acceptable as

10   far as I'm concerned.

11         THE COURT:  Mr. Perri?

12         MR. PERRI:  I have no objection.

13         THE COURT:  Okay.  We'll just do that then.  All

14   right.

15         (Sidebar discussion concluded.)

16         THE COURT:  Ma'am, you're going to be excused.  Okay.

17   So all of the folks who have been excused, I do want to thank

18   you very much for your service and wish you a good day.  All

19   right.  You may leave, thank you.

20         (The remaining prospective jurors were excused and

21            left the courtroom.)

22         THE COURT:  And in the back row, you can all move

23   down.  So I think you probably all need a break.  So what we're

24   going to do is we're going to administer the oath.  You're now

25   going to be sworn in as jurors in the case.  Then we're going

74

1  to take a short break, all right.

2          During that break, it's very important, and it's

3  going to be important throughout the trial, that you do nothing

4  in the way of research to go on the internet, to look at

5  Google, to try to learn anything about this case.  All right.

6  I can't emphasize how important it is that you do not do that.

7          We actually had a case in New Jersey recently where a

8  juror did it.  It threw the trial in disarray.  The judge

9  actually fined the juror all of the money that had been spent

10 to convene the jury.  I obviously don't want to ever have to do

11 that, so please do not, because it's critical to decide the

12 case solely based on the evidence that's introduced at trial.

13 That's why we do that.

14         So we're going to take that quick break after we get

15 you sworn in.  Then I'll have you come back, and I'll give you

16 some preliminary instructions, and we'll talk about what to do

17 next, and then we have lunch and scheduling.  Okay.  All right.

18 So if you would all please rise.

19              (Jury was sworn.)

20         THE COURT:  All right.  We'll take a break.  And --

21 do you want to do a 15-minute break to use the restrooms?  Is

22 that enough time?  You tell me, what do you want?

23         THE JURY:  Fifteen.

24         THE COURT:  Okay.  We'll bring you back in 15

25 minutes.  Thank you very much.

1          COURTROOM DEPUTY:  All rise.

2          (Jury left for a recess at 11:24 a.m.)

3          THE COURT:  Have a seat real quick.  We'll excuse --

4    I know Mr. Dougherty wants to use the restroom, we'll do that.

5    Come back in about 10 minutes so we can quickly talk about what

6    we want to do schedule wise before the jury is brought in.

7          MR. PERRI:  Judge, before I forget.  You might want

8    to specify for the record which alternate juror is now a member

9    of the panel.

10          THE COURT:  We'll do that when we get back because

11   we'll have to figure out what the numbers are and also let that

12   alternate juror know so he knows he's not -- like he really

13   needs to pay attention.

14          We normally don't tell -- in my district, we don't

15   tell you who's an alternate.  And that's precisely because they

16   have to pay attention.  But why don't we take a break.  I know

17   Mr. Dougherty has got to use the restroom, so let's do that.

18   We will all try to be back here in 10 minutes.

19          (Recess was taken at 11:26 a.m. and proceeding

20           reconvened at 11:43 a.m.; without the jury.)

21          THE COURT:  Let's quickly talk about timing.  It's

22   not going to take me long to talk about the preliminary

23   instructions.  Do you want to go right to openings?

24          MR. PERRI:  It's 11:42, Judge.  I mean, I would

25   probably just rather do it after lunch.  But -- how long do you

1  think you'd be?  Roughly?

2          MR. PERRI:  Oh, probably 15 minutes.

3          THE COURT:  Fifteen?

4          MR. PERRI:  Twenty minutes maybe.

5          THE COURT:  I mean, I don't want to -- well, okay.

6  Mr. Dougherty, how long will you be in opening?

7          MR. DOUGHERTY:  I don't expect to be more than five

8  minutes.

9          THE COURT:  You know, why don't I tell the jury -- I

10  would think that -- I would suggest we go right to openings and

11  then we break, but I tell them up front what we're going to do.

12  And then that way then you have lunch and get your first

13  witness ready and we hit the ground running.  If that works?  I

14  mean, you know.

15          MR. PERRI:  I'm just trying to take a few minutes to

16  collect my thoughts.

17          THE COURT:  I'll give you a few minutes now though.

18  I mean, I understand that.  But I'm a little worried to bring

19  them in for 10 minutes.  Well, actually I'll tell you what,

20  maybe we'll bring them in, I'll read them the preliminary

21  instructions, and then, okay, well, if you're going to be at a

22  long then you go right away but your witness is ready to go

23  right away as soon as you're finished.

24          MR. PERRI:  After lunch.

25          THE COURT:  Okay.  Now I'm going to defer to them if

1  they find out how long they want for lunch.

2          MR. PERRI:  Yes.

3          THE COURT:  I haven't looked around this town.

4          COURTROOM DEPUTY:  Strawberry Square has everything.

5          THE COURT:  How far is that -- we need to get this

6  case done.  Mr. Dougherty, that works for you?

7          MR. DOUGHERTY:  Um-hum.

8          THE COURT:  That's a yes?

9          MR. DOUGHERTY:  Yes.

10         THE COURT:  Okay.  Thank you very much.  That's what

11 we'll do.  We'll bring them in then.  That's what we'll do.

12         (Jury is brought in at 11:45 a.m.)

13         THE COURT:  Welcome back.  So here's what we're gonna

14 do now.  I'm going to read you preliminary instructions,

15 discuss with you kind of the general principles of law and kind

16 of give you some instructions to guide how you view the

17 evidence coming in, and then talk about your deliberations

18 briefly.

19         And then what we're going to do is we're going to

20 break for lunch.  We give you an hour lunch.  I'm told there

21 are places very, very closeby.  I'd like you to try, if you

22 can, get back in time so we can start because then we'll start

23 right away.  All right.

24         Now just a couple things.  So we excused one juror,

25 so we have one alternate juror, okay.  I'm not going to tell

1 you who it is because I want you all to pay attention.  And
2 then at the end of the trial, the one alternate will be
3 excused, but kind of put on hold just in case everything -- so
4 that's what we're going to do.
5        But when you go back to deliberate, one of you is
6 going to be put on hold, on ice, if you will, and not
7 participate in the actual deliberations, which is a little
8 frustrating, but we have to do that just in case somebody got
9 ill or something like that, okay.  All right.
10        So let's -- you've already been sworn, right, before
11 we -- now I kind of already told you this when I gave you my
12 opening instructions, which is, what is your role?  And your
13 role is to find the facts.  And it's the facts based on the
14 evidence.
15        Now what's evidence?  Evidence is what comes out of
16 witnesses who are under oath.  And they sit there.  Evidence is
17 documents, exhibits that are introduced during trial, all
18 right, and that's evidence.  And there's two kinds of evidence
19 under the law, there's direct evidence and there's certainly
20 evidence.
21        And direct evidence is when somebody walks in the
22 door, took the stand, and said, it's raining outside.  That's
23 direct evidence.  It came out of the mouth of a witness.
24 Circumstantial evidence is a guy walks in the door wearing a
25 raincoat, umbrella, soaking wet, sits in the stand, and you,

1  using your reason, draw an inference, a conclusion, that it's

2  raining outside.  The guy just came from outside.  That's

3  circumstantial evidence.

4           The law actually doesn't distinguish between direct

5  and circumstantial evidence.  It doesn't make one better than

6  the other.  And only the jury decides what weight to give any

7  kind of evidence.  That's your job, it's not my job, right.

8           Now let me tell you what's not evidence.  What's not

9  evidence is what I say, and what's not evidence is what the

10 lawyers say.  And in this case, what's not evidence is what Mr.

11 Dougherty says when he is acting as a lawyer.  That's not

12 evidence, that's not to be considered by you as evidence, all

13 right.  All right.  So that's what your overall function is.

14          And you are going to apply the facts -- or apply the

15 law rather that I give you, and you do have to accept what I

16 give you as the law, you apply the law to the facts to make

17 your verdict.  Now whatever your verdict is, it has to be

18 unanimous, and all of you will have to agree on it for there to

19 be a verdict.

20          And at the end of the case, when you retire to

21 deliberate, that's when you will discuss the case.  You're not

22 going to discuss it with each other between now and the end of

23 the case.  You don't discuss it with anybody.  And you want to

24 keep an open mind throughout the trial.  And then when you go

25 back to deliberate, you will bring your views and you will have

1  an opportunity to discuss your views with those of your fellow

2  jurors.  And you will come to a verdict.  All right.

3            Now I mentioned that what I say is not evidence, and

4  you should not take anything that I say or do during the trial

5  as evidence of what I think the verdict should be.  My role is

6  to make whatever legal decisions have to be made during the

7  course of the trial and to explain to you the legal principles

8  that will guide your decisions.

9            And you must apply my instructions about the law.

10  Each of the instructions is important.  You must not substitute

11  your own notion or your own opinion about what the law is or

12  ought to be.  You must follow the law as I give it to you

13  whether you agree with it or not.

14            You're to perform your duties fairly and impartially.

15  Do not allow sympathy or prejudice or fear or public opinion to

16  influence you.  You should also not be influenced by a person's

17  particular circumstances, their race or color or religion or

18  gender, anything else.  You're not to bring sympathy,

19  prejudice, bias, fear to the table.  You're supposed to bring

20  your reason, apply your common sense to the evidence, to the

21  facts.

22            Now I mentioned you need to keep an open mind.

23  That's important.  Do not make up your mind about the verdict

24  until you have heard all of the evidence and I have given you

25  the final instructions at the end of the trial and you've had

1  an opportunity to discuss the case with your fellow jurors.

2  You need to keep an open mind throughout that process.

3        And I mention that you should not discuss the case

4  until the end of trial when you go back to the jury room to

5  deliberate.  You need to allow each juror the opportunity to

6  keep an open mind throughout the entire trial.  Now you may

7  talk with your fellow jurors about lunch, about other things,

8  other events, just not about the case, all right.

9        You're not allowed to speak with the parties during

10  the case.  So if you happen to run into one of the parties in

11  the hallway, don't be offended if they don't talk to you,

12  because they know the rules, too, and they don't want to put

13  you in an awkward situation, so you wouldn't have any contact

14  with them.

15        And you don't want to research the case.  I've talked

16  about this a lot, right.  We don't want to go on the internet,

17  no social media, no Facebook, no research.  And you don't want

18  to talk to anybody outside of the courtroom about the case.

19  And, in fact, if somebody does talk to you about the case, you

20  need to report it to the courtroom deputy as soon as possible

21  when you get back, okay, including a fellow juror.

22        If somebody wanted to talk to you about the merits of

23  the case, you shouldn't do that, please tell the courtroom

24  deputy.  You obviously need to tell your family or whoever you

25  live with that you're here, so you can do that.

1          And -- but all you have to do is tell them, look, the
2    judge told me I'm not allowed to talk about the particulars of
3    the case, and then just save it.  You can talk to them as much
4    as you want when the trial is over, all right.

5          You don't want to watch the news, just in case.  I
6    don't know if the case is being covered by the media or not.
7    But you don't want to pay attention to that.  If you happen to
8    hear something on the radio, turn it off, don't listen to it.

9          Then we mentioned about avoiding your computer and
10   any kind of cell phone or other research.  And you basically
11   don't want to try to find out or to get information about the
12   case, period, because that will contaminate your brain and you
13   want to limit it to the evidence that I've talked about.  All
14   right.

15         And then lastly, you should not worry at all and you
16   should not consider or concern yourselves with the possible
17   punishment that might be imposed if you return a verdict of
18   guilty.  That is not for you to consider, all right.

19         Now you've already seen these, what we used to call
20   sidebars, because they used to occur over here, but now we do
21   it through these microphones.  So that can happen during the
22   trial.  It may be necessary if there's an objection.  So the
23   lawyers or Mr. Dougherty, when he's acting as a lawyer, can
24   object to certain pieces of evidence.

25         And, in fact, so we have rules, we have rules of

1  evidence that govern this proceeding, rules of procedure that
2  govern this proceeding.  And both sides, because the lawyers,
3  right, are educated in this, well, they are expected, and Mr.
4  Dougherty, even though he's not a lawyer, he's acting as a
5  lawyer, he has to abide by those rules.  And I will have to --
6  my job is to enforce those rules against both sides.

7         So you may see that occur during the case, you may
8  see us take a sidebar and discuss issues that are legal issues
9  that really are of no concern to you, but I have to make a
10 ruling.  And you should not consider my granting or sustaining,
11 it's called, an objection or denying or overruling an objection
12 as evidence.  It's not.

13        Now I may tell you to strike.  I may say you are to
14 ignore something.  And you need to follow that instruction.  I
15 may strike something from the record.  You need to follow that
16 instruction and treat it as if it never happened, okay.

17        Note taking.  You're going to be given pads, and you
18 may, but you are not required to, take notes during the trial.
19 And a couple things about that.  So we have a court reporter.
20 And so you're not a transcriber, obviously, and so it's not
21 your job to transcribe everything that occurs in this trial.

22        And you need to be careful about attaching too much
23 weight to your notes because you really need to be paying
24 attention to the evidence because ultimately when I said, for
25 instance, the words that come out of the mouth of the witness

1  is evidence, but it's your recollection of that testimony that
2  controls.

3          It's what you think you heard is what controls, not
4  what a lawyer tells you or what Mr. Dougherty tells you the
5  witness said when they have closing arguments, it's what you
6  remember that counts.  So that's why you want to make sure that
7  your note taking doesn't distract you from really listening and
8  paying attention at trial.

9          And when you get back in the jury room, you're not to
10  discuss your notes, right, until the end when you are
11  deliberating, but -- and even then you don't want to attach too
12  much importance to it.  You don't want so say just because some
13  juror wrote down something, that means it must have happened.
14  No, it's your recollection individually that controls.

15          The notes will be collected before you leave here at
16  the end of the day, so you won't take them home with you.  They
17  will be -- and after the trial, if I accept your verdict, we
18  will destroy all the notes.  So they're not shared with anybody
19  else.

20          During the trial, you're going to hear questions from
21  both sides.  Jurors don't get to ask questions.  But if you
22  were unable to hear a witness or a lawyer, you want to raise
23  your hand just to kind of clue me in.  That would be helpful.
24  Let me know, I can tell them to speak up.  If someone needs a
25  restroom or a break all of a sudden, don't hesitate to raise

85

 1  your hand and I will take care of that.  All right.

 2          Now what's going to happen after you come back from

 3  lunch is we're going to start with opening statements.  The

 4  Government goes first because the Government has the burden of

 5  proof, all right.  And then Mr. Dougherty will be permitted an

 6  opportunity to give an opening statement.

 7          An opening statement, again, it's not evidence and

 8  it's not even argument.  It is to give you a preview of what

 9  each side expects you will hear and see during the trial.  All

10  right.  And so that's all it is.

11          Now after we have opening statements, the Government

12  will go right away and present evidence, call witnesses,

13  introduce documents, that kind of thing.  And then after the

14  Government presents its case, then the Defendant has an

15  opportunity to present his case.  He's not obligated to present

16  his case.

17          Remember, there's -- we have a constitutional right

18  here that you are innocent until proven guilty.  The burden of

19  proving guilt always resides with the Government.  It's beyond

20  a reasonable doubt.  The Defendant does not have to put on a

21  case and you can't hold it against the Defendant.  I'm going to

22  instruct you, you may not hold it against the Defendant if the

23  Defendant does not present a case.

24          After each side has had an opportunity, if the

25  Defendant wants to present evidence, we will have closing

1  arguments.  And those are different than opening statements.

2  That is where the lawyer or Mr. Dougherty gets to argue to you.

3  Again, not evidence.  You don't accept it as a fact.

4           But you listen to it because they'll have the

5  opportunity to draw conclusions for you.  They'll argue what

6  they think the evidence in its totality shows, all right.

7  That's argument.  It's different than an opening statement.

8           Then after you get the closing arguments, I will give

9  you the final instructions.  And I'll tell you then what the

10  elements of the offenses are, okay, and what elements you need

11  to look at.  And I will also give you written copies, you'll

12  each have a written copy with you to take back into the jury

13  room that you can look at so you know what has to be

14  established and what the rules are.  All right.

15           Now one other thing.  I mentioned direct and

16  circumstantial evidence, and I told you what is evidence and

17  what's not evidence.  Let me just talk though a little bit more

18  about witness testimony.  Your job as a finder of fact is to

19  determine the credibility of witnesses.

20           And when you make that determination, you do a number

21  of things.  You bring common sense to the table.  And you can

22  consider, among other things, the witness's demeanor.  We will

23  require the witnesses to remove their masks so you can see

24  their face and you can draw a sense of credibility.

25           That's your job, it's not my job.  And you can

1  consider the testimony of one witness as opposed to other

2  witnesses.  And you can see are they consistent; are they

3  inconsistent; are they consistent in ways; are they

4  inconsistent in other ways; is the testimony consistent in and

5  of itself inherently; is it logical and consistent.

6          And you can decide to consider testimony to be

7  credible or not credible.  You can decide a witness's testimony

8  to be credible in part and not in part.  That's up to you to

9  decide.  And it's up for you to decide how much weight to give

10 each witness's testimony.  And that is solely your job.

11         And you can consider whether the witness has any

12 biases or prejudices or motives.  You can consider whether the

13 witness has any special relations to other parties in the case.

14 And basically any factor that you would normally consider in

15 deciding whether something is worthy of belief and what

16 somebody says is worthy of belief is what you should apply.

17 All right.

18         And finally, the weight of the evidence doesn't

19 depend on the number of witnesses who testify.  What is more

20 important is how believable you find the witnesses to be and

21 how much weight you think a witness or number of witnesses'

22 testimony deserves.  All right.

23         So that's basically what will guide you.  And if you

24 remember, I mentioned there's three counts.  The first count is

25 mailing threatening communications.  And then the other two

88

1  counts are interstate communication with threat to injure.

2  I'll tell you more about what those charges, what the elements

3  of those charges are at the end of the case as well.  All

4  right.

5  So it's just about noon.  We aim to get back here at

6  1:00, and then we'll start.

7  COURTROOM DEPUTY:  It's about five after judge.

8  THE COURT:  You want the five minutes after?  All

9  right, we'll give you until five after.  Thank you very much.

10  You're excused for lunch.

11  (Jury left for a lunch recess at 12:05 p.m.)

12  THE COURT:  Anything we need to address before we

13  come back?

14  MR. PERRI:  No, Your Honor.

15  THE COURT:  Mr. Dougherty?

16  MR. DOUGHERTY:  Well, I had some things, but I needed

17  to get copies made.

18  THE COURT:  Did you get the copies from the DC case?

19  MR. DOUGHERTY:  Yes, I did.

20  THE COURT:  Okay.  So you've got what you need?

21  MR. DOUGHERTY:  I got that part, but I need to get

22  copies to attach to this, which was my final response to Mr.

23  Perri's objections to my suggestions relating to the jury

24  instructions.

25  THE COURT:  Okay.  Now one thing about jury

1  instructions -- you're talking about the final instructions?

2          MR. DOUGHERTY:  Yes.

3          THE COURT:  So we don't need to address that right

4  now.

5          MR. DOUGHERTY:  Okay.

6          THE COURT:  But what you should do is try to get that

7  ready, prepared during the lunch break so I can address it

8  later today or first thing in the morning.

9          MR. DOUGHERTY:  That's what I was --

10         THE COURT:  Perfect.

11         MR. DOUGHERTY:  -- wondering.

12         THE COURT:  Anything else then?  I'll see you all,

13  why don't we aim to be back just a little tiny -- like around

14  1:00 so we can start right at 1:05.  Okay, thank you.

15             (Lunch recess was taken at 12:06 p.m. and proceeding

16              reconvened at 1:05 p.m.; without the jury.)

17         THE COURT:  All ready to go?  Okay.

18         MR. DOUGHERTY:  Your Honor, did you want me to

19  address that now or later?

20         THE COURT:  The jury instruction?

21         MR. DOUGHERTY:  No, it was about my response to his

22  objection to my closing jury instructions.

23         THE COURT:  Yeah, we'll take that later so we can get

24  started.  I had to have a phone call, so that's why we're a

25  little bit late.

1          (Jury was brought in.)

2          THE COURT:  Everybody had lunch?  We're good?  All

3   right.  Mr. Perri.

4          MR. PERRI:  Good afternoon.  As we were introduced

5   yester -- earlier, not yesterday, but this morning, my name is

6   David Perri.  I work for the U.S. Attorney's office.  I

7   represent the United States of America in this matter, along

8   with my co-counsel, Shawn Adkins.  I'm very happy to be with

9   you here today.

10         My job is to prove that this Defendant committed the

11  offenses with which he's been charged, that is, mailing

12  threatening communications and interstate communication of a

13  threat, beyond a reasonable doubt.  I look forward to meeting

14  that burden with you here today, and I wouldn't have it any

15  other way.

16         So I'm going to give you a preview, that's what

17  opening statement is, it's a preview.  I'm going to give you a

18  preview of the elements in just a minute.  But first I want to

19  give you some background as to these particular charges, the

20  nature of these charges for which the Defendant is on trial.

21         I'm also going to talk to you briefly about a few

22  concepts which may prove to be important in this case inasmuch

23  as they usually are important in almost every criminal case, in

24  every criminal trial.

25         So the charges in this case, mailing threatening

91

1  communications and interstate communication of a threat.  But

2  first, a little bit of background.  Talking about threats.

3  Sometimes words are not just words.  Sometimes words have

4  consequences, legal consequences.

5          We live in a country, thank goodness, where we can

6  say pretty much whatever we want.  I say pretty much because

7  there are some limits.  There are some limits.  If a person

8  communicates a true threat of harm to somebody else, that's not

9  something that's gonna be protected under the constitution.

10         That is why there is an outer limit as to what is

11 protected under the constitution, under the free speech clause

12 of the constitution.  If a person communicates a true threat of

13 harm to somebody else, that crosses the line, that outer

14 boundary of what's gonna be protected.

15         So in other words, if you go beyond that line, you're

16 on your own, okay.  You can be prosecuted for that.  That's

17 illegal.  So what does it mean to say that a threatening

18 communication is not free speech?  What does that mean?

19         Well, it's gonna be against the law.  Making threats

20 is illegal under state law and federal law.  What makes it a

21 federal violation is this connection to interstate commerce.

22 So if somebody transmits a threat in interstate commerce, then

23 we have federal jurisdiction over that matter.

24         Any time there's a connection to interstate commerce,

25 Congress has the authority under the constitution to legislate

1    on that subject.  So Congress has the authority to make that

2    conduct illegal.  So that's why we're here in federal court.

3    Okay.  That's the hook.

4              So it's illegal.  But why?  So you might say to

5    yourself, well, that's a dumb question because we just don't do

6    that kind of thing, it's wrong, it's not acceptable.  And if

7    you say that to yourself, you're right.  But there's a little

8    bit more to it.

9              You see, there's some really good reasons why this

10   conduct has to be illegal, especially when threats are directed

11   at public officials.  In this case, federal judges.  You see,

12   we, as citizens in this country, with our system, with our

13   judiciary, with the role that judges play in our constitutional

14   system, we want our judges to be free of influence and free of

15   pressure.

16             We want them to be free to do the right thing and

17   make the right decision.  It's incredibly important.  Federal

18   judges are responsible for upholding the United States

19   Constitution, so we want them to be able to make that decision

20   and do what's right without having to worry that if they rule

21   in a certain way or if they rule in favor of a certain party,

22   somebody might come after them, hurt them, hurt their family.

23             This is serious stuff, and law enforcement takes it

24   very seriously.  So just as an example, you know, if you have a

25   judge who says to himself or herself, well, I've carefully

1  considered all the facts, and I really thought freely and
2  carefully and considered the law that applies, and based on
3  that, in light of the analysis that I have to take, I think
4  that the decision has to be this.  I think that the proper
5  ruling is in favor of this party.  I think the ultimate
6  decision in this case is against that party.
7           But then the judge says or just hesitates, wait, if I
8  do that, is this person who has threatened me going to come
9  after me and my family?  Wow.  That's a tough situation.
10 That's a tough situation having to choose between doing the
11 right thing and insuring the safety of yourself and your
12 family.  That's serious stuff.
13          We don't ever, as Americans, want our federal judges
14 to be in that situation.  So as I said, law enforcement takes
15 this very seriously.  We don't tolerate it.  We can't afford to
16 tolerate it.  Not only is it a possibility that somebody's life
17 might be at stake, but, as we all know, these threats can be
18 extremely disruptive, extremely disruptive.
19          Anybody who's ever been in a building that had to be
20 evacuated just because somebody made a phone call knows exactly
21 what I'm talking about.  It's a drain on law enforcement
22 resources.  It's a diversion of precious resources.  Very
23 disruptive.
24          They can be disruptive even if the threat isn't, for
25 whatever reason, carried out, right.  So as I said, threats are

94

1   words, but not just words, words that have consequences.

2          So the elements of this charge, let's look at the

3   first one first.  Mailing threatening communications.  The

4   Defendant knowingly used the U.S. mail to send a communication;

5   the communication contained a statement that a reasonable

6   recipient would view as a true threat to injure a person; the

7   Defendant either intended the communication to be a threat or

8   had knowledge that it would be viewed as a threat; and the

9   communication was addressed to a United States judge.

10          Interstate communication of a threat.  The Defendant

11   knowingly sent the communication in interstate commerce; the

12   communication contained a statement that a reasonable recipient

13   would view as a true threat to injure a person; and the

14   Defendant either intended the communication to be a threat or

15   had knowledge that it would be viewed as a threat.

16          The judge is going to give you instructions at the

17   end of this case, and he's going to do a more thorough job.

18   But something else that's gonna be pertinent and worthy of your

19   consideration as you hear the evidence is going to be this

20   concept of a true threat.

21          The thing with the law is, there's so many terms that

22   sort of have special meanings and significance, and it's the

23   Court's job to instruct you on that.  But again, a preview of

24   what's gonna be in the case.  A true threat is when the

25   Defendant makes a statement in a context or under such

1   circumstances wherein a reasonable person would foresee that

2   the statement would be interpreted by those to whom the maker

3   communicates the statement as a serious expression of an

4   intention to inflict bodily injury on an individual.

5          So -- and that may seem to you like a whole lot of

6   words to describe something that's pretty much common sense.

7   But like I said, in the law, we have to be precise about these

8   things.

9          What are elements?  Elements are like building blocks

10  of charges, building blocks of charges.  So this is a word that

11  a lot of people may not be familiar with, and I just wanted to

12  touch on it a little bit.  You see, the United States does not

13  have to establish every disputed fact in this case.  We only

14  have to establish the elements beyond a reasonable doubt.

15         Not every factual detail in a criminal case rises to

16  the level of being an element.  Not every factual detail is

17  essential to the resolution of a case.  So the difference

18  between an element and any other factual detail is kind of like

19  the difference between a corner stone and a light fixture in

20  terms of the structure of a house.

21         If you don't have the corner stone of the building,

22  you got a problem.  If you don't have the light fixture, it

23  really doesn't matter.  That's it in a nut shell.

24         Another thing that the judge touched on in his

25  opening instructions to you is something that I think bears

1  repeating and just a little bit of discussion right now.  And

2  that is the difference between direct and circumstantial

3  evidence.

4        And the reason I want to mention that is because

5  circumstantial evidence usually plays an important part in

6  every criminal trial.  So two basic types of evidence.  One is

7  direct.  That will be like a video showing the commission of a

8  crime, eyewitness's testimony, semen in a rape case, you know,

9  something like that.

10        But circumstantial evidence is a little bit different

11  because it depends on an inference.  It depends on an

12  inference.  It involves drawing an inference from circumstances

13  or from other facts.

14        And here's the thing.  Here's the important thing.

15  You can use that to reach a conclusion.  And you do it every

16  day.  You rely on circumstantial evidence every day.  You might

17  not think to yourself, oh, that's circumstantial evidence, but

18  you do every day.

19        So the judge gave you an example, and I'd also like

20  to give you an example so when you see this evidence or hear

21  this evidence or we talk about it later in closing statements,

22  you'll be like, oh, yeah, that's what he was talking about.

23  Okay.  You can recognize it for yourself.

24        But again, the important thing is that you can rely

25  on circumstantial evidence to the same extent as direct

1  evidence.  It's just as important.  It's just as reliable.  And
2  you can use circumstantial evidence to reach a conclusion of
3  this Defendant's guilt.

4          So let's say early in the morning, you're ready to go
5  to work.  You get in your car, and you are pulling out of your
6  driveway, and you happen to notice that the neighbor's grass is
7  getting kind of long.  You don't think much of it.  You go to
8  work.

9          You come back home 5 or 6:00, pull into your
10 driveway.  You happen to look to the side and see that same
11 neighbor's lawn, and now the grass is real short, and it's got
12 those pretty stripes all the way across, you know, that the
13 lawnmower makes.

14         And you say to yourself, oh, he must have cut his
15 grass while I was at work.  So the appearance of the grass, as
16 you arrived home is circumstantial evidence of the fact that
17 the grass was cut while you were gone.  That's it.  That's all
18 it is.

19         And you might say, well, duh, that's just common
20 sense, I don't need a fancy word for that.  And interestingly
21 enough, common sense will be an important tool at your disposal
22 in this case.  You don't have to leave your common sense at the
23 door to be a juror.  In fact, it will be an extremely important
24 tool for you in evaluating the evidence in this case.

25         So opening statement is really just an overview, it's

1 a preview.  It's not intended to be argument.  It's not

2 intended to be presentation of evidence.  It's an overview.

3 And I was thinking to myself, how would I give an overview of

4 this particular case?  And I gave that some thought.

5         Then I said to myself, you know what, let's just cut

6 to the chase.  In this case, you're going to hear about how

7 this Defendant became increasingly angry and frustrated with

8 his lack of success in a bunch of civil lawsuits, so angry and

9 so frustrated that he resorted to an extreme measure.

10         He resorted to an extreme measure to get those judges

11 to do what he wanted them to do.  He threatened them.  When

12 you've heard all the testimony and seen all the evidence, and

13 we're going to put on some witnesses, and you're going to see,

14 you're going to get a sense of the context, you're going to get

15 a little bit of the sense of the history of how we got to this

16 point, and when you have seen that and heard everything, you're

17 going to know that this Defendant committed these offenses

18 beyond a reasonable doubt.  Thank you.

19         THE COURT:  Thank you, Mr. Perri.  Mr. Dougherty.

20         MR. DOUGHERTY:  First off, to reintroduce myself, I

21 am Keith Dougherty, I am the Defendant in this case.  And I

22 just want to make a couple quick points.  First, I'm extremely

23 thankful to your efforts and your willingness to be part of

24 this proceeding.

25         You are, in fact, the first valid tribunal that I've

1  been able to face in what has been a long and torturous battle

2  between Keith Dougherty and what is described as the judiciary

3  of the Middle District of Pennsylvania.

4          It happened that it began innocently enough, but in

5  fact, it did evolve into a circumstance.  And from a common

6  sense standpoint, what the evidence will show is it's about one

7  issue and one issue only.

8          This judiciary absolutely will do whatever it takes

9  to prevent me from appearing in a courtroom representing

10  myself.  Now you would think that's an unusual circumstance,

11  but it will come through every one of these supposed decisions

12  that were eluded to when, in fact, every one of the cases are

13  still open, they're still pending, because there was no valid

14  tribunal jurisdiction when the cases were, in fact, dismissed.

15          Came about from a simple process where they were

16  trying to prevent me from representing myself and my companies.

17  They would, in fact, instruct their clerks to, in fact, refuse

18  to enter default when, in fact, my opponent had not pled and

19  defended in accordance with the law.

20          I'll demonstrate all that for you.  You'll have

21  copies of what that amounts to.  And it's a very simple

22  process.  But the reason that this is so perplexing is because

23  Pennsylvania is really the center of the concept of

24  self-reliance and self-representation.

25          It was founded by William Penn in 1682.  He wrote the

1   Frame of Government.  In the Frame of Government, Article VI,

2   it specifies that all persons of all persuasions are free to

3   appear in all courts within this Commonwealth by themselves and

4   in whatever manner that they feel is appropriate, and if they

5   are unable to proceed, they're actually allowed to be

6   represented by a friend.

7          Now that, in fact, was then incorporated into the

8   Pennsylvania Constitution through a simple article attached to

9   the constitution, and that became the law of the Commonwealth

10  as of February 10th, 1777, and through the present.

11         Built right into the structure of our constitution is

12  a requirement that if, for whatever reason, that provincial law

13  were to become obsolete and need to be done away with, then the

14  legislature simply has to make a specific reference indicating

15  you are not allowed to represent yourself, you are not allowed

16  to represent your property, you are not allowed to represent

17  any of your companies, and certainly you're not allowed to be

18  represented by a friend.

19         If they had done that, then, in fact, we wouldn't be

20  having this discussion.  Instead, if they make an illusion to

21  it through some statute -- and, in fact, one of the exhibits I

22  expect to see is an inference that I was engaged in the

23  unauthorized practice of law by defending myself or one of my

24  clients or the accounts that I controlled and managed for my

25  clients -- then, in fact, that mere illusion is not sufficient.

1   You actually have to say that you are stripping the common law

2   or taking away the provincial law.

3          And if that were to happen by inference, and it would

4   become some sort of necessity, we have another section built

5   right into the statutory structure.  1 PA Section 1978 provides

6   that that substantive right, the right to represent yourself,

7   the right to represent your closely held corporation,

8   association, partnership, or joint stock association would be

9   then carried over in the common law of the Commonwealth.

10          So this is all about the common law and protecting

11  our rights.  I see myself as a champion of the small business

12  owner and the individual person who is doggedly defending his

13  rights, privileges, and immunities under the Pennsylvania

14  common law.  And that's what it is.

15          I went so far in that process, as this process drug

16  on and on and on and on, to where I was forced to take my

17  securities firm that I had established in Pennsylvania,

18  registered in 2006, and had been thwarted in my business

19  because of these exact cases that you'll see, the facts are not

20  in dispute, to where they seized my bank accounts unlawfully

21  from foreign actions, a debt collecting from a manner that I

22  had taken care of in the fourth circuit, and seizing my bank

23  accounts with no lawful authority to do so, all to try to

24  leverage me into, in fact, hiring an attorney or letting an

25  attorney represent me.

1          And in the process, I wound up being forced to shut
2    that law -- that securities firm down, registered investment
3    advisory firm registered here in Pennsylvania, shut it down and
4    converted it into a militia, a well-regulated militia.  The
5    militia's corporate charter is as follows:  To preserve the
6    common law for all individuals as well as owners as the core of
7    our constitutions, both Pennsylvania and the United States.
8          This reference that was made in some of the jury
9    questions about sovereign citizen or whatever.  That's not me.
10   I believe that we have the finest structure in the 50 states.
11   It's a five article constitution.  It's different than the
12   United States.  But it sets as the first article the
13   declaration of rights.  All 29 sections now are, in fact,
14   there, and they are held outside of all government.
15         So these disputes between me and primarily the
16   primary victim in terms of Count 1 are between someone who, for
17   whatever reason, and I hope to find out through this process
18   what it was, was bent on making sure that Keith Dougherty never
19   represented himself, never represented his companies, although
20   Keith Dougherty is an enrolled agent authorized to practice in
21   U.S. tax court and in -- before the Internal Revenue Service in
22   Washington, DC.  And I have never lost a case.
23         Now these are financial matters, but we don't have to
24   go into any of that.  It's a very simple question, very simple
25   process.  Did Keith Dougherty have a constitutional right to

1   represent himself or was it a common law right or was it just

2   something that is governed by statute?

3              Oddly enough, my right to proceed, as I have tried to

4   without success for the past 14 years, is in the Pennsylvania

5   Frame of Government and in the Pennsylvania Constitution.  But

6   as of the ratification of the United States Constitution 1789

7   and the First Judiciary Act, it was signed into law by George

8   Washington that all parties in the United States of America are

9   free to appear in all federal courts by themselves or through

10  counsel.

11             Yet in this Circuit, they have decided through a

12  local custom that's been lingering since 1966 that they are

13  going to prevent that.  You are not allowed to proceed pro se

14  because they want to make sure of one thing, that is, an

15  orderly marketplace for all attorneys at law.

16             So in the evidence I will be presenting to you, you

17  will find out that during this time the Supreme Court has

18  become so frustrated with this Circuit, reversing it repeatedly

19  on some of these issues, and specifically in the one that was

20  referenced a little bit elaborately by my opponent here, and,

21  frankly, I don't disagree with half of what he said in the

22  beginning of his presentation, the first half.

23             The facts are that in 2015, the Supreme Court

24  reversed this Circuit as it pertains to the transmission of a

25  threat through interstate commerce in that no reasonable person

1  standard can be applied to the case, it must be beyond

2  reasonable person.

3          It also says that it must be -- that negligence is

4  enough.  There was a dispute going back and forth whether

5  recklessness could get it done, but, in fact, that has been not

6  resolved yet.

7          The other element that he's completely missing is the

8  fact that there must be proof beyond a reasonable doubt that my

9  subjective intent, the reason I submitted these communications,

10 was to threaten someone, not to point out that I was filing

11 what is a petition for redress and, in fact, it is protected

12 activity under our very same constitution that he's elaborating

13 on, and, in fact, that if, in fact, you are addressing a

14 communication to a government official, especially in this

15 case, the chief executive of the Middle District of

16 Pennsylvania, you are, in fact, talking to the executive about

17 crimes being committed in the courts beneath him.

18         One of the primary functions of the federal court

19 system, whether you realize it or not, is under Article IV,

20 Section 4 of the United States Constitution.  They are

21 guaranteed to provide us with a republican form of Government.

22 We cannot have a judiciary taking over the role of legislature

23 or executive and determining that they are going to change all

24 these facts and do things their own way.

25         So all of these facts will show there's one dispute

1  being and one dispute only, that they don't want me to

2  represent myself, and, in fact, they have done it through the

3  commission of crimes.

4         And to my great delight was in 2016, the Supreme

5  Court of the United States actually have said that when it

6  comes to a government official, either withholding his service

7  or his activities, unless you hire his friend or, in fact, pay

8  that friend that otherwise would be lawful, the Supreme Court

9  has now determined that is extortion.  They basically have

10  characterized it as the rough equivalent of taking a bribe.

11         So, in fact, you cannot file a petition for redress

12  in this Middle District of Pennsylvania, without paying an

13  attorney at law, that is a bribe that they are forcing you to

14  pay and they are using the word extortion because it's less

15  than robbery.  The Hobbs Act is very clear.

16         All of this will be demonstrated by me if not through

17  other extractions and questions or whatever.  But there is no

18  dispute that we have had an ongoing battle, but there is a

19  circumstance that you must be aware of.  The Supreme Court of

20  the United States has reversed this Circuit on this exact

21  subject because they want to insist a reasonable person is a

22  standard that can be applied to a crime.

23         They have said, no, it cannot be.  They've also said

24  it can be mere negligence.  It's undisputed that if, in fact,

25  there were an actual true threat, it should be punished, but

1  not in these cases.  The reality is, when Keith Dougherty is

2  speaking directly to the Chief Judge of the Middle District of

3  Pennsylvania, he does so by advising him the judges and clerks

4  and magistrates beneath him are, in fact, violating the law,

5  that is the proper procedure.

6        You petition to redress to the Chief Judge.  He was

7  never presiding as the adjudicating judge on any of my cases

8  yet he injected himself in each of my cases.  And I hope to

9  find out why.  Thank you for your attention, and I hope to have

10  a successful what have you.

11        But remember, it was William Penn who basically said

12  because of some times the conflict between law and politics,

13  there had to be a circumstance where the individual would be

14  able to speak directly to his fellow citizens.  And he famously

15  did.  It's the most famous jury trial in common law history.

16        And I believe this will be in the same vein because

17  as he was charged with offensive speech in London for preaching

18  the Quaker faith, Keith Dougherty has been charged with

19  offensive speech insisting that I will represent myself, I will

20  represent my companies, and I will represent my clients.  And

21  there's millions of dollars at stake.

22        But it took me a long long time to come to this

23  moment where for the first time in 14 years I have finally got

24  myself in front of a valid tribunal, and I hope to achieve the

25  proper results with you.  Thank you for your time.

1          THE COURT:  All right.  Thank you.  Now we turn to

2  the presentation of the evidence.  Mr. Perri.

3          MR. PERRI:  Thank you, Your Honor.  The United States

4  calls Caleb Enerson to the stand.

5          **CALEB ENERSON, GOVERNMENT'S WITNESS, SWORN**

6          COURTROOM DEPUTY:  State your name and spell your

7  name for the record.

8          THE WITNESS:  Caleb Enerson.  C-A-L-E-B.

9  E-N-E-R-S-O-N.

10          (Water was spilled.)

11          THE COURT:  I did the same thing on my tie at lunch.

12          THE WITNESS:  I didn't get it on any of the expensive

13  equipment, Your Honor.

14                    **DIRECT EXAMINATION**

15  BY MR. PERRI:

16  Q.   Okay.  Good afternoon.

17  A.   Good afternoon.

18  Q.   Would you please state your name for the record?

19  A.   Sure.  Caleb Enerson.

20  Q.   And where do you work, Mr. Enerson?

21  A.   I work for the Pennsylvania Attorney General's office here

22  in Harrisburg.

23  Q.   What is your title or capacity there?

24  A.   I'm a Deputy Attorney General for the civil litigation

25  section.

1  Q.   Okay.  And what do you do as an Assistant Attorney
2  General?
3  A.   So my section of the office, we represent Pennsylvania
4  state employees and agencies when they get sued.  And we defend
5  state statutes and laws.
6  Q.   Okay.  Are you based -- is your job based here in
7  Harrisburg?
8  A.   Yes, across the street in Strawberry Square actually.
9  Q.   Okay.  And when you -- do you have to go to court
10 sometimes?
11 A.   Yes, I do.
12 Q.   So you would be legal counsel for the person that gets
13 sued, right?
14 A.   That's correct.
15 Q.   All right.  Through your employment, are you familiar with
16 a litigant named Keith Thomas Dougherty?
17 A.   I am.
18 Q.   And do you have some familiarity with his litigation
19 history?
20 A.   Yes, I do.
21 Q.   And that's through your job, right?
22 A.   Yes.
23 Q.   But you also have some personal involvement in one of his
24 cases, is that correct?
25 A.   Yes.  I was representing an individual who Mr. Dougherty

1  sued, and then Mr. Dougherty also sent me various e-mails and

2  things like that.

3  Q.   Okay.  All right.  Could you please just give us a quick

4  briefing on what's the difference between a criminal case and a

5  civil case?

6  A.   Sure.  So a criminal case is where someone gets charged

7  with a crime and they're criminally prosecuted.  They can be,

8  you know, sentenced to probation or jail or things like that.

9  And civil cases are usually disputes about money.  And if you

10 end up losing, you have to pay money or sometimes if it's --

11 you might have to start or end a certain action, things like

12 that.  Like if it's an employment case, you might have to

13 rehire someone, things like that.

14 Q.   Okay.  So you would get involved then if someone had filed

15 a lawsuit against a state official, for example?

16 A.   Yes.

17 Q.   All right.  Do you happen to know in terms of the

18 Defendant's litigation history, do you happen to know about how

19 many civil lawsuits he's filed in, say, the last 10 years?

20 A.   I believe it's about a dozen or so, give or take.  I'm not

21 sure of the exact number, but it's approximately a dozen.

22 Q.   Okay.  And typically in these cases, is it just naming one

23 Defendant or --

24 A.   No.  Usually Mr. Dougherty names at least half a dozen to

25 a dozen different individuals in his various lawsuits.

1  Q.   And these would be different office holders, people with,
2  you know, state government jobs and titles?
3  A.   Yes.  There's also been local government officials, I
4  believe, sued local government agencies, federal officials,
5  federal judges, people like that.
6  Q.   Okay.  And can you give us an idea of, again, based on
7  your familiarity with his litigation history, how long would
8  these cases last?  I mean, give us a ballpark idea?
9  A.   It depends.  Some of them would only be, you know, maybe a
10  few months or a year.  Many of them stretched, you know, two,
11  three, four years.  And then if you lose a civil case, you can
12  appeal that decision if you lose.  And then that can stretch
13  out the process as well.  Mr. Dougherty filed appeals in a lot
14  of his cases.
15  Q.   So that kind of segues into my next question for you,
16  which was to what extent, if at all, is there any connection
17  maybe between one case and another case?  Have you observed
18  that?
19  A.   Yes, there is -- there has been a connection.  There have
20  been several cases that Mr. Dougherty has brought purporting to
21  be on behalf of various corporations or companies, things like
22  that.  And he wasn't allowed to represent those corporations or
23  businesses because he's not a lawyer, and so then he would file
24  a lawsuit.  The case would get dismissed.
25        And then when he was unhappy with the result of that

1  lawsuit, along with appealing, he would then often times start

2  a new lawsuit and then name individuals in the new lawsuit who

3  had ruled against him in the first lawsuit.  And then that

4  pattern sort of continued with several of his cases.

5  Q.    Mr. Enerson, would those individuals be judges?

6  A.    Some of them were, yes.  There were quite a few judges

7  that he ended up suing because they would rule against him, and

8  then they would be named in subsequent lawsuits he would file.

9  Q.    So are you saying that he receives an unfavorable ruling,

10  and then goes after the judge that made the ruling?

11  A.    Yes, that happened several times from what I can tell from

12  the dockets on his cases.

13  Q.    Okay.  You've just used a word that us lawyers are

14  familiar with.  What's a docket and what's a docket entry?

15  A.    Okay.  So the docket is just basically a recording of all

16  the filings that are done in a case.  So you start a civil case

17  by filing a complaint or a lawsuit.  And then there will be,

18  you know, various motions might get filed, other things in

19  connection with the case.

20      And every time something gets filed with the court, then

21  it becomes a new docket entry.  And, for example, in the

22  federal courts, every time something is filed, then it's

23  assigned a docket number for that particular case.

24           THE COURT:  Before you go on, Mr. Dougherty, are you

25  able to see the witness?

1      MR. DOUGHERTY:  I am able to see him well enough,
2  yes.
3      THE COURT:  Okay.  Go ahead.  Sorry, Mr. Perri.
4      MR. PERRI:  I can move it over.
5      THE COURT:  That's fine.  It just occurred to me.
6  I'm having a tough time myself.  Go ahead.
7  BY MR. PERRI:
8  Q.   So with respect to Mr. Dougherty's cases, do you have a
9  sense of whether or not there would be a few number of docket
10 entries or a large number or something in between?
11 A.   For a lot of his cases, there were a lot of docket
12 entries.  There would often be hundreds of things that would
13 get filed in connection with his cases.  And most of the
14 filings were filings from Mr. Dougherty, not necessarily the
15 parties that he was suing.
16 Q.   Okay.  And he would be -- when someone files a lawsuit,
17 what do we call them?
18 A.   Normally they're the Plaintiff.
19 Q.   And the person that you are trying to get something from
20 or, you know, challenging in some way, what do we call them?
21 A.   They would be the Defendant or departments if there's more
22 than one.
23 Q.   Okay.  All right.  So you said you actually had some
24 personal involvement through your job with Mr. Dougherty, is
25 that correct?

113

1  A.   Yes, that's correct.

2  Q.   Which case was that?

3  A.   So Mr. Dougherty filed a suit against about 10 different

4  individuals.  I only represented one of them, his name was

5  Jared Dupes.  And he was at the time an employee with the

6  Pennsylvania Department of Revenue.

7  Q.   Can you spell his last name and first name as well for the

8  benefit of the court reporter?

9  A.   Sure.  Jared, J-A-R-E-D, Dupes, D-U-P-E-S.

10  Q.   And was that case number 1:17-CV-01541?

11  A.   That sounds correct, yes.

12  Q.   How long did that case last, Mr. Enerson?

13  A.   I want to say two or three years total counting the appeal

14  that Mr. Dougherty filed as a result of that.

15  Q.   Okay.  And so he was the Plaintiff?

16  A.   Yes.  Mr. Dougherty filed the lawsuit.

17  Q.   And Mr. Dupes was one of the departments?

18  A.   Yes, that's correct.

19  Q.   Were there other departments?

20  A.   Yes.  I don't remember the exact number since I did not

21  represent everyone in that case.  I believe there were about

22  ten or so in total.

23  Q.   Okay.

24       MR. PERRI:  Your Honor, may I approach the witness?

25       THE COURT:  Yes.

1   BY MR. PERRI:

2   Q.   I'd like to show you what's been marked as United States

3   Exhibit No. 5-A.  Could you please take a look at it and flip

4   through its pages and tell me if you recognize it?

5   A.   Yes, this appears to be a copy of the docket for the case

6   that you just mentioned, 17-CV-01541 case.

7   Q.   Does it show who the Plaintiff is and the Defendant and

8   stuff like that?

9   A.   It does, yes.

10  Q.   And is that -- does that appear to be a certified copy

11  from the Clerk's office?

12  A.   Yes, it does have a stamp or an imprint saying it's

13  certified by the record, and then it has a date and signature.

14  Q.   And you're familiar with this type of document?  You can

15  get these from the Clerk's office for a particular case,

16  correct?

17  A.   Yes.

18  Q.   All right.  And that is the docket listing for your case

19  that you were involved in?

20  A.   Yes, it appears to be.

21        MR. PERRI:  Your Honor, we'd move for the admission

22  of this exhibit.

23        MR. DOUGHERTY:  No objection.

24        THE COURT:  All right.  It's admitted.

25        MR. PERRI:  Okay.

1  BY MR. PERRI:

2  Q.   Mr. Enerson, the exhibit having been admitted, I would

3  like to ask you who the other departments are in that case?

4  A.   Sure.  There was, along with Mr. Dupes, Dupes, there was

5  Commonwealth Court Clerk, which I believe would be referring to

6  the Commonwealth Court of Pennsylvania, which is one of

7  Pennsylvania's state appeals courts.

8  Q.   What does the clerk do, Mr. Enerson?

9  A.   The clerk is responsible for keeping track of the dockets

10  and for entering the judge's orders, things like that.

11  Q.   So it's an administrative function?

12  A.   Yes.

13  Q.   Okay.

14  A.   There's also listed Christopher Conner, who is a judge

15  here in the Middle District of Pennsylvania.  Then one is

16  listed as all one, but it's five names, Caldwell, Jones,

17  Carlson, Blewitt, and Welsh.

18  Q.   Who are those people, Mr. Enerson?

19  A.   The first four are all current or former judges here in

20  the Middle District.  Welsh, I believe, refers to Peter Welsh,

21  who is the -- who was at the time the Acting Clerk, I believe

22  he is now the permanent Clerk of Courts for the Middle

23  District.

24  Q.   Middle District of Pennsylvania?

25  A.   That's correct.

1  Q.   That's this federal court?

2  A.   Yes, that's correct.

3  Q.   Okay.

4  A.   And then there are two -- there's three other departments,

5  there's the Pennsylvania Unified Judiciary, which is sort of

6  the administrative office for the Pennsylvania courts, Jerome

7  Simandle, S-I-M-A-N-D-L-E, I believe he is a federal judge in

8  the Eastern District of Pennsylvania or in Maryland, I'm not

9  positive, and then a David Ragonese, R-A-G-O-N-E-S-E, and I'm

10 not sure who that is.

11 Q.   Okay.  To what extent, if at all, is this typical of the

12 nature of the departments that gets sued in Mr. Dougherty's

13 lawsuits?

14 A.   I would say it seems fairly typical of the cases that Mr.

15 Dougherty has filed.  As I mentioned, there were several judges

16 that he sued, as well as court clerks, which are another sort

17 of common defendant for a lot of these cases.  And then Mr.

18 Dupes, who I represented, works for the Department of Revenue

19 here in Pennsylvania.

20 Q.   What is Mr. Dupes' job?

21 A.   So Mr. Dupes works for the Bureau of Compliance within the

22 Department of Revenue.  It's basically the Pennsylvania version

23 of the IRS.  And I believe at the time he was involved with

24 something regarding corporate structure or business taxes,

25 something like that.

1  Q.   Okay.  What was it that the Defendant wanted in your case?

2  You know what I mean?  Like every time somebody files a civil

3  lawsuit, it's because the Plaintiff wants something.  What did

4  he want?

5  A.   Well, I believe Mr. Dougherty was seeking money damages

6  from the defendants.  I believe it was like 20 million dollars

7  or some very large amount.  He also was suing the various state

8  officials because he believed that they had not acted properly

9  in prior cases, so I believe he may have been trying to undo

10 prior court rulings.

11       And as best as I can remember, as far as Mr. Dupes was

12 concerned, as I had mentioned earlier, in Pennsylvania, if

13 you're a corporation or a business, it's essentially a person

14 even though it's not a living, breathing person, so they need

15 an attorney to represent them in court.

16       They can't be represented by a non-lawyer.  Mr. Dougherty,

17 to the best of my knowledge, is not a licensed attorney

18 anywhere.  And I believe he would have had some dispute with my

19 client, Mr. Dupes, regarding his ability to represent the

20 interests of a corporation in court.

21 Q.   Okay.  Okay.  So that's the connection?

22 A.   Yes.

23 Q.   Okay.  Who was the presiding judge in that case that

24 you're talking about there?

25 A.   It was Judge Conti, C-O-N-T-I.

118

1  Q.   That is Joy Flowers Conti?

2  A.   Yes, that's correct.

3  Q.   Is she a federal judge in the Middle District of

4  Pennsylvania?

5  A.   No, she's a judge in the Western District of Pennsylvania,

6  which is based out of Pittsburgh.

7  Q.   So she was the judge in that case, in your case; correct?

8  A.   Yes, that's correct.

9  Q.   So why was she a judge on a case in this district if she

10 wasn't a judge in this district?

11 A.   They had to bring in Judge Conti from outside of the

12 district because I believe between this case and some of Mr.

13 Dougherty's other cases, he had sued all of the judges that sat

14 in the Middle District of Pennsylvania.

15      At that time, there were about 10 judges, either active or

16 in semi-retired status.  I believe he had sued all of them at

17 one point or another in his various cases, so they had to bring

18 in a different judge to hear the case.

19           MR. DOUGHERTY:  Objection.

20           THE COURT:  Hold on.

21           MR. DOUGHERTY:  Misleading.

22           THE COURT:  That's not an -- there's no rule about

23 misleading.

24           MR. DOUGHERTY:  Facts not in evidence.

25           THE COURT:  Well, he's giving his testimony, but you

1  can cross-examine him on that.  All right.

2  BY MR. PERRI:

3  Q.  So when you say they had to bring her in, like what are

4  you referring to?  Can you explain that just a little bit more?

5  A.  Yes.  So there will be times such as this case where a

6  judge who's not based in that particular district will have to

7  be assigned to a case.  At the time, Judge Conner, who is one

8  of the named defendants in this case, was the Chief Judge for

9  the Middle District of Pennsylvania, which they're in charge of

10 administrative matters for that particular district.

11      So the way I understand the process is that Judge Conner

12 would have requested a judge from outside the district to come

13 and preside over this case because of the issues with having a

14 Middle District of Pennsylvania judge preside over Mr.

15 Dougherty's case.

16 Q.  Like what issues?  I mean, what is the issue there?

17 A.  Well, so basically they want to avoid the appearance of

18 any sort of conflict of interest.  And since many of the judges

19 had been named in the lawsuit, if not all, and the fact that it

20 would be their direct colleagues that had been named in this

21 and other lawsuits, in order to avoid the appearance of

22 anything underhanded or anything like that, then they would

23 bring in a judge who hadn't been involved with Mr. Dougherty or

24 with any of his prior cases.

25 Q.   Okay.  So did Judge Conti rule in the Defendant's favor in

1  that case?

2  A.   In Mr. Dougherty's favor?  No, she did not.

3  Q.   In fact, there were a number of decisions that she issued;

4  correct?

5  A.   Yes, and I believe they were all pretty much unfavorable

6  to Mr. Dougherty.

7           MR. PERRI:  May I approach, Your Honor?

8           THE COURT:  Yes.

9  BY MR. PERRI:

10  Q.   Mr. Enerson, I'd like to show you what's been marked for

11  identification purposes as United States Exhibit 5-B, 5-C, 5-D,

12  and 5-E.  Please take a look at those, each one of them.  And

13  then I'm going to ask you if you recognize them.

14  A.   Yes, I do recognize these.

15  Q.   Do you recognize those as decisions issued by Judge Conti

16  in the case that you worked on?

17  A.   Yes.  There's -- it looks like four different decisions

18  that she issued in that case.

19  Q.   And were all four of those unfavorable to the Defendant?

20  A.   They were, yes.

21  Q.   And so when the judge, you know, reaches the point where

22  they want to make an official pronouncement of the outcome of

23  the case or the issue, we call that a decision; correct?

24  A.   Yes.  And then that will be written down as an opinion or

25  a memorandum opinion, an order.

1  Q.   That's how it will be titled?

2  A.   Yes, that's correct.

3  Q.   On each of those, do you see an indication of whether or

4  not that is an official copy from the Clerk's office?

5  A.   Yes, they all have Mr. Welsh's stamp.  They're all dated

6  and certified.

7  Q.   Whose stamp, by the way?

8  A.   That's Peter Welsh, the Clerk.

9  Q.   Okay.  The one you mentioned earlier?

10  A.   Yes, who was named as one of the defendants in this

11  lawsuit.

12  Q.   Okay.  All right.

13       MR. PERRI:  And at this point, Your Honor, I would

14  move for the admission of those four exhibits.

15       MR. DOUGHERTY:  No objection.

16       THE COURT:  All right.  They're admitted.

17  BY MR. PERRI:

18  Q.   And let's talk about 5-B for a second, Mr. Enerson, if you

19  wouldn't mind?

20  A.   Sure.

21  Q.   So --

22       MR. PERRI:  Your Honor, I would ask that we have

23  permission to publish?

24       THE COURT:  Sure.  So my rule is once it's admitted

25  into evidence, Mr. Dougherty, if a document is in evidence,

1  both you and the Government can publish it, put it in front of

2  the jury.

3          MR. PERRI:  Okay.  Thank you, Your Honor.

4          THE COURT:  You don't need to ask.

5          MR. PERRI:  That was my next question.

6          THE COURT:  Yep.

7          MR. PERRI:  Okay.

8  BY MR. PERRI:

9  Q.   All right.  Can you see the first page of that, please?

10 Thank you.  And just so that people have an understanding of

11 what these documents look like, could you point out where the

12 parties are?

13 A.   Yes.  So --

14 Q.   Actually, you can draw on your screen with your finger.

15 It's pretty cool.

16 A.   Okay.  So right here where I've circled, that's Mr.

17 Dougherty.  And it says, Keith Dougherty, et al, Plaintiffs.

18 There were, I believe, four or five individuals who originally

19 were -- had filed the lawsuit.  But ultimately, it just became

20 Mr. Dougherty because since he's not a lawyer he could not

21 represent the other individuals.  And I don't believe they

22 filed anything in connection with the case.

23        And then below that where it says, Jared Dupes, et al,

24 Defendants.  That's, again, Mr. Dupes was one of the 12

25 defendants, 12 or 10 defendants that were named in the case.

123

But to save space, they just write the name of the first
individual.

Q.   Does it show the case number on there?

A.   Yes.  First of all, it's right here where it says that
appears on the top of every document that gets filed, so you
know what case it's associated with.  Then it also appears
right there.

Q.   Okay.  All right.  And I believe if you touch on the
little pencil icon, and then up in the corner where the arrow
is, and then you can hit clear to get rid of those annotations.
And that document also shows who the judge was, right?

A.   Yes.  So it says right here Conti, so Judge Conti.  And
then also on top of it where it says JFC and then again next to
the docket number right here, that's Judge Conti's initials,
Joy Flowers Conti.

Q.   Okay.  So if we could go to the next page?  I have a
question for you, Mr. Enerson.  What kind of litigant was the
Defendant, Mr. Dougherty?

A.   A very, I guess, busy would be a good way of putting it.
I believe this case had approximately between 150 and 200
docket entries, which is a fairly high amount, especially
considering how the case was ultimately terminated by the
judge.

     Procedurally, it was very early in the case, but Mr.
Dougherty, I believe, at one point was filing, you know,

124

1  something two or three times a week on the case even when there
2  was nothing pending.  And a lot of these filings would be, you
3  know, 25, 50, a hundred pages at a time.  So very, very
4  frequent and very verbose.
5  Q.   And was it you -- you have to read these things, right,
6  because you're defending Mr. Dupes, right?
7  A.   Yes.
8  Q.   And you have to respond to them, right?
9  A.   Yes.
10 Q.   So you would have to file a pleading in response to
11 anything that he files pretty much?
12 A.   Yes.  Eventually, I mean, there were just so many things
13 that Mr. Dougherty had filed that you really couldn't file a
14 response to everything that he had filed because there were
15 just so many different things.  And the judge, for example,
16 would tell him to file a response to something and he wouldn't.
17 And he would instead just file 5 or 10 or 15 different things
18 unrelated to that.  But, yes, in normally if something gets
19 filed by one party, usually the other side will file a
20 response.
21 Q.   Okay.  I'd like to direct your attention to the first full
22 paragraph on that page, page 2.
23 A.   Yes.
24 Q.   Could you read that, please?
25 A.   Sure.

1      As best the Court can glean from the 140-page complaint,

2   Dougherty is contesting, at least in part, and apparently yet

3   again, various prior actions, decisions, and rulings by

4   individuals, governmental entities, judges, and courts stemming

5   from his attempted representation in various courts of Docson

6   Consulting, LLC, of which he is the sole member, and which was

7   not permitted because Dougherty is not a licensed attorney.

8   Dougherty also seeks a jury award against the defendants in

9   excess of 200 million dollars.

10      And then there's a notation, which is a citation to Mr.

11   Dougherty's complaint.

12   Q.   Okay.  Can we move to the next page, please?  Mr. Enerson,

13   if you would take just a second to refamiliarize yourself with

14   that page?

15   A.   Yes.

16   Q.   And also with the top of the next page, if we could see

17   that?

18   A.   Okay, yes.

19   Q.   Okay.  Is it fair to say that the judge at that point is

20   talking about a whole bunch of motions and other filings the

21   Defendant has made with respect to something called default

22   judgment?

23   A.   Yes.  There were a lot of references to that in Mr.

24   Dougherty's filings with the court.

25   Q.   In fact, on page 3, she attempts to list out at least some

1  of them?

2  A.   Yes.

3  Q.   And then again at the top of the next page, she lists some

4  by ECF number?

5  A.   That's correct.

6  Q.   What is a default judgment?

7  A.   So a default judgment is if an individual files a lawsuit

8  and it's -- and the person that they're suing is given proper

9  notice of the lawsuit, and certain rules are followed, if that

10 person never responds to the lawsuit, never attempts to defend

11 it, then a default judgment can be entered, and the party that

12 filed the lawsuit can win without having to, you know, take the

13 case to trial or anything like that.  They win by default.

14 Q.   Okay.  So what is the judge doing there with respect to

15 all these things that have been filed about default judgments?

16 A.   So basically Mr. Dougherty was attempting to obtain a

17 default judgment in this case, and perhaps in some of his other

18 cases as well, because he did not believe that the parties he

19 had sued had properly responded to his lawsuit.  And as the

20 judge discusses further on in that opinion, the judge ends up

21 denying all of those requests by Mr. Dougherty to enter a

22 default against the parties Mr. Dougherty had sued.

23 Q.   To what extent was this decision about something called

24 service of process?

25 A.   That was a main problem with Mr. Dougherty's case, and the

1  judge goes on to discuss it.  Basically one of the reasons why
2  a default judgment couldn't be entered in this case against the
3  people Mr. Dougherty had sued is because he hadn't -- he had
4  not completed proper service of process in this case.
5  Q.   What is service of process?
6  A.   So service of process is the legal way in which a lawsuit
7  is given to the party, the defendants, the individuals being
8  sued.  There's very specific rules in place as to how you can
9  inform a party that you're suing them and give them notice of
10 the lawsuit so they can defend themselves.
11 Q.   Okay.  All right.  And without going through this whole
12 decision and talking about, you know, getting too far into the
13 weeds, can we skip over to 28, please, where the judge kind of
14 sums up?  And this is Judge Conti speaking, right?
15 A.   Yes, this is her decision.
16 Q.   So could you please read the paragraph right after the
17 heading, starts with for, all the way down to the word process?
18 A.   For the reasons indicated, Dougherty did not make proper
19 service of original process upon any of the defendants, none
20 are in default, and accordingly, entry of default or default
21 judgment is inappropriate.  Due to the lack of service of
22 original process upon any of the defendants, all the previously
23 filed motions by Dougherty for default and default judgment,
24 and then it lists all his motions by docket number, and all of
25 the previously filed motions including therein a request for

1  default and default judgment, again a list of Mr. Dougherty's

2  filings, as it related to that, will be denied.  Default cannot

3  be entered where there was insufficient service of process.

4       And then there's a citation, it indicates that's a

5  quotation from a prior court decision.

6  Q.   Okay, thank you very much.  All right.  Now I'd like to

7  ask you some questions about United States Exhibit 5-C.

8  A.   Sure.  Certainly.

9  Q.   All right.  Could we see the first page, please?  And this

10 is familiar because it's -- it looks like a lot like what we

11 saw with the other exhibit, correct?

12 A.   Yes, it's just a different decision by Judge Conti, but

13 for the same case.

14 Q.   Authored by Judge Conti, right?

15 A.   Yes, that's correct.

16 Q.   So these are her words?

17 A.   That's correct.

18 Q.   All right.  I'd like to direct your attention to the top

19 of page 3, starting with the first full sentence where the

20 judge is kind of explaining what's happened in some previous

21 orders; correct?

22 A.   Yes.

23 Q.   Could you read that sentence, please?

24 A.   The one that starts, in that order?

25 Q.   Yes.

1  A.   In that order, the Court further explained that Dougherty

2  was not an attorney licensed to represent other individuals.

3  Yet the numerous filings by him contain the electronic

4  signature of Brent Frey, Erica Frey, and R. Michael Best, who

5  were individuals purported to be co-plaintiffs and are not

6  registered as CM/ECF registrants in the United States District

7  Court for the Middle District of Pennsylvania and had not

8  signed the complaint as required by Federal Rule of Civil

9  Procedure 11(a).  The Court observed that Dougherty was well

10 aware that he cannot proceed on behalf of other plaintiffs and

11 explicitly indicated that the other purported co-plaintiffs in

12 this action must appear through counsel or appear for

13 themselves.

14      And then there's some citations to other court cases.

15 Q.   Thank you.  May we skip over, please, to page 5 under the

16 heading analysis?  And can we expand that whole big paragraph

17 there?

18 A.   Dougherty's motion for reconsideration and brief do not

19 present any discernable, much less valid, argument for

20 reconsideration of the Court's March 2nd, 2018, orders, and

21 therefore the motion will be denied.  Much of the filings with

22 respect to these motions is undecipherable, rambling,

23 unintelligible, and quite simply presented in a near impossible

24 to understand stream of consciousness style.

25      Then there's a citation to some of Mr. Dougherty's prior

130

1   court cases.

2       To the extent Dougherty seeks to challenge rulings made

3   with respect to the rights or interests of others, namely, the

4   persons delineated as co-plaintiffs by him, he lacks standing

5   to assert their interests and claims.

6       Again, a citation to one of Mr. Dougherty's prior cases.

7   Q.   Thank you.  And this is Judge Conti saying this, right,

8   her words?

9   A.   That's correct.

10  Q.   Can we skip over to page 7?  And right here, we have a

11  reference to what Mr. Dougherty has been like as a litigant.

12  Could you --

13  A.   Um-hum.  Dougherty is keenly aware of how to achieve

14  electronic filing through the CM/ECF system for which he is a

15  registrant, as fully evidenced by his voluminous filings on the

16  docket that comprise over 123 entries and thousands of pages.

17  Thus, the ESIGN Act would provide no conceivable support for

18  the Court's reconsideration of its order.

19  Q.   Thank you.  Could we now proceed to 5-D?  Again, is this

20  set up, the caption of this case is what we call it, right, is

21  it set up the same as the others?

22  A.   Yes, this is for this case that we've been discussing.

23  And it's another decision by Judge Conti.

24  Q.   Okay.  So under the heading background, on page 2, at the

25  end of that large paragraph, is there a reference to what the

1  Defendant was alleging in this -- as it pertains to this
2  particular decision at least?
3  A.   Yes, there is.
4  Q.   What is that?
5  A.   So it indicates Judge Conti writes, In what appears to be
6  an allegation of conspiracy against the Commonwealth
7  defendants, the Plaintiff writes, the way "to success they say"
8  is to say "you Keith Dougherty are not permitted to ask, your,
9  questions" and obtain a "decision on the merits" as to "the
10 definition of person" under 28 U.S.C. 1654 and "as applied" and
11 under "strict scrutiny" as "required in FEC versus WRTL (2007),
12 the precursor to Citizens United circumventing the mootness
13 doctrine."
14      Paragraph 30, This then allows the "Commonwealth Agencies"
15 to deny "procedural due process" by saying "there is no
16 declaratory judgment and/or other relief available for Keith
17 Dougherty and all those associated with him."
18 Q.   Okay.  Now whose words are those?
19 A.   So that is Judge Conti quoting part of Mr. Dougherty's
20 lawsuit.
21 Q.   To what extent is that typical of that rather unusual use
22 of quotation marks?
23 A.   That appears in, as I recall, quite a lot of Mr.
24 Dougherty's filings.  He would -- there would be a very liberal
25 use of quotation marks.  And he would copy and paste a lot of

132

1  different things into one document.  So as you can see, it sort
2  of made it difficult to read.
3  Q.   Okay.  Could we skip over to page 3, please?  Could we
4  start down toward the bottom of that page?  Would you read
5  that, please, starting with the word Dougherty.  And then we're
6  going to continue onto the next page to the end of that first
7  full partial paragraph there?
8  A.   Okay.
9       Dougherty is also seeking damages against the defendants
10 stating "it will now cost 200 million dollars to settle but you
11 can go back to your corruption undaunted until the end."
12      Then there's a citation to Mr. Dougherty's lawsuit.
13      By way of background, Dougherty is a litigious plaintiff
14 who has filed multiple unsuccessful actions on behalf of
15 himself, Docson Consulting, and other individuals in
16 Pennsylvania state court and multiple United States District
17 Courts.  The Court of Appeals for the Third Circuit has
18 described Plaintiff as a "frequent and frequently vexatious
19 litigator."
20      There's a citation to some of his cases.
21 Q.   What does vexatious mean?
22 A.   I guess the best way to put it would be very confusing and
23 rambling.  As previously noted, Mr. Dougherty sort of would
24 just throw everything against the wall, and there would be, you
25 know, hundreds of pages he would file at a time.  So it was

1  very confusing to figure out what it was sometimes he was

2  saying.

3  Q.   All right.  Continue reading through that paragraph?

4  A.   The Court of Appeals for the Third Circuit also stated

5  with respect to another one of Plaintiff's complaints, as with

6  many of Dougherty's filings, the complaint is largely

7  unintelligible.

8       A citation to one of his prior lawsuits.

9       District courts have characterized Dougherty's

10  communications with those courts as unintelligible and

11  rambling, fraught with snide asides and personal attacks.

12       Another citation to one of his previous lawsuits.

13       For example, the United States District Court for the

14  District of New Jersey observed that it is not easy to decipher

15  Plaintiff's blend of arguments, insults, and diatribe.

16  Dougherty's complaint and filings in this action are no

17  different.

18  Q.   Okay.  Does the word vexatious appear several times in

19  this decision?

20  A.   Yes.

21  Q.   And then finally, I'd like to direct your attention to

22  United States Exhibit 5-E.  And does that appear to be the same

23  as the others at the top there?

24  A.   Yes, it's from the same case.  It's another decision from

25  Judge Conti in this case.

1  Q.   And so these are her words again?

2  A.   Yes, that's correct.

3  Q.   All right.  Could we direct your attention, please, to the

4  first line under the heading Factual History -- the first

5  sentence rather?

6  A.   Dougherty's filings in this matter contain thousands of

7  pages and have, as previously indicated by the Court, averaged

8  approximately three filings per week.

9       Citation to a prior opinion by Judge Conti.

10      His recent barrage of filings -- and then the citation to

11  Mr. Dougherty's 20 plus filings -- continues this course of

12  action.

13  Q.   Then can we skip to the end under the Analysis heading on

14  page 4?  Please read the line that starts with, much of the?

15  A.   I'm sorry, I didn't hear that.

16  Q.   Page 4?

17  A.   Yes.  Much of the filings with respect to these motions is

18  undecipherable, disjointed, rambling, unintelligible, quite

19  simply presented in a near impossible to understand stream of

20  consciousness style.

21  Q.   Okay.  Can we expand that for just a second?  And I think

22  that sentence continues to the next page.  All right.  Thank

23  you.

24      Now I want to ask you some questions about something you

25  mentioned earlier.  This case that we've been talking about

1  with all the decisions from Judge Conti, that wasn't the extent

2  of your personal involvement with this Defendant; correct?

3  A.   Correct.  He also sent me some e-mails.

4  Q.   Personally?

5  A.   Yes.

6  Q.   And did you, in fact, receive one of the e-mails that

7  forms the basis for Count 4 of the indictment?

8  A.   I did, yes.

9          MR. PERRI:  May I approach, Your Honor?

10         THE COURT:  Yes.

11 BY MR. PERRI:

12 Q.   I'd like to show you what's been marked for identification

13 purposes as United States Exhibit 4-A.  Tell me if you

14 recognize that, sir?

15 A.   Yes.  This is an e-mail from Mr. Dougherty to myself and

16 several other individuals from January of last year.

17 Q.   And did you, in fact, personally receive that?

18 A.   Yes.  My e-mail address is listed as one of the recipients

19 there, cenerson@attorneygeneral.gov.

20 Q.   Do you remember having received it?

21 A.   I do, yes.

22 Q.   Does that appear to be a fair, accurate, and correct copy

23 of the e-mail that you received?

24 A.   Yes.

25         MR. PERRI:  Your Honor, we move for the admission of

1  this exhibit, 4-A.

2           MR. DOUGHERTY:  No objection.

3           THE COURT:  It's admitted.

4  BY MR. PERRI:

5  Q.   I want to ask you some questions about this.  Can we put

6  that up, please?  All right.  Could you show us the header

7  information there and just point out who's sending this and

8  who's receiving it?

9  A.   Yes.  So from -- it was sent from Mr. Dougherty.

10 Q.   Could you expand that?

11 A.   And then there were several recipients, including myself.

12 That's my e-mail address right there.  And then he carbon

13 copied it to various other individuals as well.  And at least

14 one of them I know, I believe that was another one of Mr.

15 Dougherty's e-mail addresses.

16      And then I recognize a couple of the other -- the

17 bestautosales1@gmail.com, I believe that was one of the other

18 individuals that he had attempted to bring a lawsuit on behalf

19 of.  And he was ultimately not allowed to do that.  But I do

20 recognize that e-mail address as well.

21 Q.   Okay.  Does he mention a variety of judges in this

22 particular communication?

23 A.   Yes, he does.

24 Q.   And does the communication itself relate to his lawsuits

25 in any way or is there any connection either direct or

1  indirect?

2  A.   Yes.  I believe at some point, he did mention -- he was --

3  I believe he mentioned Judge Conti in the decision.  And as you

4  can see, it's sort of, you know, there's a lot of different

5  fonts and font sizes and range of punctuation and things like

6  that.  But the gist of this, I believe, was basically that, you

7  know, prior rulings that had been made against Mr. Dougherty

8  were invalid for various reasons or another.

9  Q.   Okay.  Could I direct your attention to the top of the

10  second page, please?

11  A.   Yes.

12  Q.   All right.  And I was wondering if you could read that

13  portion there at the top?

14  A.   Sure.  The crux of the matter is Keith Dougherty avers he

15  could shoot Judge Conti in the head and claim necessity under

16  Pennsylvania's Discretionary Deadly Force Doctrine.  Thomas

17  Young was offended by the mere suggestion, and Dr. Berger was

18  completely unfamiliar with the *Addington versus Texas* standard.

19  See Dropbox recording previously provided.  Again, Judge

20  Connolly goes along as if he has never received anything from

21  Keith Dougherty, defining all submissions as gibberish.  Once

22  again, even if Judge Connolly is correct in that all that it

23  takes is a rational basis to ignore all sixth amendment

24  protections, the Supreme Court has said the moment Keith

25  Dougherty asserted Rule 12.3 and the AUSA from West Virginia

138

1  defaulted, the indictment must be quashed, even if Keith

2  Dougherty was just like Mullenix, ignoring all other options,

3  and just shot Judge Conti under his Docson's militia authority.

4  Q.   Mr. Enerson, when you read that language, did you have any

5  concerns?

6  A.   Yes, I did.  Obviously any reference to, you know,

7  shooting a judge is concerning.  And certainly Mr. Dougherty

8  had filed some things that I had interpreted that he was pretty

9  angry with the courts' rulings and things like that.  But

10  certainly threats of violence are more serious.

11  Q.   Okay.  Are you aware of whether or not he used some

12  worrisome language regarding Judge Conti in another of the

13  communications in this particular case?

14  A.   Yes.  Yes, I believe there were other violent

15  communications.

16  Q.   Are you aware of whether or not there was a communication

17  in which the Defendant said to the effect that it may be

18  necessary for him to do this to shut Judge Conti up?

19  A.   Yes.  I believe there was a reference to Ruby Ridge and

20  that he would need, you know, a sniper, I believe, or someone

21  would have to shoot Judge Conti to shut her up.

22  Q.   But you didn't personally receive that particular e-mail?

23  A.   I don't remember if I did.  Again, there were a lot of

24  e-mails and a lot of communications from Mr. Dougherty.

25  Q.   Let me show you for identification purposes United States

1  Exhibit 2-A.

2  A.    Yes, this appears to be an e-mail from Mr. Dougherty.  But

3  I'm not listed as one of the recipients.

4  Q.    Okay.  Thank you.  Through your employment, Mr. Enerson,

5  have you had an opportunity to read quite a few of Mr.

6  Dougherty's filings?

7  A.    Yes.

8  Q.    Have you ever noticed whether or not there are certain

9  themes or claims or arguments that tend to come up again and

10 again and again and again and again and again?

11 A.    Yes, there's the -- since default was a big part of this

12 case, that comes up a lot where he thinks he should have won by

13 default, the Clerk's office didn't enter default against these

14 people that I sued, they are corrupt, corruption of judges and

15 state officials.

16      Federal officials is another common theme, that the

17 government is conspiring against Mr. Dougherty and, you know,

18 trying to thwart him at every way.  The fact that he should be

19 allowed to represent businesses or corporations even though

20 he's not a lawyer, that comes up quite a bit as well.  There

21 were a lot of references to Docson Consulting, which my

22 understanding is that that's a corporation or a business entity

23 formed by Mr. Dougherty and he would attempt to represent that

24 corporation in court.

25      But since he's not a licensed attorney, he was not allowed

1   to do so.  So a lot of his lawsuits had to do about him trying

2   to fight the rules about whether or not he could represent

3   businesses in court.

4   Q.   Okay.  So those are common themes that you see a lot?

5   A.   Yes.

6   Q.   In your review of his writings, do you ever get -- and I'm

7   asking for your impression -- do you ever get a sense of

8   frustration or anger in the way that he is expressing himself?

9   A.   Yes.  I know as the case progressed -- I know at the

10  beginning, it was, you know, as you saw, there were some -- it

11  was very confusing, some of the things that Mr. Dougherty would

12  write.  But overall, there wasn't anything particularly

13  concerning.

14       But as the case went on, certainly things got -- it was

15  near the end then when, for example, I got the e-mail

16  mentioning shooting Judge Conti.  I know there was another

17  filing or e-mail Mr. Dougherty had written where he had made a

18  reference to, well, I need to resort to the common law to win

19  my disputes.  And he included a picture of a medieval knight

20  attacking another medieval knight with an ax.

21  Q.   So let me ask you a question.  This idea of resorting to

22  the common law and the idea of being justified, is that also a

23  theme that you've ever noticed?

24  A.   Yes.  There were definitely -- again, since a lot of Mr.

25  Dougherty's arguments were that, you know, the judicial system

1    or the judges were corrupt or weren't doing the things that

2    they were supposed to, he would make reference to common law,

3    which is basically the laws that existed before we had the

4    modern sort of laws that we have in this country, you know,

5    dating back to the middle ages.

6        There would be references to, you know, militias and

7    other, you know, pre-revolutionary war sort of things and

8    earlier than that.  So definitely this idea that the government

9    was not acting appropriately and, therefore, you know, methods

10   outside of traditional governmental channels would have to be

11   used, that definitely comes up a lot.

12   Q.   Mr. Enerson, to your knowledge, has the Defendant

13   prevailed, won, in any of these cases?

14   A.   No, I don't believe he has.

15             MR. PERRI:  No further questions, Your Honor.

16             THE COURT:  All right.  Thank you.  Keep going.

17   We're going to start cross.  Does anybody need a restroom break

18   or anything like that?  You're all good?  All right.  Mr.

19   Dougherty, cross examination.

20                    **CROSS EXAMINATION**

21   BY MR. DOUGHERTY:

22   Q.   Mr. Enerson, you have spent the time here giving the jury

23   an impression that you were a respondent in the matter of *Keith*

24   *Dougherty versus Jared Dupes*, et al?

25   A.   I was representing Mr. Dupes, who you had sued, but I

1  wasn't named as a party in the case.

2  Q.   Okay.  And could you give the jury some guidance as to

3  what the preliminary filing jurisdiction was?

4  A.   If I understand your question correctly, when you filed

5  your initial lawsuit, part of the -- one of the issues that was

6  raised in court was whether or not you had properly served my

7  client and some of the other --

8  Q.   Mr. Enerson, let me correct my question, the poor quality

9  of it.  In all federal lawsuits, you must fill out a civil

10 cover sheet and identify for the clerk what is the primary

11 action you are moving under, the jurisdiction of the federal

12 court because federal courts are limited jurisdiction.

13      They do not have the kind of plenary powers or police

14 powers that exist in state courts, so you actually have to

15 identify for the clerk what it is you are proceeding under.

16 Can you tell the jury what that statute was?

17           THE COURT:  All right.  So I'm going to allow this,

18 but it's got to be a question.  We can't -- right, so --

19 BY MR. DOUGHERTY:

20 Q.   What is the statute?

21           THE COURT:  What is the statute, all right.

22           THE WITNESS:  I'm not sure if I remember offhand

23 which statute it was.  I believe, Mr. Dougherty, you had raised

24 various constitutional claims which would be brought under,

25 it's called -- it's a Section 1983 claim is usually how they're

1   referred to when you are filing a suit against a state

2   official.

3   BY MR. DOUGHERTY:

4   Q.   Let me help you.  The original filing was 28 U.S.C. 2201.

5   It was a declaratory -- it's actually a declaratory judgment

6   action all by itself, and it was designed to find out a ruling

7   from the Court what the definition of corporation is in the

8   Commonwealth of Pennsylvania?

9   A.   Again, I don't recall exactly if that is the box that you

10  checked on the civil cover sheet, but I believe that would be

11  indicated on the cover sheet to the complaint.  You would check

12  what specific statute or legislation or whatever you were

13  challenging.

14  Q.   So that is an actual essential element of any lawsuit.

15  Otherwise, the clerk won't issue the summons?

16  A.   I believe you do have to fill out the cover sheet or else

17  they won't accept the lawsuit, that's correct.

18  Q.   Again, I'm a little bit clumsy in my question.  You can

19  get the clerk to do it, but I'm saying, if you don't identify

20  federal jurisdiction, there never will be a summons issued?

21          MR. PERRI:  Objection, Your Honor.  We would just

22  object to the extent there needs to be a question so that the

23  witness --

24          THE COURT:  Yeah, and -- though this last one, part

25  of his intonation, in other words, if he had raised his voice,

1  I think this is a question.  It's short.  It's short enough, it

2  doesn't seem to be electric.  So did you --

3          THE WITNESS:  I believe I understand.

4          THE COURT:  Then go ahead.

5          THE WITNESS:  If I understand your question

6  correctly, Mr. Dougherty, yes, you have to indicate the basis

7  for allowing a federal court to even hear the case because

8  there's certain types of cases that the federal government --

9  that the federal courts do not hear at all.  And you have to

10  indicate why you believe the federal courts are the appropriate

11  court to hear a particular case.  So I believe you would have

12  had to put that on the cover sheet.

13  BY MR. DOUGHERTY:

14  Q.   And there was a summons issued?

15  A.   I believe so.  That should be on the docket.

16  Q.   Okay.  And could you then explain to the jury what the

17  procedure is for a District Court to establish tribunal

18  jurisdiction?

19  A.   Well, I'm not sure -- I believe they have to establish

20  subject matter jurisdiction and personal jurisdiction over --

21  I'm not sure what you mean by tribunal jurisdiction.  It's not

22  a term I'm familiar with.

23  Q.   And I'll be able to present this in my case-in-chief.  The

24  Supreme Court of the United States has indicated in *Sebelius*

25  *versus* --

1          THE COURT:  I got to cut you off here now.  You can

2    ask questions.

3          MR. DOUGHERTY:  I'm trying to get the foundation for

4    the question.  And if it specifies that the tribunal

5    jurisdiction can be attacked at any time even by a --

6          THE COURT:  So I need to stop you because he's

7    already said he doesn't know what you mean by tribunal

8    jurisdiction.

9    BY MR. DOUGHERTY:

10   Q.   Okay.  So my point is, are you actually authorized to

11   practice in the Middle District of Pennsylvania?

12   A.   Am I?  Yes, I'm admitted to practice in the Middle

13   District of Pennsylvania.

14   Q.   And under Federal Rule of Civil Procedure 11, you would be

15   required to, in fact, make some effort to do this research

16   before making any response to the Court to assure that the

17   Court can rely on it, it's not frivolous, whether you're a

18   represented or unrepresented party, that is one of the

19   requirements to do so; correct?

20   A.   To be admitted to practice.

21   Q.   No, no, that anything that you file with the Court, you

22   have to have said, I've done sufficient research that this

23   filing that I'm making is not done for abuse or waste of time

24   or increasing litigation expense, I've actually done that

25   research?

146

1  A.   Yes.  You have to file -- you can't file frivolous or
2  false things with the Court.
3  Q.   Okay then.  So when were you served as -- or better
4  question would be, the service was originally made to the
5  Attorney General, I guess, and then it was assigned to you
6  after they received service?
7  A.   So the way it works is there's a statute in Pennsylvania
8  called the Commonwealth Attorney's Act where if a state
9  individual or a state entity gets sued, then that agency or
10 individual will send the case over to our office.  And we can
11 either accept the case, and then we represent the individual or
12 the entity or individuals, or we send it back to the original
13 agency or individual.
14      So I believe in this case, once your lawsuit was sent to
15 Mr. Dupes, then the Department of Revenue would have sent a
16 formal request to my office to represent Mr. Dupes in your
17 lawsuit.  And then my supervisor assigned the case to me.
18 Q.   I'm a little confused because the procedure for this
19 action requires not only that it be served on the agency, but
20 it also has to be served on the Attorney General separately.
21 And it was.  And it was signed for in the docket as of August
22 31st of 2017.  And you're not familiar with that?
23 A.   If I recall correctly, the issue -- as far as Mr. Dupes
24 was concerned, I can't speak to the other defendants, in
25 Pennsylvania, there are certain rules as to how you actually

147

1  serve an individual.  I believe that Mr. Dupes did receive a
2  copy of your lawsuit at some point, and that's what triggered
3  the actions to assign me to the case.
4      If I recall correctly, you e-mailed a copy of it to Mr.
5  Dupes or you mailed it yourself.  And under Pennsylvania law,
6  that's not a proper way to inform a defendant that they've been
7  sued if they work for a state agency.  And I believe that was
8  one of the problems with why the case never proceeded any
9  further after you filed it.
10 Q.  Well, again, the record will reflect that the Attorney
11 General was served by certified mail return receipt, and the
12 Attorney General of Pennsylvania signed for it on August 31st,
13 2017.  I'm just going to assume that you're unaware of that and
14 therefore --
15      MR. PERRI:  Your Honor, I am going to object because
16 the question, to the extent that it assumes facts not in
17 evidence, and I think that what the Defendant is trying to do
18 is relitigate the issues that were ruled upon by Judge Conti in
19 that decision.
20      THE COURT:  All right.
21      MR. PERRI:  The jury will have the opportunity to
22 read the decision if they would like to see the reasoning and
23 the facts.  But I'm not sure that it's relevant to the issues
24 here.
25      THE COURT:  All right.  So Mr. Dougherty, you do need

 1  to keep yourself to questioning.  If you want to present
 2  evidence, and you want the record to reflect certain things,
 3  you can do that.  But you need to ask this witness questions
 4  and not testify.  Okay?
 5          MR. DOUGHERTY:  Okay.  And there's --
 6          THE COURT:  So when you say, for instance, that
 7  something occurred, and you stated, and you keep going and
 8  adding facts, that's no longer a question.  That crosses the
 9  line.  All right?
10  BY MR. DOUGHERTY:
11  Q.   So let me just try and ask it this way.  Could you give
12  the jury, because the docket is now in evidence, okay, what
13  your response, the document number that you responded in that
14  case?
15  A.   I -- I'd have to look at the docket.
16  Q.   Could you take the time to do so?
17  A.   Sure.  I believe it can be brought up on the screen.
18          THE COURT:  Why don't we just hand it?  Can somebody
19  from your table please hand the document in question to the
20  witness?
21          MR. DOUGHERTY:  A certified copy of the docket.
22          THE COURT:  Then you want him to look for what?
23          MR. DOUGHERTY:  His response.
24          THE COURT:  To what though?
25          MR. DOUGHERTY:  To the complaint.

149

1            THE COURT:  To the complaint, all right.

2            THE WITNESS:  Okay.  Let's see.

3            MR. DOUGHERTY:  Characterized as complaint, it was

4    the declaratory judgment action.

5            THE COURT:  All right.

6            THE WITNESS:  Okay.  So I see on here docket entry 17

7    is when it indicates notice of appearance by Caleb Curtis

8    Enerson on behalf of Jared Dupes.  That indicates that I

9    informed the Court that I was representing Mr. Dupes.  (Pause.)

10   Okay.  It looks like the next entry regarding service and Mr.

11   Dupes was actually something --

12   BY MR. DOUGHERTY:

13   Q.   Excuse me.  I asked you the question, when did you file a

14   document in the case?

15   A.   I don't know if I did other than informing the Court that

16   I represented Mr. Dupes because I believe, from my reading of

17   docket entry 55, it looks like Judge Conti realized that Mr.

18   Dupes had never been served with the lawsuit properly.  So

19   there was an order asking why Mr. Dupes should not be dismissed

20   from the case.  And then you were ordered to respond to that by

21   February 9th, 2018.  And that was entered on the docket on

22   January 19th of 2018.

23        So I don't believe I filed a response to that.  I believe

24   Judge Conti noted that potential issue and then ordered you to

25   respond to the issue of whether or not Mr. Dupes had been

1  served.

2  Q.   So it's also in that document -- or in the opinions

3  referred to by Mr. Perri that the case was transferred to Judge

4  Conti on November 1st of 2017?

5  A.   Yes, that's correct.

6  Q.   Okay.  And when did Keith Dougherty seek default in the

7  case?

8  A.   (Pause.)

9  Q.   You'll find it's September 23rd, 2017?

10  A.   Looks like on September 23rd, 2017, docket entry 13, it

11  says, motion for entry of default, Pennsylvania Unified

12  Judiciary and Jared Dupes by Keith Dougherty.  So I believe --

13  and I believe there were other attempts to seek default, but

14  that appears to be the first.

15  Q.   I would like to focus on the date though.  The default was

16  sought on September 23rd, 2017.  And when was the case assigned

17  to Judge Conti?

18  A.   It looks like the case was assigned to Judge Conti on

19  November 1st, 2017.

20  Q.   So what is the procedure, if you could tell the jury, as

21  to when a plaintiff moves for default against a litigant who

22  has failed to plead and respond and that matter is referred to

23  by affidavit or otherwise in the process?

24  A.   Well, I believe -- so an individual, the Plaintiff, will

25  file seeking default.  And then ultimately, it's the Clerk's

1  office, I believe, who actually enters the default who

2  determines that default should be entered against the opposing

3  party.  And then they'll enter the default.

4  Q.   What is the actual wording in the Rule 55?

5  A.   I'm not sure I understand your question.

6  Q.   The procedure, obviously, is someone has to be served,

7  okay.  So you would actually at that point then either request

8  default or you would file a motion for default.  And you do it

9  under a particular rule, the rule is 55.  What does Rule 55 say

10 and require the Court?  What must the clerk do in response to

11 that rule?

12 A.   I'm not sure to be perfectly honest what Rule 55 says

13 specifically without seeing it.

14 Q.   Okay.  So again, I was unable to have the slides prepared

15 that I was looking for, but it will be simply that the clerk

16 must enter the parties' default.  Now what happens after the

17 parties' default is entered?

18 A.   I believe if a default is appropriately entered, then I

19 believe the only issue is when the Court will decide what

20 damages would be appropriate in that case.

21 Q.   But you're not sure of that?

22 A.   I'm not sure because I don't know if I've ever had a case

23 that had a default judgment entered in it.  It's

24 extraordinarily rare.

25 Q.   But the point is, default judgment is way down the road

1  yet.  I'm talking about what happens when the clerk enters

2  default.  Are you aware of what happens when the clerk enters

3  default?

4  A.   I mean, it would be entered onto the docket, I believe.

5  Q.   Yes.  And it's simply a docket entry.  And then they mail

6  out a notice to the Defendant that you have a certain amount of

7  time to respond.  Okay?

8  A.   That sounds right, but, again, I'm not that familiar with

9  default because, again, it really almost never happens.

10  Q.   Okay.  So at that point, whoever is the recipient of the

11  default notice has 28 days to file a response.  And at that

12  point, as long as they have any defense whatsoever, the Court

13  is obligated to open the default and proceed accordingly.  So

14  when you're in the process of doing this, we're talking about

15  you're not really sure about the clerk's procedure, you haven't

16  actually entered anything in the case, but yet you're expanding

17  on all of these filings as they were frivolous, vexatious,

18  whatever.  What are you basing your understanding of that on?

19  A.   So if I understand your question correctly, the reason

20  that no -- that a more substantive response by me was never

21  filed against Mr. -- on behalf of Mr. Dupes is because you did

22  not properly serve Mr. Dupes with notice of a lawsuit.  I'm not

23  saying he didn't receive a copy of it in some way, but the

24  precise rules as to how Mr. Dupes was to be served didn't

25  happen.  And as a result of that, the case never -- it's as if

153

1  the case never really got out of the starting gate.

2  Q.   So would you be surprised to find out that that is not an

3  acceptable way to defend?

4  A.   I don't -- if I understand your question correctly, I

5  don't agree with that.

6  Q.   Again, because I was not aware that we would be moving to

7  this point, I thought we had other things, I haven't prepared

8  the slide.  But in fact, the proper procedure --

9           THE COURT:  Do you want to show the rule?

10          MR. DOUGHERTY:  If I could, yeah.

11          THE COURT:  Okay.

12          MR. DOUGHERTY:  I need Rule 55, and I need Rule

13  12(h).

14          THE COURT:  So, Mr. Dougherty, there is an elmo.  So

15  you can show, as if it's a slide, Rule 55.  All right?

16          (Pause.)

17          THE COURT:  So you wanted to put Rule 55 on a slide?

18          MR. DOUGHERTY:  Yeah.

19          THE COURT:  So we will have the exact same thing on

20  the elmo.

21          (Pause.)

22          THE COURT:  Okay.  All right.  So you can put forth

23  Rule 55 underneath that, and it will be a slide.

24          MR. DOUGHERTY:  I don't have a copy of Rule 55.

25          THE COURT:  I thought you said you were given it.

154

1          MR. DOUGHERTY:  No, he gave me a copy of the docket

2   so I could refer to it.

3          THE COURT:  Give us a second.

4          (Pause.)

5          THE COURT:  Do you want to take a quick break while

6   we're doing that?  Sound good?  Why don't you all use the

7   restroom and we'll try to get you back in here.  We'll chat.

8   We'll try to make it quick.  Thank you very much.

9          (Jury left for a recess at 3:02 p.m.)

10          THE COURT:  So look, there hasn't been an objection,

11   but I'm only going to let this go so far, right.  So, Mr.

12   Dougherty -- when you're ready?

13          MR. DOUGHERTY:  Um-hum.

14          THE COURT:  All right.  So this is largely

15   irrelevant.  I'm letting you go because, to the extent I'm

16   going to give you some freedom, if you will, okay, but

17   ultimately it doesn't matter.  It doesn't matter whether you're

18   right or whether you're wrong or whether Judge Conti was right

19   or she was wrong on the interpretation of Rule 55.  That is

20   irrelevant.  All right?

21          Now it's relevant that the idea of a motion for a

22   default is relevant because it gives context.  It explains

23   things.

24          MR. DOUGHERTY:  That's what I'm trying to do.

25          THE COURT:  But it is one thing to give context, it

1    is another thing to say it justifies.  Right?  So even if

2    you're right, that doesn't mean you can send a threatening

3    communication.  Now what's relevant is whether the

4    communication is threatening in the context of some of your

5    filings because they have a lot of words, right.

6          So I'm letting this go, but I just want you to be

7    aware, we're not going to spend an hour on what your

8    interpretation of Rule 55 is.

9          MR. DOUGHERTY:  I'm about to move on to what I really

10   want to get to.  I'm just addressing that there's been a lot of

11   rhetoric that it's vexatious --

12         THE COURT:  I agree, because, in other words, you get

13   to say, hey, listen, vexatious, is that what it really means,

14   because, in fact, I have an argument and here's what it really

15   means.  That's why I'm letting you bring it in to show what

16   your interpretation of Rule 55 is, it might be justified by the

17   rules.  I'm letting you bring that in, okay?

18         I just want to caution you, like it's already 3:00,

19   we're not going to be here until 4:00 talking about whether

20   you're right or wrong about Rule 55.

21         MR. DOUGHERTY:  I don't expect much more time on this

22   other than to show it.  If I'm going to develop it further,

23   I'll do it myself from the stand.

24         THE COURT:  All right, that's fine.  You can show

25   them Rule 12(h).  What else of the slides that you didn't have?

156

1  You basically now -- this is in effect a slide --

2          MR. DOUGHERTY:  Yes.

3          THE COURT:  -- of Rule 55.

4          MR. DOUGHERTY:  And what I got is pieces of something

5  else that I can fold over and make into a slide and get to that

6  issue.

7          THE COURT:  Okay, that's fine.  You need to show that

8  to the Government before you do that.

9          (Complied.)

10         THE COURT:  While he's doing that, Mr. Young, did you

11 have something?

12         MR. YOUNG:  Just two things, Judge.  One, I wanted to

13 clarify that I handed up standby counsel's exhibit trial folder

14 to Mr. Dougherty.  I think it will help him be organized in the

15 overall proceeding.  Two, I'm only standby counsel, and I

16 understand what the Court said, I think you've taken care of my

17 concern, I think that Mr. Dougherty has some right in fair

18 response to show the jury that he wasn't acting in a simply

19 vexatious --

20         THE COURT:  I agree, yeah.

21         MR. YOUNG:  -- or, you know, frivolous manner.  The

22 ultimate issue ultimately shouldn't be determined, that's what

23 we're here for.  I think he should be allowed some leeway to

24 establish he thought he was doing certain things that did

25 comport with the law and were appropriate to do.

157

1          THE COURT:  And I agree with that.  I think my ruling

2   is consistent with that.

3          MR. YOUNG:  I agree.

4          THE COURT:  All right.  So I will allow that.  Can

5   you go forward?  Does anybody need a restroom?

6          MR. DOUGHERTY:  I don't need a restroom.

7          THE COURT:  How late are we going to go to?  Can you

8   go until 5:00?

9          MR. DOUGHERTY:  I will probably need it between now

10  and 5.

11          THE COURT:  I think maybe if you go quickly now, it

12  would be most efficient, if that makes sense for you?  The

13  reason why, Mr. Dougherty, the way the courtroom, the

14  courthouse is configured, we can't have you go in the hallway

15  and be seen being escorted by Marshals.  That would be unfairly

16  prejudicial to you.  So we have to try to time it.

17          So if it's acceptable to you, and I think it is,

18  let's take a quick break and just tell the jury we need a few

19  minutes.

20          COURTROOM DEPUTY:  Sounds good.

21          MR. YOUNG:  When Mr. Dougherty comes back, can we

22  have a two-minute discussion about something Mr. Dougherty was

23  concerned about?  Maybe a presentation he would need some help

24  with?  I just want to talk about that.

25          THE COURT:  We'll do that before we let them go.  I

1    mean, in other words, I think we can let them go at 5.  I guess

2    the Marshals, what time do you have to have him out?

3              DEPUTY MARSHAL:  Whenever, Your Honor.

4              THE COURT:  That's why people love the Marshals.  And

5    I mean that.

6              MR. PERRI:  Judge, during the lunch break, one of the

7    Marshals was on the elevator with Mr. Dougherty and one of the

8    jurors was also using the same elevator.  I just wanted to let

9    you know.

10             THE COURT:  At the same time?

11             MR. PERRI:  I believe.

12             COURTROOM DEPUTY:  With Mr. Dougherty?

13             MR. PERRI:  I think that's what he told me.  I don't

14   think that gentleman is here right now.  But --

15             (Deputy Marshal is conferring with Mr. Perri.)

16             THE COURT:  So I'm going to state for the record what

17   I just overheard the Deputy Marshal say, that, in fact, the

18   juror was not on the same elevator, and, in fact, I think it is

19   most important, Mr. Dougherty was not in handcuffs, and he's

20   wearing street clothes.

21             So -- and Mr. Dougherty, did you have any concerns

22   about this episode?

23             MR. DOUGHERTY:  No.

24             THE COURT:  Okay.

25             MR. DOUGHERTY:  In fact, I don't think I'm hiding the

1   fact that I'm incarcerated.  I mean, it's just --

2          THE COURT:  Well, you may not be, but we're certainly

3   not putting it in front of the jury.  And it's not relevant.

4   And a lot of defendants would think it would be prejudicial.

5   And so -- I mean, I can't stop you from saying, by the way, I'm

6   incarcerated.  That's true, you could open the door.

7          You may want to talk to Mr. Young.  Again, I know

8   he's standby.  That's the problem, right.  But he's there to

9   offer some legal advice.  And there's an expression that

10  lawyers use about opening the door.

11         MR. DOUGHERTY:  Um-hum.

12         THE COURT:  And you might want to be very careful

13  about opening the door by saying something to the effect that,

14  I'm detained.  That could lead to all sorts of things that may

15  not be helpful to you.  But, all right, let's take a bathroom

16  break.

17         (Recess was taken at 3:09 p.m. and proceeding

18          reconvened at 3:22 p.m.; without the jury.)

19         THE COURT:  Okay, ready?  Bring the jury in.  Do you

20  have Rule 12 as well, Mr. Dougherty?

21         MR. DOUGHERTY:  It's in the book.

22         THE COURT:  Right.  Did this thing get sorted out?

23  The other things Mr. Dougherty wants to put on the screen, you

24  saw?

25         MR. PERRI:  He showed us a couple of things, Judge.

1  One of them appears to recite some Pennsylvania state law.

2  Obviously, I'm going to be watching to make sure that he does

3  not make Pennsylvania state law part of this proceeding because

4  it has no relevance in the federal system.

5             THE COURT:  Okay.

6             (Jury was brought in at 3:23 p.m.)

7             THE COURT:  Mr. Dougherty.

8                   **CROSS EXAMINATION (CONTINUED)**

9  BY MR. DOUGHERTY:

10 Q.   So, Mr. Enerson, I have up on the screen the actual copy

11 of the rule just for clarifying what we've been talking about

12 and whether it's vexatious, frivolous, or whatever the case may

13 be.  Can you read Rule 55, paragraph A, for the jury, please?

14 A.   Sure.  Entering a default.  When a party against whom a

15 judgment for affirmative relief is sought has failed to plead

16 or otherwise defend, and that failure is shown by affidavit or

17 otherwise, the clerk must enter the party's default.

18 Q.   That seems like a pretty simple specific sentence,

19 correct?

20 A.   Yes and no.

21 Q.   Must enter the party's default is not equivocal in any

22 way.  Correct?

23 A.   Yes, but it also indicates that the failure has to be

24 shown by affidavit or otherwise.

25 Q.   What does or otherwise mean to you?

161

1   A.   I would interpret that to mean by another sufficient means
2   to show that --
3   Q.   But I'm saying in plain ordinary English, because the jury
4   didn't go to law school, what does or otherwise mean?
5   A.   By another manner.
6   Q.   Any manner at all?
7   A.   I suppose.  I'm not sure exactly.
8   Q.   Well, that's the plain and ordinary meaning of it.  Now
9   could you then go to paragraph B, number 1, and read that for
10  the jury, please?
11  A.   By the clerk.  If the Plaintiff's claim is for a sum
12  certain or a sum that can be made certain by computation, the
13  clerk, on the Plaintiff's request, with an affidavit showing
14  the amount due, must enter judgment for that amount and costs
15  against a Defendant who has been defaulted for not appearing
16  and who is neither a minor nor an incompetent person.
17  Q.   By your own testimony, you said you never did file a
18  response on behalf of Jared Dupes or the Pennsylvania Corporate
19  Net Income Tax Department, did you?
20  A.   I did not, no.
21  Q.   Okay.  So now what we need to do is go to Rule 12 because
22  that explains the timeframe and the consequences of not having
23  made a response, what that amounts to.  And specifically -- I'm
24  unfamiliar with this format, but I'm looking for 12(h).
25               THE COURT:  Do you want to hand it up?  I can do it

1  because I'm familiar with this rule.  There is different books,

2  just so you all understand, many different types of books that

3  publish the same rules.  This one is made for courts.

4  BY MR. DOUGHERTY:

5  Q.   Okay.  So being familiar with the rule -- okay, there it

6  is, 12(h).  I'm not very good at this thing here, but I'll try

7  to make sense of it.  Waiving and preserving certain defenses.

8  It's kind of difficult.  Let me see if I can get this better

9  situated.  (Pause.)  Could you read 12(h)(1)?

10  A.   When some are waived.  A party waives any defense listed

11  in Rule 12(b)(2) to (5) by -- and then do you want me to

12  continue?

13  Q.   Yes.

14  A.   -- by, A, omitting it from a motion in the circumstances

15  described in Rule 12(g)(2); or, B, failing to either, one, make

16  it by motion under this rule, or, two, include it in a

17  responsive pleading or in an amendment allowed by Rule 15(a)(1)

18  as a matter of course.

19  Q.   And by your own admission, you never filed anything?

20  A.   I did not file a response to the pleading, no.

21  Q.   So could you read (2), (3), (4), and (5), that you had

22  waived on behalf of your client?  Over on the left-hand side?

23  A.   If you are referring to 12(b)?

24  Q.   Yes.

25  A.   Defenses?

1  Q.   Yes, 12(b)(2), (3), (4), and (5).  That's what it says,

2  you waived them by failing to either put them in a motion or

3  filing a responsive pleading.  So what did you waive on (2),

4  (3), (4), and (5)?

5          MR. PERRI:  Objection, Your Honor, as to the form of

6  the question.  It assumes that he waived something, and I think

7  the witness would dispute that.

8          THE COURT:  You want to reword the question -- what

9  you really want -- you want him to say what does (2), (3), (4),

10 and (5) say, right?

11 BY MR. DOUGHERTY:

12 Q.   Could you read 12(b)(2) through 12(b)(5) for the jury?

13 A.   Sure.  12(b)(2) is lack of personal jurisdiction.

14 12(b)(3) is improper venue.  12(b)(4) is insufficient process.

15 And 12(b)(5) is insufficient service of process.

16 Q.   So would it be fair to say if, in fact, you applying the

17 Rules of Federal Civil Procedure, when someone serves you with

18 a copy, and you fail to respond, the clerk is properly

19 authorized to enter default, and if, in fact, you don't respond

20 to that, it's properly allowed to enter default judgment so

21 long as the amount you're seeking is a specific sum or can be

22 made certain by a sum?

23 A.   If service is done properly, I agree with that.

24 Q.   Again, that presumes facts that aren't actually in the

25 rule.  These rules are, in fact, clear and easy to understand

164

1  for even jurors who hadn't attended law school.  You do

2  something in a timely fashion, and these things happen.

3       Now what would be the response if, in fact, you received a

4  notice from the clerk that you've been put in default?  What

5  are you required to do at that point?

6  A.   If you receive a notice of default from the clerk?

7  Q.   Just default?

8  A.   You can either not respond, in which case it would

9  ultimately become a default judgment, or you could file a

10 motion to open the default.

11 Q.   But specifically, which motion are you required to file?

12 A.   I believe it would be a motion to open default.

13 Q.   Would you be surprised that it's 55(c)?

14 A.   I'm not entirely sure.  Like I said, I really don't --

15 Q.   That's what I'm saying.  You were making a lot of comments

16 earlier about me doing this in an incoherent, frivolous,

17 vexatious way, and you have no idea that you walked your

18 client, the Corporate Net Income Tax and Franchise Department

19 of Pennsylvania, into default and default judgment when the

20 issue that was presented, which was, what is the definition of

21 corporation in the Commonwealth of Pennsylvania?

22       MR. PERRI:  Objection, Your Honor.  That issue has

23 been decided by the Court.  And now we are attempting to

24 relitigate it through this witness who is simply representing

25 one of the many parties.  The decision is final.

1            MR. DOUGHERTY:  Your Honor, the arguments being

2   presented is under Rule 12(b)(4) -- 16(b)(4).  The order was

3   without tribunal jurisdiction and, therefore, is void.

4            THE COURT:  All right.

5            MR. DOUGHERTY:  But the question here is about me

6   doing things in a vexatious way without any material backing,

7   nothing supporting it --

8            THE COURT:  Let me stop you there.  So I've permitted

9   some of this testimony, and I'm going to let this question go,

10  because there was testimony that was elicited about Mr.

11  Dougherty being vexatious, okay.  But whether or not Judge

12  Conti was right or wrong in any decision she made has no

13  relevance, all right.

14           So, in other words, neither the Government nor Mr.

15  Dougherty are being allowed to relitigate what was before Judge

16  Conti.  There's a little bit of overlap because in the

17  testimony, there came some statements that said about Mr.

18  Dougherty being vexatious.  So I'm allowing some questioning on

19  it for that limited purpose.  That's the only reason you're

20  allowed to consider this evidence.  Okay?  So I'm going to

21  overrule the objection, allow this question, and let's keep in

22  mind the time.  Okay?

23           MR. DOUGHERTY:  Yes.

24  BY MR. DOUGHERTY:

25  Q.   So now we've pretty much -- there's at least a rational

166

1  basis for disagreement.  So you would properly say that all of
2  these cases, like I had said in my opening, are related to one
3  issue, whether or not Keith Dougherty is allowed to represent
4  himself, his companies, or clients that are categorized as
5  friends.
6      In fact, whether they -- we're not going to relitigate the
7  fact that they actually had signed a supplemental wet signature
8  along with the ECF, that's not relevant because of other
9  issues.
10     But I would like you to read into the record for the jury
11 what's on the screen right now?
12 A.   Article VI of the Pennsylvania Frame of Government (1682).
13 That in all courts, all persons of all persuasions may freely
14 appear in their own way and according to their own manner, and
15 there personally plead their own cause themselves or if unable
16 by their friends.  *Faretta v. California*, 422 United States 806
17 (1975) Footnote 37.  Then it says, Schedule No. 1, adopted with
18 the Pennsylvania Constitution, February 10, 1777.
19          MR. PERRI:  Your Honor, I have to object to the
20 Defendant's line of cases.  I'm not sure if that's an actual
21 quote from the case or not.  And I'm not sure what the
22 connection is to this Frame of Government.
23          THE COURT:  Right.  So I'm going to sustain the
24 objection now because we've gone for the limited purpose into
25 explaining or delving into whether or not, and to what extent,

1  Mr. Dougherty is vexatious or not.  That's the limited purpose
2  I let those materials and those questions go.  And that's the
3  only purpose for which you should consider it.  And so we need
4  to move on.  All right?
5          MR. DOUGHERTY:  Okay.  One last question relative to
6  his comment about me quoting the common law and it being
7  ancient and not applicable.  This is the current version of the
8  common law in Pennsylvania.
9          MR. PERRI:  Again, Your Honor, it doesn't matter what
10  the common law --
11          MR. DOUGHERTY:  Again, it was in response to the
12  witness saying that I am making frivolous references to ancient
13  law that, in fact, is still valid in the -- this is printed off
14  the current version of the Pennsylvania Constitution as it
15  exists today.
16          THE COURT:  Okay.  So the problem here is that we're
17  now getting into legal issues, and it's the judge who decides
18  what the law is.  It's not the litigants.  It's not witnesses.
19  It's not parties.  So the problem is, you're showing one, I
20  don't know, perhaps a statute, I don't know if it's an accurate
21  statute or not, you're putting in front.  And, you know, look
22  how big that book is in front of you.  The -- there's lots of
23  laws on the books.  There's lots of cases.
24          And I'm going to sustain this objection because --
25  and I'm going to sustain it under Rule 403, which is a Federal

168

1  Rule of Evidence.  And that rule requires that I sustain --
2  that I evaluate how probative, how proof-worthy a piece of
3  evidence is, and balance that against the unfair prejudice and
4  whether it confuses the jury and whether it's duplicative.  I
5  think we've established -- I think you made your point that you
6  are aware of the law.
7          MR. DOUGHERTY:  Just for the limited purposes of the
8  common law rule, you understand what I'm saying?
9          THE COURT:  Yes.
10 BY MR. DOUGHERTY:
11 Q.  Now back to the letter that you were -- the e-mail that
12 you were testifying about.  At page 2, Government's Exhibit
13 U.S. 00001415?
14         THE COURT:  Do you want this put up?
15         MR. DOUGHERTY:  Well, I guess I could.
16         THE COURT:  Could we have it put up?  Thank you very
17 much.  And I thank the Government for being cooperative.  Oh,
18 you have a copy, okay.  You don't have to put it up.  Mr.
19 Dougherty -- thank you.
20 BY MR. DOUGHERTY:
21 Q.  So it says, Once again, even if Judge Connolly is correct
22 in that all that it takes is a rational basis to ignore the
23 sixth amendment protections, the Supreme Court has said the
24 moment Keith Dougherty asserted Rule 12.3 and the AUSA from
25 West Virginia defaulted, the indictment must be quashed.  The

1   reference to Rule 12.3, are you aware what that is?

2   A.   I'm not sure what rule you are referring to there, no.

3   There's multiple Rule 12's.

4   Q.   Again, it is the Federal Rule of Criminal Procedure 12.3.

5   And, in fact, it addresses what is called an official authority

6   defense?

7   A.   Okay.

8   Q.   But you were commenting as though you were an expert on

9   the subject.  I thought maybe you were familiar with that?

10  A.   I don't practice federal criminal law, so I was not aware

11  that that's what you were referring to when you indicated Rule

12  12.3.  But again, the case I handled with you, Mr. Dougherty,

13  was a civil case.  It wasn't a criminal case.

14  Q.   Exactly.  And it was actually a declaratory judgment

15  action that later in the docket, as you can see at the

16  Government's document here, let's see where it is, default --

17  let's see -- it was -- yes, on the very same date, 9/23, it's

18  ECF 9, joinder of complaint at 15-CV-1845.  So that was simply

19  an amendment to add in the enforceability of the definition of

20  corporation to that case.  So that was the case you were on.

21  And, again, under this particular presentation, the Defendant

22  was actually served on August 31st, 2017.  You entered your

23  appearance for the first time on October 2nd, was it?

24  A.   I entered my appearance on October 2nd, 2017, on behalf of

25  Mr. Dupes.

1  Q.   Right.  So that was sometime after default had already

2  been sought against your client.  Now there was also some

3  questions about e-mails between you and I.  And I had indicated

4  after seeing your entry of appearance, do you remember

5  receiving an e-mail from me that we were required by Rule 16 to

6  cooperate and coordinate for a status conference with Judge

7  Conti?

8  A.   I believe you're referring to the Meet and Confer Statute.

9  And by local rule, that's not required to occur in a pro se

10 case where you're representing yourself, as you were.  So we

11 never had a Rule 16 -- we never had to have a Rule 16

12 conference.

13 Q.   So then you bring up a good point.  You just made

14 reference to a local rule?

15 A.   Yes.

16 Q.   Okay.  So could you explain for the jury the order of

17 operations in federal procedure as far as the correct power,

18 what can be amended, how it can be amended, what rules can be

19 done locally?  Could you give a general assessment of that?

20           MR. PERRI:  Objection, Your Honor.  I would ask that

21 --

22           THE COURT:  Yeah, I'm going to -- I think it's beyond

23 the scope.

24           MR. DOUGHERTY:  Okay.  But you just made a comment

25 that --

1         THE COURT:  Just because he mentioned in response to

2    a question you asked him about failing to meet and confer, he

3    mentioned the local rule, I don't think that opens the door to

4    now we get into the legitimacy and scope of a local rule.  So

5    I'm going to sustain the objection.

6    BY MR. DOUGHERTY:

7    Q.   Okay.  So then there was also, and I'm trying to find it,

8    locate it, you indicated about some additional threat or

9    whatever it was that you were trying to characterize.  Let me

10   take a moment here to try to find what you were making

11   reference to.  (Pause.)  Okay, yes, here it is.  Thank you.

12        The statement that you had made earlier reading this

13   particular, it says, The crux of the matter is Keith Dougherty

14   avers, which -- could you explain to the jury what avers means?

15   A.   In this context, it's Keith Dougherty claims or, you know,

16   claims, I guess, would be another way of putting it.

17   Q.   If you shoot Judge Conti in the head and claim necessity

18   under PA's Discretionary Deadly Force Doctrine.  Are you

19   familiar with that statute?

20   A.   I don't know of any Discretionary Deadly Force Doctrine in

21   Pennsylvania, no.

22   Q.   And again, if it were to be characterized by me as a

23   Discretionary Deadly Force Doctrine, but its title was actually

24   self defense, are you aware of the Pennsylvania statute on self

25   defense?

172

1          MR. PERRI:  Objection, Your Honor.  We covered this.

2          THE COURT:  Okay, all right, that's sustained.

3          MR. DOUGHERTY:  Pardon me?

4          THE COURT:  That's sustained.  We talked about that

5    at a pretrial conference.  You'll recall I made a ruling.

6          MR. DOUGHERTY:  Okay.  But we're reading it here, and

7    I thought I had to be given a fair opportunity to explain what

8    this is.  It's offered as evidence that I've done something

9    wrong.  In fact, you've entered it into evidence.  I did not

10   object.  Rule 12.3 and Discretionary Deadly Force Doctrine is

11   what Count 4 is based on.  I have to be given an opportunity to

12   respond.

13         THE COURT:  I'm going to sustain the objection.

14         MR. DOUGHERTY:  Okay.

15   BY MR. DOUGHERTY:

16   Q.   So with that, as I scroll down here further, this is a --

17   actually an excerpt out of a judicial misconduct and disability

18   action complaint and then Chief McKee's response.  Let's see

19   here.  Okay.  Yes, in the smaller print up above, could you

20   just read, Complainant is a small business owner, and from

21   there down to the larger font?

22   A.   Complainant is a small business owner.  He is also a

23   frequent and prolific pro se litigant who has been involved in

24   civil cases before subject judges 1 through 4 and in appeals

25   before subject judges 5 through 7 over the course of the past

1  several years.  Complainant's proceedings are too lengthy and
2  complex to discuss in detail, but several can be described in
3  brief to provide context for the instant judicial misconduct
4  complaints.
5      In one proceeding, in July 2011, complainant filed a
6  notice of removal in a state court proceeding in which he and
7  his company were named as defendants.  The matter was assigned
8  to subject judge 3 and was referred to subject judge 1.  In
9  September 2011, subject judge 3 adopted the recommendation made
10 by subject judge 1 and remanded the matter to state court based
11 upon a defect in the removal process, namely, that complainant,
12 a non-attorney, could not file a removal notice on behalf of
13 his company.
14 Q.  Okay.  So once again, this theme repeats itself.  All of
15 these disputes are around the concept that Keith Dougherty is
16 not allowed to represent himself or his companies when, in
17 fact, the excerpt that you read in earlier from the Frame of
18 Government indicates that Keith Dougherty has been allowed to
19 do that since 1682 and that has carried through to the
20 Pennsylvania Constitution and exists today.
21     So therefore, we may have a circumstance if, in fact, we
22 were having disputes going back and forth that have never been
23 resolved because we've never had a valid tribunal as we have
24 here?
25 A.  If I understand your question correctly, you're saying

174

1   that all of your cases have centered around whether or not you

2   can represent your businesses or yourself, and you're basing

3   that on that excerpt that we saw earlier.  I don't agree with

4   you on that.  I don't believe that that gives you the basis to

5   represent entities in court.

6   Q.   And that is a fair point.  But there is a complete

7   difference between being vexatious and scatterbrained,

8   whatever, when, in fact, we always keep returning to this one

9   subject.  And, in fact, that is what the crux of these disputes

10  are.  You said it yourself numerous times before I even brought

11  this up.

12  A.   Well, I think that the reason that you were described as

13  vexatious is because you have attempted to bring this issue

14  before the courts numerous times, and they have rejected your

15  arguments on that.  But you keep bringing it up in various

16  cases.

17  Q.   Which brings up a wonderful point and opportunity.  Are

18  you aware that in the 11-2631 case, on August 5th, 2011, the

19  Third Circuit granted Keith Dougherty's motion to, in fact,

20  brief this issue and strike down *Simbraw versus U.S.* and its

21  progeny once and for all?  Were you aware that I prevailed in

22  that motion?

23          MR. PERRI:  Objection.  Assumes facts not in

24  evidence.

25          THE COURT:  Well, we're asking whether he was aware.

1  He can ask whether he's aware or not.

2          THE WITNESS:  I'm not aware of what happened here in

3  a 2011 Third Circuit motion.

4  BY MR. DOUGHERTY:

5  Q.   In response to the prosecutor, you had indicated that

6  Keith Dougherty had never prevailed?

7          THE COURT:  Okay.  Well, so you asked him was he

8  aware.  He answered he was not aware.  Now you got to move on.

9          MR. DOUGHERTY:  Okay.

10  BY MR. DOUGHERTY:

11  Q.   So then with that, I think we've clearly established that

12  we have --

13          THE COURT:  You got to be careful.  You can only ask

14  questions.  So we've clearly established something, it sounds

15  like you're about to testify, which you can't do in this

16  position.  You're only acting as a lawyer at this point.

17          MR. DOUGHERTY:  Okay.

18          THE COURT:  So go ahead, but just be careful.  It

19  sounds like, to me, like you're going off not into a question.

20          MR. DOUGHERTY:  I didn't mean to.

21          THE COURT:  Okay.  Go ahead.

22  BY MR. DOUGHERTY:

23  Q.   So again, the concept here then is that I feel we are

24  fairly in agreement that the crux of these matters is that

25  Keith Dougherty had attempted to appear pro se.  In fact, in

176

1  the matter for -- against the Pennsylvania Corporate Net Income

2  and Franchise Tax Department seeking declaratory judgment on

3  the definition of corporation under Pennsylvania law, are you

4  aware of what that definition is?

5  A.   Am I aware of what the definition of a corporation is?

6  Q.   Yes, under the Pennsylvania Corporate Net Income Tax and

7  Franchise Department?

8  A.   No, I'd have to look at the particular statute.

9  Q.   Okay.  Since I don't have access to that statute, I would

10 only be able to explain it, so I'll probably have to do that

11 from the stand myself.  So the clear example is though, we are

12 aware that the case, and I don't think we made this clear, that

13 the case that you were representing in, that case has an

14 unresolved motion for reconsideration where Judge Conti has

15 actually recused herself after stepping down as chief and

16 taking senior status.  Are you aware of that?

17 A.   Let me look at the docket.  I didn't think there were any

18 pending --

19          THE COURT:  He just asked if you were aware of.  If

20 you're not aware of it, just answer you're not aware of it.

21          THE WITNESS:  No, I'm not aware there were any

22 pending motions.

23          MR. DOUGHERTY:  It's fair enough we leave it at that,

24 okay.

25          THE COURT:  All right.  Thank you.  Any redirect?

1          MR. PERRI:  No, thank you, Your Honor.

2          THE COURT:  All right.  You may be excused.  Thank

3   you very much.  Next witness.

4          MR. PERRI:  The United States calls Deputy Marshal

5   Eric Hanna.

6          THE COURT:  Mr. Perri, could you do me a favor?  When

7   you are speaking, can you remove your mask?  It's very hard for

8   the court reporter to hear.

9          MR. PERRI:  Thank you.

10         **ERIC HANNA, GOVERNMENT'S WITNESS, SWORN**

11         COURTROOM DEPUTY:  State your name and spell it for

12  the record, please.

13         THE WITNESS:  My name is Eric Hanna.  H-A-N-N-A.

14                    **DIRECT EXAMINATION**

15  BY MR. PERRI:

16  Q.   Good afternoon.

17  A.   Good afternoon.

18  Q.   So you've been sworn in and you stated your name.  How do

19  you spell your last name?

20  A.   H-A-N-N-A.

21  Q.   Where do you work, sir?

22  A.   I'm a Deputy United States Marshal.

23  Q.   And how long have you been a Deputy Marshal?

24  A.   Since 2010.

25  Q.   Were you ever stationed in Harrisburg?

1  A.   Yes, sir, from 2012 until 2021.

2  Q.   All right.  Do you have any other law enforcement

3  background?

4  A.   I was a patrolman in a town called Upton, right outside of

5  Philadelphia, for roughly eight months, short time period

6  before this job.

7  Q.   Can you explain, Deputy Marshal Hanna, what does the

8  Marshal Service do?

9  A.   Okay.  So we have several areas that we're responsible

10  for.  One of the main ones is producing federal inmates to

11  court.  We have to serve any legal process from the courts,

12  court orders, summons, fugitive apprehension, like you guys see

13  on the TV shows, and then also judicial security.  And then

14  witness protection is another large branch of ours.

15  Q.   Okay.  So if, for example, there is a threat made against

16  a judicial officer?

17  A.   Yes.

18  Q.   A judge?

19  A.   Yes.

20  Q.   Would that come into the purview of the Marshal's service?

21  A.   It would.

22  Q.   So you would be the investigative agency that would look

23  into that?

24  A.   We would initiate the investigation, yes, sir.

25  Q.   All right.  Through your employment in 2015 --

1  A.   Um-hum.

2  Q.   -- did you have occasion to encounter a person named Keith

3  Thomas Dougherty?

4  A.   I have.

5  Q.   And is he in the courtroom today?

6  A.   He is.

7  Q.   And where is he seated?

8  A.   He's seated at the Defendant's table, blue and white

9  striped shirt, blue mask.

10       MR. PERRI:  Your Honor, for the record, may it please

11  reflect identification of the Defendant?

12       THE COURT:  Yes.

13  BY MR. PERRI:

14  Q.   How did that matter come to your attention, that matter

15  back in 2015?

16  A.   At that time, I was fresh out of threat investigator

17  school, and I got handed a filing, I believe it was from the

18  Third Circuit, from my judicial security inspector to read over

19  it, and to just conclude if I agree there should be a threat

20  analysis worked up on this filing by Keith Dougherty.

21  Q.   Okay.  So are you referring to the Third Circuit Court of

22  Appeals?

23  A.   Yes, sir, I'm sorry.

24  Q.   And the Third Circuit Court of Appeals covers this area,

25  this geographic area?

1  A.   It does based out of Philadelphia.

2  Q.   And if there is a decision that gets appealed from a

3  District Court here in the Middle District of Pennsylvania, who

4  hears that case?

5  A.   The Third Circuit does.

6  Q.   The Third Circuit Court of Appeals?

7  A.   Court of Appeals, yes.

8  Q.   All right.  So you find out about this, and did you

9  receive anything in connection with that?

10  A.   I received a copy of that, I believe it was April 7th,

11  2015, filing.

12          MR. PERRI:  May I approach the witness, Your Honor?

13          THE COURT:  Yes.

14  BY MR. PERRI:

15  Q.   I want to show you what's been marked for identification

16  purposes as United States Exhibit No. 6.  I'll ask you to look

17  at that, flip through the pages, and then tell me if you

18  recognize it?

19  A.   It looks like the same filing I'm referencing.

20  Q.   Okay.  And is that the filing that you were talking about

21  earlier?

22  A.   It was.

23  Q.   That's the document that was filed with the Third Circuit

24  Court of Appeals?

25  A.   Yes, sir.

181

1   Q.   Okay.  And who was it that had filed that?

2   A.   Keith Dougherty.

3   Q.   Dougherty?

4   A.   Dougherty, sorry.

5   Q.   The person you identified here?

6   A.   Yes, sir.

7   Q.   So you got a copy of that in connection with your

8   investigation?

9   A.   I did.

10  Q.   All right.  And how many pages is it?

11  A.   It is 27 pages in this report.

12  Q.   Okay.  And it indicates at the top the date that it was

13  filed?

14  A.   It does.  It says filed 04/07/2015.

15  Q.   And does it indicate which case it was filed in?

16  A.   It does.  It has a case number in the top left corner

17  15-1780.

18  Q.   And who's it addressed to?

19  A.   To the Clerk.

20  Q.   The Clerk of the Third Circuit presumably?

21  A.   I would assume so.

22  Q.   Does this appear to be a fair and correct copy of the

23  document that you received in connection with the

24  investigation?

25  A.   Yes.

1          MR. PERRI:  Your Honor, at this point we'd ask for

2  admission of United States Exhibit No. 6.

3          MR. DOUGHERTY:  No objection.

4          THE COURT:  No objection, so it's admitted.

5  BY MR. PERRI:

6  Q.   So what did you do in connection with your investigation?

7  A.   Well, the very first thing is to read the filing to see

8  what is contained inside the filing.  After reading it, I did

9  find some language that can be construed as threats made in the

10  filing.  So after that, we would open up a preliminary

11  investigation.

12       That would include to talk to Mr. Dougherty and just to

13  get a feel of where he is and see if he -- see what his issues

14  are, see what his troubles are, see what his intentions are,

15  and to see if we should actually open up a threat case on the

16  individual or maybe he was just very angry this one time and

17  he's let it go and things have calmed down and we would not

18  investigate it any further after that.  Just assess the

19  situation initially.

20  Q.   You mentioned finding some language in that?

21  A.   Yes.

22  Q.   In the document that concerned you?

23  A.   Um-hum.

24  Q.   How would you explain your reaction to that?  And how did

25  you perceive it?

183

1  A.   When I read the language, I interpreted it as a threat to

2  whoever he's talking to at that moment in time in that filing.

3  Q.   Okay.  Could we please see page number 11?  And I'm going

4  by the number at the top of the page.  Could we please see an

5  expanded view of the second full paragraph?

6       Deputy Marshal Hanna, would you read that, please?

7  A.   Yes, sir.  If you wish to have all 11 judges assassinated

8  by a well-regulated militia (second amendment) for

9  constitutional crimes as a condition precedent to the

10 publishing of the 28 U.S.C. 46(bravo) rule for other than death

11 penalty cases, write it down for D.C. Circuit review a/k/a a

12 fate worse than death, being told what to do, by a higher

13 power, the Dictionary Act, as identified by the Supreme Court,

14 trumps/avoids *Simbraw* (local custom) under order of operations.

15 Q.   I'd also like to direct your attention to page number 26.

16 Would you please -- I'd like to direct your attention

17 specifically on that page to the last two paragraphs at the

18 bottom?

19 A.   Um-hum.

20 Q.   Would you please read that?

21 A.   Yes.  If judges must die to preserve liberty and property,

22 under a choice of evils necessity, it is a ground for transfer

23 to the D.C. Circuit, as a better option, under the rule of law

24 as opposed to rule of nobility, for 10-CV-1071/11-2631, and

25 11-CV-1295/11-3598, and 13-CV-447/13-3772.

184

1      Imagine a O.J. type of trial where the militia gets of
2  Scott free after the coordinated assassination of 11 judges.
3  How ironic?  The judges were lawfully assassinated for
4  attempting to establish nobility in the law in violation of
5  Article 1, Section 9 and Section 10.
6  Q.   How did you interpret that when you read it?
7  A.   I interpreted that he's implying that there are judges
8  that must die to preserve liberty.  And then he describes of
9  how the militia would do it in a coordinated assassination.
10 Q.   Then can we see the last page, page number 28?  I want to
11 direct your attention to these two paragraphs.
12 A.   Okay.
13 Q.   Would you read that, please?
14 A.   Sure.  If you are suggesting to decapitate all 11 judges
15 and make a funeral -- I believe that word is pyre -- pyre out
16 of their rotting carcasses, I would suggest that it is a ground
17 for transfer to the D.C. Circuit as a rule of law alternative
18 suggestion, even though the action can be done and still comply
19 with the common law defense of choice of evils.
20     You must provide a copy of the rule and an admission you
21 have violated numerous federal statutes that are jurisdictional
22 in all judgments related to all Keith Dougherty cases and allow
23 calculations of the FTCA damages, or enter defaults as
24 required, and remand.
25 Q.   Okay.  And again, how did you interpret that?

1  A.    I interpreted it as a threat to decapitate 11 judges.

2  Q.    And if we could see an enlarged version of the very last

3  sentence?  Deputy Hanna, when it says there, in the

4  alternative, how did you interpret that?

5  A.    I interpreted that as instead of him committing those

6  threats that he had just written down, the alternative action

7  would be to transfer his case to the D.C. Circuit --

8  Q.    And --

9  A.    -- as a trade.

10 Q.    And your understanding, what does he want?

11 A.    He wants his case to be heard in the D.C. Circuit, a

12 change of venue.

13 Q.    And if that doesn't happen?

14 A.    Then he would have to comply with those threats that he

15 made.

16 Q.    I want to ask you about -- I want to ask you a few

17 questions about some things that you may or may not have seen

18 throughout the document?

19 A.    Okay.

20 Q.    Does the Defendant mention any judges by name?

21 A.    I believe I recall one or two judges' names.  If I'm

22 thinking of this filing, yes.

23 Q.    Can we see page 3, please?  Paragraph at the bottom?  Does

24 he mention any judges by name there?

25 A.    I see four that I am familiar with.

186

1  Q.   Can you name them, please?

2  A.   Judge Motz, Judge Carlson, Judge Jones, and Judge

3  Caldwell.

4  Q.   Can we skip over to page 6?  Last paragraph at the bottom?

5  Do you see any judges mentioned there?

6  A.   Judge Frederick Motz and Magistrate Judge Blewitt.

7  Q.   Page 11.  The last paragraph at the bottom, please?  Do

8  you see any judges mentioned there?

9  A.   Yes.  Towards the bottom, I see Judge Carlson again, Judge

10 Jones again, and Judge Motz.

11 Q.   Next page, please, at the top?  How about there?

12 A.   Same four judges as the first time; Judge Motz, Judge

13 Carlson, Judge Jones, and Judge Caldwell.

14 Q.   Next page, please -- I'm sorry, page 14.  Any judges

15 mentioned?

16 A.   Yes, sir.  Judge Frederick Motz, Chief Judge McKee.  I'm

17 not aware if Simbraw is a judge or not.  I do not know that.

18 Q.   Okay.  Next page, page 15, paragraph at the bottom.  Any

19 judges mentioned there?

20 A.   Judge Jordan.

21 Q.   Page 18, towards the end of that large paragraph.  Any

22 mention there?

23 A.   Chief Judge McKee.  And Judge Motz at the very last

24 sentence.

25 Q.   Page 21.  Okay.  And the first large paragraph?

1  A.   Chief Judge McKee, Judge Motz.

2  Q.   And what does he say towards the ends of that paragraph?

3  A.   In quotations, it says, all 11 judges could be shot in

4  times of war properly under a choice of evils affirmative

5  defense.

6  Q.   When he talks about affirmative defense or words of that

7  nature, how do you interpret that?

8  A.   I interpret that, that he feels he is justified in

9  carrying out those threats by that verbiage that he uses.

10  Q.   How about towards the -- how about in the next paragraph?

11  Any mention of judges?

12  A.   Judge Motz, Chief Judge McKee.

13  Q.   And the last paragraph?

14  A.   Magistrate Judge Fegley, Judge Motz.  That's all I

15  recognize.

16  Q.   Page 23, please, towards the top there.  Any mention?

17  A.   Judge Motz.

18  Q.   So fair to say he talks about judges throughout all of

19  this?

20  A.   Yes, it is.

21  Q.   I want to ask you another question.  Does he use the term

22  militia in this particular writing?

23  A.   I believe he does.

24  Q.   Let me direct your attention to page number 5 at the

25  bottom.  Can you read that, please?

188

1   A.   Yes.  A well-regulated militia, being necessary to the
2   security of a free state, the right of the people to keep and
3   bear arms, shall not be infringed.
4   Q.   Are you aware of what that's a reference to?
5   A.   I'm not a hundred percent sure what he's referencing.  I'm
6   guessing it's the second amendment, the right to bear and keep
7   arms.
8   Q.   And how did you interpret that in the context of his
9   threats and other statements?
10  A.   I would interpret something like that, that, one, he has
11  the absolute right to bear arms and keep arms; but, two, he
12  also has the right to have a well-regulated militia.
13  Q.   Who was going to carry out these assassinations?
14  A.   I would suspect a militia is, according to his threats.
15  Q.   Having reviewed this entire writing, does the Defendant
16  ever refer to himself, even if perhaps quoting somebody else,
17  as vexatious?
18  A.   I don't believe he does.
19  Q.   Let me see if I can refresh your recollection?
20  A.   Okay, thank you.
21  Q.   Please look at page 2.  Down towards the bottom there.
22  Does he use that term to describe himself?
23  A.   Dismissed here because he is vexatious not full and fair,
24  see *Marshall versus Jerrico*.  I believe he is describing
25  himself there.

1  Q.   Over on page 4, in that large paragraph.  Does he also use

2  that word?

3  A.   Yes, he does.

4  Q.   And the next page, the first full paragraph.  Does he use

5  it there?

6  A.   Yes, he does use the word.

7  Q.   Skipping over to page 15.  Would you please highlight that

8  one?

9  A.   Yes, sir, it's there.

10  Q.   Can you read that, please?

11  A.   Sure.  We all know Keith Dougherty is vexatious is not due

12  process due.

13  Q.   Last page.  In regards to that last paragraph where you

14  perceived it appeared to you that he was offering an

15  alternative to decapitation?

16  A.   Yes.

17  Q.   Or assassination.  Could we also see the second paragraph

18  at the top?  What does he say there?

19  A.   Lead follow or get out of the way.  Break out your

20  checkbook and let's talk as a better option.

21  Q.   A better option to what?  How did you interpret that?

22  A.   A better option than to him carrying out the threats.

23  Q.   Deputy Marshal Hanna, after having reviewed this and

24  noticed this language, were you concerned enough to open an

25  investigation and take specific steps?

1  A.    I was.

2  Q.    What exactly did you do?

3  A.    We went and interviewed Mr. Dougherty at his home.

4  Q.    Who all was there?

5  A.    It was myself.  I had a senior deputy with me, Mike

6  Aleman, and an FBI Agent Chad McNiven.

7  Q.    How do you spell the other deputy's name?

8  A.    First name is Michael, normal spelling.  Aleman,

9  A-L-E-M-A-N.

10 Q.    How do you spell McNiven?

11 A.    M-C-N-I-V-E-N.

12 Q.    Okay.  What was your purpose of going out there?

13 A.    The purpose was to, in layman's terms, to take Mr.

14 Dougherty's temperature, see where he was at mentally, see how

15 he was feeling, talk about these and inform him that he can't

16 use this kind of language in his filings, it is perceived as

17 threats, and he should stop at least that particular type of

18 activity in his filings, and then also to see if he had really

19 any intention on harming anyone.

20 Q.    Did you, in fact, did you and the other marshals, in fact,

21 tell him that this language was being perceived as threatening?

22 A.    Yes.

23 Q.    In no uncertain terms?

24 A.    No uncertain terms.

25 Q.    Did you ask him if he intended to carry out this threat?

191

1   A.   I didn't ask him, but my senior, Mike Aleman, asked him,

2   yes.

3   Q.   And what did he say?

4   A.   Keith Dougherty said, no, he does not intend to carry out

5   those threats.

6   Q.   Okay.  Was that enough for you though to close out the

7   matter?

8   A.   No.

9   Q.   Why not?

10  A.   Well, I wasn't a hundred percent sure that he was telling

11  the truth.  And it's safer to keep the investigation open than

12  to close it and be wrong.

13  Q.   Because you're responsible for what?

14  A.   I'm responsible for the protection of the justices and

15  judges, anybody in the court family.

16  Q.   When something like this gets communicated and brought to

17  your attention, give us an idea of the wheels that it puts into

18  motion?

19  A.   Well, first and foremost, if the person reads it that it's

20  intended for, the audience that it's intended for, that can be

21  very harmful to them, their family members, their daily lives.

22       And if they feel like they need to be protected from that

23  filing, that creates a whole other set of gears turning inside

24  the Marshal Services as far as our protection detail on them,

25  their family, all their movements, their home, their work, and

192

1   then a continuing investigation on the backside of everything

2   as well behind closed doors.  You still have to investigate it

3   as you protect the protected.

4   Q.   Does all of that take resources?

5   A.   A lot.  A lot of resources.

6   Q.   Do you have unlimited numbers of marshals?

7   A.   No, not at all.

8   Q.   You're laughing because how many of them are there per

9   court?

10  A.   Well, we were down to two here at one point in time.  I

11  think we're up to four or five now for court in this office.

12  Q.   During this interview, did the Defendant appear to express

13  any emotions?

14  A.   He was cool and calm very much at the beginning.  He did

15  express agitation to some of his other court filings or things

16  that had happened to him throughout the court process that we

17  tried to listen to.  I wasn't very familiar with his other

18  cases or filings that he was speaking of.

19       But he never got -- he never got -- he was never yelling

20  in any sense of the means.  He was passionate about what he was

21  speaking about, yes.

22  Q.   All right.  Was that the only time you went to visit this

23  Defendant, Deputy Marshal?

24  A.   No, sir.  I visited him a second time.

25  Q.   When was that?

1  A.   I believe that was the following month, May 8th.

2  Q.   Okay.  So I don't know if I specifically asked you, I

3  apologize, when was your visit, your first visit?

4  A.   Oh, that was, I believe that was April 13th, 2015.

5  Q.   Okay.  So the next visit was when?  Say that again.

6  A.   I believe it was May 8th.

7  Q.   Okay.  Not a whole lot of time passed?

8  A.   No, sir.  It was roughly a month, just under a month.

9  Q.   Okay.  And what prompted that visit?

10 A.   I believe at the end of the month in April, the date was

11 April 30th, 2015, Mr. Dougherty and a male companion came to

12 the courthouse to file something at the Clerk's office.

13 Something happened at the Clerk's office where they would not

14 accept his filings.

15      And Mr. Dougherty got very heated and passionate about it

16 and started to -- his temper started to get a little heated.

17 And then he was asked to leave.  He wouldn't leave right away,

18 so he was escorted out of the building.  And his male companion

19 was escorted separately out of the building.

20 Q.   What building did that happen in?

21 A.   This federal courthouse.

22 Q.   This one?

23 A.   Yes.

24 Q.   And where is Judge Conner's courtroom and chambers?

25 A.   In this courthouse.

1  Q.   In this one?

2  A.   Yes, sir.

3  Q.   Through your investigation, did you become aware of any

4  changes in the Defendant's personal circumstances during the

5  investigation?

6  A.   I did.

7  Q.   And what did you find out?

8  A.   After doing a thorough background investigation on him and

9  just looking into him, we did find out that he was recently

10 divorced and also that his house that we visited him at was

11 going to the county sheriff for sheriff's sale as a

12 foreclosure.

13 Q.   When you, as a Deputy Marshal investigating this type of

14 thing, are aware that the author of a communication has

15 personal circumstances that are deteriorating --

16 A.   Um-hum.

17 Q.   -- does that factor into your assessment at all?

18 A.   It does.  It just -- to me, and in my opinion, and --

19 anyway, in my opinion, it means he has less to lose if he

20 carries out those threats.  The more stable that person is in

21 their home life, the more that he has to lose.  It's just less

22 -- more he has to lose if those threats are carried out.  With

23 less on his personal side to ground him to keep him settled to,

24 you know, change his mind or just talk him down off the ledge,

25 with none of that at home and losing a home, I mean, there's

195

1  very minimal for him to lose if he does carry out those

2  threats.

3  Q.   Deputy Marshal, did you have an opportunity to look at the

4  communications upon which Counts 1, 2, and 4 are based?

5  A.   I have.

6  Q.   Did you notice any similarity in either content or style

7  from the April 2015 letter that you testified about and these

8  other ones?

9  A.   Yes, they're very similar in content and style.  He still

10  uses the same verbiage, still talks about militias.  He still

11  talks about veiled threats.  He still feels the need to defend

12  himself, that he was wronged.  And the filings are very similar

13  both verbally and in form.

14        MR. PERRI:  Thank you, Your Honor.  No further

15  questions.

16        THE COURT:  All right.  Cross examination.

17                    **CROSS EXAMINATION**

18  BY MR. DOUGHERTY:

19  Q.   Excuse me, Deputy -- is it DUSM Hanna?

20  A.   Yes, sir, DUSM, Deputy United States Marshal.

21  Q.   I do remember the encounter was very pleasant.

22  A.   Um-hum.

23  Q.   And I had expressed, do you recall, when talking to

24  Michael, who was doing all the talking?

25  A.   Yes, he was.

1  Q.   And I had said --

2            THE COURT:  Mr. Dougherty, do you mind, just because

3  I think we're having a hard time hearing you, I know the court

4  reporter --

5            (Mr. Dougherty removed his mask.)

6            THE COURT:  Thank you very much.

7            MR. DOUGHERTY:  Sorry about that.

8  BY MR. DOUGHERTY:

9  Q.   So in any event, the -- your fellow marshal and the FBI

10 agent arrived on the property, and I greeted you on the front

11 porch --

12           THE COURT:  Apologies.

13           MR. PERRI:  Sorry, I don't mean to interrupt you, but

14 there's no other way for me to bring this to the Court's

15 attention.  Your Honor, there's a document that's being shown

16 to the jury.

17           THE COURT:  Do you want it taken down?

18           MR. PERRI:  Yes, Your Honor.

19           THE COURT:  Okay.

20           MR. DOUGHERTY:  Excuse me.

21           (Complied.)

22 BY MR. DOUGHERTY:

23 Q.   The incident that you just referred to, the April 30th

24 incident where supposed me and a companion came to this

25 building to somehow threaten somebody or try to file some

1 document, what was your account of that?

2 A.   Yes.  So I was not in the building when this account

3 happened.  From reading the report, you tried to file something

4 with the Clerk's office, and it didn't go as well as you had

5 expected it to.  That was my understanding.

6 Q.   Okay.  And if you were to be presented with a document

7 signed under penalty of perjury that, in fact, that document

8 was served by one Michael Cobaugh, and because the secretary at

9 the office thought she had done something wrong, hit the panic

10 button, called the Marshal Service, they detained him and

11 threatened to detain him until Pete -- Deputy --

12         MR. PERRI:  Objection, Your Honor.  There's no

13 question that's been asked, and these are facts that have not

14 come into evidence.

15         THE COURT:  So I'm going to let the question proceed

16 a little bit.  I mean, part of the thing is, there's no

17 objections on hearsay grounds, so a lot of information comes

18 in.  So I'm just going to let him -- there's got to be a

19 question at the end of this.

20         MR. DOUGHERTY:  Yes.  In other words, if you were to

21 find something --

22         THE COURT:  Get to the question.

23 BY MR. DOUGHERTY:

24 Q.   If you were to find something in writing that refutes what

25 you heard secondhand, thirdhand, as to what actually happened,

198

1  would you find that convincing if it was part of an official

2  filing in D.C. as I had promised you and Michael that I was

3  doing when we met that day?

4  A.    Convincing to what, sir?

5  Q.    To the fact that it wasn't Keith Dougherty who tried to

6  file something with the clerk and failed?

7  A.    Okay.

8  Q.    Rather it was Michael Cobaugh who filed a copy of it with

9  the clerk successfully?

10 A.    Yes.  Yes, I have no reason to argue that.

11 Q.    So it would also be fair to say that the clerk in charge

12 of the office, because as it indicates here, Peter was leaving

13 as he was arriving, she thought she had done something wrong by

14 receiving service on behalf of the judges?

15 A.    Okay.

16 Q.    Okay.  So in other words, it's fair to say her

17 overreaction was, in fact, not this violent uproar where she

18 thought, oh, my God, I received service on behalf of Judge

19 Caldwell, Peter Welsh -- and I guess there were only two at

20 that location.  And then when cooler heads prevailed and Peter

21 Welsh showed up, it says Peter Welch arrived --

22           MR. PERRI:  Objection, Your Honor.  That's a clear

23 hearsay statement that he's about to convey.

24           THE COURT:  Is this the same report to which the

25 Deputy Marshal testified?

199

1          MR. PERRI:  No, Your Honor, it was the thing that was

2     up on the elmo.  It's a handwritten thing as far as I can tell.

3     I don't even know what it is.  I haven't been shown it.

4          THE COURT:  I do think in fairness there's testimony

5     about an account in a report.  So if it's the report, I think

6     it's fair game to ask about the rest of the report.  Now I'm

7     not sure that it's the report.

8          MR. PERRI:  It's not, Your Honor.

9          THE COURT:  Okay.

10          MR. PERRI:  And I would be happy to allow the report

11     into evidence.  But --

12          THE COURT:  That's why I just wanted to make sure I

13     understood what's going on.

14          (Mr. Perri and Mr. Dougherty confer.)

15          THE COURT:  I'll tell you what, we're going to do a

16     sidebar.  We're going to do a sidebar with the white noise.  So

17     if you want to stand up, that will be fine.  Whatever you want

18     to do.  You can't go anywhere, but you can stand up.

19          (Sidebar discussion held:)

20          THE COURT:  Can you hear me?

21          MR. DOUGHERTY:  Yes.

22          THE COURT:  Mr. Perri, can you hear me?

23          MR. PERRI:  Yes, Your Honor.

24          THE COURT:  Okay.  All right.  So I'm not really

25     clear.  There's a document, Mr. Dougherty, that you're holding.

1  I don't know what it is.

2          MR. DOUGHERTY:  That's the one that you printed out

3  for me earlier.

4          THE COURT:  From the D.C. Circuit?

5          MR. DOUGHERTY:  Yes.

6          THE COURT:  Okay.  So there's -- but there's been no

7  testimony from this witness about this filing, correct?

8          MR. DOUGHERTY:  Yes, he described the 4/30/2015

9  incident where I was supposedly violent here and had to be

10  escorted out.

11          THE COURT:  I just want to make sure.  Can this be

12  heard?  Talk a little bit lower, okay.  So it does -- I'm

13  assuming it probably does describe your version or somebody

14  else's version of the incident.

15          MR. DOUGHERTY:  Uh-huh.

16          THE COURT:  But it's not admissible with this

17  witness.  In other words, you could affirmatively bring this in

18  through maybe your testimony or through the testimony of

19  somebody else.  But this witness, unless you laid a foundation

20  that he knew about this filing, he had read it before, there's

21  no basis for this witness to testify.  It's essentially trying

22  to get testimony in.  So I'll let you ask the witness, were you

23  aware of a filing made.

24          MR. DOUGHERTY:  Okay.

25          THE COURT:  In the D.C. -- is it the D.C. Circuit?

1          MR. DOUGHERTY:  Yes, D.C. Circuit.

2          THE COURT:  You can ask him.  If he says, no, that

3  ends the matter.

4          MR. DOUGHERTY:  Okay.

5          THE COURT:  If he says, yes, then you could say,

6  well, have you read the filing about the incident.  And if he

7  says, no, that ends the matter.  If he's read it, then I think

8  maybe then at that point, I'd let you pursue further

9  questioning.  Mr. Perri?

10          MR. PERRI:  That sounds reasonable, Your Honor.  I

11  would also like to note that it seems to be a pattern that

12  perhaps the Defendant doesn't understand what cross examination

13  is because he repeatedly attempts to get in, affirmatively get

14  in information and almost testimony to explain his point of

15  view through cross examination.

16          And it's not appropriate.  He has to do that in his

17  case-in-chief.  He has to do that through a witness.  And it

18  has to be according to the rules.

19          THE COURT:  Right.  Well, I mean, that's a fair

20  statement, but, I mean, I've sustained the objections when I

21  thought he's crossed the line.  What's a hard thing to do in

22  this particular case is, the witnesses so far have testified a

23  lot about things that they know through other statements.

24          I mean, we haven't entertained hearsay objections.

25  But I just think in fairness if, for instance, this Deputy

1 Marshal has talked about an account of something that occurred
2 that he did not witness, and he testified pretty extensively
3 about it, so if he has knowledge about that account from other
4 sources, for instance, in this D.C. Circuit filing, I think it
5 would be very fair to pursue that given where the direct went.
6 Look, you don't get to testify, Mr. Dougherty --

7          MR. DOUGHERTY:  Okay.

8          THE COURT:  -- or even read into the evidence a
9 document.  But like I said, you can ask if this witness is
10 familiar with your D.C. filings; and if he's not, then we're
11 done.  You can ask if he is familiar with the D.C. filings, had
12 he read this particular filing, which gave an account.  If he
13 says no, then we're done and you have to bring it in through
14 another witness.

15          MR. DOUGHERTY:  Okay.

16          THE COURT:  Okay.

17          MR. PERRI:  I would add, Judge, I think it's fair for
18 the Defendant to ask the witness, are you aware that somebody
19 else gave a different account of what happened at that counter
20 at the Clerk's office.

21          THE COURT:  You can do that as well.

22          MR. PERRI:  Okay, that's fair.  But he can't then
23 introduce what that statement is because it's hearsay and it
24 runs afoul of 608.  And we're on cross examination.

25          THE COURT:  We just heard this witness give the

1  account of courthouse employees about what occurred.

2          MR. PERRI:  He was -- that was not offered for the

3  truth of the matter.

4          THE COURT:  Okay.

5          MR. PERRI:  So it's a little bit different, Your

6  Honor.

7          THE COURT:  Okay, look, so I get it, and I didn't

8  have a hearsay objection, so I didn't have to rule on what it

9  was admitted for.  And it's one of the challenges.  I'm just

10 going to let the questioning go forward, as I've explained, and

11 you can further object to it if we've crossed the line.

12         MR. PERRI:  Thank you, Your Honor.

13         THE COURT:  All right, thank you.  All right,

14 everybody, have a seat.

15         (Sidebar discussion concluded.)

16         THE COURT:  Okay.  Mr. Dougherty, go ahead.

17         MR. DOUGHERTY:  All right.

18 BY MR. DOUGHERTY:

19 Q.   Sorry for the confusion.  Back to what we were discussing.

20 As you indicated, Michael was leading the conversation 99

21 percent of it, and, in fact, the three of you showed up and,

22 again, the concern was sincere and professional in every

23 regard.  I don't want to --

24         THE COURT:  You got to just get a question though not

25 your testimony.  Just ask him questions.

204

1          MR. DOUGHERTY:  Okay.

2   BY MR. DOUGHERTY:

3   Q.   So do you recall when I asked -- when I gave him, as an

4   example, when you expressed concerns, the issue of

5   Pennsylvania's Castle Doctrine and the illustration I gave with

6   if a judge came to the house with two lawyers and opened the

7   door to come into my home and steal my TV, that I could

8   literally shoot all three, and, in fact, no indictment could be

9   brought against me.  Do you remember that conversation?

10  A.   I do.

11  Q.   Okay.  And he said, well, clearly -- do you remember him

12  saying, clearly, you know far more about this subject than we

13  do, as I went into various cases and examples and explanations

14  about what level of defense is available to individuals,

15  property owners, protecting reputation, whatever the case may

16  be?

17  A.   I do recall Michael saying that.

18  Q.   And that was rather a calm discussion?

19  A.   Um-hum.

20  Q.   He said -- well, do you recall him saying, well, Mr.

21  Dougherty, I just want to let you know, we're only here because

22  we were ordered to be here?

23  A.   I remember him saying that as well.

24  Q.   And at that point, when I said to him, do you remember, do

25  you remember me saying to him, you just said the magic words?

1   A.   I do remember that.

2   Q.   And he said, well, how so?  And do you remember me going

3   to a lengthy discussion about qualified immunity and how, in

4   fact, you were all protected in that regard?

5   A.   I don't remember word for word, but I remember that

6   conversation, yes.

7   Q.   Okay.  Are you aware that in this same timeframe, in 2015,

8   the Supreme Court reversed the Third Circuit on the *Elonis*

9   *versus U.S.* issue about a reasonable person being able to be

10  convicted on these communications as this was actually sent by

11  ECF and --

12          THE COURT:  Mr. Perri stood.  Were you objecting?

13          MR. PERRI:  Yes, Your Honor.

14          THE COURT:  Now you're getting into discussion of a

15  legal case not the conversation.

16          MR. DOUGHERTY:  Well, I'm just saying in the

17  timeframe.

18          THE COURT:  Yeah, but it doesn't -- if you had

19  discussions, I'll permit it.  If you discussed *Elonis* at the

20  time, you can ask the question.  The fact that *Elonis* was

21  decided at the same time, unless it was part of a discussion,

22  we're just getting into now legal issues.

23          MR. DOUGHERTY:  Okay.

24  BY MR. DOUGHERTY:

25  Q.   But in reference to the qualified immunity analysis and

1  discussion that we had to where, in fact, you were all

2  protected, and Michael then said, yes, that's all well and

3  good, were you aware in that same timeframe the Supreme Court

4  reversed the Third Circuit twice on qualified immunity being

5  misstated with no need for briefing and no need for oral

6  argument?

7             MR. PERRI:  Objection, Your Honor.

8             MR. DOUGHERTY:  In that same year?

9             THE COURT:  Were you aware of that?

10            THE WITNESS:  No, sir.

11            THE COURT:  Okay.  Next question.

12 BY MR. DOUGHERTY:

13 Q.   So the context of the qualified immunity then you did get

14 fully, and from that, I'm assuming you didn't think I was a

15 threat to society or what was the final determination there?

16 A.   Well, obviously I thought you were still a threat because

17 I left the case open.

18 Q.   Okay.  So then are you saying this has been added as a

19 count in this case?

20 A.   What's that?

21 Q.   The account of April 30th, 2015, which then prompted your

22 second visit on May 8th?

23 A.   The account on April 30th is what prompted the second

24 visit, yes, sir.

25 Q.   I understand that's what prompted it?

1  A.   Yes, sir.

2  Q.   But were you aware that there is a truthful statement

3  under oath that refutes everything that you say?

4  A.   I was not aware of that, no, sir.

5  Q.   Okay.  And would you be surprised to find out that it was

6  part --

7           MR. PERRI:  Objection as to his characterization of

8  it as truthful, Your Honor.

9           THE COURT:  He asked, were you aware that a truthful

10  statement had been filed, and the witness answered no.  So

11  that's the end of that.

12           MR. DOUGHERTY:  Right.

13  BY MR. DOUGHERTY:

14  Q.   Were you -- do you recall, as we came to the end of our

15  discussion, and I said, I, as a matter of fact, I have filed an

16  action in the District of Columbia, and it's in the mail as we

17  speak?

18  A.   I don't remember if you said you were going to file it or

19  if you filed.  But I do remember you were saying something

20  about filing or filed for a D.C. Circuit.

21  Q.   Correct.

22  A.   I do remember that, but I don't remember if it was already

23  filed or you were going to.  I don't remember that.

24  Q.   Okay.  So would you be surprised to find out that I

25  actually said to you that I put it in the mail by Priority Mail

1  receipt confirmation Saturday, and you were on my door step on

2  Monday?

3  A.   I'm sorry, can you repeat that question for me?

4  Q.   Would you be surprised if, in fact, that was the content

5  of the conversation, that, in fact, I put it in the mail on

6  Saturday, and here you are on Monday, and therefore that is the

7  very same document that was attempted to be served on April

8  30th that caused you to come out a second time?

9  A.   No, I wouldn't be surprised.

10  Q.   Okay.  So once again, the facts are that you heard

11  secondhand that this -- that I had had a situation where I was,

12  what, escorted from the building?  Is that what the issue was,

13  the statement was?

14  A.   Asked to leave first and then escorted, yes, sir, that's

15  what I was told.

16  Q.   Okay.  All right.  And if, in fact, you were to find that

17  there was a statement under oath signed and filed in a court

18  pleading in Washington, DC, that went into the official record

19  on May 20, 2015, would that surprise you?

20  A.   I don't know --

21  Q.   In other words, how would you reconcile those two

22  accounts?

23  A.   All I'm aware of for that account is you and a male

24  counterpart were in the building, tried to file something, it

25  didn't go well, voices got loud, you were asked to leave, you

1  didn't leave initially, so you were escorted out.  That's all I

2  know about that account.  I don't know anything about any

3  filings.

4  Q.   Yes, but I'm saying --

5  A.   I'm sorry.

6  Q.   If you were to find out that there was a filing in writing

7  under oath that completely refutes everything you just said,

8  how would you reconcile that?  What would you do to reconcile

9  that?

10  A.   To reconcile it?

11  Q.   Yes.  I mean, you were told one story, and you find out

12  now someone else filed it under oath and in a legal pleading

13  completely refuting the account that you had been told.  How

14  would you feel about the story that you had been told?

15  A.   I mean, my counter parts are the ones that told me that

16  story.  There are several witnesses.  I would find it hard to

17  believe --

18  Q.   Okay, very good.  But the matter is that you had further

19  indicated -- that from the very same docket -- document, I

20  should say --

21  A.   Um-hum.

22  Q.   -- defense docket in case 15-1780?

23  A.   Okay.

24  Q.   And it indicates on one page the point --

25           THE COURT:  You need to let the Government see it

210

1  first before we can put it up.  Unless it's been introduced

2  into evidence already?

3          MR. DOUGHERTY:  I believe it is.

4          THE COURT:  It's already in evidence?

5          MR. PERRI:  Yes, Your Honor.

6          MR. DOUGHERTY:  Yes.

7          THE COURT:  Then you can put it up.

8          (Complied.)

9  BY MR. DOUGHERTY:

10  Q.   And if you could just read D.C. Circuit IOP, I through B?

11  A.   Yes, sir.  D.C. Circuit IOP.  I, Duties of the Chief

12  Judge.  The Chief Judge of the District of Columbia Court of

13  Appeals has the following administrative powers and duties:  A,

14  to designate hearing divisions by random selection to hear

15  and/or determine cases and controversies pending before the

16  Court; B, to assign pending cases and controversies by random

17  selection to the designated divisions for hearing and/or

18  determination.

19          Continue?

20  Q.   No, that's it.

21  A.   Okay.

22  Q.   Now when you read that, and as you can see the paragraph

23  right beneath it where it mentions *Marshall versus Jerrico*,

24  what does that mean to you?  Are you familiar with the content

25  of that?

1  A.   No, sir, not at all.

2  Q.   So would it surprise you to find out that this

3  circumstance here is controlled by a federal statute that is

4  required by all circuit courts in the way of properly assigning

5  cases to guarantee the due process rights of the appellants?

6  A.   I can't speak to that.  I don't have any knowledge to

7  that.

8  Q.   But would it surprise you to find out that's what it is?

9  A.   No, if that's what it says.  It's quoted.  I mean, that's

10 what it says here on the paper.

11 Q.   Okay.  So then, therefore, if I were to tell you that

12 someone is, you know, trying to strip you of your rights, your

13 property, your reputation, whatever the case may be, is there

14 anything more valuable or precious to you than your

15 constitutional protections?

16 A.   My life.

17 Q.   Your life.  Well, that's part of life, liberty and due

18 process of law.

19 A.   Okay, fair enough.

20 Q.   Isn't that in the same category?

21 A.   Life, property.

22 Q.   Life, liberty, and due process of law?

23 A.   I believe I hold life at the highest.

24 Q.   Okay.  So the point being that these things that you seem

25 to be making reference to -- and I'm just going to put up one

1  more of those pages.

2  A.   Um-hum.

3  Q.   It's already in evidence.

4  A.   Um-hum.

5  Q.   If you could just read the paragraph right below, right to

6  an impartial tribunal?

7  A.   Okay, yes, sir.  To the Court, a fifth request for

8  production of your rule 28 U.S.C. 46 bravo, which must be

9  published in accordance with 28 U.S.C. 2077 before reassignment

10  of 13-CV-447, and 10-CV-1071.

11  Q.   So once again, the contents of these letters, you put

12  together that the second amendment quotation, I heard

13  referenced by the prosecution, are we to conclude now that the

14  second amendment is considered to be a threat?  Is that what

15  your position is?

16  A.   The right to bear arms is not a threat, no.

17  Q.   Well, I mean, the portion, the beginning of it, a

18  well-regulated militia being necessary for a security of a free

19  state.  Would that be a threat?

20  A.   The way it's written in the constitution, no, sir.

21  Q.   Okay.  Then the concept of a right to an impartial

22  tribunal, would that be a threat to someone?

23  A.   A right to an impartial tribunal?

24  Q.   A right to an impartial tribunal, a jury of 12 people?

25  A.   No, that's not a threat.

1  Q.   Okay.  So there were certain attempts by the prosecution

2  to take certain statements that supposedly were about judges

3  and then going elsewhere in the document and reading something

4  that was referred to, you know, rhetorical device or

5  circumstance definitely, and at this point they were somehow

6  merged together to where these judges were being threatened,

7  yet it was filed on April 7th, 2015, and no one brought charges

8  against me at that time.  Why?

9  A.   Because I hadn't even opened up the investigation yet on

10 April 7th.

11 Q.   You hadn't opened it up yet?

12 A.   Not at the date of the filing, no.

13 Q.   Oh, I'm saying though -- oh, I'm saying though the recount

14 we were just getting in terms of your report?

15 A.   Okay, okay.

16 Q.   Maybe not I'm not connecting them together properly, so

17 please forgive me.  But it was a report written by you, and I

18 was given a copy of it.

19       MR. PERRI:  Which one do you want, Mr. Dougherty?

20       MR. DOUGHERTY:  The one mentioning -- right here.  So

21 it's FID: 9366153, and it's talking about the April 30th, 2015,

22 event.

23       THE WITNESS:  Okay.

24 BY MR. DOUGHERTY:

25 Q.   And in other words, what happened with this, this

214

1  particular report?

2  A.   Well, after it's written, it's reviewed and approved by a

3  supervisor, and then it's placed into the case file.

4  Q.   Okay.  But it's being offered now as though it's a fourth

5  count of some sort of violation.

6           MR. PERRI:  Objection, Your Honor.  There was a

7  motion in limine on this, and this is a legal matter, and the

8  Court has ruled on it, and it's characterized as 404(b)

9  evidence.

10           THE COURT:  Right.  So the -- there was a motion, you

11  will recall.

12           MR. DOUGHERTY:  Yes.

13           THE COURT:  And it had to do with whether or not we

14  would hear testimony about --

15           MR. DOUGHERTY:  These reports.

16           THE COURT:  Yes.  And I ruled on it.  So your request

17  -- if your question is, why is something admitted, I mean,

18  that's a legal question.

19           MR. DOUGHERTY:  No, I'm trying to get the connective

20  tissue.  I understand this is, you know, uncharged --

21           THE COURT:  Okay.  It was not charged, I think that's

22  undisputed.

23           MR. DOUGHERTY:  So the point being that --

24           THE COURT:  You're not on trial for that.  If you

25  want me to tell the jury that, I will do that.

1          MR. DOUGHERTY:  Yes.

2          THE COURT:  He is not on trial for the court clerk

3   incident that you heard testimony about, and so that's not why

4   that testimony is admitted.  That testimony was admitted for a

5   very limited purpose, and it was to go to whether or not Mr.

6   Dougherty would understand that the language used in the letter

7   could be perceived by others as threatening.  And it's only

8   admitted for that purpose, all right.

9          It's not admitted to show that because he allegedly

10  did something in the Clerk's office he would do it again.

11  That's not why it's admitted.  And the fact that the incident

12  occurred, you're not to conclude that he would then be more

13  likely to threaten somebody with a communication in the future.

14         It's limited to the purpose I've described, which is

15  for you to think that -- or you to rather hear from this

16  witness that Mr. Dougherty was told during the interview by the

17  Marshals and the FBI agent that the language in the letter was

18  viewed as threatening.  All right.

19         MR. DOUGHERTY:  Well, that is news to me.

20  BY MR. DOUGHERTY:

21  Q.   So when we were in our final minutes together, the three

22  of us, I thought it was all jovial, handshaking, and the FBI

23  agent asked me -- do you remember the FBI agent asking me for

24  help with his accounts related to people giving him a hard

25  time, his expense account?  Do you remember that conversation?

1   A.   I don't remember that conversation.

2   Q.   Okay.  So with that, you know, back and forth and the

3   statements being that relative to the qualified immunity issue,

4   relative to my explanation as to what the Castle Doctrine means

5   in Pennsylvania, and, in fact, these things were just being

6   stated as a matter of fact or rhetorical especially, in fact,

7   trying to move the issue through the process realizing that --

8          MR. PERRI:  Objection, Your Honor.  The Defendant is

9   testifying.  And these are not facts in evidence.

10          THE COURT:  I confess, and when you spoke, and I was

11  listening to it, I didn't understand it.  I'm looking at the

12  transcript.  I don't fully understand it.  I don't know whether

13  it's a question or not.

14          But here's what we're going to do.  We're going to

15  use this as a breaking point for the evening, and I'm going to

16  try to figure this objection out when you depart.

17          So let's talk about a couple rules.  When you leave

18  here, any notes -- if you take any notes, they need to be, you

19  know, they'll be kept by the deputy clerk in the jury room and

20  secured.  You don't take them home with you.

21          It's really important that you remember the overall

22  instruction, which is because you're keeping an open mind and

23  you're waiting until all the evidence comes in and until you

24  deliberate and hear my instructions of the law to make a

25  decision, you're not to discuss the case.  All right.

1        So when you go home tonight, and you are talking to

2   somebody in the house, yeah, I'm on jury duty, it's a criminal

3   case, I got to go back tomorrow.  That's about it.  And then at

4   the end when the trial is over, you're free to discuss what you

5   want.  Okay.

6        No research.  Don't talk to anybody about the case.

7   If somebody comes up to you and talks to you about the case,

8   please tell us in the morning and we'll address it then.

9   Otherwise, have a nice evening.  I will see you back here,

10  we're going to start at 9.

11       COURTROOM DEPUTY:  If you to report to Marlene at

12  8:45, that will be great.

13       THE COURT:  We're going to try to get started right

14  away.  All right.  Thank you very much.

15       COURTROOM DEPUTY:  All rise.

16       (Jury excused for the day at 4:57 p.m.)

17       THE COURT:  All right.  So unfortunately, I kind of

18  confused things because this goes back to kind of the way I

19  wrote the letter in response to the Government's motion.  I

20  thought the motion was to bring in evidence about a prior

21  letter.

22       MR. PERRI:  It is.  It is, Your Honor.

23       THE COURT:  All right.

24       MR. PERRI:  And it was also about --

25       THE COURT:  Was that letter introduced through this

218

1  agent?

2          MR. PERRI:  Number 6.

3          THE COURT:  All right, that was number 6.

4          MR. PERRI:  Yes.

5          THE COURT:  He then also talked about the clerk court

6  incident, I'll call it, the altercation.  I think that's what

7  Mr. Dougherty is saying, this is news to me, because I

8  essentially conflated the two because I said the court clerk

9  altercation was admitted for the limited purpose.

10          And basically I'm not even sure how to -- whether --

11  why I conflated it.  But I think for clarity, maybe I can

12  explain it to the jury tomorrow.

13          MR. PERRI:  Sure.

14          THE COURT:  If you want.  But let's also make sure

15  that we're all on the same page.

16          MR. DOUGHERTY:  Okay.

17          THE COURT:  So this deputy marshal testified about

18  seeing the letter, and he testified about the letter, which is

19  now Government Exhibit 6.

20          MR. PERRI:  Yes.

21          THE COURT:  Okay.  And that is from April 17th.

22          MR. PERRI:  April 7th.

23          THE COURT:  April 7th.

24          MR. PERRI:  2015.

25          THE COURT:  Okay, thank you.

1          MR. YOUNG:  This is the order.  I don't know if you

2   have it in front of you.  Do you want it, Judge?

3          THE COURT:  That would be great, thanks.  I can look

4   at it now.

5              (Complied.)

6          THE COURT:  Is it April 7th?  It's April 7th, 2015.

7   Okay.  And then what I said was that letter, that can be

8   construed as another crime, as uncharged conduct.  All right.

9   And -- but I agree, that should come in for the limited

10  purpose.  And this is what I was addressing with the jury.

11         That letter is in evidence solely because when the

12  letter is discussed by the deputy marshal with Mr. Dougherty on

13  a later date, he is informed, and we heard testimony about

14  this, that that kind of language is viewed by others as

15  threatening.

16         MR. DOUGHERTY:  He never said that.

17         THE COURT:  Well, you know what, whether he said it

18  or not, that's the only reason the letter is admitted.

19         MR. PERRI:  He did say that.

20         THE COURT:  For what it's worth, my recollection is,

21  it couldn't have been clearer that he said it.

22         MR. DOUGHERTY:  No, in my conversation with him on

23  the porch on April 13th, 2015, that's what I'm saying.

24         THE COURT:  Okay.  Well --

25         MR. YOUNG:  I'm sorry to keep interrupting, I'm

220

1  trying to hold back as much as possible.  Just one thing for
2  clarification.  Mr. Dougherty, you can cross-examine him more
3  on that issue, and also if you choose to testify, you can
4  recount what you believe happened.  Although, you will be open
5  for cross examination, obviously.
6          MR. DOUGHERTY:  All right.
7          THE COURT:  Thank you.  That was helpful.  Do you
8  understand, Mr. Dougherty?
9          MR. DOUGHERTY:  Yes.
10          THE COURT:  Truthfully, my recollection of his
11  testimony is not evidence, right, but the jury heard it.  I
12  mean, for what it's worth, my recollection was, I even think
13  the language was, are you certain or, you know, it was in no
14  uncertain terms he told you that this language was viewed as
15  threatening.
16          But it's not my recollection that will control.  But
17  I say it for the record because I do think it's appropriate.  I
18  said it in my order, and I already gave a limiting instruction.
19  Now I think what I ended up doing, because we were also talking
20  about this court incident, the court clerk incident, and I
21  think I put that into the limiting instruction.
22          I'm not sure -- I'm not still in my mind sure exactly
23  why the Government elicited that evidence.  I don't view it
24  though as uncharged criminal activity because it was undisputed
25  -- well, maybe because it came out a little bit differently

221

1  than I expected, but in the Government's papers, it said there
2  were no threats.

3          MR. PERRI:  Correct.

4          THE COURT:  Okay.  Is the Government taking the
5  position now through the testimony that there were threats
6  made?

7          MR. PERRI:  No.  In fact, he said that it just got
8  heated.  He didn't say anything about threats.  He just said --
9  voices were raised, it got heated, he was asked to leave, he
10 didn't leave.

11         THE COURT:  What is the purpose of eliciting that
12 testimony?

13         MR. PERRI:  Okay, Your Honor --

14         THE COURT:  Because, I mean -- yeah, what is the
15 purpose?

16         MR. PERRI:  So Judge Conner was the victim of the
17 threatening communication that pertains to Count 1 of the
18 indictment.  At the time that Judge Conner reads that letter
19 and the threatening language therein, he is aware that there
20 has been -- he's aware who Mr. Dougherty is and he's aware that
21 Mr. Dougherty was in an altercation at the Clerk's office in --

22         THE COURT:  The altercation occurred when?

23         MR. PERRI:  The altercation occurred on April 30th.

24         THE COURT:  So it's after the letter?

25         MR. DOUGHERTY:  Yes.

222

1          MR. PERRI:  Yes.

2          THE COURT:  Okay.  It's after.  But you're saying

3   Conner reads the letter after April 30th?

4          MR. DOUGHERTY:  Conner read the letter two years

5   later.

6          MR. PERRI:  Yes.  Exhibit 6 is April 7, 2015.

7          THE COURT:  That's the letter I've said comes in, but

8   with a limiting instruction.  And I gave a limiting

9   instruction, and I'll clarify tomorrow.  Mr. Dougherty, do you

10  want me to clarify it?

11         MR. DOUGHERTY:  Your Honor, that's what I'm saying,

12  the 4/30/15 incident really has nothing to do --

13         THE COURT:  I agree.  That's what I'm saying, I

14  conflated that.  I don't think you're harmed in any way by it.

15  If anything, you're helped because I've limited what it's

16  introduced for.  But what is -- what is the purpose of

17  introducing it?

18         MR. PERRI:  I'm trying to explain that, Your Honor.

19         THE COURT:  Okay.  But when you do, you know, keep in

20  mind what happened and the reason why we got segued is because

21  you're saying the incident happened before the letter.  And it

22  didn't, the incident occurred after the letter.

23         MR. PERRI:  After the April 7th letter.

24         THE COURT:  Yes, okay.

25         MR. PERRI:  But the letter that is the subject of

1  Count 1 --

2          THE COURT:  Okay.

3          MR. PERRI:  -- was in May of 2017.

4          THE COURT:  Two years later.

5          MR. PERRI:  Yes.

6          THE COURT:  Okay.

7          MR. PERRI:  So that incident was before the other

8  letter.

9          THE COURT:  Okay.

10         MR. PERRI:  So at the time that Judge Conner reads

11 that letter in 2017, he is aware of that incident that had

12 occurred where the Defendant is actually physically on the

13 premises in his same courthouse.  And he will testify that it

14 factored into his perception of danger and the seriousness of

15 the situation.

16         THE COURT:  Okay.  All right.  So here's what's going

17 on.  I mean, part of the problem is, I mean, you know, I guess

18 we should have had oral argument maybe on the 404(b) motion.

19 But the way I read the Government's motion when it -- and it

20 went out of its way to say that there was no threatening

21 conduct in the Clerk's office.  So what I did is, I said, well,

22 that doesn't sound like uncharged activity.

23         MR. PERRI:  And I agree, Your Honor.  I agree.

24         THE COURT:  Well, but what I think, in fairness to

25 Mr. Dougherty, the way it's been presented is, it's a heated,

224

1  angry thing.  And therefore, what does it go to?  So I think
2  the way to solve that is, I will give a limiting instruction on
3  that, and I will make it clear that he's not been charged --
4  well, I did already, but I'll embellish.
5          I will add to it, and I will say he's not been
6  charged with the April 30th, 2015, incident, and you can view
7  that for very limited purposes.  All right.  And it sounds like
8  one of the purposes is, it goes to Judge Conner's frame of mind
9  when he reads the letter in 2017.
10          Is there any other purpose?  I'll tell you what we'll
11  do, because it's 5:00, you think about it.  And what we will do
12  is, we'll meet here before the jury comes back in, and I want
13  to hear from the Government what the purposes for which it
14  wants the April 30 clerk incident from 2015, why it's relevant.
15          And it is relevant.  I will -- it's relevant to Judge
16  Conner, Chief Judge Conner's frame of mind when he reads the
17  letter.  And I will limit it to that purpose unless you have
18  another purpose you want to articulate tomorrow.  And I'll
19  think about it, too.
20          Mr. Dougherty, does that satisfy you?
21          MR. DOUGHERTY:  Yes.
22          THE COURT:  Okay.  Then that's what we'll do.  And we
23  can talk in the morning if you think about it overnight on that
24  issue.  Okay.  Now how much more cross do you have?
25          MR. DOUGHERTY:  Not very much at all.

1          THE COURT:  Okay.  And how much -- what kind of is

2    tomorrow looking like?  And when do you expect to finish your

3    case-in-chief?  Tomorrow?

4          MR. PERRI:  Judge, that's tough to say.

5          THE COURT:  Well, I'm just asking.  I said, expect.

6          MR. ADKINS:  We have four more witnesses past Eric

7    Hanna.

8          THE COURT:  Are we going to finish this week?

9          MR. PERRI:  Yes.  Yes.

10         THE COURT:  Okay.

11         MR. ADKINS:  Your Honor, we have Judge Conner, which

12   may take some time; then Corricelli, which I think is just

13   about the mail flowing through the mail system; and Armor

14   testifies, he's the last witness, about e-mails and how those,

15   you know, bounce around, interstate commerce.

16         MR. PERRI:  The case agent, Chris Cruz, may take a

17   little time, Your Honor.

18         THE COURT:  Okay.  Now just one other thing.  There

19   were two altercations that were mentioned in the motion.

20         MR. PERRI:  No, Your Honor.

21         THE COURT:  It was just two discussions about that

22   altercation, is that --

23         MR. PERRI:  No, Your Honor.  And I do describe this

24   in the motion in limine.  I'm trying to remember what's in

25   there.  But the May 13th thing was actually a phone call where

226

1    the Defendant called the Marshal Service.

2            THE COURT:  Yes, okay, fine.  You haven't adduced the

3    testimony of that yet.

4            MR. PERRI:  No.

5            THE COURT:  Are you going to?

6            MR. PERRI:  No.

7            THE COURT:  You're not going to?

8            MR. PERRI:  I'm not.

9            THE COURT:  So then I don't have to give a limiting

10   instruction on that.  I don't know how it's coming in.  That's

11   fine, all right.  That takes care of that issue.  All right.

12   Any other thing we need to resolve this evening?  Yes, Mr.

13   Dougherty?

14           MR. DOUGHERTY:  Again, the response that I had

15   provided that was limited to the prosecution's objections to my

16   jury instructions related to --

17           THE COURT:  Oh, yes.  Can you hand them up?  Do you

18   have a copy?

19           MR. DOUGHERTY:  Yes.  It just has the --

20           THE COURT:  You should probably not go further than

21   that, all right.  Thank you.

22           (Complied.)

23           THE COURT:  All right.  So what is the specific

24   instruction you want?

25           MR. DOUGHERTY:  Again, I put it in my version of it,

1  and the prosecution then filed an objection in similar form and

2  basically cited a lot of case law that was not relevant and

3  indicated I was trying to say that my argument on the first

4  amendment was exactly what was in *Watts*.  In fact, *Watts* was

5  only being referenced to indicate there's a different standard

6  than there is for your next-door neighbor threat or standard.

7  And it's made very clear in that one law review article

8  attached to that.

9          THE COURT:  Here's what I need from you though.  I

10  went back, and I actually read the transcript last week about

11  our last time we discussed jury instructions in court.  And

12  what I said to you then, I'm going to say now.

13          What I need from you, if you want a jury instruction,

14  is for you to give me the jury instruction you want.  I don't

15  want a law review article about what you think there might be

16  one.  Yes, Mr. Young?

17          MR. YOUNG:  Judge, I'm sorry to interject.  Just two

18  things.  One, I think the law review article is just him

19  showing support for why he believes a specific jury instruction

20  would be okay, now here is what I would suggest as the specific

21  jury instruction.

22          I have shown Mr. Dougherty in the past an example of

23  what I believe he's looking for, which is a specific jury

24  instruction, which I'm sure the clerk court can pull up.  It's

25  from *United States v. Joseph Brody* from the District of New

228

1   Jersey.

2          They were proposed jury instructions in that case

3   that deal with post-*Elonis* decisions dealing with the request

4   that the Court give the jury instruction that there must be

5   some type of specific intent on the Defendant's part for it to

6   be an actual true threat.

7          THE COURT:  Right.  I thought we do have a specific

8   intent instruction.  In the Government's proposed instructions,

9   I thought there's basically a subjective and objective

10  component.  I thought it was in the instructions.

11         MR. PERRI:  There are two ways of establishing the

12  mens rea for these offenses.  One is to show subjective intent.

13  The other is that you show he had knowledge that it would be

14  perceived as a threat.  There's two ways of doing that.

15         If what Mr. Young is suggesting there's only one way

16  of doing that, and that is to show subjective intent, that is

17  an incorrect statement of the law.  So I think that would be

18  something that the Court would have to look into.  And --

19  because based on my research, that's not right.

20         MR. YOUNG:  Judge, the last thing I'll say, and just,

21  again, there may be cases out there, and because they're

22  actively involved, they may see things dispositive on the

23  issue.  All I know in the post-*Elonis* landscape, because the

24  Court did not make a final decision as to recklessness versus

25  specific intent standard, that it is still somewhat

229

1  discretionary upon district courts in how they instruct juries

2  on what they need to find in terms of a mens rea.

3         If there's something out there that says, here's the

4  bright line rule that it can be shown each way post-*Elonis*,

5  then, of course, that's the law.

6         THE COURT:  Okay.  Is it fair, so both sides agree,

7  that *Elonis*, the Third Circuit's most recent *Elonis* decision,

8  is the last word the Third Circuit has issued on this issue?

9         MR. DOUGHERTY:  No.

10        THE COURT:  What more recent Third Circuit case do

11 you think there is?

12        MR. DOUGHERTY:  Again, the *Elonis,* too, in my reading

13 was a way to reaffirm that it would have been a valid

14 conviction anyway.  And it did not specifically address the

15 fact that the Supreme Court prohibited --

16        THE COURT:  That's not my question.  You might be

17 right on that.  I'm saying, out of the Third Circuit, is the

18 last word, the most recent word from the Third Circuit, not

19 from the Supreme Court, from the Third Circuit, is the most

20 recent word the most recent *Elonis* case?

21        MR. DOUGHERTY:  No.

22        THE COURT:  So what's the most recent *Elonis* case

23 then because --

24        MR. DOUGHERTY:  There was one referenced by the

25 prosecution that was *United States versus CVS* that had some

230

1  certain of that, but I don't believe it addressed the first

2  amendment issue.

3          THE COURT:  Okay.

4          MR. DOUGHERTY:  But again, to --

5          THE COURT:  We all want to try to get this right; the

6  Government, too.

7          MR. PERRI:  Absolutely.

8          THE COURT:  I have gone over the jury instruction.

9  The one change I made actually was I went back to *Elonis*.  And

10  I thought that the instruction 7 that I proposed was -- it was

11  verbatim.  I took it verbatim from the Third Circuit, so I

12  thought I can't be wrong about that.  So that's why I took

13  that.

14          But maybe -- I think we need to just address this.

15  So if you have cases that you find over the evening, bring them

16  to my attention in the morning.

17          MR. PERRI:  Judge, we'll certainly review those

18  cases.  But just as a reminder, when I submitted my proposed

19  jury instructions, I always put some case citations at the

20  bottom.

21          THE COURT:  I agree, yeah.

22          MR. PERRI:  I would ask you or your clerk perhaps to

23  review those.  Those were the most significant cases that I

24  could find.

25          THE COURT:  Okay.

1          MR. PERRI:  If there were any that were post-*Elonis*,
2  it would be in that.
3          THE COURT:  All right.  And I will take a look at
4  that.
5          MR. YOUNG:  Judge, I'm not trying to dispute the
6  Government, I'm sure it's good faith, the only thing I am
7  suggesting is that the Third Circuit, I understand that would
8  be the law here where we are, but given that the Supreme Court
9  decision was somewhat ambiguous in its final holding --
10          THE COURT:  Right.
11          MR. YOUNG:  -- and given that *Elonis* does not deal
12  with a public figure like we have here, those are just some
13  things to think about, that's all.  Because there is first
14  amendment demarkations between private actors and public
15  figures in first amendment protection of speech, and because
16  that does dovetail a little bit into the analysis of what type
17  of mens rea is necessary even in a criminal matter, it's just
18  something I think to be thoughtful of.
19          THE COURT:  I appreciate that.  What I need you to do
20  is, Mr. Dougherty, is write the jury instruction that you think
21  I should have to give.  Okay?  So I don't want a law review
22  article.  I can look this up, and you can cite it as support.
23  I want the jury -- do you understand?  Because this is what I
24  said to you at the last hearing, and I don't think you ever did
25  it.

232

1          MR. DOUGHERTY:  The point is, yes, I did.

2          THE COURT:  Well, where is it?  Because I'm looking

3    at the papers and --

4          MR. DOUGHERTY:  He gave me a copy of it.  That's what

5    I submitted, and the Government responded in opposition to it.

6    That is what this is, a reply brief.

7          THE COURT:  And it literally says, proposed jury

8    instruction number what?

9          MR. DOUGHERTY:  Yes.  And I reused the words that he

10   gave me exactly in the variations.  But I also turn around and

11   mention, you know, two other things; subject of intent and

12   *Watts* as a first amendment issue.  Then that's what prompted

13   him to suggest I was trying to say that the letter was

14   hyperbole.  That's not the point.

15         I used the petition protection standard, which it had

16   to be of official public policy that you were complaining about

17   or just like the, you know, the Borough of (inaudible), the

18   standard is the same.  It's still first amendment.  Speech can

19   be hyperbole, but it also can be complaint about official

20   government policy.

21         THE COURT:  All right.  Now what I want to know --

22   hold on a second, my clerk is handing me something.

23              (The Court and the law clerk confer.)

24         THE COURT:  So, you know, my clerk has pointed out to

25   me some language, which was DI 113.

1            MR. DOUGHERTY:  Okay.

2            THE COURT:  And you wrote -- it's captioned Proposed

3   Jury Instructions As a Vigorous Defense and Cross Complaint,

4   right.  And then in my mind, whether you meant it or not, in my

5   mind, you then go into a legal argument.  You say, since *Watts*,

6   through *Elonis*, U.S. Supreme Court has determined, da da da.

7   And you do discuss what, you know, you think the true threat,

8   it's a lengthy lengthy thing.

9            What I want from you is a specific instruction.  Do

10  you see the way the Government proposed instructions?

11           MR. DOUGHERTY:  Yes.

12           THE COURT:  Right.  So in other words, I don't want

13  any legal argument.  I want what is the paragraph or the

14  sentence or the three sentences that you propose I read to the

15  jury.

16           MR. DOUGHERTY:  Okay.

17           THE COURT:  All right?  And it is not to my

18  satisfaction in DI 113.  I am not going to go through -- I

19  mean, at some point the burden has to shift to you, okay?

20           MR. DOUGHERTY:  I'm just confused, Your Honor,

21  because, like I said, I thought I -- I calculated exactly what

22  he had handed me, what he just referenced.  I think it may have

23  been a later document, I don't know.  I'd have to get a look at

24  where the numbers are now.

25           THE COURT:  Well, you can do it this evening.  Do you

234

1   have documents there?

2           MR. DOUGHERTY:  What's that?

3           THE COURT:  Do you have the documents with you back

4   in your detention --

5           MR. DOUGHERTY:  No.  I have no way of getting to that

6   docket.  But I'll ask standby counsel if he can.

7           MR. YOUNG:  So, Judge, like I said, it's rather

8   simple.  Either I can work with the clerks here tomorrow to

9   pull it up because it's on ECF or I can go to the our defender

10  office at some point in the morning.

11          THE COURT:  That would be great, if you don't mind.

12          MR. YOUNG:  Sure.

13          THE COURT:  What is the name of the New Jersey case?

14          MR. YOUNG:  It's *United States v. Joseph Brody*.

15          THE COURT:  Right.

16          MR. YOUNG:  And it's District of New Jersey.

17          THE COURT:  All right, we'll find it.

18          MR. YOUNG:  And Judge Hillman presided over the case.

19          THE COURT:  You've cited that decision to me before.

20          MR. YOUNG:  Right.

21          THE COURT:  Okay, we will look at that.  We're not

22  going to have to make a decision on this tomorrow anyway.  But

23  I do think it could be Wednesday.

24          MR. ADKINS:  Judge, if I may, one thing?  I know we

25  were talking about timing of witnesses, and I failed to mention

1  Pat Armor would be the last witness.  I kind of came on this
2  case a little bit later.  But typically his testimony would be
3  something that we would typically ask a Defendant if he would
4  stipulate to the interstate requirements that Pat Armor would
5  testify to in relation to the e-mails and how they flow and all
6  that other stuff because Pat Armor would be an expert witness
7  and he can talk about that.
8        That's typically something I would probably ask if
9  that element would be satisfied because that's essentially what
10 we always do.  He's not going to talk about, you know, the
11 e-mail in its entirety or anything like that.  It's just about
12 the flow of the e-mails.
13        THE COURT:  Are you asking me to ask Mr. Dougherty?
14        MR. ADKINS:  I guess what I'm proposing is if there
15 is a stipulation that could be reached between the parties that
16 Mr. Armor's testimony would not be necessary, and it is as to
17 that element of interstate transmission of communications via
18 e-mail, which would be, I think, Counts 2 and 4.
19        THE COURT:  Okay.  So, Mr. Dougherty, you heard
20 basically the Government -- and it's true, in a lot of cases
21 the parties stipulate to the interstate commerce nexus.  It's
22 your choice.  You do not have to do that.  You might want to.
23 Why don't you think about it, and then tell us -- is he going
24 to come tomorrow?  Is that the point?
25        MR. ADKINS:  I think he's in the building, Your

236

1  Honor.  He's supposed to be here tomorrow, but he's in the

2  building.  So I don't think it's an issue.

3          MR. PERRI:  And, of course, Judge, a stipulation is

4  just a fancy word of saying, we agree to something that we're

5  really not fighting about.  And the fact that these e-mails

6  traveled in --

7          THE COURT:  Look, nobody is fighting the authenticity

8  of he e-mails.  I mean, that's not being fought.

9          MR. PERRI:  No.  I mean, that the e-mails affect and

10 travel in interstate commerce.

11         THE COURT:  I understand.  But I'm just saying Mr.

12 Dougherty might very well agree with this.  He's not fighting

13 the authenticity of the e-mails.  Do you want to -- are you

14 prepared to agree to tell the jury that the parties agree, that

15 they stipulate, that the two e-mails traveled in interstate

16 commerce and, therefore, that that element of the offense is

17 satisfied?  Or do you want to think about it?

18         MR. DOUGHERTY:  Yes.

19         THE COURT:  Okay.  All right, think about it.  And

20 you know you are -- that's your choice.  Again, I'm not trying

21 to force you to do that.  That is completely up to your choice.

22 The Government has the burden to prove every aspect of its

23 case.

24         MR. DOUGHERTY:  Um-hum.

25         THE COURT:  So, all right.  Anything else?  Okay.

237

1    Thank you very much.  We'll see you in the morning.

2              COURTROOM DEPUTY:  All rise.

3              (Proceeding adjourned for the day at 5:23 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

0

CERTIFICATION


        I, Wendy C. Yinger, Federal Official Realtime Court
Reporter, in and for the United States District Court for the
Middle District of Pennsylvania, do hereby certify that
pursuant to Section 753, Title 28, United States Code, that the
foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
above-entitled matter and that the transcript page format is in
conformance with the regulations of the Judicial Conference of
the United States.



                        /s/ Wendy C. Yinger
                        Wendy C. Yinger, RMR, CRR
                        U.S. Official Court Reporter
                        (717)440-1535




        (The foregoing of this transcript does not apply to any
reproduction of the same by any means unless under the direct
control and/or supervision of the certifying reporter.)

# 0

**00001415** [1] - 168:13
**04/07/2015** [1] - 181:14

# 1

**1** [14] - 31:10, 68:7, 70:3, 101:5, 102:16, 161:9, 166:17, 172:24, 173:8, 173:10, 184:5, 195:4, 221:17, 223:1
**10** [17] - 13:22, 30:4, 54:2, 67:11, 69:20, 70:7, 70:12, 75:5, 75:18, 76:19, 109:19, 113:3, 118:15, 122:25, 124:17, 166:18, 184:5
**10-CV-1071** [1] - 212:10
**10-CV-1071/11-2631** [1] - 183:24
**10th** [1] - 100:10
**11** [10] - 51:8, 70:13, 145:14, 183:3, 183:7, 184:2, 184:14, 185:1, 186:7, 187:3
**11(a)** [1] - 129:9
**11-2631** [1] - 174:18
**11-CV-1295/11-3598** [1] - 183:25
**113** [2] - 232:25, 233:18
**11:24** [1] - 75:2
**11:26** [1] - 75:19
**11:42** [1] - 75:24
**11:43** [1] - 75:20
**11:45** [1] - 77:12
**12** [12] - 32:9, 39:11, 39:14, 47:2, 47:3, 57:10, 70:13, 122:24, 122:25, 159:20, 161:21, 212:24
**12's** [1] - 169:3
**12(b** [1] - 162:23
**12(b)(2** [4] - 162:11, 163:1, 163:12, 163:13
**12(b)(3** [1] - 163:14
**12(b)(4** [2] - 163:14, 165:2
**12(b)(5** [2] - 163:12,

163:15
**12(g)(2** [1] - 162:15
**12(h)** [4] - 153:13, 155:25, 161:24, 162:6
**12(h)(1** [1] - 162:9
**12.3** [6] - 137:25, 168:24, 169:1, 169:4, 169:12, 172:10
**123** [1] - 130:16
**12:05** [1] - 88:11
**12:06** [1] - 89:15
**13** [7] - 33:4, 33:7, 33:18, 47:5, 57:10, 70:14, 150:10
**13-CV-447** [1] - 212:10
**13-CV-447/13-3772** [1] - 183:25
**13th** [4] - 26:13, 193:4, 219:23, 225:25
**14** [12] - 33:4, 39:11, 67:12, 69:1, 69:15, 69:18, 69:25, 70:2, 70:14, 103:4, 106:23, 186:14
**140-page** [1] - 125:1
**15** [7] - 69:20, 70:8, 74:24, 76:2, 124:17, 186:18, 189:7
**15(a)(1** [1] - 162:17
**15-1780** [2] - 181:17, 209:22
**15-CV-1845** [1] - 169:18
**15-CV-582** [2] - 28:10, 29:18
**15-CV-what** [1] - 29:23
**15-minute** [1] - 74:21
**150** [1] - 123:20
**16** [7] - 56:13, 56:14, 69:20, 70:8, 170:5, 170:11
**16(b)(4)** [1] - 165:2
**16.1** [1] - 35:12
**1654** [1] - 131:10
**1682** [2] - 99:25, 173:19
**1682)** [1] - 166:12
**17** [1] - 149:6
**17-CV-01541** [1] - 114:6
**1777** [2] - 100:10, 166:18
**1789** [1] - 103:6
**17th** [1] - 218:21
**18** [4] - 56:21, 69:20, 70:9, 186:21
**1966** [1] - 103:12

163:15
**1975** [1] - 166:17
**1978** [1] - 101:5
**1983** [1] - 142:25
**19th** [1] - 149:22
**1:00** [2] - 88:6, 89:14
**1:05** [2] - 89:14, 89:16
**1:17-CV-01541** [1] - 113:10
**1st** [2] - 150:4, 150:19

# 2

**2** [24] - 31:13, 39:12, 43:22, 53:9, 62:16, 64:21, 64:22, 66:5, 66:22, 68:5, 68:6, 68:7, 68:9, 68:10, 70:5, 124:22, 130:24, 162:21, 163:3, 163:9, 168:12, 188:21, 195:4, 235:18
**2-A** [1] - 139:1
**20** [10] - 31:12, 62:23, 69:21, 70:10, 71:20, 71:22, 72:5, 117:6, 134:11, 208:19
**200** [3] - 123:20, 125:9, 132:10
**2006** [1] - 101:18
**2007** [1] - 131:11
**2010** [1] - 177:24
**2011** [4] - 173:5, 173:9, 174:18, 175:3
**2012** [1] - 178:1
**2015** [25] - 26:12, 27:9, 27:10, 27:19, 30:20, 31:13, 32:9, 103:23, 178:25, 179:15, 180:11, 193:4, 193:11, 195:7, 205:7, 206:21, 208:19, 213:7, 213:21, 218:24, 219:6, 219:23, 222:6, 224:6, 224:14
**2016** [1] - 105:4
**2017** [12] - 146:22, 147:13, 150:4, 150:9, 150:10, 150:16, 150:19, 169:22, 169:24, 223:3, 223:11, 224:9
**2018** [3] - 129:20, 149:21, 149:22
**2019** [1] - 27:8
**2021** [1] - 178:1
**2077** [1] - 212:9
**20th** [2] - 32:9, 36:24

**21** [6] - 21:23, 21:25, 22:3, 25:23, 25:25, 186:25
**22** [2] - 69:21, 70:12
**2201** [1] - 143:4
**23** [3] - 69:21, 70:12, 187:16
**23rd** [4] - 64:15, 150:9, 150:10, 150:16
**24** [2] - 69:21, 70:13
**25** [4] - 53:25, 54:14, 71:24, 124:3
**25th** [1] - 35:9
**26** [3] - 33:22, 33:23, 183:15
**26-page** [1] - 33:17
**27** [3] - 69:21, 70:13, 181:11
**28** [8] - 127:13, 131:10, 143:4, 152:11, 183:10, 184:10, 212:8, 212:9
**29** [3] - 69:21, 70:14, 102:13
**2nd** [2] - 129:20, 169:23, 169:24

# 3

**3** [16] - 18:17, 31:14, 46:22, 46:23, 53:25, 70:6, 125:25, 128:19, 132:3, 162:21, 163:1, 163:4, 163:9, 173:8, 173:9, 185:23
**30** [7] - 44:21, 64:17, 67:10, 69:21, 70:14, 131:14, 224:14
**30th** [11] - 30:20, 32:18, 193:11, 196:23, 206:21, 206:23, 208:8, 213:21, 221:23, 222:3, 224:6
**31** [1] - 62:24
**31st** [3] - 146:22, 147:12, 169:22
**32** [3] - 67:19, 68:3, 68:22
**33** [5] - 68:5, 68:7, 68:11, 68:12
**34** [1] - 49:25
**36** [3] - 48:21, 48:22, 63:2
**37** [2] - 49:12, 166:17
**38** [1] - 49:16
**39** [1] - 63:6

**3:00** [1] - 155:18
**3:02** [1] - 154:9
**3:09** [1] - 159:17
**3:22** [1] - 159:18
**3:23** [1] - 160:6

# 4

**4** [17] - 31:15, 55:1, 62:18, 70:8, 104:20, 134:14, 134:16, 135:7, 162:21, 163:1, 163:4, 163:9, 172:11, 172:24, 189:1, 195:4, 235:18
**4-A** [2] - 135:13, 136:1
**4/30/15** [1] - 222:12
**4/30/2015** [1] - 200:8
**403** [1] - 167:25
**404(b** [3] - 26:10, 214:8, 223:18
**41** [1] - 62:25
**422** [1] - 166:16
**44** [1] - 63:5
**46** [1] - 212:8
**46(bravo** [1] - 183:10
**47** [3] - 65:18, 66:4, 66:22
**48** [1] - 63:3
**4:00** [1] - 155:19
**4:57** [1] - 217:16

# 5

**5** [14] - 31:20, 55:17, 70:8, 97:9, 124:17, 129:15, 157:10, 158:1, 162:11, 162:21, 163:4, 163:10, 172:25, 187:24
**5)** [1] - 163:1
**5-A** [1] - 114:3
**5-B** [2] - 120:11, 121:18
**5-C** [2] - 120:11, 128:7
**5-D** [2] - 120:11, 130:19
**5-E** [2] - 120:12, 133:22
**50** [4] - 63:1, 63:4, 102:10, 124:3
**51** [1] - 57:8
**53** [1] - 63:10
**55** [16] - 149:17, 151:4, 151:9, 151:12, 153:12, 153:15, 153:17, 153:23,

153:24, 154:19,
155:8, 155:16,
155:20, 156:3,
160:13
**55(c** [1] - 164:13
**57** [2] - 58:2, 63:7
**58** [1] - 29:17
**58-page** [1] - 30:22
**582** [1] - 29:24
**5:00** [2] - 157:8,
224:11
**5:23** [1] - 237:3
**5th** [1] - 174:18

## 6

**6** [15] - 13:22, 31:21,
31:22, 62:20, 67:12,
69:19, 70:4, 70:9,
180:16, 182:2,
186:4, 218:2, 218:3,
218:19, 222:6
**608** [1] - 202:24
**6:00** [1] - 97:9

## 7

**7** [9] - 31:23, 62:21,
69:19, 70:4, 70:9,
130:10, 172:25,
222:6, 230:10
**7th** [8] - 180:10, 213:7,
213:10, 218:22,
218:23, 219:6,
222:23

## 8

**8** [3] - 45:22, 46:8,
70:9
**806** [1] - 166:16
**8:42** [1] - 4:1
**8:45** [1] - 217:12
**8th** [7] - 26:12, 26:23,
26:25, 27:8, 193:1,
193:6, 206:22

## 9

**9** [9] - 4:24, 62:22,
69:20, 70:7, 70:12,
169:18, 184:5,
217:10
**9/23** [1] - 169:17
**9366153** [1] - 213:21
**99** [1] - 203:20
**9:00** [1] - 4:22

**9:30** [1] - 4:20
**9:59** [1] - 38:8
**9th** [1] - 149:21

## A

**A-L-E-M-A-N** [1] -
190:9
**a.m** [6] - 4:1, 38:8,
75:2, 75:19, 75:20,
77:12
**a/k/a** [1] - 183:11
**abide** [3] - 16:19,
20:17, 83:5
**ability** [7] - 45:23,
46:1, 52:21, 53:22,
55:24, 57:24, 117:19
**able** [22] - 5:2, 6:1,
6:4, 7:12, 9:8, 17:16,
22:10, 25:17, 51:25,
52:10, 52:24, 65:20,
71:11, 72:2, 92:19,
99:1, 106:14,
111:25, 112:1,
144:23, 176:10,
205:9
**able-bodied** [2] -
22:10, 25:17
**absolute** [2] - 25:9,
188:11
**absolutely** [2] - 99:8,
230:7
**abundance** [1] - 26:21
**abuse** [1] - 145:23
**accept** [7] - 52:7,
79:15, 84:17, 86:3,
143:17, 146:11,
193:14
**acceptable** [8] - 6:12,
10:11, 10:12, 11:6,
73:9, 92:6, 153:3,
157:17
**access** [3] - 10:21,
36:13, 176:9
**accident** [1] - 59:17
**accomplished** [2] -
28:25, 30:15
**accordance** [3] -
52:11, 99:19, 212:9
**according** [7] - 22:9,
25:10, 30:21, 64:25,
166:14, 188:14,
201:18
**accordingly** [2] -
127:20, 152:13
**account** [14] - 197:1,
197:2, 199:5, 202:1,
202:3, 202:12,
202:19, 203:1,

206:21, 206:23,
208:23, 209:2,
209:13, 215:25
**accounts** [5] - 100:24,
101:20, 101:23,
208:22, 215:24
**accurate** [2] - 135:22,
167:20
**accused** [3] - 9:13,
25:9, 52:3
**achieve** [2] - 106:24,
130:13
**ACLU** [7] - 22:6,
22:17, 22:21, 23:1,
25:2, 25:22, 25:24
**acquainted** [1] - 43:20
**Act** [5] - 103:7,
105:15, 130:17,
146:8, 183:13
**acted** [1] - 117:8
**acting** [14] - 14:15,
16:20, 19:3, 20:7,
20:9, 20:16, 22:10,
42:8, 79:11, 82:23,
83:4, 141:9, 156:18,
175:16
**Acting** [1] - 115:21
**action** [13] - 109:11,
129:12, 133:16,
134:12, 142:11,
143:6, 146:19,
149:4, 169:15,
172:18, 184:18,
185:6, 207:16
**actions** [4] - 101:21,
125:3, 132:14, 147:3
**active** [2] - 49:23,
118:15
**actively** [1] - 228:22
**activities** [1] - 105:7
**activity** [9] - 22:7,
22:9, 24:18, 35:16,
36:18, 104:12,
190:18, 220:24,
223:22
**actors** [1] - 231:14
**actual** [8] - 13:13,
78:7, 105:25,
143:14, 151:4,
160:10, 166:20,
228:6
**adamant** [1] - 12:10
**add** [5] - 20:6, 22:24,
169:19, 202:17,
224:5
**added** [1] - 206:18
**adding** [1] - 148:8
**Addington** [1] -
137:18
**addition** [1] - 18:5

**additional** [1] - 171:8
**address** [13] - 4:15,
13:15, 15:23, 88:12,
89:3, 89:7, 89:19,
135:18, 136:12,
136:20, 217:8,
229:14, 230:14
**addressed** [5] - 8:1,
11:21, 94:9, 181:18,
230:1
**addresses** [2] -
136:15, 169:5
**addressing** [3] -
104:13, 155:10,
219:10
**adduce** [1] - 28:1
**adduced** [1] - 226:2
**adducing** [1] - 27:22
**adjourned** [1] - 237:3
**adjudicating** [1] -
106:7
**ADKINS** [7] - 4:5,
34:4, 225:6, 225:11,
234:24, 235:14,
235:25
**Adkins** [4] - 4:5,
41:25, 43:18, 90:8
**administer** [1] - 73:24
**Administration** [2] -
47:7, 60:19
**administrative** [4] -
115:11, 116:6,
119:10, 210:13
**admissible** [1] -
200:16
**admission** [7] - 27:1,
114:21, 121:14,
135:25, 162:19,
182:2, 184:20
**admissions** [1] - 27:2
**admitted** [17] - 114:24,
115:2, 121:16,
121:24, 136:3,
145:12, 145:20,
182:4, 203:9,
214:17, 215:4,
215:8, 215:9,
215:11, 218:9,
219:18
**adopted** [2] - 166:17,
173:9
**advance** [1] - 9:25
**Advancement** [1] -
23:10
**advantage** [2] - 12:14
**advice** [3] - 13:13,
14:14, 159:9
**advised** [1] - 14:2
**advises** [1] - 13:19
**advising** [2] - 12:4,

106:3
**advisory** [1] - 102:3
**advocates** [1] - 60:10
**affect** [7] - 52:20,
52:24, 53:22, 55:23,
56:8, 57:23, 236:9
**affidavit** [11] - 29:12,
29:19, 30:5, 31:1,
31:7, 32:1, 33:4,
150:23, 160:16,
160:24, 161:13
**affidavits** [2] - 28:13,
28:20
**affiliation** [2] - 24:17,
52:16
**affirmatively** [2] -
200:17, 201:13
**afford** [1] - 93:15
**aful** [1] - 202:24
**afternoon** [5] - 90:4,
107:16, 107:17,
177:16, 177:17
**age** [2] - 52:15, 69:9
**agencies** [2] - 108:4,
110:4
**Agencies** [1] - 131:14
**Agency** [1] - 46:20
**agency** [7] - 44:14,
44:16, 146:9,
146:13, 146:19,
147:7, 178:22
**AGENT** [3] - 4:7,
10:24, 11:14
**agent** [13] - 11:4, 42:1,
46:24, 51:20, 51:22,
102:20, 196:10,
215:17, 215:23,
218:1, 225:16
**Agent** [1] - 190:6
**ages** [1] - 141:5
**agitation** [1] - 192:15
**ago** [8] - 44:18, 44:21,
53:25, 54:2, 54:14,
55:5, 57:10, 64:1
**AGR** [2] - 51:13, 51:16
**agree** [24] - 17:18,
24:22, 25:3, 63:17,
79:18, 80:13, 153:5,
155:12, 156:20,
157:1, 157:3,
163:23, 174:3,
179:19, 219:9,
222:13, 223:23,
229:6, 230:21,
236:4, 236:12,
236:14
**agreement** [1] -
175:24
**agrees** [1] - 72:17
**ahead** [7] - 48:10,

112:3, 112:6, 144:4, 175:18, 175:21, 203:16
**aids** [1] - 52:23
**aim** [2] - 88:5, 89:13
**Air** [2] - 49:24, 56:6
**air** [1] - 41:8
**al** [4] - 30:2, 122:17, 122:23, 141:24
**Aleman** [3] - 190:6, 190:8, 191:1
**align** [1] - 23:12
**allegation** [1] - 131:6
**allegedly** [1] - 215:9
**alleging** [1] - 131:1
**allow** [8] - 11:2, 80:15, 81:5, 142:17, 157:4, 165:21, 184:22, 199:10
**allowed** [20] - 81:9, 82:2, 100:5, 100:15, 100:16, 100:17, 103:13, 110:22, 136:19, 139:19, 139:25, 156:23, 162:17, 163:20, 165:15, 165:20, 166:3, 173:16, 173:18
**allowing** [2] - 144:7, 165:18
**allows** [1] - 131:14
**almost** [4] - 22:3, 90:23, 152:9, 201:14
**altercation** [8] - 27:12, 27:14, 218:6, 218:9, 221:21, 221:22, 221:23, 225:22
**altercations** [1] - 225:19
**alternate** [6] - 73:3, 75:8, 75:12, 75:15, 77:25, 78:2
**alternates** [3] - 39:12, 39:13, 67:13
**alternative** [5] - 73:8, 184:17, 185:4, 185:6, 189:15
**ambiguous** [1] - 231:9
**amended** [2] - 170:18
**amendment** [19] - 19:8, 25:8, 25:12, 25:15, 42:16, 137:23, 162:17, 168:23, 169:19, 183:8, 188:6, 212:12, 212:14, 227:4, 230:2, 231:14, 231:15, 232:12, 232:18

**amendments** [1] - 18:7
**America** [2] - 90:7, 103:8
**Americans** [1] - 93:13
**amount** [6] - 117:7, 123:21, 152:6, 161:14, 163:21
**amounts** [2] - 99:21, 161:23
**AN** [2] - 10:24, 11:14
**Analysis** [1] - 134:13
**analysis** [5] - 93:3, 129:16, 179:20, 205:25, 231:16
**ancient** [2] - 167:7, 167:12
**and's** [1] - 44:22
**anger** [1] - 140:8
**angry** [5] - 98:7, 98:8, 138:9, 182:16, 224:1
**annotations** [1] - 123:10
**answer** [7] - 9:4, 9:6, 29:4, 40:19, 40:21, 48:15, 176:20
**answered** [3] - 44:25, 175:8, 207:10
**anyway** [4] - 21:24, 194:19, 229:14, 234:22
**apologies** [1] - 196:12
**apologize** [2] - 51:15, 193:3
**appeal** [2] - 110:12, 113:13
**appealed** [1] - 180:2
**appealing** [1] - 111:1
**Appeals** [8] - 132:17, 133:4, 179:22, 179:24, 180:6, 180:7, 180:24, 210:13
**appeals** [3] - 110:13, 115:7, 172:24
**appear** [12] - 100:3, 103:9, 114:10, 129:12, 133:18, 133:22, 135:22, 166:14, 175:25, 181:22, 192:12
**appearance** [8] - 14:12, 97:15, 119:17, 119:21, 149:7, 169:23, 169:24, 170:4
**appeared** [1] - 189:14
**appearing** [2] - 99:9, 161:15
**appellants** [1] - 211:5

**appellate** [1] - 23:4
**applicable** [1] - 167:7
**applications** [2] - 35:3, 67:4
**applied** [3] - 104:1, 105:22, 131:10
**applies** [2] - 39:23, 93:2
**apply** [8] - 20:15, 40:1, 79:14, 79:16, 80:9, 80:20, 87:16
**applying** [1] - 163:16
**appreciate** [3] - 16:7, 17:9, 231:19
**apprehension** [1] - 178:12
**approach** [6] - 24:25, 32:20, 113:24, 120:7, 135:9, 180:12
**appropriate** [9] - 14:19, 15:22, 24:19, 100:4, 144:10, 151:20, 156:25, 201:16, 220:17
**appropriately** [2] - 141:9, 151:18
**approved** [3] - 35:1, 36:15, 214:2
**April** [27] - 30:20, 31:12, 32:18, 180:10, 193:4, 193:10, 193:11, 195:7, 196:23, 206:21, 206:23, 208:7, 213:7, 213:10, 213:21, 218:21, 218:22, 218:23, 219:6, 219:23, 221:23, 222:3, 222:6, 222:23, 224:6, 224:14
**area** [4] - 11:18, 49:9, 179:24, 179:25
**areas** [1] - 178:9
**argue** [3] - 86:2, 86:5, 198:10
**argument** [10] - 85:8, 86:7, 98:1, 129:19, 155:14, 206:6, 223:18, 227:3, 233:5, 233:13
**arguments** [8] - 84:5, 86:1, 86:8, 133:15, 139:9, 140:25, 165:1, 174:15
**Armor** [7] - 34:8, 34:9, 44:4, 225:13, 235:1, 235:4, 235:6
**Armor's** [1] - 235:16

**arms** [5] - 188:3, 188:7, 188:11, 212:16
**Army** [2] - 49:6, 49:23
**arrange** [1] - 71:3
**arrived** [3] - 97:16, 196:10, 198:21
**arriving** [1] - 198:13
**arrow** [1] - 123:9
**Article** [3] - 100:1, 104:19, 184:5
**article** [8] - 100:8, 102:11, 102:12, 166:12, 227:7, 227:15, 227:18, 231:22
**articulate** [1] - 224:18
**aside** [1] - 58:20
**asides** [1] - 133:11
**aspect** [1] - 236:22
**assassinated** [2] - 183:7, 184:3
**assassination** [2] - 184:2, 184:9, 189:17
**assassinations** [1] - 188:13
**assault** [1] - 56:5
**assert** [1] - 130:5
**asserted** [2] - 137:25, 168:24
**assess** [2] - 8:20, 182:18
**assessment** [2] - 170:19, 194:17
**assign** [2] - 147:3, 210:16
**assigned** [8] - 38:23, 111:23, 119:7, 146:5, 146:17, 150:16, 150:18, 173:7
**assigning** [1] - 211:4
**assist** [1] - 13:10
**Assistant** [4] - 41:18, 41:23, 41:25, 108:1
**associated** [4] - 31:20, 44:2, 123:6, 131:17
**Association** [1] - 23:9
**association** [2] - 101:8
**assume** [3] - 9:5, 147:13, 181:21
**assumes** [3] - 147:16, 163:6, 174:23
**assuming** [2] - 200:13, 206:14
**assure** [1] - 145:16
**assured** [1] - 16:19
**attach** [2] - 84:11,

88:22
**attached** [4] - 30:23, 33:20, 100:8, 227:8
**attaching** [1] - 83:22
**attacked** [3] - 59:5, 59:6, 145:5
**attacking** [1] - 140:20
**attacks** [1] - 133:11
**attempt** [1] - 139:23
**attempted** [6] - 58:23, 125:5, 136:18, 174:13, 175:25, 208:7
**attempting** [3] - 126:16, 164:23, 184:4
**attempts** [5] - 125:25, 126:10, 150:13, 201:13, 213:1
**attended** [1] - 164:1
**attention** [21] - 52:21, 75:13, 75:16, 78:1, 82:7, 83:24, 84:8, 106:9, 124:21, 128:18, 133:21, 134:3, 137:9, 179:14, 183:15, 183:16, 184:11, 187:24, 191:17, 196:15, 230:16
**Attorney** [10] - 41:19, 41:23, 41:25, 107:21, 107:24, 108:1, 146:5, 146:20, 147:10, 147:12
**attorney** [13] - 16:21, 19:3, 20:5, 20:7, 101:24, 101:25, 105:13, 117:15, 117:17, 125:7, 129:2, 139:25, 173:12
**Attorney's** [3] - 41:24, 90:6, 146:8
**attorneys** [1] - 103:15
**audience** [1] - 191:20
**August** [5] - 35:9, 146:21, 147:12, 169:22, 174:18
**AUSA** [2] - 137:25, 168:24
**authenticity** [2] - 236:7, 236:13
**author** [1] - 194:14
**authored** [1] - 128:14
**authority** [5] - 91:25, 92:1, 101:23, 138:3, 169:5
**authorized** [3] -

102:20, 145:10, 163:19
**available** [3] - 28:9, 131:16, 204:14
**averaged** [1] - 134:7
**avers** [3] - 137:14, 171:14
**avoid** [3] - 14:11, 119:17, 119:21
**avoiding** [1] - 82:9
**award** [1] - 125:8
**aware** [45] - 27:18, 105:19, 129:10, 130:13, 138:11, 138:16, 152:2, 153:6, 155:7, 168:6, 169:1, 169:10, 171:24, 174:18, 174:21, 174:25, 175:1, 175:2, 175:8, 176:4, 176:5, 176:12, 176:16, 176:19, 176:20, 176:21, 186:17, 188:4, 194:3, 194:14, 200:23, 202:18, 205:7, 206:3, 206:9, 207:2, 207:4, 207:9, 208:23, 221:19, 221:20, 223:11
**awkward** [1] - 81:13
**ax** [1] - 140:20

**B**

**background** [6] - 90:19, 91:2, 130:24, 132:13, 178:3, 194:8
**backing** [1] - 165:6
**backside** [1] - 192:1
**bad** [3] - 26:19, 26:21, 27:24
**balance** [4] - 9:12, 25:4, 25:5, 168:3
**ballpark** [1] - 110:8
**ballyhoo** [1] - 28:14
**bank** [2] - 101:20, 101:22
**bargain** [1] - 53:18
**barrage** [1] - 134:10
**barrier** [1] - 8:12
**base** [2] - 49:7, 49:10
**based** [17] - 23:14, 39:20, 40:13, 52:6, 74:12, 78:13, 93:2, 108:6, 110:6, 118:6, 119:6, 172:11, 173:10, 180:1,

195:4, 228:19
**basic** [2] - 18:2, 96:6
**basics** [1] - 13:22
**basing** [2] - 152:18, 174:2
**basis** [11] - 66:12, 66:16, 66:17, 66:19, 135:7, 137:23, 144:6, 166:1, 168:22, 174:4, 200:21
**bathroom** [1] - 159:15
**battery** [1] - 56:5
**battle** [2] - 99:1, 105:18
**bear** [4] - 188:3, 188:6, 188:11, 212:16
**bears** [1] - 95:25
**became** [3] - 98:7, 100:9, 122:19
**become** [5] - 100:13, 101:4, 103:18, 164:9, 194:3
**becomes** [3] - 7:9, 39:14, 111:21
**beeline** [1] - 10:18
**began** [2] - 63:14, 99:4
**beginning** [5] - 69:6, 103:22, 140:10, 192:14, 212:17
**behalf** [14] - 16:6, 38:21, 110:21, 129:10, 132:14, 136:18, 149:8, 152:21, 161:18, 162:22, 169:24, 173:12, 198:14, 198:18
**behave** [1] - 11:9
**behavior** [3] - 26:20, 26:21, 27:24
**behind** [7] - 7:1, 10:1, 15:2, 15:6, 50:3, 57:16, 192:2
**Bel** [1] - 56:6
**belief** [2] - 87:15, 87:16
**beliefs** [1] - 52:1
**believable** [1] - 87:20
**believes** [2] - 61:10, 227:19
**belonged** [1] - 60:9
**below** [2] - 122:23, 212:5
**bench** [1] - 41:9
**beneath** [3] - 104:17, 106:4, 210:23
**benefit** [1] - 113:8

**benefits** [2] - 60:22, 60:25
**bent** [1] - 102:18
**Berger** [1] - 137:17
**best** [5] - 14:16, 117:11, 117:17, 125:1, 132:22
**Best** [1] - 129:4
**bestautosales1@ gmail.com** [1] - 136:17
**better** [13] - 4:21, 15:19, 24:10, 35:18, 35:20, 65:21, 79:5, 146:3, 162:8, 183:23, 189:20, 189:21, 189:22
**between** [21] - 37:2, 79:4, 79:22, 93:10, 95:18, 95:19, 96:2, 99:2, 102:15, 102:16, 106:12, 109:4, 110:17, 112:10, 118:12, 123:20, 157:9, 170:3, 174:7, 231:14, 235:15
**beyond** [2] - 13:12, 42:20, 42:22, 52:14, 85:19, 90:13, 91:15, 95:14, 98:18, 104:1, 104:8, 170:22
**bias** [1] - 80:19
**biases** [1] - 87:12
**big** [3] - 129:16, 139:11, 167:22
**biggest** [1] - 55:20
**bit** [19] - 86:17, 89:25, 91:2, 92:8, 95:12, 96:1, 96:10, 98:15, 103:20, 119:4, 139:20, 143:18, 165:16, 197:16, 200:12, 203:5, 220:25, 231:16, 235:2
**black** [1] - 49:21
**blend** [1] - 133:15
**Blewitt** [2] - 115:17, 186:6
**blocks** [2] - 95:9, 95:10
**blue** [2] - 179:8, 179:9
**board** [1] - 68:25
**bodied** [2] - 22:10, 25:17
**bodily** [1] - 95:4
**body** [1] - 72:10
**book** [3] - 13:21, 159:21, 167:22

**books** [3] - 162:1, 162:2, 167:23
**Borough** [1] - 232:17
**bottom** [11] - 35:23, 132:4, 183:18, 185:23, 186:4, 186:7, 186:9, 186:18, 187:25, 188:21, 230:20
**bounce** [1] - 225:15
**boundary** [1] - 91:14
**box** [7] - 29:22, 36:13, 65:20, 67:13, 68:1, 72:20, 143:9
**brain** [1] - 82:12
**branch** [1] - 178:14
**bravo** [1] - 212:8
**break** [18] - 70:6, 73:23, 74:1, 74:2, 74:14, 74:20, 74:21, 75:16, 76:11, 77:20, 84:25, 89:7, 141:17, 154:5, 157:18, 158:6, 159:16, 189:19
**breaking** [1] - 216:15
**breaks** [1] - 15:8
**breathing** [1] - 117:14
**Brent** [1] - 129:4
**bribe** [2] - 105:10, 105:13
**brief** [5] - 63:25, 129:18, 173:3, 174:20, 232:6
**briefing** [2] - 109:4, 206:5
**briefly** [3] - 65:1, 77:18, 90:21
**bright** [1] - 229:4
**bring** [32] - 4:16, 28:18, 37:6, 37:13, 38:1, 71:13, 71:19, 71:25, 72:2, 74:24, 76:18, 76:20, 77:11, 79:25, 80:18, 80:19, 86:21, 118:11, 118:17, 119:3, 119:23, 136:18, 155:15, 155:17, 159:19, 170:13, 174:13, 196:14, 200:17, 202:13, 217:20, 230:15
**bringing** [2] - 24:23, 174:15
**brings** [1] - 174:17
**Brody** [2] - 227:25, 234:14
**brother** [4] - 48:16, 49:23, 50:7, 51:4

**brother-in-laws** [1] - 51:4
**brought** [16] - 4:19, 4:21, 38:7, 71:3, 71:20, 75:6, 77:12, 90:1, 110:20, 142:24, 148:17, 160:6, 174:10, 191:16, 204:9, 213:7
**Bucks** [2] - 57:20, 57:22
**Budget** [1] - 48:12
**buds** [1] - 5:14
**building** [15] - 28:15, 62:5, 93:19, 95:9, 95:10, 95:21, 193:18, 193:19, 193:20, 196:25, 197:2, 208:12, 208:24, 235:25, 236:2
**built** [2] - 100:11, 101:4
**bullying** [1] - 46:3
**bunch** [5] - 43:14, 46:21, 67:23, 98:8, 125:20
**burden** [8] - 42:18, 56:24, 56:25, 85:4, 85:18, 90:14, 233:19, 236:22
**Bureau** [1] - 116:21
**business** [7] - 101:11, 101:18, 116:24, 117:13, 139:22, 172:20, 172:22
**businesses** [4] - 110:23, 139:19, 140:3, 174:2
**busy** [1] - 123:19
**but's** [1] - 44:22
**button** [1] - 197:10
**BY** [44] - 107:15, 112:7, 114:1, 115:1, 119:2, 120:9, 121:17, 122:8, 135:11, 136:4, 141:21, 142:19, 143:3, 144:13, 145:9, 148:10, 149:12, 160:9, 162:4, 163:11, 165:24, 168:10, 168:20, 171:6, 172:15, 175:4, 175:10, 175:22, 177:15, 179:13, 180:14, 182:5, 195:18, 196:8, 196:22, 197:23,

5

203:18, 204:2,
205:24, 206:12,
207:13, 210:9,
213:24, 215:20

# C

C-A-L-E-B [1] - 107:8
C-O-N-T-I-[1] - 117:25
calculated [1] -
233:21
calculations [1] -
184:23
Caldwell [5] - 33:10,
115:16, 186:3,
186:13, 198:19
CALEB [1] - 107:5
Caleb [6] - 34:10,
44:2, 107:4, 107:8,
107:19, 149:7
California [1] - 166:16
calm [2] - 192:14,
204:18
calmed [1] - 182:17
candidly [1] - 9:2
cannot [8] - 25:13,
40:13, 104:22,
105:11, 105:23,
128:2, 129:10
capable [1] - 40:24
capacity [3] - 20:9,
43:4, 107:23
captain [1] - 13:5
caption [1] - 130:20
captioned [1] - 233:2
car [1] - 97:5
carbon [1] - 136:12
carcasses [1] - 184:16
card [2] - 64:9, 64:10
cards [1] - 60:20
care [7] - 4:14, 16:9,
21:5, 85:1, 101:22,
156:16, 226:11
careful [5] - 19:15,
83:22, 159:12,
175:13, 175:18
carefully [2] - 92:25,
93:2
Carlson [4] - 115:17,
186:2, 186:9, 186:13
carried [4] - 93:25,
101:9, 173:19,
194:22
carries [1] - 194:20
carry [4] - 188:13,
190:25, 191:4, 195:1
carrying [2] - 187:9,
189:22
case [213] - 12:11,

14:13, 18:20, 19:7,
38:13, 38:17, 39:3,
39:5, 39:6, 39:20,
42:1, 42:15, 42:17,
42:18, 44:2, 44:8,
45:10, 46:1, 52:5,
53:7, 53:11, 53:14,
53:22, 54:3, 54:5,
55:13, 55:15, 57:11,
57:20, 57:22, 58:5,
58:12, 58:18, 61:15,
61:25, 73:25, 74:5,
74:7, 74:12, 77:6,
78:3, 78:8, 79:10,
79:20, 79:21, 79:23,
81:1, 81:3, 81:8,
81:10, 81:15, 81:18,
81:19, 81:23, 82:3,
82:5, 82:6, 82:12,
83:7, 85:14, 85:15,
85:16, 85:21, 85:23,
87:13, 88:3, 88:18,
90:22, 90:23, 90:25,
92:11, 93:6, 94:17,
94:24, 95:13, 95:15,
95:17, 96:8, 97:22,
97:24, 98:4, 98:6,
98:21, 102:22,
104:1, 104:15,
109:4, 109:5, 109:6,
109:12, 110:11,
110:17, 110:24,
111:16, 111:19,
111:23, 113:2,
113:10, 113:12,
113:21, 114:5,
114:6, 114:15,
114:18, 115:3,
117:1, 117:23,
118:7, 118:9,
118:12, 118:18,
119:5, 119:7, 119:8,
119:13, 119:15,
120:1, 120:16,
120:18, 120:23,
122:22, 122:25,
123:3, 123:6,
123:20, 123:22,
123:24, 124:1,
126:13, 126:17,
126:25, 127:2,
127:4, 128:13,
130:20, 130:22,
133:24, 133:25,
134:25, 138:13,
139:12, 140:9,
140:14, 142:1,
144:7, 144:11,
144:23, 146:10,
146:11, 146:14,
146:17, 147:3,

147:8, 148:14,
149:14, 149:20,
150:3, 150:7,
150:16, 150:18,
151:20, 151:22,
152:16, 152:25,
153:1, 160:12,
164:8, 166:21,
169:12, 169:13,
169:20, 170:10,
174:18, 176:12,
176:13, 180:4,
181:15, 181:16,
182:15, 185:7,
185:11, 201:17,
201:22, 204:15,
205:15, 206:17,
206:19, 209:22,
211:13, 214:3,
216:25, 217:3,
217:6, 217:7, 225:3,
225:16, 227:2,
228:2, 229:10,
229:20, 229:22,
230:19, 234:13,
234:18, 235:2,
236:23
case-in-chief [3] -
144:23, 201:17,
225:3
cases [51] - 39:15,
54:8, 55:19, 99:12,
99:14, 101:19,
106:1, 106:7, 106:8,
108:24, 109:9,
109:22, 110:8,
110:14, 110:20,
111:4, 111:12,
112:8, 112:11,
112:13, 116:14,
116:17, 117:9,
118:13, 118:17,
119:24, 126:18,
129:14, 130:1,
130:6, 132:20,
141:13, 144:8,
166:2, 166:20,
167:23, 172:24,
174:1, 174:16,
183:11, 184:22,
192:18, 204:13,
210:15, 210:16,
211:5, 228:21,
230:15, 230:18,
230:23, 235:20
Castle [2] - 204:5,
216:4
categorized [1] -
166:4
category [2] - 32:4,

211:20
caused [1] - 208:8
caution [3] - 14:15,
26:22, 155:18
CDC [1] - 64:25
cell [1] - 82:10
cenerson@
attorneygeneral.
gov [1] - 135:19
center [1] - 99:23
centered [1] - 174:1
certain [26] - 23:13,
23:16, 24:20, 34:22,
34:23, 36:20, 38:2,
82:24, 92:21,
109:11, 126:9,
139:8, 144:8,
146:25, 148:2,
152:6, 156:24,
161:12, 162:7,
163:22, 213:1,
213:2, 220:13, 230:1
certainly [20] - 25:3,
78:19, 100:17,
128:8, 138:7,
138:10, 140:14,
159:2, 230:17
certificate [1] - 30:10
certified [7] - 31:6,
32:14, 114:10,
114:13, 121:6,
147:11, 148:21
Chad [1] - 190:6
chair [1] - 10:4
challenge [1] - 130:2
challenges [3] -
68:15, 68:18, 203:9
challenging [2] -
112:20, 143:13
chambers [1] - 193:24
Chambersburg [1] -
49:6
champion [1] - 101:11
change [5] - 15:18,
104:23, 185:12,
194:24, 230:9
changes [1] - 194:4
channels [1] - 141:10
characterization [1] -
207:7
characterize [1] -
171:9
characterized [6] -
27:24, 105:10,
133:9, 149:3,
171:22, 214:8
charge [3] - 94:2,
119:9, 198:11
charged [11] - 39:7,
42:9, 44:11, 44:24,

90:11, 106:17,
106:18, 109:6,
214:21, 224:3, 224:6
charges [8] - 88:2,
88:3, 90:19, 90:20,
90:25, 95:10, 213:7
charter [1] - 102:5
chase [2] - 22:12, 98:6
chat [1] - 154:7
check [2] - 68:1,
143:11
checkbook [1] -
189:20
checked [1] - 143:10
checking [1] - 69:7
Chief [12] - 30:2,
106:2, 106:6, 119:8,
172:18, 186:16,
186:23, 187:1,
187:12, 210:11,
210:12, 224:16
chief [5] - 104:15,
144:23, 176:15,
201:17, 225:3
child [1] - 55:20
choice [8] - 16:14,
16:18, 183:22,
184:19, 187:4,
235:22, 236:20,
236:21
choose [2] - 93:10,
220:3
chooses [2] - 20:2,
42:24
Chris [1] - 225:16
Christopher [8] - 4:7,
28:3, 34:13, 42:2,
43:18, 44:3, 44:4,
115:14
circled [1] - 122:16
Circuit [36] - 103:11,
103:18, 103:24,
105:20, 132:17,
133:4, 174:19,
175:3, 179:18,
179:21, 179:24,
180:5, 180:6,
180:23, 181:20,
183:11, 183:23,
184:17, 185:7,
185:11, 200:4,
200:25, 201:1,
202:4, 205:8, 206:4,
207:20, 210:10,
210:11, 229:8,
229:10, 229:17,
229:18, 229:19,
230:11, 231:7
circuit [2] - 101:22,
211:4

**Circuit's** [1] - 229:7
**circumstance** [7] - 99:5, 99:10, 105:19, 106:13, 173:21, 211:3, 213:5
**circumstances** [9] - 41:2, 52:17, 80:17, 95:1, 96:12, 162:14, 194:4, 194:15
**circumstantial** [12] - 78:24, 79:3, 79:5, 86:16, 96:2, 96:5, 96:10, 96:16, 96:17, 96:25, 97:2, 97:16
**circumventing** [1] - 131:12
**citation** [10] - 125:10, 128:4, 129:25, 130:6, 132:12, 132:20, 133:8, 133:12, 134:9, 134:10
**citations** [2] - 129:14, 230:19
**cite** [1] - 231:22
**cited** [2] - 227:2, 234:19
**citizen** [3] - 60:13, 60:20, 102:9
**Citizens** [5] - 22:21, 23:1, 25:2, 25:3, 131:12
**citizens** [2] - 92:12, 106:14
**citizenship** [1] - 39:17, 61:24
**Civil** [3] - 129:8, 145:14, 163:17
**civil** [18] - 53:7, 54:4, 55:6, 55:13, 57:21, 59:8, 98:8, 107:24, 109:5, 109:9, 109:19, 110:11, 111:16, 117:2, 142:9, 143:10, 169:13, 172:24
**civilian** [1] - 51:21
**claim** [6] - 60:22, 60:25, 137:15, 142:25, 161:11, 171:17
**claims** [5] - 130:5, 139:9, 142:24, 171:15, 171:16
**clarification** [3] - 11:25, 65:21, 220:2
**clarify** [3] - 156:13, 222:9, 222:10
**clarifying** [1] - 160:11
**clarity** [2] - 8:25,

218:11
**clause** [2] - 25:2, 91:11
**clear** [13] - 12:1, 17:8, 26:18, 65:19, 105:15, 123:10, 163:25, 176:11, 176:12, 198:22, 199:25, 224:3, 227:7
**clearer** [1] - 219:21
**clearly** [4] - 175:11, 175:14, 204:11, 204:12
**Clerk** [8] - 34:24, 115:5, 115:21, 115:22, 121:8, 181:19, 181:20
**clerk** [33] - 30:8, 30:18, 70:24, 115:8, 115:9, 142:10, 142:15, 143:15, 143:19, 151:10, 151:15, 152:1, 152:2, 160:17, 161:11, 161:13, 163:18, 164:4, 164:6, 198:6, 198:9, 198:11, 215:2, 216:19, 218:5, 218:8, 220:20, 224:14, 227:24, 230:22, 232:22, 232:23, 232:24
**Clerk's** [12] - 114:11, 114:15, 121:4, 139:13, 150:25, 193:12, 193:13, 197:4, 202:20, 215:10, 221:21, 223:21
**clerk's** [1] - 152:15
**clerks** [5] - 32:12, 99:17, 106:3, 116:16, 234:8
**client** [5] - 117:19, 142:7, 162:22, 164:18, 170:2
**clients** [4] - 100:24, 100:25, 106:20, 166:4
**clip** [1] - 68:25
**close** [9] - 22:15, 22:25, 43:24, 44:5, 44:13, 48:7, 49:20, 191:6, 191:12
**closeby** [1] - 77:21
**closed** [1] - 192:2
**closely** [1] - 101:7
**closer** [1] - 7:9
**closing** [5] - 84:5,

85:25, 86:8, 89:22, 96:21
**clothes** [1] - 158:20
**clothing** [1] - 13:8
**clue** [1] - 84:23
**clumsy** [1] - 143:18
**CM/ECF** [3] - 31:13, 129:6, 130:14
**co** [7] - 14:15, 26:9, 41:24, 90:8, 129:5, 129:11, 130:4
**co-counsel** [4] - 14:15, 26:9, 41:24, 90:8
**co-plaintiffs** [3] - 129:5, 129:11, 130:4
**Cobaugh** [5] - 30:19, 32:17, 33:5, 197:8, 198:8
**colleagues** [2] - 43:7, 119:20
**collect** [1] - 76:16
**collected** [1] - 84:15
**collecting** [1] - 101:21
**Colm** [1] - 38:11
**color** [2] - 68:20, 80:17
**Colored** [1] - 23:10
**Columbia** [4] - 29:19, 30:1, 207:16, 210:12
**comfortable** [2] - 8:13, 66:7
**coming** [2] - 77:17, 226:10
**commences** [1] - 4:1
**comment** [2] - 167:6, 170:24
**commenting** [1] - 169:8
**comments** [1] - 164:15
**commerce** [9] - 91:21, 91:22, 91:24, 94:11, 103:25, 225:15, 235:21, 236:10, 236:16
**commission** [2] - 96:7, 105:3
**commitment** [1] - 71:8
**commitments** [1] - 71:7
**committed** [3] - 90:10, 98:17, 104:17
**committee** [1] - 49:3
**committing** [2] - 39:8, 185:5
**common** [26] - 68:16, 80:20, 86:21, 95:6, 97:19, 97:21, 97:22, 99:5, 101:1, 101:9,

101:10, 101:14, 102:6, 103:1, 106:15, 116:17, 139:16, 140:4, 140:18, 140:22, 141:2, 167:6, 167:8, 167:10, 168:8, 184:19
**Commonwealth** [10] - 100:3, 100:9, 101:9, 115:5, 115:6, 131:6, 131:14, 143:8, 146:8, 164:21
**communicate** [2] - 35:11, 36:25
**communicated** [1] - 191:16
**communicates** [3] - 91:8, 91:12, 95:3
**communication** [23] - 36:23, 37:1, 88:1, 90:12, 91:1, 91:18, 94:4, 94:5, 94:7, 94:9, 94:10, 94:11, 94:12, 94:14, 104:14, 136:22, 136:24, 138:16, 155:3, 155:4, 194:14, 215:13, 221:17
**communications** [15] - 35:13, 39:8, 39:9, 87:25, 90:12, 91:1, 94:3, 104:9, 133:10, 138:13, 138:15, 138:24, 195:4, 205:10, 235:17
**companies** [7] - 99:16, 100:17, 102:19, 106:20, 110:21, 166:4, 173:16
**companion** [3] - 193:11, 193:18, 196:24
**company** [3] - 55:12, 173:7, 173:13
**compelling** [1] - 40:15
**Complainant** [1] - 172:20
**complainant** [3] - 172:22, 173:5, 173:11
**complainant's** [1] - 173:1
**complaining** [1] - 232:16
**complaint** [15] - 30:23, 31:10, 111:17, 125:1, 125:11,

129:8, 133:6, 133:16, 143:11, 148:25, 149:1, 149:3, 169:18, 172:18, 232:19
**Complaint** [1] - 233:3
**complaints** [2] - 133:5, 173:4
**complete** [1] - 174:6
**completed** [1] - 127:4
**completely** [6] - 25:6, 104:7, 137:18, 209:7, 209:13, 236:21
**complex** [1] - 173:2
**Compliance** [1] - 116:21
**Complied** [8] - 17:7, 21:19, 32:23, 50:22, 196:21, 210:8, 219:5, 226:22
**complied** [1] - 156:9
**comply** [2] - 184:18, 185:14
**component** [1] - 228:10
**comport** [1] - 156:25
**comprise** [1] - 130:16
**comprised** [2] - 4:19, 23:10
**computation** [1] - 161:12
**computer** [1] - 82:9
**conceivable** [1] - 130:17
**concept** [5] - 94:20, 99:23, 173:15, 175:23, 212:21
**concepts** [1] - 90:22
**concern** [6] - 9:5, 66:6, 82:16, 83:9, 156:17, 203:22
**concerned** [6] - 73:10, 117:12, 146:24, 157:23, 182:22, 189:24
**concerning** [3] - 52:15, 138:7, 140:13
**concerns** [4] - 9:3, 138:5, 158:21, 204:4
**conclude** [3] - 179:19, 212:13, 215:12
**concluded** [3] - 67:21, 73:15, 203:15
**conclusion** [3] - 79:1, 96:15, 97:2
**conclusions** [2] - 15:1, 86:5
**condensed** [1] - 17:21
**condition** [3] - 52:19,

71:9, 183:9
**conduct** [8] - 8:23, 39:18, 40:17, 41:7, 92:2, 92:10, 219:8, 223:21
**confer** [4] - 73:1, 171:2, 199:14, 232:23
**Confer** [1] - 170:8
**conference** [4] - 37:21, 170:6, 170:12, 172:5
**conferring** [1] - 158:15
**confers** [1] - 30:8
**confess** [1] - 216:10
**confident** [1] - 11:15
**configured** [2] - 71:1, 157:14
**confined** [2] - 5:21, 9:8
**confirm** [1] - 33:18
**confirmation** [1] - 208:1
**conflated** [3] - 218:8, 218:11, 222:14
**conflict** [2] - 106:12, 119:18
**confuse** [1] - 14:23
**confused** [3] - 146:18, 217:18, 233:20
**confuses** [1] - 168:4
**confusing** [3] - 132:22, 133:1, 140:11
**confusion** [1] - 203:19
**Congress** [2] - 91:25, 92:1
**connecting** [1] - 213:16
**connection** [16] - 43:24, 44:5, 91:21, 91:24, 110:16, 110:19, 111:19, 112:13, 117:21, 122:22, 136:25, 166:22, 180:9, 181:7, 181:23, 182:6
**connective** [1] - 214:19
**Conner** [11] - 44:3, 115:14, 119:7, 119:11, 221:16, 221:18, 222:3, 222:4, 223:10, 224:16, 225:11
**Conner's** [3] - 193:24, 224:8, 224:16
**Connolly** [4] - 38:11, 137:20, 137:22,

168:21
**consciousness** [2] - 129:24, 134:20
**consequences** [4] - 91:4, 94:1, 161:22
**consider** [12] - 20:14, 82:16, 82:18, 83:10, 86:22, 87:1, 87:6, 87:11, 87:12, 87:14, 165:20, 167:3
**consideration** [1] - 94:19
**considerations** [1] - 62:8
**considered** [7] - 20:4, 20:5, 35:16, 79:12, 93:1, 93:2, 212:14
**considering** [1] - 123:22
**considers** [1] - 23:16
**consist** [1] - 44:2
**consistent** [5] - 87:2, 87:3, 87:4, 87:5, 157:2
**conspiracy** [1] - 131:6
**conspiring** [1] - 139:17
**constitution** [12] - 24:17, 25:13, 42:17, 91:9, 91:11, 91:12, 91:25, 100:9, 100:11, 102:11, 104:12, 212:20
**Constitution** [9] - 25:16, 92:19, 100:8, 103:5, 103:6, 104:20, 166:18, 167:14, 173:20
**constitutional** [9] - 24:13, 38:24, 38:25, 85:17, 92:13, 102:25, 142:24, 183:9, 211:15
**constitutionally** [2] - 22:7, 22:8
**constitutions** [1] - 102:7
**construed** [2] - 182:9, 219:8
**consult** [1] - 15:13
**Consulting** [3] - 125:6, 132:15, 139:21
**contact** [2] - 64:17, 81:13
**contain** [2] - 129:3, 134:6
**contaminate** [1] -

82:12
**content** [4] - 195:6, 195:9, 208:4, 210:24
**contents** [1] - 212:11
**contesting** [1] - 125:2
**context** [9] - 94:25, 98:14, 154:22, 154:25, 155:4, 171:15, 173:3, 188:8, 206:13
**Conti** [38] - 44:4, 117:25, 118:1, 118:11, 119:25, 120:15, 123:12, 123:15, 127:14, 128:12, 128:14, 130:7, 130:23, 131:5, 131:19, 133:25, 134:9, 135:1, 137:3, 137:15, 138:3, 138:12, 138:18, 138:21, 140:16, 147:18, 149:17, 149:24, 150:4, 150:17, 150:18, 154:18, 165:12, 165:16, 170:7, 171:17, 176:14
**Conti's** [1] - 123:14
**continue** [3] - 31:25, 132:6, 133:3, 162:12, 210:19
**CONTINUED** [1] - 160:8
**continued** [1] - 111:4
**continues** [2] - 134:11, 134:22
**continuing** [1] - 192:1
**control** [1] - 220:16
**controlled** [2] - 100:24, 211:3
**controls** [3] - 84:2, 84:3, 84:14
**controversies** [2] - 210:15, 210:16
**convene** [1] - 74:10
**conversation** [10] - 36:2, 36:22, 203:20, 204:9, 205:6, 205:15, 208:5, 215:25, 216:1, 219:22
**converted** [1] - 102:4
**convey** [1] - 198:23
**convicted** [3] - 44:10, 58:11, 205:10
**conviction** [1] - 229:14
**convincing** [2] -

198:1, 198:4
**cool** [2] - 122:15, 192:14
**cooler** [1] - 198:20
**cooperate** [1] - 170:6
**cooperative** [1] - 168:17
**coordinate** [1] - 170:6
**coordinated** [2] - 184:2, 184:9
**copied** [1] - 136:13
**copies** [10] - 13:7, 17:9, 28:22, 29:2, 37:18, 86:11, 88:17, 88:18, 88:22, 99:21
**copy** [31] - 17:4, 28:11, 28:19, 29:4, 29:5, 29:8, 32:15, 33:8, 86:12, 114:5, 114:10, 121:4, 131:25, 135:22, 147:2, 147:4, 148:21, 152:23, 153:24, 154:1, 160:10, 163:18, 168:18, 180:10, 181:7, 181:22, 184:20, 198:8, 213:18, 226:18, 232:4
**core** [1] - 102:6
**corner** [4] - 95:19, 95:21, 123:9, 181:16
**corporate** [3] - 31:24, 102:5, 116:24
**Corporate** [4] - 161:18, 164:18, 176:1, 176:6
**corporation** [10] - 101:7, 117:13, 117:20, 139:22, 139:24, 143:7, 164:21, 169:20, 176:3, 176:5
**corporations** [3] - 110:21, 110:22, 139:19
**correct** [47] - 21:11, 26:14, 27:13, 33:18, 34:11, 66:25, 67:1, 67:2, 67:3, 108:14, 108:24, 112:25, 113:1, 113:11, 113:18, 114:16, 115:25, 116:2, 118:2, 118:7, 118:8, 120:4, 120:23, 121:2, 126:5, 128:11, 128:15, 128:17, 128:21,

130:9, 134:2, 135:2, 135:3, 135:22, 137:22, 142:8, 143:17, 145:19, 150:5, 160:19, 160:22, 168:21, 170:17, 181:22, 200:7, 207:21, 221:3
**corrected** [1] - 67:19
**correctly** [7] - 142:4, 144:6, 146:23, 147:4, 152:19, 153:4, 173:25
**Corricelli** [4] - 34:11, 34:12, 44:3, 225:12
**corrupt** [2] - 139:14, 141:1
**corruption** [2] - 132:11, 139:14
**cost** [1] - 132:10
**costs** [1] - 161:14
**counsel** [21] - 12:1, 12:5, 12:7, 12:14, 12:19, 12:23, 13:2, 13:14, 14:15, 14:21, 15:20, 26:9, 28:6, 35:15, 41:24, 90:8, 103:10, 108:12, 129:12, 156:15, 234:6
**counsel's** [1] - 156:13
**count** [6] - 39:8, 48:6, 87:24, 206:19, 214:5
**Count** [5] - 102:16, 135:7, 172:11, 221:17, 223:1
**counter** [2] - 202:19, 209:15
**counterpart** [1] - 208:24
**counting** [1] - 113:13
**country** [7] - 25:11, 39:15, 42:23, 61:12, 91:5, 92:12, 141:4
**counts** [5] - 39:9, 42:9, 84:6, 87:24, 88:1
**Counts** [2] - 195:4, 235:18
**county** [5] - 54:3, 54:4, 54:13, 57:11, 194:11
**County** [4] - 55:3, 57:21, 57:22, 58:6
**couple** [9] - 36:19, 46:14, 60:13, 77:24, 83:19, 98:22, 136:16, 159:25, 216:17
**course** [7] - 15:11,

80:7, 134:11,
162:18, 172:25,
229:5, 236:3
**Court** [78] - 11:25,
13:15, 13:16, 13:18,
15:13, 16:6, 16:12,
16:18, 18:17, 20:14,
26:10, 28:10, 29:18,
29:25, 30:8, 38:24,
39:25, 40:1, 52:7,
52:8, 52:12, 58:20,
63:13, 63:16, 66:18,
73:1, 103:17,
103:23, 105:5,
105:8, 105:19,
115:5, 115:6, 125:1,
129:1, 129:7, 129:9,
132:17, 133:4,
133:13, 134:7,
137:24, 143:7,
144:17, 144:24,
145:16, 145:17,
145:21, 146:2,
149:9, 149:15,
151:10, 151:19,
152:12, 156:16,
164:23, 168:23,
179:21, 179:24,
180:3, 180:6, 180:7,
180:24, 183:13,
205:8, 206:3,
210:12, 210:16,
212:7, 214:8, 228:4,
228:18, 228:24,
229:15, 229:19,
231:8, 232:23, 233:6
**court** [60] - 7:3, 12:9,
12:18, 14:20, 24:4,
35:7, 39:22, 45:2,
45:17, 45:25, 55:19,
58:24, 59:1, 59:5,
59:6, 59:22, 69:12,
83:19, 92:2, 102:21,
104:18, 108:9,
111:20, 113:8,
116:1, 116:16,
117:10, 117:15,
117:20, 125:24,
128:5, 129:14,
130:1, 132:16,
139:24, 140:3,
142:6, 142:12,
144:7, 144:11,
173:6, 173:10,
174:5, 177:8,
178:11, 178:12,
191:15, 192:9,
192:11, 192:15,
192:16, 196:3,
208:17, 215:2,
218:5, 218:8,

220:20, 227:11,
227:24
**COURT** [573] - 4:2,
4:9, 4:11, 4:13, 4:24,
5:5, 5:9, 5:11, 5:16,
5:22, 6:2, 6:6, 6:9,
6:16, 6:23, 7:13,
7:16, 7:19, 7:25, 8:5,
8:10, 8:13, 8:15,
8:17, 9:4, 9:10, 9:20,
10:6, 10:12, 10:17,
10:23, 10:25, 11:7,
11:12, 11:15, 11:21,
12:13, 12:17, 13:9,
14:3, 14:9, 14:19,
14:23, 15:7, 16:2,
16:9, 16:22, 16:25,
17:6, 17:11, 17:18,
17:20, 18:3, 18:6,
18:10, 18:12, 18:15,
19:22, 20:12, 20:19,
20:22, 20:25, 21:3,
21:5, 21:14, 21:16,
21:21, 21:25, 22:2,
22:11, 22:19, 22:22,
22:24, 23:5, 23:8,
23:19, 23:24, 24:5,
24:9, 25:23, 26:4,
26:7, 26:14, 26:17,
26:25, 27:4, 27:8,
27:10, 27:13, 27:17,
27:21, 27:25, 28:8,
28:11, 28:17, 28:22,
29:4, 29:8, 29:10,
29:15, 29:21, 29:23,
29:25, 30:3, 30:7,
30:9, 30:16, 30:22,
31:3, 31:8, 31:10,
31:19, 32:3, 32:5,
32:8, 32:13, 32:22,
32:24, 33:3, 33:7,
33:10, 33:12, 33:14,
33:17, 33:22, 34:1,
34:6, 34:8, 34:10,
34:13, 34:18, 34:21,
35:2, 35:6, 35:20,
36:1, 36:6, 36:9,
37:6, 37:16, 37:18,
37:22, 37:25, 38:4,
38:10, 42:3, 43:12,
44:19, 44:24, 45:3,
45:5, 45:8, 45:12,
45:14, 45:18, 45:21,
45:23, 46:5, 46:8,
46:10, 46:17, 46:19,
46:21, 46:25, 47:2,
47:5, 47:8, 47:10,
47:13, 47:16, 47:18,
47:21, 47:23, 47:25,
48:6, 48:10, 48:13,
48:15, 48:18, 48:20,

48:23, 48:25, 49:3,
49:5, 49:8, 49:12,
49:15, 49:19, 49:25,
50:2, 50:6, 50:9,
50:11, 50:14, 50:16,
50:23, 51:2, 51:5,
51:7, 51:10, 51:12,
51:15, 51:17, 52:24,
53:2, 53:4, 53:6,
53:13, 53:16, 53:19,
53:21, 53:24, 54:4,
54:7, 54:10, 54:16,
54:19, 54:22, 54:25,
55:4, 55:6, 55:10,
55:13, 55:17, 55:21,
55:23, 56:1, 56:4,
56:7, 56:11, 56:14,
56:18, 56:21, 56:24,
57:3, 57:6, 57:9,
57:12, 57:16, 57:19,
57:23, 58:1, 58:4,
58:7, 58:9, 58:12,
58:16, 59:3, 59:8,
59:10, 59:13, 59:15,
59:17, 59:19, 59:23,
60:1, 60:5, 60:8,
60:16, 61:2, 61:5,
61:8, 61:13, 61:17,
61:20, 61:23, 62:3,
62:17, 62:19, 63:8,
63:11, 64:2, 64:5,
64:7, 64:13, 64:16,
64:20, 64:23, 65:6,
65:8, 65:11, 65:22,
66:2, 66:4, 66:14,
66:17, 66:21, 67:2,
67:4, 67:7, 67:9,
67:16, 67:18, 67:22,
68:10, 68:14, 69:12,
69:23, 70:17, 70:19,
70:21, 70:23, 71:8,
71:12, 71:15, 71:19,
71:21, 71:23, 72:3,
72:6, 72:12, 72:16,
72:19, 72:25, 73:2,
73:5, 73:11, 73:13,
73:16, 73:22, 74:20,
74:24, 75:3, 75:10,
75:21, 76:3, 76:5,
76:9, 76:17, 76:25,
77:3, 77:5, 77:8,
77:10, 77:13, 88:8,
88:12, 88:15, 88:18,
88:20, 88:25, 89:3,
89:6, 89:10, 89:12,
89:17, 89:20, 89:23,
90:2, 98:19, 107:1,
107:11, 111:24,
112:3, 112:5,
113:25, 114:24,
118:20, 118:22,

118:25, 120:8,
121:16, 121:24,
122:4, 122:6,
135:10, 136:3,
141:16, 142:17,
142:21, 143:24,
144:4, 145:1, 145:6,
147:20, 147:25,
148:6, 148:18,
148:22, 148:24,
149:1, 149:5, 153:9,
153:11, 153:14,
153:17, 153:19,
153:22, 153:25,
154:3, 154:5,
154:10, 154:14,
154:25, 155:12,
155:24, 156:3,
156:7, 156:10,
156:20, 157:1,
157:4, 157:7,
157:11, 157:25,
158:4, 158:10,
158:16, 158:24,
159:2, 159:12,
159:19, 159:22,
160:5, 160:7,
161:25, 163:8,
165:4, 165:8,
166:23, 167:16,
168:9, 168:14,
168:16, 170:22,
171:1, 172:2, 172:4,
172:13, 174:25,
175:7, 175:13,
175:18, 175:21,
176:19, 176:25,
177:2, 177:6,
179:12, 180:13,
182:4, 195:16,
196:2, 196:6,
196:12, 196:17,
196:19, 197:15,
197:22, 198:24,
199:4, 199:9,
199:12, 199:15,
199:20, 199:22,
199:24, 200:4,
200:6, 200:11,
200:16, 200:25,
201:2, 201:5,
201:19, 202:8,
202:16, 202:21,
202:25, 203:4,
203:7, 203:13,
203:16, 203:24,
205:12, 205:14,
205:18, 206:9,
206:11, 207:9,
209:25, 210:4,
210:7, 214:10,

214:13, 214:16,
214:21, 214:24,
215:2, 216:10,
217:13, 217:17,
217:23, 217:25,
218:3, 218:5,
218:14, 218:17,
218:21, 218:23,
218:25, 219:3,
219:6, 219:17,
219:20, 219:24,
220:7, 220:10,
221:4, 221:11,
221:14, 221:22,
221:24, 222:2,
222:7, 222:13,
222:19, 222:24,
223:2, 223:4, 223:6,
223:9, 223:16,
223:24, 224:22,
225:1, 225:5, 225:8,
225:10, 225:18,
225:21, 226:2,
226:5, 226:7, 226:9,
226:17, 226:20,
226:23, 227:9,
228:7, 229:6,
229:10, 229:16,
229:22, 230:3,
230:5, 230:8,
230:21, 230:25,
231:3, 231:10,
231:19, 232:2,
232:7, 232:21,
232:24, 233:2,
233:12, 233:17,
233:25, 234:3,
234:11, 234:13,
234:15, 234:17,
234:19, 234:21,
235:13, 235:19,
236:7, 236:11,
236:19, 236:25
**Court's** [6] - 12:11,
32:19, 94:23,
129:20, 130:18,
196:14
**courthouse** [6] -
157:14, 193:12,
193:21, 193:25,
203:1, 223:13
**courtroom** [18] - 5:3,
7:21, 20:16, 20:18,
38:5, 38:7, 62:6,
68:13, 71:1, 73:1,
73:21, 81:18, 81:20,
81:23, 99:9, 157:13,
179:5, 193:24
**COURTROOM** [30] -
7:2, 7:7, 8:7, 8:11,
9:24, 10:4, 15:4,

26:2, 26:5, 37:15, 37:17, 37:20, 37:24, 50:18, 50:20, 68:8, 69:14, 70:3, 71:17, 72:24, 75:1, 77:4, 88:7, 107:6, 157:20, 158:12, 177:11, 217:11, 217:15, 237:2

**courts** [24] - 12:20, 13:1, 39:16, 53:8, 100:3, 103:9, 104:17, 111:22, 115:7, 116:6, 125:4, 125:5, 133:9, 133:10, 142:12, 142:14, 144:9, 144:10, 162:3, 166:13, 174:14, 178:11, 211:4, 229:1

**Courts** [2] - 115:22, 132:17

**courts'** [1] - 138:9

**cousin** [4] - 47:11, 48:3, 50:12, 50:15

**cover** [5] - 142:10, 143:10, 143:11, 143:16, 144:12

**covered** [2] - 82:6, 172:1

**covers** [1] - 179:24

**COVID** [2] - 63:15, 63:24

**COVID-19** [1] - 62:14

**create** [1] - 23:3

**creates** [2] - 24:22, 191:23

**credibility** [3] - 8:21, 86:19, 86:24

**credible** [3] - 87:7, 87:8

**credit** [1] - 16:5

**crime** [6] - 44:10, 44:25, 96:8, 105:22, 109:7, 219:8

**crimes** [5] - 26:15, 44:11, 104:17, 105:3, 183:9

**criminal** [24] - 19:7, 24:3, 38:13, 39:6, 39:10, 42:15, 42:18, 53:7, 54:4, 54:6, 55:6, 57:20, 58:5, 90:23, 90:24, 95:15, 96:6, 109:4, 109:6, 169:10, 169:13, 217:2, 220:24, 231:17

**Criminal** [2] - 35:12, 169:4

**criminally** [1] - 109:7

**critical** [1] - 74:11

**Cross** [1] - 233:3

**cross** [12] - 119:1, 141:17, 141:19, 195:16, 201:12, 201:15, 202:24, 220:2, 220:5, 224:24

**CROSS** [3] - 141:20, 160:8, 195:17

**cross-examine** [2] - 119:1, 220:2

**crossed** [2] - 201:21, 203:11

**crosses** [2] - 91:13, 148:8

**crux** [4] - 137:14, 171:13, 174:9, 175:24

**CRUZ** [1] - 4:7

**Cruz** [7] - 4:7, 28:3, 34:13, 42:2, 43:18, 44:4, 225:16

**crying** [1] - 72:12

**current** [4] - 34:24, 115:19, 167:7, 167:14

**Curtis** [1] - 149:7

**custody** [2] - 6:22, 59:2

**custom** [2] - 103:12, 183:14

**cut** [5] - 22:12, 97:14, 97:17, 98:5, 145:1

**CVS** [1] - 229:25

**D**

**D'Andrea** [1] - 34:24

**D-U-P-E-S** [1] - 113:9

**D.C** [16] - 183:11, 183:23, 184:17, 185:7, 185:11, 198:2, 200:4, 200:25, 201:1, 202:4, 202:10, 202:11, 207:20, 210:10, 210:11

**daily** [1] - 191:21

**damages** [4] - 117:5, 132:9, 151:20, 184:23

**danger** [1] - 223:14

**date** [10] - 30:15, 30:17, 30:20, 114:13, 150:15, 169:17, 181:12, 193:10, 213:12, 219:13

**dated** [2] - 32:9, 121:5

**dates** [1] - 32:18

**dating** [1] - 141:5

**Dauphin** [1] - 58:5

**David** [5] - 4:6, 41:23, 43:18, 90:6, 116:9

**days** [3] - 53:17, 55:19, 152:11

**DC** [4] - 47:23, 88:18, 102:22, 208:18

**dead** [1] - 60:24

**Deadly** [5] - 137:16, 171:18, 171:20, 171:23, 172:10

**deal** [4] - 7:13, 60:18, 228:3, 231:11

**dealer** [1] - 57:11

**dealing** [1] - 228:3

**death** [2] - 183:10, 183:12

**debt** [1] - 101:21

**decapitate** [2] - 184:14, 185:1

**decapitation** [1] - 189:15

**decide** [7] - 39:15, 74:11, 87:6, 87:7, 87:9, 151:19

**decided** [8] - 12:16, 18:20, 18:23, 37:7, 42:4, 103:11, 164:23, 205:21

**decides** [4] - 39:23, 73:6, 79:6, 167:17

**deciding** [1] - 87:15

**decipher** [1] - 133:14

**decision** [33] - 13:16, 18:25, 20:1, 22:9, 26:12, 92:17, 92:19, 93:4, 93:6, 110:12, 120:23, 126:23, 127:12, 127:15, 128:5, 128:12, 130:23, 131:2, 131:9, 133:19, 133:24, 137:3, 147:19, 147:22, 164:25, 165:12, 180:2, 216:25, 228:24, 229:7, 231:9, 234:19, 234:22

**decisions** [12] - 13:5, 23:14, 40:3, 80:6, 80:8, 99:11, 120:3, 120:15, 120:17, 125:3, 135:1, 228:3

**declaration** [1] - 102:13

**declaratory** [6] -

131:16, 143:5, 149:4, 169:14, 176:2

**default** [58] - 99:18, 125:21, 126:6, 126:7, 126:11, 126:13, 126:15, 126:17, 126:22, 127:2, 127:20, 127:23, 128:1, 128:2, 139:11, 139:13, 150:6, 150:11, 150:13, 150:15, 150:21, 150:25, 151:1, 151:2, 151:3, 151:8, 151:16, 151:17, 151:18, 151:23, 151:25, 152:2, 152:3, 152:9, 152:11, 152:13, 154:22, 160:14, 160:17, 160:21, 163:19, 163:20, 164:4, 164:6, 164:7, 164:9, 164:10, 164:12, 164:19, 169:16, 170:1

**defaulted** [3] - 138:1, 161:15, 168:25

**defaults** [1] - 184:23

**defect** [1] - 173:11

**defend** [6] - 108:4, 126:10, 127:10, 153:3, 160:16, 195:11

**defendant** [3] - 13:2, 116:17, 147:6

**Defendant** [71] - 9:12, 12:3, 12:4, 12:6, 12:10, 16:13, 16:16, 19:7, 20:16, 26:12, 26:20, 26:21, 27:1, 37:23, 38:19, 39:7, 41:12, 42:8, 42:15, 42:21, 42:22, 42:24, 43:1, 43:2, 43:3, 43:11, 43:22, 52:15, 85:14, 85:20, 85:21, 85:22, 85:23, 85:25, 90:10, 90:20, 94:4, 94:7, 94:10, 94:14, 94:25, 98:7, 98:17, 98:21, 109:23, 112:21, 114:7, 117:1, 120:19, 123:18, 125:21, 131:1, 135:2, 138:17, 141:12, 147:17, 152:6, 161:15, 169:21,

179:11, 185:20, 188:15, 192:12, 192:23, 201:12, 202:18, 216:8, 223:12, 226:1, 235:3

**DEFENDANT** [1] - 9:19

**Defendant's** [9] - 9:15, 52:13, 97:3, 109:18, 119:25, 166:20, 179:8, 194:4, 228:5

**Defendants** [1] - 122:24

**defendants** [17] - 15:5, 15:20, 31:12, 117:6, 119:8, 121:10, 122:25, 125:8, 127:7, 127:19, 127:22, 131:7, 132:9, 146:24, 159:4, 173:7

**defended** [1] - 99:19

**defender** [2] - 29:7, 234:9

**defending** [3] - 100:23, 101:12, 124:6

**defense** [3] - 42:23, 42:25, 46:20, 152:12, 162:10, 169:6, 171:24, 171:25, 184:19, 187:5, 187:6, 204:14, 209:22

**Defense** [1] - 233:3

**defenses** [2] - 162:7, 162:25

**defer** [1] - 76:25

**defined** [1] - 12:25

**defining** [1] - 137:21

**definitely** [5] - 5:25, 140:24, 141:8, 141:11, 213:5

**definition** [8] - 25:17, 131:10, 143:7, 164:20, 169:19, 176:3, 176:4, 176:5

**degree** [1] - 16:4

**deliberate** [6] - 40:21, 78:5, 79:21, 79:25, 81:5, 216:24

**deliberating** [1] - 84:11

**deliberations** [3] - 40:5, 77:17, 78:7

**delight** [1] - 105:4

**delineated** [1] - 130:4

**delivered** [1] - 32:17

**delving** [1] - 166:25

**demarkations** [1] -

231:14
**demeanor** [1] - 86:22
**demolition** [1] - 55:12
**demonstrate** [2] -
28:5, 99:20
**demonstrated** [2] -
16:4, 105:16
**denied** [2] - 128:2,
129:21
**deny** [1] - 131:15
**denying** [2] - 83:11,
126:21
**depart** [1] - 216:16
**Department** [9] -
48:17, 113:6,
116:18, 116:22,
146:15, 161:19,
164:18, 176:2, 176:7
**departments** [7] -
29:13, 112:21,
113:17, 113:19,
115:3, 116:4, 116:12
**depositions** [2] - 36:8,
36:9
**Depot** [2] - 49:7, 49:23
**DEPUTY** [45] - 4:23,
5:8, 5:10, 5:13, 6:8,
6:14, 6:21, 6:25, 7:2,
7:7, 8:7, 8:11, 9:22,
9:24, 9:25, 10:4,
10:8, 10:16, 10:20,
11:6, 15:4, 26:2,
26:5, 37:15, 37:17,
37:20, 37:24, 50:18,
50:20, 68:8, 69:14,
70:3, 71:17, 72:24,
75:1, 77:4, 88:7,
107:6, 157:20,
158:3, 158:12,
177:11, 217:11,
217:15, 237:2
**deputy** [9] - 38:5,
70:24, 73:1, 81:20,
81:24, 190:5,
216:19, 218:17,
219:12
**Deputy** [18] - 107:24,
158:15, 158:17,
177:4, 177:22,
177:23, 178:7,
183:6, 185:3,
189:23, 192:23,
194:13, 195:3,
195:19, 195:20,
197:11, 198:25,
201:25
**deputy's** [1] - 190:7
**describe** [7] - 14:24,
15:15, 27:25, 95:6,
188:22, 200:13,

225:23
**described** [8] - 15:10,
99:2, 132:18,
162:15, 173:2,
174:12, 200:8,
215:14
**describes** [2] - 18:17,
184:8
**describing** [1] -
188:24
**deserves** [1] - 87:22
**designate** [1] - 210:14
**designated** [1] -
210:17
**designed** [1] - 143:6
**despite** [1] - 12:11
**destroy** [1] - 84:18
**detail** [5] - 95:15,
95:16, 95:18, 173:2,
191:24
**details** [1] - 66:8
**detain** [1] - 197:11
**detained** [2] - 159:14,
197:10
**detention** [1] - 234:4
**deteriorating** [1] -
194:15
**determination** [3] -
86:20, 206:15,
210:18
**determine** [2] - 86:19,
210:15
**determined** [3] -
105:9, 156:22, 233:6
**determines** [1] - 151:2
**determining** [2] -
13:1, 104:23
**develop** [1] - 155:22
**device** [1] - 213:4
**devote** [1] - 52:21
**DI** [4] - 29:16, 33:18,
232:25, 233:18
**diatribe** [1] - 133:15
**Dictionary** [1] - 183:13
**die** [2] - 183:21, 184:8
**died** [1] - 60:22
**difference** [6] - 55:9,
95:17, 95:19, 96:2,
109:4, 174:7
**different** [29] - 13:12,
15:16, 19:4, 24:20,
32:17, 37:4, 38:12,
56:25, 65:20, 86:1,
86:7, 96:10, 102:11,
109:25, 110:1,
113:3, 118:18,
120:17, 124:15,
124:17, 128:12,
132:1, 133:17,
137:4, 162:1, 162:2,

202:19, 203:5, 227:5
**differently** [2] - 69:12,
220:25
**differs** [1] - 42:14
**difficult** [5] - 7:9, 41:2,
71:7, 132:2, 162:8
**dimension** [1] - 23:21
**dire** [7] - 17:21, 21:6,
21:22, 40:18, 41:10,
43:13
**direct** [20] - 78:19,
78:21, 78:23, 79:4,
86:15, 96:2, 96:7,
96:25, 119:20,
124:21, 128:18,
133:21, 134:3,
136:25, 137:9,
183:15, 183:16,
184:11, 187:24,
202:5
**DIRECT** [2] - 107:14,
177:14
**directed** [1] - 92:10
**directly** [3] - 35:11,
106:2, 106:14
**director** [1] - 48:11
**disability** [2] - 64:9,
172:17
**disagree** [2] - 16:22,
103:21
**disagreement** [1] -
166:1
**disarray** [1] - 74:8
**discernable** [1] -
129:19
**disclosure** [1] - 31:24
**discretion** [1] - 13:1
**discretionary** [1] -
229:1
**Discretionary** [5] -
137:16, 171:18,
171:20, 171:23,
172:10
**discuss** [15] - 17:24,
77:15, 79:21, 79:22,
79:23, 80:1, 81:1,
81:3, 83:8, 84:10,
127:1, 173:2,
216:25, 217:4, 233:7
**discussed** [5] - 34:20,
35:1, 205:19,
219:12, 227:11
**discusses** [1] - 126:20
**discussing** [2] -
130:22, 203:19
**discussion** [20] -
19:11, 20:5, 34:25,
35:3, 65:5, 66:8,
67:21, 70:18, 73:15,
96:1, 100:20,

157:22, 199:19,
203:15, 204:18,
205:3, 205:14,
205:21, 206:1,
207:15
**discussions** [3] -
16:12, 205:19,
225:21
**disjointed** [1] - 134:18
**dismiss** [3] - 31:22,
31:23, 71:5
**dismissed** [4] - 99:14,
110:24, 149:19,
188:23
**disposal** [1] - 97:21
**dispositive** [1] -
228:22
**dispute** [9] - 25:7,
101:20, 104:4,
104:25, 105:1,
105:18, 117:18,
163:7, 231:5
**disputed** [1] - 95:13
**disputes** [6] - 102:15,
109:9, 140:19,
173:15, 173:22,
174:9
**disruptive** [4] - 93:18,
93:23, 93:24
**distance** [2] - 38:18,
38:20
**distanced** [1] - 62:7
**distancing** [1] - 8:9
**distinguish** [2] - 19:4,
79:4
**distract** [1] - 84:7
**distribute** [1] - 21:1
**District** [37] - 28:10,
29:18, 29:19, 29:25,
30:1, 38:12, 38:22,
56:16, 99:3, 104:15,
105:12, 106:2,
115:15, 115:20,
115:23, 115:24,
116:8, 118:3, 118:5,
118:14, 119:9,
119:14, 129:6,
129:7, 132:16,
133:13, 133:14,
144:17, 145:11,
145:13, 180:3,
207:16, 210:12,
227:25, 234:16
**district** [11] - 55:11,
56:18, 75:14, 118:9,
118:10, 118:12,
119:6, 119:10,
119:12, 133:9, 229:1
**diversion** [1] - 93:22
**Division** [1] - 48:11

**divisions** [2] - 210:14,
210:17
**divorced** [1] - 194:10
**DLA** [1] - 46:20
**docket** [30] - 30:3,
31:3, 31:10, 31:11,
31:13, 31:14, 31:15,
31:19, 31:20, 31:21,
31:22, 31:23, 32:8,
32:20, 33:4, 33:7,
111:14, 111:15,
111:21, 111:23,
112:9, 112:11,
114:5, 114:18,
123:14, 123:21,
127:24, 130:16,
144:15, 146:21,
148:12, 148:15,
148:21, 149:6,
149:17, 149:21,
150:10, 152:4,
152:5, 154:1,
169:15, 176:17,
209:19, 209:22,
234:6
**docketed** [1] - 31:1
**dockets** [2] - 111:12,
115:9
**Docson** [3] - 125:5,
132:15, 139:21
**Docson's** [1] - 138:3
**doctrine** [1] - 131:13
**Doctrine** [7] - 137:16,
171:18, 171:20,
171:23, 172:10,
204:5, 216:4
**document** [29] -
30:22, 32:25, 33:18,
34:2, 37:14, 114:14,
121:25, 123:5,
123:11, 132:1,
148:13, 148:19,
149:14, 150:2,
169:16, 180:23,
181:23, 182:22,
185:18, 196:15,
197:1, 197:6, 197:7,
199:25, 202:9,
208:7, 209:19,
213:3, 233:23
**documentation** [2] -
28:5, 28:8
**documents** [6] -
33:21, 78:17, 85:13,
122:11, 234:1, 234:3
**doggedly** [1] - 101:12
**dollars** [4] - 106:21,
117:6, 125:9, 132:10
**done** [23] - 12:20,
30:14, 36:8, 37:4,

42:10, 69:13, 77:6,
100:13, 100:19,
104:5, 105:2,
111:16, 145:22,
145:23, 145:24,
163:23, 170:19,
172:8, 184:18,
197:9, 198:13,
202:11, 202:13
**door** [10] - 78:22,
78:24, 97:23, 159:6,
159:10, 159:13,
171:3, 204:7, 208:1,
227:6
**doors** [1] - 192:2
**doubt** [9] - 42:21,
42:22, 52:14, 72:13,
85:20, 90:13, 95:14,
98:18, 104:8
**Dougherty** [214] - 4:2,
4:11, 4:12, 4:21, 6:2,
6:7, 6:20, 7:22, 8:6,
9:18, 11:2, 11:8,
11:18, 13:4, 13:11,
13:19, 14:6, 14:9,
15:1, 15:8, 15:16,
16:22, 17:15, 18:7,
18:12, 18:20, 19:10,
19:14, 19:24, 20:20,
21:21, 23:11, 24:10,
27:5, 27:17, 27:18,
29:6, 30:2, 32:20,
34:13, 37:14, 38:1,
39:6, 39:7, 42:4,
43:8, 43:11, 43:16,
43:23, 43:24, 63:21,
65:2, 65:6, 66:2,
66:10, 66:25, 67:7,
67:11, 67:14, 70:19,
72:13, 75:4, 75:17,
76:6, 77:6, 79:11,
82:23, 83:4, 84:4,
85:5, 86:2, 88:15,
98:19, 98:21, 99:2,
102:18, 102:20,
102:25, 106:1,
106:18, 108:16,
108:25, 109:1,
109:24, 110:13,
110:20, 111:24,
112:14, 112:24,
113:3, 113:14,
113:16, 116:15,
117:5, 117:16,
119:23, 120:6,
121:25, 122:17,
122:20, 123:18,
123:25, 124:13,
125:2, 125:7, 125:8,
126:16, 126:21,
126:22, 127:3,

127:18, 127:23,
129:1, 129:9, 130:2,
130:11, 130:13,
131:8, 131:17,
132:5, 132:9,
132:13, 132:23,
135:15, 136:9,
137:7, 137:14,
137:21, 137:25,
138:2, 138:7,
138:24, 139:2,
139:17, 139:23,
140:11, 140:17,
141:19, 141:24,
142:23, 144:6,
147:25, 150:6,
150:12, 153:14,
154:12, 156:14,
156:17, 157:13,
157:21, 157:22,
158:7, 158:12,
158:19, 158:21,
159:20, 159:23,
160:7, 165:11,
165:15, 165:18,
166:3, 167:1,
168:19, 168:24,
169:12, 171:13,
171:15, 173:15,
173:18, 175:6,
175:25, 179:3,
179:20, 181:2,
181:3, 181:4,
182:12, 184:22,
189:11, 190:3,
191:4, 193:11,
193:15, 196:2,
196:5, 198:5,
199:14, 199:25,
202:6, 203:16,
204:21, 213:19,
215:6, 215:16,
218:7, 219:12,
220:2, 220:8,
221:20, 221:21,
222:9, 223:25,
224:20, 226:13,
227:22, 231:20,
235:13, 235:19,
236:12
**DOUGHERTY** [214] -
4:12, 6:11, 7:24,
11:11, 14:10, 16:24,
18:11, 18:14, 19:21,
20:21, 21:4, 21:23,
22:1, 22:4, 22:18,
22:21, 22:23, 24:15,
27:20, 27:23, 28:2,
28:9, 28:12, 28:20,
29:12, 29:18, 29:22,
29:24, 30:1, 30:4,

30:11, 30:17, 30:25,
31:6, 31:18, 32:2,
32:4, 32:11, 32:16,
33:6, 33:9, 33:11,
33:13, 33:20, 33:24,
34:16, 34:19, 34:23,
35:5, 35:8, 35:25,
36:2, 36:8, 36:10,
38:3, 43:10, 65:7,
65:15, 66:1, 66:3,
66:11, 67:1, 67:8,
67:15, 70:20, 72:15,
72:23, 73:9, 76:7,
77:7, 77:9, 88:16,
88:19, 88:21, 89:2,
89:5, 89:9, 89:11,
89:18, 89:21, 98:20,
112:1, 114:23,
118:19, 118:21,
118:24, 121:15,
136:2, 141:21,
142:19, 143:3,
144:13, 145:3,
145:9, 148:5,
148:10, 148:21,
148:23, 148:25,
149:3, 149:12,
153:10, 153:12,
153:18, 153:24,
154:1, 154:13,
154:24, 155:9,
155:21, 156:2,
156:4, 157:6, 157:9,
158:23, 158:25,
159:11, 159:21,
160:9, 162:4,
163:11, 165:1,
165:5, 165:23,
165:24, 167:5,
167:11, 168:7,
168:10, 168:15,
168:20, 170:24,
171:6, 172:3, 172:6,
172:14, 172:15,
175:4, 175:9,
175:10, 175:17,
175:20, 175:22,
176:23, 182:3,
195:18, 196:7,
196:8, 196:20,
196:22, 197:20,
197:23, 199:21,
200:2, 200:5, 200:8,
200:15, 200:24,
201:1, 201:4, 202:7,
202:15, 203:17,
203:18, 204:1,
204:2, 205:16,
205:23, 205:24,
206:8, 206:12,
207:12, 207:13,

210:3, 210:6, 210:9,
213:20, 213:24,
214:12, 214:15,
214:19, 214:23,
215:1, 215:19,
215:20, 218:16,
219:16, 219:22,
220:6, 220:9,
221:25, 222:4,
222:11, 224:21,
224:25, 226:14,
226:19, 226:25,
229:9, 229:12,
229:21, 229:24,
230:4, 232:1, 232:4,
232:9, 233:1,
233:11, 233:16,
233:20, 234:2,
234:5, 236:18,
236:24
**Dougherty's** [26] - 5:7,
112:8, 116:12,
118:13, 119:15,
120:2, 125:11,
125:24, 126:25,
128:1, 129:18,
129:25, 130:6,
131:19, 131:24,
132:12, 133:6,
133:9, 133:16,
134:6, 134:11,
136:15, 139:6,
140:25, 174:19,
190:14
**dovetail** [1] - 231:16
**down** [26] - 22:6,
22:20, 29:22, 36:13,
67:12, 68:22, 70:4,
73:23, 84:13, 102:2,
102:3, 120:24,
127:17, 132:4,
151:25, 172:16,
172:21, 174:20,
176:15, 182:17,
183:11, 185:6,
188:21, 192:10,
194:24, 196:17
**download** [1] - 33:15
**dozen** [4] - 109:20,
109:21, 109:24,
109:25
**Dr** [1] - 137:17
**drafted** [1] - 40:9
**drag** [1] - 28:15
**drain** [1] - 93:21
**draw** [4] - 79:1, 86:5,
86:24, 122:14
**drawing** [1] - 96:12
**drawn** [1] - 15:1
**drive** [1] - 71:24

**driveway** [2] - 97:6,
97:10
**drop** [2] - 29:22, 36:13
**Dropbox** [1] - 137:19
**drug** [2] - 57:11,
101:15
**due** [8] - 127:21,
131:15, 161:14,
189:11, 189:12,
211:5, 211:17,
211:22
**duh** [1] - 97:19
**dumb** [1] - 92:5
**Dupes** [32] - 113:5,
113:9, 113:17,
115:4, 116:18,
116:21, 117:11,
117:19, 122:23,
122:24, 124:6,
141:24, 141:25,
146:15, 146:16,
146:23, 147:1,
147:5, 149:8, 149:9,
149:11, 149:16,
149:18, 149:19,
149:25, 150:12,
152:21, 152:22,
152:24, 161:18,
169:25
**Dupes'** [1] - 116:20
**duplicate** [1] - 31:21
**duplicative** [1] - 168:4
**during** [23] - 6:19,
15:8, 15:11, 19:15,
40:3, 41:10, 63:15,
74:2, 78:17, 80:4,
80:6, 81:9, 82:21,
83:7, 83:18, 84:20,
85:9, 89:7, 103:17,
158:6, 192:12,
194:4, 215:16
**DUSM** [2] - 195:19,
195:20
**duties** [2] - 80:14,
210:13
**Duties** [1] - 210:11
**duty** [2] - 39:17, 217:2

# E

**e-mail** [14] - 135:15,
135:18, 135:23,
136:12, 136:15,
136:20, 138:22,
139:2, 140:15,
140:17, 168:11,
170:5, 235:11,
235:18
**e-mailed** [1] - 147:4

**e-mails** [13] - 109:1, 135:3, 135:6, 138:24, 170:3, 225:14, 235:5, 235:12, 236:5, 236:8, 236:9, 236:13, 236:15
**E-N-E-R-S-O-N** [1] - 107:9
**ear** [3] - 5:14, 41:13, 65:9
**early** [2] - 97:4, 123:24
**easier** [1] - 11:1
**Eastern** [1] - 116:8
**easy** [2] - 133:14, 163:25
**ECF** [6] - 28:9, 126:4, 166:8, 169:18, 205:11, 234:9
**economic** [1] - 52:17
**edge** [1] - 11:5
**educate** [1] - 37:8
**educated** [2] - 16:18, 83:3
**effect** [5] - 20:11, 20:14, 138:17, 156:1, 159:13
**effectively** [3] - 19:18, 27:1, 36:4
**efficient** [1] - 157:12
**effort** [1] - 145:15
**efforts** [2] - 12:12, 98:23
**eight** [5] - 48:9, 48:10, 49:17, 50:10, 178:5
**eighteen** [1] - 48:2
**either** [17] - 26:19, 53:8, 57:23, 59:1, 65:14, 94:7, 94:14, 105:6, 118:15, 136:25, 146:11, 151:7, 162:15, 163:2, 164:8, 195:6, 234:8
**elaborately** [1] - 103:20
**elaborating** [1] - 104:12
**elect** [1] - 43:1
**electric** [1] - 144:2
**electronic** [2] - 129:3, 130:14
**element** [7] - 95:16, 95:18, 104:7, 143:14, 235:9, 235:17, 236:16
**elements** [8] - 86:10, 88:2, 90:18, 94:2, 95:9, 95:14
**elevator** [3] - 158:7,

158:8, 158:18
**Eleven** [2] - 56:3, 56:4
**elicited** [2] - 165:10, 220:23
**eliciting** [1] - 221:11
**elmo** [3] - 153:14, 153:20, 199:2
**Elonis** [16] - 14:1, 205:8, 205:19, 205:20, 228:3, 228:23, 229:4, 229:7, 229:12, 229:20, 229:22, 230:9, 231:1, 231:11, 233:6
**elsewhere** [1] - 213:3
**eluded** [1] - 99:12
**embarrass** [1] - 41:4
**embellish** [1] - 224:4
**emotions** [1] - 192:13
**emphasize** [1] - 74:6
**employed** [2] - 44:14, 51:22
**employee** [3] - 46:13, 46:16, 113:5
**employees** [2] - 108:4, 203:1
**employment** [4] - 108:15, 109:12, 139:4, 178:25
**encounter** [2] - 179:2, 195:21
**end** [44] - 14:24, 69:1, 78:2, 79:20, 79:22, 80:25, 81:4, 84:10, 84:16, 88:3, 94:17, 109:10, 109:11, 130:25, 132:6, 132:11, 134:13, 140:15, 186:21, 193:10, 197:19, 207:11, 207:14, 217:4
**ended** [3] - 59:21, 111:7, 220:19
**endorsed** [1] - 60:9
**ends** [4] - 126:20, 187:2, 201:3, 201:7
**energy** [1] - 60:25
**Enerson** [22] - 34:10, 44:3, 107:4, 107:8, 107:19, 107:20, 111:5, 113:12, 115:2, 115:8, 115:18, 120:10, 121:18, 123:17, 125:12, 138:4, 139:4, 141:12, 141:22, 142:8, 149:8, 160:10

**ENERSON** [1] - 107:5
**enforce** [1] - 83:6
**enforceability** [1] - 169:19
**enforcement** [9] - 10:23, 11:4, 44:14, 51:20, 51:22, 92:23, 93:14, 93:21, 178:2
**engaged** [1] - 100:22
**England** [1] - 68:16
**English** [1] - 161:3
**enlarged** [1] - 185:2
**enrolled** [1] - 102:20
**enter** [11] - 99:18, 126:21, 139:13, 151:3, 151:16, 160:17, 160:21, 161:14, 163:19, 163:20, 184:23
**entered** [15] - 31:12, 31:21, 126:11, 127:2, 128:3, 149:21, 151:2, 151:17, 151:18, 151:23, 152:4, 152:16, 169:22, 169:24, 172:9
**entering** [2] - 115:10, 160:14
**enters** [3] - 151:1, 152:1, 152:2
**entertained** [1] - 201:24
**entire** [4] - 10:15, 10:22, 81:6, 188:15
**entirely** [1] - 164:17
**entirety** [1] - 235:11
**entities** [2] - 125:4, 174:5
**entity** [3] - 139:22, 146:9, 146:12
**entries** [4] - 112:10, 112:12, 123:21, 130:16
**entry** [12] - 31:16, 31:20, 111:14, 111:21, 127:20, 149:6, 149:10, 149:17, 150:10, 150:11, 152:5, 170:4
**epiphany** [1] - 15:18
**episode** [1] - 158:22
**equal** [1] - 6:11
**equally** [1] - 11:1
**equipment** [1] - 107:13
**equivalent** [1] - 105:10
**equivocal** [1] - 160:21
**Eric** [4] - 44:3, 177:5,

177:13, 225:6
**ERIC** [1] - 177:10
**Erica** [1] - 129:4
**error** [1] - 31:21
**escorted** [7] - 157:15, 193:18, 193:19, 200:10, 208:12, 208:14, 209:1
**ESIGN** [1] - 130:17
**especially** [4] - 92:10, 104:14, 123:21, 216:6
**essential** [2] - 95:17, 143:14
**essentially** [4] - 117:13, 200:21, 218:8, 235:9
**establish** [7] - 42:20, 95:13, 95:14, 144:17, 144:19, 156:24, 184:4
**established** [5] - 86:14, 101:17, 168:5, 175:11, 175:14
**establishing** [1] - 228:11
**et** [4] - 30:2, 122:17, 122:23, 141:24
**evacuated** [1] - 93:20
**evaluate** [1] - 168:2
**evaluating** [1] - 97:24
**evening** [5] - 216:15, 217:9, 226:12, 230:15, 233:25
**event** [3] - 39:13, 196:9, 213:22
**events** [2] - 11:10, 81:8
**eventually** [1] - 124:12
**Evidence** [1] - 168:1
**evidence** [105] - 13:21, 19:6, 19:9, 19:11, 19:17, 20:2, 20:4, 26:15, 27:22, 39:20, 39:21, 39:22, 42:13, 42:15, 43:3, 43:4, 43:5, 58:19, 61:14, 61:25, 74:12, 77:17, 78:14, 78:15, 78:16, 78:18, 78:19, 78:20, 78:21, 78:23, 78:24, 79:3, 79:5, 79:7, 79:8, 79:9, 79:10, 79:12, 80:3, 80:5, 80:20, 80:24, 82:13, 82:24, 83:1, 83:12, 83:24, 84:1, 85:7, 85:12, 85:25, 86:3, 86:6, 86:16, 86:17,

87:18, 94:19, 96:3, 96:5, 96:6, 96:10, 96:16, 96:17, 96:20, 96:21, 96:25, 97:1, 97:2, 97:16, 97:24, 98:2, 98:12, 99:6, 103:16, 107:2, 118:24, 121:25, 147:17, 148:2, 148:12, 165:20, 168:3, 172:8, 172:9, 174:24, 197:14, 199:11, 202:8, 210:2, 210:4, 212:3, 214:9, 216:9, 216:23, 217:20, 219:11, 220:11, 220:23
**evidenced** [1] - 130:15
**evidentiary** [2] - 20:15, 36:20
**evils** [2] - 183:22, 184:19, 187:4
**evolve** [1] - 99:5
**exact** [5] - 101:19, 105:20, 109:21, 113:20, 153:19
**exactly** [9] - 93:20, 143:9, 161:7, 169:14, 190:2, 220:22, 227:4, 232:10, 233:21
**EXAMINATION** [5] - 107:14, 141:20, 160:8, 177:14, 195:17
**examination** [6] - 141:19, 195:16, 201:12, 201:15, 202:24, 220:5
**examinations** [1] - 8:24
**examine** [2] - 119:1, 220:2
**example** [12] - 92:24, 96:19, 96:20, 109:15, 111:21, 124:15, 133:13, 140:15, 176:11, 178:15, 204:4, 227:22
**examples** [1] - 204:13
**except** [1] - 68:7
**exception** [1] - 62:6
**excerpt** [3] - 172:17, 173:17, 174:3
**excess** [1] - 125:9
**excruciating** [1] - 12:23
**excusal** [1] - 40:15

**excuse** [11] - 40:13, 65:24, 66:14, 66:22, 67:4, 67:23, 69:2, 75:3, 149:13, 195:19, 196:20
**excused** [10] - 68:11, 68:12, 73:16, 73:17, 73:20, 77:24, 78:3, 88:10, 177:2, 217:16
**executive** [3] - 104:15, 104:16, 104:23
**exercise** [4] - 67:11, 67:12, 68:17, 68:23
**exercised** [1] - 69:11
**Exhibit** [11] - 114:3, 120:11, 128:7, 133:22, 135:13, 139:1, 168:12, 180:16, 182:2, 218:19, 222:6
**exhibit** [5] - 114:22, 115:2, 128:11, 136:1, 156:13
**exhibits** [4] - 30:23, 78:17, 100:21, 121:14
**exist** [1] - 142:14
**existed** [2] - 25:11, 141:3
**exists** [2] - 167:15, 173:20
**expand** [3] - 129:16, 134:21, 136:10
**expanded** [1] - 183:5
**expanding** [1] - 152:16
**expect** [7] - 4:18, 19:17, 76:7, 100:22, 155:21, 225:2, 225:5
**expected** [6] - 9:18, 16:19, 20:17, 83:3, 197:5, 221:1
**expects** [1] - 85:9
**expedite** [1] - 31:14
**expense** [2] - 145:24, 215:25
**expensive** [1] - 107:12
**experience** [19] - 12:21, 24:3, 45:9, 45:25, 53:21, 54:19, 54:20, 55:14, 55:23, 56:7, 56:15, 57:3, 57:12, 57:23, 58:4, 58:13, 59:10, 60:6, 63:14
**experienced** [1] - 61:8
**experiences** [1] - 12:24
**experiencing** [1] - 63:16

**expert** [3] - 47:6, 169:8, 235:6
**explain** [15] - 18:24, 40:3, 63:13, 80:7, 119:4, 144:16, 170:16, 171:14, 172:7, 176:10, 178:7, 182:24, 201:14, 218:12, 222:18
**explained** [2] - 129:1, 203:10
**explaining** [3] - 19:24, 128:20, 166:25
**explains** [3] - 38:5, 154:22, 161:22
**explanation** [1] - 216:4
**explanations** [1] - 204:13
**explicitly** [2] - 27:14, 129:11
**exposed** [2] - 63:15, 63:24, 66:9
**exposure** [1] - 63:25
**express** [2] - 192:12, 192:15
**expressed** [2] - 195:23, 204:4
**expressing** [1] - 140:8
**expression** [2] - 95:3, 159:9
**extensively** [1] - 202:2
**extent** [14] - 5:3, 14:2, 60:3, 96:25, 110:16, 116:11, 126:23, 130:2, 131:21, 135:1, 143:22, 147:16, 154:15, 166:25
**extortion** [2] - 105:9, 105:14
**extractions** [1] - 105:17
**extraordinarily** [1] - 151:24
**extreme** [2] - 98:9, 98:10
**extremely** [4] - 93:18, 97:23, 98:22
**eyewitness's** [1] - 96:8

**F**

**face** [4] - 35:18, 86:24, 99:1
**face-to-face** [1] - 35:18

**Facebook** [1] - 81:17
**fact** [92] - 15:19, 22:8, 24:18, 24:25, 25:15, 28:2, 28:4, 36:14, 36:17, 36:22, 66:8, 81:19, 82:25, 86:3, 86:18, 95:13, 97:16, 97:23, 98:25, 99:5, 99:12, 99:14, 99:17, 99:18, 100:7, 100:19, 100:21, 100:25, 101:24, 102:13, 104:5, 104:8, 104:11, 104:13, 104:16, 105:2, 105:7, 105:11, 105:24, 106:4, 119:19, 120:3, 125:25, 135:6, 135:17, 139:18, 145:15, 153:8, 155:14, 158:17, 158:18, 158:25, 159:1, 163:16, 163:19, 163:25, 164:3, 166:6, 166:7, 167:13, 169:5, 172:9, 173:17, 173:21, 174:8, 174:9, 174:19, 175:25, 190:20, 197:7, 198:5, 198:17, 203:21, 204:8, 205:4, 205:20, 206:1, 207:15, 208:4, 208:5, 208:16, 215:11, 216:5, 216:6, 221:7, 227:4, 229:15, 236:5
**factor** [2] - 87:14, 194:17
**factored** [1] - 223:14
**facts** [24] - 28:1, 39:20, 39:23, 78:13, 79:14, 79:16, 80:21, 93:1, 96:13, 101:19, 103:23, 104:24, 104:25, 118:24, 147:16, 147:23, 148:8, 163:24, 174:23, 197:13, 208:10, 216:9
**Factual** [1] - 134:4
**factual** [3] - 95:15, 95:16, 95:18
**factually** [1] - 28:4
**fail** [1] - 163:18
**failed** [4] - 150:22,

160:15, 198:6, 234:25
**failing** [3] - 162:15, 163:2, 171:2
**failure** [2] - 160:16, 160:23
**fair** [40] - 7:17, 12:13, 12:15, 12:17, 20:19, 40:24, 45:10, 46:1, 51:17, 53:22, 54:22, 55:15, 55:24, 56:8, 57:4, 57:13, 57:24, 58:14, 59:11, 60:6, 61:3, 125:19, 135:22, 156:17, 163:16, 172:7, 174:6, 176:23, 181:22, 187:18, 188:23, 198:11, 198:16, 199:6, 201:19, 202:5, 202:17, 202:22, 211:19, 229:6
**fairly** [6] - 61:15, 62:1, 80:14, 116:14, 123:21, 175:24
**fairness** [4] - 39:18, 199:4, 201:25, 223:24
**faith** [2] - 106:18, 231:6
**false** [2] - 40:21, 146:2
**familiar** [18] - 60:12, 95:11, 108:15, 111:14, 114:14, 128:10, 144:22, 146:22, 152:8, 162:1, 162:5, 169:9, 171:19, 185:25, 192:17, 202:10, 202:11, 210:24
**familiarity** [2] - 108:18, 110:7
**family** [22] - 22:16, 22:25, 43:24, 44:5, 44:9, 44:13, 44:17, 44:18, 45:17, 46:12, 47:18, 48:3, 48:7, 52:16, 60:9, 81:24, 92:22, 93:9, 93:12, 191:15, 191:21, 191:25
**famous** [1] - 106:15
**famously** [1] - 106:14
**fancy** [2] - 97:20, 236:4
**far** [17] - 8:7, 8:21, 13:17, 30:18, 38:15, 73:10, 77:5, 101:15, 117:11, 127:12,

146:23, 154:11, 170:17, 191:24, 199:2, 201:22, 204:12
**Faretta** [1] - 166:16
**fashion** [1] - 164:2
**fate** [1] - 183:12
**father** [2] - 44:18, 49:22
**favor** [7] - 9:4, 18:6, 92:21, 93:5, 119:25, 120:2, 177:6
**FBI** [7] - 47:1, 47:2, 190:6, 196:9, 215:17, 215:22, 215:23
**fear** [2] - 80:15, 80:19
**February** [4] - 36:24, 100:10, 149:21, 166:18
**FEC** [1] - 131:11
**Federal** [5] - 129:8, 145:14, 163:17, 167:25, 169:4
**federal** [45] - 39:10, 44:16, 46:16, 46:24, 47:19, 47:21, 50:12, 50:14, 53:8, 54:1, 54:11, 54:14, 56:18, 59:1, 91:20, 91:21, 91:23, 92:2, 92:11, 92:17, 93:13, 103:9, 104:18, 110:4, 110:5, 111:22, 116:1, 116:7, 118:3, 139:16, 142:9, 142:11, 142:12, 143:20, 144:7, 144:8, 144:9, 144:10, 160:4, 169:10, 170:17, 178:10, 184:21, 193:21, 211:3
**feet** [3] - 7:6, 8:10, 64:5
**Fegley** [1] - 187:14
**fellow** [6] - 80:1, 81:1, 81:7, 81:21, 106:14, 196:9
**felt** [1] - 15:8
**few** [11] - 5:1, 53:17, 76:15, 76:17, 90:21, 110:10, 111:6, 112:9, 139:5, 157:18, 185:16
**fiancee** [1] - 47:19
**FID** [1] - 213:21
**fifteen** [1] - 74:23
**Fifteen** [1] - 76:3
**fifth** [3] - 19:8, 42:16,

212:7

**Fifty** [2] - 50:5, 57:18
**fifty** [2] - 50:6, 63:11
**Fifty-six** [2] - 50:5, 57:18
**fifty-six** [1] - 50:6
**fifty-three** [1] - 63:11
**fight** [1] - 140:2
**fighting** [3] - 236:5, 236:7, 236:12
**figure** [5] - 14:8, 75:11, 133:1, 216:16, 231:12
**figures** [1] - 231:15
**file** [28] - 105:11, 110:23, 111:8, 124:10, 124:13, 124:16, 124:17, 124:19, 132:25, 145:21, 146:1, 149:13, 150:25, 151:8, 152:11, 161:17, 162:20, 164:9, 164:11, 173:12, 193:12, 196:25, 197:3, 198:6, 207:18, 208:24, 214:3
**filed** [48] - 23:25, 26:10, 32:9, 58:25, 109:14, 109:19, 110:13, 111:18, 111:20, 111:22, 112:13, 113:3, 113:14, 113:16, 116:15, 122:19, 122:22, 123:5, 124:13, 124:14, 124:19, 126:12, 126:15, 127:23, 127:25, 132:14, 138:8, 142:4, 147:9, 149:23, 152:21, 162:19, 173:5, 180:23, 181:1, 181:13, 181:14, 181:15, 198:8, 207:10, 207:15, 207:19, 207:20, 207:23, 208:17, 209:12, 213:7, 227:1
**files** [4] - 112:16, 117:2, 124:11, 126:7
**filing** [32] - 28:19, 104:10, 111:17, 123:25, 130:14, 140:17, 142:3, 143:1, 143:4, 145:23, 163:3, 179:17, 179:20,

180:11, 180:19, 180:20, 182:7, 182:8, 182:10, 183:2, 185:22, 191:23, 198:2, 200:7, 200:20, 200:23, 201:6, 202:4, 202:12, 207:20, 209:6, 213:12
**filings** [30] - 111:16, 112:14, 124:2, 125:20, 125:24, 128:2, 129:3, 129:21, 130:15, 131:24, 133:6, 133:16, 134:6, 134:8, 134:10, 134:11, 134:17, 139:6, 152:17, 155:5, 190:16, 190:18, 192:15, 192:18, 193:14, 195:12, 202:10, 202:11, 209:3
**fill** [4] - 21:7, 30:13, 142:9, 143:16
**filled** [2] - 30:6, 30:19
**final** [9] - 80:25, 86:9, 88:22, 89:1, 164:25, 206:15, 215:21, 228:24, 231:9
**finally** [3] - 87:18, 106:23, 133:21
**financial** [1] - 102:23
**finder** [1] - 86:18
**fine** [12] - 5:22, 11:16, 18:1, 22:23, 34:1, 45:4, 112:5, 155:24, 156:7, 199:17, 226:2, 226:11
**fined** [1] - 74:9
**finest** [1] - 102:10
**finger** [1] - 122:14
**finish** [2] - 225:2, 225:8
**finished** [1] - 76:23
**Finucane** [1] - 36:24
**firearm** [1] - 55:20
**fireman** [2] - 47:20, 47:21
**firm** [3] - 101:17, 102:2, 102:3
**first** [57] - 6:16, 7:14, 7:20, 8:2, 12:22, 17:23, 30:4, 38:11, 38:21, 39:2, 43:19, 65:11, 67:10, 67:19, 76:12, 85:4, 87:24, 89:8, 90:18, 91:2,

94:3, 98:20, 98:22, 98:25, 102:12, 103:22, 106:23, 111:3, 113:7, 115:19, 122:9, 123:1, 123:4, 124:21, 128:9, 128:19, 132:6, 134:4, 150:14, 169:23, 182:7, 186:12, 186:25, 189:4, 190:8, 191:19, 193:3, 208:14, 210:1, 227:3, 230:1, 231:13, 231:15, 232:12, 232:18
**First** [1] - 103:7
**five** [16] - 29:14, 37:17, 48:14, 48:15, 55:19, 59:14, 59:15, 61:7, 76:7, 88:7, 88:8, 88:9, 102:11, 115:16, 122:18, 192:11
**fixture** [2] - 95:19, 95:22
**flip** [2] - 114:3, 180:17
**floating** [1] - 17:10
**flow** [2] - 235:5, 235:12
**Flowers** [2] - 118:1, 123:15
**flowing** [1] - 225:13
**focus** [2] - 33:3, 150:15
**fold** [1] - 156:5
**folder** [1] - 156:13
**folks** [10] - 23:12, 40:13, 41:20, 51:18, 62:6, 67:24, 68:2, 69:2, 69:14, 73:17
**follow** [14] - 10:1, 14:20, 38:4, 38:16, 51:18, 60:21, 65:13, 65:16, 66:25, 73:7, 80:12, 83:14, 83:15, 189:19
**follow-up** [4] - 51:18, 65:13, 65:16, 66:25
**followed** [1] - 126:9
**following** [2] - 193:1, 210:13
**follows** [1] - 102:5
**font** [2] - 137:5, 172:21
**fonts** [1] - 137:5
**Footnote** [1] - 166:17
**force** [1] - 236:21
**Force** [6] - 49:24,

137:16, 171:18, 171:20, 171:23, 172:10
**forced** [2] - 101:16, 102:1
**forcing** [1] - 105:13
**foreclosure** [1] - 194:12
**foreign** [1] - 101:21
**foremost** [1] - 191:19
**foresee** [1] - 95:1
**forget** [2] - 21:10, 75:7
**forgive** [1] - 213:17
**forgot** [1] - 67:19
**form** [6] - 30:12, 35:14, 104:21, 163:5, 195:13, 227:1
**formal** [1] - 146:16
**format** [1] - 161:24
**formed** [1] - 139:23
**former** [3] - 34:24, 36:23, 115:19
**forms** [1] - 135:7
**Fort** [2] - 51:13, 51:16
**forth** [5] - 68:25, 104:4, 153:22, 173:22, 216:2
**forty** [4] - 49:22, 50:2, 50:10, 61:19
**Forty** [2] - 50:1, 53:5
**forty-eight** [1] - 50:10
**forty-four** [2] - 49:22, 50:2
**Forty-four** [1] - 50:1
**Forty-seven** [1] - 53:5
**forty-six** [1] - 61:19
**forward** [4] - 8:25, 90:13, 157:5, 203:10
**fought** [1] - 236:8
**foundation** [2] - 145:3, 200:19
**founded** [1] - 99:25
**founding** [1] - 25:11
**four** [14] - 45:13, 49:22, 50:1, 50:2, 110:11, 115:19, 120:17, 120:19, 121:14, 122:18, 185:25, 186:12, 192:11, 225:6
**fourth** [2] - 101:22, 214:4
**Frame** [6] - 100:1, 103:5, 166:12, 166:22, 173:17
**frame** [2] - 224:8, 224:16
**Franchise** [3] - 164:18, 176:2, 176:7
**Franklin** [1] - 55:2

**frankly** [2] - 10:25, 103:21
**fraught** [1] - 133:11
**Frederick** [2] - 186:6, 186:16
**free** [15] - 15:4, 25:9, 69:17, 69:22, 91:11, 91:18, 92:14, 92:16, 100:2, 103:9, 184:2, 188:2, 212:18, 217:4
**freedom** [1] - 154:16
**freely** [2] - 93:1, 166:13
**frequent** [3] - 124:4, 132:18, 172:23
**frequently** [1] - 132:18
**fresh** [1] - 179:16
**Frey** [2] - 129:4
**friend** [9] - 22:15, 22:25, 43:24, 44:5, 44:13, 100:6, 100:18, 105:7, 105:8
**friends** [2] - 166:5, 166:16
**frivolous** [7] - 145:17, 146:1, 152:17, 156:21, 160:12, 164:16, 167:12
**front** [12] - 15:17, 41:6, 61:6, 68:2, 76:11, 106:24, 122:1, 159:3, 167:21, 167:22, 196:10, 219:2
**frustrated** [3] - 98:7, 98:9, 103:18
**frustrating** [1] - 78:8
**frustration** [1] - 140:8
**FTCA** [1] - 184:23
**fugitive** [1] - 178:12
**fulfill** [1] - 13:12
**fulfilling** [1] - 38:23
**full** [7] - 52:21, 124:21, 128:19, 132:7, 183:5, 188:23, 189:4
**fully** [5] - 4:19, 64:19, 130:15, 206:14, 216:12
**function** [4] - 13:12, 25:16, 79:13, 115:11
**functions** [1] - 104:18
**funeral** [1] - 184:15
**future** [1] - 215:13

**G**

**game** [1] - 199:6
**Gap** [2] - 51:14, 51:16
**gas** [1] - 64:10

**gate** [1] - 153:1
**gears** [1] - 191:23
**gender** [1] - 80:18
**General** [6] - 107:24, 108:2, 146:5, 146:20, 147:11, 147:12
**general** [2] - 77:15, 170:19
**General's** [1] - 107:21
**gentleman** [4] - 49:21, 57:7, 58:1, 158:14
**geographic** [1] - 179:25
**George** [1] - 103:7
**gibberish** [1] - 137:21
**girls** [1] - 59:6
**gist** [1] - 137:6
**given** [21] - 13:22, 17:9, 17:12, 30:15, 40:1, 52:7, 52:8, 52:11, 58:20, 65:24, 80:24, 83:17, 126:8, 127:7, 153:25, 172:7, 172:11, 202:5, 213:18, 231:8, 231:11
**glad** [2] - 13:3, 13:10
**glean** [1] - 125:1
**Gloucester** [1] - 53:11
**go-between** [1] - 37:2
**God** [1] - 198:18
**gonna** [6] - 77:13, 91:9, 91:14, 91:19, 94:18, 94:24
**goodness** [1] - 91:5
**Google** [1] - 74:5
**gotcha** [3] - 10:23, 46:5, 46:21
**govern** [2] - 83:1, 83:2
**governed** [1] - 103:2
**government** [10] - 102:14, 104:14, 105:6, 110:2, 110:3, 110:4, 139:17, 141:8, 144:8, 232:20
**Government** [45] - 5:16, 13:17, 16:16, 17:14, 22:24, 27:21, 40:8, 40:11, 41:17, 42:19, 42:20, 43:15, 44:23, 46:13, 52:13, 60:11, 67:12, 72:17, 85:4, 85:11, 85:14, 85:19, 100:1, 103:5, 104:21, 122:1, 156:8, 165:14, 166:12, 166:22, 168:17, 173:18, 209:25, 218:19,

220:23, 221:4, 224:13, 230:6, 231:6, 232:5, 233:10, 235:20, 236:22
**GOVERNMENT'S** [2] - 107:5, 177:10
**Government's** [7] - 34:4, 168:12, 169:16, 217:19, 221:1, 223:19, 228:8
**governmental** [2] - 125:4, 141:10
**grand** [4] - 53:7, 56:16, 56:19, 56:25
**granted** [1] - 174:17
**granting** [2] - 26:11, 83:10
**grass** [5] - 97:6, 97:11, 97:15, 97:17
**grateful** [1] - 38:24
**great** [10] - 6:4, 15:5, 32:22, 47:25, 65:11, 70:16, 105:4, 217:12, 219:3, 234:11
**greeted** [1] - 196:10
**ground** [4] - 76:13, 183:22, 184:16, 194:23
**grounds** [1] - 197:17
**group** [3] - 23:15, 59:6, 60:9
**groups** [2] - 24:13, 24:22
**guarantee** [1] - 211:5
**guaranteed** [1] - 104:21
**guess** [25] - 5:5, 6:16, 6:22, 6:25, 8:24, 10:14, 10:20, 23:20, 23:22, 24:8, 46:6, 59:9, 65:11, 66:18, 69:8, 71:16, 123:19, 132:22, 146:5, 158:1, 168:15, 171:16, 198:19, 223:17, 235:14
**guessing** [1] - 188:6
**guidance** [1] - 142:2
**guide** [4] - 40:4, 77:16, 80:8, 87:23
**guidelines** [1] - 60:21
**guilt** [4] - 42:20, 52:14, 85:19, 97:3
**guilty** [12] - 9:13, 42:22, 52:18, 54:12, 54:13, 54:14, 55:22, 57:11, 58:12, 82:18, 85:18

**guy** [3] - 46:18, 78:24, 79:2
**guys** [2] - 70:15, 178:12

**H**

**H-A-N-N-A** [2] - 177:13, 177:20
**half** [3] - 103:21, 103:22, 109:24
**hallway** [2] - 81:11, 157:14
**hand** [12] - 17:2, 17:20, 21:17, 32:17, 41:6, 84:23, 85:1, 148:18, 148:19, 161:25, 162:22, 226:17
**handcuffs** [1] - 158:19
**handed** [4] - 64:10, 156:13, 179:17, 233:22
**handing** [1] - 232:22
**handled** [1] - 169:12
**hands** [3] - 56:11, 57:7, 57:16
**handshaking** [1] - 215:22
**handwritten** [1] - 199:2
**handwrote** [1] - 34:5
**HANNA** [1] - 177:10
**Hanna** [9] - 44:3, 177:5, 177:13, 178:7, 183:6, 185:3, 189:23, 195:19, 225:7
**happy** [2] - 90:8, 199:10
**hard** [11] - 28:11, 28:19, 28:22, 48:25, 51:15, 53:3, 177:7, 196:3, 201:21, 209:16, 215:24
**hardship** [1] - 40:15
**harm** [2] - 91:8, 91:13
**harmed** [1] - 222:14
**harmful** [1] - 191:21
**harming** [1] - 190:19
**Harrisburg** [5] - 30:18, 32:12, 107:22, 108:7, 177:25
**hate** [1] - 36:3
**head** [2] - 137:15, 171:17
**header** [1] - 136:6
**heading** [5] - 127:17, 129:16, 130:24,

134:4, 134:13
**headings** [1] - 36:17
**headphones** [1] - 26:5
**heads** [1] - 198:20
**health** [1] - 52:15
**Health** [1] - 48:12
**hear** [37] - 7:10, 12:18, 12:21, 13:4, 13:16, 27:18, 40:23, 50:17, 52:24, 53:3, 63:11, 65:2, 65:6, 65:9, 65:20, 66:23, 70:19, 82:8, 84:20, 84:22, 85:9, 94:19, 96:20, 98:6, 118:18, 134:15, 144:7, 144:9, 144:11, 177:8, 199:20, 199:22, 210:14, 214:14, 215:15, 216:24, 224:13
**heard** [19] - 39:22, 41:15, 43:22, 44:7, 61:9, 80:24, 84:3, 98:12, 98:16, 185:11, 197:25, 200:12, 202:25, 208:10, 212:12, 215:3, 219:13, 220:11, 235:19
**hearing** [9] - 11:24, 49:1, 52:20, 52:23, 65:18, 196:3, 210:14, 210:17, 231:24
**hearings** [2] - 12:8, 37:7
**hears** [1] - 180:4
**hearsay** [6] - 27:4, 197:17, 198:23, 201:24, 202:23, 203:8
**heated** [5] - 193:15, 193:16, 221:8, 221:9, 223:25
**held** [6] - 58:22, 65:5, 70:18, 101:7, 102:14, 199:19
**help** [7] - 7:4, 11:13, 13:6, 143:4, 156:14, 157:23, 215:24
**helped** [1] - 222:15
**helpful** [4] - 14:17, 84:23, 159:15, 220:7
**herself** [2] - 92:25, 176:15
**hesitate** [1] - 84:25
**hesitates** [1] - 93:7
**hiding** [1] - 158:25
**high** [2] - 59:7, 123:21

**higher** [1] - 183:12
**highest** [1] - 211:23
**highlight** [1] - 189:7
**Hillman** [1] - 234:18
**himself** [18] - 18:20, 18:23, 20:3, 41:20, 42:8, 42:10, 92:25, 102:19, 103:1, 106:8, 132:15, 140:8, 166:4, 173:16, 188:16, 188:22, 188:25, 195:12
**hire** [1] - 105:7
**hiring** [1] - 101:24
**historically** [1] - 14:20
**History** [1] - 134:4
**history** [6] - 68:16, 98:15, 106:15, 108:19, 109:18, 110:7
**hit** [4] - 29:22, 76:13, 123:10, 197:9
**Hobbs** [1] - 105:15
**hold** [12] - 20:1, 29:23, 30:7, 42:24, 78:3, 78:6, 85:21, 85:22, 118:20, 211:23, 220:1, 232:22
**Holder** [1] - 22:9
**holders** [1] - 110:1
**holding** [2] - 199:25, 231:9
**home** [12] - 71:24, 84:16, 97:9, 97:16, 190:3, 191:25, 194:21, 194:25, 204:7, 216:20, 217:1
**Homeland** [2] - 48:4, 50:8
**honest** [4] - 53:10, 64:19, 64:20, 151:12
**honesty** [1] - 39:18
**Honor** [78] - 4:5, 4:23, 5:1, 5:10, 5:19, 6:12, 6:15, 10:11, 10:22, 11:14, 11:23, 14:10, 17:19, 20:24, 21:15, 23:18, 24:8, 26:16, 27:9, 27:20, 34:7, 67:6, 70:22, 88:14, 89:18, 107:3, 107:13, 113:24, 114:21, 120:7, 121:13, 121:22, 122:3, 135:9, 135:25, 141:15, 143:21, 147:15, 158:3, 163:5, 164:22, 165:1,

166:19, 167:9,
170:20, 172:1,
177:1, 179:10,
180:12, 182:1,
195:14, 196:15,
196:18, 197:12,
198:22, 199:1,
199:8, 199:23,
201:10, 203:6,
203:12, 205:13,
206:7, 207:8, 210:5,
214:6, 216:8,
217:22, 221:13,
222:11, 222:18,
223:23, 225:11,
225:17, 225:20,
225:23, 233:20,
236:1
**hook** [1] - 92:3
**hope** [4] - 102:17,
106:8, 106:9, 106:24
**hour** [2] - 77:20, 155:7
**house** [4] - 95:20,
194:10, 204:6, 217:2
**housed** [1] - 13:8
**household** [1] - 72:1
**hum** [17] - 21:4, 31:18,
61:13, 77:7, 130:13,
154:13, 159:11,
179:1, 182:23,
183:19, 194:16,
195:22, 204:19,
209:21, 212:2,
212:4, 236:24
**Human** [1] - 48:12
**hundred** [3] - 124:3,
188:5, 191:10
**hundreds** [4] - 29:11,
68:16, 112:12,
132:25
**hung** [1] - 56:6
**hurt** [2] - 92:22
**husband** [2] - 47:11,
71:25
**hybrid** [2] - 14:16,
35:16
**hyperbole** [2] -
232:14, 232:19

## I

**ice** [1] - 78:6
**icon** [1] - 123:9
**idea** [9] - 69:9, 110:6,
110:8, 140:21,
140:22, 141:8,
154:21, 164:17,
191:17
**ideas** [1] - 58:21

**identification** [5] -
120:11, 135:12,
138:25, 179:11,
180:15
**identified** [2] - 181:5,
183:13
**identify** [3] - 142:10,
142:15, 143:19
**ideology** [2] - 60:10,
60:12
**if's** [1] - 44:22
**ignore** [3] - 83:14,
137:23, 168:22
**ignoring** [1] - 138:2
**ill** [2] - 39:14, 78:9
**illegal** [5] - 91:17,
91:20, 92:2, 92:4,
92:10
**illusion** [2] - 100:20,
100:25
**illustration** [1] - 204:5
**imagine** [1] - 184:1
**immediate** [4] - 43:23,
44:17, 48:3, 60:9
**immunities** [1] -
101:13
**immunity** [5] - 205:3,
205:25, 206:4,
206:13, 216:3
**impact** [4] - 45:24,
45:25, 56:8, 58:13
**impairment** [1] - 52:20
**impartial** [19] - 40:25,
45:10, 46:1, 53:22,
54:22, 55:15, 55:24,
56:9, 57:4, 57:14,
57:24, 58:14, 59:11,
60:6, 61:3, 212:6,
212:21, 212:23,
212:24
**impartially** [3] - 61:15,
62:1, 80:14
**implies** [1] - 22:5
**imply** [1] - 24:21
**implying** [4] - 24:24,
25:20, 25:22, 184:7
**importance** [1] - 84:12
**important** [21] - 38:25,
39:17, 40:19, 67:25,
74:2, 74:3, 74:6,
80:10, 80:23, 87:20,
90:22, 90:23, 92:17,
96:5, 96:14, 96:24,
97:1, 97:21, 97:23,
158:19, 216:21
**imposed** [1] - 82:17
**impossible** [2] -
129:23, 134:19
**impression** [5] -
24:23, 36:12, 36:21,

140:7, 141:23
**impressive** [1] - 49:19
**imprint** [1] - 114:12
**improper** [2] - 24:16,
163:14
**inappropriate** [2] -
14:12, 127:21
**inasmuch** [1] - 90:22
**inaudible** [1] - 232:17
**incarcerated** [3] -
13:8, 159:1, 159:6
**incident** [19] - 28:4,
32:12, 196:23,
196:24, 200:9,
200:14, 201:6,
215:3, 215:11,
218:6, 220:20,
222:12, 222:21,
222:22, 223:7,
223:11, 224:6,
224:14
**include** [3] - 44:15,
162:16, 182:12
**included** [3] - 21:24,
25:17, 140:19
**includes** [1] - 22:10
**including** [5] - 13:6,
32:14, 81:21,
127:25, 136:11
**incoherent** [1] -
164:16
**Income** [4] - 161:19,
164:18, 176:1, 176:6
**incompetent** [1] -
161:16
**inconsistent** [2] -
87:3, 87:4
**inconvenience** [2] -
40:12, 40:14
**incorporated** [1] -
100:7
**incorrect** [2] - 28:4,
228:17
**increasing** [1] -
145:24
**increasingly** [1] - 98:7
**incredibly** [1] - 92:17
**incumbent** [1] - 11:12
**Indiantown** [2] -
51:14, 51:16
**indicate** [4] - 144:6,
144:10, 181:15,
227:5
**indicated** [19] - 11:18,
14:18, 35:12, 35:14,
36:11, 36:18, 36:25,
127:18, 129:11,
134:7, 143:11,
144:24, 169:11,
170:3, 171:8, 175:5,

203:20, 209:19,
227:3
**indicates** [10] - 25:7,
128:4, 131:5, 149:7,
149:8, 160:23,
173:18, 181:12,
198:12, 209:24
**indicating** [1] - 100:14
**indication** [1] - 121:3
**indications** [1] - 24:20
**indictment** [5] - 135:7,
138:1, 168:25,
204:8, 221:18
**indirect** [1] - 137:1
**individual** [15] - 51:25,
65:17, 95:4, 101:12,
106:13, 108:25,
123:2, 126:7, 146:9,
146:10, 146:11,
146:13, 147:1,
150:24, 182:16
**individually** [1] -
84:14
**individuals** [20] -
43:20, 44:1, 44:6,
102:6, 109:25,
111:2, 111:5, 113:4,
122:18, 122:21,
125:4, 127:7, 129:2,
129:5, 132:15,
135:16, 136:13,
136:18, 146:12,
204:14
**inference** [6] - 79:1,
96:11, 96:12,
100:22, 101:3
**inflict** [1] - 95:4
**influence** [2] - 80:16,
92:14
**influenced** [1] - 80:16
**inform** [4] - 16:25,
127:9, 147:6, 190:15
**information** [6] - 23:9,
37:10, 82:11, 136:7,
197:17, 201:14
**informed** [3] - 5:5,
149:9, 219:13
**informing** [1] - 149:15
**infringed** [1] - 188:3
**inherently** [1] - 87:5
**initial** [1] - 142:5
**initials** [1] - 123:14
**initiate** [2] - 59:23,
178:24
**injected** [1] - 106:8
**injunction** [1] - 31:16
**injure** [4] - 39:10,
88:1, 94:6, 94:13
**injury** [1] - 95:4
**inmates** [1] - 178:10

**innocence** [1] - 52:4
**innocent** [3] - 9:12,
42:21, 85:18
**innocently** [1] - 99:4
**inside** [2] - 182:8,
191:23
**insist** [1] - 105:21
**insisting** [1] - 106:19
**inspector** [1] - 179:18
**instance** [8] - 6:19,
34:23, 37:22, 52:20,
83:25, 148:6,
201:25, 202:4
**instant** [1] - 173:3
**instead** [3] - 100:20,
124:17, 185:5
**instruct** [4] - 85:22,
94:23, 99:17, 229:1
**instruction** [23] -
83:14, 83:16, 89:20,
216:22, 220:18,
220:21, 222:8,
222:9, 224:2,
226:10, 226:24,
227:13, 227:14,
227:19, 227:21,
227:24, 228:4,
228:8, 230:8,
230:10, 231:20,
232:8, 233:9
**Instructions** [1] -
233:3
**instructions** [31] -
14:1, 17:2, 17:23,
17:25, 20:23, 40:1,
52:11, 74:16, 75:23,
76:21, 77:14, 77:16,
78:12, 80:9, 80:10,
80:25, 86:9, 88:24,
89:1, 89:22, 94:16,
95:25, 216:24,
226:16, 227:11,
228:2, 228:8,
228:10, 230:19,
233:10
**insufficient** [3] -
128:3, 163:14,
163:15
**insults** [1] - 133:15
**insuring** [1] - 93:11
**integrated** [1] - 36:19
**integrity** [1] - 39:18
**intend** [2] - 28:4,
191:4
**intended** [8] - 41:4,
94:7, 94:14, 98:1,
98:2, 190:25, 191:20
**intent** [8] - 20:25,
104:9, 228:5, 228:8,
228:12, 228:16,

**intention** [2] - 95:4, 190:19
**intentions** [1] - 182:14
**interactions** [1] - 61:22
**interest** [1] - 119:18
**interesting** [1] - 69:13
**interestingly** [1] - 97:20
**interests** [3] - 117:20, 130:3, 130:5
**interject** [3] - 7:2, 10:8, 227:17
**Internal** [1] - 102:21
**internet** [4] - 61:24, 69:7, 74:4, 81:16
**interpret** [9] - 161:1, 184:6, 184:25, 185:4, 187:7, 187:8, 188:8, 188:10, 189:21
**interpretation** [3] - 154:19, 155:8, 155:16
**interpreted** [6] - 95:2, 138:8, 183:1, 184:7, 185:1, 185:5
**interrupt** [2] - 22:12, 196:13
**interrupting** [1] - 219:25
**interstate** [16] - 39:9, 88:1, 90:12, 91:1, 91:21, 91:22, 91:24, 94:10, 94:11, 103:25, 225:15, 235:4, 235:17, 235:21, 236:10, 236:15
**interview** [5] - 27:6, 27:19, 27:22, 192:12, 215:16
**interviewed** [1] - 190:3
**intonation** [1] - 143:25
**introduce** [7] - 18:19, 21:9, 41:16, 41:20, 43:9, 85:13, 202:23
**introduced** [7] - 43:15, 74:12, 78:17, 90:4, 210:1, 217:25, 222:16
**introducing** [3] - 19:24, 23:6, 222:17
**introduction** [1] - 18:17
**introductions** [1] - 4:3
**invalid** [1] - 137:8
**investigate** [2] -

**investigated** [1] - 44:14
**investigating** [1] - 194:13
**investigation** [12] - 178:24, 181:8, 181:24, 182:6, 182:11, 189:25, 191:11, 192:1, 194:3, 194:5, 194:8, 213:9
**investigative** [1] - 178:22
**investigator** [1] - 179:16
**investment** [1] - 102:2
**involve** [3] - 27:14, 27:16, 40:12
**involved** [7] - 44:18, 109:14, 114:19, 116:23, 119:23, 172:23, 228:22
**involvement** [3] - 108:23, 112:24, 135:2
**involves** [1] - 96:12
**IOP** [2] - 210:10, 210:11
**ironic** [1] - 184:3
**irrelevant** [2] - 154:15, 154:20
**IRS** [1] - 116:23
**issuance** [1] - 31:14
**issue** [41] - 5:12, 6:17, 9:10, 15:23, 16:10, 23:4, 28:19, 35:23, 35:25, 45:17, 70:23, 71:23, 99:7, 119:16, 120:23, 143:15, 146:23, 149:24, 149:25, 151:19, 156:6, 156:22, 164:20, 164:22, 166:3, 174:13, 174:20, 204:4, 205:9, 208:12, 216:3, 216:7, 220:3, 224:24, 226:11, 228:23, 229:8, 230:2, 232:12, 236:2
**issued** [10] - 26:10, 31:12, 31:16, 36:19, 120:3, 120:15, 120:18, 143:20, 144:14, 229:8
**issues** [17] - 4:15, 14:25, 24:13, 34:3, 65:18, 83:8, 103:19, 119:13, 119:16,

142:5, 147:18, 147:23, 166:9, 167:17, 182:13, 205:22
**IT** [2] - 46:18, 46:19
**item** [1] - 30:3
**itself** [6] - 16:19, 23:16, 87:5, 136:24, 143:6, 173:14
**IV** [1] - 104:19

## J

**jail** [1] - 109:8
**January** [2] - 135:16, 149:22
**Jared** [7] - 113:5, 113:9, 122:23, 141:24, 149:8, 150:12, 161:18
**JARED** [1] - 113:9
**Jeffrey** [1] - 36:24
**Jerome** [1] - 116:6
**Jerrico** [2] - 188:24, 210:23
**Jersey** [5] - 74:7, 133:14, 228:1, 234:13, 234:16
**JFC** [1] - 123:13
**job** [18] - 9:15, 11:10, 79:7, 83:6, 83:21, 86:18, 86:25, 87:10, 90:10, 94:17, 94:23, 108:6, 108:21, 112:24, 116:20, 178:6
**jobs** [1] - 110:2
**joinder** [1] - 169:18
**joint** [1] - 101:8
**Jones** [4] - 115:16, 186:2, 186:10, 186:13
**Jordan** [1] - 186:20
**Joseph** [2] - 227:25, 234:14
**jovial** [1] - 215:22
**Joy** [3] - 44:14, 118:1, 123:15
**Judge** [100] - 4:10, 8:7, 12:22, 15:4, 15:25, 16:7, 16:11, 17:5, 18:1, 20:6, 20:13, 23:4, 33:16, 65:10, 66:13, 71:17, 75:24, 106:2, 106:6, 117:25, 118:11, 119:7, 119:8, 119:11, 119:25, 120:15, 123:12,

123:14, 127:14, 128:12, 128:14, 130:7, 130:23, 131:5, 131:19, 133:25, 134:9, 135:1, 137:3, 137:15, 137:19, 137:22, 138:3, 138:12, 138:18, 138:21, 140:16, 147:18, 149:17, 149:24, 150:3, 150:17, 150:18, 154:18, 156:12, 159:25, 165:11, 165:15, 168:21, 170:6, 171:17, 176:14, 186:2, 186:6, 186:9, 186:10, 186:12, 186:13, 186:16, 186:23, 187:1, 187:12, 187:14, 187:17, 193:24, 198:18, 202:17, 210:12, 219:2, 221:16, 221:18, 223:10, 224:8, 224:15, 224:16, 225:11, 234:7, 234:18, 236:3
**judge** [67] - 7:2, 9:2, 26:6, 26:9, 35:4, 35:17, 38:11, 40:2, 43:10, 65:16, 71:4, 72:8, 74:8, 75:7, 82:2, 88:7, 92:25, 93:7, 94:9, 94:16, 95:24, 96:19, 106:7, 111:10, 115:14, 116:7, 117:23, 118:3, 118:5, 118:7, 118:9, 118:10, 118:18, 119:6, 119:12, 119:14, 119:23, 120:21, 123:11, 123:23, 124:15, 125:19, 126:14, 126:20, 127:1, 127:13, 128:20, 138:7, 158:6, 167:17, 173:8, 173:9, 173:10, 178:18, 186:6, 186:16, 186:17, 186:20, 204:6, 225:4, 227:17, 228:20, 230:17, 231:5, 234:24
**judge's** [1] - 115:10

**judges** [44] - 34:22, 34:23, 92:11, 92:13, 92:14, 92:18, 93:13, 98:10, 106:3, 110:5, 111:5, 111:6, 115:19, 116:15, 118:13, 118:15, 119:18, 125:4, 136:21, 139:14, 141:1, 172:24, 172:25, 183:7, 183:21, 184:2, 184:3, 184:7, 184:14, 185:1, 185:20, 185:24, 186:5, 186:8, 186:12, 186:14, 186:19, 187:3, 187:11, 187:18, 191:15, 198:14, 213:2, 213:6
**judges'** [1] - 185:21
**judgment** [24] - 51:25, 61:15, 61:25, 125:22, 126:6, 126:7, 126:11, 126:17, 127:2, 127:21, 127:23, 128:1, 131:16, 143:5, 149:4, 151:23, 151:25, 160:15, 161:14, 163:20, 164:9, 164:19, 169:14, 176:2
**judgments** [2] - 126:15, 184:22
**judicial** [7] - 9:13, 140:25, 172:17, 173:3, 178:13, 178:16, 179:18
**judiciary** [4] - 92:13, 99:2, 99:8, 104:22
**Judiciary** [3] - 103:7, 116:5, 150:12
**July** [1] - 173:5
**juries** [2] - 39:15, 229:1
**jurisdiction** [17] - 31:22, 31:23, 37:22, 91:23, 99:14, 142:3, 142:11, 142:12, 143:20, 144:18, 144:20, 144:21, 145:5, 145:8, 163:13, 165:3
**jurisdictional** [1] - 184:21
**JUROR** [146] - 44:17, 44:21, 45:1, 45:4,

45:6, 45:11, 45:13, 45:15, 45:19, 45:22, 46:2, 46:6, 46:9, 46:15, 46:18, 46:20, 46:23, 47:1, 47:3, 47:6, 47:9, 47:11, 47:15, 47:17, 47:19, 47:22, 47:24, 48:2, 48:9, 48:11, 48:14, 48:16, 48:19, 48:22, 48:24, 49:2, 49:4, 49:6, 49:11, 49:13, 49:17, 49:22, 50:1, 50:5, 50:7, 50:10, 50:12, 50:15, 50:19, 50:21, 50:25, 51:3, 51:6, 51:8, 51:11, 51:13, 51:16, 52:23, 53:1, 53:3, 53:5, 53:10, 53:15, 53:17, 53:20, 53:23, 53:25, 54:6, 54:9, 54:11, 54:18, 54:21, 54:24, 55:2, 55:5, 55:8, 55:11, 55:16, 55:18, 55:22, 55:25, 56:3, 56:5, 56:10, 56:13, 56:16, 56:20, 56:23, 57:2, 57:5, 57:8, 57:10, 57:15, 57:18, 57:20, 57:25, 58:3, 58:5, 58:8, 58:10, 58:15, 59:2, 59:4, 59:9, 59:12, 59:14, 59:16, 59:18, 59:21, 59:25, 60:4, 60:7, 60:15, 60:18, 61:4, 61:7, 61:9, 61:16, 61:19, 61:21, 62:2, 62:16, 62:18, 62:20, 62:21, 62:22, 62:23, 62:24, 62:25, 63:1, 63:2, 63:3, 63:4, 63:5, 63:6, 63:7, 63:10, 63:22, 64:4, 64:6, 64:8, 64:14, 64:18, 64:22, 71:22, 71:24
**Juror** [2] - 71:20, 72:5
**juror** [34] - 24:6, 40:10, 45:12, 46:1, 46:8, 52:5, 53:6, 54:23, 55:15, 56:14, 57:4, 58:17, 61:3, 62:9, 65:18, 67:5, 68:4, 70:23, 71:21, 72:14, 72:16, 72:19, 72:21, 74:8, 74:9, 75:8, 75:12, 77:24, 77:25, 81:5, 81:21, 84:13, 97:23, 158:18

**jurors** [20] - 38:7, 38:9, 39:4, 39:12, 39:14, 39:17, 40:7, 40:18, 66:6, 68:12, 69:19, 71:6, 73:20, 73:25, 80:2, 81:1, 81:7, 84:21, 158:8, 164:1
**jurors'** [1] - 37:23
**JURY** [1] - 74:23
**jury** [104] - 4:17, 6:5, 8:20, 10:10, 13:21, 14:1, 14:23, 15:17, 16:13, 16:25, 17:24, 18:4, 18:18, 20:23, 23:7, 23:13, 37:6, 37:13, 37:19, 38:5, 39:2, 39:11, 39:19, 39:23, 40:4, 45:6, 51:24, 53:7, 55:2, 56:6, 56:16, 56:19, 56:25, 68:17, 69:14, 74:10, 74:19, 75:2, 75:6, 75:20, 76:9, 77:12, 79:6, 81:4, 84:9, 86:12, 88:23, 88:25, 89:16, 89:20, 89:22, 90:1, 102:8, 106:15, 122:2, 125:8, 141:22, 142:2, 142:16, 144:16, 147:21, 148:12, 150:20, 154:9, 156:18, 157:18, 159:3, 159:18, 159:19, 160:6, 160:13, 161:3, 161:10, 163:12, 166:10, 168:4, 170:16, 171:14, 196:16, 212:24, 214:25, 216:19, 217:2, 217:16, 218:12, 219:10, 220:11, 224:12, 226:16, 227:11, 227:13, 227:14, 227:19, 227:21, 227:23, 228:2, 228:4, 230:8, 230:19, 231:20, 231:23, 232:7, 233:15, 236:14
**Jury** [2] - 88:11, 233:3
**justice** [2] - 24:3, 39:19
**Justice** [2] - 25:10, 48:17
**justices** [1] - 191:14
**justified** [3] - 140:22,

155:16, 187:8
**justifies** [1] - 155:1

# K

**keenly** [1] - 130:13
**keep** [19] - 68:3, 69:18, 79:24, 80:22, 81:2, 81:6, 141:16, 148:1, 148:7, 165:21, 174:8, 174:15, 188:2, 188:6, 188:11, 191:11, 194:23, 219:25, 222:19
**keeping** [2] - 115:9, 216:22
**Keith** [40] - 4:12, 30:2, 39:6, 39:7, 43:11, 43:23, 98:21, 99:2, 102:18, 102:20, 102:25, 106:1, 106:18, 108:16, 122:17, 131:8, 131:16, 137:14, 137:21, 137:24, 138:1, 141:23, 150:6, 150:12, 166:3, 168:24, 171:13, 171:15, 173:15, 173:18, 174:19, 175:6, 175:25, 179:2, 179:20, 181:2, 184:22, 189:11, 191:4, 198:5
**kept** [2] - 22:14, 216:19
**kind** [30] - 14:15, 18:16, 21:8, 35:21, 46:25, 61:12, 71:9, 77:15, 78:3, 78:11, 79:7, 82:10, 84:23, 85:13, 92:6, 95:18, 97:7, 110:15, 123:17, 127:13, 128:20, 142:13, 162:8, 190:16, 217:17, 217:18, 219:14, 225:1, 235:1
**kinds** [2] - 37:3, 78:18
**knight** [2] - 140:19, 140:20
**knowingly** [2] - 94:4, 94:11
**knowledge** [7] - 94:8, 94:15, 117:17, 141:12, 202:3, 211:6, 228:13
**knows** [2] - 75:12,

93:20

# L

**lack** [5] - 31:22, 31:23, 98:8, 127:21, 163:13
**lacks** [1] - 130:4
**lady** [2] - 50:3, 57:17
**laid** [1] - 200:19
**land** [1] - 61:11
**landscape** [1] - 228:23
**language** [16] - 72:10, 138:4, 138:12, 182:9, 182:20, 183:1, 189:24, 190:16, 190:21, 215:6, 215:17, 219:14, 220:13, 220:14, 221:19, 232:25
**laps** [1] - 9:9
**large** [7] - 112:10, 117:7, 130:25, 178:14, 186:21, 186:25, 189:1
**largely** [2] - 133:6, 154:14
**larger** [1] - 172:21
**last** [32] - 11:24, 18:16, 54:13, 54:17, 67:13, 72:22, 72:24, 109:19, 110:8, 113:7, 113:12, 135:16, 143:24, 167:5, 177:19, 183:17, 184:10, 185:2, 186:4, 186:7, 186:23, 187:13, 189:13, 225:14, 227:10, 227:11, 228:20, 229:8, 229:18, 231:24, 235:1
**lastly** [1] - 82:15
**late** [2] - 89:25, 157:7
**laughing** [1] - 192:8
**law** [90] - 10:23, 11:4, 30:8, 39:10, 39:24, 39:25, 40:4, 42:10, 44:14, 51:20, 51:22, 52:6, 52:8, 52:9, 52:11, 58:20, 58:21, 68:16, 77:15, 78:19, 79:4, 79:15, 79:16, 80:9, 80:11, 80:12, 91:19, 91:20, 92:23, 93:2, 93:14, 93:21, 94:21, 95:7, 99:19, 100:9, 100:12,

100:23, 101:1, 101:2, 101:9, 101:10, 101:14, 102:2, 102:6, 103:1, 103:7, 103:15, 105:13, 106:4, 106:12, 106:15, 140:18, 140:22, 141:2, 147:5, 156:25, 160:1, 160:3, 161:4, 164:1, 167:6, 167:8, 167:10, 167:13, 167:18, 168:6, 168:8, 169:10, 176:3, 178:2, 183:23, 184:4, 184:17, 184:19, 211:18, 211:22, 216:24, 227:2, 227:7, 227:15, 227:18, 228:17, 229:5, 231:8, 231:21, 232:23
**lawful** [2] - 101:23, 105:8
**lawfully** [1] - 184:3
**lawn** [1] - 97:11
**lawnmower** [1] - 97:13
**laws** [7] - 25:14, 51:4, 61:11, 108:5, 141:3, 141:4, 167:23
**lawsuit** [33] - 23:25, 58:25, 109:15, 110:24, 111:1, 111:2, 111:3, 111:17, 112:16, 113:16, 117:3, 119:19, 121:11, 122:19, 126:7, 126:9, 126:10, 126:12, 126:19, 127:6, 127:10, 131:20, 132:12, 136:18, 142:5, 143:14, 143:17, 146:14, 146:17, 147:2, 149:18, 152:22
**lawsuits** [12] - 24:19, 98:8, 109:19, 109:25, 111:8, 116:13, 119:21, 133:8, 133:12, 136:24, 140:1, 142:9
**lawyer** [28] - 12:24, 18:24, 18:25, 19:11, 20:3, 20:9, 20:16, 20:17, 35:22, 42:5,

42:6, 42:11, 42:12, 43:4, 43:7, 48:16, 79:11, 82:23, 83:4, 83:5, 84:4, 84:22, 86:2, 110:23, 117:16, 122:20, 139:20, 175:16
**lawyers** [8] - 38:18, 41:11, 79:10, 82:23, 83:2, 111:13, 159:10, 204:6
**lay** [1] - 69:7
**layman's** [1] - 190:13
**lead** [5] - 14:25, 38:4, 41:19, 159:14, 189:19
**leading** [1] - 203:20
**learn** [2] - 52:14, 74:5
**learned** [1] - 61:2
**least** [8] - 26:23, 109:24, 125:2, 125:25, 131:2, 136:13, 165:25, 190:17
**leave** [16] - 9:1, 15:16, 25:6, 69:24, 73:19, 84:15, 97:22, 176:23, 193:17, 208:14, 208:25, 209:1, 216:17, 221:9, 221:10
**leaving** [1] - 198:12
**ledge** [1] - 194:24
**Lee** [3] - 30:10, 30:11, 31:24
**leery** [1] - 19:12
**leeway** [2] - 12:25, 156:23
**left** [9] - 68:12, 69:1, 73:21, 75:2, 88:11, 154:9, 162:22, 181:16, 206:17
**left-hand** [1] - 162:22
**legal** [22] - 12:11, 13:13, 13:14, 14:2, 40:2, 58:24, 80:6, 80:7, 83:8, 91:4, 108:12, 127:6, 159:9, 167:17, 178:11, 205:15, 205:22, 209:12, 214:7, 214:18, 233:5, 233:13
**legislate** [1] - 91:25
**legislation** [1] - 143:12
**legislature** [2] - 100:14, 104:22
**legitimacy** [1] - 171:4
**length** [1] - 19:16

**lengthy** [4] - 173:1, 205:3, 233:8
**LESKO** [1] - 4:8
**Lesko** [2] - 4:8, 43:19
**less** [6] - 51:19, 105:14, 129:19, 194:19, 194:21, 194:23
**letter** [29] - 35:14, 49:3, 168:11, 195:7, 215:6, 215:17, 217:19, 217:21, 217:25, 218:18, 219:7, 219:11, 219:12, 219:18, 221:18, 221:24, 222:3, 222:4, 222:7, 222:21, 222:22, 222:23, 222:25, 223:8, 223:11, 224:9, 224:17, 232:13
**Letterkenny** [5] - 48:24, 49:2, 49:4, 49:23, 50:13
**letters** [1] - 212:11
**letting** [6] - 66:7, 101:24, 154:15, 155:6, 155:15, 155:17
**level** [2] - 95:16, 204:14
**leverage** [1] - 101:24
**liberal** [1] - 131:24
**liberty** [4] - 183:21, 184:8, 211:17, 211:22
**licensed** [4] - 117:17, 125:7, 129:2, 139:25
**life** [9] - 60:23, 93:16, 194:21, 211:16, 211:17, 211:21, 211:22, 211:23
**light** [3] - 93:3, 95:19, 95:22
**likely** [1] - 215:13
**limine** [3] - 26:10, 214:7, 225:24
**limit** [7] - 5:7, 6:22, 6:24, 48:7, 82:13, 91:10, 224:17
**limitations** [1] - 9:15
**limited** [14] - 5:3, 6:23, 142:12, 165:19, 166:24, 167:1, 168:7, 215:5, 215:14, 218:9, 219:9, 222:15, 224:7, 226:15
**limiting** [7] - 24:11,

220:18, 220:21, 222:8, 224:2, 226:9
**limits** [1] - 91:7
**line** [11] - 31:11, 35:23, 91:13, 91:15, 134:4, 134:14, 148:9, 166:20, 201:21, 203:11, 229:4
**lines** [2] - 24:7, 36:17
**lingering** [1] - 103:12
**list** [4] - 21:16, 21:17, 125:25, 128:1
**listed** [5] - 115:14, 115:16, 135:18, 139:3, 162:10
**listen** [4] - 82:8, 86:4, 155:13, 192:17
**listening** [2] - 84:7, 216:11
**listing** [1] - 114:18
**lists** [3] - 37:23, 126:3, 127:24
**literally** [2] - 204:8, 232:7
**litigant** [5] - 108:16, 123:17, 130:11, 150:21, 172:23
**litigants** [1] - 167:18
**litigated** [1] - 24:13
**litigation** [5] - 107:24, 108:18, 109:18, 110:7, 145:24
**litigator** [1] - 132:19
**litigious** [1] - 132:13
**live** [3] - 61:11, 81:25, 91:5
**lives** [1] - 191:21
**living** [1] - 117:14
**Liz** [2] - 29:16, 33:14
**LLC** [1] - 125:6
**loaded** [1] - 25:19
**local** [9] - 44:15, 103:12, 110:3, 110:4, 170:9, 170:14, 171:3, 171:4, 183:14
**locally** [1] - 170:19
**locate** [1] - 171:8
**location** [1] - 198:20
**logical** [1] - 87:5
**Logistics** [1] - 46:20
**London** [1] - 106:17
**look** [38] - 17:3, 17:22, 21:6, 29:17, 32:5, 32:20, 40:14, 61:14, 61:25, 74:4, 82:1, 86:11, 86:13, 90:13, 94:2, 97:10, 114:3, 120:12, 122:11,

148:15, 148:22, 154:10, 167:21, 176:8, 176:17, 178:22, 180:16, 188:21, 195:3, 202:6, 203:7, 219:3, 228:18, 231:3, 231:22, 233:23, 234:21, 236:7
**looked** [2] - 17:21, 77:3
**looking** [10] - 24:14, 24:15, 31:3, 151:15, 161:24, 194:9, 216:11, 225:2, 227:23, 232:2
**looks** [8] - 18:1, 120:17, 128:10, 149:10, 149:17, 150:10, 150:18, 180:19
**lose** [7] - 7:4, 110:11, 110:12, 194:19, 194:21, 194:22, 195:1
**losing** [2] - 109:10, 194:25
**lost** [1] - 102:22
**loud** [1] - 208:25
**love** [1] - 158:4
**lower** [1] - 200:12
**lucky** [1] - 69:16
**lunch** [15] - 74:17, 75:25, 76:12, 76:24, 77:1, 77:20, 81:7, 85:3, 88:10, 88:11, 89:7, 90:2, 107:11, 158:6
**Lunch** [1] - 89:15

# M

**M-C-N-I-V-E-N** [1] - 190:11
**ma'am** [14] - 45:14, 46:14, 47:10, 47:13, 48:13, 49:16, 50:23, 51:2, 54:25, 59:3, 61:5, 63:9, 63:21, 73:16
**magic** [1] - 204:25
**magically** [1] - 68:10
**Magistrate** [1] - 186:6
**magistrate** [1] - 187:14
**magistrates** [1] - 106:4
**Mail** [1] - 207:25
**mail** [24] - 31:7, 32:14,

94:4, 135:15, 135:18, 135:23, 136:12, 136:15, 136:20, 138:22, 139:2, 140:15, 140:17, 147:11, 152:5, 168:11, 170:5, 207:16, 207:25, 208:5, 225:13, 235:11, 235:18
**mailed** [2] - 147:4, 147:5
**mailing** [5] - 39:8, 87:25, 90:11, 90:25, 94:3
**mails** [13] - 109:1, 135:3, 135:6, 138:24, 170:3, 225:14, 235:5, 235:12, 236:5, 236:8, 236:9, 236:13, 236:15
**main** [2] - 126:25, 178:10
**maker** [1] - 95:2
**male** [3] - 193:11, 193:18, 208:23
**managed** [1] - 100:24
**mandate** [1] - 40:8
**mandatory** [1] - 25:16
**manner** [7] - 13:11, 100:4, 101:21, 156:21, 161:5, 161:6, 166:14
**March** [1] - 129:20
**Marine** [1] - 51:1
**marked** [4] - 114:2, 120:10, 135:12, 180:15
**marketplace** [1] - 103:15
**marks** [2] - 131:22, 131:25
**Marlene** [1] - 217:11
**MARSHAL** [15] - 4:23, 5:8, 5:10, 5:13, 6:8, 6:14, 6:21, 6:25, 9:22, 9:25, 10:8, 10:16, 10:20, 11:6, 158:3
**marshal** [3] - 196:9, 218:17, 219:12
**Marshal** [18] - 158:15, 158:17, 177:4, 177:22, 177:23, 178:7, 178:8, 183:6, 189:23, 191:24, 192:23, 194:13, 195:3, 195:20,

197:10, 198:25, 202:1, 226:1
**Marshal's** [1] - 178:20
**Marshall** [2] - 188:24, 210:23
**Marshals** [12] - 4:21, 9:11, 9:14, 9:17, 14:13, 27:6, 27:7, 157:15, 158:2, 158:4, 158:7, 215:17
**marshals** [2] - 190:20, 192:6
**Marshals'** [1] - 5:6
**Mary** [1] - 34:24
**Maryland** [3] - 56:6, 59:9, 116:8
**mask** [18] - 7:22, 8:3, 8:18, 8:21, 38:14, 38:16, 38:18, 38:19, 50:16, 50:18, 51:15, 62:6, 62:11, 64:2, 64:24, 177:7, 179:9, 196:5
**masks** [3] - 8:19, 62:4, 86:23
**material** [1] - 165:6
**materials** [1] - 167:2
**math** [1] - 67:19
**matter** [31] - 16:11, 16:14, 38:23, 58:24, 90:7, 91:23, 95:23, 134:6, 137:14, 141:23, 144:20, 150:22, 154:17, 162:18, 167:9, 171:13, 173:7, 173:10, 176:1, 179:14, 191:7, 201:3, 201:7, 203:3, 207:15, 209:18, 214:7, 216:6, 231:17
**matters** [6] - 4:25, 14:2, 36:20, 102:23, 119:10, 175:24
**McKee** [5] - 30:2, 186:16, 186:23, 187:1, 187:12
**McKee's** [1] - 172:18
**McNiven** [2] - 190:6, 190:10
**mean** [62] - 9:12, 10:13, 10:19, 19:12, 23:9, 23:11, 24:3, 27:1, 29:1, 59:7, 61:9, 63:25, 64:16, 64:18, 66:13, 66:15, 66:18, 71:10, 73:7, 75:24, 76:5, 76:14, 76:18, 91:17, 91:18, 110:8, 117:2,

119:16, 124:12, 132:21, 144:21, 145:7, 152:4, 155:2, 158:1, 158:5, 159:1, 159:5, 160:25, 161:1, 161:4, 175:20, 194:25, 196:13, 197:16, 201:19, 201:20, 201:24, 209:11, 209:15, 210:24, 211:9, 212:17, 214:17, 220:12, 221:14, 223:17, 233:19, 236:8, 236:9
**meaning** [1] - 161:8
**meanings** [1] - 94:22
**means** [9] - 68:19, 84:13, 155:13, 155:15, 161:1, 171:14, 192:20, 194:19, 216:4
**meant** [1] - 233:4
**measure** [2] - 98:9, 98:10
**mechanics** [1] - 41:8
**media** [4] - 61:10, 61:21, 81:17, 82:6
**medical** [2] - 52:19, 71:9
**medieval** [2] - 140:19, 140:20
**Meet** [1] - 170:8
**meet** [2] - 171:2, 224:12
**meeting** [2] - 35:15, 90:13
**member** [15] - 22:16, 23:1, 43:23, 44:4, 44:9, 44:13, 46:12, 47:18, 49:24, 53:7, 65:14, 75:8, 125:6
**members** [4] - 23:15, 25:20, 191:21
**memorandum** [1] - 120:25
**men** [2] - 22:10, 25:18
**menial** [1] - 13:6
**mens** [3] - 228:12, 229:2, 231:17
**mentally** [1] - 190:14
**mention** [13] - 34:14, 37:12, 81:3, 96:4, 136:21, 137:2, 185:20, 185:24, 186:22, 187:11, 187:16, 232:11, 234:25
**mentioned** [22] - 22:7, 39:7, 39:16, 80:3,

80:22, 82:9, 86:15, 87:24, 114:6, 116:15, 117:12, 121:9, 134:25, 137:3, 171:1, 171:3, 182:20, 186:5, 186:8, 186:15, 186:19, 225:19
**mentioning** [2] - 140:16, 213:20
**mentions** [1] - 210:23
**mere** [4] - 40:13, 100:25, 105:24, 137:17
**merely** [2] - 13:6, 13:12
**merged** [1] - 213:6
**merits** [2] - 81:22, 131:9
**met** [1] - 198:3
**methods** [1] - 141:9
**mic** [1] - 7:3
**Michael** [14] - 30:19, 32:17, 33:5, 34:10, 44:3, 129:4, 190:8, 195:24, 197:8, 198:2, 198:8, 203:20, 204:17, 206:2
**microphone** [2] - 7:5, 71:2
**microphones** [2] - 41:15, 82:21
**Middle** [18] - 38:22, 56:16, 99:3, 104:15, 105:12, 106:2, 115:15, 115:20, 115:22, 115:24, 118:3, 118:14, 119:9, 119:14, 129:7, 145:11, 145:12, 180:3
**middle** [1] - 141:5
**might** [28] - 6:6, 23:13, 23:16, 29:13, 40:15, 41:1, 52:14, 52:20, 65:20, 71:4, 75:7, 82:17, 92:4, 92:22, 93:17, 96:16, 97:19, 109:11, 109:12, 111:18, 155:16, 159:12, 227:15, 229:16, 235:22, 236:12
**Mike** [2] - 190:5, 191:1
**miles** [1] - 71:24
**military** [7] - 40:9, 49:7, 49:10, 49:14, 49:18, 51:9
**militia** [19] - 23:15,

23:16, 23:22, 24:17, 25:1, 25:8, 25:20, 25:21, 102:4, 138:3, 183:8, 184:1, 184:9, 187:22, 188:1, 188:12, 188:14, 212:18
**militia's** [1] - 102:5
**militias** [3] - 24:25, 141:6, 195:10
**million** [3] - 117:6, 125:9, 132:10
**millions** [1] - 106:21
**mind** [19] - 15:18, 62:8, 79:24, 80:22, 80:23, 81:2, 81:6, 121:19, 165:22, 194:24, 196:2, 216:22, 220:22, 222:20, 224:8, 224:16, 233:4, 233:5, 234:11
**minimal** [1] - 195:1
**minor** [1] - 161:16
**minute** [3] - 70:16, 90:18, 157:22
**minutes** [12] - 74:25, 75:5, 75:18, 76:2, 76:4, 76:8, 76:15, 76:17, 76:19, 88:8, 157:19, 215:21
**misconduct** [2] - 172:17, 173:3
**misleading** [2] - 118:21, 118:23
**misremembered** [1] - 36:3
**miss** [1] - 71:11
**missing** [1] - 104:7
**misstated** [1] - 206:5
**mistrial** [1] - 57:21
**modern** [1] - 141:4
**moment** [5] - 106:23, 137:24, 168:24, 171:10, 183:2
**Monday** [2] - 208:2, 208:6
**money** [4] - 74:9, 109:9, 109:10, 117:5
**monitor** [1] - 6:1
**month** [4] - 193:1, 193:8, 193:10
**months** [3] - 56:22, 110:10, 178:5
**mootness** [1] - 131:12
**morning** [13] - 4:2, 4:10, 4:16, 38:10, 41:22, 89:8, 90:5, 97:4, 217:8, 224:23, 230:16, 234:10,

237:1
**most** [12] - 12:23, 36:17, 106:15, 112:13, 157:12, 158:19, 229:7, 229:18, 229:19, 229:20, 229:22, 230:23
**motion** [31] - 26:10, 26:11, 31:13, 31:14, 31:15, 31:22, 31:23, 129:18, 129:21, 150:11, 151:8, 154:21, 162:14, 162:16, 163:2, 164:10, 164:11, 164:12, 174:19, 174:22, 175:3, 176:14, 191:18, 214:7, 214:10, 217:19, 217:20, 223:18, 223:19, 225:19, 225:24
**motions** [10] - 4:15, 65:12, 111:18, 125:20, 127:23, 127:24, 127:25, 129:22, 134:17, 176:22
**motives** [1] - 87:12
**motor** [2] - 59:16, 59:17
**Motz** [10] - 186:2, 186:6, 186:10, 186:12, 186:16, 186:23, 187:1, 187:12, 187:14, 187:17
**mouth** [2] - 78:23, 83:25
**movability** [1] - 9:16
**move** [15] - 5:23, 7:7, 8:25, 33:1, 41:14, 73:22, 112:4, 114:21, 121:14, 125:12, 135:25, 155:9, 167:4, 175:8, 216:7
**movements** [3] - 5:9, 6:22, 191:25
**moves** [1] - 150:21
**moving** [2] - 142:11, 153:6
**MR** [433] - 4:5, 4:6, 4:10, 4:12, 5:1, 5:18, 5:25, 6:4, 6:11, 7:6, 7:11, 7:15, 7:18, 7:24, 8:4, 8:14, 8:16, 9:2, 9:7, 11:11, 11:20, 11:23, 12:15,

12:22, 13:10, 14:4,
14:10, 14:22, 15:25,
16:7, 16:11, 16:24,
17:5, 17:8, 17:13,
17:19, 18:1, 18:4,
18:11, 18:14, 19:21,
20:6, 20:13, 20:21,
20:24, 21:2, 21:4,
21:15, 21:23, 22:1,
22:4, 22:18, 22:21,
22:23, 23:3, 23:6,
23:18, 23:20, 24:2,
24:7, 24:15, 26:6,
26:8, 26:16, 26:18,
27:3, 27:7, 27:9,
27:11, 27:16, 27:20,
27:23, 28:2, 28:9,
28:12, 28:20, 28:24,
29:6, 29:9, 29:12,
29:18, 29:22, 29:24,
30:1, 30:4, 30:11,
30:17, 30:25, 31:6,
31:18, 32:2, 32:4,
32:11, 32:16, 32:19,
33:6, 33:9, 33:11,
33:13, 33:16, 33:20,
33:23, 33:24, 34:4,
34:7, 34:9, 34:12,
34:16, 34:19, 34:23,
35:5, 35:8, 35:25,
36:2, 36:8, 36:10,
38:3, 41:22, 43:10,
65:7, 65:10, 65:15,
65:16, 65:25, 66:1,
66:3, 66:11, 66:12,
66:15, 66:18, 67:1,
67:3, 67:6, 67:8,
67:15, 67:17, 70:20,
70:22, 71:4, 71:10,
71:13, 72:8, 72:15,
72:18, 72:23, 73:4,
73:9, 73:12, 75:7,
75:24, 76:2, 76:4,
76:7, 76:15, 76:24,
77:2, 77:7, 77:9,
88:14, 88:16, 88:19,
88:21, 89:2, 89:5,
89:9, 89:11, 89:18,
89:21, 90:4, 98:20,
107:3, 107:15,
112:1, 112:4, 112:7,
113:24, 114:1,
114:21, 114:23,
114:25, 115:1,
118:19, 118:21,
118:24, 119:2,
120:7, 120:9,
121:13, 121:15,
121:17, 121:22,
122:3, 122:5, 122:7,
122:8, 135:9,

135:11, 135:25,
136:2, 136:4,
141:15, 141:21,
142:19, 143:3,
143:21, 144:13,
145:3, 145:9,
147:15, 147:21,
148:5, 148:10,
148:21, 148:23,
148:25, 149:3,
149:12, 153:10,
153:12, 153:18,
153:24, 154:1,
154:13, 154:24,
155:9, 155:21,
156:2, 156:4,
156:12, 156:21,
157:3, 157:6, 157:9,
157:21, 158:6,
158:11, 158:13,
158:23, 158:25,
159:11, 159:21,
159:25, 160:9,
162:4, 163:5,
163:11, 164:22,
165:1, 165:5,
165:23, 165:24,
166:19, 167:5,
167:9, 167:11,
168:7, 168:10,
168:15, 168:20,
170:20, 170:24,
171:6, 172:1, 172:3,
172:6, 172:14,
172:15, 174:23,
175:4, 175:9,
175:10, 175:17,
175:20, 175:22,
176:23, 177:1,
177:4, 177:9,
177:15, 179:10,
179:13, 180:12,
180:14, 182:1,
182:3, 182:5,
195:14, 195:18,
196:7, 196:8,
196:13, 196:18,
196:20, 196:22,
197:12, 197:20,
197:23, 198:22,
199:1, 199:8,
199:10, 199:21,
199:23, 200:2,
200:5, 200:8,
200:15, 200:24,
201:1, 201:4,
201:10, 202:7,
202:15, 202:17,
202:22, 203:2,
203:5, 203:12,
203:17, 203:18,

204:1, 204:2,
205:13, 205:16,
205:23, 205:24,
206:7, 206:8,
206:12, 207:7,
207:12, 207:13,
210:3, 210:5, 210:6,
210:9, 213:19,
213:20, 213:24,
214:6, 214:12,
214:15, 214:19,
214:23, 215:1,
215:19, 215:20,
216:8, 217:22,
217:24, 218:2,
218:4, 218:13,
218:16, 218:20,
218:22, 218:24,
219:1, 219:16,
219:19, 219:22,
219:25, 220:6,
220:9, 221:3, 221:7,
221:13, 221:16,
221:23, 221:25,
222:1, 222:4, 222:6,
222:11, 222:18,
222:23, 222:25,
223:3, 223:5, 223:7,
223:10, 223:23,
224:21, 224:25,
225:4, 225:6, 225:9,
225:11, 225:16,
225:20, 225:23,
226:4, 226:6, 226:8,
226:14, 226:19,
226:25, 227:17,
228:11, 228:20,
229:9, 229:12,
229:21, 229:24,
230:4, 230:7,
230:17, 230:22,
231:1, 231:5,
231:11, 232:1,
232:4, 232:9, 233:1,
233:11, 233:16,
233:20, 234:2,
234:5, 234:7,
234:12, 234:14,
234:16, 234:18,
234:20, 234:24,
235:14, 235:25,
236:3, 236:9,
236:18, 236:24
**MS** [1] - 4:8
**Mullenix** [1] - 138:2
**multiple** [4] - 15:5,
132:14, 132:16,
169:3
**murder** [4] - 53:11,
53:14, 58:10, 58:12

**must** [23] - 80:9,
80:10, 80:12, 84:13,
97:14, 104:1, 104:3,
104:8, 105:19,
129:12, 138:1,
142:9, 151:10,
151:16, 160:17,
160:21, 161:14,
168:25, 183:21,
184:8, 184:20,
212:8, 228:4

# N

**NAACP** [9] - 22:6,
22:21, 23:1, 23:3,
23:12, 23:21, 24:24,
25:1, 25:4
**name** [24] - 21:10,
38:11, 41:22, 42:2,
43:11, 90:5, 107:6,
107:7, 107:18,
111:2, 113:4, 113:7,
123:1, 177:11,
177:13, 177:18,
177:19, 185:20,
185:24, 186:1,
190:7, 190:8, 234:13
**named** [10] - 108:16,
111:8, 119:8,
119:19, 119:20,
121:10, 122:25,
142:1, 173:7, 179:2
**namely** [2] - 130:3,
173:11
**names** [6] - 21:11,
43:17, 44:1, 109:24,
115:16, 185:21
**naming** [1] - 109:22
**narrative** [1] - 36:17
**NASA** [1] - 47:4
**National** [1] - 23:9
**national** [1] - 52:16
**nature** [8] - 13:23,
13:24, 14:6, 44:19,
46:6, 90:20, 116:12,
187:7
**near** [4] - 7:4, 129:23,
134:19, 140:15
**necessarily** [1] -
112:14
**necessary** [7] - 25:8,
82:22, 138:18,
188:1, 212:18,
231:17, 235:16
**necessity** [4] - 101:4,
137:15, 171:17,
183:22
**need** [65] - 4:15, 10:2,

11:8, 11:10, 11:19,
15:8, 15:13, 17:16,
21:6, 21:7, 28:11,
28:12, 28:13, 40:3,
50:20, 51:3, 51:7,
73:23, 77:5, 80:22,
81:2, 81:5, 81:20,
81:24, 83:14, 83:15,
83:22, 83:23, 86:10,
88:12, 88:20, 88:21,
89:3, 97:20, 100:13,
117:14, 122:4,
138:20, 140:18,
141:17, 145:6,
147:25, 148:3,
153:12, 156:7,
157:5, 157:6, 157:9,
157:18, 157:23,
161:21, 167:3,
191:22, 195:11,
206:5, 209:25,
216:18, 226:12,
227:9, 227:13,
229:2, 230:14,
231:19
**needed** [3] - 18:22,
65:14, 88:16
**needs** [5] - 7:3, 16:8,
75:13, 84:24, 143:22
**negative** [1] - 24:24
**negligence** [2] -
104:3, 105:24
**neighbor** [1] - 227:6
**neighbor's** [2] - 97:6,
97:11
**nephew** [2] - 46:23,
46:24
**Net** [4] - 161:19,
164:18, 176:1, 176:6
**never** [26] - 83:16,
102:18, 102:19,
102:22, 106:7,
126:10, 137:20,
143:20, 147:8,
149:18, 152:9,
152:20, 152:25,
153:1, 161:17,
162:19, 170:11,
173:22, 173:23,
175:6, 192:19,
219:16
**new** [4] - 60:22, 111:2,
111:21
**New** [5] - 74:7, 133:14,
227:25, 234:13,
234:16
**news** [4] - 64:24, 82:5,
215:19, 218:7
**next** [38] - 12:2, 31:11,
31:16, 31:20, 41:14,

49:20, 51:24, 52:2,
52:5, 52:13, 52:19,
53:6, 53:24, 58:2,
58:17, 60:12, 61:17,
68:14, 74:17,
110:15, 122:5,
123:13, 123:16,
125:12, 125:16,
126:3, 132:6,
134:22, 149:10,
177:3, 186:11,
186:14, 186:18,
187:10, 189:4,
193:5, 206:11, 227:6
**next-door** [1] - 227:6
**nexus** [1] - 235:21
**nice** [1] - 217:9
**ninth** [1] - 25:12
**nobility** [2] - 183:24,
184:4
**nobody** [2] - 16:16,
236:7
**noise** [6] - 41:8, 41:14,
63:20, 65:2, 65:3,
199:16
**non** [2] - 117:16,
173:12
**non-attorney** [1] -
173:12
**non-lawyer** [1] -
117:16
**none** [2] - 127:19,
194:25
**noon** [1] - 88:5
**normal** [1] - 190:8
**normally** [4] - 75:14,
87:14, 112:18,
124:18
**notation** [1] - 125:10
**note** [3] - 83:17, 84:7,
201:11
**noted** [2] - 132:23,
149:24
**notes** [7] - 83:18,
83:23, 84:10, 84:15,
84:18, 216:18
**nothing** [4] - 74:3,
124:2, 165:7, 222:12
**notice** [16] - 10:2,
11:7, 12:1, 17:14,
97:6, 126:9, 127:9,
149:7, 152:6,
152:11, 152:22,
164:4, 164:6, 173:6,
173:12, 195:6
**noticed** [3] - 139:8,
140:23, 189:24
**notify** [2] - 63:13,
63:16
**notifying** [1] - 63:23

**notion** [1] - 80:11
**notions** [1] - 58:21
**November** [2] - 150:4,
150:19
**nudging** [1] - 14:5
**number** [128] - 29:16,
30:3, 31:10, 31:11,
31:13, 31:14, 31:15,
31:17, 31:19, 31:20,
31:21, 31:22, 31:23,
32:8, 33:7, 34:19,
43:22, 45:12, 45:21,
45:22, 46:8, 46:14,
46:22, 47:2, 47:14,
47:25, 48:7, 48:13,
50:4, 50:23, 51:8,
51:17, 53:4, 53:9,
53:25, 55:1, 55:17,
56:2, 56:12, 56:13,
56:14, 57:8, 60:14,
61:6, 61:17, 62:16,
62:18, 62:20, 62:21,
62:22, 62:23, 62:24,
62:25, 63:3, 63:10,
64:21, 64:22, 65:18,
66:4, 66:5, 66:22,
68:4, 68:5, 68:6,
68:7, 68:9, 68:10,
69:15, 69:16, 69:19,
69:20, 69:21, 69:25,
70:3, 70:4, 70:5,
70:6, 70:7, 70:8,
70:9, 70:12, 70:13,
71:21, 71:22, 86:20,
87:19, 87:21,
109:21, 111:23,
112:9, 112:10,
113:10, 113:20,
120:3, 123:3,
123:14, 126:4,
127:24, 148:13,
161:9, 181:16,
183:3, 183:4,
183:15, 184:10,
187:24, 218:2,
218:3, 232:8
**Number** [9] - 63:1,
63:2, 63:4, 63:5,
63:6, 63:7, 70:14,
71:20, 72:5
**numbers** [7] - 33:4,
62:15, 65:24, 69:15,
75:11, 192:6, 233:24
**numerous** [4] - 129:3,
174:10, 174:14,
184:21
**nut** [1] - 95:23

# O

**O.J** [1] - 184:1
**oath** [9] - 40:20, 43:3,
52:6, 73:24, 78:16,
207:3, 208:17,
209:7, 209:12
**object** [18] - 14:5,
21:25, 22:3, 23:18,
23:23, 24:8, 27:5,
27:17, 27:21, 27:23,
62:10, 63:23, 82:24,
143:22, 147:15,
166:19, 172:10,
203:11
**objecting** [1] - 205:12
**objection** [43] - 20:19,
21:2, 21:15, 21:23,
23:2, 28:18, 65:25,
66:1, 66:2, 66:10,
72:18, 73:12, 82:22,
83:11, 89:22,
114:23, 118:19,
121:15, 136:2,
143:21, 154:10,
163:5, 164:22,
165:21, 166:24,
167:24, 170:20,
171:5, 172:1,
172:13, 174:23,
182:3, 182:4,
197:12, 198:22,
203:8, 206:7, 207:7,
214:6, 216:8,
216:16, 227:1
**objections** [9] - 12:5,
18:12, 21:12, 21:21,
88:23, 197:17,
201:20, 201:24,
226:15
**objective** [1] - 228:9
**obligated** [2] - 85:15,
152:13
**observed** [3] - 110:17,
129:9, 133:14
**obsolete** [1] - 100:13
**obtain** [5] - 36:5, 36:7,
37:11, 126:16, 131:9
**obviously** [11] - 21:6,
62:5, 66:19, 74:10,
81:24, 83:20, 138:6,
151:6, 160:2,
206:16, 220:5
**occasion** [1] - 179:2
**occur** [4] - 15:10,
82:20, 83:7, 170:9
**occurred** [11] - 27:12,
27:19, 112:5, 148:7,
202:1, 203:1,

215:12, 221:22,
221:23, 222:22,
223:12
**occurs** [1] - 83:21
**October** [2] - 169:23,
169:24
**oddly** [1] - 103:3
**offended** [2] - 81:11,
137:17
**offense** [1] - 236:16
**offenses** [4] - 86:10,
90:11, 98:17, 228:12
**offensive** [2] - 106:17,
106:19
**offer** [2] - 18:18, 159:9
**offered** [3] - 172:8,
203:2, 214:4
**offering** [2] - 19:5,
189:14
**offhand** [1] - 142:22
**office** [26] - 29:7,
41:24, 64:9, 90:6,
107:21, 108:3,
110:1, 114:11,
114:15, 116:6,
121:4, 139:13,
146:10, 146:16,
151:1, 192:11,
193:12, 193:13,
197:4, 197:9,
198:12, 202:20,
215:10, 221:21,
223:21, 234:10
**officer** [8] - 46:4,
50:13, 50:14, 51:21,
51:23, 178:16
**officers** [2] - 9:14,
61:22
**official** [12] - 46:12,
104:14, 105:6,
109:15, 120:22,
121:4, 143:2, 169:5,
198:1, 208:18,
232:16, 232:19
**officials** [6] - 92:11,
110:3, 110:4, 117:8,
139:15, 139:16
**often** [3] - 71:13,
111:1, 112:12
**old** [2] - 60:21, 60:24
**oldest** [1] - 64:8
**omitting** [1] - 162:14
**once** [7] - 121:24,
137:21, 146:14,
173:14, 174:21,
208:10, 212:11
**Once** [1] - 168:21
**one** [139] - 10:13,
12:23, 13:25, 17:1,
20:6, 20:13, 23:11,

25:14, 26:6, 26:8,
28:17, 30:17, 31:7,
32:11, 32:14, 32:16,
33:12, 35:3, 35:17,
36:18, 39:8, 39:13,
42:8, 46:15, 47:15,
48:3, 50:19, 50:20,
53:13, 54:1, 54:2,
54:11, 54:13, 54:14,
55:20, 65:17, 65:22,
69:4, 72:1, 73:3,
77:24, 77:25, 78:2,
78:5, 79:5, 81:10,
86:15, 87:1, 88:25,
94:3, 96:6, 99:6,
99:7, 99:11, 99:12,
100:21, 100:23,
103:14, 103:19,
104:18, 104:25,
105:1, 108:23,
109:22, 110:17,
112:22, 113:4,
113:17, 115:6,
115:15, 115:16,
118:17, 119:7,
120:12, 121:9,
121:10, 122:24,
123:25, 124:19,
127:1, 128:24,
130:6, 132:1, 133:5,
133:8, 133:12,
135:6, 135:18,
136:14, 136:17,
139:3, 142:5,
143:24, 145:18,
147:8, 154:25,
156:12, 158:6,
158:7, 160:1, 162:3,
162:15, 164:25,
166:2, 167:5,
167:19, 173:5,
174:8, 178:10,
182:16, 185:21,
188:10, 189:8,
192:10, 193:22,
194:1, 197:8, 200:2,
203:9, 209:11,
209:24, 211:25,
213:7, 213:19,
213:20, 220:1,
224:8, 225:18,
227:7, 227:16,
227:18, 228:12,
228:15, 229:24,
230:9, 234:24
**ones** [3] - 178:10,
195:8, 209:15
**ongoing** [1] - 105:18
**open** [16] - 79:24,
80:22, 81:2, 81:6,
99:13, 152:13,

159:6, 164:10, 164:12, 182:10, 182:15, 189:24, 191:11, 206:17, 216:22, 220:4
**opened** [3] - 204:6, 213:9, 213:11
**opening** [21] - 5:20, 6:19, 19:2, 19:15, 19:18, 19:19, 20:8, 76:6, 78:12, 85:3, 85:6, 85:7, 85:11, 86:1, 86:7, 90:17, 95:25, 97:25, 159:10, 159:13, 166:2
**openings** [7] - 7:13, 7:14, 7:15, 7:17, 13:24, 75:23, 76:10
**opens** [1] - 171:3
**operations** [2] - 170:17, 183:14
**opinion** [10] - 25:10, 52:9, 80:11, 80:15, 120:24, 120:25, 126:20, 134:9, 194:18, 194:19
**opinions** [1] - 150:2
**opponent** [2] - 99:18, 103:20
**opportunity** [13] - 80:1, 81:1, 81:5, 85:6, 85:15, 85:24, 86:5, 139:5, 147:21, 172:7, 172:11, 174:17, 195:3
**opposed** [2] - 87:1, 183:24
**opposing** [1] - 151:2
**opposition** [1] - 232:5
**option** [4] - 183:23, 189:20, 189:21, 189:22
**options** [1] - 138:2
**oral** [2] - 206:5, 223:18
**orally** [1] - 21:8
**order** [13] - 26:11, 38:2, 119:21, 120:25, 128:24, 129:1, 130:18, 149:19, 165:2, 170:16, 183:14, 219:1, 220:18
**ordered** [3] - 149:20, 149:24, 204:22
**orderly** [1] - 103:15
**orders** [4] - 115:10, 128:21, 129:20, 178:12

**ordinary** [2] - 161:3, 161:8
**organized** [1] - 156:14
**origin** [1] - 52:16
**original** [5] - 25:17, 127:19, 127:22, 143:4, 146:12
**originally** [2] - 122:18, 146:4
**otherwise** [11] - 13:20, 39:14, 105:8, 143:15, 150:23, 160:16, 160:17, 160:24, 160:25, 161:4, 217:9
**ought** [2] - 19:23, 80:12
**outcome** [1] - 120:22
**outer** [3] - 11:5, 91:10, 91:13
**outside** [9] - 78:22, 79:2, 81:18, 102:14, 118:11, 119:12, 141:10, 178:4
**overall** [5] - 54:20, 79:13, 140:12, 156:15, 216:21
**overheard** [1] - 158:17
**overlap** [1] - 165:16
**overlooked** [1] - 71:16
**overnight** [1] - 224:23
**overreaction** [1] - 198:17
**overrule** [1] - 165:21
**overruling** [1] - 83:11
**overthrow** [1] - 60:10
**overview** [3] - 97:25, 98:2, 98:3
**own** [15] - 16:14, 16:20, 18:24, 20:7, 20:16, 61:12, 80:11, 91:16, 104:24, 161:17, 162:19, 166:14, 166:15
**owner** [3] - 101:12, 172:20, 172:22
**owners** [2] - 102:6, 204:15

**P**

**p.m** [9] - 88:11, 89:15, 89:16, 154:9, 159:17, 159:18, 160:6, 217:16, 237:3
**PA** [1] - 101:5
**PA's** [1] - 171:18
**PACER** [1] - 29:20
**pads** [1] - 83:17

**page** [48] - 18:17, 122:9, 123:16, 124:22, 125:12, 125:14, 125:16, 125:25, 126:3, 128:9, 128:19, 129:15, 130:10, 130:24, 132:3, 132:4, 132:6, 134:14, 134:16, 134:22, 137:10, 168:12, 183:3, 183:4, 183:15, 183:17, 184:10, 185:23, 186:4, 186:7, 186:11, 186:14, 186:18, 186:21, 186:25, 187:16, 187:24, 188:21, 189:1, 189:4, 189:7, 189:13, 209:24, 218:15
**pages** [15] - 29:10, 29:11, 32:10, 32:14, 33:22, 33:23, 114:4, 124:3, 130:16, 132:25, 134:7, 180:17, 181:10, 181:11, 212:1
**panel** [5] - 39:4, 39:11, 51:24, 65:14, 75:9
**panic** [1] - 197:9
**paper** [3] - 27:14, 34:4, 211:10
**papers** [2] - 221:1, 232:3
**paragraph** [26] - 124:22, 127:16, 129:16, 130:25, 131:14, 132:7, 133:3, 160:13, 161:9, 183:5, 185:23, 186:4, 186:7, 186:18, 186:21, 186:25, 187:2, 187:10, 187:13, 189:1, 189:4, 189:13, 189:17, 210:22, 212:5, 233:13
**paragraphs** [2] - 183:17, 184:11
**parameters** [1] - 13:23
**pardon** [1] - 172:3
**part** [26] - 7:8, 14:5, 25:14, 25:22, 39:3, 39:12, 68:14, 68:22, 87:8, 88:21, 96:5, 98:23, 125:2,

131:19, 139:11, 142:5, 143:24, 160:3, 197:16, 198:1, 205:21, 207:6, 211:17, 223:17, 228:5
**partial** [1] - 132:7
**participate** [1] - 78:7
**participated** [1] - 60:3
**particular** [25] - 23:11, 28:25, 29:1, 65:13, 80:17, 90:19, 98:4, 111:23, 114:15, 119:6, 119:10, 131:2, 136:22, 138:13, 138:22, 144:11, 151:9, 169:21, 171:13, 176:8, 187:22, 190:17, 201:22, 202:12, 214:1
**particularly** [1] - 140:12
**particulars** [1] - 82:2
**parties** [18] - 7:17, 18:19, 37:21, 38:6, 41:16, 81:9, 81:10, 87:13, 103:8, 112:15, 122:12, 126:18, 126:22, 164:25, 167:19, 235:15, 235:21, 236:14
**parties'** [2] - 151:16, 151:17
**partition** [1] - 25:1
**partnership** [1] - 101:8
**parts** [1] - 209:15
**party** [12] - 92:21, 93:5, 93:6, 124:19, 126:11, 127:7, 127:9, 142:1, 145:18, 151:3, 160:14, 162:10
**party's** [2] - 160:17, 160:21
**passed** [1] - 193:7
**passionate** [2] - 192:20, 193:15
**password** [1] - 31:13
**past** [5] - 60:23, 103:4, 172:25, 225:6, 227:22
**paste** [1] - 131:25
**Pat** [5] - 34:8, 44:4, 235:1, 235:4, 235:6
**patient** [2] - 67:22, 69:3
**patrolman** [1] - 178:4

**pattern** [2] - 111:4, 201:11
**Pause** [12] - 21:20, 31:5, 31:9, 32:7, 33:2, 67:18, 150:8, 153:16, 153:21, 154:4, 162:9, 171:11
**pause** [3] - 18:9, 21:13, 149:9
**pay** [8] - 40:8, 75:13, 75:16, 78:1, 82:7, 105:7, 105:14, 109:10
**paying** [3] - 83:23, 84:8, 105:12
**PDF** [1] - 33:15
**penalties** [1] - 40:22
**penalty** [2] - 183:11, 197:7
**pencil** [1] - 123:9
**pending** [7] - 4:14, 99:13, 124:2, 176:18, 176:22, 210:15, 210:16
**Penn** [2] - 99:25, 106:11
**Pennsylvania** [60] - 25:15, 38:22, 56:17, 57:21, 99:3, 99:23, 100:8, 101:13, 101:17, 102:3, 102:7, 103:4, 103:5, 104:16, 105:12, 106:3, 107:21, 108:3, 113:6, 115:6, 115:15, 115:24, 116:5, 116:6, 116:8, 116:19, 116:22, 117:12, 118:4, 118:5, 118:14, 119:9, 119:14, 129:7, 132:16, 143:8, 145:11, 145:13, 146:7, 146:25, 147:5, 147:12, 150:11, 160:1, 160:3, 161:18, 164:19, 164:21, 166:12, 166:18, 167:8, 167:14, 171:21, 171:24, 173:20, 176:1, 176:3, 176:6, 180:3, 216:5
**Pennsylvania's** [3] - 115:7, 137:16, 204:5
**Pentagon** [1] - 47:22
**People** [1] - 23:10
**people** [23] - 8:13, 16:15, 31:17, 34:14,

38:1, 41:9, 41:14, 46:14, 60:13, 60:20, 60:21, 65:23, 95:11, 110:1, 110:5, 115:18, 122:10, 127:3, 139:14, 158:4, 188:2, 212:24, 215:24
**per** [2] - 134:8, 192:8
**perceive** [1] - 182:25
**perceived** [5] - 189:14, 190:16, 190:21, 215:7, 228:14
**percent** [3] - 188:5, 191:10, 203:21
**perception** [1] - 223:14
**peremptories** [2] - 67:11, 68:23
**peremptory** [3] - 68:15, 68:18, 73:7
**Peremptory** [1] - 69:11
**perempts** [1] - 13:22
**perfect** [2] - 37:25, 89:10
**perfectly** [1] - 151:12
**perform** [1] - 80:14
**perhaps** [6] - 15:2, 126:17, 161:20, 188:16, 201:12, 230:22
**period** [2] - 82:12, 178:5
**perjury** [1] - 197:7
**permanent** [1] - 115:22
**permission** [2] - 32:19, 121:23
**permit** [1] - 205:19
**permits** [1] - 42:10
**permitted** [4] - 85:5, 125:7, 131:8, 165:8
**perplexing** [1] - 99:22
**perri** [2] - 67:2, 70:21
**Perri** [34] - 4:3, 4:6, 6:17, 6:19, 11:2, 11:3, 17:18, 18:22, 24:22, 32:24, 41:18, 41:23, 43:6, 43:18, 65:2, 65:8, 65:9, 67:5, 67:16, 72:6, 73:11, 90:3, 90:6, 98:19, 107:2, 112:3, 150:3, 158:15, 177:6, 199:14, 199:22, 201:9, 205:12
**PERRI** [179] - 4:6, 5:1,

5:18, 5:25, 6:4, 7:6, 7:11, 7:15, 7:18, 8:4, 8:16, 9:2, 9:7, 11:20, 11:23, 12:15, 16:11, 17:19, 18:1, 18:4, 20:13, 20:24, 21:2, 21:15, 23:3, 23:6, 23:18, 23:20, 24:2, 24:7, 26:6, 26:8, 26:16, 26:18, 27:3, 27:7, 27:9, 27:11, 27:16, 28:24, 34:7, 34:9, 34:12, 41:22, 65:10, 65:16, 65:25, 66:12, 66:15, 66:18, 67:3, 67:6, 67:17, 70:22, 71:4, 71:10, 71:13, 72:8, 72:18, 73:4, 73:12, 75:7, 75:24, 76:2, 76:4, 76:15, 76:24, 77:2, 88:14, 90:4, 107:3, 107:15, 112:4, 112:7, 113:24, 114:1, 114:21, 114:25, 115:1, 119:2, 120:7, 120:9, 121:13, 121:17, 121:22, 122:3, 122:5, 122:7, 122:8, 135:9, 135:11, 135:25, 136:4, 141:15, 143:21, 147:15, 147:21, 158:6, 158:11, 158:13, 159:25, 163:5, 164:22, 166:19, 167:9, 170:20, 172:1, 174:23, 177:1, 177:4, 177:9, 177:15, 179:10, 179:13, 180:12, 180:14, 182:1, 182:5, 195:14, 196:13, 196:18, 197:12, 198:22, 199:1, 199:8, 199:10, 199:23, 201:10, 202:17, 202:22, 203:2, 203:5, 203:12, 205:13, 206:7, 207:7, 210:5, 213:19, 214:6, 216:8, 217:22, 217:24, 218:2, 218:4, 218:13, 218:20, 218:22, 218:24, 219:19, 221:3, 221:7,

221:13, 221:16, 221:23, 222:1, 222:6, 222:18, 222:23, 222:25, 223:3, 223:5, 223:7, 223:10, 223:23, 225:4, 225:9, 225:16, 225:20, 225:23, 226:4, 226:6, 226:8, 228:11, 230:7, 230:17, 230:22, 231:1, 236:3, 236:9
**Perri's** [1] - 88:23
**person** [32] - 24:1, 52:3, 52:10, 59:1, 59:19, 60:22, 64:5, 72:22, 72:24, 91:7, 91:12, 93:8, 94:6, 94:13, 95:1, 101:12, 103:25, 104:2, 105:21, 108:12, 112:19, 117:13, 117:14, 126:8, 126:10, 131:10, 161:16, 179:2, 181:5, 191:19, 194:20, 205:9
**person's** [1] - 80:16
**personal** [12] - 40:12, 52:1, 52:8, 108:23, 112:24, 133:11, 135:2, 144:20, 163:13, 194:4, 194:15, 194:23
**personally** [5] - 43:20, 135:4, 135:17, 138:22, 166:15
**persons** [4] - 44:11, 100:2, 130:4, 166:13
**persuasions** [2] - 100:2, 166:13
**pertains** [3] - 103:24, 131:1, 221:17
**pertinent** [1] - 94:18
**Pete** [1] - 197:11
**Peter** [7] - 34:24, 115:20, 121:8, 198:12, 198:19, 198:20, 198:21
**petition** [5] - 35:7, 104:11, 105:11, 106:6, 232:15
**pews** [2] - 12:9, 70:2
**Philadelphia** [5] - 50:8, 54:1, 54:2, 178:5, 180:1
**phone** [5] - 32:20, 82:10, 89:24, 93:20, 225:25

**phones** [5] - 41:13, 65:9, 69:4, 69:5, 69:7
**phrasing** [1] - 24:11
**physically** [1] - 223:12
**pick** [2] - 68:17, 72:21
**picture** [1] - 140:19
**piece** [1] - 168:2
**pieces** [2] - 82:24, 156:4
**Pittsburgh** [1] - 118:6
**place** [2] - 54:1, 127:8
**placed** [2] - 40:20, 214:3
**places** [2] - 68:5, 77:21
**plain** [2] - 161:3, 161:8
**plaintiff** [2] - 132:13, 150:21
**Plaintiff** [7] - 112:18, 113:15, 114:7, 117:3, 131:7, 132:18, 150:24
**Plaintiff's** [4] - 133:5, 133:15, 161:11, 161:13
**plaintiffs** [4] - 129:5, 129:10, 129:11, 130:4
**Plaintiffs** [1] - 122:17
**plan** [2] - 11:10, 14:4
**planned** [1] - 16:12
**play** [2] - 38:25, 92:13
**playing** [2] - 36:21, 42:6
**plays** [1] - 96:5
**plea** [1] - 53:18
**plead** [3] - 150:22, 160:15, 166:15
**pleading** [8] - 12:13, 12:14, 124:10, 162:17, 162:20, 163:3, 208:18, 209:12
**pleasant** [1] - 195:21
**pled** [1] - 99:18
**plenary** [1] - 142:13
**plus** [2] - 11:4, 134:11
**podium** [11] - 5:2, 5:11, 5:14, 6:18, 7:1, 7:15, 7:17, 8:25, 9:1, 11:17, 19:10
**point** [48] - 15:21, 18:18, 19:2, 19:4, 25:6, 35:8, 35:17, 36:12, 36:25, 37:1, 98:16, 104:10, 118:17, 120:21, 121:13, 122:11, 123:25, 125:19,

136:7, 137:2, 145:10, 147:2, 151:7, 151:25, 152:10, 152:12, 153:7, 164:5, 168:5, 170:13, 174:6, 174:17, 175:16, 182:1, 192:10, 201:8, 201:14, 204:24, 209:24, 211:24, 213:5, 214:23, 216:15, 232:1, 232:14, 233:19, 234:10, 235:24
**pointed** [1] - 232:24
**points** [1] - 98:22
**police** [8] - 44:15, 46:3, 50:12, 50:14, 51:20, 51:23, 61:22, 142:13
**policy** [2] - 232:16, 232:20
**political** [2] - 23:20, 23:22
**politics** [1] - 106:12
**poor** [1] - 142:8
**porch** [2] - 196:11, 219:23
**portion** [2] - 137:13, 212:17
**posed** [2] - 40:22, 41:5
**poses** [1] - 9:10
**position** [4] - 14:24, 175:16, 212:15, 221:5
**positive** [2] - 64:12, 116:9
**possession** [1] - 55:20
**possibility** [1] - 93:16
**possible** [6] - 10:14, 32:25, 71:5, 81:20, 82:16, 220:1
**post** [4] - 228:3, 228:23, 229:4, 231:1
**post-Elonis** [4] - 228:3, 228:23, 229:4, 231:1
**potential** [3] - 11:10, 34:14, 149:24
**potentially** [1] - 14:24
**power** [2] - 170:17, 183:13
**powers** [3] - 142:13, 142:14, 210:13
**practical** [1] - 13:15
**practice** [8] - 12:18, 14:20, 100:23,

102:20, 145:11, 145:12, 145:20, 169:10
**pre** [2] - 25:11, 141:7
**pre-existed** [1] - 25:11
**pre-revolutionary** [1] - 141:7
**preaching** [1] - 106:17
**precedent** [1] - 183:9
**precious** [2] - 93:22, 211:14
**precise** [2] - 95:7, 152:24
**precisely** [1] - 75:15
**precursor** [1] - 131:12
**prefer** [5] - 5:20, 6:22, 6:25, 10:20, 10:21
**preference** [1] - 5:6
**prefers** [1] - 16:17
**prejudice** [3] - 80:15, 80:19, 168:3
**prejudices** [1] - 87:12
**prejudicial** [2] - 157:16, 159:4
**preliminary** [13] - 4:25, 16:12, 17:1, 17:23, 17:24, 20:23, 31:15, 74:16, 75:22, 76:20, 77:14, 142:3, 182:10
**premises** [1] - 223:13
**premonition** [1] - 22:4
**prepared** [4] - 89:7, 151:14, 153:7, 236:14
**present** [15] - 19:8, 29:8, 34:17, 35:10, 35:19, 40:15, 85:12, 85:15, 85:23, 85:25, 100:10, 129:19, 144:23, 148:1
**presentation** [5] - 98:2, 103:22, 107:2, 157:23, 169:21
**presented** [8] - 39:21, 58:19, 129:23, 134:19, 164:20, 165:2, 197:6, 223:25
**presenting** [1] - 103:16
**presents** [1] - 85:14
**preserve** [3] - 102:5, 183:21, 184:8
**preserving** [1] - 162:7
**preside** [2] - 119:13, 119:14
**presided** [1] - 234:18
**presiding** [2] - 38:13, 106:7, 117:23
**pressure** [1] - 92:15

**presumably** [1] - 181:20
**presumes** [1] - 163:24
**pretrial** [2] - 4:14, 172:5
**pretty** [14] - 11:15, 18:1, 48:3, 91:6, 95:6, 97:12, 120:5, 122:15, 124:11, 138:8, 160:18, 165:25, 202:2
**prevailed** [4] - 141:13, 174:21, 175:6, 198:20
**prevent** [4] - 52:17, 99:9, 99:16, 103:13
**preview** [6] - 85:8, 90:16, 90:17, 90:18, 94:23, 98:1
**previous** [3] - 12:8, 128:20, 133:12
**previously** [6] - 58:21, 127:22, 127:25, 132:23, 134:7, 137:19
**primarily** [1] - 102:15
**primary** [3] - 102:16, 104:18, 142:10
**principles** [3] - 40:4, 77:15, 80:7
**print** [1] - 172:19
**printed** [7] - 30:12, 32:25, 33:14, 34:1, 37:14, 167:13, 200:2
**printout** [1] - 36:13
**Priority** [1] - 207:25
**prison** [1] - 36:12
**private** [3] - 41:7, 44:15, 231:14
**privately** [1] - 41:9
**privileges** [1] - 101:13
**pro** [9] - 16:13, 18:5, 19:25, 37:8, 42:5, 103:13, 170:9, 172:23, 175:25
**probation** [1] - 109:8
**probative** [1] - 168:2
**problem** [14] - 5:15, 6:3, 6:6, 6:21, 7:25, 49:8, 63:17, 71:2, 95:22, 126:25, 159:8, 167:16, 167:19, 223:17
**problems** [1] - 147:8
**procedural** [2] - 20:15, 131:15
**procedurally** [1] - 123:24
**Procedure** [4] - 129:9, 145:14, 163:17,

169:4
**procedure** [9] - 83:1, 106:5, 144:17, 146:18, 150:20, 151:6, 152:15, 153:8, 170:17
**proceed** [12] - 18:25, 37:8, 42:4, 73:2, 73:6, 100:5, 103:3, 103:13, 129:10, 130:19, 152:13, 197:15
**proceeded** [1] - 147:8
**Proceeding** [2] - 4:1, 237:3
**proceeding** [12] - 52:21, 75:19, 83:1, 83:2, 89:15, 98:24, 142:15, 156:15, 159:17, 160:3, 173:5, 173:6
**proceedings** [1] - 173:1
**process** [39] - 23:7, 35:6, 36:5, 38:5, 40:17, 41:10, 68:15, 68:22, 81:2, 99:15, 99:22, 101:15, 102:1, 102:17, 102:25, 110:13, 119:11, 126:24, 127:4, 127:5, 127:6, 127:17, 127:19, 127:22, 128:3, 131:15, 150:23, 152:14, 163:14, 163:15, 173:11, 178:11, 189:12, 192:16, 211:5, 211:18, 211:22, 216:7
**processer** [4] - 28:15, 28:21, 30:6, 30:13
**processing** [1] - 60:19
**producing** [1] - 178:10
**production** [1] - 212:8
**profession** [1] - 16:5
**professional** [1] - 203:22
**professionalism** [1] - 16:4
**progeny** [1] - 174:21
**progressed** [1] - 140:9
**prohibit** [1] - 25:14
**prohibited** [1] - 229:15
**prolific** [1] - 172:23
**promised** [1] - 198:2
**prompted** [5] - 193:9,

206:21, 206:23, 206:25, 232:12
**pronouncement** [1] - 120:22
**proof** [8] - 32:8, 33:7, 42:18, 56:24, 56:25, 85:5, 104:8, 168:2
**proof-worthy** [1] - 168:2
**proper** [8] - 93:4, 106:5, 106:25, 126:8, 127:4, 127:18, 147:6, 153:8
**properly** [12] - 117:8, 126:19, 142:6, 149:18, 152:22, 163:18, 163:20, 163:23, 166:1, 187:4, 211:4, 213:16
**property** [6] - 100:16, 183:21, 196:10, 204:15, 211:13, 211:21
**proposal** [1] - 72:13
**proposals** [1] - 72:6
**propose** [3] - 18:15, 66:9, 233:14
**proposed** [6] - 228:2, 228:8, 230:10, 230:18, 232:7, 233:10
**Proposed** [1] - 233:2
**proposing** [1] - 235:14
**prosecuted** [2] - 91:16, 109:7
**prosecution** [8] - 6:12, 35:11, 36:11, 36:24, 212:13, 213:1, 227:1, 229:25
**prosecution's** [1] - 226:15
**prosecutor** [2] - 41:19, 175:5
**Prospective** [1] - 38:7
**PROSPECTIVE** [144] - 44:17, 44:21, 45:1, 45:4, 45:6, 45:11, 45:13, 45:15, 45:19, 45:22, 46:2, 46:6, 46:9, 46:15, 46:18, 46:20, 46:23, 47:1, 47:3, 47:6, 47:9, 47:11, 47:15, 47:17, 47:19, 47:22, 47:24, 48:2, 48:9, 48:11, 48:14, 48:16, 48:19, 48:22, 48:24, 49:2, 49:4, 49:6, 49:11, 49:13, 49:17, 49:22,

50:1, 50:5, 50:7, 50:10, 50:12, 50:15, 50:19, 50:21, 50:25, 51:3, 51:6, 51:8, 51:11, 51:13, 51:16, 52:23, 53:1, 53:3, 53:5, 53:10, 53:15, 53:17, 53:20, 53:23, 53:25, 54:6, 54:9, 54:11, 54:18, 54:21, 54:24, 55:2, 55:5, 55:8, 55:11, 55:16, 55:18, 55:22, 55:25, 56:3, 56:5, 56:10, 56:13, 56:16, 56:20, 56:23, 57:2, 57:5, 57:8, 57:10, 57:15, 57:18, 57:20, 57:25, 58:3, 58:5, 58:8, 58:10, 58:15, 59:2, 59:4, 59:9, 59:12, 59:14, 59:16, 59:18, 59:21, 59:25, 60:4, 60:7, 60:15, 60:18, 61:4, 61:7, 61:9, 61:16, 61:19, 61:21, 62:2, 62:16, 62:18, 62:20, 62:21, 62:22, 62:23, 62:24, 62:25, 63:1, 63:2, 63:3, 63:4, 63:5, 63:6, 63:7, 63:10, 63:22, 64:4, 64:6, 64:8, 64:14, 64:18, 64:22
**prospective** [5] - 38:9, 39:4, 40:18, 68:12, 73:20
**protect** [1] - 192:3
**protected** [13] - 22:7, 22:9, 24:17, 25:12, 64:25, 91:9, 91:11, 91:14, 104:11, 191:22, 192:3, 205:4, 206:2
**protecting** [2] - 101:10, 204:15
**protection** [5] - 178:14, 191:14, 191:24, 231:15, 232:15
**protections** [3] - 137:24, 168:23, 211:15
**prove** [8] - 28:13, 29:14, 29:16, 52:3, 90:10, 90:22, 236:22
**proven** [3] - 9:13, 42:21, 85:18
**proves** [1] - 52:13
**provide** [7] - 14:17,

37:10, 37:16,
104:21, 130:17,
173:3, 184:20
**provided** [6] - 13:20,
17:14, 17:15, 52:13,
137:19, 226:15
**provides** [1] - 101:5
**providing** [1] - 13:13
**provincial** [2] -
100:12, 101:2
**proving** [1] - 85:19
**public** [6] - 29:7,
80:15, 92:11,
231:12, 231:14,
232:16
**publish** [3] - 121:23,
122:1, 162:3
**published** [1] - 212:9
**publishing** [1] -
183:10
**pull** [4] - 71:17, 97:9,
227:24, 234:9
**pulling** [1] - 97:5
**pump** [1] - 64:10
**punctuation** [1] -
137:5
**punished** [1] - 105:25
**punishment** [1] -
82:17
**purported** [2] - 129:5,
129:11
**purporting** [1] -
110:20
**purpose** [18] - 24:24,
165:19, 166:24,
167:1, 167:3,
190:12, 190:13,
215:5, 215:8,
215:14, 218:9,
219:10, 221:11,
221:15, 222:16,
224:10, 224:17,
224:18
**purposes** [8] - 120:11,
135:13, 138:25,
168:7, 180:16,
224:7, 224:8, 224:13
**pursue** [3] - 65:23,
201:8, 202:5
**purview** [1] - 178:20
**put** [43] - 10:4, 11:7,
17:1, 20:2, 22:6,
22:17, 26:22, 34:4,
41:8, 41:12, 41:13,
42:23, 42:25, 50:16,
65:9, 70:25, 72:20,
78:3, 78:6, 81:12,
85:20, 98:13, 122:1,
132:22, 136:5,
144:12, 153:17,

153:22, 159:23,
163:2, 164:4,
168:14, 168:16,
168:18, 207:25,
208:5, 210:1, 210:7,
211:25, 212:11,
220:21, 226:25,
230:19
**puts** [1] - 191:17
**putting** [5] - 58:20,
123:19, 159:3,
167:21, 171:16
**pyre** [2] - 184:15

## Q

**Quaker** [1] - 106:18
**qualified** [5] - 205:3,
205:25, 206:4,
206:13, 216:3
**quality** [1] - 142:8
**quashed** [2] - 138:1,
168:25
**questioning** [8] - 5:18,
7:19, 7:20, 40:18,
148:1, 165:18,
201:9, 203:10
**questions** [31] - 19:2,
20:8, 21:12, 22:8,
23:17, 40:21, 40:23,
41:3, 43:14, 51:18,
61:13, 65:17, 66:25,
84:20, 84:21, 102:9,
105:17, 128:7,
131:9, 134:24,
136:5, 141:15,
145:2, 148:3, 167:2,
170:3, 175:14,
185:17, 195:15,
203:25
**quick** [7] - 74:14, 75:3,
98:22, 109:3, 154:5,
154:8, 157:18
**quickly** [4] - 32:25,
75:5, 75:21, 157:11
**quietly** [1] - 69:8
**quite** [6] - 111:6,
129:23, 131:23,
134:18, 139:5,
139:20
**quotation** [4] - 128:5,
131:22, 131:25,
212:12
**quotations** [1] - 187:3
**quote** [1] - 166:21
**quoted** [1] - 211:9
**quoting** [3] - 131:19,
167:6, 188:16

## R

**race** [5] - 23:6, 23:11,
24:16, 52:16, 80:17
**races** [1] - 69:3
**racism** [1] - 24:23
**radio** [1] - 82:8
**Ragonese** [1] - 116:9
**RAGONESE** [1] -
116:9
**raincoat** [1] - 78:25
**raining** [2] - 78:22,
79:2
**raise** [3] - 41:6, 84:22,
84:25
**raised** [6] - 6:17,
21:23, 142:6,
142:23, 143:25,
221:9
**rambling** [4] - 129:22,
132:23, 133:11,
134:18
**random** [2] - 210:14,
210:16
**randomized** [2] - 4:19,
38:2
**range** [1] - 137:5
**rape** [1] - 96:8
**rare** [2] - 69:9, 151:24
**rather** [10] - 65:23,
69:24, 75:25, 79:15,
131:21, 134:5,
198:8, 204:18,
215:15, 234:7
**ratification** [1] - 103:6
**rational** [3] - 137:23,
165:25, 168:22
**Raven** [1] - 47:24
**rea** [3] - 228:12, 229:2,
231:17
**reach** [3] - 52:10,
96:15, 97:2
**reached** [2] - 54:7,
235:15
**reaches** [1] - 120:21
**reaction** [3] - 72:8,
72:10, 182:24
**read** [49] - 21:1, 25:13,
44:7, 61:14, 61:23,
69:15, 69:17, 76:20,
77:14, 124:5,
124:24, 127:16,
128:23, 132:2,
132:4, 134:14,
137:12, 138:4,
139:5, 147:22,
160:13, 161:9,
162:9, 162:21,
163:12, 166:10,

172:20, 173:17,
179:18, 182:7,
183:1, 183:6,
183:20, 184:6,
184:13, 187:25,
189:10, 200:20,
201:6, 201:7, 202:8,
202:12, 210:10,
210:22, 212:5,
222:4, 223:19,
227:10, 233:14
**reading** [8] - 133:3,
149:16, 171:12,
172:6, 182:8, 197:3,
213:3, 229:12
**reads** [6] - 191:19,
221:18, 222:3,
223:10, 224:9,
224:16
**ready** [15] - 17:17,
17:24, 18:7, 18:10,
21:14, 26:1, 37:6,
37:19, 76:13, 76:22,
89:7, 89:17, 97:4,
154:12, 159:19
**reaffirm** [1] - 229:13
**real** [3] - 16:5, 75:3,
97:11
**reality** [1] - 106:1
**realize** [2] - 33:20,
104:19
**realized** [1] - 149:17
**realizing** [1] - 216:7
**really** [37] - 12:4,
15:11, 15:12, 19:15,
23:4, 24:14, 40:10,
51:6, 55:8, 62:2,
65:16, 66:7, 71:6,
72:1, 75:12, 83:9,
83:23, 84:7, 92:9,
93:1, 95:23, 97:25,
99:23, 124:13,
152:9, 152:15,
153:1, 155:9,
155:13, 155:14,
163:9, 164:14,
190:18, 199:24,
216:21, 222:12,
236:5
**reason** [24] - 40:16,
45:8, 58:18, 66:6,
66:14, 68:3, 68:20,
69:5, 70:24, 79:1,
80:20, 93:25, 96:4,
99:22, 100:12,
102:17, 104:9,
152:19, 157:13,
165:19, 174:12,
198:10, 219:18,
222:20

**reasonable** [16] -
42:21, 42:22, 52:14,
85:20, 90:13, 94:5,
94:12, 95:1, 95:14,
98:18, 103:25,
104:2, 104:8,
105:21, 201:10,
205:9
**reasoning** [1] - 147:22
**reasons** [5] - 5:6,
92:9, 127:1, 127:18,
137:8
**reassignment** [1] -
212:9
**receipt** [3] - 32:14,
147:11, 208:1
**receive** [7] - 135:6,
135:17, 138:22,
147:1, 152:23,
164:6, 180:9
**received** [8] - 135:20,
135:23, 137:20,
146:6, 164:3,
180:10, 181:23,
198:18
**receives** [1] - 111:9
**receiving** [4] - 35:2,
136:8, 170:5, 198:14
**recent** [8] - 36:18,
134:10, 229:7,
229:10, 229:18,
229:20, 229:22
**recently** [2] - 74:7,
194:9
**recess** [7] - 10:9, 75:2,
75:19, 88:11, 89:15,
154:9, 159:17
**recipient** [3] - 94:6,
94:12, 152:10
**recipients** [1] -
135:18, 136:11,
139:3
**recite** [1] - 160:1
**recklessness** [2] -
104:5, 228:24
**recognize** [11] - 40:6,
96:23, 114:4,
120:13, 120:14,
120:15, 135:14,
136:16, 136:20,
180:18, 187:15
**recollection** [7] - 84:1,
84:14, 188:19,
219:20, 220:10,
220:12, 220:16
**recommendation** [1] -
173:9
**reconcile** [4] - 208:21,
209:8, 209:10
**reconsideration** [4] -

129:18, 129:20, 130:18, 176:14

**reconvened** [3] - 75:20, 89:16, 159:18

**record** [17] - 4:3, 12:2, 16:3, 66:20, 75:8, 83:15, 107:7, 107:18, 114:13, 147:10, 148:2, 158:16, 166:10, 177:12, 179:10, 208:18, 220:17

**recording** [2] - 111:15, 137:19

**recount** [2] - 213:13, 220:4

**recused** [1] - 176:15

**redirect** [1] - 176:25

**redress** [3] - 104:11, 105:11, 106:6

**refamiliarize** [1] - 125:13

**refer** [2] - 154:2, 188:16

**reference** [15] - 28:3, 100:14, 102:8, 130:11, 130:25, 138:6, 138:19, 140:18, 141:2, 169:1, 170:14, 171:11, 188:4, 205:25, 211:25

**referenced** [5] - 103:20, 212:13, 227:5, 229:24, 233:22

**references** [4] - 125:23, 139:21, 141:6, 167:12

**referencing** [2] - 180:19, 188:5

**referred** [6] - 143:1, 150:3, 150:22, 173:8, 196:23, 213:4

**referring** [10] - 6:14, 6:16, 36:6, 115:5, 119:4, 162:23, 169:2, 169:11, 170:8, 179:21

**refers** [1] - 115:20

**reflect** [3] - 147:10, 148:2, 179:11

**refresh** [1] - 188:19

**refuse** [1] - 99:17

**refutes** [3] - 197:24, 207:3, 209:7

**refuting** [1] - 209:13

**regard** [3] - 52:8, 203:23, 205:4

**regarding** [4] -

116:24, 117:19, 138:12, 149:10

**regards** [2] - 39:3, 189:13

**registered** [4] - 101:18, 102:2, 102:3, 129:6

**registrant** [1] - 130:15

**registrants** [1] - 129:6

**regular** [1] - 39:14

**regulated** [6] - 25:8, 102:4, 183:8, 188:1, 188:12, 212:18

**regulations** [1] - 25:14

**rehire** [1] - 109:13

**reintroduce** [1] - 98:20

**rejected** [3] - 36:4, 36:10, 174:14

**relate** [1] - 136:24

**related** [7] - 16:11, 43:19, 128:2, 166:2, 184:22, 215:24, 226:16

**relating** [1] - 88:23

**relation** [1] - 235:5

**relations** [1] - 87:13

**relative** [4] - 30:18, 167:5, 216:3, 216:4

**relevance** [3] - 27:5, 160:4, 165:13

**relevant** [13] - 45:16, 45:19, 47:12, 147:23, 154:21, 154:22, 155:3, 159:3, 166:8, 224:14, 224:15, 227:2

**reliable** [1] - 97:1

**reliance** [1] - 99:24

**relief** [2] - 131:16, 160:15

**religion** [2] - 24:16, 80:17

**religious** [1] - 52:16

**relitigate** [4] - 147:18, 164:24, 165:15, 166:6

**rely** [5] - 19:19, 39:15, 96:16, 96:24, 145:17

**remain** [1] - 7:1

**remaining** [1] - 73:20

**remand** [1] - 184:24

**remanded** [1] - 173:10

**remember** [40] - 20:9, 30:19, 44:22, 45:7, 53:10, 54:10, 54:15, 54:16, 55:7, 70:5, 84:6, 85:17, 87:24, 106:11, 113:20,

117:11, 135:20, 138:23, 142:22, 170:4, 195:21, 204:9, 204:11, 204:23, 204:24, 204:25, 205:1, 205:2, 205:5, 207:18, 207:19, 207:22, 207:23, 215:23, 215:25, 216:1, 216:21, 225:24

**reminded** [1] - 26:9

**reminder** [1] - 230:18

**removal** [3] - 173:6, 173:11, 173:12

**remove** [3] - 38:19, 86:23, 177:7

**removed** [1] - 196:5

**render** [2] - 52:6, 58:18

**rendering** [1] - 40:24

**repeat** [1] - 208:3

**repeatedly** [2] - 103:18, 201:13

**repeating** [1] - 96:1

**repeats** [1] - 173:14

**rephrase** [1] - 45:24

**reply** [1] - 232:6

**report** [13] - 81:20, 181:11, 197:3, 198:24, 199:5, 199:6, 199:7, 199:10, 213:14, 213:17, 214:1, 217:11

**reporter** [5] - 7:3, 83:19, 113:8, 177:8, 196:4

**reports** [1] - 214:15

**represent** [32] - 18:20, 18:23, 21:8, 58:23, 90:7, 100:15, 100:16, 101:6, 101:7, 101:25, 103:1, 105:2, 106:19, 106:20, 108:3, 110:22, 113:21, 117:15, 117:19, 122:21, 129:2, 139:19, 139:23, 140:2, 146:11, 146:16, 166:3, 173:16, 174:2, 174:5

**representation** [4] - 12:11, 34:5, 99:24, 125:5

**representative** [1] - 42:2

**represented** [10] - 42:5, 100:6, 100:18, 102:19, 113:4, 116:18, 117:16, 145:18, 149:16

**representing** [10] - 20:3, 42:10, 99:9, 99:16, 108:25, 141:25, 149:9, 164:24, 170:10, 176:13

**republican** [1] - 104:21

**reputation** [2] - 204:15, 211:13

**request** [12] - 15:12, 34:21, 36:11, 36:14, 127:25, 146:16, 151:7, 161:13, 212:7, 214:16, 228:3

**requested** [2] - 36:18, 119:12

**requests** [4] - 34:20, 35:10, 37:3, 126:21

**require** [5] - 8:19, 39:17, 40:15, 86:23, 151:10

**required** [12] - 38:17, 52:7, 83:18, 129:8, 131:11, 145:15, 164:5, 164:11, 170:5, 170:9, 184:24, 211:4

**requirement** [3] - 62:10, 63:14, 100:12

**requirements** [2] - 145:19, 235:4

**requires** [4] - 40:11, 146:19, 168:1

**research** [9] - 74:4, 81:15, 81:17, 82:10, 145:15, 145:22, 145:25, 217:6, 228:19

**researching** [1] - 69:6

**reserving** [1] - 26:11

**resides** [1] - 85:19

**resolution** [1] - 95:17

**resolve** [1] - 226:12

**resolved** [2] - 104:6, 173:23

**resort** [1] - 140:18

**resorted** [2] - 98:9, 98:10

**resorting** [1] - 140:21

**resource** [1] - 46:4

**resources** [4] - 93:22, 192:4, 192:5

**respect** [10] - 14:16, 19:24, 65:17, 112:8,

125:21, 126:14, 129:22, 130:3, 133:5, 134:17

**respond** [9] - 124:8, 149:20, 149:25, 150:22, 152:7, 163:18, 163:19, 164:8, 172:12

**responded** [3] - 126:19, 148:13, 232:5

**respondent** [1] - 141:23

**responds** [1] - 126:10

**response** [42] - 41:5, 43:21, 43:25, 44:6, 44:8, 44:12, 46:11, 51:23, 52:1, 52:4, 52:12, 52:18, 58:22, 58:24, 60:11, 62:9, 62:12, 63:18, 88:22, 89:21, 124:10, 124:14, 124:16, 124:20, 145:16, 148:13, 148:23, 149:23, 151:10, 152:11, 152:20, 156:18, 161:18, 161:23, 162:20, 164:3, 167:11, 171:1, 172:18, 175:5, 217:19, 226:14

**responsibility** [1] - 52:3

**responsible** [5] - 92:18, 115:9, 178:9, 191:13, 191:14

**responsive** [2] - 162:17, 163:3

**rest** [1] - 199:6

**restrictions** [1] - 62:5

**restroom** [7] - 75:4, 75:17, 84:25, 141:17, 154:7, 157:5, 157:6

**restrooms** [1] - 74:21

**rests** [1] - 42:18

**result** [4] - 40:22, 110:25, 113:14, 152:25

**results** [1] - 106:25

**retire** [1] - 79:20

**retired** [1] - 118:16

**retrieve** [1] - 28:6

**return** [4] - 31:25, 33:4, 82:17, 147:11

**returned** [2] - 58:7, 72:5

**returning** [1] - 174:8

**reused** [1] - 232:9
**Revenue** [5] - 102:21, 113:6, 116:18, 116:22, 146:15
**reversed** [4] - 103:24, 105:20, 205:8, 206:4
**reversing** [1] - 103:18
**review** [8] - 140:6, 183:11, 227:7, 227:15, 227:18, 230:17, 230:23, 231:21
**reviewed** [3] - 188:15, 189:23, 214:2
**revisions** [1] - 18:8
**revolutionary** [1] - 141:7
**reword** [1] - 163:8
**rhetoric** [1] - 155:11
**rhetorical** [2] - 213:4, 216:6
**rid** [1] - 123:10
**Ridge** [1] - 138:19
**rights** [6] - 101:11, 101:13, 102:13, 130:3, 211:5, 211:12
**rise** [5] - 41:2, 74:18, 75:1, 217:15, 237:2
**rises** [1] - 95:15
**road** [1] - 151:25
**robbery** [1] - 105:15
**Rock** [1] - 47:24
**role** [21] - 11:25, 12:24, 13:20, 14:16, 14:18, 14:25, 15:15, 18:18, 19:3, 20:3, 36:21, 38:24, 38:25, 39:19, 40:2, 42:11, 78:12, 78:13, 80:5, 92:13, 104:22
**roles** [1] - 42:6
**room** [5] - 69:24, 81:4, 84:9, 86:13, 216:19
**rotting** [1] - 184:16
**rough** [1] - 105:10
**roughly** [4] - 11:2, 76:1, 178:5, 193:8
**row** [6] - 49:21, 50:3, 57:7, 61:6, 70:9, 73:22
**Ruby** [1] - 138:19
**rule** [32] - 7:21, 38:16, 92:20, 92:21, 111:7, 118:22, 119:25, 121:24, 151:9, 151:11, 153:9, 160:11, 162:1, 162:5, 162:16, 163:25, 168:1, 168:8, 169:2, 170:9,

170:14, 171:3, 171:4, 183:10, 183:23, 183:24, 184:17, 184:20, 203:8, 212:8, 229:4
**Rule** [37] - 35:12, 129:8, 137:25, 145:14, 151:4, 151:9, 151:12, 153:12, 153:15, 153:17, 153:23, 153:24, 154:19, 155:8, 155:16, 155:20, 155:25, 156:3, 159:20, 160:13, 161:21, 162:11, 162:15, 162:17, 165:2, 167:25, 168:1, 168:24, 169:1, 169:3, 169:4, 169:11, 170:5, 170:11, 172:10
**ruled** [5] - 4:14, 111:3, 147:18, 214:8, 214:16
**Rules** [1] - 163:17
**rules** [23] - 13:20, 16:20, 20:15, 27:2, 37:9, 81:12, 82:25, 83:1, 83:5, 83:6, 86:14, 126:9, 127:8, 140:2, 146:25, 152:24, 155:17, 162:3, 163:25, 170:18, 201:18, 216:17
**ruling** [8] - 66:19, 83:10, 93:5, 111:9, 111:10, 143:6, 157:1, 172:5
**rulings** [5] - 117:10, 125:3, 130:2, 137:7, 138:9
**run** [2] - 26:2, 81:10
**running** [2] - 35:13, 76:13
**runs** [1] - 202:24

## S

**sacrifice** [1] - 40:6
**safer** [1] - 191:11
**safety** [1] - 93:11
**sale** [1] - 194:11
**sanitize** [1] - 64:11
**sat** [1] - 118:13
**satisfaction** [1] - 233:18

**satisfactory** [1] - 5:16
**satisfied** [2] - 235:9, 236:17
**satisfy** [1] - 224:20
**Saturday** [2] - 208:1, 208:6
**save** [3] - 47:13, 82:3, 123:1
**saw** [6] - 56:11, 57:6, 128:11, 140:10, 159:24, 174:3
**Scalia** [1] - 25:10
**scatterbrained** [1] - 174:7
**Schedule** [1] - 166:17
**schedule** [1] - 75:6
**scheduling** [1] - 74:17
**school** [6] - 45:17, 55:11, 59:7, 161:4, 164:1, 179:17
**scope** [2] - 170:23, 171:4
**Scott** [2] - 33:5, 184:2
**scrap** [1] - 23:17
**screen** [5] - 122:14, 148:17, 159:23, 160:10, 166:11
**scroll** [1] - 131:11
**scrutiny** [1] - 131:11
**se** [9] - 16:13, 18:5, 19:25, 37:8, 42:5, 103:13, 170:9, 172:23, 175:25
**seat** [14] - 5:21, 67:10, 70:8, 70:12, 70:13, 70:14, 70:15, 72:4, 72:5, 75:3, 203:14
**seated** [9] - 10:14, 10:15, 12:2, 12:9, 42:1, 68:8, 69:16, 79:7, 179:8
**Sebelius** [1] - 144:24
**second** [24] - 6:18, 17:1, 25:8, 26:9, 28:18, 30:7, 53:13, 72:4, 121:18, 125:13, 134:21, 137:10, 154:3, 183:5, 183:8, 186:6, 189:17, 192:24, 206:22, 206:23, 208:8, 212:12, 212:14, 232:22
**secondhand** [2] - 197:25, 208:11
**seconds** [1] - 64:17
**secretary** [1] - 197:8
**section** [3] - 101:4, 107:25, 108:3
**Section** [5] - 101:5,

104:20, 142:25, 184:5
**sections** [1] - 102:13
**secured** [1] - 216:20
**securities** [2] - 101:17, 102:2
**security** [7] - 5:6, 25:9, 44:15, 178:13, 179:18, 188:2, 212:18
**Security** [3] - 47:7, 50:8, 60:19
**see** [78] - 7:12, 7:25, 9:10, 17:22, 21:24, 22:7, 23:20, 23:21, 26:14, 28:2, 29:17, 41:8, 49:9, 50:3, 57:16, 66:19, 70:11, 83:7, 83:8, 85:9, 86:23, 87:2, 89:12, 92:9, 92:11, 95:12, 96:20, 97:10, 98:13, 100:22, 101:11, 101:19, 111:25, 112:1, 121:3, 122:9, 125:16, 128:9, 132:1, 137:4, 137:19, 140:4, 147:22, 149:2, 149:6, 162:8, 169:15, 169:16, 169:17, 172:18, 178:12, 182:7, 182:13, 182:14, 182:15, 183:3, 183:4, 184:10, 185:2, 185:23, 185:25, 186:5, 186:8, 186:9, 188:19, 188:24, 189:17, 190:14, 190:18, 209:25, 210:22, 217:9, 228:22, 233:10, 237:1
**seeing** [5] - 31:8, 33:16, 151:13, 170:4, 218:18
**seek** [2] - 150:6, 150:13
**seeking** [5] - 117:5, 132:9, 150:25, 163:21, 176:2
**seeks** [2] - 125:8, 130:2
**seem** [3] - 95:5, 144:2, 211:24
**segued** [1] - 222:20
**segues** [1] - 110:15
**seized** [1] - 101:20

**seizing** [1] - 101:22
**select** [2] - 39:2, 39:11
**selected** [4] - 52:5, 58:17, 72:9, 72:22
**selection** [6] - 13:21, 23:7, 23:13, 38:5, 210:14, 210:17
**self** [5] - 60:22, 99:24, 171:24
**self-reliance** [1] - 99:24
**self-representation** [1] - 99:24
**semen** [1] - 96:8
**semi** [1] - 118:16
**semi-retired** [1] - 118:16
**send** [5] - 33:15, 94:4, 146:10, 146:12, 155:2
**sending** [1] - 136:7
**senior** [3] - 176:16, 190:5, 191:1
**sense** [17] - 15:24, 67:14, 80:20, 86:21, 86:24, 95:6, 97:20, 97:21, 97:22, 98:14, 98:15, 99:6, 112:9, 140:7, 157:12, 162:7, 192:20
**sent** [9] - 94:11, 109:1, 135:3, 136:9, 146:14, 146:15, 205:10
**sentence** [9] - 18:16, 128:19, 128:23, 134:5, 134:22, 160:18, 185:3, 186:24, 233:14
**sentenced** [1] - 109:8
**sentences** [1] - 233:14
**separately** [2] - 146:20, 193:19
**September** [4] - 150:9, 150:10, 150:16, 173:9
**serious** [4] - 92:23, 93:12, 95:3, 138:10
**seriously** [2] - 92:24, 93:15
**seriousness** [1] - 223:14
**serve** [10] - 39:14, 40:9, 40:10, 40:13, 56:21, 70:25, 71:7, 147:1, 152:22, 178:11
**served** [17] - 15:19, 24:6, 30:14, 53:6, 55:18, 142:6, 146:3,

146:19, 146:20, 147:11, 149:18, 150:1, 151:6, 152:24, 169:22, 197:8, 208:7
**serves** [2] - 49:17, 163:17
**service** [37] - 28:13, 28:14, 28:16, 28:20, 28:21, 28:25, 29:13, 29:19, 30:5, 30:6, 30:10, 30:13, 31:1, 31:25, 32:8, 33:4, 33:8, 39:16, 40:14, 73:18, 105:6, 126:24, 127:4, 127:5, 127:6, 127:19, 127:21, 128:3, 146:4, 146:6, 149:10, 163:15, 163:23, 178:20, 198:14, 198:18
**Service** [4] - 102:21, 178:8, 197:10, 226:1
**services** [1] - 13:13
**Services** [2] - 48:12, 191:24
**serving** [3] - 18:24, 49:14, 62:9
**set** [5] - 9:25, 35:13, 130:20, 130:21, 191:23
**sets** [1] - 102:12
**setting** [1] - 41:7
**settle** [1] - 132:10
**settled** [1] - 194:23
**settling** [1] - 59:21
**seven** [3] - 49:13, 50:25, 53:5
**several** [12] - 55:19, 110:20, 111:4, 111:11, 116:15, 133:18, 135:16, 136:11, 173:1, 173:2, 178:9, 209:16
**severe** [1] - 40:22
**shall** [1] - 188:3
**shared** [1] - 84:18
**Shawn** [4] - 4:5, 41:24, 43:18, 90:8
**sheet** [6] - 31:3, 142:10, 143:10, 143:11, 143:16, 144:12
**shell** [1] - 95:23
**sheriff** [1] - 194:11
**sheriff's** [1] - 194:11
**shift** [1] - 233:19
**ship** [1] - 13:5
**shirt** [2] - 68:20, 179:9

**shoot** [4] - 137:15, 138:21, 171:17, 204:8
**shooting** [2] - 138:7, 140:16
**short** [6] - 17:3, 74:1, 97:11, 144:1, 178:5
**shot** [2] - 138:3, 187:3
**shoulder** [1] - 14:5
**show** [24] - 19:17, 19:18, 99:6, 104:25, 114:2, 114:7, 120:10, 123:3, 135:12, 136:6, 138:25, 153:9, 153:15, 155:15, 155:22, 155:24, 156:7, 156:18, 161:2, 180:15, 215:9, 228:12, 228:13, 228:16
**showed** [3] - 159:25, 198:21, 203:21
**showing** [4] - 96:7, 161:13, 167:19, 227:19
**shown** [6] - 160:16, 160:24, 196:15, 199:3, 227:22, 229:4
**shows** [3] - 86:6, 123:11, 178:13
**shred** [1] - 37:24
**shut** [4] - 102:1, 102:3, 138:18, 138:21
**side** [6] - 85:9, 85:24, 97:10, 124:19, 162:22, 194:23
**sidebar** [10] - 26:3, 37:21, 67:21, 70:17, 71:20, 73:15, 83:8, 199:16, 203:15
**Sidebar** [3] - 65:5, 70:18, 199:19
**sidebars** [3] - 6:14, 6:18, 82:20
**sides** [5] - 68:17, 83:2, 83:6, 84:21, 229:6
**sign** [1] - 30:14
**signature** [3] - 114:13, 129:4, 166:7
**signed** [8] - 33:8, 103:7, 129:8, 146:21, 147:12, 166:7, 197:7, 208:17
**significance** [1] - 94:22
**significant** [1] - 230:23
**Simandle** [1] - 116:7

**SIMANDLE** [1] - 116:7
**Simbraw** [3] - 174:20, 183:14, 186:17
**similar** [4] - 49:20, 195:9, 195:12, 227:1
**similarity** [1] - 195:6
**simple** [7] - 99:15, 99:21, 100:8, 102:24, 160:18, 234:8
**simply** [9] - 51:21, 100:14, 129:23, 134:19, 151:15, 152:5, 156:18, 164:24, 169:18
**sincere** [1] - 203:22
**singled** [1] - 22:5
**sit** [15] - 10:21, 12:19, 14:21, 15:4, 15:6, 15:25, 39:3, 51:25, 58:17, 66:7, 68:24, 69:8, 70:11, 78:16
**sits** [2] - 43:2, 78:25
**sitting** [2] - 14:13, 70:5
**situated** [1] - 162:9
**situation** [7] - 81:13, 93:9, 93:10, 93:14, 182:19, 208:11, 223:15
**six** [6] - 8:10, 17:6, 50:5, 50:6, 57:18, 61:19
**sixth** [2] - 137:23, 168:23
**sizes** [1] - 137:5
**skip** [6] - 127:13, 129:15, 130:10, 132:3, 134:13, 186:4
**skipping** [1] - 189:7
**slide** [7] - 7:8, 153:8, 153:15, 153:17, 153:23, 156:1, 156:5
**slides** [2] - 151:14, 155:25
**small** [3] - 101:11, 172:20, 172:22
**smaller** [1] - 172:19
**snide** [1] - 133:11
**sniper** [1] - 138:20
**soaking** [1] - 78:25
**Social** [2] - 47:6, 60:18
**social** [3] - 8:8, 61:21, 81:17
**society** [1] - 206:15
**sole** [1] - 125:6
**solely** [6] - 23:10, 58:19, 61:14, 74:12, 87:10, 219:11

**solve** [1] - 224:2
**someone** [16] - 9:25, 25:22, 63:24, 84:24, 102:16, 104:10, 109:6, 109:13, 109:14, 112:16, 138:20, 151:6, 163:17, 209:12, 211:12, 212:22
**sometime** [1] - 170:1
**sometimes** [8] - 53:1, 53:3, 60:19, 91:3, 108:10, 109:10, 133:1
**somewhat** [2] - 228:25, 231:9
**somewhere** [2] - 28:23, 71:10
**son** [8] - 45:17, 48:24, 49:2, 49:9, 49:13, 49:17, 51:8, 64:8
**soon** [2] - 76:23, 81:20
**sorry** [19] - 22:11, 26:7, 45:24, 48:25, 54:13, 63:8, 63:22, 112:3, 134:15, 179:23, 181:4, 186:14, 196:7, 196:13, 203:19, 208:3, 209:5, 219:25, 227:17
**sort** [25] - 24:25, 26:11, 61:22, 94:22, 101:4, 111:4, 116:5, 116:16, 119:18, 132:1, 132:23, 137:4, 141:4, 141:7, 214:5
**sorted** [1] - 159:22
**sorts** [2] - 14:25, 159:14
**sought** [3] - 150:16, 160:15, 170:2
**sound** [2] - 154:6, 223:22
**sounds** [11] - 20:12, 28:17, 64:16, 64:17, 113:11, 152:8, 157:20, 175:14, 175:19, 201:10, 224:7
**sources** [1] - 202:4
**sovereign** [5] - 60:13, 60:20, 60:24, 61:24, 102:9
**space** [1] - 123:1
**speaker** [1] - 65:19
**speaking** [11] - 7:22, 8:18, 9:2, 15:17,

38:15, 38:19, 106:2, 127:14, 177:7, 192:18, 192:21
**speaks** [2] - 42:11, 43:4
**special** [2] - 87:13, 94:22
**specific** [14] - 100:14, 127:8, 143:12, 160:18, 163:21, 189:25, 226:23, 227:19, 227:20, 227:23, 228:5, 228:7, 228:25, 233:9
**specifically** [9] - 32:12, 36:4, 103:19, 151:13, 161:23, 164:11, 183:17, 193:2, 229:14
**specifies** [2] - 100:2, 145:4
**specify** [1] - 75:8
**spectator** [1] - 12:9
**speech** [6] - 91:11, 91:18, 106:17, 106:19, 231:15, 232:18
**spell** [6] - 107:6, 113:7, 177:11, 177:19, 190:7, 190:10
**spelling** [1] - 190:8
**spend** [2] - 51:5, 155:7
**spent** [2] - 74:9, 141:22
**spilled** [1] - 107:10
**spoken** [2] - 35:17, 37:2
**spot** [1] - 9:8
**spouse** [1] - 46:15
**Square** [2] - 77:4, 108:8
**stable** [1] - 194:20
**stake** [2] - 93:17, 106:21
**stamp** [3] - 114:12, 121:5, 121:7
**stand** [29] - 6:4, 6:20, 7:12, 7:14, 7:15, 8:20, 9:18, 10:9, 10:18, 11:2, 19:5, 19:13, 19:19, 19:25, 20:2, 20:10, 35:7, 41:19, 42:15, 42:16, 43:8, 78:22, 78:25, 107:4, 155:23, 176:11, 199:17, 199:18
**standard** [8] - 104:1,

105:22, 137:18,
227:5, 227:6,
228:25, 232:15,
232:18
**standby** [14] - 12:1,
12:4, 12:7, 12:19,
12:23, 13:2, 15:11,
15:12, 28:6, 35:15,
156:13, 156:15,
159:8, 234:6
**standing** [2] - 19:10,
130:4
**standpoint** [1] - 99:6
**start** [18] - 4:22, 4:24,
41:17, 53:8, 57:17,
67:5, 70:6, 77:22,
85:3, 88:6, 89:14,
109:11, 111:1,
111:16, 132:4,
141:17, 217:10
**started** [4] - 89:24,
193:16, 217:13
**starting** [4] - 4:20,
128:19, 132:5, 153:1
**starts** [3] - 127:17,
128:24, 134:14
**state** [29] - 16:3, 25:9,
45:25, 53:8, 53:11,
59:1, 91:20, 107:18,
108:4, 108:5,
109:15, 110:2,
115:7, 117:7,
132:16, 139:15,
142:14, 143:1,
146:8, 146:9, 147:7,
158:16, 160:1,
160:3, 173:6,
173:10, 177:11,
188:2, 212:19
**State** [1] - 107:6
**statement** [24] - 5:20,
19:16, 20:8, 31:24,
43:7, 85:6, 85:7,
86:7, 90:17, 94:5,
94:12, 94:25, 95:2,
95:3, 97:25, 171:12,
198:23, 201:20,
202:23, 207:2,
207:10, 208:13,
208:17, 228:17
**statements** [13] - 6:19,
19:2, 19:9, 43:6,
85:3, 85:11, 86:1,
96:21, 165:17,
188:9, 201:23,
213:2, 216:3
**States** [40] - 38:12,
39:6, 41:18, 41:19,
41:23, 41:25, 42:2,
46:13, 60:11, 90:7,

92:18, 94:9, 95:12,
102:7, 102:12,
103:6, 103:8,
104:20, 105:5,
105:20, 107:3,
114:2, 120:11,
128:7, 129:6,
132:16, 133:13,
133:22, 135:13,
138:25, 144:24,
166:16, 177:4,
177:22, 180:16,
182:2, 195:20,
227:25, 229:25,
234:14
**states** [1] - 102:10
**stating** [1] - 132:10
**stationed** [1] - 177:25
**status** [4] - 18:5,
118:16, 170:6,
176:16
**statute** [15] - 100:21,
103:2, 142:16,
142:20, 142:21,
142:23, 143:12,
146:7, 167:20,
167:21, 171:19,
171:24, 176:8,
176:9, 211:3
**Statute** [1] - 170:8
**statutes** [3] - 25:14,
108:5, 184:21
**statutory** [1] - 101:5
**stay** [3] - 68:7, 69:16
**steal** [1] - 204:7
**steering** [1] - 13:4
**stemming** [1] - 125:4
**step** [3] - 9:8, 70:1,
208:1
**stepbrother** [1] -
50:25
**stepdaughter** [1] -
51:13
**stepping** [1] - 176:15
**steps** [2] - 37:10,
189:25
**Stevens** [3] - 30:10,
30:11, 31:24
**still** [15] - 62:8, 65:18,
99:13, 167:13,
184:18, 192:2,
195:9, 195:10,
195:11, 206:16,
220:22, 228:25,
232:18
**stipulate** [3] - 235:4,
235:21, 236:15
**stipulation** [2] -
235:15, 236:3
**stock** [1] - 101:8

**stone** [2] - 95:19,
95:21
**stood** [1] - 205:12
**stop** [4] - 145:6,
159:5, 165:8, 190:17
**stopped** [1] - 64:9
**story** [3] - 209:11,
209:14, 209:16
**strawberry** [1] - 77:4
**Strawberry** [1] - 108:8
**stray** [1] - 11:17
**stream** [2] - 129:24,
134:19
**street** [2] - 108:8,
158:20
**stretch** [1] - 110:12
**stretched** [1] - 110:10
**strict** [1] - 131:11
**strike** [16] - 25:23,
25:24, 65:12, 65:22,
66:4, 66:5, 66:9,
66:13, 66:21, 68:19,
72:14, 72:16, 72:19,
83:13, 83:15, 174:20
**strikes** [1] - 69:11
**strip** [1] - 211:12
**striped** [1] - 179:9
**stripes** [1] - 97:12
**stripping** [1] - 101:1
**struck** [2] - 59:25,
60:1
**structure** [5] - 95:20,
100:11, 101:5,
102:10, 116:24
**stuff** [7] - 18:2, 60:25,
65:3, 92:23, 93:12,
114:8, 235:6
**style** [4] - 129:24,
134:20, 195:6, 195:9
**subject** [15] - 61:11,
92:1, 105:21,
144:20, 169:9,
172:24, 172:25,
173:8, 173:9,
173:10, 174:9,
204:12, 222:25,
232:11
**subjective** [4] - 104:9,
228:9, 228:12,
228:16
**submissions** [1] -
137:21
**submit** [1] - 21:9
**submitted** [3] - 104:9,
230:18, 232:5
**subpoena** [5] - 34:21,
35:3, 36:14, 37:4,
37:11
**subpoenaed** [1] -
37:12

**subpoenas** [5] -
35:24, 35:25, 36:5,
36:7, 36:19
**subsequent** [1] -
111:8
**substance** [1] - 36:23
**substantive** [2] -
101:6, 152:20
**substitute** [1] - 80:10
**subtle** [1] - 10:6
**success** [3] - 98:8,
103:4, 131:7
**successful** [1] -
106:10
**successfully** [1] -
198:9
**sudden** [1] - 84:25
**sue** [1] - 59:19
**sued** [18] - 59:20,
59:24, 108:4,
108:13, 109:1,
110:4, 116:12,
116:16, 118:13,
118:16, 126:19,
126:22, 127:3,
127:8, 139:14,
141:25, 146:9, 147:7
**sufficient** [3] - 100:25,
145:22, 161:1
**suggest** [4] - 76:10,
184:16, 227:20,
232:13
**suggesting** [5] - 11:8,
12:5, 184:14,
228:15, 231:7
**suggestion** [3] -
13:18, 137:17,
184:18
**suggestions** [2] -
19:23, 88:23
**suing** [5] - 111:7,
112:15, 117:7,
126:8, 127:9
**suit** [3] - 59:23, 113:3,
143:1
**sum** [4] - 161:11,
161:12, 163:21,
163:22
**summons** [10] - 30:12,
30:13, 30:23, 31:12,
31:15, 31:16,
143:15, 143:20,
144:14, 178:12
**sums** [1] - 127:14
**supervisor** [2] -
146:17, 214:3
**supplemental** [1] -
166:7
**support** [3] - 130:17,
227:19, 231:22

**supporting** [1] - 165:7
**suppose** [1] - 161:7
**supposed** [6] - 42:11,
80:19, 99:11, 141:2,
196:24, 236:1
**supposedly** [2] -
200:9, 213:2
**Supreme** [15] -
103:17, 103:23,
105:4, 105:8,
105:19, 137:24,
144:24, 168:23,
183:13, 205:8,
206:3, 229:15,
229:19, 231:8, 233:6
**surprise** [3] - 208:19,
211:2, 211:8
**surprised** [4] - 153:2,
164:13, 207:5,
207:24, 208:4, 208:9
**suspect** [1] - 188:14
**sustain** [6] - 166:23,
167:24, 167:25,
168:1, 171:5, 172:13
**sustained** [3] - 172:2,
172:4, 201:20
**sustaining** [1] - 83:10
**switch** [1] - 68:5
**SWORN** [2] - 107:5,
177:10
**sworn** [8] - 28:21,
38:9, 40:16, 73:25,
74:15, 74:19, 78:10,
177:18
**sympathy** [2] - 80:15,
80:18
**symptoms** [2] - 63:14,
63:16
**system** [13] - 24:3,
24:4, 29:20, 38:25,
39:19, 60:2, 92:12,
92:14, 104:19,
130:14, 140:25,
160:4, 225:13

## T

**table** [12] - 11:4,
12:19, 14:21, 15:2,
15:16, 21:17, 42:1,
80:19, 86:21,
148:19, 179:8
**tackle** [1] - 28:16
**talks** [5] - 187:6,
187:18, 195:10,
195:11, 217:7
**tasks** [2] - 13:6, 15:9
**Tax** [4] - 161:19,
164:18, 176:2, 176:6

tax [1] - 102:21
taxes [2] - 40:8, 116:24
technical [1] - 47:6
technically [1] - 63:24
technology [1] - 37:21
teenager [1] - 59:5
temper [1] - 193:16
temperature [1] - 190:14
tempted [1] - 65:23
ten [1] - 113:22
tend [1] - 139:9
Teresa [2] - 4:8, 43:19
term [3] - 144:22, 187:21, 188:22
terminated [1] - 123:22
terms [12] - 19:23, 28:5, 94:21, 95:20, 102:16, 109:17, 190:13, 190:23, 190:24, 213:14, 220:14, 229:2
test [2] - 37:20, 37:21
tested [1] - 64:12
testified [6] - 195:7, 198:25, 201:22, 202:2, 218:17, 218:18
testifies [3] - 9:21, 43:2, 225:14
testify [13] - 9:22, 19:18, 38:17, 42:25, 43:1, 87:19, 148:4, 175:15, 200:21, 202:6, 220:3, 223:13, 235:5
testifying [3] - 19:15, 168:12, 216:9
testimony [40] - 19:5, 19:6, 19:20, 20:10, 28:3, 30:21, 51:20, 84:1, 86:18, 87:1, 87:4, 87:6, 87:7, 87:10, 87:22, 96:8, 98:12, 118:25, 161:17, 165:9, 165:10, 165:17, 199:4, 200:7, 200:18, 200:22, 201:14, 203:25, 214:14, 215:3, 215:4, 219:13, 220:11, 221:5, 221:12, 226:3, 235:2, 235:16
Texas [1] - 137:18
thankful [1] - 98:23
THE [587] - 4:2, 4:9,

4:11, 4:13, 4:24, 5:5, 5:9, 5:11, 5:16, 5:22, 6:2, 6:6, 6:9, 6:16, 6:23, 7:13, 7:16, 7:19, 7:25, 8:5, 8:10, 8:13, 8:15, 8:17, 9:4, 9:10, 9:19, 9:20, 10:6, 10:12, 10:17, 10:23, 10:25, 11:7, 11:12, 11:15, 11:21, 12:13, 12:17, 13:9, 14:3, 14:9, 14:19, 14:23, 15:7, 16:2, 16:9, 16:22, 16:25, 17:6, 17:11, 17:18, 17:20, 18:3, 18:6, 18:10, 18:12, 18:15, 19:22, 20:12, 20:19, 20:22, 20:25, 21:3, 21:5, 21:14, 21:16, 21:21, 21:25, 22:2, 22:11, 22:19, 22:22, 22:24, 23:5, 23:8, 23:19, 23:24, 24:5, 24:9, 25:23, 26:4, 26:7, 26:14, 26:17, 26:25, 27:4, 27:8, 27:10, 27:13, 27:17, 27:21, 27:25, 28:8, 28:11, 28:17, 28:22, 29:4, 29:8, 29:10, 29:15, 29:21, 29:23, 29:25, 30:3, 30:7, 30:9, 30:16, 30:22, 31:3, 31:8, 31:10, 31:19, 32:3, 32:5, 32:8, 32:13, 32:22, 32:24, 33:3, 33:7, 33:10, 33:12, 33:14, 33:17, 33:22, 34:1, 34:6, 34:8, 34:10, 34:13, 34:18, 34:21, 35:2, 35:6, 35:20, 36:1, 36:6, 36:9, 37:6, 37:16, 37:18, 37:22, 37:25, 38:4, 38:10, 42:3, 43:12, 44:19, 44:24, 45:3, 45:5, 45:8, 45:12, 45:14, 45:18, 45:21, 45:23, 46:5, 46:8, 46:10, 46:17, 46:19, 46:21, 46:25, 47:2, 47:5, 47:8, 47:10, 47:13, 47:16, 47:18, 47:21, 47:23, 47:25, 48:6, 48:10, 48:13, 48:15, 48:18, 48:20, 48:23, 48:25, 49:3, 49:5, 49:8, 49:12, 49:15, 49:19, 49:25,

50:2, 50:6, 50:9, 50:11, 50:14, 50:16, 50:23, 51:2, 51:5, 51:7, 51:10, 51:12, 51:15, 51:17, 52:24, 53:2, 53:4, 53:6, 53:13, 53:16, 53:19, 53:21, 53:24, 54:4, 54:7, 54:10, 54:16, 54:19, 54:22, 54:25, 55:4, 55:6, 55:10, 55:13, 55:17, 55:21, 55:23, 56:1, 56:4, 56:7, 56:11, 56:14, 56:18, 56:21, 56:24, 57:3, 57:6, 57:9, 57:12, 57:16, 57:19, 57:23, 58:1, 58:4, 58:7, 58:9, 58:12, 58:16, 59:3, 59:8, 59:10, 59:13, 59:15, 59:17, 59:19, 59:23, 60:1, 60:5, 60:8, 60:16, 61:2, 61:5, 61:8, 61:13, 61:17, 61:20, 61:23, 62:3, 62:17, 62:19, 63:8, 63:11, 64:2, 64:5, 64:7, 64:13, 64:16, 64:20, 64:23, 65:6, 65:8, 65:11, 65:22, 66:2, 66:4, 66:14, 66:17, 66:21, 67:2, 67:4, 67:7, 67:9, 67:16, 67:18, 67:22, 68:10, 68:14, 69:12, 69:23, 70:17, 70:19, 70:21, 70:23, 71:8, 71:12, 71:15, 71:19, 71:21, 71:23, 72:3, 72:6, 72:12, 72:16, 72:19, 72:25, 73:2, 73:5, 73:11, 73:13, 73:16, 73:22, 74:20, 74:23, 74:24, 75:3, 75:10, 75:21, 76:3, 76:5, 76:9, 76:17, 76:25, 77:3, 77:5, 77:8, 77:10, 77:13, 88:8, 88:12, 88:15, 88:18, 88:20, 88:25, 89:3, 89:6, 89:10, 89:12, 89:17, 89:20, 89:23, 90:2, 98:19, 107:1, 107:8, 107:11, 107:12, 111:24, 112:3, 112:5, 113:25, 114:24, 118:20, 118:22, 118:25, 120:8, 121:16,

121:24, 122:4, 122:6, 135:10, 136:3, 141:16, 142:17, 142:21, 142:22, 143:24, 144:3, 144:4, 144:5, 145:1, 145:6, 147:20, 147:25, 148:6, 148:18, 148:22, 148:24, 149:1, 149:2, 149:5, 149:6, 153:9, 153:11, 153:14, 153:17, 153:19, 153:22, 153:25, 154:3, 154:5, 154:10, 154:14, 154:25, 155:12, 155:24, 156:3, 156:7, 156:10, 156:20, 157:1, 157:4, 157:7, 157:11, 157:25, 158:4, 158:10, 158:16, 158:24, 159:2, 159:12, 159:19, 159:22, 160:5, 160:7, 161:25, 163:8, 165:4, 165:8, 166:23, 167:16, 168:9, 168:14, 168:16, 170:22, 171:1, 172:2, 172:4, 172:13, 174:25, 175:2, 175:7, 175:13, 175:18, 175:21, 176:19, 176:21, 176:25, 177:2, 177:6, 177:13, 179:12, 180:13, 182:4, 195:16, 196:2, 196:6, 196:12, 196:17, 196:19, 197:15, 197:22, 198:24, 199:4, 199:9, 199:12, 199:15, 199:20, 199:22, 199:24, 200:4, 200:6, 200:11, 200:16, 200:25, 201:2, 201:5, 201:19, 202:8, 202:16, 202:21, 202:25, 203:4, 203:7, 203:13, 203:16, 203:24, 205:12, 205:14, 205:18, 206:9, 206:10,

206:11, 207:9, 209:25, 210:4, 210:7, 213:23, 214:10, 214:13, 214:16, 214:21, 214:24, 215:2, 216:10, 217:13, 217:17, 217:23, 217:25, 218:3, 218:5, 218:14, 218:17, 218:21, 218:23, 218:25, 219:3, 219:6, 219:17, 219:20, 219:24, 220:7, 220:10, 221:4, 221:11, 221:14, 221:22, 221:24, 222:2, 222:7, 222:13, 222:19, 222:24, 223:2, 223:4, 223:6, 223:9, 223:16, 223:24, 224:22, 225:1, 225:5, 225:8, 225:10, 225:18, 225:21, 226:2, 226:5, 226:7, 226:9, 226:17, 226:20, 226:23, 227:9, 228:7, 229:6, 229:10, 229:16, 229:22, 230:3, 230:5, 230:8, 230:21, 230:25, 231:3, 231:10, 231:19, 232:2, 232:7, 232:21, 232:24, 233:2, 233:12, 233:17, 233:25, 234:3, 234:11, 234:13, 234:15, 234:17, 234:19, 234:21, 235:13, 235:19, 236:7, 236:11, 236:19, 236:25
theme [3] - 139:17, 140:23, 173:14
themes [2] - 139:9, 140:4
themselves [8] - 23:12, 39:18, 41:17, 100:3, 103:9, 127:10, 129:13, 166:15
therefore [11] - 19:1, 25:11, 129:21, 141:9, 147:14, 165:3, 173:21, 208:6, 211:11,

224:1, 236:16
**therein** [2] - 127:25, 221:19
**they've** [2] - 105:23, 147:6
**thinking** [3] - 66:5, 98:3, 185:22
**thinks** [1] - 139:12
**third** [1] - 57:7
**Third** [21] - 132:17, 133:4, 174:19, 175:3, 179:18, 179:21, 179:24, 180:5, 180:6, 180:23, 181:20, 205:8, 206:4, 229:7, 229:8, 229:10, 229:17, 229:18, 229:19, 230:11, 231:7
**thirdhand** [1] - 197:25
**Thirteen** [1] - 60:15
**thirteen** [1] - 60:16
**Thirty** [3] - 49:13, 49:17, 61:7
**thirty** [4] - 48:14, 48:15, 51:11, 51:12
**Thirty-eight** [1] - 49:17
**Thirty-five** [1] - 61:7
**thirty-five** [2] - 48:14, 48:15
**Thirty-seven** [1] - 49:13
**thirty-two** [2] - 51:11, 51:12
**Thomas** [9] - 34:20, 35:10, 36:18, 37:2, 39:6, 43:23, 108:16, 137:16, 179:3
**thorough** [2] - 94:17, 194:8
**thoughtful** [2] - 13:14, 231:18
**thoughts** [2] - 18:13, 76:16
**thousands** [2] - 130:16, 134:6
**threat** [38] - 39:9, 88:1, 90:13, 91:1, 91:8, 91:12, 91:22, 93:24, 94:6, 94:7, 94:8, 94:10, 94:13, 94:14, 94:15, 94:20, 94:24, 103:25, 105:25, 171:8, 178:15, 179:16, 179:19, 182:15, 183:1, 185:1, 190:25, 206:15, 206:16,

212:14, 212:16, 212:19, 212:22, 212:25, 227:6, 228:6, 228:14, 233:7
**threaten** [3] - 104:10, 196:25, 215:13
**threatened** [4] - 93:8, 98:11, 197:11, 213:6
**threatening** [17] - 9:13, 39:8, 87:25, 90:12, 90:25, 91:17, 94:3, 155:2, 155:4, 190:21, 215:7, 215:18, 219:15, 220:15, 221:17, 221:19, 223:20
**threats** [24] - 27:15, 27:16, 91:2, 91:19, 92:10, 93:17, 93:25, 138:10, 182:9, 185:6, 185:14, 187:9, 188:9, 188:14, 189:22, 190:17, 191:5, 194:20, 194:22, 195:2, 195:11, 221:2, 221:5, 221:8
**three** [17] - 16:15, 32:9, 32:14, 40:7, 42:9, 63:11, 64:5, 87:24, 110:11, 113:13, 116:4, 124:1, 134:8, 203:21, 204:8, 215:21, 233:14
**threw** [1] - 74:8
**throughout** [9] - 38:16, 62:11, 74:3, 79:24, 81:2, 81:6, 185:18, 187:18, 192:16
**throw** [1] - 132:24
**thwart** [1] - 139:18
**thwarted** [1] - 101:18
**tie** [1] - 107:11
**timeframe** [5] - 32:18, 161:22, 205:7, 205:17, 206:3
**timely** [1] - 164:2
**timing** [2] - 75:21, 234:25
**tiny** [1] - 89:13
**tissue** [1] - 214:20
**title** [2] - 107:23, 171:23
**titled** [1] - 121:1
**titles** [1] - 110:2
**today** [11] - 54:23, 57:14, 57:24, 58:14, 71:25, 89:8, 90:9,

90:14, 167:15, 173:20, 179:5
**together** [5] - 17:1, 212:12, 213:6, 213:16, 215:21
**tolerate** [2] - 93:15, 93:16
**Tom** [1] - 4:10
**tomorrow** [11] - 4:20, 217:3, 218:12, 222:9, 224:18, 225:2, 225:3, 234:8, 234:22, 235:24, 236:1
**tonight** [1] - 217:1
**took** [6] - 53:17, 54:1, 78:22, 106:22, 230:11, 230:12
**tool** [2] - 97:21, 97:24
**top** [15] - 66:22, 123:5, 123:13, 125:16, 126:3, 128:18, 133:23, 137:9, 137:13, 181:12, 181:16, 183:4, 186:11, 187:16, 189:18
**torturous** [1] - 99:1
**total** [2] - 113:13, 113:22
**totality** [1] - 86:6
**touch** [2] - 95:12, 123:8
**touched** [1] - 95:24
**tough** [4] - 93:9, 93:10, 112:6, 225:4
**toward** [1] - 132:4
**towards** [6] - 186:9, 186:21, 187:2, 187:10, 187:16, 188:21
**town** [2] - 77:3, 178:4
**track** [1] - 115:9
**trade** [1] - 185:9
**traditional** [1] - 141:10
**transcribe** [1] - 83:21
**transcriber** [1] - 83:20
**transcript** [2] - 216:12, 227:10
**transfer** [3] - 183:22, 184:17, 185:7
**transferred** [1] - 150:3
**transmission** [2] - 103:24, 235:17
**transmits** [1] - 91:22
**travel** [1] - 236:10
**traveled** [2] - 236:6, 236:15
**treat** [6] - 11:1, 19:10, 19:11, 42:12, 43:6,

83:16
**treated** [2] - 43:5
**treatment** [1] - 6:11
**trial** [42] - 7:8, 10:15, 15:11, 39:12, 39:21, 40:2, 40:3, 56:25, 58:10, 58:19, 62:11, 63:15, 70:6, 74:3, 74:8, 74:12, 78:2, 78:17, 79:24, 80:4, 80:7, 80:25, 81:4, 81:6, 82:4, 82:22, 83:18, 83:21, 84:8, 84:17, 84:20, 85:9, 90:20, 90:24, 96:6, 106:15, 126:13, 156:13, 184:1, 214:24, 215:2, 217:4
**tribunal** [13] - 98:25, 99:14, 106:24, 144:17, 144:21, 145:4, 145:7, 165:3, 173:23, 212:6, 212:22, 212:23, 212:24
**tried** [10] - 36:5, 36:7, 36:8, 39:16, 60:22, 103:3, 192:17, 197:3, 198:5, 208:24
**triggered** [1] - 147:2
**troubles** [1] - 182:14
**true** [13] - 27:3, 43:11, 91:8, 91:12, 94:6, 94:13, 94:20, 94:24, 105:25, 159:6, 228:6, 233:7, 235:20
**trumps/avoids** [1] - 183:14
**truth** [2] - 191:11, 203:3
**truthful** [3] - 207:2, 207:8, 207:9
**truthfully** [2] - 40:19, 220:10
**try** [20] - 10:12, 19:19, 24:21, 28:16, 74:5, 75:18, 77:21, 82:11, 89:6, 101:23, 148:11, 154:7, 154:8, 157:16, 162:6, 171:10, 196:25, 216:16, 217:13, 230:5
**trying** [30] - 9:3, 9:11, 14:11, 23:8, 23:14, 26:20, 30:9, 32:24, 76:15, 99:16, 112:19, 117:9, 139:18, 140:1, 145:3, 147:17,

154:24, 171:7, 171:9, 200:21, 211:12, 214:19, 216:7, 220:1, 222:18, 225:24, 227:3, 231:5, 232:13, 236:20
**turn** [4] - 43:13, 82:8, 107:1, 232:10
**turning** [1] - 191:23
**TV** [2] - 178:13, 204:7
**twenty** [2] - 47:15, 76:4
**Twenty** [5] - 48:9, 48:10, 50:25, 59:14, 59:15
**Twenty-eight** [2] - 48:9, 48:10
**Twenty-five** [2] - 59:14, 59:15
**twenty-one** [1] - 47:15
**Twenty-seven** [1] - 50:25
**twice** [2] - 15:21, 206:4
**two** [41] - 7:6, 11:3, 28:17, 32:5, 39:9, 39:13, 42:6, 51:11, 51:12, 57:16, 67:13, 78:18, 87:25, 96:6, 110:10, 113:13, 116:4, 124:1, 156:12, 156:15, 157:22, 162:16, 183:17, 184:11, 185:21, 188:11, 192:10, 198:19, 204:6, 208:21, 218:8, 222:4, 223:4, 225:19, 225:21, 227:17, 228:11, 228:14, 232:11, 236:15
**two-minute** [1] - 157:22
**type** [6] - 114:14, 184:1, 190:17, 194:13, 228:5, 231:16
**types** [3] - 96:6, 144:8, 162:2
**typical** [3] - 116:11, 116:14, 131:21
**typically** [5] - 71:17, 109:22, 235:2, 235:3, 235:8

## U

**U.S** [9] - 41:24, 51:1, 90:6, 94:4, 102:21, 168:13, 174:20, 205:9, 233:6
**U.S.C** [5] - 131:10, 143:4, 183:10, 212:8, 212:9
**ultimate** [2] - 93:5, 156:22
**ultimately** [8] - 83:24, 122:19, 123:22, 136:19, 150:25, 154:17, 156:22, 164:9
**um-hum** [17] - 21:4, 31:18, 61:13, 77:7, 130:13, 154:13, 159:11, 179:1, 182:23, 183:19, 194:16, 195:22, 204:19, 209:21, 212:2, 212:4, 236:24
**umbrella** [1] - 78:25
**unable** [17] - 13:7, 39:14, 45:10, 55:14, 57:4, 57:13, 58:14, 58:18, 59:11, 60:6, 61:3, 61:14, 61:24, 84:22, 100:5, 151:14, 166:15
**unanimous** [1] - 79:18
**unauthorized** [1] - 100:23
**unaware** [1] - 147:13
**uncertain** [3] - 190:23, 190:24, 220:14
**uncharged** [4] - 214:20, 219:8, 220:24, 223:22
**undaunted** [1] - 132:11
**undecipherable** [2] - 129:22, 134:18
**under** [53] - 19:8, 26:21, 27:2, 28:9, 35:12, 36:12, 36:20, 39:19, 40:20, 42:17, 43:3, 78:16, 78:19, 91:9, 91:11, 91:20, 91:25, 94:25, 101:13, 104:12, 104:19, 129:15, 130:24, 131:10, 131:11, 134:4, 134:13, 137:15, 138:3, 142:11, 142:15, 142:24,

145:14, 147:5, 151:9, 162:16, 165:2, 167:25, 169:21, 171:18, 176:3, 176:6, 183:14, 183:22, 183:23, 187:4, 193:8, 197:7, 207:3, 208:17, 209:7, 209:12
**underhanded** [1] - 119:22
**underneath** [1] - 153:23
**understood** [3] - 14:18, 66:13, 199:13
**undisputed** [3] - 105:24, 214:22, 220:24
**undo** [1] - 117:9
**unfair** [2] - 15:1, 168:3
**unfairly** [1] - 157:15
**unfamiliar** [2] - 137:18, 161:24
**unfavorable** [3] - 111:9, 120:5, 120:19
**unfortunately** [1] - 217:17
**unhappy** [1] - 110:25
**Unified** [2] - 116:5, 150:11
**unintelligible** [4] - 129:23, 133:7, 133:10, 134:18
**unintentional** [1] - 17:11
**United** [45] - 22:21, 23:2, 25:2, 25:3, 38:12, 39:5, 41:17, 41:19, 41:23, 41:25, 42:2, 46:13, 60:11, 90:7, 92:18, 94:9, 95:12, 102:7, 102:12, 103:6, 103:8, 104:20, 105:5, 105:20, 107:3, 114:2, 120:11, 128:7, 129:6, 131:12, 132:16, 133:13, 133:22, 135:13, 138:25, 144:24, 166:16, 177:4, 177:22, 180:16, 182:2, 195:20, 227:25, 229:25, 234:14
**unlawfully** [1] - 101:20
**unless** [7] - 13:19,

73:5, 105:7, 200:19, 205:21, 210:1, 224:17
**unlimited** [1] - 192:6
**unrelated** [1] - 124:18
**unrepresented** [1] - 145:18
**unresolved** [1] - 176:14
**unsafe** [1] - 62:9
**unsuccessful** [1] - 132:14
**unusual** [2] - 99:10, 131:21
**unwilling** [2] - 58:18, 63:12
**up** [77] - 4:19, 5:23, 7:8, 9:25, 10:5, 10:21, 14:24, 21:17, 28:18, 29:23, 35:7, 35:23, 41:13, 51:18, 59:21, 65:13, 65:16, 66:25, 68:2, 69:16, 70:24, 71:13, 71:19, 71:20, 76:11, 80:23, 84:24, 87:8, 87:9, 102:1, 109:10, 111:7, 123:9, 126:20, 127:14, 130:20, 130:21, 136:6, 138:18, 138:21, 139:9, 139:12, 139:20, 141:11, 148:17, 156:13, 160:10, 161:25, 168:14, 168:16, 168:18, 170:13, 172:19, 174:11, 174:15, 174:17, 179:20, 182:10, 182:15, 192:11, 198:21, 199:2, 199:17, 199:18, 203:21, 210:1, 210:7, 211:25, 213:9, 213:11, 217:7, 220:19, 226:17, 227:24, 231:22, 234:9, 236:21
**upholding** [1] - 92:18
**uproar** [1] - 198:17
**Upton** [1] - 178:4
**uses** [2] - 187:9, 195:10

## V

**vaccinated** [7] - 7:21, 7:23, 8:2, 38:14,

62:13, 62:16, 62:18
**valid** [7] - 98:25, 99:13, 106:24, 129:19, 167:13, 173:23, 229:13
**valuable** [1] - 211:14
**variations** [1] - 232:10
**variety** [1] - 136:21
**various** [14] - 34:25, 109:1, 109:25, 110:21, 111:18, 117:7, 118:17, 125:3, 125:5, 136:13, 137:8, 142:24, 174:15, 204:13
**vehicle** [2] - 59:16, 59:17
**veiled** [1] - 195:11
**vein** [1] - 106:16
**venire** [1] - 4:18
**venue** [2] - 163:14, 185:12
**verbally** [1] - 195:13
**verbatim** [2] - 230:11
**verbiage** [2] - 187:9, 195:10
**verbose** [1] - 124:4
**verdict** [16] - 40:25, 52:6, 52:10, 53:16, 53:19, 53:20, 58:7, 58:19, 79:17, 79:19, 80:2, 80:5, 80:23, 82:17, 84:17
**verdicts** [2] - 54:7, 54:10
**version** [7] - 116:22, 167:7, 167:14, 185:2, 200:13, 200:14, 226:25
**versus** [12] - 13:22, 30:2, 131:11, 137:18, 141:24, 144:25, 174:20, 188:24, 205:9, 210:23, 228:24, 229:25
**vexatious** [18] - 132:18, 132:21, 133:18, 152:17, 155:11, 155:13, 156:19, 160:12, 164:17, 165:6, 165:11, 165:18, 167:1, 174:7, 174:13, 188:17, 188:23, 189:11
**VI** [2] - 100:1, 166:12
**via** [1] - 235:17
**victim** [4] - 44:10,

60:2, 102:16, 221:16
**victims** [1] - 44:11
**video** [1] - 96:7
**videos** [1] - 61:21
**view** [9] - 19:9, 59:11, 77:16, 94:6, 94:13, 183:5, 201:15, 220:23, 224:6
**viewed** [5] - 94:8, 94:15, 215:18, 219:14, 220:14
**views** [4] - 23:13, 23:16, 79:25, 80:1
**Vigorous** [1] - 233:3
**violated** [1] - 184:21
**violating** [1] - 106:4
**violation** [4] - 39:10, 91:21, 184:4, 214:5
**violence** [1] - 138:10
**violent** [4] - 60:10, 138:14, 198:17, 200:9
**Virginia** [3] - 53:12, 53:14, 137:25, 168:25
**visceral** [1] - 72:9
**visit** [10] - 26:12, 26:23, 26:25, 192:22, 193:3, 193:5, 193:9, 206:22, 206:24
**visited** [2] - 192:24, 194:10
**visual** [1] - 52:20
**voice** [1] - 143:25
**voices** [2] - 208:25, 221:9
**void** [1] - 165:3
**voir** [7] - 17:21, 21:6, 21:22, 40:18, 41:10, 43:13
**voluminous** [2] - 29:11, 130:15

## W

**wait** [4] - 18:6, 46:21, 55:1, 93:7
**waiting** [1] - 216:23
**waive** [1] - 163:3
**waived** [4] - 162:10, 162:22, 163:2, 163:6
**waives** [1] - 162:10
**waiving** [1] - 162:7
**walk** [3] - 5:3, 7:3, 7:11
**walked** [1] - 164:17
**walker** [1] - 9:2
**walking** [1] - 7:9

**walks** [3] - 10:5, 78:21, 78:24
**wall** [1] - 132:24
**wants** [8] - 6:19, 16:18, 75:4, 85:25, 117:3, 159:23, 185:11, 224:14
**war** [2] - 141:7, 187:4
**warned** [1] - 19:14
**Washington** [4] - 48:18, 102:22, 103:8, 208:18
**waste** [1] - 145:23
**watch** [2] - 69:13, 82:5
**watched** [1] - 72:8
**watching** [2] - 72:10, 160:2
**water** [1] - 107:10
**Watts** [4] - 227:4, 232:12, 233:5
**ways** [4] - 87:3, 87:4, 228:11, 228:14
**wear** [2] - 8:3, 62:5
**wearing** [8] - 38:14, 62:4, 62:11, 64:2, 64:24, 68:21, 78:24, 158:20
**Wednesday** [1] - 234:23
**weeds** [1] - 127:13
**week** [6] - 54:17, 64:1, 124:1, 134:8, 225:8, 227:10
**weight** [6] - 51:20, 79:6, 83:23, 87:9, 87:18, 87:21
**Welch** [1] - 198:21
**welcome** [1] - 77:13
**well-defined** [1] - 12:25
**well-regulated** [6] - 25:8, 102:4, 183:8, 188:1, 188:12, 212:18
**Welsh** [7] - 34:24, 115:17, 115:20, 121:8, 198:19, 198:21
**Welsh's** [1] - 121:5
**West** [2] - 137:25, 168:25
**Western** [1] - 118:5
**wet** [2] - 78:25, 166:7
**whatnot** [2] - 37:9, 37:11
**whatsoever** [1] - 152:12
**wheel** [1] - 68:1
**wheels** [1] - 191:17
**wherein** [1] - 95:1

**white** [6] - 41:14, 63:20, 65:2, 65:3, 179:8, 199:16
**whole** [7] - 33:22, 95:5, 125:20, 127:11, 129:16, 191:23, 193:7
**wife** [1] - 47:3
**William** [3] - 33:10, 99:25, 106:11
**willing** [1] - 14:14
**willingness** [1] - 98:23
**win** [3] - 126:12, 126:13, 140:18
**wise** [1] - 75:6
**wish** [2] - 73:18, 183:7
**wishes** [2] - 13:11, 14:6
**withholding** [1] - 105:6
**witness** [43] - 7:12, 9:1, 42:14, 44:10, 51:21, 76:13, 76:22, 78:23, 83:25, 84:5, 84:22, 86:18, 87:1, 87:11, 87:13, 87:21, 111:25, 113:24, 143:23, 148:3, 148:20, 163:7, 164:24, 167:12, 177:3, 178:14, 180:12, 200:7, 200:17, 200:19, 200:21, 200:22, 201:17, 202:2, 202:9, 202:14, 202:18, 202:25, 207:10, 215:16, 225:14, 235:1, 235:6
**WITNESS** [14] - 107:5, 107:8, 107:12, 142:22, 144:3, 144:5, 149:2, 149:6, 175:2, 176:21, 177:10, 177:13, 206:10, 213:23
**witness's** [4] - 8:20, 86:22, 87:7, 87:10
**witnesses** [29] - 5:19, 7:19, 7:20, 8:1, 8:19, 20:8, 21:11, 21:17, 34:5, 34:15, 34:16, 35:24, 37:12, 38:17, 44:11, 78:16, 85:12, 86:19, 86:23, 87:2, 87:19, 87:20, 98:13, 167:18, 201:22, 209:16, 225:6, 234:25
**witnesses'** [1] - 87:21

**won** [2] - 139:12, 141:13
**wonderful** [1] - 174:17
**wondering** [7] - 10:25, 11:3, 11:24, 16:12, 16:15, 89:11, 137:12
**word** [18] - 12:13, 95:10, 97:20, 105:14, 111:13, 127:17, 132:5, 133:18, 184:15, 189:2, 189:6, 205:5, 229:8, 229:18, 229:20, 236:4
**wording** [1] - 151:4
**words** [30] - 24:12, 28:13, 72:25, 83:25, 91:3, 91:15, 94:1, 95:6, 128:16, 130:8, 131:18, 134:1, 143:25, 155:5, 155:12, 158:1, 165:14, 187:6, 197:20, 198:16, 200:17, 204:25, 208:21, 213:25, 232:9, 233:12
**works** [13] - 13:2, 47:3, 48:4, 48:5, 48:24, 49:2, 49:6, 49:22, 76:13, 77:6, 116:18, 116:21, 146:7
**worried** [3] - 6:18, 14:12, 76:18
**worrisome** [1] - 138:12
**worry** [2] - 82:15, 92:20
**worse** [1] - 183:12
**worth** [2] - 219:20, 220:12
**worthy** [4] - 87:15, 87:16, 94:18, 168:2
**wound** [1] - 102:1
**Wow** [1] - 93:9
**wow** [1] - 49:19
**write** [5] - 22:19, 123:1, 140:12, 183:11, 231:20
**writes** [2] - 131:5, 131:7
**writing** [5] - 21:10, 187:22, 188:15, 197:24, 209:6
**writings** [1] - 140:6
**written** [9] - 36:16, 86:11, 86:12, 120:24, 140:17, 185:6, 212:20,

213:17, 214:2
**wronged** [1] - 195:12
**wrote** [5] - 25:10, 84:13, 99:25, 217:19, 233:2
**WRTL** [1] - 131:11

**Y**

**year** [3] - 110:10, 135:16, 206:8
**years** [17] - 44:18, 44:21, 53:25, 54:2, 54:14, 55:5, 57:10, 59:7, 68:17, 103:4, 106:23, 109:19, 110:11, 113:13, 173:1, 222:4, 223:4
**yelling** [1] - 192:19
**yester** [1] - 90:5
**yesterday** [1] - 90:5
**York** [1] - 55:18
**YOUNG** [33] - 4:10, 8:14, 12:22, 13:10, 14:4, 14:22, 15:25, 16:7, 17:5, 17:8, 17:13, 20:6, 29:6, 29:9, 32:19, 33:16, 33:23, 156:12, 156:21, 157:3, 157:21, 219:1, 219:25, 227:17, 228:20, 231:5, 231:11, 234:7, 234:12, 234:14, 234:16, 234:18, 234:20
**Young** [22] - 4:10, 12:2, 12:8, 12:20, 14:10, 14:21, 15:17, 17:4, 19:22, 29:5, 34:20, 35:10, 35:14, 35:21, 36:19, 37:2, 37:10, 137:17, 156:10, 159:7, 227:16, 228:15
**Young's** [1] - 11:25
**yourself** [19] - 11:9, 21:9, 37:8, 43:9, 58:23, 92:5, 92:7, 93:11, 96:17, 96:23, 97:14, 100:15, 101:6, 125:13, 147:5, 148:1, 170:10, 174:2, 174:10
**yourselves** [1] - 82:16