499

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2                      HARRISBURG DIVISION

 3

   UNITED STATES OF AMERICA          :   CASE NO.
 4                                    :
              v.                      :   (Judge Connolly)
 5                                    :
                                      :
 6 KEITH THOMAS DOUGHERTY             :   1:19-CR-00140

 7

 8                  TRANSCRIPT OF PROCEEDINGS
                      JURY TRIAL - DAY 3
 9                 (Pages 499 through 693)

10

          Held before the HONORABLE COLM F. CONNOLLY
11         December 2, 2021, commencing at 8:37 a.m.
      Courtroom No. 1, Federal Building, Harrisburg, Pennsylvania
12

13

14
   APPEARANCES:
15
   DAVID PERRI, ESQUIRE
16 United States Attorney's Office
   Federal Building U.S. Courthouse
17 1125 Chapline Street, Suite 3000
   Wheeling, WV 26003
18      For the United States

19 SHAWN ADKINS, ESQUIRE
   United States Attorney's Office
20 Federal Building U.S. Courthouse
   1125 Chapline Street, Suite 3000
21 Wheeling, WV 26003
        For the United States

22

23

24

25
```

500

1   APPEARANCES CONTINUED:

2

    KEITH THOMAS DOUGHERTY, PRO SE
3   #76873-067
    FDC-Philadelphia Federal Detention Center
4   P.O. Box 562
    Philadelphia, PA 19105
5       Defendant

6   THOMAS J. YOUNG, ESQUIRE
    Federal Defender of New Jersey
7   800-840 Cooper Street, Suite #350
    Camden, NJ 08102
8       Standby Counsel for the Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

        Proceedings recorded by machine shorthand; transcript
23  produced by computer-aided transcription.

24  _____
                    Wendy C. Yinger, RMR, CRR
                       Official Court Reporter
25              wendy_yinger@pamd.uscourts.gov

501

1

2         I N D E X   T O   W I T N E S S E S

3 FOR THE DEFENDANT      DIRECT    CROSS    REDIRECT    RECROSS

4

    Keith Dougherty        519      572      600       --

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

502

1          (Proceedings convened at 8:37 a.m.; without the

2           jury.)

3          THE COURT:  Okay, jury instructions.  I guess we have

4  to quickly discuss willfulness.  What is the Government's

5  position?

6          MR. PERRI:  Your Honor, we talked about this quite a

7  bit last night.  Our position is, it doesn't need to be in

8  there.

9          THE COURT:  I'm sorry, I can't -- you have to take

10  your mask off.

11          (Complied.)

12          MR. PERRI:  Our position is, it doesn't need to be in

13  there, but --

14          THE COURT:  Does not, but?  Does or doesn't?

15          MR. PERRI:  Does not, but.  But.  We're concerned the

16  indictment has that language, and we're okay with having it in

17  -- keeping the instruction.

18          THE COURT:  Well, it can't be.  Unless you want to

19  add willfulness as an element of the crime, we can't have an

20  instruction on willfulness.

21          MR. PERRI:  We were thinking --

22          THE COURT:  The jury is not going to have any

23  understanding of why there's a willfulness instruction if it's

24  not an element.

25          MR. PERRI:  I understand, Your Honor.  So I guess the

1   place where it would go is in the first element, the Defendant

2   knowingly and willingly, just sort of tracking the indictment's

3   language.  The Defendant knowingly and willingly sent a

4   communication in interstate commerce.

5           THE COURT:  Can I see the jury instructions?

6           MR. YOUNG:  Judge, sorry to step in for a second.

7   This is just a sample sheet of the Government's proposed jury

8   instructions in the *Brody* case.  As the Court was saying, they

9   have the Defendant knowingly and willfully and intentionally

10  threatened.  It has to be, as you said, it's got to be here if

11  it's going to be in the instruction later on.  And that's just

12  kind of the way it is.  So that's how they phrased it in here,

13  the Defendant knowingly, willfully, and intentionally.

14          THE COURT:  Is that what you want to do?

15          MR. ADKINS:  Your Honor, in 511-CR-13, *U.S. v.*

16  *Elonis*, in that case, I remember I said yesterday I was going

17  to look back at that indictment and see if it also had

18  willfully in the indictment, and it does; knowingly and

19  willfully in the *Elonis* case.

20          We can only get the proposed jury instructions in

21  that case, and there was no willfully proposed in that case.

22  So, I mean, we're just trying to be accommodating here.  I know

23  Mr. Dougherty had mentioned that he would like it in there.  We

24  believe that if we put it in there --

25          THE COURT:  But he wants it in there because he wants

504

1  a subjective intent instruction.  I mean, in other words,

2  that's his appeal -- if he gets convicted, that's a big issue

3  on appeal he's going to make, right?  Now -- I mean, that's, as

4  I understand it.  I'll ask him if that is the context in which

5  he also thinks there should be --

6          MR. DOUGHERTY:  Absent that is the constructive

7  amendment to the --

8          THE COURT:  May I see a copy of the most recent

9  iteration of the jury instructions?

10          (Complied.)

11          (Pause.)

12          THE COURT:  Mr. Young, do you have those New Jersey

13  instructions?  Could you pass those up, please?

14          MR. YOUNG:  Sure.

15          (Complied.)

16          MR. YOUNG:  The front has an index, too, Judge.

17          THE COURT:  Is willfully used in the superseding

18  indictment --

19          MR. PERRI:  I believe so.

20          THE COURT:  Hold on.  I'm sorry, I didn't finish my

21  question.  I was going to say, for all counts.  And the answer

22  is, it is.

23          MR. PERRI:  Judge, we think that willfully, as

24  defined, doesn't really increase our burden.  That's what I was

25  trying to say the other day when I referred to it, its use in

1  the indictment as kind of surplusage.  I think that in the

2  first element, if you say that the Defendant knowingly and

3  willfully sent the communication in interstate commerce, just

4  adding two words, that's all we're referring to.

5          Now the Defendant may think that it introduces some

6  different mental state.  I don't think it does.  I don't think

7  it does.

8          THE COURT:  Hold on one second.

9          MR. PERRI:  I think *Elonis* is what defines the mental

10  state.

11          (Pause.)

12          THE COURT:  All right.  So question number 1 for the

13  Government.  Does the Government believe it is necessary to

14  have a willfulness instruction to the jury?

15          MR. PERRI:  Necessary, no.

16          THE COURT:  And so the Government's position is that

17  even though the indictment used the word willful, that it is

18  not necessary to require the jury to make a finding of

19  willfulness?  Just a yes or no.  I want to know if that's what

20  the Government's position is.

21          MR. PERRI:  We don't think it's necessary because

22  it's not in the statute and it's not in *Elonis*.

23          THE COURT:  So it's not a constructive amendment to

24  the indictment, as Mr. Dougherty just said?

25          MR. PERRI:  Well, that's -- you try to avoid issues

506

1    because it could come up later.  So that's why we're willing to

2    --

3            THE COURT:  See, I'm not looking for willing, right.

4    I'm asking what's the Government's position.  So my first

5    question is, does the Government believe it is necessary to

6    have a willfulness instruction?

7            MR. PERRI:  Right.

8            THE COURT:  And what's the Government's position?

9            MR. PERRI:  No.

10           THE COURT:  Okay.  Does the Government want a

11   willfulness instruction is question number 2.

12           MR. PERRI:  If it can be -- if it can be inserted

13   under these circumstances, Your Honor, in the first element, to

14   read, the Defendant knowingly and willfully sent a

15   communication in interstate commerce.  That is the sum and

16   total of it.

17           THE COURT:  Okay.

18           MR. PERRI:  If not, if the Court is not willing to do

19   that or has some more expansive view how it should be phrased

20   or used or articulated, then no.

21           THE COURT:  All right.

22           (Pause.)

23           THE COURT:  Okay.  I'm not going to give a willful

24   instruction, and I'm going to base that ruling on part that I

25   do not believe *Elonis* requires it.  Secondly, I'm going to base

507

1  it on the model jury instructions that have been issued by the

2  Third Circuit.  They can be located on the Third Circuit

3  website, and instruction 5.05 is the willfully instruction.

4        And in the commentary, it says the following:  Quote,

5  An instruction defining willfully should be given only when by

6  statute or court decision willfully is made a mental state

7  element of the offense charged.  An instruction on willfully

8  should not be given just because willfully is alleged in the

9  indictment unless it is a legal element of the offense charged,

10 unquote.

11       For that reason, I am not going to give a willfulness

12 instruction.

13       MR. PERRI:  Thank you, Your Honor.

14       THE COURT:  All right.  Next issue on jury

15 instructions.  And I am aware, and I think it should be noted,

16 that the U.S. Attorney's office here is acting because of

17 recusal and comes from West Virginia, which is not in the Third

18 Circuit.  All right.  Any other issues with jury instructions?

19       MR. PERRI:  Judge, we noticed last night there's

20 still an instruction in there about stipulations.  We haven't

21 had any stipulations.

22       THE COURT:  That needs to come out then.

23       MR. ADKINS:  It's out.  It's out in the copy that you

24 have, Judge.  And we did jury instruction number 16 pursuant to

25 the discussion about the 404(b) and we did pull that down from

1  the Third Circuit's model instructions, Your Honor.

2          MR. PERRI:  We drafted up a 404(b) instruction, Your

3  Honor.

4          THE COURT:  So jury instruction 9 needs to come out.

5          MR. PERRI:  Yes.

6          (Pause.)

7          THE COURT:  Okay.  All right.  Other than the

8  objections that, Mr. Dougherty, that you have already noted,

9  which is that you believe there should be a subjective intent

10  instruction, and there was some other instructions that you

11  said should be made in connection with that, are there any

12  other objections to the jury instructions?

13         MR. DOUGHERTY:  The only thing -- again, I'm just

14  going to in an abundance of caution preserve that simply

15  because jury instructions by model jury instructions of the

16  Third Circuit say something, I'm not conceding that, so I would

17  still argue that the constructive receipt -- that the

18  constructive would occur with leaving it out.

19         THE COURT:  Understood.  And that's the only other

20  objection you have?  And that objection is preserved.

21         MR. DOUGHERTY:  One more.  The fact is you have

22  dutifully stuck to what is Third Circuit precedent in the jury

23  instructions, and I fully recognize all of that.  And I had

24  said before that, I just want to make sure I'm preserving it,

25  that the Third Circuit precedent on self defense is *Smith*

1  *versus Virgin Islands*, where it specifies if there is a state

2  statute outlining the types of defenses that I had clearly

3  indicated I wanted to do, whether it be the self defense, then

4  the justification defense, and then the lesser evils, or

5  necessity defense, they're all in the state statute.  That

6  precedent said that --

7          THE COURT:  You don't have to repeat it because --

8  I've already ruled.  I've ruled on this.  You made the

9  argument, and it is preserved.  And can I just ask you, I do

10  want to ask you one question.  Your theory is that because of

11  those self defense provisions, you are allowed to threaten a

12  judge?

13          MR. DOUGHERTY:  No.

14          THE COURT:  Okay.

15          MR. DOUGHERTY:  No, I'm saying, if you were trying to

16  make that defense, you have to make certain findings.  One,

17  that you are a victim of a crime, okay.  And just the one thing

18  that was misstated repeatedly was there's less than deadly

19  force if, in fact, someone has taken personal property from you

20  as long as it's, you know, we're talking in this case

21  contracts, documents, companies, and they did it unlawfully,

22  you have to be able to prove they did it unlawfully --

23          THE COURT:  I get all that.  I just want to know what

24  you're assuming -- let's assume for argument sake that that

25  element has to be met.  What I want to make sure I understand

510

1  is, your position is that you were justified in using the words

2  you did in the letters because you were acting in self defense.

3  Correct?

4          MR. DOUGHERTY:  I was talking in terms of self

5  defense that I'm talking to who I believe was the executive

6  authority to remake rules in this Middle District of

7  Pennsylvania to, in fact, prevent the clerk from continuing to

8  violate the law, 18 U.S.C. 2706, and therefore an unending

9  delay and transfer of the case, unending delays because the

10 rules are clear.  We want to go just, speedy, and inexpensive,

11 and this was thrown out the window because of --

12         THE COURT:  Okay, I can't get a straight -- this will

13 be a little frustrating, but I understand, even though you

14 won't answer the question directly, that what you're saying is,

15 your conduct was justified and it was justified and allowed

16 under the self defense provisions.

17         MR. DOUGHERTY:  Not just the self defense, but the

18 justification required that what I was preventing with my

19 unlawful action was, in fact, less than what action I was

20 seeking to stop.

21         THE COURT:  Fine.  So the bottom line is what you're

22 saying is, your conduct was justified by those various

23 provisions in Pennsylvania law and constitutions.

24         MR. DOUGHERTY:  One indicates self defense.  The

25 justification is different from self defense because, again,

511

1  the Supreme Court of the United States said self defense is a

2  legal innocence defense.  Those other defenses are correctly

3  justification, not simply because they're all in the same

4  chapter in Pennsylvania law saying justification, that again --

5          THE COURT:  Whether it's a defense or what you want

6  to call a defense or justification, I'm sticking to my ruling.

7          MR. DOUGHERTY:  I understand.  I'm preserving it.

8          THE COURT:  You preserved it, and, yes, and we

9  couldn't have a system that allowed people to use those

10  statutes as justification or defending sending threats to --

11          MR. DOUGHERTY:  Again, I disagree with the

12  characterization of threat when, in fact, there was actually a

13  statute that says you must warn.  It actually says you must

14  warn them as to what the consequences are if they don't stop

15  interfering with your property.

16          THE COURT:  Well, if you want to say to the jury that

17  it was not a threat, it was a warning, I mean, that's up to

18  you.  I have not gone that far.

19          MR. DOUGHERTY:  Okay, I misunderstood.

20          THE COURT:  Well, no, but you can't say it's under

21  Pennsylvania law.

22          MR. DOUGHERTY:  No, no, I understand.

23          THE COURT:  I'm not precluding you from saying that

24  the letters don't contain threats, you get to do that.

25          MR. DOUGHERTY:  Yeah, yeah.  That's my position.

512

1          THE COURT:  As soon as you mention, I want to make

2     this very clear, as soon as you mention some Pennsylvania

3     constitutional provision, Pennsylvania case law, or

4     Pennsylvania statute, and you identify that to the jury as in

5     any way excusing either justifying or defending your conduct,

6     I'm going to cut you off and you will not -- and if you do

7     that, I'll end your testimony.  You are not allowed to do that.

8          MR. DOUGHERTY:  Okay.

9          THE COURT:  Okay.

10          MR. DOUGHERTY:  Again, the whole basis of even going

11     near that was to address my state of mind.  So that's possible

12     for me to get into that only in that regard.

13          THE COURT:  I've already ruled.  All right.

14          MR. YOUNG:  Judge, I have some copies that Mr.

15     Dougherty requested.

16          THE COURT:  Okay.

17          MR. YOUNG:  I don't know if they're going to be

18     admitted or not, but I want to be able to hand them over to

19     him.  There's three copies each so the Government can take a

20     look, the Court can take a look, and he'll have a copy.

21          THE COURT:  All right, thank you.  And Mr. Dougherty,

22     do you plan on getting up to take the stand when we begin?  Is

23     that right?

24          MR. DOUGHERTY:  Yes.

25          THE COURT:  Okay.  So where are the Marshals?  Do you

513

1  want to go over there now?

2          DEPUTY MARSHAL:  Yeah.

3          (Complied.)

4          THE COURT:  All right.  Anything else we need to

5  address before we bring the jury in?  The Government is going

6  to -- can you take care of getting copies made?  So that -- I

7  mean --

8          MS. LESKO:  Of our jury instructions?

9          THE COURT:  Well, with the corrections.

10         MS. LESKO:  Yes.  I have access to the U.S.

11 Attorney's office's printing.

12         THE COURT:  Perfect.

13         MR. PERRI:  I don't know if the Defendant intends to

14 introduce any exhibits during his testimony, but we'd like to

15 see them.

16         THE COURT:  You were just handed them.

17         MR. YOUNG:  He'll give the Government a copy.

18         MR. PERRI:  I will note for the record there was no

19 exhibit list ever provided, so we're seeing this for the first

20 time right before his testimony.

21         THE COURT:  Okay.  So it's noted for the record, but

22 normally you note something for the record IF you're asking

23 kind of for relief.  Is there a follow-up?

24         MR. PERRI:  Well, we don't know what it is yet,

25 Judge.

514

1          THE COURT:  Okay.  So Mr. Dougherty --

2          MR. YOUNG:  I will --

3          THE COURT:  -- you got exhibits you intend to

4    introduce while you testify.  You need to give them to the

5    Government right now, okay?

6          MR. DOUGHERTY:  Okay.

7          THE COURT:  Why don't you hand them up to the Court,

8    too.

9          (Complied.)

10         THE COURT:  All right.  So there are three documents

11   that have been handed up to me.  All right.  Mr. Dougherty, do

12   you want to introduce these into evidence?

13         MR. DOUGHERTY:  Yes.

14         THE COURT:  Okay.  Is there any objection?

15         MR. DOUGHERTY:  And --

16         THE COURT:  Let me just deal with -- there may be no

17   objection, I don't know.

18         MR. ADKINS:  Your Honor, with respect to -- I'm

19   looking at the document 13 filed in 15-CV 582, that document.

20         THE COURT:  Hold up.  DI 13 in 582.  Got it.

21         MR. ADKINS:  Specifically on page 2 of that 26-page

22   document.

23         THE COURT:  Yes.

24         MR. ADKINS:  It has a lot of hearsay in it about an

25   incident at the clerk's office specifically.  From I would

515

1 imagine, and I'm just guessing here, this Michael Scott

2 Cobaugh, because his name is above it, as the proof of service.

3 But it talks about what happened during that incident.

4          THE COURT:  Mr. Dougherty, do you know who wrote the

5 words on the bottom of page 2 of DI 13?

6          MR. DOUGHERTY:  Yes, Your Honor, that is the

7 individual who effected service.  And this was being introduced

8 to correct the U.S. Marshal's mischaracterization that Keith

9 Dougherty served --

10          THE COURT:  I just asked, do you know who wrote it?

11          MR. DOUGHERTY:  Yes, the very same individual who

12 signs under penalty of perjury he has to give additional

13 information about what happened during his service.

14          THE COURT:  Okay.  I'm going to let this document

15 come into evidence as long as Mr. Dougherty identifies -- he's

16 got to explain who wrote this, if he can do that.

17          MR. DOUGHERTY:  Yeah.

18          THE COURT:  Okay.  So that exhibit -- any other

19 objections?

20          MR. ADKINS:  Not at this time, Your Honor, just

21 looking through it quickly.  If, during the course of his

22 testimony, he identifies something in there, I will object at

23 that time.

24          THE COURT:  Right, all right.  So just final word,

25 just another warning, again, Mr. Dougherty, if you try to tell

516

 1 the jury that your communications were justified or made legal
 2 because of a self defense theory that you've articulated under
 3 Pennsylvania law or the Pennsylvania constitution, I will stop
 4 your testimony.  Okay?
 5           MR. YOUNG:  May I just have one last moment with him
 6 to just kind of briefly give him a little structure advice?
 7           THE COURT:  Yes.
 8           (Mr. Young and Mr. Dougherty confer.)
 9           MR. DOUGHERTY:  Just one minute.  I don't know if I
10 gave everyone copies of 10.
11           THE COURT:  Wait, 10?  So we have DI 11, we have two
12 copies -- I have two copies of DI 11.  Is there another one, DI
13 10?  All right.  Let's quickly look and see if the Government
14 has any objection.  Any objection to DI 10 from the 1541 case
15 coming in?
16           MR. ADKINS:  No, Your Honor.
17           THE COURT:  Okay.  So let's get these exhibits marked
18 as defense exhibits.  I think we've already had a couple
19 defense exhibits.
20           (Pause.)
21           (Complied.)
22           (Mr. Young and Mr. Dougherty confer.)
23           THE COURT:  All right.  Should we put Mr. Dougherty
24 on the stand right now?  I think that would be easier.  What do
25 you think?

517

1            MR. DOUGHERTY:  Just one more.

2            THE COURT:  Yep.

3            MR. DOUGHERTY:  I have the updated docket relative to

4    the Government's exhibit.  It was cut off on --

5            THE COURT:  Just show it to them if you want to bring

6    that in.  They may not object.

7            (Complied.)

8            THE COURT:  Any objection?

9            MR. PERRI:  We don't have any objection to that.

10           THE COURT:  Okay, fine.  The docket sheet can come

11   in.  All right.  Mr. Dougherty, just make sure you got all your

12   exhibits ready.  What we'll do is bring the jury in, and then

13   I'll ask, do you wish to present a case?  And I guess you're

14   going to call yourself.  Is that right?

15           MR. DOUGHERTY:  Yes.

16           THE COURT:  Okay.  Then we'll just have you walk to

17   the stand, and you'll be placed under oath, and then you can

18   begin.  All right.  But just -- because we don't want you to

19   come back and forth, can you bring whatever you need?

20           MR. DOUGHERTY:  Just give me a minute to get what I

21   need.

22           THE COURT:  That's fine, take your time.

23           MR. ADKINS:  Judge, just to make clear.  You want 20

24   copies of that final version of that the jury instructions?

25           THE COURT:  Hold on a second.

1          (Pause.)

2          THE COURT:  Yes.  Now don't forget I'm going to be

3    giving them some kind of general reviewing of the preliminary

4    instructions as well.

5          MR. PERRI:  Judge, do you give them the final

6    instructions before closing argument or after?

7          THE COURT:  After.

8          MR. PERRI:  Okay, thank you.

9          THE COURT:  Are you ready?

10          MR. DOUGHERTY:  Just a brief second, Your Honor.  I

11    was in the process of finishing up a last note to myself.

12          (Pause.)

13          THE COURT:  Okay, we're going to have to get started,

14    all right.  Just be ready.  Have your stuff ready and we'll

15    bring the jury in now.

16          (Jury was brought in at 9:16 a.m.)

17          THE COURT:  Please be seated.  Good morning.  I hope

18    you all had a good rest?  Good, all right.  The Government

19    rested its case.  And so now, Mr. Dougherty, do you wish to

20    present a case?

21          MR. DOUGHERTY:  Yes, I do.

22          THE COURT:  All right.  Now you see Mr. Dougherty is

23    going to take the stand.  And the testimony he gives is

24    evidence unlike what he said to you or what he said during the

25    course of the trial so far when he was acting as a lawyer.

1  That was not evidence.

2         But now he's going to be placed under oath, and what

3  he says is evidence.  And you may give it whatever weight you

4  think it deserves.  That's a fact finding decision, that's up

5  to you.  All right?

6              **KEITH DOUGHERTY, DEFENDANT'S WITNESS, SWORN**

7         COURTROOM DEPUTY:  State your name for the record.

8         THE WITNESS:  My name is Keith Dougherty.

9                        **DIRECT EXAMINATION**

10        THE WITNESS:  Okay.  I don't want to confuse, but to

11 try and keep this orderly and not consume too much time, I'm

12 going to be using a simple process where I'm going to outline a

13 question to myself and then try to provide an answer and then

14 maybe later get into narratives, so that if anything is going

15 on, the judge or the prosecution can, in fact, pose an

16 objection or whatever the case may be.

17        So initially I have to ask as a background matter

18 relative to my entire state of mind and what, in fact, I was

19 thinking and what I think.  I would ask you, are you familiar

20 with the *County of Butler versus Governor Wolf* case in 20-CV --

21        MR. ADKINS:  Objection, Your Honor.  I think the

22 Court has ruled that he can't introduce law into his testimony.

23        THE COURT:  Well, he can't introduce -- certainly

24 there are -- so I made some rulings, and I've told Mr.

25 Dougherty what those rulings on are.  I don't know what this

520

1   case -- I'm going to let him keep going, and I will see.  I

2   will interject if I think there's a rule.  But you should feel

3   free to stand and object.  But I want to hear what this

4   particular case is.  Go ahead, Mr. Dougherty.

5           THE WITNESS:  You know, that was a federal case,

6   Western District of Pennsylvania, resolved favorably on

7   9/14/2020 granting a preliminary injunction to the executive

8   orders of Governor Wolf in the State of Pennsylvania.  The

9   answer is, yes, I am familiar with that case.

10          Very simply, I only mention it to bring up the simple

11  fact that the process of litigation in federal courts is not

12  always for money, it can be, in fact, to enforce constitutional

13  rights or say that the governor or the executive, whoever that

14  might be, may have overstepped their bounds.  That's all that

15  is the basis of that.

16          And that point, so you're aware, the Third Circuit

17  put a stay on the preliminary injunction because it was coming

18  right up against the election.  And ultimately, that resulted

19  in -- well, I should say, are you familiar then what was the

20  consequence of that particular stay?

21          And the answer is, yes, the Pennsylvania General

22  Assembly introduced and adopted a constitutional amendment

23  indicating that the disaster relief that had been employed was,

24  in fact, now unconstitutional in Pennsylvania.

25          The idea of making people stop their livelihood, wear

521

1  masks, take vaccinations, that has all been declared

2  unconstitutional now in a joint resolution of May 18th, 2021,

3  public law joint resolution one.

4          MR. ADKINS:  Your Honor, I would object to relevance.

5          THE COURT:  I do think -- so, Mr. Dougherty, the case

6  that you're talking about was decided when?

7          THE WITNESS:  It was decided on September 14th, 2020.

8          THE COURT:  So that's after the charges, right?  It's

9  after the date that you've been charged -- let me take it back.

10  It's after the date of the communications that form the basis

11  of these charges, correct?

12          THE WITNESS:  Um-hum.

13          THE COURT:  Is that right?

14          THE WITNESS:  It is, but --

15          THE COURT:  So then it could not be relevant to your

16  thinking before the date of the communications or on the date

17  of the communications.  So it is irrelevant.  So I'm going to

18  sustain the objection.

19          THE WITNESS:  Okay.  So then moving to the matters

20  directly at hand, just briefly.  Were you present at the first

21  meeting between Keith Dougherty and Special Assistant United

22  States Attorney Jeffrey Finucane?  The answer is, yes, I was.

23          Did you witness him saying the 3/4/19 interview with

24  Christopher Cruz, a Pennsylvania Capitol police officer, was

25  actually a ruse?  Yes.  He was -- he said to me that's what the

522

1   entire process was.

2          He said, could you describe what a ruse is?  Well,

3   the basic premise was that I was being asked to come in under

4   the premise that I was having a police officer investigate

5   crimes that I had alleged against, first, the clerk refusing to

6   act lawfully under 18 U.S.C. 2076, and as a result of that,

7   because the judges were then proceeding after the default

8   should have been entered, technically that would simply be done

9   without what they refer to as tribunal jurisdiction.  And

10  that's what I was expressing to, you know, case agent or

11  whatever he happens to be, Mr. Cruz.

12          And the question then was, the interview itself was,

13  in fact, attended by Christopher Cruz and another individual,

14  an FBI agent.  I later found out through communications

15  yesterday that that same FBI agent was, in fact, the individual

16  who had visited me at the Meadow View property on April 13th,

17  2020.  That interaction between us at the Meadow View property

18  was very, you know, collegial and whatever.

19          Initially, they had indicated they had -- they were

20  there based on the April 7th communication that, in fact,

21  created concerns related to the clerk where I was making these

22  same sort of references and also talking about not that I am

23  saying I'm going to do A, B, or C, but rather if, in fact, we

24  are in a society where no one operates under the rule of law,

25  we do not have a matter of a republic where, you know, we all

1   abide by the laws equally.  Rather, we're all doing our own

2   thing.

3           Ultimately what it will lead to is chaos.  And at

4   that point, you know, in the interview with Chris Cruz, the

5   same FBI agent, and I thought I recognized him from that

6   meeting, who we had all agreed there was nothing in the way of

7   threats or whatever based on my presentation to them that my

8   efforts at that point were backed up by instead of doing

9   anything harmful or trying to threaten or insult anyone, I, in

10  fact, was proceeding to file what is a petition for redress in

11  the District of Columbia.

12          Now the reason I was filing in the District of

13  Columbia because it has a special place in our constitution.

14  If you are going to sue the federal government, and you feel

15  that they have a hometown advantage because, you know, the

16  judges or whatever in your particular location is, in fact,

17  operating with their own customs or if you feel they're not

18  abiding by the procedures, then the District of Columbia was

19  set aside in our constitution to be our neutral site, so you

20  sue the federal government in that case.

21          The concept of that is somewhat obvious, and the

22  supposition of it is that there everybody stands equal, and if

23  you're asking for a federal determination only, there is no

24  state law that interferes.  There is no cross-over.  So you

25  bring an action there, it's strictly for that purpose.

1          The primary request of that action was simply a

2     declaratory judgment action where there's no money damages

3     involved, there's nothing else, but rather to determine what is

4     the actual meaning of the self-representation statute that we

5     have in our law.  And, in fact, if we have a situation where

6     clearly the Third Circuit believes that no business owner can

7     represent his company regardless of what the statute says, that

8     would be the place to take it and get a declaratory judgment

9     action and ruling.

10          Additionally, I had demanded a jury because in that

11     scenario, the fact finding, all fact finding had to be done by

12     a jury rather than a judge who may otherwise be disposed to

13     stick with what is the status quo.  And, in fact, those things

14     were, as I spoke to the two marshals and FBI agent, those

15     things were, in fact, in the mail as we met on April 13th and

16     they would be filed shortly.

17          The development that kind of gets lost in some of the

18     Government's exhibits and reports is, I had mailed that by

19     overnight mail delivery -- excuse me, overnight mail with a

20     signature required to, in fact, make sure that I could track it

21     and know what happened to it.

22          It was, in fact, delivered in a timely fashion, you

23     know, within a day or so.  And, in fact -- it was after the

24     first visit at my home, they left.  And at that point, I am

25     waiting for docket action.  I have a PACER account.  I file,

1  you know, in my tax practice and other things, repeatedly and
2  extensively in federal law.
3          And it's very convenient to have a PACER account.
4  Anyone can have one.  They are no cost unless you overuse them.
5  And even if you do use them significantly, they give you a
6  rather liberal budget where it's totally at no charge.
7          So I'm checking.  It wasn't there.  So at that point,
8  I actually had to drive to Washington, DC, and hand deliver the
9  copy.  That seems to get lost in the Government's
10 representation and report because the case manager down there
11 that actually says when he was followed up with by the lead
12 agent in that one communication, he asked him, what is the
13 status or what is the situation with Mr. Dougherty.
14         He goes, well, he has one active case.  And he cited
15 the number, which is 15-CV-582 in the District Court of
16 Maryland.  And he said, I've spoken to him on the phone, I've
17 received e-mails from him, he's been perfectly, you know,
18 comquat -- I don't know, whatever it is.
19         But then the investigating agent at that point says
20 to him, well, let me know if there's any negative developments,
21 which there never was.  Additionally, that was in response to
22 the actually third contact because it was a phone call that I
23 had made asking him, did you check that out.
24         But at the same time, you know, as you had the postal
25 inspector here appearing for the Government to identify that I

1  dropped some of these communications in the mail and how that

2  all happened, I also filed a complaint with the same postal

3  inspector service.

4          In fact, I wanted to know not just that the document

5  had been received, because I could easily obtain that online, I

6  wanted to know who signed for it.  And it was, in fact, the

7  signature was simply the mail room for the District of Columbia

8  Clerk.  And no name designation.

9          But that document that was mailed never made it into

10 the court docket, the official court docket.  Rather, I had to

11 drive to Washington, DC, hand deliver it, and that's when they

12 initiated the case number and everything started to proceed.

13         At that point, it looks like that was resolved.  No,

14 that's not the point.  The mail had been tampered with.  Now

15 it's not a major deal.  I threw around maybe excessive language

16 saying mail fraud, but there's a statute that says if you delay

17 mail in any way, it's punished by six months in prison.

18         Now in addition to that, because that claim didn't go

19 into the docket, there would also be that same violation that I

20 had Christopher Cruz read to you yesterday, 18 U.S.C. 2076,

21 indicating that if something is required by law to be entered

22 into the docket system, and the clerk either refused --

23 willfully refuses or neglects to do so, it is a crime.

24         Now that is what I'm referring to.  It's a crime

25 punishable by one year.  I find offense when, in fact, what

1  happens, you see a pro se litigant, and you try to delay or

2  dissuade them from proceeding, and that's the entire crux of

3  the matter.  Not to threaten anybody, not to upset anyone.

4          Now in addition to that, I wanted to address one

5  issue that, in fact, was what I thought an honest but yet

6  inappropriate representation of an event that was put forth in

7  those reports that were mentioned, that being that on April

8  30th, Keith Dougherty went to the Middle District of

9  Pennsylvania, this very building, and this was instrumental in

10 the concerns that Chief Conner had because this event was

11 characterized as being somewhat out of control and potentially

12 violent.

13         And if you remember, and I questioned the marshal on

14 it a number of times, that he did not actually see this, he had

15 been told that the event had taken place and how it had taken

16 place.  And the circumstance was that, according to the

17 testimony that I heard, he indicated that I had attempted to

18 make a service, the service was unsuccessful, I got, you know,

19 loud or something to that effect, and had to be escorted from

20 the building when, in fact, in what they were referring to was

21 the attempt to serve the defendants that are in the Middle

22 District of Pennsylvania.

23         Once again, this is not for money, this is not for

24 insult, this is a civil rights action indicating, just as the

25 previous reference, that when you want your government to

1  adhere to the constitution or you feel that they had done

2  something in violation of the constitution with regard to you

3  and your rights, it's actually written right into the pleading

4  requirements of rules, you must give a short plain statement

5  explaining what it is you feel they've done to you.  And then,

6  in fact, you initiate the process.

7          Once again, the simple process is as follows:  You

8  have to file an actual complaint explaining the facts and

9  circumstances where you feel they are violating the law or your

10 constitutional rights.  There's a cover sheet.  You identify

11 what the jurisdictional authority is because federal courts do

12 not have jurisdiction unless it is in a statute itself.  You

13 have to do that.

14         Then you have to pay the fee.  Obviously, I paid the

15 fee even though I was representing myself, I still paid the

16 full fee.  And now you have, in fact, the opportunity to

17 receive a summons if the clerk has, in fact, reviewed and has

18 the bare essentials.  It's no approval that you are doing

19 anything correctly or it's going to go anywhere, but it has to

20 have the bare essentials of who to contact.

21         At that point, the summons is issued.  Then it falls

22 to the Plaintiff to, in fact, make sure at least one Defendant

23 is served.  They have to have a copy of the summons and the

24 complaint.

25         And as you recall with the Government's first

529

1  witness, Mr. Enerson, I had him read into the record the

2  procedure related to Rule 55, that, in fact, if someone has

3  sought affirmative relief against you, and it may only be you

4  want them to define the self-representation statute, the rules

5  of court, whatever they might be, and you indicate as a result

6  of this I've suffered some sort of constitutional wrong, delay,

7  whatever that might be, if you are willing to pay for it, you

8  know, file it.

9          Then at that point, you're seeking affirmative

10  relief.  At that point, they're put on the clock.  There's two

11  different types of defendants.  One is everybody else, state

12  employees, state governments, and everyone else, and federal

13  employees.

14          Federal employees get 60 days to respond, and that is

15  clear in the law.  So at that point, you must effect service.

16  Well, one of the things in service is you're not allowed to do

17  it yourself.  There are certain circumstances where you can,

18  but generally speaking, you can't do it yourself.  You have to

19  have someone who, in fact, is an an adult and not part of the

20  case.

21          In this case that related to that event on April

22  30th, 2015, I had Michael Cobaugh do the service.  So he was

23  the one that actually came into the building, went into the

24  Clerk's office.  I stood out in the hallway by the elevator.

25  And I had given him specific instructions.

1           In Pennsylvania, the rule is that you can serve

2   either a named individual or since there were multiple federal

3   defendants all operating through this office, you could simply

4   serve the person in charge.  He then went ahead and filed, you

5   know, gave the service, did everything, and, in fact, as a

6   result of that, he must fill out a proof of service.

7           And it has to be an affidavit signed under penalty of

8   perjury.  But if, in fact, there is something peculiar like he

9   was not able to effect service, it was unaccepted, it was, you

10  know, whatever he had to take extra efforts, he then must put

11  the additional instructions on the bottom.

12          So I don't know if it will be appropriate, but I

13  would like to read what he wrote.  And then this is a matter of

14  evidence that's been put into the record as Defense Exhibit 6.

15          THE COURT:  All right.  Any objection?

16          MR. ADKINS:  Your Honor, I would object to what he

17  was about to read as hearsay as to the portion of the bottom of

18  page 2.  I think he mentioned the Defendant's Exhibit 6.  I

19  don't think it's yet been admitted into evidence as Defendant's

20  Exhibit 6.

21          THE COURT:  So that's my question.  Is there any

22  objection to Defense Exhibit 6?  And you're saying there is

23  based on hearsay?

24          MR. ADKINS:  Based on hearsay as to the bottom of

25  page 2 of that.

1          THE COURT:  I'm going to overrule that objection, so

2   Defendant's Exhibit 6 is admitted.  And you may publish it or

3   read it, whatever you wish.

4          THE WITNESS:  I'm going to go ahead and read it real

5   quickly.  Again, it's just to address Marshal Hanna's

6   statement.  He was operating on hearsay.  He was told certain

7   events happened.  And, in fact, this is what the actual person

8   who made the service said.

9          Peter Welsh, deputy in charge, was leaving as I

10  arrived.  I served the woman in charge with copies and left.

11  She called the Marshals Service, and they threatened and

12  detained me.  The woman chased me out into the 10th floor

13  hallway and demanded that I take the papers back.  Peter Welsh

14  arrived and had conversations where the marshal asked my name

15  and someone make -- and someone, a male, took the documents

16  back into the Clerk's office.

17         So that then had to be presented and served into the

18  document, the record as it were.  As you can see here, it was

19  mailed to DC -- the District Court of the District of Columbia

20  and received by them on May 20th, 2015.  The people that were

21  served were William Caldwell, Peter Welsh, in this office,

22  Judge Jones, and Magistrate Carlson.

23         So this was not a threat.  This was a

24  constitutionally protected activity.  In fact, it's a simple

25  matter in the same category of a petition for redress.  Now

532

1  again, some people get upset when you bring legal action

2  against them, but many times it is someone that you're just

3  trying to get clarification and bring them into the same

4  understanding that we are all under the law, there is no

5  nobility in this country, and, therefore, everyone has to abide

6  by the rules.

7          And as a result, that handles one of those questions.

8  So now we're back to the simple interview process with Mr.

9  Cruz.  There was some reference made to this, but I will ask

10 you, are you aware that the man who traveled with me into the

11 March 4th, 2019, hearing, is dead, shortly after the Government

12 brought my super indictment 1/28/2020?  The answer is, yes, I

13 am aware.

14          In fact, there's a lot of rhetoric here about threats

15 that, frankly, I totally rejected they were sent with the

16 concept of threatening anyone.  It was sent, whether you call

17 it stark, offensive, rhetorical device to turn around and say

18 basically if, in fact, you continue to operate outside the law

19 simply because you have power, what is a consequence of that

20 are -- is always violence.

21          Everywhere where you hear that this is a democracy,

22 democracies always end violently.  We are, in fact, a republic,

23 compound constitutional republic.  So it's very simple.

24 Everybody stays in their own lane.  Everybody abides by the

25 same rules.

1          Citizens, our clerks, magistrate judges, and

2     governors cannot run around saying, you know, you're going to

3     have to shut your businesses down do, do whatever the case may

4     be.  This is the whole thrust of what I'm been going through.

5          Kenneth Brady actually was a client of mine, became a

6     friend, since about 2001.  Again, a little bit of background on

7     me.  At the time that we met and I became involved with him, I

8     was a certified financial planner.  And, in fact, what that

9     means is, I am specially licensed and qualified to engage in

10    financial advice.

11         Stockbrokers, insurance agents, all kinds of people

12    can charge money for selling you products, but you have to be

13    specially licensed and trained to give people advice about

14    their business.  I met him when I was referred to his home by

15    his health insurance carrier.  And I happened to be licensed in

16    that area.

17         And I was also what is a charter underwriter.  It's a

18    professional designation granted by the Bryn Mawr College,

19    American College of Bryn Mawr, and it's considered the highest

20    professional designation when it comes to dealing with issues

21    surrounding small business owners to give them the kind of

22    protection and tax advantages of things like stock options or

23    whatever because they don't have a large, you know, stock base.

24         And, in fact, you operate through cash value plans

25    inside of insurance envelopes for the same tax benefits that

1  the executives gives.  But the whole thrust of my practice was
2  closely held business owners and the tax benefits and all that
3  can bring.
4         He wound up being involved in one of the cases that
5  has been referenced to, and I don't want to give you too much
6  in the way of details with regard to that, just to bring you up
7  to speed.  I had represented him in that matter.  Then I
8  started with the financial plan for his business.  And lo and
9  behold, in the midst of one of our, you know, handling all of
10 his taxes, these kinds of things, the Cluck U company that he
11 owned a franchise through in Towson, Maryland, had infringed
12 into his territory.
13        He had exclusive territory within Towson, Maryland,
14 three-mail radius.  They indicated that they thought it was a
15 three-mile diameter, and, in fact, a dispute ensued.  As a
16 result of that, it had to go to arbitration.  I represent him
17 against Cluck U, against the largest law firm in the State of
18 Maryland, Piper Rudnick.
19        We prevailed, I was able to get him royalty relief
20 for six months, and a free franchise in Bel Air, Maryland,
21 20-year term with a fixed royalty that had a present value of
22 about 600,000 dollars at the time of calculation.  They also
23 had to pay all of my fees.  And this created great animosity
24 between me and that company going forward.
25        So as that progressed, certain things deteriorated,

535

1  other problems, I'm not going to get into that, and it wound up

2  in a matter where I was representing another Cluck U owner,

3  multiple franchise owner, where he was trying to sell that

4  franchise in College Park to Kenneth Brady and another one of

5  my clients.

6        And I was the one writing the financing.  I happened

7  to own at the time a Pennsylvania securities firm that invested

8  in all of these kinds of complex transactions, and that's what

9  was going on.  As a result of the failing of that particular

10  circumstance, it wound up that the sale, the proposed sale from

11  the individual that was selling to Kenneth Brady and R. Michael

12  Best, who were buying, never materialized.

13        In fact, the attorney representing the franchise

14  faxed the indication that the sale was void, everything was

15  off, we were turning back to the original franchise agreement.

16  And that was Michael Gigliaro.  We went away thinking it was

17  over, our involvement with it was done.

18        Apparently later down the road, there was some

19  developments where Michael Gigliaro is then being sued by the

20  very same franchise company unbeknownst to me.  My securities

21  firm was named as a co-defendant and so was Kenneth Brady.

22  Well, Kenneth Brady was merely a W-2 employee of a corporate

23  entity and he was not properly there.

24        So he had suffered a 769,000 dollar judgment against

25  him by default judgment.  He never showed up, never appeared,

1  and he had no potential of liability.  And he thought when we

2  were going to the interview with Christopher Cruz, we were

3  there because finally the FBI was taking action on some of

4  these delays and allegations, and, therefore, his life was

5  going to be restored to him.

6           All of that was, in fact, a ruse.  A simple

7  situation.  I would have been perfectly comfortable with the

8  idea of being told, you're under investigation for the mailing

9  threatening communications.  That would have been, you know,

10  perfectly fine.  I would have addressed that.

11          But at that point, Kenneth Brady wouldn't have been

12  brought along in the process.  He was so devastated by my

13  indictment thinking there was no hope, he basically drunk

14  himself to death.  So that is a real consequence of someone

15  abusing power and, in fact, you know, that is the kind of thing

16  that I was trying to prevent.

17          That's what I was trying to work against.  And, in

18  fact, predicting that these are the things that happened when

19  government acts in this way.  And that's what the whole

20  communication related to all of these things.

21          So it says, moving onto the next question.  Do you

22  recall if you were present at the October 1st, 2020, status

23  conference?  And the answer is, yes.

24          And it says, do you recall when Jeffrey Finucane

25  stated for the record that he never filed a written objection

537

1  to Keith Dougherty's notice in this case of his intention to

2  use --

3          THE COURT:  Now I'm going to interject.  You're

4  talking about a court hearing?

5          THE WITNESS:  Right.

6          THE COURT:  That occurred in this criminal case?

7          THE WITNESS:  In this case.

8          THE COURT:  After the indictment?

9          THE WITNESS:  After the indictment.

10         THE COURT:  Okay.  So that would have no relevance on

11 the events that are before the jury which relate to the

12 communications that are the subject of the counts.  All right?

13 So we need to move on.

14         THE WITNESS:  That's why I was doing it in the

15 question format.

16         THE COURT:  And that's good, I appreciate that.  So

17 I'm going to require that you not discuss what occurred in any

18 courtroom which has no relevance to the facts of this case.

19         THE WITNESS:  Okay.  Can you describe how a Capitol

20 police officer can present himself as an FBI agent without

21 violating the Commandeering Doctrine set up by the Supreme

22 Court?  I'm assuming that somewhere along the line, Congress

23 authorized a statute because otherwise you have a situation

24 where it specifically prohibits the federal government from

25 telling a state employee to do anything.

1        So I am under the impression there must be some sort

2   of hand and glove arrangement or whatever, but it was never

3   made clear to me, but it does fall into my mindset in terms of

4   what e-mail number 1 is addressing, okay.  I'm there in e-mail

5   number 1 under the false impression that he's actually

6   investigating Peter Welsh and Judge Conti who, in fact, had

7   violated the requirement.

8        So this brings up a second opportunity.  You heard

9   the Government's first witness, Caleb Enerson, indicating that

10  the reason all of these things, you know, Keith Dougherty was

11  vexatious, he does all these things violently, horribly,

12  whatever the characterization was, and, you know, you can rely

13  on your own recollection, that the issue that we return to

14  constantly was someone had not been served correctly.

15       And the question is then, are you, in effect, I took

16  time to have the Government's witness read into the record what

17  the process actually is, that, in fact, the -- just like I

18  outlined in the District of Columbia case, the same thing would

19  have taken place in this case.

20       This case was simply a declaratory judgment action

21  against the Pennsylvania Corporate Net Income Tax and Franchise

22  Department forcing them to officially define corporation for

23  state tax purposes.  And that, you know, relates directly to

24  the one e-mail indicating the bold font in the bottom at 153.1.

25       That statute actually refers to the Pennsylvania

539

1  statute as to who is a taxpayer in that statute.  So kind of an

2  unusual circumstance.  Most times, if you don't owe taxes, you

3  do not have to file a return.  But Pennsylvania has a unique

4  corporate statute that says, no, if you're a corporation or

5  you're included in the definition of corporation, you must

6  file.

7          So that became a specific dispute between me filing a

8  number of those entities.  One client of mine had six of them;

9  another, one or two.  So that's what that was all about, just

10 to get the Government to identify its own statute and authority

11 to make everyone fill out these tax returns.  And you are

12 pretty much aware of it.

13         Now what happened is in listening to the Government's

14 witness, he indicated that this was done by e-mail and it

15 didn't, you know, comport with the rules of service when, in

16 fact, in the Government's exhibit they actually have a copy of

17 the official docket.  I guess that's Exhibit No. 5 or 5-A.  I'm

18 not sure which it is.

19         And, in fact, I had produced the actual documents

20 just like in the Washington, DC, case of 10, 11, and 12,

21 indicating Jared Dupes was served, the Pennsylvania unified

22 judiciary, but all of them must be served through additionally

23 the Attorney General because whenever you're suing an agency in

24 Pennsylvania, unless in a very unique situation, there's a

25 couple of agencies that have their own legal department, you

540

1  must file a copy of the same summons and complaint on the

2  Attorney General's office and, in fact, indicate that they've

3  been put on notice and give a copy of it.

4           That is properly done through certified mail return

5  receipt.  And as I had indicated, that Mr. Enerson seemed to be

6  unaware of, that was effected on August 31st, 2017, for the

7  Pennsylvania Attorney General for the unified judiciary, for

8  Jared Dupes separately.  And then additionally because this

9  declaratory judgment action would define corporations under the

10 state statute that I had referenced, 28 U.S.C. 1652, which all

11 of these civil actions would be governed under the state

12 statute related to this, so, therefore, if I am moving in this

13 court as a civil litigant in a civil rights action or any kind

14 of matter, the definition of corporation would drop back to

15 what is in Pennsylvania.

16          And that definition, except when it comes to federal

17 jurisdiction in diversity cases, it's a completely different

18 definition of what a corporation is, so Pennsylvania has the

19 most expansive definition of corporation that I'm aware of as a

20 financial professional.  And that's what we were looking for.

21          But once the Department of Revenue, who is the chief

22 financial authority in the Commonwealth of Pennsylvania, once

23 they had made an official determination, then, in fact, that

24 would be binding on the federal court system as well.

25          You see many times where the Third Circuit will send

541

1    to the Supreme Court what is called a certified question.  They

2    say, listen, we're addressing something involving Pennsylvania

3    law, could you let us know what this means.  So that's what

4    this was about.

5            No money would change hands from this.  This would

6    just be determining who must file the tax return.  That can be

7    a costly process.  But all of these entities were set up so

8    where they didn't have to.  There is a rewards program for

9    certain individuals working in the collections department and,

10   in fact, this became rather acrimonious, but I'm just

11   presenting this from the standpoint that these are the actual

12   service documents.

13           They would be part of Defense Exhibit 3, 4, and 5.

14   And, in fact, contrary to what you were told by the

15   Government's first exhibit, everything was done correctly.

16   These are the signed affidavits and proofs of service that, in

17   fact, I had directed him to when he read it, if, in fact,

18   affirmative relief has been sought, that is defining for us

19   what is the meaning of corporation under Pennsylvania net

20   income tax and franchise law.  That has no offensive or

21   threatening conduct on anyone.

22           And it is a requirement because of the petition

23   clause, especially under the Pennsylvania law, that you have a

24   right to petition peacefully for redress, agreements, or in

25   this matter.  Now it just so happens, normally there might

542

1  be -- and again, you'll have these to review to confirm what
2  I'm saying.
3           So normally this would be a circumstance where you
4  would say, well, what would you have that or how would you have
5  that reviewed in a federal court even though I was seeking a
6  jury to do the review.  And it's a very unusual circumstance.
7  Pennsylvania's entire chapter says that in everything in the
8  corporate net income franchise tax of the statute, this will be
9  the definition that is applied.
10          And obviously, at, paren, I 1, it says corporation.
11 And that is a given.  You say, well, of course corporation
12 would mean corporation.  But this is where they exceed and
13 change everything compared to the federal ruling on the matter.
14 Double I, paren, it says, joint stock associations.
15          Okay, well, I could see where that would be
16 applicable as well.  But here is the one that applied to me and
17 my clients.  At paren 3, it says, any entity, any entity who
18 for federal income tax purposes is classified as a corporation.
19 Well, that's what we were looking for.
20          So therefore, we had there a circumstance where the
21 complete and total definition, no one should be offended, no
22 one should get upset, that if you were included in that
23 definition, you must fill out the tax return.  If you are not
24 in that definition, you do not need to fill out the tax return.
25          We just were looking for someone to say, no, this is

1  not something that you need to do.  Common circumstance that in

2  a case 2018 in *Dawson versus Steager* in the United States

3  Supreme Court, a similar problem came up in West Virginia.

4          Now it just so happens, you might be interested in

5  this, the entire West Virginia Supreme Court was impeached in

6  2018 for political corruption.

7          THE COURT:  Mr. Dougherty, what happened in West

8  Virginia would have no bearing on this case.  So let's -- and

9  we have to be mindful of the jurors' time.  So let's move onto

10 things that are relevant.

11         THE WITNESS:  Okay.  So the relevance thing is that

12 the statements that were made that this case was not properly

13 served and, therefore, I was being vexatious or whatever

14 indicating that the default had to be entered against the

15 Commonwealth of Pennsylvania, and then when he did not respond,

16 he did enter his appearance, so they could not say he was not

17 aware of it.

18         And at that point, he thought that like Pennsylvania

19 law you have to have what is called a 10-day notice and a

20 warning.  None of that happens in federal court.  This is an

21 adversarial process if, in fact, you choose not to defend,

22 default will be entered against you.  It says that clearly on

23 the statute.

24         If he does then enter an appearance, and then in our

25 conversation refused to work with me to clear up any confusion

544

1    so we could get this thing wrapped up quickly, that is
2    considered a waiver of his rights, and default judgment then
3    can be sought with the clerk.
4           So this is the key element.  If, in fact, the rule
5    one of civil procedure says that all parties are required to
6    cooperate, to achieve the most just, speedy, and inexpensive
7    determination of all matters before the Court, and one of those
8    options happens to be default judgment, well, then you wouldn't
9    have to bother the judge at all.
10          There's no reason to involve them or concern them in
11   any way.  And as a result of that, as I had indicated, I moved
12   for default in that case on September 23rd.  Peter Welsh, one
13   again, refused to enter default.  So this is what I thought I
14   was meeting with Christopher Cruz to talk about.  It's
15   surprising that he is a state agency and doesn't know some of
16   these things where, in fact, he was an FBI agent.  Okay.
17          So moving on.  So the point being in terms of e-mail
18   number 2.  Do you see where someone would object to a capitol
19   police officer pretending to enforce federal law, because
20   that's the circumstance I was operating under, but then objects
21   to a militia acting as a law enforcement authority that is
22   evident in the constitution?
23          So this was the context of my thinking.  At this time
24   when I was communicating with Mr. Cruz, I had no idea that he
25   was, one, investigating me for a crime, which would have been a

1  different matter all together.  I think that he's an FBI agent.

2  And I made a number of references to what is clearly the two

3  most embarrassing events in FBI history.

4         One of them explaining how in a very tragic and

5  dangerous way an FBI sniper shot and killed Vicki Weaver

6  through her window while she was holding her infant child and

7  she fell to the floor.  Well, I believe that to be a horrible

8  event.  But the consequence of it was all the charges were

9  dropped against her husband, Randy Weaver, and ultimately they

10  had to pay the estate 3 million dollars.

11         So I was making the reference to him because I wanted

12  to see this move along, get to where it needed to be, and I

13  said, to operate in this way, this blatant disregard, it winds

14  up with violence and people threatening one another, and before

15  you know it, it results in a situation like in the case of

16  Weaver where the sniper shot her.

17         And the prosecutor was so outraged some five years

18  later, he, in fact, charged the sniper with manslaughter, an

19  FBI employee.  Well, at that point, being aware of the

20  circumstances, all the charges had to be dropped against the

21  sniper because of Federal Rule of Official Authority 12.3.

22  That's what the reference is in the e-mail where I say 12.3.

23         And we don't want that.  That's not what we want.  We

24  want you to move along, get this done, just go make the

25  presentation to a grand jury that, in fact, you know the

546

1    accusation is that Keith Dougherty sought default, Peter Welsh
2    refused, this was in a, I'm going to say, maybe the 20th time
3    this had happened, and all of these cases were just backing up
4    getting more and more time consuming and whatever.
5          So I think I'm talking in a confidential way, someone
6    acting on behalf of my request as a citizen, to investigate
7    criminal conduct being engaged in by the clerk, and then beyond
8    that, they wind up transferring the case out of the district.
9    And you heard Judge Conner say that they do this pro forma or
10   whatever.
11         THE COURT:  All right.  So I just want to take -- I
12   think -- I'm going to ask you all to stand up just to take a
13   break.  This has been going on for a long time, and I just want
14   to make sure everybody is attentive, okay.  I thought I might
15   have saw a couple of you nodding off, and I want to make sure
16   -- and I understand it can be difficult.
17         (Jurors stood up momentarily.)
18         THE COURT:  All right, have a seat.  All right, Mr.
19   Dougherty, you can pick up.
20         THE WITNESS:  So in any event, speaking to the mind
21   set, that's what I thought.  Now looking back now, I know it's
22   completely wrong.  But if, in fact, I was communicating with
23   someone in a confidential way, again with the privacy banner
24   across the bottom indicating this communication is privileged,
25   do not be leaking this out or sending it anywhere, I would

1  suggest if you made those kinds of outrageous analyses that

2  20th highjacker, shooting judges in the head, shooting anyone

3  in the head, all right, specifically a mother holding her child

4  who is no threat to anyone, we wouldn't want to get to a point

5  where the only way to resolve things is through violence and

6  then it winds up someone making some sort of claim of immunity

7  or whatever the case may be.

8         I was not suggesting in any way that if you don't go

9  ahead and charge them with a crime, I'm going to wind up

10 shooting Judge Conti in the head.  I formally believe, still

11 believe to this very day, that Judge Conti had no tribunal

12 jurisdiction.  In other words, our system is very clear.

13        And it was a Supreme Court case recently, one of the

14 numerous cases written by Justice Ginsburg, I do not disagree

15 with her politics any more.  But the truth of the matter is she

16 has written more unanimous opinions on this subject, how

17 authority is transferred from one court to another, how to

18 proceed, what is timely, what is not, and it's unambiguous.

19        She says in the one case that I asked Judge Conner

20 about, and he didn't seem to be familiar with, that you can

21 attack tribunal jurisdiction at any time in the litigation.

22 Any time -- and that has no bearing on whether you have a

23 subject matter transfer.

24        And, in fact, the uniqueness of that opinion was even

25 if you conceded that the Court does have subject matter

548

1  jurisdiction, that you can challenge that they had tribunal

2  jurisdiction.  So to sum up this subject, in all of these cases

3  that everyone says were voluminous, problematic, whatever the

4  case may be, it's very simple; that if you move for default

5  properly, the clerk must enter default.

6          If at that point the Defendant, whoever that

7  Defendant might be, does not respond properly, as I had Enerson

8  read into the record, even if you enter default, it's a simple

9  and ministerial circumstance, there's no definite consequence

10 to that, you just are in default, and then at that point the

11 only thing is that you've waived objection to anyone bringing

12 up 12B2, 12B3, 12B4, 12B5.  They cannot bring those up.

13         So when Judge Conti was sending me show cause orders

14 about how did you serve them, and it was already in the docket,

15 I would say, what's going on here.  And then secondarily, if,

16 in fact, I had moved for default, which it doesn't say you must

17 go ask the judge, you must do some sort of proper procedure, it

18 says, if you are suing them for affirmative relief, declaratory

19 judgment, and that Defendant has failed to appear and defend,

20 it's not just enter appearance, you have to actually file a

21 document to defend yourself, and that failure can be made by

22 affidavit or otherwise.

23         And I had Caleb Enerson say, how do you define or

24 otherwise?  He said, well, it could be various.  Again, it's

25 any way you want to.  But the point is each of these Defendants

1  had been served, including the civil docket -- or civil

2  attorney representing the United States.  They had all been

3  served on that day by certified mail return service.

4          Well, then the clerk must enter default.  And at that

5  point, there's only one option for the Defendants.  They are

6  required to know that at that point, that even if the clerk has

7  not entered default, they are required to enter a 55(C) with

8  any defense whatsoever.

9          So if they say, well, you know, he's wrong, it's not

10 us, whatever the case may be, the Court must then open the

11 default and the case proceeds.  So it's there to speed things

12 along.  And again, the circumstance being that they, in fact,

13 transferred the case some significant period of time after

14 default was sought to Judge Conti in the Western District of

15 Pennsylvania, and the first thing she does is ask me to explain

16 how they were served.

17         And apparently, yesterday -- or excuse me, the other

18 day, whenever it was, the Government's witness indicates that

19 service was improper.  So this is here for you to review so you

20 can attest to the credibility of the witness, did they tell you

21 the truth about what that was and all that elaborate discussion

22 about how I was inappropriately conducting myself or something,

23 you can determine for yourself.

24         Additionally, you know, at my sitting, I have looked

25 at the Government's Exhibit No. 5, and it stopped at April 13th

1  of 2019, I think it was.  And I had standby counsel do me the

2  great favor of printing up a docket.  And I just wanted to

3  point out for you that as of May 16th, 2019, in ECF 203, Judge

4  Conti recused herself from the case.  So she's no longer

5  involved.

6          And the case, you know, had been active all that

7  time.  I don't know what he was referring to.  I don't know why

8  he would have made those statements.  But you can assess the

9  credibility of that situation for yourself.  You have the facts

10  there in record to prove that.  Okay.  And again, I had already

11  gone over the unsuccessful service.  Yes.

12          Question, would it surprise you that there was no

13  potential money damages for the federal courts or employees?

14  No, because what I was complaining about was we have to get to

15  the rules.  It can't be a situation where a litigant has

16  constitutional protections, they have rights of due process,

17  they are entitled to equal and fair protection, but only if

18  you're hiring an attorney.

19          And this is bringing us to a good circumstance in the

20  mindset of what triggered the letter written to Judge Conner.

21  We have a situation there where, again, they're talking about

22  potential threats.  At this point, because of these delays and

23  certain factors, Kenneth Brady's mother had passed away, you

24  know, stress-related heart attack as far as I'm concerned.  And

25  there was other things that we won't get into.  So Jean Brady

 1  was dead.

 2          And then after that, another client had a

 3  circumstance where I was representing them in a simple scenario

 4  involving debt collection.  And that was the case that I was

 5  questioning Chief Conner about.  Now in that case, unlike these

 6  others, no one disputes that service was done correctly.

 7          What many people, you may or may not be aware of, the

 8  individual that I was suing was Carlisle Tire and Wheel

 9  company.  In fact, the defense for that firm thought,

10  improperly, that the federal jurisdiction would be disqualified

11  because they thought the company was, in fact, a citizen of

12  Pennsylvania.

13          And again, that unusual scenario with regard to

14  corporate structure and federal law is very clear.  They, in

15  fact, were owned by a Delaware corporation, and I had arranged

16  for their service in Delaware at their service agent.  And they

17  had been properly served.  So at that point, at the

18  appropriate, time I had moved for default.  It was a simple

19  debt collection case where, in fact, I was --

20          THE COURT:  All right, we've been going on a lot.  I

21  don't think it's even disputed that you believe that the Clerk

22  of this Court did not follow Rule 55.

23          THE WITNESS:  Right.

24          THE COURT:  All right.  So now you're talking about

25  another case apparently.  I don't even know if it's in this

 1  district.  But there's a rule of evidence, it's called 403.

 2          THE WITNESS:  Right.

 3          THE COURT:  And it asks the Court, it requires me,

 4  the judge, to weigh what's called the probative value, which is

 5  how probative, how much proof does it offer against other

 6  considerations.  Some of those considerations are unfair

 7  prejudice to the other side.  I don't think that's at issue.

 8          But others are, is it duplicative, is the testimony a

 9  waste of time, and how much time does it take.  And so I think

10  I need to ask you to move on.

11          THE WITNESS:  Okay.

12          THE COURT:  Because this just seems like you're

13  repeating the Rule 55 issue.  Now if I'm wrong, and you can

14  quickly disabuse me of that, go ahead.

15          THE WITNESS:  Yes.

16          THE COURT:  But if we are just talking about another

17  instance where a Clerk of a Court did not follow Rule 55, I

18  think that's been established.  And I don't even think it's in

19  dispute what you think about that.

20          THE WITNESS:  The point of referencing that case

21  specifically was Judge Conner, that was the first case that he

22  was representing for me, and the fact that how and why it was

23  transferred out.  And --

24          THE COURT:  Okay.  So I think it's also undisputed

25  that you did not think the transfers were right.  That's how I

1   understand it.  So let's just be mindful.  I mean, we want to

2   -- I do have to impose some time restrictions.

3            THE WITNESS:  Yeah, I thought we discussed that I

4   would be done by lunch.

5            THE COURT:  Well, no, we still don't want to just

6   duplicate.  You're repeating yourself time and time again.  At

7   some point, that has to stop.  Okay?  Let's be mindful of that.

8            THE WITNESS:  Certainly.  So the point being that

9   where Chief Conner had indicated or actually Judge Conner now

10  had indicated that he was just following through with something

11  that had been established earlier.  Anyhow, just a quick side

12  note.

13           Related to the case that the Government's attorney

14  was explaining, that originally was assigned when, in fact, it

15  was filed back in August of 2017 was originally assigned to

16  former Chief Judge Kane, the same judge that Chief Judge --

17  excuse me, former Chief Judge Conner indicated was the one who

18  established this policy taking every case that belonged to

19  Keith Dougherty and transferring it multiple times to which I

20  made clear I believe is unconstitutional and certainly unfair.

21           So that's the circumstance there being a different

22  presentation than what we're talking about here, no one

23  disputes that service was done correctly.  We're still saying

24  in that document, however, that it was a proper representation

25  of default.

554

1          Ultimately, this is where, once again, we have a

2   senior judge brought in from Baltimore across Circuit

3   boundaries.  As Judge Conner had said in his testimony, that

4   can only be done with the direct request of, one, the Chief

5   Judge of the Circuit, and, two, it takes approval by the

6   Supreme Court.

7          So at that point, if you look at the way, and there's

8   all the documents were available, we don't have to go into it

9   much further than this, that they always had a different clerk

10  authorizing it in the Supreme Court, so that no one would

11  supposedly notice it's the same judge being assigned over and

12  over.

13         And that was the question I brought up with Judge

14  Conner, that did he feel that that was not a due process

15  violation under what was *Marshall v. Jerrico* where you are

16  entitled to an impartial and disinterested tribunal who is

17  qualified to make any rulings so that you can feel within our

18  system that, you know, that you've been fairly dealt with.

19         And the answer is, that's the only suggestion and

20  circumstance involving the referencing of that case, which then

21  brings us to the threatening letter or e-mail, I should say, of

22  January 22nd.  Apparently in this particular e-mail, and this

23  is what I was specifically indicted for, I was once again

24  moving at that point, assuming and conceding that I had been

25  indicted, I believe improperly.

1            And, in fact, I'll be making more of that in my

2    closing.  But the matter was, that still didn't resolve any of

3    these cases.  We couldn't allow the criminal case to interfere

4    with the civil matters that were pending.  In fact, I had

5    indicated at my initial appearance the Government's stand-in

6    representative was AUSA Ibrahim in Delaware because of the

7    conflict that the Government had determined.

8            And the first thing that he did was move for a stay

9    in these proceedings.  I said, I -- I didn't even have to raise

10   an objection, I should say.  The magistrate from Delaware

11   indicated, well, that would violate his constitutional

12   protections, we can't do that.  And, in fact, that's what I was

13   talking about in this letter to the very same Jeffrey Finucane,

14   who was not at the initial appearance.

15           And I'm saying like, okay, I understand what you're

16   accusing me of, you're indicating that I purposely sent these

17   things to threaten someone, and you think that I'm making an

18   inappropriate reference to a number of -- I'll even concede

19   that the letter to Judge Conner was, in fact, at points vulgar

20   or whatever, but he did correctly assess what my method was in

21   that particular circumstance, in staccato fashion going from

22   this issue to that issue to that issue.

23           Simple snippets utilizing Wikipedia articles, talking

24   on the subject, exactly what I was saying, not my words,

25   someone else's words, reaching the same circumstance, and

1  consequently I was saying to them the danger involved in doing

2  this simply because you have the power to do so leads to the

3  circumstance.

4         And, in fact, in the one -- the first e-mail to AUSA

5  -- excuse me, the Capitol Police Officer Cruz, I indicate, you

6  do not have any DACA discretion.  DACA discretion, I'm assuming

7  I'm talking to someone who's familiar, you know, knows what

8  that reference is.  Very simply, it was determined that the

9  immigration service doesn't have unlimited resources,

10  therefore, they could decide to lowerly classify, deferred

11  action children arrivals and not, you know, pursue them.  And

12  that became a widespread controversy.

13         And the point is, I was making reference, again,

14  using some of these code words or bullet points assuming that

15  the audience that I'm speaking to is, you know, fully aware of

16  all of these things, bringing us back to the Count 4 e-mail

17  where, in fact, it says the crux of the matter is Keith

18  Dougherty avers, which that's a legal term, in other words, I

19  would say, I would be willing to make a legal argument in

20  court, that he could shoot Judge Conti in the head and claim

21  necessity under Pennsylvania's Discretionary Deadly Force

22  Doctrine.

23         This is not to suggest that I'm advocating for

24  someone shooting someone or doing whatever, I'm saying, you

25  can't continue to do nothing and pretend you're looking into

1  things.  Years go by.  People are dying.  Which brings me back
2  to the frustration related to this last e-mail that I was, in
3  fact, reminiscing on, as I was talking relative to the other
4  party involved in this, what happened to be the United States
5  Attorney for the Middle District of Pennsylvania, David Freed.
6          I first encountered him when he was the elected
7  District Attorney for Cumberland County, representing Larry
8  Runk, in a matter involving a disavowed insurance claim.  And
9  again, it was a declaratory judgment action filed in the court
10 to determine was his insurance claim valid and, in fact, should
11 he be paid.
12         But we're not threatening anyone.  We're not looking
13 to offend anyone.  It's a matter where a judge takes a look at
14 the policy, takes a look at the claim, and then says, no, I'm
15 sorry, you're not entitled, the contract is clear, that's not
16 covered; or, on the other side, well, yeah, that is covered.
17         Now it just so happened in that case, it was the
18 strategy I employed because under Pennsylvania's law there was
19 no way for what he had done to not be covered by the insurance.
20 It had to be covered by the insurance.  So the crux of the
21 matter was in that instance, he was being charged with
22 insurance fraud because he had submitted a claim.
23         So without getting into the legal issues, I was the
24 assignee of the insurance claim and filed in civil court the
25 way you're supposed to, and the consequence of that would have

558

1  been had my reading of it been correct, the charges against my

2  client would have had to have been dropped because there was no

3  way for it to be insurance fraud.

4          It was a valid insurance claim covered by the policy.

5  And this created a significant length of time where Larry Runk,

6  a client of mine, I had lent him 18,500 dollars to pay his real

7  estate taxes.  He was basically land wealthy and cash poor at

8  that moment.

9          MR. ADKINS:  Your Honor, I think --

10          THE COURT:  Yeah, I'm gonna --

11          MR. ADKINS:  I'm just not clear whether this case

12  he's talking about, if Judge Conti was on that case or not.

13          THE COURT:  Well, I'm not clear at all.

14          THE WITNESS:  Let me just clarify the details.

15          THE COURT:  You need to quickly, because this has

16  really gone on.  You need to quickly explain how, if at all,

17  this is relevant to the communications that are at issue in

18  this case.

19          THE WITNESS:  Yes.  To my mindset, this incident

20  wound up causing the death of Sara Runk because it wasn't

21  properly resolved in a timely fashion.  Then my client, Larry

22  Runk, then having lost heart, stopped taking his medicine and

23  died six months later.

24          So these things are all related to my mindset that I

25  feel that me and my clients are being victimized because of a

559

1   desire to do things in their own little way within their

2   enclave, and it was within the Middle District of Pennsylvania.

3            Now fortunately, David Freed, after reviewing all of

4   this stuff -- and that insurance claim is still open -- thought

5   better of it and had my client simply sign an agreement to go

6   on probation without admitting or entering any plea, whatever.

7            So these are the things that I'm talking about.  And

8   you heard Judge Conner say that the proper procedure in light

9   of these circumstances was to file a judicial misconduct and

10  disability act claim.  And as you'll see on the Government's

11  Exhibit 4-A, page 14, 15, this is a direct reproduction of what

12  the consequence or the outcome of that judicial misconduct and

13  disability claim action that was recommended by Judge Conner

14  is.

15           And it basically goes back to the same thing I said

16  to you in my opening.  These cases, all of them, are about one

17  thing.  They don't want Keith Dougherty to appear in any court

18  pro se.  So those circumstances, and I just want to wrap up

19  here real quickly, that I am operating from the standpoint that

20  I was talking to an FBI agent familiar with the devastating

21  consequences of certain improper decisions and that I thought I

22  was talking in a confidential way in a rhetorical, maybe

23  over-the-top way that if you don't do something, there is

24  always bad consequences in the end.

25           And in my case, I have five dead clients, and they're

1  saying that I had purposely tried to threaten judges to do

2  something about this.  No, I said in my presentation the judges

3  are not even supposed to be involved because the clerks had, in

4  fact, been operating.  And I was trying to find out who is

5  doing this, who is allowing this.

6          And again, the lawsuit in the District of Columbia

7  was a declaratory judgment action to find and get a ruling that

8  this Rule 55(a), Rule 55(b) are, in fact, mandatory claims

9  processing rules, they are not discretionary.  And when it says

10  the clerk must enter default, they must.  Otherwise, it's a

11  crime.

12          So it then had gotten to the point for the first time

13  in all these years I had said, okay, now the only thing we can

14  do now is go forward with a crime and maybe we'll get action

15  from the clerk.  So it just so happens at that interview that

16  was a ruse, and I admit that at this point, I didn't know at

17  the time, the FBI agent sitting next to Christopher Cruz

18  interrupts two different times.

19          Once he says to me, well, you're just trying to get

20  your cases moved along.  I said, exactly.  So as to the mindset

21  of me in my communication after this ruse, the FBI agent spoke

22  to that it was me simply trying to move the case along, get a

23  resolution, so at least we have one issue out of the way before

24  something worse happens.  That was correct.

25          Later on in the process, I went over for detail the

1  first time because he had met me, like I said, on my front lawn

2  on April 13th, 2015.  He then says, who enforces this law, this

3  law against -- and he jumps up in the video, completely

4  unsolicited, and I was taken aback.  I'm like, okay, I thought

5  you did, you're the FBI.  I thought you enforced federal

6  crimes.

7          But when asking Christopher Cruz yesterday, he was

8  blank on the subject because, in fact, he's not a federal

9  investigator, he's a state investigator only looking at what is

10  potential threats, I'm assuming, but I would say that none of

11  this is threats.

12         This is -- maybe this is offensive rhetoric, and I

13  would suggest that contrary to other circumstances, I took the

14  care of saying this is not for public production, this is not

15  for children to be reviewing, there's no way this is going to

16  be on the internet, there is no way that this is being

17  disseminated to anyone.

18         This is me talking to you in a very real and frank

19  fashion that what you are doing is ruining people's lives and,

20  in fact, I have five dead clients and, in fact, I need

21  resolution.  We need to move forward.  Even if you are going to

22  prosecute me, let's just go ahead with the civil case when it

23  comes to item number 4.

24         Otherwise, it looks like I must be out of my mind

25  that I would be sending threatening communications to a

562

1   prosecutor who is investigating me.  And I indicated to him,

2   like I said, and I'll be making that in a different format,

3   what my impression of these indictments are.

4        I understand, you don't like the vulgarness of them,

5   you don't like the rhetoric, the implied reasoning, but this

6   was not anything like the statute was intended to prevent where

7   you are making a real threat on a person, which brings me to

8   the circumstance that I had tried to address a little bit with

9   Judge Conner.

10        In that when you are talking to the chief executive

11   officer of a corporation or, in fact, a government agency, they

12   have special protections and authorities.  I was not looking

13   for him to go into the case and do anything.  I was looking at

14   him as the executive who was in charge of the rule making

15   process whereas I had indicated and had so in the, bankruptcy

16   court, which brings us to the other attachment that I presented

17   related to the 2004 Chapter 13 filing.

18        After going back and forth, filing pro se in the

19   bankruptcy court 2014 with a Chapter 13 filing, I had turned

20   over to them the debt collection contracts worth millions of

21   dollars.  At that point what happens is, you are going into

22   personal bankruptcy, you must give them all the assets that you

23   have.

24        You give it to the trustee, the trustee then takes

25   and collects the money and disseminates it to everyone in the

563

1  debt class appropriate.  And it would have been more than

2  enough to pay for the homes, the credit cards, whatever the

3  case may be.

4         But once again, through some back door interaction

5  that I'm still not completely clear on, Chief Judge France of

6  the bankruptcy court dismissed the filing.  So I filed it a

7  second time with the concept being, look, if, in fact, they're

8  angry with me presenting or appearing pro se collecting this

9  money, you go ahead and collect it.

10        And, in fact, everyone will get paid, everyone will

11 be fully, you know, verified, whatever.  And again, it was

12 dismissed a second time.  Shortly after that, Chief Judge

13 France retired.  But in the process of complaining about the

14 rules with the bankruptcy court, they, in fact, did modify

15 their local rules procedure.  And they're the only court in the

16 Third Circuit that's fully compliant with local rules

17 procedures.

18        So in my letter to Judge Conner as the chief

19 executive indicating that he's a lead on the executive rules

20 committee, I'm saying to him, what you need to do is put into

21 your rules that when these things happen, they are to comply

22 with the process.

23        And if, in fact, you are going to make rules that

24 deviate from the national rules, the first thing you must do is

25 publish the rules for public review and open comment.  That's

564

1   what it was all about.

2          And I was getting fed up and frustrated with him

3   personally because he was the one that wound up transferring

4   five of my cases in a row to one senior judge from Baltimore

5   who made one excuse after another indicating Keith Dougherty

6   cannot represent himself, his companies, his contracts, and, in

7   fact, trying to do basically evict me from my profession.

8          So I'm not saying that these comments and statements

9   were meant to be, you know, a joke, some sort of, you know,

10  whatever, but the point was, in my mind, I am speaking to Judge

11  Conner as his executive committee position as related to what

12  he needs to do in processing the crimes beneath him.

13         And as far as to the state courts, we rely on the

14  federal courts to enforce the republican form of government.

15  It's written right into the federal constitution.  Article IV,

16  Section 4, says that each citizen of each state will be

17  guaranteed a republican form of government, which means judges

18  are judges, executives are executives, and legislators are

19  legislators.

20         And this was a simple scenario one time after another

21  where we were trying to prevent Keith Dougherty from appearing

22  and/or getting paid in these matters.  So I cannot say strongly

23  enough that I was under the impression in the first, you know,

24  indictment, that it was, in fact, a petition for redress as

25  protected.

565

1          So just summing up in that area, I was operating

2   under the impression that in a case, the most famous threat

3   case in our country's history, it was a case called *Watts*.  And

4   he had been drafted into the Vietnam War as a black man, and he

5   did not want to be in a situation --

6          MR. ADKINS:  Your Honor, I would object.  I think

7   this is a little bit of argument.

8          THE COURT:  Right, okay.

9          THE WITNESS:  Argument?

10          THE COURT:  Well, you were getting into a legal

11   discussion.  And, of course, the law is defined by the Court

12   not by you.  And so I don't understand what you are doing.

13          THE WITNESS:  I'm trying to set my mindset as to what

14   my communication being constitutionally protected with regard

15   to Judge Conner.  And that's what -- that was a petition for

16   redress in the same way that *Watts* was protected.

17          THE COURT:  Right.  Whether or not your communication

18   is protected by the constitution is a determination that's made

19   by a judge.  Right?

20          THE WITNESS:  Right.

21          THE COURT:  Right.

22          THE WITNESS:  So my subjective intent though was that

23   I was under the impression it was in the form of a petition for

24   redress to the executive not --

25          THE COURT:  And -- but the question is whether or not

566

1  it's a threatening petition.

2           THE WITNESS:  Again, I imagine that's going to be --

3           THE COURT:  That's what the jury will decide.

4           THE WITNESS:  Yes, that's fine.

5           THE COURT:  And if you want to, and you have already

6  testified about that, you may testify about that.

7           THE WITNESS:  So that's -- that is the only reason

8  I'm testifying about the *Watts* case or explaining it is because

9  he in an over --

10          MR. ADKINS:  Your Honor, I would object again.  I

11 think, as you stated, you instruct the jury on the law later in

12 the case.  I think he's attempting to instruct the jury on the

13 law as it pertains to the *Watts* case and what a threat is and

14 how it's communicated and how that would apply to his case.

15 That's not going to be what the Court is going to address with

16 the jury.

17          THE COURT:  That's true.  And I'm trying to give Mr.

18 Dougherty essentially as much freedom as I can to let him tell

19 his side of the story.  The law does not permit a person to

20 threaten a judge.

21          THE WITNESS:  No.  I'm not suggesting it does.

22          THE COURT:  I'm going to give you a little bit of

23 room here.

24          THE WITNESS:  Okay.

25          THE COURT:  But you're running the risk I will

1   interrupt you and tell the jury that you're incorrectly

2   interpreting *Watts*.   *Watts* doesn't stand for that.   Right?

3           THE WITNESS:   From a factual standpoint, I was trying

4   to get to what happened in *Watts* to then explain what my

5   mindset was in the letter that I sent, not that it is --

6   political speech is not a petition, I'm not saying that.

7           THE COURT:   So the question is not whether you

8   thought the letter was lawful or unlawful.   The question is

9   whether you thought it contained a threat, what your intent was

10   in sending it.   You can testify about those matters.

11           THE WITNESS:   Okay.   So I wasn't intentionally

12   sending a threat to anyone.   And, in fact, I thought it had

13   greater protections because who I was sending it to.   And it

14   was a closed audience.   It would have been an appropriate -- an

15   inappropriate thing to be discussing in any kind of chat room

16   or public forum or whatever because it can be misconstrued and

17   treated as though it was some, you know, statement of approval

18   or I'm advocating this.

19           I'm simply in the circumstance going through the

20   documents and the bullet points in a staccato fashion, just as

21   Judge Conner said.   And I indicated, yes, I have taken the time

22   to establish a militia, but my militia, if you look at the

23   corporate charter, is for the preservation of the common law,

24   both the English common law that we adopted into the

25   constitution of Pennsylvania, and then all of the things that

568

 1   are amended over time because of being obsolete in what is

 2   contained in the Pennsylvania common law.

 3           And it's still current and proper today.  And I see

 4   them as the core of both the United States Constitution and the

 5   Pennsylvania Constitution, and that's what I'm talking about

 6   referencing the common law, the militias, the different things.

 7           But I equate the concept of militia with

 8   organizations like the NAACP.  They are there to advocate for

 9   their members in a petition for redress format just like

10   Citizens United.  And that is the basis of the nonprofit that

11   I've sent, and it's clearly stated.

12           It has nothing to do with sovereign citizen or

13   whatever.  It has to do with protecting the common law as the

14   core of our constitutions and our compound constitution

15   republic.  That is what I was referring to.  I'm not indicating

16   I wasn't angered by the fact that there's unending delay by

17   whatever.

18           So then the one last issue, there was a statement

19   made by the Government's attorney related to there's been no

20   success in these filings.  The only case, which happens to date

21   back quite a way, that ever got to an adjudication in any of

22   these cases was the matter of *Keith Dougherty versus Hopewell*

23   *Township* involving a takings claim.  And, in fact, that case

24   was successful.

25           It was presented initially by the clerk, again, of

1   the Third Circuit Court of Appeals that because Keith Dougherty

2   Insurance Consulting and Docson Consulting, LLC, were

3   companies, they had to be represented by an attorney at law;

4   otherwise, the jurisdiction of the court would be denied.

5           I filed a motion and brief, and then I also filed a

6   preliminary injunction to stay the foreclosure of the

7   investment property down in York County.  That order was

8   granted by Judges Barry and Fisher, who I don't know if they're

9   -- in fact, I believe Judge Barry is no longer on the court.

10  She is the sister of Donald Trump.

11          And, in fact, that is where I'm making the reference

12  in e-mail number 4, Government's document 4-A.  I make

13  reference to *Wilson versus Sellers* precedent.  What that means

14  is, if you had a situation --

15          MR. ADKINS:  Objection, Your Honor.  He's talking

16  about some precedent in another case and his interpretation of

17  what that case may be.

18          THE COURT:  Is the precedent in the letter?  Is it

19  listed?

20          THE WITNESS:  Yes.

21          THE COURT:  Okay, I'm going to let him explain what's

22  in the letter.

23          THE WITNESS:  Yes.  So that's what I was referring

24  to, nothing else.  That the proper way to proceed, that's in

25  the e-mail here, is, if, in fact, you have a situation where

1  you keep getting things dismissed, dismissed, per curiam, or

2  it's rubber stamped, we're dismissing it for this, whatever,

3  and you're making then a constitutional challenge, in this

4  particular instance, it was a habeas petition that is also a

5  civil pleading complaining of constitutional wrongs, then what

6  the Court is required to do is look back to the last time you

7  had a valid opinion, when was something actually written that

8  addressed the concerns or questions.

9          And it was in the case of Keith Dougherty versus the

10 township issued on August 5th, 2011, indicating Keith Dougherty

11 will be permitted to file a brief on behalf of both entities

12 and, in fact, proceed accordingly.  That then triggered the

13 events that all fell out of control after that point.

14         That was where former Chief McKee arranged former

15 Chief Sirica, future Chief Smith, and future Chief Chagares to

16 join the panel.  Nothing wrong with that.  But then the rule

17 also, as I had read into the record, was that you must then

18 also randomly assign the cases.

19         But, in fact, in violation of my constitutional

20 protections, they constantly take two or more cases and assign

21 it to a single judge.  Then at that point they said, in

22 rethinking what happened, we don't need briefing, we know what

23 we're going to do.

24         And at that point, the cases were dismissed and, in

25 fact, that's when certain of the appeals went further.

1   Unfortunately in this Circuit, as in the case in the threat

2   letter, one, I make reference to a very famous case in this

3   Circuit that was -- it began in 1996.  He wins on the issues in

4   2011, December of 2011.

5          By the time he goes back to court now to get paid,

6   just compensation, he's entitled to payment, according to the

7   Court of Appeals, they then turn around and say, well, you

8   know, actually you made a mistake procedurally back when you

9   originally filed, and he loses in 2016.

10          So you're in this circumstance where, in fact, for

11   whatever reason, these matters take 20 years to resolve.  And I

12   was trying to fight my way through that as quickly as possible,

13   not threatening to do harm to anyone.

14          But I really felt when I finally had that appearance

15   with what was falsely presented as an FBI agent looking into my

16   claims, I was talking in a closed environment and indicating

17   these things not in the form of threatening anyone, but say

18   like these horrible things that can happen, actually had

19   happened to me with five of my clients, in fact, passing away

20   during this process from one sort of stress-related event on

21   top of another where all of the money and the assets are tied

22   up.

23          I have no, you know, desire to, in fact, offend

24   anyone.  But, yes, I was trying to force progress on the cases

25   and in accordance with what I saw as the law.  But I was

572

1   perfectly willing for a jury to determine what is the law
2   related to must clerks enter default, must, you know, the
3   courts entertain pleadings when the individual is represented,
4   you know, either by himself or some sort of financial
5   circumstance, especially in my case where I'm licensed to
6   appear before the Internal Revenue Service and in United States
7   Tax Court where I have a perfect record.
8           And I've represented people all the way into
9   Washington, DC.  And this, it says right in the court rules
10  that, in fact, certain accountants are admitted.  And in my
11  case, I was an enrolled agent.  So that is my understanding of
12  what I was doing.  And, in fact,, I would wrap up my testimony
13  to that effect.
14          THE COURT:  All right, thank you.  Now do you want to
15  move into admission into evidence, could you just please list
16  the names of the exhibits, the exhibit numbers?
17          THE WITNESS:  Yes, the exhibit numbers I'd like to
18  submit are 3, 4, 5, and 6.
19          THE COURT:  Okay.  And no objection, correct?  Other
20  than you had a hearsay objection, which I overruled.
21          MR. ADKINS:  Your Honor, maybe if I could just
22  clarify which one is 3 and which one is 4?  That's the only
23  thing I just need some clarification on.
24          THE COURT:  Do you want to take a break, and then
25  we'll come back for cross examination?  All right.  And I think

573

1  I rushed your breaks.  Do you want 15?  Is that what I

2  understand?  Is that better?  All right.

3          Well, put it this way.  We'll look for your cue.  The

4  deputy clerk will talk, and we'll come back when you're ready.

5  All right?  Thank you very much.

6          COURTROOM DEPUTY:  All rise.

7          THE COURT:  Remember still don't talk about the case

8  until you start to deliberate.

9          (Jury left for a recess at 10:50 a.m.)

10          THE COURT:  Let's just make sure we got the exhibits.

11 Are we good?

12          MR. ADKINS:  Yeah, thank you, Your Honor.

13          THE COURT:  Do you want to take a bathroom break?

14          MR. DOUGHERTY:  Yes.

15          THE COURT:  Why don't you take like 10 minutes or so.

16 All right.  Thank you.

17          COURTROOM DEPUTY:  All rise.

18          (Recess was taken at 10:51 a.m. and proceeding

19           reconvened at 11:08 a.m.; without the jury.)

20          THE COURT:  You all ready?

21          (Jury was brought in at 11:10 a.m.)

22                    **CROSS EXAMINATION**

23 BY MR. ADKINS:

24 Q.  Mr. Dougherty, I first want to bring your attention to the

25 three exhibits that you admitted, Defendant's Exhibit No. 3, 4,

1 and 5?

2 A.   Yes.

3 Q.   I placed them there in front of you.  They have those blue

4 markers on them, okay.  Just with respect to these exhibits,

5 your testimony was about that these exhibits showed that you

6 properly served parties in this case.  Is that right?

7 A.   Correct.

8 Q.   And that the proper service, as indicated in the pages

9 that followed, because I think there are a couple pages each,

10 is the fact that it was certified mail?

11 A.   Yes.

12 Q.   And the purpose for you admitting these exhibits is to

13 show the jury that, in fact, the judge was wrong in the rulings

14 of that you didn't offer proffer service.  Is that right?

15 A.   No.

16 Q.   Okay.  The exhibits though do show that you sent by

17 certified mail certain documents, too, as titled in Defendant's

18 Exhibit No. 3 Conner civil clerk.  Is that right?

19 A.   Yes.

20 Q.   And in Exhibit No. 4, Jared Dupes?

21 A.   Yes.

22 Q.   And in Exhibit No. 5, PA Unified Judiciary?

23 A.   Correct.

24 Q.   I'd like to bring your attention to what's previously been

25 admitted to Government Exhibit 5-B.  I'm going to pull it up on

1 the screen for you, sir?

2 A.   Oh, okay.

3 Q.   You would agree with me that this memorandum opinion by

4 Judge Conti is in the same case as those proofs of service,

5 Defendant's Exhibit 3, 4, and 5?

6 A.   Yes.

7 Q.   If we could bring up page 15 of 30?  If we could enlarge

8 the area here?  Could we go back and enlarge?  I think it cut

9 off one of the sentences.  Starting with the word he, can you

10 read Judge Conti's, this portion of Judge Conti's decision?

11 A.   He cannot be the one to deliver, hand or send the

12 communications and complaint, even if such service would be

13 proper by mail, certified or otherwise.  *Constien versus United*

14 *States*.

15 Q.   The citation isn't necessary.

16 A.   Okay.

17 Q.   Thank you.  And if we could bring up page 16 of 30,

18 please?  If we could enlarge this area?  Could you please read

19 starting where I marked there before under the decision in the

20 order that Judge Conti issued?

21 A.   Under the applicable state procedure, service of process

22 is not by mail and as a party he could not serve process under

23 that state procedure.  Accordingly, there has been no service

24 of process on any defendant.

25 Q.   Please move to page 18 of 30.  And can we please enlarge

1   this area?  If you just go above it because I think the page is
2   crooked?  Thank you.  And can you read starting with the word
3   even?  This is again Judge Conti's opinion.
4   A.   Yes.  Even if someone other than Dougherty had personally
5   delivered or sent a copy of the summons and complaint in
6   compliance with Rule 4(c)(2), the service of process would not
7   be effective with respect to Christopher Conner, in his
8   executive function, and Caldwell, Jones, Carlson, Blewitt, and
9   Welsh sued in their official capacity.  A copy of the summons
10  and complaint was only sent in apparent attempted compliance
11  with rule 4(i)(1)(A).
12  Q.   That's fine.  Can we please turn to page 21 of 30?  Can we
13  please enlarge this area?  And starting with the word Plaintiff
14  down here, without -- I just say down here, no cite.  Can you
15  please read Judge Conti's opinion?
16  A.   Plaintiff, who also sued the named plaintiffs for money
17  damages, ignores the actual requirements for service of process
18  on Jared Dupes in his individual capacity and even with respect
19  to Jared Dupes in his official capacity.  Plaintiff instead
20  relies on e-mail service, rules that govern service other than
21  original process, and rules of Pennsylvania appellate
22  procedure, as opposed to the rules applicable to service of
23  process in the state court of general jurisdiction, i.e., the
24  Pennsylvania Rules of Civil Procedure governing actions in
25  Pennsylvania trial courts.  The Pennsylvania rules do not

577

1  provide for the service of process in the manner Plaintiff

2  believes they do.

3  Q.   And can we please turn our attention to page 23 of 30,

4  Judge Conti's decision?  And enlarge this area.  Please read

5  that.

6  A.   In sum, personal service upon Jared Dupes in his

7  individual capacity cannot be served by mail, cannot be served

8  by a party mailing it, and cannot be sent by mail only to the

9  Pennsylvania Attorney General, and cannot be by e-mail.

10  Q.   And then finally, can we turn to page 26 of 30 of that

11  same document?  Please enlarge this paragraph.  Mr. Dougherty,

12  can you read this from Judge Conti's opinion?

13  A.   Yes.  As discussed above with respect to the service upon

14  Jared Dupes, there has been no service of process on Jared

15  Dupes in his official capacity because it was sent by mail, it

16  was sent by Dougherty in violation of Rule (c)(2), it was not

17  delivered to the chief executive officer of Pennsylvania as

18  required by or Rule 4(j)(2)(A), and it was not made by handing

19  a copy to the person in charge of Jared Dupes' office and by

20  handing a copy to the person in charge of the Pennsylvania

21  Office of Attorney General, as required by Rule 4(j)(2)(B) and

22  Pennsylvania Rule 422(a).

23  Q.   I'd like to next bring your attention to the April 7th

24  letter to the Third Circuit.  Do you remember that?

25  A.   I think so, yes.

1  Q.   And can we please pull up Government Exhibit 6?  Do you

2  recognize this document, sir?

3  A.   Yes.

4  Q.   Did you answer?  I'm sorry?

5  A.   Yes.

6  Q.   I'm sorry.  If I could bring your attention to page 21?

7  I'm looking at the top numbers --

8  A.   Okay.

9  Q.   -- of that page, please.  While that's going on, you were

10  the one that sent this to the Third Circuit, right?

11  A.   Yes.

12  Q.   And can we highlight that part?  Or enlarge it, please?

13  Starting with this, could you read that?

14  A.   All 11 judges could be shot in terms of war properly under

15  a choice of evils affirmative defense.

16  Q.   And when you say, all 11 judges, you name -- would you

17  agree with me, you probably name about 20 judges in the

18  entirety in this document?  Would that sound right?

19  A.   Again, I thought it was 11.  But, you know, I don't really

20  know.

21  Q.   After this letter -- and we can take that down.  After

22  this letter was filed with the Third Circuit, we've heard

23  testimony and you've mentioned yourself that on April 13, 2015,

24  there was this meeting at your residence with Deputy Hanna?

25  A.   Yes.

1  Q.   At during that meeting at your residence, they spoke to

2  you, and I think Deputy Hanna was there with another

3  individual?

4  A.   Yes.

5  Q.   And during that meeting, the meeting was centered around,

6  the subject of that meeting was centered around Exhibit No. 6,

7  this letter to the Third Circuit?

8  A.   The letter, yes.

9  Q.   And you have law enforcement officers at your residence

10 coming to you to discuss what was contained in this letter, is

11 that right?

12 A.   Correct.  They didn't actually make that clear, but they

13 were talking about they were responding to some complaint of

14 threat.  They didn't say the letter per se, but that's what it

15 was.

16 Q.   Okay.  During that conversation, they described that it

17 was brought to their attention there was a complaint of threat

18 and some individuals believed it to be a threat?

19 A.   Again, that was kind of soft peddled, but, yes, there was

20 an explanation that, in fact, they felt that there was certain

21 individuals that felt threatened or were concerned about the

22 content of a communication.

23 Q.   Okay.  So you would agree with me that on April 13th,

24 2015, you were at least made aware in some context that certain

25 individuals believed this -- believed Exhibit No. 6 to contain

1  threats?

2  A.   No.  I was given the impression that they were

3  investigating to see if they were, in fact, a threat or what

4  exactly was my mindset in the communication.

5  Q.   All right.  I think you also mentioned though previously

6  in response to my question that certain individuals were

7  perceiving them to be as threats, that's why they were there?

8  A.   In the manner of the notes made from the marshals, like as

9  though -- not from the communication or letter itself.  They

10 had indicated, in fact, one of the communications that there

11 were references to historical and religious references that

12 seemed to cause them to be concerned.

13 Q.   Okay.  And at that point in time, they left and nothing

14 else was, I guess, done with respect to this letter to the

15 Third Circuit.  Is that a fair assumption?

16 A.   Correct, yes.

17 Q.   Okay.  And then on May 6th, 2015, we've seen it entered as

18 Government's Exhibit No. 1, that envelope.  Correct?

19 A.   Yes.

20 Q.   And do you dispute the fact that that envelope was placed

21 in the U.S. mail by yourself at a post office in New Jersey?

22 A.   No.

23 Q.   And those Exhibits 11-A, 11-B, and 11-C at the post

24 office, do you dispute the fact that those are yours, that

25 those contain you in those photographs?

581

1    A.    Oh, yes, yes.

2    Q.    And you agree you are in those photographs?

3    A.    Yes.

4    Q.    And on May 6th, 2015, you placed that letter that was

5    specifically addressed to Judge Conner in the mail?

6    A.    Yes.

7    Q.    And the letter -- the envelope, excuse me, contained a

8    letter that's been admitted as Exhibit 1-B, right?

9    A.    Yes.

10   Q.    And 1-B was dated on May 5th, 2017?

11   A.    Correct.

12   Q.    And it would have been received by Judge Conner in the

13   days following you placing it into the U.S. mail?

14   A.    Yes.

15   Q.    And I have to ask you a question.  With respect to the

16   envelope, you addressed it to Christopher Conner.  Right?

17   A.    Yes.

18   Q.    And you address him as the Chief Judge of the -- Chief

19   Judge, I think?

20   A.    Chief Judge, yes.

21   Q.    In the letter, Exhibit 1-B, if we could pull that up,

22   please?  In the letter the very first line of that letter, if

23   we could enlarge this area, you used the word Satanopher

24   Conner.  Right?

25   A.    Um-hum.

582

1  Q.   Is that correct?

2  A.   Yes.

3  Q.   You wrote this letter?

4  A.   Yes, I did.

5  Q.   And when you addressed the letter, you addressed it to

6  Christopher Conner?

7  A.   In the envelope, yes.

8  Q.   In the envelope.  You knew his name to be Christopher

9  Conner?

10  A.   Correct.

11  Q.   Can you explain to the jury why you chose the word

12  Satanopher Conner in the letter?

13  A.   I had sent a communication to him back a year earlier

14  recommending that he change his name to Satan.

15  Q.   This letter was addressed -- I think you're referring to

16  the fax?

17  A.   I think it was a fax, okay.

18  Q.   Okay.  And the fax, as admitted in Government's Exhibit

19  No. 8, was received by Christopher Conner on 9/29 of 2016.  Is

20  that right?

21  A.   I didn't know the date, but I'm pretty sure that's what it

22  was.

23  Q.   You suggested he change his name so Satanopher Conner as

24  he has dishonored the names, I think you misspelled etymology,

25  but we know what you mean?

1  A.   Again, I'm not a diligent speller, and sometimes I use

2  spell check, and it comes up the first close.  And I did not

3  self edit there.  But that was a misspelling, yes.

4  Q.   Fair enough.  You're aware he didn't change his name,

5  right?

6  A.   Correct.

7  Q.   Because you addressed the envelope to him as Christopher

8  Conner?

9  A.   Correct.

10 Q.   Again, can you explain why you chose the Satanopher

11 Conner?

12 A.   I believe what he was doing at that time led to the

13 premature death of a number of my clients in delay.  And, in

14 fact, I was trying to prompt him to take action and/or respond

15 or, you know, get us into some sort of explanation as to what

16 it is that causes his constant intervention in my cases to

17 transfer them as I discussed with him extensively.  All we need

18 is a ruling on the merits, on the issue, at least one time.

19 Q.   With respect to -- and we can go out of that, please.  I

20 think you had mentioned in your testimony and at other times

21 when questioning witnesses that you had this letter and was

22 somehow viewed to you as a petition for redress.  Is that

23 right?

24 A.   Yes, um-hum.

25 Q.   Here in what would be like the subject line of a letter,

1  right?

2  A.    Um-hum.

3  Q.    Does it say petition for redress?

4  A.    No.

5  Q.    What does it say?

6  A.    The reason, execution orders, in quotations, pending.

7  Q.    Can we please go in the same exhibit to, I'm looking at

8  the bottom of the page, page number 9.  Can we please enlarge

9  this whole area?  While that's being enlarged, Mr. Dougherty,

10  you said during your direct testimony that if no one followed

11  the rule of law, ultimately it would lead to chaos.  Do you

12  remember saying that?

13  A.    Yes.

14  Q.    And in this letter, you first give an alternative at the

15  bottom.  Can you read this paragraph?  You don't have to relate

16  to the cite.

17  A.    In the alternative, Satanopher Conner can order a

18  preliminary and injunctive order related to must enter default

19  and person related to 28 U.S.C. 1654 under WRTL's strick

20  scrutiny.

21  Q.    And that's in the alternative; if this isn't done, then

22  would you agree with me that this was going to happen, the

23  paragraph above it?

24  A.    No.  I'm talking about that in the terms of these are the

25  consequences, just like I had communicated in the letter in ECF

1  57, that if, in fact, you have this kind of conduct by a

2  government who thinks it can oppress the people, it winds up

3  leading to riots in the street.  And I had indicated that's

4  what was referenced in the amicus brief by Citizens United in

5  the DACA decision.

6       And they actually said those same things, that if you

7  think that you can simply issue executive orders and do things

8  in violation of a constitution, what happens, like what's going

9  on in France, that they were having riots in the streets.  I

10  made that mailing before the super indictment and part of that

11  led to superseding indictment.

12       And, in fact, it was the next year where we had riots in

13  the streets and over 40 people killed leading up to the

14  election.  So --

15  Q.   I'm asking you about this document, sir, okay?

16  A.   That's what I'm saying.  It's the same theme.  You were

17  telling about how I have similar styles, similar

18  communications.  It's a prediction of what will come if, in

19  fact, you refuse to abide by the rule of law and hold everyone

20  equal under the law.

21  Q.   Okay.  I think during your direct examination, you said

22  the word chaos.  Right?

23  A.   Chaos, yes.

24  Q.   And can you read this -- I'm sorry, the top paragraph,

25  please?

586

1  A.    Okay.  Keith Dougherty filed the paperwork, in quotation,

2  to establish a well-regulated militia, and at the appropriate

3  time will order the death of three state court judges by

4  bashing of skulls, three district court level judges and

5  magistrates by ISIS style beheading, and three circuit court

6  level judges by AR 15's to ensure the most just, speedy, and

7  inexpensive determination as to habeas corpus, related to the

8  second and fourteenth amendments, in pari materia with

9  qualified immunity and assault gun issues.

10  Q.    You would agree with me this paragraph doesn't say,

11  although this may describe chaos, it doesn't say just simply

12  chaos?  Would you agree with me?

13  A.    Yes.

14  Q.    In addition to your direct testimony, you said if you act

15  outside of the law, and I may be paraphrasing here, okay, it

16  will end in violence.  Do you remember saying something to that

17  effect?

18  A.    Something to that.

19  Q.    Would you agree with me that on the top of page 9 of

20  Exhibit 1-B, what you just read actually suggests that it would

21  end in death, bashing of skulls, and it would end in the death

22  of these judges by bashing of skulls, ISIS beheading, and by

23  AR-15's?

24  A.    Again, we're going to get into a dangerous area in terms

25  of certain things.  But I was referring to a militia as it was

587

1  described in the case of *DC versus Heller*.

2  Q.   I am just asking you a question about whether or not you

3  used the word violence in here?

4  A.   Did I use the word violence?  I don't see it.

5  Q.   But you describe violence, would you agree with me?

6  A.   Again, by describing these --

7  Q.   Would you agree with me that you described violence?

8  A.   Violence, no.

9  Q.   Yes or no?

10  A.   No.  In other words, if it's appropriate, that is not a

11  violent -- it might be an offensive description of acts that

12  will come, but if, in fact, it's appropriate, the qualifier

13  being appropriate, in other words, after due process of law,

14  whatever that might be, these things could happen.

15  Q.   Mr. Dougherty, I'm asking you a question.  You didn't use

16  the word violence in this paragraph, did you?

17  A.   I don't belive that I did.  I can read it again.  But I

18  don't necessarily see the word violent anywhere.

19  Q.   That's just my question, thank you.  With respect to this

20  letter, would you agree with me that this letter came after

21  that meeting with the U.S. Marshals on April 13th, 2015?

22  A.   Yes.

23  Q.   In fact, it came after a meeting on May 18th, 2015.  That

24  was when Deputy Hanna was meeting about communications through

25  the judiciary.  Do you remember that?

588

1  A.   The -- it was the second meeting.

2  Q.   Do you remember that?

3  A.   Yes.  It was the second meeting you're talking about now,

4  right?

5  Q.   Yes.  Do you remember the May 8th, 2015, meeting?

6  A.   Right.

7  Q.   And during that, and it's in your Defense Exhibit No. 1,

8  do you remember in that report that Pugh and Deputy U.S.

9  Marshal Hanna interviewed Dougherty at his home on 8/5/2015 and

10  referenced to inappropriate communications investigation

11  concerning members of the judiciary.  Do you remember that from

12  your Defense Exhibit No. 1?

13  A.   Yes.

14  Q.   So after the letter to the Third Circuit, after the April

15  2015 meeting with Hanna, and after the May 5th -- or May 8th,

16  2015, meet that I just described, this Exhibit 1-B mailing to

17  Judge Conner was made.  Would you agree with me?

18  A.   Yes.

19  Q.   Let's talk about the next thing that happened in the

20  timeline of events, okay.  On March the 4th, 2019, that's when

21  you had your conversation with Christopher Cruz?

22  A.   Correct.

23  Q.   And during that, he showed you this letter that was sent

24  to Judge Conner?

25  A.   Correct.

589

1   Q.   And there was a lot of discussion in that meeting from

2   you, but you were shown that letter and he was referencing some

3   points in that letter that I think gave him some concern.  Is

4   that right?

5   A.   He didn't --

6   Q.   Is that right?  Yes or no?

7   A.   He showed me the letter.

8   Q.   And after that meeting with Christopher Cruz, you followed

9   up with an e-mail that's Government Exhibit 2-A.  Do you

10  remember that?

11  A.   Yes.

12  Q.   Can we pull up Government Exhibit 2-A?  And this is -- you

13  sent this e-mail, right?

14  A.   Correct.

15  Q.   You sent it from your Comcast e-mail accounts and

16  ultimately landed in the e-mail account of Christopher Cruz.

17  Would you agree with me?

18  A.   Yes.

19  Q.   That was sent on March 21st of 2019?

20  A.   Yes.

21  Q.   And in it, I think during your direct testimony you

22  mentioned that you wanted him to do certain things for you?

23  A.   Correct.

24  Q.   Would you highlight this, please?  Would you agree with me

25  that in it, that you're telling Christopher Cruz that he's

590

1  being mocked because he's too stupid to realize, and then you

2  go on and talk about some other things.  Would you agree with

3  me that's contained in there?

4  A.  Yes.

5  Q.  Can we please go to the next paragraph?  And would you

6  also agree with me that in that paragraph that I just showed

7  you, that you were asking Christopher Cruz to initiate a grand

8  jury proceeding about possible violations, among other things,

9  18 U.S.C. 2076?

10  A.  Yes.

11  Q.  Okay.  And then the next paragraph, you state, otherwise.

12  Is that correct?

13  A.  Yes.

14  Q.  And that's the paragraph that's in front of you?

15  A.  Um-hum.

16  Q.  Do you see that?

17  A.  Um-hum.

18  Q.  Then you describe an event that the FBI was involved in

19  and, as you described, where someone was shot in the head?

20  A.  Correct.

21  Q.  And that, would you agree with me, that that event that

22  involved the FBI was not an event that the FBI would fondly

23  would like to remember.  Would you agree with me?

24  A.  And that's the reason I was speaking to him about it

25  because I thought he, as an FBI agent, would know it, the

591

1  reference to it would be something that he would be completely
2  familiar with.
3  Q.   Okay.  And can you read what's in front of you that's been
4  enlarged?
5  A.   Otherwise, just like Ruby Ridge Keith Dougherty will be
6  required to order, in quotation, a sniper, under the second
7  amendment to shoot Conti in the head just to shut her up, end
8  quote, even if there might be collateral damage, no indictment
9  is even possible.
10 Q.   Okay.  And this e-mail to Christopher Cruz, that mentioned
11 shooting Judge Conti in the head to shut her up?
12 A.   Um-hum.
13 Q.   Proceeded or came after those rulings that we discussed
14 relating to your proof of service that I first started
15 questioning you about, that this e-mail came after that?
16 A.   I guess I'm unsure about the specific timing of that, but
17 again, I don't know if I made myself clear.  I've said
18 repeatedly that Judge Conti is irrelevant in the case.
19 Q.   If I told you that Government Exhibit 5-B that we talked
20 about, the Judge Conti decision that I had you read excerpts
21 from, was filed on April 6, 2018, would you have any reason to
22 dispute that?
23 A.   No.
24 Q.   Okay.  And would you agree with me that this decision from
25 Judge Conti pre-dated this e-mail to Christopher Cruz about

1  Judge Conti?

2  A.    Yes.

3  Q.    Following this e-mail to Mr. Cruz, you were indicted.  Is

4  that right?

5  A.    Correct.

6  Q.    This e-mail was on March 21st, 2019.  Your original

7  indictment was returned on April 17th, 2019.  Do you agree with

8  that?

9  A.    Yes.

10 Q.    During that original indictment you had, you had an

11 arraignment?

12 A.    Yes.

13 Q.    And you were provided with a copy of the indictment?

14 A.    Yes.

15 Q.    And that copy of the indictment referenced this portion of

16 the e-mail in Count 2.  Would you agree with me?

17 A.    Yes.

18 Q.    And the indictment also referenced in Count 1 the letter

19 to Judge Conner?

20 A.    Yes.

21 Q.    And in the indictment, it also referenced that there

22 were -- that this contained a threat to injure, and this is

23 just what the indictment alleges, okay, that it contained a

24 threat to injure Chief Judge Conner and other members of the

25 federal judiciary?

1  A.   Correct.

2  Q.   Do you agree with me that's what the indictment said?

3  A.   That's what the indictment says, yes.

4  Q.   Would you also agree with me then that sometime close to

5  April 17th, 2019, following your arraignment and being

6  presented with the original indictment in this case that

7  contained Counts 1 and 2, the letter to Judge Conner and this

8  e-mail, that you knew that at least a grand jury took these

9  threats seriously?  Would you agree with me?

10  A.   I believe --

11  Q.   Yes or no?  Would you agree with me, sir?

12  A.   I believe that the prosecution had made a false

13  presentation to the grand jury.

14  Q.   But at that point in time, you were at least on notice

15  that the letter to Judge Conner and this e-mail served as a

16  basis for a federal indictment?

17  A.   Just as this --

18  Q.   Yes or no, sir?

19  A.   Just as this e-mail shows that the charges against the FBI

20  sniper had to be dropped.  So I was under the same mindset.

21  You may not like that.  It's horrible.  It's harsh.  But if, in

22  fact, you violate certain rules and procedures, there can be

23  deadly consequences and there can be no prosecution.

24  Q.   Okay.  Would you agree with me that, again, that you're on

25  notice of Judge Conner's letter and this e-mail following your

594

1  original indictment?

2  A.   Yes, time wise.  But again --

3  Q.   That's all I'm asking.

4  A.   This is the e-mail, this is what I thought, this is what

5  I'm saying, that it would be tragic that someone would have to

6  die before you wake up to the reality you can't simply do

7  things because you're part of the government.  Vicki Weaver was

8  dead.  Three million dollars paid to her estate.

9          MR. ADKINS:  Your Honor, I'm asking the witness a

10 question, does he agree with me.  It's a yes or no question.

11 He's now trying to testify.  He'll have an opportunity to do

12 that on redirect.

13         THE COURT:  Okay.  Yep, you asked for a yes or no

14 answer.  He said, yes.  So that's -- you don't need to answer

15 anymore.

16         MR. ADKINS:  Thank you, Your Honor.

17 BY MR. ADKINS:

18 Q.   Following the original indictment in this case, and you

19 receiving the same, if we could bring up Exhibit 4-A, please?

20 Do you recognize this, Mr. Dougherty?

21 A.   Yes.

22 Q.   And this is an e-mail that says from Keith Dougherty.  Are

23 you the one that sent this e-mail?

24 A.   Yes.

25 Q.   And did you send this on January 22nd, 2020?

1  A.   Yes.

2  Q.   And would you agree with me that January 22nd, 2020, the

3  date you sent this e-mail occurred after you were indicted for

4  the letter to Judge Conner and the other e-mail we previously

5  talked about?

6  A.   Yes.

7  Q.   And in this, you send it, I think you said to Mr.

8  Finucane, but also, as previously testified, and I see here, to

9  Mr. Enerson?

10 A.   Uh-huh.

11 Q.   Is that fair?

12 A.   Yes.

13 Q.   And the reason sending it to Mr. Enerson, is that because

14 he was involved in the litigation with Mr. Dupes and that was

15 being at the time handled by Judge Conti?

16 A.   Yes.  As related to that previous e-mail, yes.

17 Q.   Okay.  And this e-mail, if we could turn to page 2?  And

18 highlight this portion, please?  You authored this e-mail,

19 correct?

20 A.   Yes, I did.

21 Q.   You wrote this passage in the e-mail, correct?

22 A.   Yes, I did.

23 Q.   Can you please read it?

24 A.   The crux of the matter is Keith Dougherty avers, mixed

25 illegal assertion, he could shoot Judge Conti in the head and,

596

1    in quotations, claim necessity under PA's, in quotations,

2    deadly -- discretionary deadly force, end quote, doctrine.

3    Q.   Would you agree with me that in both this January 22nd,

4    2020, e-mail and the March 21st, 2019, e-mail that I previously

5    showed you --

6    A.   Uh-huh.

7    Q.   -- that it references shooting Judge Conti in the head in

8    both of those e-mails?

9    A.   Yes.  As a --

10   Q.   I'm just -- it references that, right?

11   A.   Um-hum.

12   Q.   And you would agree with me, again, that this e-mail and

13   the language in this e-mail occurred after your indictment and

14   the events of the March 21, 2019, e-mail when you referenced

15   shooting Judge Conti?

16   A.   Correct, yes.

17   Q.   You would agree with me, and I think you talked about this

18   in your dockets sheets exhibit, that Judge Conti was recused

19   from your case at some point.  Is that right?

20   A.   Yes.

21   Q.   Was -- and you would agree with me that she was recused

22   from your case after these e-mails where you said you could

23   shoot Judge Conti in the head?  Would you agree with me that

24   the recusal came after these e-mails?

25   A.   Yes.  But it was again --

597

1  Q.    I'm just asking if you agree.

2  A.    It was after the timeframe of my indictment.

3              THE COURT:  He answered yes.

4              MR. ADKINS:  Okay.

5  BY MR. ADKINS:

6  Q.    I think during your direct testimony, you described your

7  feelings about the rulings in Judge Conti's decision as being

8  frustrating.  Is that correct?

9  A.    Yes.

10  Q.    And I think you also mentioned that you believed that you

11  were being victimized by the Middle District of Pennsylvania.

12  Is that right?

13  A.    Yes.

14  Q.    During your discussion about the letter to Judge Conner,

15  would you agree with me that during your testimony, you also

16  mentioned that you were fed up and frustrated with Judge

17  Conner?

18  A.    Yes, again --

19  Q.    Would you agree with me?

20  A.    Yeah, um-hum.

21  Q.    And I think during your direct testimony, you said that

22  you wanted him to do something relative to the rules.  Is that

23  right?

24  A.    Yes, um-hum.

25  Q.    And if we could, again, please bring up Government Exhibit

1  1-B and page 9?  And when -- and I know there may be other

2  things.

3  A.   Okay.

4  Q.   But for purposes of what I just mentioned, you wanted him

5  to do something relative to the rules?

6  A.   Yes.

7  Q.   Would that be including ordering a preliminary and

8  injunctive order relating to must order default in person?

9  A.   Yes.  In other words, when it comes to --

10  Q.   I'm just asking you a question.

11  A.   I'm just trying to --

12  Q.   Would that be one of the things that you wanted him to do

13  relative --

14  A.   That was pretty much the sum total of what I wanted him to

15  do, as the executive.

16  Q.   That's all I was asking, Mr. Dougherty.  Okay?

17  A.   Okay.

18  Q.   And again, if that didn't happen, the alternative is set

19  forth above.  Would you agree with me?

20  A.   No, it wasn't a before and after consequence.  You'd have

21  to work backwards.  I'm simply suggesting above it.

22  Q.   So you would disagree with me?

23  A.   Yes, I disagree with you.

24  Q.   Okay.  I think during your direct testimony, you made

25  mention that comments and statements were not meant to be a

1  joke?

2  A.   Not meant to be a joke, no.

3  Q.   And then you would agree with me that your comments and

4  statements in the letter to Judge Conner and the two e-mails

5  were actually meant to be taken seriously.  Right?

6  A.   A shock, rhetorical.  He properly described it as a

7  staccato.

8  Q.   Would you agree with me that -- it's yes or no.  Would you

9  agree with me that the letter to Judge Conner, the e-mail to

10  Christopher Cruz, and the e-mail to Caleb Enerson were not

11  meant to be a joke?

12  A.   Correct.

13  Q.   So then would you agree they were meant to be serious,

14  seriously taken?

15  A.   Yes, in the context in which they were delivered, yes.

16       MR. ADKINS:  One moment, Your Honor, please.

17       (Pause.)s.

18       MR. ADKINS:  I don't have any other questions, Your

19  Honor.  Thank you.

20       THE COURT:  All right, thank you.  Now, Mr.

21  Dougherty, you get redirect.

22       THE WITNESS:  Okay.

23       THE COURT:  But it's very limited.  It can only be to

24  respond to something that was raised during your cross

25  examination that you didn't address in your direct.  You cannot

600

1  just repeat.  You had your chance.  So it should be very very

2  narrow.  I'm not even sure there's anything you would care to

3  say, but you may now have redirect.

**REDIRECT EXAMINATION**

5       THE WITNESS:  Just two quick points.  Could you bring

6  up that Defendant's Exhibit page 9 again?  The one we were just

7  dealing with at page 9, exactly where we left?

8            MR. ADKINS:  I think you may be referring to --

9            THE WITNESS:  The letter of April 15th or whatever it

10  was, pardon me.

11           MR. ADKINS:  Exhibit 1-B, page 9.

12           THE WITNESS:  Exhibit 1-B, page 9, yes.  Can you

13  highlight the paragraph again with, in the alternative?  The

14  simple reality is, if you were moving for declaratory and

15  injunctive relief, this would be the result.

16           Initially there would be a preliminary injunction

17  that going forward when these properly presented things are

18  presented must enter default is required.  And under the

19  definition of person related to 28 U.S.C. 1654 means all

20  parties that are persons in that statute are entitled to that

21  relief in the Court, you know, broadly.

22           There is no excuse, there's no deviation, there's no

23  nothing, because this is a party presentation system.  If

24  someone decides to sit on their hands, as I had indicated

25  previously, under a case, Supreme Court case out of the Western

1   District of Pennsylvania, oddly enough, they indicated that if

2   you do not respond, your opponent can move under 12(h)(1).  And

3   what happens in that regard is you have deemed to waive

4   personal jurisdiction.  You waive venue.  You waive service of

5   summons and sufficiency of the summons.

6          So all of Judge Conti's rhetoric and dialogue was an

7   effort to come in and save the day for someone that didn't

8   realize that it could all be over simply by not acting.  But

9   again, it was a simple matter to turn around and then simply

10  file a response and say, no, he's wrong, whatever the case may

11  be, and you waived those things, 12B2, 12B3, 12B4, 12B5 by the

12  Supreme Court doctrine out of the Third Circuit.

13         And I'm just confused why we have to constantly start

14  -- I will tell you, in her opinion she misstates virtually

15  every rule of service involved.  And if I had taken time to

16  address it with Judge Conti -- excuse me, Judge Conner, he

17  actually handled the *Stilt versus Commonwealth* case where

18  everything that she said about the method of service was wrong.

19         (Pause.)

20         THE COURT:  All right.  That's it?

21         THE WITNESS:  Yes.

22         THE COURT:  All right.

23         THE WITNESS:  One more question related to the

24  e-mail, it was e-mail number 4.  And it was the second page,

25  was it?  Yes.  First paragraph.  Could you put the page 2, the

602

1  first paragraph, please?  Again, this is the area where I just

2  wanted to be very careful.  This actually suggests that there

3  is a necessity defense and a Discretionary Deadly Force

4  Doctrine.  That is what was being expressed here.

5       And that would be a tragic outcome simply because we

6  don't want non-lawyers practicing in the courts.  But that is

7  in terms of relating back to Enerson's case, since the judge in

8  that case does not gain tribunal jurisdiction until after the

9  plaintiff waives their right to proceed under default judgment,

10 everything Judge Conti was submitting was, in fact, invalid.

11 And the Supreme Court doctrine is clear.

12      So this is a matter where simply because someone

13 says, we will not do something, or whatever, doesn't make it

14 lawful, doesn't make it right.  So that's what this is all

15 about, yes.  And that's it.

16      THE COURT:  All right.  Thank you very much.  You may

17 step down.  And Mr. Dougherty, my understanding is that you're

18 not presenting anything further.  Correct?

19      MR. DOUGHERTY:  No.

20      THE COURT:  Okay, I gave you a double negative.  I'm

21 correct that you're not?

22      MR. DOUGHERTY:  You're correct.

23      THE COURT:  Thank you very much.  So the defense

24 rests.  Is there any rebuttal?

25      MR. ADKINS:  No, Your Honor.

1          THE COURT:  All right.  Well, ladies and gentlemen,

2    that concludes the evidence.  So what remains is closing

3    arguments, and I'll give you your final instructions, and then

4    the case is yours.  And you will dictate the schedule.  Is this

5    a good time to take a lunch break?  Everybody is nodding.  So

6    we'll do that.

7          So why don't you come back, we'll shoot for 1:00.  I

8    don't want, if there's problems getting in the building because

9    of security, don't worry, just do your best.  Once you all

10   indicate your readiness, we'll start again.  All right?  Thank

11   you very much.  Again, don't start deliberating.  Let's wait

12   until everything is concluded.  All right, thank you.

13          (Jury left for a lunch recess at 11:56 a.m.)

14          THE COURT:  All right.  Jury instructions.  Can you

15   -- maybe you got a copy already or will you have copies made

16   over lunch?

17          MS. LESKO:  Yes, I can print them in the U.S.

18   Attorney's office downstairs.  I have access to a printer.

19          THE COURT:  Consistent with all the changes we

20   discussed this morning, right?

21          MR. PERRI:  Yes, Your Honor.

22          THE COURT:  Thank you very much.  Is there any other

23   matter?  No?  From Mr. Dougherty?  No?

24          MR. DOUGHERTY:  No.

25          THE COURT:  From the Government?

604

1          MR. PERRI:  No, thank you.

2          THE COURT:  Okay.  Do you have any sense, I'm not

3     going to hold anybody to it, but just how long do you -- how

4     long does the Government expect it will be in closing?

5          MR. ADKINS:  Your Honor, I'm going to do the first

6     close.  Mr. Perri is going to come back on the rebuttal.  I'm

7     guessing maybe no longer than 20 to 30 minutes.

8          THE COURT:  Okay.

9          MR. ADKINS:  That's just a guess, but I think, based

10    on the cross, I think that was going to give me an estimate of

11    time.

12         THE COURT:  All right.  Mr. Dougherty, how long do

13    you think you'll be?

14         MR. DOUGHERTY:  I don't believe I'll be very long at

15    all.

16         THE COURT:  Okay.  All right, sounds good.  All

17    right.  I know you have to wait until the jury exits.  Mr.

18    Young, you handed up a copy of the New Jersey materials.  We're

19    going to get that back to you.

20         MR. YOUNG:  Okay.

21         THE COURT:  My clerk here has those for you.

22         (Complied.)

23         THE COURT:  What I'd like to do is, when does the

24    Government think it could have the final jury instructions?

25         MS. LESKO:  I can print them out right now, sir.

605

1          THE COURT:  All right.  Well, why don't I -- are they

2    in this building?

3          MS. LESKO:  I'll print them right now, and then I'll

4    go down and grab them.

5          THE COURT:  All right, thank you.

6          MS. LESKO:  I'm sorry, excuse me, how many copies

7    would you like?

8          THE COURT:  Well, you know, what I'm thinking is, if

9    we could get it in like the next, you know, five or so minutes?

10          MS. LESKO:  They're going to have it as soon as you

11   tell me how many copies.

12          THE COURT:  Why don't we do a final read through?  In

13   other words, so, you know, three copies.

14          MS. LESKO:  Let me walk downstairs and grab them.

15          THE COURT:  That would be great, and we'll do a final

16   read through.  I'm going to wait then.  But if folks want to

17   leave -- the reason why I'm waiting is, I leave here and go to

18   a different floor.  So I'd rather just wait and get a copy and

19   I can look through them.  And then you all have to go out of

20   the building to eat lunch?

21          MR. PERRI:  Yes, Your Honor.

22          THE COURT:  You do, okay.

23          MS. LESKO:  Three copies?

24          THE COURT:  Yeah.

25          MS. LESKO:  For right now?

606

1          THE COURT:  Yes.  Thank you.  Can the Government --
2   so, Mr. Dougherty -- how long, Marshals, does it take for him
3   to have lunch and be brought back?

4          DEPUTY MARSHAL:  When do you want him back?

5          THE COURT:  Well --

6          DEPUTY MARSHAL:  He has a bag lunch.

7          THE COURT:  Okay.  What I'm trying to figure out is
8   this.  I really want to start right at 1.  So if there's any
9   changes to be made, I just want to be able to make them and
10  then make the final set of copies for the jurors is the thing.
11  So that's the timing issue.

12          So if I get them in five minutes, one thing we could
13  do is, we could all just quickly read them here and then -- and
14  I think that's the best thing to do.  Then you can have, you
15  know, until 1:00.  And you also can have until 1:00.  So why
16  don't we do that.  We'll just wait until she brings the copy
17  in, and then we'll do the final read through.  Okay.

18          (Pause.)

19          THE COURT:  All right.  The only substantive change I
20  think we probably should make is number 9.  I think it's
21  probably best to delete the last paragraph or to put the
22  sentence in the last paragraph, to move it -- and this might be
23  the better thing -- into the determination of true threat.

24          MR. PERRI:  I see your point.

25          THE COURT:  What I'm worried about is -- and this is

1  to protect the Defendant -- I'm worried that the jury might get

2  confused by this paragraph being down at number 9 and conclude

3  that it doesn't have to decide whether the Defendant knew that

4  it would be viewed as a threat.  And they may get confused and

5  think, oh, I only have to make the objective determination.

6          MR. PERRI:  I think you're right, and I think that's

7  a very good suggestion, Your Honor.

8          THE COURT:  All right.  So I'm going to -- we're

9  going to take then -- now the Third Circuit does say it does

10  not matter whether the Defendant agrees it's objectively

11  threatening, so I do think it's fair to put that in.  But I

12  think it should be moved to determination of a true threat.

13  All right.  So any -- you don't object to that, I would assume,

14  do you?

15          MR. DOUGHERTY:  No.  But just as a quick -- I noticed

16  a couple times now, jury instruction number 2, the last full

17  sentence, there was a typo, like that I would make.

18          THE COURT:  We'll go through that.  You're okay

19  though with what I just said?  I'm going to take number 9 and

20  jury instruction number 9, I'm going to take the last paragraph

21  out of number 9.

22          MR. DOUGHERTY:  And move it to where?

23          THE COURT:  And I'm going to move it to number 6 and

24  put it as a second paragraph in number 6, but delete,

25  furthermore.  Okay?  So that it doesn't affect -- what I'm

608

1  worried about is when you go to jury instruction number 5, and

2  it says, third, the Defendant either intended the communication

3  to be a threat or had knowledge that it would be viewed as a

4  threat, I think that's what I'm afraid of putting that

5  paragraph down the road at number 9.

6           Now I realize you preserved your objection that you

7  think there has to be a specific intent to threat, that's an

8  issue you can argue.  All right?  Let's go through them then.

9           So jury instruction number 1, I think, first of all,

10 we need to change it to the superseding indictment in the first

11 line, insert superseding.  All right.  That change, we're good?

12          MR. PERRI:  Agreed, Your Honor.

13          THE COURT:  Jury instruction number 3, again, has to

14 be a superseding indictment.  Also you've got a period after

15 interstate, willfully did transmit in interstate.  That period

16 needs to go.  Then when you see where it says, the crux of the

17 matter is Keith Dougherty avers, there's no space between

18 Dougherty and avers.

19          MS. LESKO:  What page are you on?

20          THE COURT:  Jury instruction number 3.  The crux the

21 of the matter is Keith Dougherty avers -- there needs to be a

22 space between Dougherty and avers.  Now you don't have an

23 and/or instruction and yet you charge the indictment using and,

24 right, which is typical.  But I think you're going to have to

25 get the and/or instruction.

609

1          MR. PERRI:  You're right, Judge.

2          THE COURT:  All right.  Do you have the access to the

3   -- I mean, there's a model third jury instruction on and/or.

4          MR. ADKINS:  Yeah, we can get it.

5          THE COURT:  Mr. Dougherty, that instruction is this.

6   The language used in an indictment is always used as and.  But

7   it doesn't require an and.  So, for instance, it says,

8   interstate and foreign commerce.  But if doesn't have to be

9   both, it can be one or the other.

10          So there is a model instruction that's always used to

11  explain to jurors that when you see and in an indictment, you

12  can -- it means or.  All right?  So the Government is going to

13  get ahold of the and/or instruction.  It needs to be added.

14          Jury instruction number 4, there's a typo in the

15  third line, or foreign needs to be separated by a space.

16          Jury instruction number 5, there's a typo on the

17  second line, injure and in need to be separated by a space.

18  And then you say in the next line, guilty of this crime, but

19  there's two charges.  Or these counts?  I would say this, I

20  would actually put in the beginning of the sentence, for each

21  of these counts, the Defendant can be found guilty, delete of

22  this crime, only if the following facts are proved beyond a

23  reasonable doubt.  Just to make it clear.

24          Because you also don't have an instruction, which is

25  often given, about they're supposed to consider each charge

610

1  separately.  That's often found.  Now having said that, there's

2  -- I can just do that.

3          Jury instruction number 8 -- let's make sure we're --

4  hold on a second.  All right.  For jury instruction number 5,

5  for each of the counts, delete that and just go back to what it

6  was originally.  The Defendant is charged in Counts 2 and 4.

7  And then in the next sentence, it should say, For each of these

8  counts, comma, small T, the Defendant can be found guilty, and

9  then it needs to say after guilty, only if.  Okay?  All right.

10          Jury instruction number 8.  In the third line, or

11  what needs to be separated.  And then the last line, it should

12  be these charges.  All right.

13          Then we go down to jury number 9.  Just go down to

14  the bottom.  You deleted that last paragraph, right?  Perfect.

15  All right.

16          Let me ask you this.  Do you need an instruction on

17  expert testimony?  Mr. Dougherty, do you want an expert

18  testimony instruction?

19          MR. DOUGHERTY:  Yes.

20          THE COURT:  You do?

21          MR. DOUGHERTY:  Um-hum.

22          THE COURT:  Okay, all right.  So there are -- there's

23  a typo.  Can we go to number 11?  So first of all, I put a

24  space on the fourth line after witnesses, quote.  I'd put

25  another space in there to separate the sentence.  And then in

611

1   the last line of this paragraph, state an opinion, you need a

2   space after opinion.

3        And Mr. Dougherty, I just want your view.  You're

4   good with jury instruction number 15?

5        MR. DOUGHERTY:  Just this paragraph that's being

6   highlighted?  It says, witnesses just as you consider -- you

7   said 15?

8        THE COURT:  Well, are you on the expert opinion now?

9        MR. DOUGHERTY:  Yeah.

10       THE COURT:  Let's scroll up actually.  First of all,

11  I think it used plural earlier.  We only had one expert, I

12  believe.  And it's for that reason, Mr. Dougherty, I asked

13  whether you really want this instruction because there's only

14  one.  But if you do, I'll let you have it.

15       MR. DOUGHERTY:  Yeah.

16       THE COURT:  You want it?  Then I think we only had

17  one expert, right?

18       MR. DOUGHERTY:  I didn't present one.  Wasn't it the

19  Government's expert?

20       THE COURT:  Right.  I'm saying, this is referring to,

21  it says, you should consider each expert opinion, all right.

22  Then the next sentence, you should consider the testimony of

23  expert -- let's take it, an expert witness.  And then put a --

24  the next line, do you see, testimony of expert?  It should be

25  testimony of an expert witness with a space and delete the E-S.

612

1 And then a space.  Then the next line needs to be separated

2 from witness.

3         Mr. Dougherty, you said you spotted another

4 typographical?

5         MR. DOUGHERTY:  That was back on number 2, I think.

6 The last complete sentence, it's got O-U-S-T as opposed to

7 J-U-S-T.

8         THE COURT:  Okay, thank you.  And then the last

9 instruction, are there any changes or objections?

10         MR. PERRI:  Judge, back on number 2.

11         THE COURT:  Let's just finish 15.

12         MR. PERRI:  First paragraph needs to be indented.  It

13 needs to be double spaced.

14         THE COURT:  I don't know you need all those spaces,

15 the or, was planning to commit, or acted with the method.

16         MR. PERRI:  That's fine, Your Honor.  That's the way

17 it was set up in the pattern instruction.

18         THE COURT:  Oh, okay.  Well, then it's fine.  Then

19 just do it.  That's fine.

20         MR. PERRI:  And for your information, Judge, after

21 the word the, you'll notice the next word is on the next line.

22 We were unable to fix that.  There's some kind of code that's

23 buried in the metadata of the document, and we've just been

24 unable --

25         THE COURT:  That's fine.  I know Word does that kind

613

1  of thing.  That's fine.  Any other objections?  Anything else,

2  Mr. Dougherty, to the last instruction?

3         MR. DOUGHERTY:  No.

4         THE COURT:  Then you want to go back to jury

5  instruction number 2, okay.  I think that does it, all right.

6  Anything else?

7         MR. PERRI:  Back on page 2, Judge, instruction number

8  2.

9         THE COURT:  Yes.

10         MR. PERRI:  We need a space between the and

11  communication.

12         THE COURT:  Yes.

13         MR. PERRI:  And can you scroll down a little bit,

14  Teresa?

15         MR. DOUGHERTY:  A little bit further up, too, in the

16  middle.

17         THE COURT:  Yep.

18         MR. PERRI:  I don't think there should be a bracket

19  after the word just.  Is that in the original?

20         THE COURT:  I don't know.

21         MR. ADKINS:  Just in the original indictment, the J

22  is lower case, and there's brackets around the word just on

23  both sides.

24         THE COURT:  There you go.  Okay, all right.

25         MR. PERRI:  Are we going to have a reasonable doubt

614

1  instruction?  I know in our district, there's usually an

2  instruction that says reasonable doubt is not something that

3  can be defined, it's determined by common sense.  Is that

4  something you're going to address with them orally?

5          THE COURT:  No.  I mean, I will if you want to print

6  it up.

7          MR. PERRI:  Okay.  I should add, Judge, I know people

8  do things differently in different districts, but in our

9  district, when we're asked for jury instructions, we normally

10 just submit the instructions that would be unique for the case,

11 and the judge -- the Court supplies its own standard

12 instructions that go with it.  And that reasonable doubt

13 instruction is standard in our district, so that's why we

14 didn't include it is all I'm saying.

15         THE COURT:  Okay.  And that's fine.  We have a

16 different practice in my district, and it's that the Government

17 submits what it thinks needs to be addressed because it's

18 really, it's the Government's job to protect any conviction on

19 appeal.  And the Court, you know, that, just like with the

20 Defendant, I mean -- anyway, we don't need to address that.

21 But what I say is if you think there's an instruction in here

22 which needs to be given, you know, now is the time.

23         MR. PERRI:  I think -- I'm just saying, I don't think

24 we understood that we would be supplying all the instructions

25 and the Court would not be using any standard instructions to

615

1   supplement.  So we can address that.

2        THE COURT:  Well, let's address it now.  So you think

3   there's a reasonable doubt instruction that needs to be given?

4        MR. PERRI:  Yes.

5        THE COURT:  Anything else?

6        MR. PERRI:  And the charge in the conjunctive

7   instruction that you mentioned earlier, I think also needs to

8   be in there.

9        THE COURT:  All right.

10        MR. PERRI:  The only other thing we can think of,

11   Judge, is perhaps there should be an instruction about a pro se

12   Defendant.  I'm not sure we can come up with that one quickly.

13   I know you touched on it just a little bit prior to jury

14   selection.

15        THE COURT:  In what way?  What do you need?

16        MR. PERRI:  I think you mentioned the Defendant is

17   representing himself and that was his choice.

18        THE COURT:  Well, if I instructed them already, then

19   I have.  That's one thing I don't do is I'm not going to repeat

20   what I've already instructed them.  I gave them preliminary

21   instructions, which you all saw.  And, you know, I will repeat

22   some of the main themes of it, but -- okay?  All right.

23   Anything else?

24        I mean, you probably need a break before we're going

25   to start at 1.  You don't have much time now.  We'll be back

616

1  right before 1, and we'll begin with closing.  All right.

2              COURTROOM DEPUTY:  All rise.

3              (Lunch recess was taken at 12:35 p.m. and proceeding

4                reconvened at 1:18 p.m.; without the jury.)

5              THE COURT:  Mr. Dougherty, so you remember I gave

6  some preliminary instructions at the beginning of trial?

7              MR. DOUGHERTY:  Yes.

8              THE COURT:  Those are what we call form instructions,

9  right?

10             MR. DOUGHERTY:  Yes.

11             THE COURT:  They're -- and I'm going to repeat some

12 of them.

13             MR. DOUGHERTY:  Okay.

14             THE COURT:  And I'm going to add to some of them.

15 I'm going to repeat, you know, what evidence is, the role of

16 the jury.  I'm going to remind them what's evidence and what's

17 not.  And in that context, I'm going to say, you're pro se, you

18 have a constitutional right to be pro se, and the jury can't

19 hold that and should not hold that against you.  There's no --

20 it's not relevant.

21             And I'll remind them that when you spoke as a lawyer,

22 it was not evidence, but when you testified, it was.  And I'll

23 remind them what Mr. Adkins and Mr. Perri said is not evidence.

24 I'm going to also instruct them using form instructions about

25 reasonable doubt, and I'm just going to do what the Third

1  Circuit's form instructions say.

2        And I am going to tell them that they should -- what

3  they should consider in assessing a witness's credibility

4  which, again, I already said to them, but I'm going to repeat a

5  little bit about it and remind them that they should just

6  assess your testimony the way they would any other witness.

7        And then I'm going to also tell them that an

8  indictment is not something that should be viewed as evidence,

9  it's an accusation only.  They should give no weight to the

10 fact that you were indicted in making their decision today.

11 And I'm going to give them an instruction about on or about

12 because the indictment says on or about, and just that it's --

13 it means that the Government has to prove beyond a reasonable

14 doubt that the offense was committed on a date reasonably near

15 the date that's charged.

16       I'm going to give them an instruction that says that

17 they need to consider the charges separately and that the

18 number of charges is no evidence of guilt and that they need to

19 address each charge separately.  And the verdict form will

20 require them to do that.

21       And then I'm going to, again, just following a form

22 is tell them -- I'm going to do what we do in our district, I'm

23 going to pick juror number 1 to be the foreperson.  I'm going

24 to tell them the rules about their verdict and their

25 deliberations have to be unanimous and that they should give

618

1  appropriate consideration to what their fellow jurors think,

2  but ultimately they have to reach their own decision.

3          Any objections to any of those?

4          MR. DOUGHERTY:  No.

5          THE COURT:  I'm sorry?

6          MR. DOUGHERTY:  No.

7          THE COURT:  Okay.  All right.  And then we are --

8  because of, frankly, the hurried nature of this and just the

9  U.S. Attorneys come from a district which practices differently

10 than my district and this district, which typically the

11 Government would have all of this prepared, but they don't do

12 that in all districts, but what the Government did in this case

13 is they did prepare the charges that we have already reviewed,

14 the jury charges.

15         And I'm going to put those in writing and give them

16 back to them because they go to the elements of the offenses.

17 And I think it's very important that's in writing in front of

18 them.  All right?

19         MR. DOUGHERTY:  Yes.

20         THE COURT:  Any objection to that?

21         MR. DOUGHERTY:  No.

22         THE COURT:  Okay, thank you.  Mr. Dougherty, are you

23 ready?

24         MR. DOUGHERTY:  Yes.

25         THE COURT:  All right.  We'll bring the jury in.

1          (Jury was brought in at 1:30 p.m.)

2          THE COURT:  Thanks again for your patience.  We were

3   trying to work some things out that I think will expedite stuff

4   for this afternoon.  We're going to start with closing

5   arguments.  Because the Government has the burden of proof, it

6   goes first, and then it gets what's called rebuttal.

7          They'll go first, and then Mr. Dougherty will give a

8   closing argument, and then there is a rebuttal, which is really

9   just to address things that were raised by Mr. Dougherty in

10  closing argument that the Government wishes to respond to.  It

11  is not to repeat everything you heard in the first closing

12  argument, all right.

13         And then I'm going to read you the instructions, and

14  then you're off to the races.  Okay?  And I don't mean by

15  races, you need to hurry.  That's an expression, sorry.  You

16  are off to deliberate.  And you take as long as you want.  All

17  right.  Thank you.  Mr. Perri -- I'm sorry, Mr. Adkins.  Sorry.

18         MR. ADKINS:  Thank you, Your Honor.  Good afternoon,

19  everybody.  When Mr. Perri stood up in the beginning of this

20  case, I think one of the first things that he said that rings

21  true throughout the evidence that was presented in this case is

22  that words are not just words.

23         They may be as simple as that when they're on a piece

24  of paper, but provided in context and who they're delivered to

25  really changes the meaning behind those words.  And in this

620

1  case, causes concerns to the recipients and the individuals

2  named in the communications of Mr. Dougherty's words.

3         One of the things that Mr. Dougherty said during his

4  testimony here today is if you don't do this, meaning what was

5  in his communications, then there will be violence.  And I

6  think that's important to note because that is the exactly the

7  interpretation that Judge Conner told you about the letter when

8  he described it for you yesterday.

9         But just to give some background about the -- and

10  that's what closing is about, to give you some background and

11  highlight some of the points during the trial from the

12  witnesses that you heard from, again, the evidence that came

13  from the witnesses themselves during their testimony, in

14  addition to the exhibits that were admitted that you will have

15  a chance to review during your deliberations.

16         The first witness, as you remember, was Caleb

17  Enerson, the Deputy Attorney General for the State of

18  Pennsylvania.  And I believe through his testimony that you

19  took from that, that he was really to just give you some

20  background about who Mr. Dougherty is, what type of litigant he

21  was, what types of issues were being faced, and kind of

22  describe to you why Mr. Dougherty then later may have sent

23  these communications.

24         And I'd like to really point out for you that during

25  his testimony, Mr. Dougherty wanted to ask him questions about

621

1   Rule 55 and Rule 12.  And that's all well and good.

2          But even if Rule 55 and Rule 12 supported any of his

3   positions that he was taking with respect to his litigation,

4   it's important to know that that gives him no right to send the

5   e-mail that had the threat about Judge Conti that was a basis

6   for Count 2 and 4, and to send a letter to Judge Conner about

7   his problem with litigation, his litigation history and the

8   things that he wasn't getting done.

9          It gives him no right to do that even if those rules

10  support it.  And I'm not saying that they do.  I think one

11  other thing that Caleb Enerson mentioned during his testimony

12  is that the decisions by Judge Conti were all unfavorable to

13  the Defendant.  Why is that important?

14         Well, because, as you now know, the basis for Count 2

15  and the basis for Count 4 identify Judge Conti as the

16  individual to be shot in the head to shut her up.  And we'll

17  get to that more in just a minute.

18         Following Deputy -- following Deputy Attorney General

19  Enerson's testimony, you'll remember that you heard from Deputy

20  United States Marshal Eric Hanna.  During his testimony -- and

21  the point of his testimony is the Third Circuit letter that we

22  discussed here again today that was from April 7, 2015.  That

23  letter was filed with the Third Circuit, and it was the basis

24  by which Deputy Hanna and others went to interview Mr.

25  Dougherty and talk to Mr. Dougherty at his residence.

622

1              At that point in time, and you heard it straight from
2   Deputy United States Marshal Hanna, he reviewed the filing and
3   he said the language was viewed as threats.  He reviewed the
4   filing, and he told the Defendant, in no uncertain terms, I
5   believe he used those exact words, he told the Defendant, in no
6   uncertain terms that the language in that filing, Government's
7   Exhibit 6, was viewed as a threat.
8              Why is that important?  It's important because it's a
9   jury instruction you're going to hear from the judge at the
10  conclusion of closing arguments.  And it's important to
11  specifically, I would note, in jury instructions 4 and 5.
12             You'll hear about an element when the judge reads
13  these to you that one of the elements in those instructions
14  states the Defendant either intended the communication to be a
15  threat or had knowledge that it would be viewed as a threat.
16             So the purpose of Deputy Hanna's testimony is just to
17  show that at that point in time, Mr. Dougherty knew that these
18  were being viewed as threats.  We, in preparation for trial,
19  kind of called it a warning.  He was not charged for that
20  communication.  It was an attempt to tell Mr. Dougherty these
21  were being viewed as threats and the hope that these types of
22  communications wouldn't happen again.
23             What do we know?  In that communication -- and I'm
24  not going to pull up all these documents again for you, you'll
25  be able to review them.  We reviewed some of these today with

1  Mr. Dougherty already.

2          But what about that letter was threatening?  Page 11,

3  if you wish to have all 11 judges assassinated.  Page 21, since

4  now due process is apparent, all 11 judges could be shut.  Page

5  26, if judges must die to preserve liberty and property.

6          I think something else the Deputy United States

7  Marshal Hanna told you that I don't disagree with as it's

8  describes Mr. Dougherty, is that he was passionate.  I don't

9  think there's any doubt, I don't think there's any argument

10  between the parties that he's passionate about his litigation.

11          But again, as I said before, words aren't just words,

12  provided in context.  Passion isn't just passion.  It can cross

13  the line.  You cannot resort to threats because of your

14  passion.

15          The next witness we heard from directly was Judge

16  Conner.  And as you recall, Judge Conner's testimony is in full

17  support of Count 1 of the superseding indictment.  It

18  references -- he references and discussed at length the letter

19  that he received in his chambers here in this courthouse in the

20  Middle District of Pennsylvania.

21          He told you that he received this letter, which is

22  Government Exhibit 1-B.  That letter, as you may recall, was

23  discussed with Mr. Dougherty today in great detail.  But let's

24  take the witness, Judge Conner, for one second.  Because in

25  your jury instructions, you're going to be -- you're going to

624

1  be instructed about a reasonable person.

2          One of the elements of the offense is that you, as

3  you will hear, is that the communication contained a statement

4  that a reasonable recipient would view as a threat to injure a

5  person.

6          Judge Conner, 20 years in private practice as a

7  lawyer, 20 years a veteran of the federal judiciary, has a

8  docket of over 260 cases and approximately 280 individual

9  defendants.  He said over the course of his career, there may

10  be six or so items that he received, he really took as real

11  threats.  He said, but this one was different.

12          And I say that to you because he even admitted he has

13  to have some thick skin, right.  There's going to be times when

14  litigants aren't happy with decisions judges have made.  So he

15  does have thick skin.  I would submit that I think he's even

16  more than a reasonable person when it comes to this.  And I

17  think he exhibited that by his testimony and his explanations

18  to you.

19          But why was this one different?  Why was it different

20  to him in particular?  He said that this letter was very

21  serious, and he immediately contacted the United States Marshal

22  Service, which is basically the chain of how he would handle a

23  situation like this.

24          And he took personal precautions.  And you remember

25  those personal precautions that he took.  He had the Harrisburg

625

1  Police monitor his neighborhood and his house.  This is the

2  only threat in his 20 years as a judge that he notified his

3  kids and gave the Defendant's name to his kids and the license

4  plate number of vehicles that may be associated with the

5  Defendant.  He told you that he's never done this before.

6          What he also told you is, he's never even issued an

7  order in any of Mr. Dougherty's cases.  He's never been -- he's

8  never even issued an order.  What did Judge Conner know about

9  Mr. Dougherty before that letter?  Again, this is one of those

10 limiting things that the judge instructed you on about, that

11 incident at the Clerk's office.

12         Judge Conner told you he knew about that incident and

13 he gave them a little bit of context of who Mr. Dougherty was.

14 He knew there was an incident at the clerk's office, that

15 voices were raised, and he was escorted from the building.

16 Again, that clerk's office is here in this building, the same

17 building that Judge Conner has his chambers.

18         The limited purpose of that really, as the judge has

19 instructed you, is just to show you when Judge Conner is

20 reading this letter, he's thinking to himself, oh, that's that

21 guy, that's Mr. Dougherty, that's the guy that was down at the

22 clerk's office and the incident that took place at the clerk's

23 office.

24         I asked Mr. Dougherty today, and I think he might

25 have got off topic of it because I don't think I got a straight

626

 1  answer, but he addressed the envelope in Government Exhibit 1-A

 2  to Christopher Conner, the Chief Judge.  He replaced

 3  Christopher Conner, the Christ in his name in the letter, with

 4  Satan.

 5          When I asked him why he did that, he couldn't

 6  explain.  I think his response was, well, I asked him in

 7  another correspondence that he should and suggested that he

 8  should change his name.  If we could bring up again the

 9  Government's Exhibit No. 1-B at the top of page 9?  In that

10  Government Exhibit 1-B, and you'll be able to look at that

11  whenever you're deliberating.

12          There is a very direct threat of, as Judge Conner

13  said, how he wants the judges to die.  In that, Judge Conner

14  told you that he took that as in order to avoid those deaths,

15  he must issue an order.  I talked about this with Mr. Dougherty

16  today.  And page 9 of this document in Exhibit 1-B, again,

17  shows you that.

18          Why is that important as it pertains to other judges?

19  Well, you will see in Count 1 of the indictment that the threat

20  was addressed to Christopher Conner, this is the allegation,

21  and it contained a threat to injure him and other members of

22  the judiciary, federal judiciary.

23          Again, the top of this page, you've seen it before,

24  but I think if we could just highlight once again this area?

25  In the alternative, and we'll get to in just a minute, but in

627

1  the e-mails, it's otherwise, he uses in the e-mail.

2          In the alternative, so this portion of his letter

3  that the well-regulated militia at the appropriate time will

4  order the death of three state court judges by bashing of

5  skulls, three district court level judges and magistrates by

6  ISIS style beheading, and three circuit court level judges by

7  AR-15's to ensure the most just, speedy, and inexpensive

8  determination.  And it goes on to say other things.

9          That's what Judge Conner said was going to happen if

10  he didn't do what the next paragraph says, order a preliminary

11  and injunctive order related to must enter default and person.

12  Judge Conner told you that.

13          And it's not just this, I brought this up on a couple

14  occasions.  It's not just this threat specifically in this

15  document.  There's other threats.  Those were talked about, and

16  you'll be able to look through that document and see them.  But

17  why was this one of particular note to Judge Conner?

18          Well, if you go to page 1 of the document, below

19  where the Defendant addresses Judge Conner as Satanopher

20  Conner, the title of this document isn't petition for redress,

21  as Mr. Dougherty wanted to say, the title for this document is

22  execution orders pending.

23          So why -- so when you take what I just showed you on

24  page 9 at the top, and you take it in conjunction with what you

25  see here on page 1, that's where Judge Conner made the

628

1   distinction, oh, okay, I understand why he called this

2   execution orders pending.  Pending because he's waiting to see

3   whether or not Judge Conner will do what he wants him to do.

4           Again, just going through some of the testimony of

5   other witnesses for your benefit.  As a highlight, Michael

6   Corricelli was the postal inspector that you heard from

7   yesterday.  And you'll be instructed on this, and you may know

8   by hearing the evidence in this case already, that his role is

9   to satisfy the elements as to Count 1 of the indictment.

10          There were no issues with his testimony, as you may

11  recall.  There was actually no cross examination by the

12  Defendant, as you probably recall as well.  What does his

13  testimony establish?  In sum, again, as to Count 1, that the

14  necessary elements that the envelope that was addressed to

15  Judge Conner was sent and addressed to Judge Conner and

16  delivered by the United States Postal Service, that it was

17  deposited at a post office in New Jersey area, it flowed

18  through the postal service, and then it was later received here

19  in the Middle District of Pennsylvania by Judge Conner.

20          Again, that was undisputed testimony, but I wanted

21  you to know why that testimony was presented.  It was in an

22  effort to show you and satisfy the required elements for the

23  charge.  Because as you will note, when the judge reads you the

24  charge, specific to Count 1 the indictment, one of the

25  elements is that he knowingly used the United States Mail to

629

1  send a communication.  So that is the purpose of Postal

2  Inspector Corricelli's testimony.

3          Following him, you heard the testimony of Christopher

4  Cruz.  Christopher Cruz's testimony is important for what

5  reason?  One, he was the recipient of the e-mail that is the

6  subject of Count 2 of the superseding indictment.  You may

7  recall that the exhibit, Government Exhibit 2-A, if we could

8  pull that up, please?

9          You may recall that this exhibit was sent, admitted

10 here today, by Mr. Dougherty, was sent on March 21st, 2019, to

11 Christopher Cruz.  And in that e-mail, you may notice, and you

12 may have questions.  Well, it wasn't sent to Judge Conti

13 although the contents of it relate to her.  You may -- and

14 that's different from what you see in Count 1.  That letter was

15 addressed to Judge Conner.  He was the recipient.  He

16 understood the threats.

17         Here, we're not alleging that Judge Conti ever

18 received this e-mail.  And you may wonder, you know, how that

19 would play into the criminal charges.  Well, with respect to

20 the instructions that you're going to hear from the judge in

21 just a little bit, you will hear in one of the jury

22 instructions that the targeted individual -- nor is the United

23 States required to prove that the targeted individual actually

24 felt threatened or that the targeted individual even knew about

25 the threat against him or her.

1          So I say that as to say, again, the judge is going to
2    direct you on the correct law to be applied in this case.  And
3    that instruction is relative to this e-mail because it was not
4    addressed to Judge Conti.  And I wanted to make sure that that
5    was clear to you all.
6          In addition to this e-mail, if we could, please, pull
7    up that portion.  And you can see in the background what is
8    above it.  And I talked to Mr. Dougherty about this.  He is
9    asking Christopher Cruz to do certain things.  He wanted him to
10   do certain things, go to the grand jury and make an
11   investigation.
12         But that's -- he asked that after insulting him
13   mocking the FBI, because you're too stupid to realize, then
14   asked him to present information at a minimum to a grand jury
15   to investigate these violations that he's complaining of.
16         Again, just like the letter to Judge Conner, what
17   happens?  In the letter to Judge Conner, he said,
18   alternatively, here he says otherwise.  Do what I say,
19   otherwise, just like Ruby Ridge Keith Dougherty will be
20   required to order a sniper under the second amendment to shoot
21   Judge Conti in the head just to shut her up.  Even if there
22   might be collateral damage, no indictment is even possible.
23         And I want you to remember, shoot Judge Conti in the
24   head just to shut her up.  Let's, if we could please, pull up
25   Exhibit 4-A.  In Exhibit 4-A, while it's being pulled up, you

1  remember that's the basis for Count 4 of the indictment that

2  occurred on January 22nd, 2020.

3          Mr. Dougherty took the stand today, admitted to

4  sending that e-mail on that date.  It was addressed to a few

5  individuals.  One of those individuals as named in the

6  indictment as being addressed to is Caleb Enerson.  I think you

7  remember when he was testifying, he talked about receiving this

8  e-mail.  Again, this e-mail has threats as to Judge Conti.

9          If we could pull up the top of the second page,

10  please, and highlight this portion.  I'm highlighting these

11  specific portions of the e-mail in the letter in 2-A, now 4-A.

12  These e-mails, because this is the language that is contained

13  in the indictment, the crux of the matter is.

14          So basically what he's saying here is, what you need

15  to do, the crux of the matter, Keith Dougherty avers he could

16  shoot Judge Conti in the head.  Now I told you to remember that

17  language from Exhibit 2-A where the e-mail says he could shoot

18  Judge Conti in the head.  Again, we see the same language, you

19  could shoot Judge Conti in the head and claim necessity under

20  PA's Discretionary Deadly Force Doctrine.  Again, I point you

21  to that jury instruction, the judge don't doesn't have to be

22  the actual recipient of this or even know about this threat.

23          One of the final witnesses you heard from was Pat

24  Armor.  You may recall he's a Special Agent from the FBI that

25  was admitted as an expert for network architecture and computer

632

1   forensic.  Again, like Michael Corricelli, I do not believe he

2   was cross-examined or any of the testimony that he presented

3   was challenged.  Just like Michael Corricelli, his testimony

4   helped satisfy elements of the offense.

5          And I want to let you know about those.  So the

6   purpose of his testimony is to talk about the flow of the

7   e-mails, where the e-mails started, how they flow, and the fact

8   that they were actually transmitted in interstate commerce,

9   thus, they started to travel through what we call interstate

10  commerce, the internet.

11         The purpose of his testimony is to satisfy the

12  interstate commerce element, satisfy the elements of the

13  indictment that via electronic mail, transmission into commerce

14  was started as it relates to the e-mails, as I said, in Counts

15  2 and 4 e-mails, Exhibits 2-A and 4-A, because you will hear,

16  and you will know that one of the elements as it relates to

17  those e-mail counts is that the Defendant knowingly sent a

18  communication in interstate commerce.

19         So Pat Armor testimony is in support of that element,

20  and I wanted to make that connection for you even though there

21  was no cross examination, the evidence wasn't disputed that it

22  goes to that element.

23         I think it's important at this point to jump back to

24  the timeline that I went over with Mr. Dougherty today.  And I

25  think the purpose of that timeline is to prove a few things.

633

1  One, in the jury instructions that you're going to hear, and as

2  it relates to the mailing and the e-mailing of these

3  communications, that the Defendant either intended the

4  communication to be a threat or had knowledge that it would be

5  viewed as a threat.

6          And just like I talked about with Deputy Marshal Eric

7  Hanna's testimony, I believe that warning to Mr. Dougherty is

8  what is being discussed in that element.  And why is this

9  timeline particularly important?  One, 4/7/2015, a Third

10 Circuit letter, Exhibit No. 6.  4/13/2015, a meeting with

11 Deputy U.S. Marshal Eric Hanna.  In that Exhibit No. 6, by my

12 accounts, and you can do your own counting, if you need to,

13 there is over 20 judges that were referred to in that writing.

14         When Deputy Marshal Eric Hanna goes to his residence,

15 you can see from Government's Exhibit No. -- I'm sorry, the

16 Defendant has an exhibit number 1, and it says, during the

17 course of the conversation, Dougherty's tempo of conversation

18 increased and became agitated when he was surprised that Pugh

19 didn't do his job ordered by Dougherty, referring to another

20 phone call between the Marshals and Mr. Dougherty.

21         Again, that's important to show what he was thinking,

22 what he knew that others were perceiving these to be.  Again,

23 Exhibit No. 6, not a charged count, but just goes to the state

24 of mind, his knowledge, his intent, and the plan that he was

25 going to then send other e-mails.

1          And then on the timeline, you have on May 6th, 2017,

2    the mailing to Judge Conner.  What followed that?  March 4th,

3    2019, is when Christopher Cruz talked to the Defendant.  And

4    when he talked to the Defendant, again, the letter to Judge

5    Conner was brought up, again, as another warning, hey, this is

6    disturbing, people are viewing this as threats, and, again,

7    another attempt to tell Mr. Dougherty that this was being

8    perceived as threats.

9          What followed that meeting with Christopher Cruz?

10    Exhibit 2-A, Count 2, the e-mail to Christopher Cruz regarding

11    Judge Conti, as we've already seen here.  And I think one of

12    the more important things that occurs in this case, and that

13    you heard from Mr. Dougherty today when I was questioning him,

14    is after that meeting with Christopher Cruz, he is then

15    indicted on two counts; Count 1 for the mailing to Judge

16    Conner, and Count 2 for the e-mail to Christopher Cruz

17    regarding Judge Conti.

18          Why is that important?  He was indicted.  Again,

19    presumption of innocence, we're not getting into any of that.

20    Again, it's that notice requirement.  He was put on notice now

21    that an indictment was returned against him.  And not only was

22    he put on notice, he was given a copy.  He admitted to

23    receiving a copy of that indictment at his arraignment.

24          And what does that indictment show to him?  It shows

25    him exactly the communications that I showed you in Count 2 as

1  to Judge Conti, the e-mail received by Christopher Cruz, and it
2  puts him on notice as to Count 1, that Judge Conner received
3  this letter that was a threat to injure him and other members
4  of the judiciary.

5          And does he stop there?  No.  After receiving yet
6  another notice that law enforcement and other individuals are
7  perceiving these communications as threats, what does he do?
8  Exhibit 4-A, the basis for Count 4, he e-mails Caleb Enerson on
9  January 22nd, 2020.  We've already seen that.  And that is the
10 basis for Count 4 of this indictment.

11         So yet again, you have Deputy Hanna telling him.  You
12 have Christopher Cruz telling him.  You have an indictment that
13 was prepared.  And then you're still yet again another
14 communication of the very same nature.

15         That's why I highlighted the fact that the shooting
16 Judge Conti in the head, why that is so important.  Obviously,
17 it's troubling.  But it's important because he was already on
18 notice for that exact same language in Count 2, and then
19 afterwards the superseding indictment that followed with the
20 allegations in Count 4.

21         The Defendant's stated here today that his comments
22 and statements were not meant to be a joke.  We had questions
23 back and forth about that.  And I asked him, well, if they're
24 not meant to be a joke, then wouldn't you agree they're meant
25 to be serious?  And I think that that's really what we have

1  here.

2        And why do I say that again?  Back to those jury

3  instructions that you will hear.  In the jury instruction, the

4  Defendant either intended the communication to be a threat or

5  had knowledge it would be viewed as a threat.  It's an or.

6  We're not conceding that he didn't intend the communication to

7  be a threat.  We're actually, I think, we believe we have

8  proven to you through the testimony that he did intend this to

9  be a threat, in addition to having the knowledge that it would

10  be viewed as a threat.

11        And I think his words about it was not meant to be a

12  joke, that this was serious, really goes to prove that.  One of

13  the things I think maybe he opened his testimony with, and I

14  talked to him about, if no one followed the rule of law, it

15  would end in violence.  I think he said it another way, another

16  point in his testimony, if you act outside of the law, there

17  will be violence or chaos.

18        What was he referring to?  Well, when he says that

19  here in court, I think you can surmise from what has been

20  introduced into evidence in this case and those writings that

21  I've showed you, that that's the violence he's talking about.

22  Shooting judges in the head.  Bashing judges' heads.  AR-15

23  style deaths.  Shooting Judge Conti in the head.

24        If no one followed the rule of law, Christopher Cruz

25  didn't follow the rule of law, if Judge Conner didn't do what

1   he wanted to do, Caleb Enerson, in that communication, Judge

2   Conti didn't do what he wanted him to do, then there would be

3   violence.

4          He didn't just say in his communications that there

5   will be violence, there will be chaos, he was specific about

6   what was going to happen.  And I think that specific nature of

7   his communications goes back to the fact that he intended it to

8   be a threat.

9          Again, we don't have to prove that he intended it to

10  be a threat, we can just tell you that he had knowledge about

11  it.  But we've proven it to you both ways.  I just want you to

12  know that the purpose of this timeline, again, was to show you

13  that these warnings, the warnings that had been made, that

14  these were being viewed as threats.  Again, the jury

15  instructions will cover part of that.

16         In a criminal case, as the judge will describe, the

17  burden of proof is on the Government beyond a reasonable doubt

18  to prove to you the elements of the offenses beyond a

19  reasonable doubt.  And he'll instruct you about reasonable

20  doubt, but I'll just give you a brief insight to that.

21         It's not beyond all doubt, it's beyond a reasonable

22  doubt, what a reasonable person would think.  You're using your

23  reason and your experiences in evaluating the evidence in this

24  case, evaluating the witnesses that took the witness stand, the

25  evidence that came from them in the form of testimony, the

638

1  evidence that was admitted as exhibits.

2          The law that Judge Connolly will read to you is the

3  law that's applied in this case.  We've heard a lot about other

4  law and other statutes, other rules, other cases from Mr.

5  Dougherty in his writings and in his testimony.  That's not

6  what controls this case, it's what Judge Connolly instructs you

7  on the law prior to your deliberations.

8          And I believe after you have taken time to evaluate

9  the evidence, look through the documents, to refresh yourself

10 of some of these statements that we have highlighted for you,

11 that all of these elements for these three offenses have been

12 proven beyond a reasonable doubt, beyond the reasonable person

13 in your experiences in life evaluating the testimony and

14 evidence that you heard here over the last couple days, because

15 of that, the Government would ask that you return verdicts of

16 guilty as to each of the three counts.

17         THE COURT:  All right, thank you.  Mr. Dougherty.

18         MR. DOUGHERTY:  Ladies and gentlemen of the jury,

19 thank you for your time and attention.  And as I had indicated,

20 I am forever in your debt.  I am of the position that I never,

21 never directed a threat to Judge Conner.  I was speaking to

22 someone as the chief executive of the Middle District of

23 Pennsylvania outlining and specifically detailing numerous

24 crimes that were being committed.

25         And for whatever reason, whether the FBI was confused

639

1  as to who was supposed to enforce them or why was not the

2  point.  The point is that we had to do something, and we had to

3  do it soon, because by that time I had four dead clients.  Now,

4  in fact, I have five.

5           So I want to just go down some of the evidence that

6  we went over and give you some opportunity to take a look at it

7  from my perspective.  Admitted, this is clearly from my

8  perspective, and I'm asking for your help in the process.

9           There are contradictions.  Judge Conner said in his

10  testimony in a very flippant way, and however sincere he was,

11  he said, well, the transfers were on autopilot as he was just

12  following what Judge Kane had done previously.

13           Now it's true Judge Kane is the one that started the

14  process that without any due process of law, without any

15  reasoning, without any hearing, without any proof as to why it

16  was necessary, she had transferred a number of my cases out of

17  the Circuit and, in fact, had assigned them to a single senior

18  judge -- well, let me correct that.

19           According to Judge Conner, and it was an opportunity

20  for me to learn something, he said that once the Chief Judge of

21  the Middle District makes the request for a transfer, it is up

22  to the Chief Judge of the Circuit.  Now I want you to realize

23  that was an introducing element that I wasn't familiar with.

24  So, therefore, it brought into effect a federal statute called

25  the quorum statute.

640

1           What that means is at 28 U.S.C. 46(b), Congress said,

2  you have a right in your local enclaves how you will, in fact,

3  empanel juries, empanel the appellate panels at the Circuit

4  level.  But in paren B, it specifies that you will do it by the

5  orders and by the rule established by the Federal Circuit.  Not

6  all Circuits have a right to do it.  You will do it by rule

7  established by the Federal Circuit.

8           That's why I had read into the record the rule where

9  not only must you randomly assign the judges' panels, you must

10 then randomly assign the cases.  Well, they didn't randomly do

11 anything.  This Frederick Motz was appearing in a Fourth

12 Circuit case that had nothing to do with the Third Circuit.

13          It was preliminary in a matter where I was seeking to

14 compel arbitration in a case that actually came back here in a

15 different format all together.  No sense getting into it.  In

16 that circumstance, he was a retired district court judge, and

17 it was the Chief Judge of the District of Baltimore asking him

18 to come out of retirement and sit on an appellate panel in the

19 Fourth Circuit.

20          Normally this requires an order of designation.  And

21 you can look at the Government's docket, and you will see there

22 are two different orders of designation coming out of the

23 Circuit.  There is no order of designation that originally

24 assigned Frederick Motz to Keith Dougherty.  So I tell you,

25 it's completely illegitimate.

1          But I let that go because I had other matters where I
2    could address it.  He then was transferred or sought by Chief
3    McKee to, in fact, oversee a case, 13-CV-1868 that had never
4    even had a summons issued.  I said, what is going on here?  Why
5    did you bring him across the border to take this case?
6          Then it happens that where Judge Conner had indicated
7    this was a random happening, factually 13-CV-857 was properly
8    served, everyone knows it was properly served.  And it happened
9    to be a Delaware corporation that, in fact, was being sued.
10         However, they felt that they were a Pennsylvania
11   entity and, therefore, there was no federal jurisdiction.  The
12   same kind of mistakes that are being made in the letter by
13   Judge Conti, making statements about service that are all
14   completely inaccurate.  But that's not the point.
15         The point is, it's too late once default has been
16   sought against you for a judge to bail you out.  As I explained
17   to you, Justice Ginsburg and I, we have differing political
18   views without a doubt.  The last unanimous opinion she wrote
19   basically from her death bed was reciting an opinion in
20   *Greenlaw versus U.S.* indicating judges are passive extensions
21   of Government.
22         They are not active litigators.  They are not allowed
23   to step in front of someone who doesn't know what they're doing
24   or even made an honest mistake or made a default and save them.
25   But that is every time one of Keith Dougherty's opponents did,

642

1   in fact, make a mistake, that's exactly what happened.

2           So what happened in that case?  Magistrate Blewitt,

3   who Judge Conner indicated he didn't directly oversee, but that

4   is the way it works.  The magistrate is assigned to an actual

5   district court judge.  The magistrate is permitted to do

6   preliminary matters only.  He doesn't have jurisdiction to do

7   any final or dispositive rulings.

8           Then it is a report and recommendation that is given

9   to the actual judge, and that judge makes a decision whether

10  they're going to accept it or reject it.  That never happened

11  in this case.  It was at this point I moved for default.

12          And Magistrate Blewitt stepped in and indicated that

13  the attorneys representing Carlisle Tire and Wheel, a

14  multi-billion dollar corporation who had left Pennsylvania to

15  avoid our union rates and relocated their manufacturing to

16  Tennessee just to cut the union workers out, left leaving

17  millions of dollars of unpaid debts to local vendors.

18          And at that point, you really expect me to believe

19  that they were confused by the caption on the document when, in

20  fact, it was correct because it was Carlisle Tire and Wheel

21  Company, comma, Incorporated, which you would need to identify

22  for diversity jurisdiction purposes.  And it had diversity

23  jurisdiction.

24          So I sought default.  The excuse was the caption.

25  And I must reiterate, failing to respond is fatal.  No one can

643

1  save you, as indicated.  You must plead those facts for
2  yourself.  All they had to do was simple proper procedure and
3  they would have won.  They would have won that argument.

4        The account would have been reopened and, in fact,
5  they would have had 28 more days to respond.  It must have been
6  believable if -- on the merits, it would have been, let's put
7  it this way -- if, in fact, as an end product somewhere the
8  case got through the merits and they indicated that there was
9  no debt or they wound up indicating the debt was owed and they
10 put it in escrow to properly determine who should get paid.
11 But that's not what happened.

12        So then after these embarrassments, I wound up having
13 to file another mandamus to the Court of Appeals to force one
14 thing, the enforcement of default.  No appeal, no discussion,
15 just enforce the rules.

16        And ultimately this became unanimous Supreme Court
17 opinion that mandatory claims processing rules are
18 unauthorable, and when they are properly invoked, they must be
19 enforced except, apparently, whenever dealing with me.  This is
20 when, this is going on, and it's dragging out, and it's getting
21 more embarrassing and more attention is being brought to it,
22 that's when they recruit Frederick Motz.

23        So this is the third case in a row that he's assigned
24 to belonging to me.  That doesn't meet my definition of random.
25 And, in fact, random is a due process right, it's not just a

644

1  procedural thing.  It means it must be guaranteed.  You are not

2  guaranteed a win, you are guaranteed due process of law.

3  That's all it is.

4          So that situation, the Fourth Circuit created the

5  confusion.  The other things that were assigned, transferred

6  ultimately.  Another case was filed.  Totally unrelated.  Had

7  nothing to do with any of the litigants that were in the case

8  in question.  It was me and Larry Runk on other issues.  At

9  that point, there was a situation because I was suing the

10  unified judiciary to enforce the concept that everyone has a

11  right to appear personally.  That's what it was.

12          I reserved, it's a technical thing, I reserved the

13  state court jurisdiction through a Windsor notice and in the

14  federal court under England reservation.  It went all the way

15  to the Pennsylvania Supreme Court, and they would not hear it.

16  Which is what you have to do.  You may not get a proper ruling,

17  but you have to give them the opportunity.  Then the guarantee

18  return will not be denied.

19          The problem then was the Pennsylvania Supreme Court

20  assigned Michael Daily from the Philadelphia office of the

21  Supreme Court.  He misread the local rules.  Honest mistake,

22  but he misread them.  He filed a motion to dismiss under

23  12(b)(6), again perfectly appropriate, but he didn't attach the

24  brief.  Because he wrote the local rule, he had an extra --

25          THE COURT:  All right, all right.  So remember, you

645

 1   can't testify.  You're speaking as a lawyer.  And so there's no

 2   evidence about this particular thing that you just said in the

 3   record.  You didn't testify about it, right?

 4            MR. DOUGHERTY:  Well, yes, I did.  All of the --

 5            THE COURT:  You didn't testify about the details of

 6   what you just described, did you?

 7            MR. DOUGHERTY:  Well, you -- again, I thought you

 8   wanted me to cut the details short in that circumstance.

 9            THE COURT:  No, that's -- then -- you can only now

10   argue based on the evidence that's in the record.  This is not

11   an occasion for you to provide new testimony.  So you need to

12   limit your closing argument to what is in evidence, and you can

13   draw conclusions from that and ask the jury to draw

14   conclusions, but you cannot now add new facts.

15            MR. DOUGHERTY:  Okay.

16            THE COURT:  Okay.

17            MR. DOUGHERTY:  So the issue here is Judge Conner

18   telling the jury all of this was done randomly and, in fact,

19   14-CV-922 was assigned to Frederick Motz, and then 14-CV-480

20   was assigned to Frederick Motz after various procedural

21   defects.  And there was nothing random about that.

22            So if someone says an indictment -- excuse me, in an

23   indignant way, the assignment was random, you can take a -- as

24   the jury, as the fact finder, you are permitted to say, well,

25   that doesn't make any sense if, in fact, he said everything was

646

1  done above board, randomly, and, in fact, all of the judges are

2  of highest integrity.

3          But, in fact, the facts point out that not one of

4  these cases was randomly assigned.  Every one of them had at

5  its core one issue, don't let Keith Dougherty appear pro se.

6  And in a related sense, you heard testimony from a marshal that

7  Judge Conner was concerned by the incident in the Middle

8  District Clerk's office, that Keith Dougherty never entered.

9          I wasn't in that office.  I was not allowed to be in

10  that office because the service processer was there as

11  referenced by learned counsel.  You cannot serve the document

12  yourself.  So I stood neutral in the hallway by the elevator

13  while Michael Cobaugh entered.

14          MR. PERRI:  Objection, Your Honor.  He's testifying

15  again about the incident on April 30th.

16          MR. DOUGHERTY:  I had --

17          THE COURT:  There's a document that's in evidence.

18  If you want to limit -- I'm going to let this go.  There's a

19  document in evidence about that incident.

20          MR. DOUGHERTY:  If you remember, I read that portion

21  that was entered into -- the affidavit of service, which he has

22  to sign under penalty of perjury, I read it into the record for

23  myself and for you to hear.  You can look at it.  You can view

24  it for yourself.

25          Whereas the Marshal was under the impression or --

1   excuse me, he said clearly, I heard from other people.  You

2   know, he wasn't there.  He didn't see it.  There is no direct

3   testimony in the record that, in fact, Keith Dougherty had

4   anything to do with that incident.  It's basically hearsay.  I

5   didn't object to it because he made the fact clear that he had

6   no direct knowledge of it.

7            And at that point, I had now presented it into the

8   record a statement under oath signed by the actual service

9   processer that, in fact, Keith Dougherty was not the one

10  serving it, Keith Dougherty was not the one in the office, I

11  was out in the hallway.

12           It is true that he was attacked by the Marshals and

13  detained.  I tried to pull him into the elevator and take him

14  down with me.  And, in fact, they kept him as the doors closed

15  on my arms.

16           So the simple reality was at that point, Peter Welsh

17  came back to the scene and told him, because it is, in fact, a

18  petition for redress, there is no way for the clerk to refuse

19  service.  It was a confused overreaction by an inexperienced

20  person in the office thinking that she was doing something

21  improper.

22           So at that point, I don't know how to handle that

23  if, in fact, the incident never occurred as reported to Judge

24  Conner.  In fact, it's confusing as the concept that I sent

25  something to Judge Conner as a threat when, in fact, he is in a

648

1   position where if you're going to claim that crimes are being

2   committed, you have to do it through him or through official

3   channels or something else.

4            So you can assess the difference for yourself, that

5   the Marshal clearly said it wasn't his direct knowledge, he

6   didn't know for sure, and therefore now you have a direct

7   response where that individual putting down that statement is

8   doing so under penalty of perjury and, in fact, you can see

9   that is exactly what it's there for.

10           If you experience any difficulty in the service

11  process to include the Defendant refused to accept service, you

12  would say that.  And after a number of times, you can take a

13  different cause of action.  So as defense -- excuse me, the

14  prosecutor legitimately said, I had Caleb Enerson read into the

15  record Rule 55.  Very simple.  The clerk must enter default.

16  There's no getting around it.  It's very simple.

17           All he had to do was file a 55(c) motion and give any

18  plausible excuse whatsoever and, in fact, the default must be

19  opened.  But he apparently did not know that.  I asked him a

20  number of questions to try to elicit from him, do you really

21  know the rules of federal practice.  And he does not.

22           So he didn't do it, yet he said -- and he tried to

23  say to you that all that was done was an e-mail service.  I

24  want you to understand something.  Contrary to what Judge Conti

25  said in the Pennsylvania rule of appellate procedure, which

 1   that is the proper place you cannot sue a state agency in the

 2   Common Pleas Court, as she improperly says in her opinion,

 3   can't do it.

 4          You're not allowed to sue a state agency in the Court

 5   of Common Pleas, you have to sue them in the Commonwealth

 6   Court.  And therefore, you use --

 7          THE COURT:  All right, I'm going to interject again.

 8   You cannot testify.  You can argue based on what's in the

 9   record.

10          MR. DOUGHERTY:  What was in the record and, in fact,

11   the learned counsel had me read or he had demonstrated was

12   these facts that are incorrect as to what the service --

13          THE COURT:  The fact that you might disagree with the

14   facts and you want to offer competing testimony now is

15   improper.  You had an opportunity to adduce evidence.  At that

16   point, it should have been addressed.  You are not allowed to

17   testify.  You can only do argument at this point.

18          MR. DOUGHERTY:  Good enough.  So then we find as the

19   process moves along, the proper conduct occurred with Judge

20   Conti, she recused herself.  And that is all that anyone could

21   ask.  And now we get another fresh look at it, and we'll be

22   going from there.  But that is not any way implying that

23   someone should be shot.

24          The judge does have complete control over her own

25   tribunal jurisdiction, and realistically only the judge can, in

650

1   fact, recuse herself or file -- you can file a mandamus and the

2   Court of Appeals will force them off the case.  I wasn't about

3   to go through that process.  So you can then say that Caleb

4   Enerson has not been completely truthful with you.  He

5   definitely doesn't like Keith Dougherty.  He definitely thinks

6   I was excessively litigious.  He definitely thinks this.

7          But when he was asked pointblank to point in the

8   record for you for you to review what document did he enter

9   into the case, and he actually went looking for it when I knew

10  all along he never filed anything, he then turned around and

11  acted as though the case was over.  The case was not over.  Not

12  when I was indicted.

13         But after I was indicted, Judge Conti, whether it was

14  for my motion to recuse herself or on her own said, no, that's

15  just a bridge too far.  If I've been named in some sort of

16  threat, I should recuse myself.  She did.  Perfectly

17  appropriate.  When she was given the case, she was Chief Judge.

18  She steps down as Chief Judge and takes senior status.  One of

19  the reasons if, in fact, any crimes they've alleged are, in

20  fact, are true and indicted, she would lose her pension.

21  Whereas if in --

22         MR. ADKINS:  Objection.

23         THE COURT:  You know, there is no evidence of that.

24  And you are -- and I am actually -- you have -- I'm getting to

25  the point where I'm just going to shut you down because I've

651

1 had to interject a number of times.  You've got to play by the

2 rules.  You have every right to proceed pro se, the jury can't

3 hold that against you.

4      But if you are going to proceed pro se, you have to

5 abide by the rules that I would make the Government lawyers

6 abide by.  I'm not going to give you anymore warnings.

7      MR. DOUGHERTY:  Okay.

8      THE COURT:  No more testimony.

9      MR. DOUGHERTY:  Good enough.  Then there's Mr. Cruz

10 who was clearly engaged in a ruse according to Jeffrey

11 Finucane.  I don't hold that against him.  In fact, if it were

12 to be a circumstance where he was trying to get the truth out

13 of me so that he could complete the elements necessary for an

14 indictment, that would be perfectly acceptable.  However, as

15 far as I'm concerned, that gives you an understanding as to,

16 one, he believes under the right circumstances it's okay to be

17 dishonest.

18      If the means justify the ends, it's perfectly okay.

19 There's no dispute about that.  I was told that his conduct was

20 a ruse, always was a ruse by Jeffrey Finucane --

21      MR. ADKINS:  Objection, Your Honor.  That fact is not

22 in evidence, Jeffrey Finucane told Mr. Dougherty that Mr.

23 Cruz's conduct was a ruse.  That never came out.

24      MR. DOUGHERTY:  I questioned myself on the stand.

25      THE COURT:  Okay.  There is no evidence, Mr. Finucane

1  was not a witness, there was no evidence adduced about what Mr.

2  Finucane said that would be admissible for the truth of the

3  matter, so I'm going to strike the comment.  Move on.

4         MR. DOUGHERTY:  Good enough.  So in my direct

5  communication with Christopher Cruz, he said, I believe

6  honestly that the clerk committing a crime is not his job.  And

7  I can understand that being a Capitol Hill police agent.

8  Whereas I also explained to you in my direct testimony that the

9  real FBI agent in the room, who is the one who visited me as of

10 April 13th, 2013, actually jumped up in the middle of the

11 proceedings and indicated, you're just trying to get your cases

12 advanced.  I said, of course.

13        Then he asked me, who enforces this law?  And I was

14 taken aback.  I really was taken aback by the question.  I

15 thought the FBI investigated and enforced federal law.  So this

16 is all going forth in coordination with a background that you

17 can assess for yourself that if someone in the process of an

18 investigation feels it's appropriate to lie, that's perfectly

19 appropriate.

20        You can then judge, would they be willing to fudge

21 the truth or whatever.  And again, I was under the impression I

22 was dealing in a confidential and closed environment whereas I

23 was trying to get FBI Agent Cruz to make a decision, move

24 along, or, in fact, step aside and get someone who did because

25 it was quite clear when I was talking to him he was confused.

1          There never was anything in the conversation

2     indicating when he showed me the letter that you have to watch

3     out what you're saying here or whatever.  I thought it was

4     extraneous, and I thought, you know, that I -- I thought I was

5     there for the active case that, in fact, I filed a complaint

6     with the FBI for them to look into -- my mistake.

7          So you have a lot of statements that this terrible

8     potential threatening environment.  That is a real concern.

9     Once again, I never submitted a threat to anyone knowingly with

10    the intention of threatening them.  I said some things that are

11    actually factually true and threatening, that, in fact, the FBI

12    did shoot Vicki Weaver in the head, she did die and, in fact,

13    the FBI agent that shot her was, in fact, indicted and then

14    they dropped the charges against him because of official

15    authority.

16          I made reference to that in the e-mail a number of

17    times.  That is called Rule 12 authority or qualified immunity.

18    That is what was going on.  And I don't want to see things like

19    that intended.  The Government has indicated somewhat loosely

20    that the mere sending of an e-mail is interstate commerce.  I

21    question very simply that was there any actual commerce that

22    took place.  Did, you know, someone buy or sell something or

23    whatever the case may be.  And there was none.

24          So I didn't hear any specifics about how they were

25    able to document where this e-mail specifically went from the

654

1  Harrisburg location and, in fact, was in commerce across state

2  lines.  And again, just a point to consider.

3            The thrust of my efforts besides to preserve my

4  reputation, regain monies owed to me through various cases, we

5  won't get into, is for further concern as to we the citizens of

6  Pennsylvania.  I'm going to tell you right now, through this

7  process I have come to the realization that were it not for the

8  unique structure of the Pennsylvania constitution, we wouldn't

9  have America.  It just wouldn't exist.

10            We don't have a three article convention, we have a

11  five.  And Article 1 is the inherent rights of the people,

12  Article 1, Section 1, inherent rights of mankind, the right to

13  protect your reputation, the right to protect your property,

14  and the right to pursue your own happiness.

15            They of the Middle District of Pennsylvania for some

16  reason took it upon themselves to say, not if you are appearing

17  pro se.  Whereas our system is very clear.  You have a

18  constitutional right to appear pro se, and that's it.

19            So then as to the further conversation as you had

20  gotten from Marshal Hanna.  Michael was the one that was doing

21  all the talking at that first meeting.  The FBI agent was

22  rather silent, so was Officer Hanna.  Michael was doing all the

23  talking.  Very professional, very helpful person.

24            And he specifically said, you know, I'm only here

25  because I was ordered to be here.  I said, fine, that is

655

1  perfect, that's the magic words.  You are blameless in anything

2  and everything that you do.  And it ultimately ended not with a

3  warning that we're looking at this under the text of warning

4  you.

5          His actual statement to me was, well, when I sit --

6  well, I already filed the petition for redress in the form of a

7  declaratory judgment action and in civil rights combination,

8  and it's on it's way to the District of Columbia as we speak.

9  He looked like the world had been lifted off his shoulders.  He

10  said, well, it looks like you're doing everything right.  And

11  we all shook hands happily.

12          How this is being characterized as somehow warning me

13  is not true.  He did ask one thing.  He said, I would ask you

14  one thing.  I said, what's that?  He said, don't blame the

15  clerks.  Some of these things happen, but it's not their doing.

16  I said to him, honestly, I said, okay, I'll give you that.

17          But do you want me to believe that the clerks were

18  wrong 22 times in a row innocently?  I said, there is a concept

19  in civil rights litigation that you can be a Defendant by

20  knowledge and acquiescence.  So I'll let you determine if, in

21  fact, that first incident had anything to do with warnings,

22  whatever, and it did not.

23          And I was not threatening.  And they made that

24  assessment.  In 2015, no one -- even though there were another

25  two communications, a second visit and a phone call where I was

656

1  following up saying, did you actually look into that mail fraud

2  complaint, you know, the whatever?  And he did not.  He had not

3  at that point.

4         I became very annoyed, and I hung the phone up.  I

5  wasn't threatening anybody.  I said, okay, I asked you to do

6  it, you're not going to do it, I hung up.  He then did in the

7  report, but he made a false assumption.  He thought simply

8  because the case had been properly filed and assigned, that

9  there was no further investigation necessary.

10        The case was properly filed because I had to drive to

11 Washington, DC, to file it.  And why would we have postal

12 service and pay the money overnight fee and where it was signed

13 for in the Clerk's office if you also have to drive and hand

14 deliver.

15        So the letter, I'll characterize once again, to Judge

16 Conner, as a different classification of communication to

17 someone in an executive capacity.  Was it offensive?  Yes.  Was

18 it vulgar?  Yes.  Was it meant to be anything other than a

19 shock, a wake-up call, let's get something going, let's do

20 something?  No.

21        It was intended to, I am expecting you to do

22 something before this, in fact, gets fatally out of control and

23 goes a different way all together.  And in furtherance of some

24 of this, you know, historical or comparative language with me,

25 I had said that was originally part of the case, a letter, to

657

1  Justice Alito.  I titled it civic duty letter.

2            THE COURT:  All right.  There's been no testimony,

3  nothing in evidence about your correspondence with Justice

4  Alito.  That is testimony.

5            MR. DOUGHERTY:  Good enough.

6            THE COURT:  And that is also the last time I will

7  allow you to testify.  If you testify again, I will end your

8  closing argument.

9            MR. DOUGHERTY:  So I'm not ordering or threatening

10 anyone.  I was predicting outcomes.  And you can use your own

11 experience, your own knowledge.  And in -- I did these filings

12 in 2019, okay.  In the election year 2020, there was nationwide

13 riots.  Forty people died.  You don't hear it on the news

14 because they don't want to report it.  But being factually

15 correct is not a threat.  Predicting dire outcomes is not a

16 threat.  It's simple reality.

17            If you -- all you have to do is look throughout

18 history.  Pattern repeats itself.  I was careful as to who I

19 was communicating with.  And this is an adversarial system not

20 a joke, rather it was intended to be a jolting wake-up call

21 that things had to move forward, things had to get done.

22            The question is an e-mail.  And the very horrible

23 reality.  Did Vicki Weaver get shot in the head?  The answer

24 is, yes.  Was the sniper charged with manslaughter?  The answer

25 is, yes.  Were the charges dropped?  Yes.  Was that justice?  I

1  don't think so.

2        But, in fact, that is what Rule 12.3 for qualified

3  immunity is.  And you don't want to be using this because even

4  in that instance, as they properly identified, was one of the

5  most embarrassing incidents in FBI history.  But Christopher

6  Cruz was unaware of the facts and circumstances.  And, in fact,

7  that is one of the things that caused my confusion and

8  frustration in my dealings with him.

9        So in closing, in the most famous jury trial in

10 common law history, William Penn was charged with offensive

11 speech, 1670.  He, in fact, was appearing pro se.  And he

12 admitted he was not learned in the law, but he basically threw

13 himself on the jury relying on their honesty and truthfulness.

14       In Count 1, the Government's Exhibit U.S. 00021, the

15 notice portion attached to the letter, it makes reference to

16 *Entick v. Carrington*.  Likewise, *Entick* was being investigated

17 for what they call seditious libel, where he actually provided

18 a suit against the Secretary of State and the Marshals who had

19 taken his documents.  Then *Watts* in 1969, the same.

20       If you put a gun in my hands, the first person I will

21 put in my sight is President Johnson.  He was indicted.  He was

22 convicted.  And the Supreme Court threw it out the conviction

23 without briefing and without oral argument.  They said, I'm

24 sorry, that's protected speech even though there was a separate

25 statute you cannot threaten the president.

1          So I need your help.  Just like William Penn said,

2     English men, don't give up your rights, I am saying to you

3     Pennsylvanians, my fellow citizens, don't give up your rights.

4     Don't allow this circumstance to be.  All they have to do is

5     repeat enough, it's a threat, it's a threat, it's a threat.  It

6     never was a threat.

7          It was given in the context of exactly what I've

8     outlined.  And I'm very detailed and specific and I don't want

9     to waste anymore of your time.  Unlike them accusing me of

10    threatening someone, I can document five of my clients are dead

11    directly related to the conduct of these courts just to get

12    even with me.  I feel responsible for them.  They didn't have

13    to die simply because I was representing them.  But, in fact,

14    they did.

15         And that's what my concern is.  So no one is entitled

16    to a win in our court system, but everyone is entitled to due

17    process of law.  That has been our concept in the common law

18    since 1257 with the confirmation of the charters.  So I've been

19    denied due process of law every step of the way.

20         And this is the first time I've had an opportunity to

21    speak to what is a valid tribunal and bring something to

22    conclusion.  I hope I have not overstepped my time.  Thank you.

23              THE COURT:  All right.  Thank you.  Any rebuttal?

24              MR. PERRI:  Yes, Your Honor.  Good afternoon.  So

25    this is the second close.  It's not going to surprise you a

1  whole lot to hear that all this stuff about whether this case
2  was properly transferred to that court or this other court or
3  whether or not or how service was conducted or effected or
4  whether there was some defect in it or what the result was of
5  the *Carlisle Tire and Wheel* case, none of it matters.

6          It's irrelevant.  In this case, you will focus on
7  what is relevant.  You will focus on the evidence in this case.
8  Just because it's important to him, and we don't dispute that,
9  just because it's important to him and it matters to him and he
10 mulls on it doesn't necessarily mean that it's relevant to this
11 case.

12          It's not.  It's not.  It doesn't have anything to do
13 with the material issues in this case.  Your determination is
14 whether or not these communications constitute threats.  All of
15 that stuff in the past, all of the machinations and individual
16 rulings and, oh, my gosh, it's just this tangled mess, none of
17 it matters.

18          The Defendant in this case, I mean, he said it on the
19 stand, didn't he?  He said, these statements, in particular the
20 one to Judge Conner, if you don't do this, there will be
21 consequences.  And those consequences will be in the form of
22 violence.  He said it.  He said it today.

23          And those consequences are consequences which he will
24 order to take place through a militia that he controls.  Guess
25 what?  That's a threat.  Whether you want to call a rose a

661

1  rose, that's a threat.  The letter to Judge Conner doesn't say,

2  Judge, look, this is taking a long time and I'm concerned, that

3  if you don't, you know, get your judges to rule in this way or

4  that way or move things along, that another one of my clients

5  might die.  Does he say that?  He didn't say that.

6           Look at the exhibits.  Look at what he says.  He

7  wrote them.  There's no question there.  These are his words.

8  What does he say?  What it says is, you'll die a violent death.

9  You'll be shot by the militia that I control.  And what's his

10 motive here?  Is it about his concern for his friends?  Or is

11 part of it money?

12          He testified today he was out 18,500 dollars in

13 connection with one of those prior lawsuits.  You also heard

14 testimony that his house had been foreclosed.  You could

15 conclude that he was desperate.  He needed a payout.  He needed

16 a payout on one of these cases.

17          And these judges are in the way.  They just don't see

18 things the way he wants them to.  Frustration, frustration,

19 frustration, building, building, building.  The witness told

20 you that the rhetoric was ratcheting up.  That's where he is.

21 That's where he is mentally when he sends these communications.

22 He admits he was trying to force progress on the cases.  Why?

23 What's the best way to do that?  Well, if you really want to

24 get your point across, you make it as extreme as you can.

25          I want to build upon something that my colleague

1  said.  He set out for you the timeline of all these different

2  events that happened.  And he told you, he said, look, the

3  marshals went to talk to this guy about the April 2015 letter.

4  They told him, hey, you can't be saying this stuff, it's

5  perceived as threatening.  Deputy Hanna testified about all of

6  that.

7          So in spite of that, what does the Defendant do?  He

8  sends the letter to Judge Conner, and he sends an e-mail to

9  this case agent, both of which have similar language.  In spite

10  of having been warned, don't do that.  Then after having been

11  indicted for those two communications, what does he do?  He

12  sends the communication in 4-A, which is the e-mail to Caleb

13  Enerson afterwards, after being told, this is so bad that we're

14  charging you with an offense, you're on notice.

15          So the point is, and I want to kind of bring you back

16  to something we talked about in opening statement, the fact

17  that he sent all three of these communications after having

18  been put on notice that they were being viewed as threatening

19  is circumstantial evidence that he intended to send a threat.

20  Circumstantial evidence of his knowledge that they would be

21  perceived as threats.

22          He can tell you whatever he wants, but you're going

23  to have to evaluate his credibility as you would for any other

24  witness.  Did he give any straight answers?  Or did he just

25  tell you what he wanted you to hear?  That's something you can

1  consider in evaluating his credibility.

2          What is a true threat?  It's when the Defendant makes

3  a statement in the context or under such circumstances wherein

4  a reasonable person would foresee that the statement would be

5  interpreted by those to whom the maker communicates the

6  statement as a serious expression of an intent to inflict

7  bodily injury or kill that individual.

8          There's some key words in there, reasonable person,

9  foreseeability, interpretation, and serious expression.  And

10 one more, context.  So there might be one particular statement

11 in the letter that's just really bad, but you can evaluate that

12 in the context of all the other wording and language and

13 statements in that communication.  That's context.

14         Context can also go beyond the letter.  The

15 circumstances in which that letter or e-mail was received forms

16 part of the context.

17         THE COURT:  Mr. Perri, about how much do you have

18 left?

19         MR. PERRI:  A couple minutes, Your Honor.

20         THE COURT:  Okay.  I was just worried about the time.

21         MR. PERRI:  This guy was already on Judge Conner's

22 radar.  He explained to you how he opened up this envelope, he

23 reads this, and he sees these things.  Wow.  It doesn't make

24 sense, there's these references to biblical passages, all kinds

25 of stuff plugged in and inserted and cut and pasted.  Wow.

664

1  He's talking about militias, it's titled execution orders

2  pending.

3          How would a reasonable person see that?  A reasonable

4  person in those circumstances in that context, how would they

5  see that?  There can't be any question.  So one interesting

6  thing I want to talk to you about before I finish is the

7  Defendant's mention of due process of law.

8          Could we please put up 1-B, page 9?  And could you

9  highlight that big paragraph at the top?  What does he say

10  there?  That's him talking.  That's not cut and pasted.  That's

11  him.  In his testimony today, the Defendant talked about due

12  process of law.

13          He said that these horrible things would happen after

14  due process of law.  Really?  Really?  Due process of law.

15  That's kind of what you're part of right now.  In this country,

16  we do issue sentences after due process of law.  Is he

17  contemplating due process of law there for these judges?

18          He could have said, hey, Judge, I think you broke the

19  law.  I think your clerk broke the law.  And I'm just letting

20  you know that you could be prosecuted.  And if you are

21  convicted, you could possibly go to jail.

22          Does he say that?  Due process of law.  He doesn't

23  say that.  Because that wouldn't be intimidating.  That

24  wouldn't get Judge Conner to do what he wants him to do.  We

25  live in a country, thank goodness, where sentences don't

665

1   include bashing of skulls.  We live in a country where, thank

2   goodness, sentences don't include ISIS beheadings.  That does

3   happen elsewhere, but not here.

4           Here we believe in due process of law.  In this

5   country, we don't shoot people with AR-15's and firing squads.

6   You see, it's not the law according to Keith Dougherty.  Every

7   judge in any of these filings, wrong.  Name the judge, any

8   judge, wrong.  Stupid.  Idiot.  Corrupt.  Criminal.

9   Conspirator.

10          The Defendant lives in a world where it's the law

11  according to Keith Dougherty.  We live in a world where it's

12  the law as determined by judges who are trained in the law.

13  And this judge is going to give you the law in this case.  And

14  you will know that this Defendant committed these offenses

15  beyond a reasonable doubt.  Thank you.

16          THE COURT:  All right.  Thank you.  I was going to do

17  instructions.  We probably want to take a break before I do,

18  right?  So we're going to excuse you.  And when you're ready,

19  let us know.  We'll be right back in, and we'll do the

20  instructions, all right.  Thank you very much.

21          COURTROOM DEPUTY:  All rise.

22          (Jury left for a recess at 2:54 p.m.)

23          THE COURT:  All right.  I could tell we had two

24  jurors that were indicating they had to go to the restroom.  So

25  that's what -- all right.  Instructions, I think, are ready to

666

1  go.  So as soon as they come back in, in about 10 minutes,

2  we'll hand out the instructions.  Any luck finding the and/or

3  for the indictment?

4          MS. LESKO:  So Mr. Bloom says, unfortunately I do not

5  have one.  I would use a special interrogatory --

6          THE COURT:  Okay.  Let's take a -- how much time do

7  you need to do a restroom break?  Like 5 or 10 minutes?  Okay,

8  thank you.

9              (Recess was taken at 2:56 p.m. and proceeding

10               reconvened at 3:08 p.m.; without the jury.)

11         THE COURT:  Okay.

12             (Jury instruction was displayed on the screen.)

13         THE COURT:  I think it's going to make it more

14  confusing because the only place the word and is used is

15  knowingly and willfully.

16         MR. ADKINS:  I think in the interstate and foreign

17  commerce, right?

18         THE COURT:  That's right, it does say in the

19  interstate and foreign commerce.

20         MR. ADKINS:  It says that.  And in the indictment,

21  Judge, it says --

22         THE COURT:  The problem is the introduction.  It

23  says, violated by various acts that are joined by.  Interstate

24  and foreign commerce, that's not an act.  And knowingly and

25  willfully isn't an act.  That's the problem with the

1  instruction.

2        So I am going to say that the word and, as used in

3  the superseding indictment, should be read as if it were the

4  word or.

5        MR. PERRI:  That would be great, Judge.

6        THE COURT:  Okay.  Mr. Young, do you know of a legal

7  objection to that?

8        MR. YOUNG:  I don't, Judge.

9        THE COURT:  Yes, okay, all right.  Let's bring the

10  jury in.

11        (Jury was brought in at 3:10 p.m.)

12        THE COURT:  We're handing out to you now

13  instructions.  Now these are not all the instructions.  So for

14  starters, you'll recall at the beginning of trial, I gave you

15  some instructions, general rules.

16        And I'm going to repeat some of those rules because

17  they're pretty important.  And I'm going to add a couple of

18  other important -- everything, all the instructions are

19  important, by the way, all of them.  I'm going to add a couple

20  more that are not in the packet.

21        The packet that you've got are really dedicated to

22  what are called the elements of the offenses that are charged.

23  I think it's important that you have that, those back in your

24  deliberation room because, as I'm going to explain to you, the

25  Government bears the burden under our system of proving each

668

1    and every element of each and every offense beyond a reasonable

2    doubt.  And you have to know what the elements are in order to

3    look at a particular offense.

4              So I want to make sure you have that back there.

5    Then there's some language in here, again, that's going to

6    describe what the meaning of some of the terms are in those

7    elements.  I want you to have that with you, okay.  So let me

8    just go over.

9              First of all, we'll start with the general

10   instruction.  So we start with your role, which I explained to

11   you at the very beginning of the trial.  And your role is the

12   finders of fact, all right.  That's your job, and it's only

13   your job.  It's not my job.  And nothing I've said, nothing

14   I've done in trial should be interpreted by you as if I have an

15   opinion about what the evidence is or what your finding of fact

16   should be or what your verdict should be.  All right.

17             Your second duty is to apply the law to the facts.

18   Now here my role is to give you the law, and here you are to

19   apply the law that I give you.  You may not like the law.

20   Doesn't matter.  You have to apply the law that I give you.

21   All right.

22             You've heard a lot about judges, the role of judges.

23   The role of the judges in this system is to decide the law and

24   to give the law to you.  The role of the jury is to apply the

25   law to the facts.  And so you're not supposed to substitute

669

1  what you think the law ought to be for what it is.  No, you

2  just apply the law as I say and as I instruct you.  All right.

3          Whatever your verdict is, it has to be unanimous.

4  Now -- so all of you have to agree on the verdict for each of

5  the three counts, okay.  And you are to discuss the case,

6  right.  And you're supposed to bring to this your own opinions

7  and your own views, and then you're supposed to listen to what

8  your colleagues say about their views and come to a decision.

9  So that's your responsibility.

10          Now when you're going to deliberate, again, no

11  research, no consulting with anything outside the room.  The

12  deliberations are based solely on the evidence that was

13  introduced and your findings based on those, all right.  And

14  then you are to perform your duties fairly and impartially.

15  You're not supposed to be motivated by sympathy, prejudice,

16  fear, or opinion, all right.  You're just supposed to apply the

17  facts.

18          We talked about evidence.  You remember I told you

19  there's really two types.  There are only two types, direct and

20  circumstantial.  And the law makes no distinction between those

21  two things.  Remember I told you about the raincoat example.

22  That's kind of the way to think about it.

23          And again, it's what came out of the witness's mouth

24  and it's what was introduced by exhibits, right, the exhibits.

25  And the exhibits will go back in the jury room with you, you'll

670

1  have them.  You'll have the communications that are at the

2  center of the case.

3          Here's what's not evidence.  What I say, what the

4  lawyers say, what Mr. Dougherty said when he was not

5  testifying, and the indictment is not evidence.  Objections,

6  not evidence.  Rulings by me, not evidence.  Anything I struck

7  during testimony, if I did, that's not evidence.  You're

8  supposed to disregard that.

9          You should use your common sense in weighing the

10 evidence.  And so you consider it in light of your everyday

11 experience of people and events.  And you give the evidence

12 whatever weight you think it deserves, all right.

13         Now Mr. Dougherty proceeded pro se.  You heard that

14 word, right.  It means he didn't have a lawyer.  He has a

15 constitutional right to do that.  And you can't hold that

16 against him.  He has every right to do that.  And his decision

17 to do it, therefore, should not be considered by you in terms

18 of his guilt or his innocence.  All right.

19         We talked at the beginning of trial about how to

20 assess credibility, what you should think about.  Again, you're

21 going to apply your common sense.  You're going to think about

22 the opportunity, the ability of the particular witness to

23 observe what he or she testified about.

24         You're going to consider the quality of the witness's

25 knowledge and understanding, the witness's appearance and

671

behavior and manner while testifying, whether the particular
witness had an interest in the outcome of the case, whether
that witness was motivated by bias or prejudice or some other
motive, and any relation that the witness had to the parties in
the case or to the verdict that could be rendered in the case,
the consistency or inconsistency of the witness's testimony
inherently.

You know, is it inherently consistent in all
respects, in some respects?  Is it consistent with the
documents and with other testimony you heard?  You think about
all of those things when you assess witnesses credibility.

You're not required to accept any witness's testimony
and you're free to accept some or not all or parts.  That's all
up to you.  Basically, you're going to decide what weight to
give the particulars of any witness's testimony.

And we had the Defendant testify in this case.
Remember the Defendant, I told you at the beginning, has a
constitutional right not to testify.  If a Defendant chooses to
testify, you are to weigh that testimony the way you would
weigh the testimony of any witness.  So you apply those same
considerations that I talked with you about to the Defendant's
testimony in this case.

Now Mr. Dougherty pleaded not guilty to the three
offenses.  And he has a constitutional right to do that.  And
he is presumed to be innocent under our constitution.  So he

1   started the trial with a clean slate with no evidence against

2   him.  And the presumption of innocence stays with him unless

3   and until the Government has presented evidence that overcomes

4   the presumption by convincing you that he is guilty of the

5   offenses individually or all of them beyond a reasonable doubt.

6           So the presumption of innocence requires that you

7   find him not guilty unless you are satisfied that the

8   Government has proved guilt beyond a reasonable doubt.  The

9   burden or obligation of proof, as I've told you, remains on the

10  Government from the beginning of trial and through the end of

11  trial.

12          In order for you to find Mr. Dougherty guilty of the

13  offenses charged, the Government must convince you that he's

14  guilty beyond a reasonable doubt.  And that applies, that

15  burden of proof applies to each element of the offenses.  And

16  I'll talk about the elements in a couple minutes.

17          So you can't convict a Defendant based on suspicion

18  or conjecture, only on evidence proving guilt beyond a

19  reasonable doubt.  It does not mean proof beyond all possible

20  doubt or to a mathematical certainty.  Possible doubts or

21  doubts based on conjecture or speculation or hunch are not

22  reasonable doubts.

23          A reasonable doubt is a fair doubt based on reason,

24  logic, common sense, or experience.  It is a doubt that an

25  ordinary reasonable person has after carefully weighing all of

673

1 the evidence and is a doubt of the sort that would cause him or

2 her to hesitate to act in matters of importance in his or her

3 own life.

4         It may arise from the evidence or from the lack of

5 evidence or from the nature of the evidence.  If after having

6 now heard all the evidence you are convinced that the

7 Government proved each and every element of the offense charged

8 beyond a reasonable doubt, you should return a verdict of

9 guilty for that offense.

10         However, if you have a reasonable doubt about one or

11 more of the elements of the offense charged, then you must

12 return a verdict of not guilty for that offense.  All right.

13         Now let's turn to the jury instructions you've got.

14 And you're going to see jury instruction number 1.  And what it

15 says is, Count 1 of the superseding indictment.  So you've

16 heard that term, the superseding indictment.  That's a charging

17 document, that's not evidence.  And the fact that a Defendant

18 is charged by an indictment is of no probative value.  You

19 don't attribute any -- that's not evidence, so you don't pay

20 attention to it or you don't treat it as evidence.  It's a

21 charge.

22         So Count 1 of the superseding indictment charges that

23 on or about the 6th day of May in 2017, in the Middle District

24 of Pennsylvania, the Defendant, Keith Thomas Dougherty,

25 knowingly and willfully did deposit in an authorized depository

674

1  for mail matter, to be sent and delivered by the postal

2  service, or knowingly caused to be delivered by the postal

3  service according to the directions thereon, a communication

4  dated May 5, 2017, addressed to Christopher Conner, who is the

5  Chief Judge of the United States District Court for the Middle

6  District of Pennsylvania, and containing a threat to injure

7  Chief Judge Christopher Conner, and other members of the

8  federal judiciary, all in violation of Section 876(c) of Title

9  18 of the United States Code.

10            Let me point out to you a couple things in this.  We

11  talked about what a superseding indictment is, and that it is

12  not evidence.  Then if you look, it says in the first sentence,

13  that on or about the 6th day of May, all right.  And that

14  doesn't mean the Government has to prove that on May 6th, it

15  occurred.  It has to be reasonably around on or about May 6th.

16            And then one other thing I want to point out to you

17  is, there's at least twice, it says knowingly and willfully,

18  the word and.  And just by the nature of indictments, that kind

19  of legal history of indictments, when you see and in an

20  indictment, it means or.  Okay.

21            So -- but here's the good thing.  This is very

22  legalistic language, right, in this Count 1.  We're going to

23  get to another instruction, which is going to tell you the

24  elements of the offense.  And that's what you'll really really

25  pay attention to, okay.  All right.

1          Now let's go to number 2.  Count 2 of the superseding

2   indictment charges that on or about the 21st day of March,

3   2019, in the Middle District of Pennsylvania, the Defendant,

4   Keith Thomas Dougherty, knowingly and willfully did transmit in

5   interstate and foreign commerce via electronic mail, an

6   electronic mail communication to Federal Bureau of

7   Investigation Special Agent Christopher Cruz, and the

8   communication contained a threat to injure Judge Joy F. Conti,

9   United States District Judge for the Western District of

10  Pennsylvania, specifically, quote, Just like Ruby Ridge Keith

11  Dougherty will be required to order a sniper under the second

12  amendment to shoot Conti in the head just to shut her up,

13  unquote.  All in violation of Section 875(c) of Title 18 of the

14  United States Code.

15          Next jury instruction number 3, Count 4.  Now there's

16  no Count 3, you don't need to consider that.  It just happens

17  again, right.  Legalism, right, it's legalism and whatnot.

18  You're looking at 1, 2, 4 of the superseding indictment.

19          Count 4 of the superseding indictment charges that on

20  or about the 22nd day of January, 2020, in the Middle District

21  of Pennsylvania, the Defendant, Keith Thomas Dougherty,

22  knowingly and willfully did transmit in interstate and foreign

23  commerce via electronic mail, an electronic mail communication

24  to Caleb Curtis Enerson, Pennsylvania Office of the Attorney

25  General, and the communication contained a threat to injure

676

1  Judge Joy F. Conti, United States District Judge for the
2  Western District of Pennsylvania, specifically, quote, The crux
3  of the matter is Keith Dougherty avers he could shoot Judge
4  Conti in the head and claim necessity under PA's Discretionary
5  Deadly Force Doctrine, unquote.  All in violation of Section
6  875(c) of Title 18 of the United States Code.

7          Next, now we have the essential elements of that
8  first type of charge, right, which is in Count 1.  So this is a
9  true threat to injure a federal judge in violation of 18 U.S.C.
10 Section 876(c).  This law makes it a crime to transmit in
11 interstate or foreign commerce a communication threatening to
12 injure another person.

13          For you to find the Defendant guilty of this crime,
14 you must be convinced that the United States has proved each of
15 the following beyond a reasonable doubt:

16          First, the Defendant knowingly used the United States
17 Mail to send a communication;.

18          Second, the communication contained a statement that
19 a reasonable recipient would view as a true threat to injure a
20 person;

21          Third, the Defendant either intended the
22 communication to be a threat or had knowledge that it would be
23 viewed as a threat;

24          Fourth, the communication was addressed to a United
25 States federal judge.

677

1          Now let's look at the elements of the other two
2   charges, that's the next page.  So the Defendant is charged in
3   Counts 2 and 4 with transmitting a threat to injure in
4   interstate communication in violation of 18 U.S.C. Section
5   875(c).  For each of these counts, the Defendant can be found
6   guilty only if the following facts are proved by the Government
7   beyond a reasonable doubt:
8          First, that the Defendant knowingly sent a
9   communication in interstate commerce;
10         Second, that the communication contained a statement
11  that a reasonable recipient would view as a true threat to
12  injure a person;
13          And third, that the Defendant either intended the
14  communication to be a threat or had knowledge that it would be
15  viewed as a threat.
16         Now give me a second.  (Pause.)  Now when you
17  consider the charges, you consider them element by element, but
18  you also consider the charges separately.  The number of
19  charges is not evidence of guilt.  That should not influence
20  your decision in any way.  And you must separately consider the
21  evidence that relates to each offense and return a separate
22  verdict for each offense.  Your decision on one offense,
23  whether guilty or not guilty, should not influence your
24  decision on any of the other offenses charged.  Each offense
25  should be considered separate.

678

1          Let's go to jury instruction number 6, which is the
2    determination of true threat, because that's part of the
3    elements of both of the types of offenses.  A statement is
4    objectively a true threat when a Defendant makes a statement in
5    a context or under such circumstances wherein a reasonable
6    person would foresee that the statement would be interpreted by
7    those to whom the maker communicates the statement as a serious
8    expression of an intention to inflict bodily injury or take the
9    life of an individual.

10          It does not matter whether or not the Defendant
11   agrees that his communication is objectively threatening in
12   nature.  What matters is how it would be viewed by a reasonable
13   recipient.

14          Next, interstate commerce.  Because of the interstate
15   nature of the internet, if you find beyond a reasonable doubt
16   that the Defendant used the internet in communicating a threat,
17   then that communication traveled in interstate commerce.
18   Submitting data on the internet necessarily means that the data
19   travels in interstate commerce.  Proving interstate
20   transmission alone is sufficient to prove transmission through
21   interstate commerce.

22          Next, knowingly.  The term knowingly is used in these
23   instructions to describe the alleged state of mind of the
24   Defendant, means that he was conscious and aware of his action,
25   realized what he was doing or what was happening around him,

679

1   and did not act because of ignorance, mistake of fact, or

2   accident.

3          The United States is not required to prove the

4   Defendant was aware of whether his alleged conduct was against

5   the law.  Ignorance of the law is not a defense to these

6   charges.

7          Next, number 9.  Intent ordinarily may not be proved

8   directly, because there is no way of fathoming or scrutinizing

9   the operations of the human mind.  But you may infer the

10  Defendant's intent from the surrounding circumstances.  You may

11  consider any statement made and done or omitted by the

12  Defendant, and all other facts and circumstances in evidence

13  which indicate his state of mind.

14         Similarly, knowledge may be proved by the Defendant's

15  conduct and words, and by all the facts and circumstances

16  surrounding the case.  The United States does not have to prove

17  that the Defendant intended to carry out the threat or was even

18  capable of carrying out the threat at the time it was made.

19  Nor is the United States required to prove that the targeted

20  individual actually felt threatened, or that the targeted

21  individual even knew about the threat against him or her.

22         Number 10.  Intent and motive are different concepts

23  and should never be confused.  Motive is what prompts a person

24  to act or fail to act.  Intent refers only to the state of mind

25  with which the act is done or omitted.

680

1          Number 11.  Now we had one expert testify.  The rules
2   of evidence ordinarily do not permit witnesses to testify as to
3   their own opinions or conclusions about important questions in
4   a trial.  But there's an exception, and that exists for expert
5   witnesses.  And that is someone who, by education or
6   experience, may have become knowledgeable in some technical,
7   scientific, or very specialized area.  If such knowledge or
8   experience may be of assistance to you in understanding some of
9   the evidence or in determining a fact, an expert witness in
10  that area may state an opinion as to a matter in which he or
11  she claims to be an expert.

12          You should consider each expert opinion received in
13  evidence in this case and give it such weight, if any, as you
14  may think it deserves.  You should consider the testimony of an
15  expert witness just as you consider other evidence in this
16  case.  If you should decide that the opinion of an expert
17  witness is not based upon sufficient education or experience,
18  or if you should conclude that the reasons given in support of
19  the opinion are not sound, or if you should conclude that the
20  opinion is outweighed by other evidence, you may disregard the
21  opinion in part or in its entirety.

22          As I have told you several times, you, the jury, are
23  the sole judges of the facts in this case.  All right.

24          The next instruction is about credibility.  I have
25  covered that a lot.  I'm not going to read it to you.  It's

681

1  there if you would like to bring it back.

2          The next instruction is on or about.  I've also

3  covered that.  And again, just a reminder, it's sufficient that

4  if the evidence in the case establishes beyond a reasonable

5  doubt that the offense was committed on a date reasonably near

6  the date alleged in the superseding indictment.

7          Number 14, punishment.  If you decide the United

8  States has proved the Defendant guilty, then it will be my job

9  to decide what the appropriate punishment should be.  Deciding

10  what the punishment should be is my job, not yours.  It would

11  violate your oaths as jurors to even consider the possible

12  punishment in deciding your verdict.  Your job is to look at

13  the evidence and decide if the Government has proved the

14  Defendant guilty beyond a reasonable doubt.

15          Number 15.  I kind of covered this, but I want to

16  make sure it's clear.  So you've heard testimony that the

17  Defendant filed a letter on April 7, 2015, and was interviewed

18  by United States Deputy Marshals on April 13, 2015, in regard

19  to that letter.  This evidence of other acts was admitted only

20  for a limited purpose.  You may consider this evidence only for

21  the purpose of deciding whether the Defendant had the knowledge

22  or intent necessary to commit the crime charged in the

23  indictment; or was planning to commit the acts charged in the

24  indictment; or acted with a method of operation as evidenced by

25  a unique pattern; or is the person who committed the crime

682

1  charged in the indictment.  Do not consider this evidence for
2  any other purpose.

3          You have also heard testimony that the Defendant was
4  involved in a verbal altercation in the Clerk's office on April
5  30, 2015, and was interviewed on May 8, 2015, by United States
6  Deputy Marshals in regard to that altercation.  This evidence
7  of other acts was admitted only for a limited purpose.  You may
8  consider this evidence only for what it may reveal about Judge
9  Christopher Conner's perception of whether the letter he
10 received from the Defendant contained a true threat.

11         Of course, it is for you to determine whether you
12 believe this evidence and, if you do believe it, whether you
13 accept it for the purpose offered.  You may give is such weight
14 as you feel it deserves, but only for the limited purpose that
15 I've described to you.

16         The next one is the proof beyond a reasonable doubt.
17 Again, I've gone over that many many times, so I'm not going to
18 reread it.  All right.

19         Now you, sir, are juror number 1.  So by tradition of
20 my court, you are the foreperson, all right.  And what that
21 really means is, you'll sign the verdict sheet.  And your name
22 will ultimately be redacted, your name is not made public.  But
23 you will just sign it on behalf of the jurors.

24         So now let's talk a little bit about what you do in
25 the jury room, okay.  So I told you the exhibits will be given

683

1  to you.  And you will control the clock.  You take as long as

2  you want, whatever you think you need.  Now I mentioned that

3  juror number 1 is the foreperson.  By virtue of that, he

4  doesn't get anymore votes or weight or whatnot.  You're all

5  equal back in the jury room.

6          And I want to remind you that your verdicts have to

7  be unanimous.  And then you have a duty to talk to each other

8  about the evidence and to make every reasonable effort you can

9  to reach a unanimous agreement.  So talk with each other,

10 listen to each other, respectfully and carefully.

11         Keep an open mind as you listen to what your fellow

12 jurors have to say.  Don't hesitate to change your mind if you

13 are convinced that other jurors are right, that your original

14 position was wrong, but do not ever change your mind just

15 because other jurors see things differently or just to get the

16 case over with.

17         In the end, your vote must be exactly that, your own

18 vote.  And it's important for you to reach a unanimous

19 agreement, but only if you can do so honestly and in good

20 conscience.  So listen carefully to what each of you have to

21 say, and then decide for yourself if the Government has proved

22 the Defendant guilty beyond a reasonable doubt.

23         No one has access to that room, so you should discuss

24 the case freely.  And then when you start deliberating, don't

25 talk to anybody about the case until you conclude your

684

1  deliberations, all right.  So, for instance, if you didn't
2  finish deliberating today, then you went home, you're not to
3  talk about the case until you come back the next morning.  And
4  then you would deliberate freely again in the room.

5          Now if you have any questions, you need to write them
6  down on a sheet of paper, the foreperson, and then you'll
7  contact the deputy clerk.  And then she'll take the note, I'll
8  review it if you have a question, and confer with the parties
9  and decide what to do about that.

10         But if you write down a question, whatever you do,
11  never reveal your deliberations.  Don't put a vote, don't do
12  that.  Just ask the question, and that's all you should
13  consider in a note, all right.

14         Now you're going to have a verdict form that's going
15  to be going back with you.  And it's really easy to follow.
16  It's basically -- it's got, for each count, it's got a separate
17  page.  And then you check guilty or not guilty.  And then the
18  foreperson would sign it.

19         And let me make sure -- (Pause.)  That's it.  All
20  right.  So what I'm going to do now is, I'm going to swear our
21  trusty deputy clerk to act as the bailiff.  So I'm going to
22  administer what's called the bailiff oath.  And she is the one
23  that will make sure your debilitations are secret and not
24  interfered with.

25         (Courtroom deputy was was sworn.)

1          THE COURT:  All right, thank you.  So juror number

2    13, you are in the back.  Actually, I don't know if you're 13,

3    you've been renumbered.  You are the alternate.  So I would ask

4    if you would -- well -- so you can't participate in the

5    deliberations.  But I would ask if you would stay around for a

6    bit.  We can place you right in a room.

7          COURTROOM DEPUTY:  In the seventh floor where you

8    come in in the morning.

9          THE COURT:  Would you please return there?

10          ALTERNATE JUROR:  Yep.

11          THE COURT:  Now what I'm going to do though is,

12    you're going to get your phone back, but don't research -- I

13    want you to treat yourself as if you're deliberating just, you

14    know, so that you could participate in full deliberations and

15    lawfully participate if something happened.  All right.  Thank

16    you very much.  All right.

17          So -- and then you all are going to be escorted back

18    to the jury room, the rest of you.  Thank you.

19          COURTROOM DEPUTY:  All rise.

20          (Jury left to begin deliberations at 3:41 p.m.)

21          (Proceeding reconvened at 4:12 p.m.; without the

22           jury.)

23          THE COURT:  All right.  So we have a jury note, and

24    I'm going to read it to you.  Here's what it says:  Definition

25    of the word avers, question mark.  And the word avers is in

686

1  quotations.

2          So the definition of the word avers, question mark,

3  is the note.  I propose to tell the jury, that is for you to

4  decide.  Anybody have objections to that or other thoughts?

5          MR. DOUGHERTY:  Well, you know, my intention, it was

6  a legal assessment.

7          THE COURT:  You've testified, I heard you testify

8  about that.  That's in evidence.

9          MR. DOUGHERTY:  Okay.

10          THE COURT:  And my view of it is, that's for you to

11  decide.

12          MR. DOUGHERTY:  Okay.

13          MR. PERRI:  May I have a moment, Your Honor?

14          THE COURT:  Sure.

15          (Mr. Perri and Mr. Adkins confer.)

16          THE COURT:  I'm going to have it put on the elmo,

17  too, so you can see it.

18          (Complied.)

19          THE COURT:  All right.  I think we need to move fast.

20  What's the Government --

21          MR. PERRI:  No, Your Honor.

22          MR. ADKINS:  We agree with you, Your Honor.

23          THE COURT:  Okay.  Now I'm going to write it on the

24  note.  I'm going to write on the note, that is for you to

25  decide.  Okay.  And I'm going to sign my name underneath it.

687

 1          Do you want to just show them on the elmo, please?

 2          (Complied.)

 3          THE COURT:  All right.  No objection from anybody.

 4    I'm going to have it brought back to the jury.  Okay.  Before

 5    you go, let me just, the alternate, so I understand in this

 6    district.  The practice varies what to do with an alternate.

 7          We have two pregnant women, I don't know if you

 8    noticed, on the jury.  And they were the ones I could tell this

 9    afternoon were hoping to, you know, get a bathroom break.  So

10    does anybody -- I mean, I'm inclined to ask this alternate to

11    stay here at least for this afternoon.  One of the women looks

12    very pregnant.

13          So any thoughts though?  I'm not familiar from this

14    district -- well, neither are any of you.  But that's my

15    inclination.  And then what I would do is, if they don't finish

16    deliberating today, not have him come back tomorrow, but just

17    consider having a cell phone that he could be reached.

18          MR. PERRI:  Sounds reasonable.

19          MR. DOUGHERTY:  (Nodded head affirmatively.)

20          THE COURT:  That's what we'll do.  No objection from

21    either side?  Okay, thank you.

22          COURTROOM DEPUTY:  All rise.

23          (Recess was taken at 4:16 p.m. and proceeding

24            reconvened at 4:27 p.m; without the jury.)

25          THE COURT:  All right.  We have a verdict.

688

1          (Jury was brought in at 4:27 p.m.)

2          THE COURT:  I understand you have a verdict?

3          THE FOREPERSON:  Yes.

4          COURTROOM DEPUTY:  In the case of <u>United States of</u>

5  <u>America versus Keith Thomas Dougherty</u>, Count 1, as to Count 1,

6  mailing threatening communications, on or about the 6th day of

7  May, 2017, in the Middle District of Pennsylvania, in violation

8  of Title 18 U.S. Code Section 876(c).  We the jury, on the

9  issue joined, find unanimously beyond a reasonable doubt that

10  the Defendant, Keith Thomas Dougherty, is guilty.

11          Count 2, as to Count 2, interstate communications

12  with threat to injure, on or about the 21st day of March, 2019,

13  in the Middle District of Pennsylvania, and elsewhere, in

14  violation of Title 18 United States Code Section 875(C).  We

15  the jury, on the issue joined, find unanimously beyond a

16  reasonable doubt that the Defendant, Keith Thomas Dougherty, is

17  guilty.

18          Count 4, as to Count 4, interstate communications

19  with threat to injure, on or about the 22nd day of January,

20  2020, in the Middle District of Pennsylvania, and elsewhere, in

21  violation of Title 18 United States Code Section 875(c).  We

22  the jury, on the issue joined, find unanimously beyond a

23  reasonable doubt that the Defendant, Keith Thomas Dougherty, is

24  guilty.

25          Dated 12/2/21.  And it is signed by the foreperson.

689

1          THE COURT:  All right.  Mr. Foreman, that was the

2     verdict that was correctly read?

3          THE FOREPERSON:  Yes, Your Honor.

4          THE COURT:  Any applications?

5          MR. PERRI:  No.

6          THE COURT:  All right.  So what I'd like to do is to

7     just excuse you to the deliberation room one more time.  Give

8     us a few minutes.  And then I would like to bring you back in,

9     and I will bring the alternate, if you would stay -- I'm sorry?

10          MR. DOUGHERTY:  Could I have the jury polled?

11          THE COURT:  Okay.  So that was the application I was

12     wondering, so would you please poll the jury.

13          COURTROOM DEPUTY:  Juror number 1, you have heard the

14     verdict on the counts and is this your verdict?

15          JUROR NUMBER 1:  Yes.

16          COURTROOM DEPUTY:  Juror number 2, you have heard the

17     verdict on the counts and is this your verdict?

18          JUROR NUMBER 2:  Yes.

19          COURTROOM DEPUTY:  Juror number 3, you have heard the

20     verdict on the counts and is this your verdict?

21          JUROR NUMBER 3:  Yes.

22          COURTROOM DEPUTY:  Juror number 4, you have heard the

23     verdict on the counts and is this your verdict?

24          JUROR NUMBER 4:  Yes.

25          COURTROOM DEPUTY:  Juror number 5, you have heard the

690

1  verdict on the counts and is this your verdict?

2         JUROR NUMBER 5:  Yes.

3         COURTROOM DEPUTY:  Juror number 6, you have heard the

4  verdict on the counts and is this your verdict?

5         JUROR NUMBER 6:  Yes.

6         COURTROOM DEPUTY:  Juror number 7, you have heard the

7  verdict on the counts and is this your verdict?

8         JUROR NUMBER 7:  Yes.

9         COURTROOM DEPUTY:  Juror number 8, you have heard the

10 verdict on the counts and is this your verdict?

11        JUROR NUMBER 8:  Yes.

12        COURTROOM DEPUTY:  Juror number 9, you have heard the

13 verdict on the counts and is this your verdict?

14        JUROR NUMBER 9:  Yes.

15        COURTROOM DEPUTY:  Juror number 10, you have heard

16 the verdict on the counts and is this your verdict?

17        JUROR NUMBER 10:  Yes.

18        COURTROOM DEPUTY:  Juror number 11, you have heard

19 the verdict on the counts and is this your verdict?

20        JUROR NUMBER 11:  Yes.

21        COURTROOM DEPUTY:  Juror number 12, you have heard

22 the verdict on the counts and is this your verdict?

23        JUROR NUMBER 12:  Yes.

24        THE COURT:  All right.  So then if you don't mind,

25 just to give us a couple minutes.  We've got some certificates

691

1  for you and a formal way of thanking you.  And then I'll have

2  you brought back in to do that.  When you come back in, if you

3  want, bring your stuff, and you can leave right away from that.

4  And then the alternate, if you could just stay, you can just

5  stay there.  You've already got your stuff, very good.  Thank

6  you.  Okay.

7          COURTROOM DEPUTY:  All rise.

8          (Jury left the courtroom at 4:32 p.m.)

9          THE COURT:  Okay.  So the next phase is sentencing.

10  And the way that works, Mr. Dougherty, is a pre-sentence report

11  will be prepared by the pre-sentence officer.  And the -- I

12  will set a date.  I need to confer with the pre-sentence

13  officer to find out when they can have the report completed.

14          You will be provided a copy of the report as will the

15  Government.  You each will be able to lodge objections to the

16  findings of fact and conclusions of law in the report.  You

17  still have a right to counsel, so if at some point you decide

18  you want counsel, you can make an application that can be

19  entertained and get counsel to assist you with that.

20          I would encourage you to cooperate in the

21  pre-sentence process.  That report is very important.  And, you

22  know, again, the guidelines are rather complex.  There are

23  sentencing guidelines that apply to the sentencing process.

24  And you would benefit from the advice of counsel.

25          Ultimately, I will hear any objections or motions

692

1  with respect to sentencing.  The guidelines are the starting

2  point of the sentencing process because they provide uniformity

3  for like defendants in like situations.

4        And they look at the nature of the offense as well as

5  the criminal history of the Defendant to come up with a

6  presumptive guideline range as a starting point.  But then both

7  parties can move for departure from the guidelines, and they

8  can also seek what are called variances from the guidelines.

9  And ultimately the decision is made by me.

10        And so it's a very important process, obviously.  All

11  right.  Anything further?

12        MR. PERRI:  No thanks, Your Honor.

13        MR. DOUGHERTY:  No.

14        THE COURT:  Okay.  So then what --

15        MR. ADKINS:  Your Honor, just one second.

16        (Mr. Perri and Mr. Adkins confer.)

17        MR. ADKINS:  I just didn't know if there was anything

18  for a renewed motion for renewal of acquittal, anything

19  post-trial for him?

20        THE COURT:  This is part of the problem, right.  I

21  mean, he didn't have counsel.  I mean, I'm not supposed to give

22  him legal advice.

23        MR. ADKINS:  I understand.

24        THE COURT:  And I have, you know, so --

25        MR. DOUGHERTY:  I'd like to renew my motion for

693

1  judgment of acquittal then.

2          THE COURT:  Okay.  And I'm going to deny that.  I

3  think there was ample evidence for a rational jury to reach the

4  verdict that this jury reached.  So, all right, okay.  So we're

5  going to clear the courtroom except for the alternate juror, if

6  you would stay, so we can present you with your certificate of

7  service.  And thank you, all.

8          (Proceeding adjourned at 4:36 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

0

1

2

3                                CERTIFICATION

4

5

6          I, Wendy C. Yinger, Federal Official Realtime Court

7   Reporter, in and for the United States District Court for the

8   Middle District of Pennsylvania, do hereby certify that

9   pursuant to Section 753, Title 28, United States Code, that the

10  foregoing is a true and correct transcript of the

11  stenographically reported proceedings held in the

12  above-entitled matter and that the transcript page format is in

13  conformance with the regulations of the Judicial Conference of

14  the United States.

15

16

17                    /s/ Wendy C. Yinger
                      Wendy C. Yinger, RMR, CRR
18                    U.S. Official Court Reporter
                      (717)440-1535
19

20

21

22       (The foregoing of this transcript does not apply to any

23  reproduction of the same by any means unless under the direct

24  control and/or supervision of the certifying reporter.)

25

## 0

**00021** [1] - 658:14

## 1

**1** [41] - 505:12, 538:4, 538:5, 542:10, 580:18, 588:7, 588:12, 592:18, 593:7, 606:8, 608:9, 615:25, 616:1, 617:23, 623:17, 626:19, 627:18, 627:25, 628:9, 628:13, 628:24, 629:14, 633:16, 634:15, 635:2, 654:11, 654:12, 658:14, 673:14, 673:15, 673:22, 674:22, 675:18, 676:8, 682:19, 683:3, 688:5, 689:13, 689:15
**1-A** [1] - 626:1
**1-B** [13] - 581:8, 581:10, 581:21, 586:20, 588:16, 598:1, 600:11, 600:12, 623:22, 626:9, 626:10, 626:16, 664:8
**1/28/2020** [1] - 532:12
**10** [11] - 516:10, 516:11, 516:13, 516:14, 539:20, 573:15, 666:1, 666:7, 679:22, 690:15, 690:17
**10-day** [1] - 543:19
**10:50** [1] - 573:9
**10:51** [1] - 573:18
**10th** [1] - 531:12
**11** [13] - 516:11, 516:12, 539:20, 578:14, 578:16, 578:19, 610:23, 623:2, 623:3, 623:4, 680:1, 690:18, 690:20
**11-A** [1] - 580:23
**11-B** [1] - 580:23
**11-C** [1] - 580:23
**11:08** [1] - 573:19
**11:10** [1] - 573:21
**11:56** [1] - 603:13
**12** [6] - 539:20, 621:1, 621:2, 653:17,

690:21, 690:23
**12(b)(6** [1] - 644:23
**12(h)(1)** [1] - 601:2
**12.3** [3] - 545:21, 545:22, 658:2
**12/2/21** [1] - 688:25
**1257** [1] - 659:18
**12:35** [1] - 616:3
**12B2** [2] - 548:12, 601:11
**12B3** [2] - 548:12, 601:11
**12B4** [2] - 548:12, 601:11
**12B5** [2] - 548:12, 601:11
**13** [9] - 514:19, 514:20, 515:5, 562:17, 562:19, 578:23, 681:18, 685:2
**13-CV-1868** [1] - 641:3
**13-CV-857** [1] - 641:7
**13th** [7] - 522:16, 524:15, 549:25, 561:2, 579:23, 587:21, 652:10
**14** [2] - 559:11, 681:7
**14-CV-480** [1] - 645:19
**14-CV-922** [1] - 645:19
**14th** [1] - 521:7
**15** [7] - 559:11, 573:1, 575:7, 611:4, 611:7, 612:11, 681:15
**15's** [1] - 586:6
**15-CV** [1] - 514:19
**15-CV-582** [1] - 525:15
**153.1** [1] - 538:24
**1541** [1] - 516:14
**15th** [1] - 600:9
**16** [2] - 507:24, 575:17
**1652** [1] - 540:10
**1654** [2] - 584:19, 600:19
**1670** [1] - 658:11
**16th** [1] - 550:3
**17th** [2] - 592:7, 593:5
**18** [13] - 510:8, 522:6, 526:20, 575:25, 590:9, 674:9, 675:13, 676:6, 676:9, 677:4, 688:8, 688:14, 688:21
**18,500** [2] - 558:6, 661:12
**18th** [2] - 521:2, 587:23
**1969** [1] - 658:19
**1996** [1] - 571:3
**1:00** [3] - 603:7,

606:15
**1:18** [1] - 616:4
**1:30** [1] - 619:1
**1st** [1] - 536:22

## 2

**2** [33] - 506:11, 514:21, 515:5, 530:18, 530:25, 544:18, 592:16, 593:7, 595:17, 601:25, 607:16, 610:6, 612:5, 612:10, 613:5, 613:7, 613:8, 621:6, 621:14, 629:6, 632:15, 634:10, 634:16, 634:25, 635:18, 675:1, 675:18, 677:3, 688:11, 689:16, 689:18
**2-A** [7] - 589:9, 589:12, 629:7, 631:11, 631:17, 632:15, 634:10
**20** [8] - 517:23, 571:11, 578:17, 604:7, 624:6, 624:7, 625:2, 633:13
**20-CV** [1] - 519:20
**20-year** [1] - 534:21
**2001** [1] - 533:6
**2004** [1] - 562:17
**2011** [3] - 570:10, 571:4
**2013** [1] - 652:10
**2014** [1] - 562:19
**2015** [19] - 529:22, 531:20, 561:2, 578:23, 579:24, 580:17, 581:4, 587:21, 587:23, 588:5, 588:15, 588:16, 621:22, 655:24, 662:3, 681:17, 681:18, 682:5
**2016** [2] - 571:9, 582:19
**2017** [7] - 540:6, 553:15, 581:10, 634:1, 673:23, 674:4, 688:7
**2018** [3] - 543:2, 543:6, 591:21
**2019** [15] - 532:11, 550:1, 550:3, 588:20, 589:19,

592:6, 592:7, 593:5, 596:4, 596:14, 629:10, 634:3, 657:12, 675:3, 688:12
**2020** [11] - 521:7, 522:17, 536:22, 594:25, 595:2, 596:4, 631:2, 635:9, 657:12, 675:20, 688:20
**2021** [1] - 521:2
**203** [1] - 550:3
**2076** [3] - 522:6, 526:20, 590:9
**20th** [3] - 531:20, 546:2, 547:2
**21** [4] - 576:12, 578:6, 596:14, 623:3
**21st** [6] - 589:19, 592:6, 596:4, 629:10, 675:2, 688:12
**22** [1] - 655:18
**22nd** [8] - 554:22, 594:25, 595:2, 596:3, 631:2, 635:9, 675:20, 688:19
**23** [1] - 577:3
**23rd** [1] - 544:12
**26** [2] - 577:10, 623:5
**26-page** [1] - 514:21
**260** [1] - 624:8
**2706** [1] - 510:8
**28** [5] - 540:10, 584:19, 600:19, 640:1, 643:5
**280** [1] - 624:8
**2:54** [1] - 665:22
**2:56** [1] - 666:9

## 3

**3** [14] - 541:13, 542:17, 545:10, 572:18, 572:22, 573:25, 574:18, 575:5, 608:13, 608:20, 675:15, 675:16, 689:19, 689:21
**3/4/19** [1] - 521:23
**30** [8] - 575:7, 575:17, 575:25, 576:12, 577:3, 577:10, 604:7, 682:5
**30th** [3] - 527:8, 529:22, 646:15
**31st** [1] - 540:6
**3:08** [1] - 666:10

**3:10** [1] - 667:11
**3:41** [1] - 685:20

## 4

**4** [29] - 541:13, 556:16, 561:23, 564:16, 569:12, 572:18, 572:22, 573:25, 574:20, 575:5, 601:24, 609:14, 610:6, 621:6, 621:15, 622:11, 631:1, 632:15, 635:8, 635:10, 635:20, 675:15, 675:18, 675:19, 677:3, 688:18, 689:22, 689:24
**4(c)(2** [1] - 576:6
**4(i)(1)(A)** [1] - 576:11
**4(j)(2)(A** [1] - 577:18
**4(j)(2)(B** [1] - 577:21
**4-A** [9] - 559:11, 569:12, 594:19, 630:25, 631:11, 632:15, 635:8, 662:12
**4/13/2015** [1] - 633:10
**4/7/2015** [1] - 633:9
**40** [1] - 585:13
**403** [1] - 552:1
**404(b** [2] - 507:25, 508:2
**422(a)** [1] - 577:22
**46(b** [1] - 640:1
**4:12** [1] - 685:21
**4:16** [1] - 687:23
**4:27** [2] - 687:24, 688:1
**4:32** [1] - 691:8
**4:36** [1] - 693:8
**4th** [3] - 532:11, 588:20, 634:2

## 5

**5** [15] - 539:17, 541:13, 549:25, 572:18, 574:1, 574:22, 575:5, 608:1, 609:16, 610:4, 622:11, 666:7, 674:4, 689:25, 690:2
**5-A** [1] - 539:17
**5-B** [2] - 574:25, 591:19
**5.05** [1] - 507:3
**511-CR-13** [1] - 503:15

**55** [7] - 529:2, 551:22, 552:13, 552:17, 621:1, 621:2, 648:15
**55(a** [1] - 560:8
**55(b** [1] - 560:8
**55(C** [1] - 549:7
**55(c** [1] - 648:17
**57** [1] - 585:1
**582** [2] - 514:19, 514:20
**5th** [3] - 570:10, 581:10, 588:15

# 6

**6** [19] - 530:14, 530:18, 530:20, 530:22, 531:2, 572:18, 578:1, 579:6, 579:25, 591:21, 607:23, 607:24, 622:7, 633:10, 633:11, 633:23, 678:1, 690:3, 690:5
**60** [1] - 529:14
**600,000** [1] - 534:22
**6th** [8] - 580:17, 581:4, 634:1, 673:23, 674:13, 674:14, 674:15, 688:6

# 7

**7** [4] - 621:22, 681:17, 690:6, 690:8
**769,000** [1] - 535:24
**7th** [2] - 522:20, 577:23

# 8

**8** [6] - 582:19, 610:3, 610:10, 682:5, 690:9, 690:11
**8/5/2015** [1] - 588:9
**875(c** [2] - 675:13, 676:6
**875(C)** [1] - 688:14
**875(c)** [2] - 677:5, 688:21
**876(c** [1] - 674:8
**876(c)** [2] - 676:10, 688:8
**8:37** [1] - 502:1
**8th** [2] - 588:5, 588:15

# 9

**9** [22] - 508:4, 584:8, 586:19, 598:1, 600:6, 600:7, 600:11, 600:12, 606:20, 607:2, 607:19, 607:20, 607:21, 608:5, 610:13, 626:9, 626:16, 627:24, 664:8, 679:7, 690:12, 690:14
**9/14/2020** [1] - 520:7
**9/29** [1] - 582:19
**9:16** [1] - 518:16

# A

**a.m** [7] - 502:1, 518:16, 573:9, 573:18, 573:19, 573:21, 603:13
**aback** [3] - 561:4, 652:14
**abide** [5] - 523:1, 532:5, 585:19, 651:5, 651:6
**abides** [1] - 532:24
**abiding** [1] - 523:18
**ability** [1] - 670:22
**able** [10] - 509:22, 512:18, 530:9, 534:19, 606:9, 622:25, 626:10, 627:16, 653:25, 691:15
**absent** [1] - 504:6
**abundance** [1] - 508:14
**abusing** [1] - 536:15
**accept** [5] - 642:10, 648:11, 671:12, 671:13, 682:13
**acceptable** [1] - 651:14
**access** [4] - 513:10, 603:18, 609:2, 683:23
**accident** [1] - 679:2
**accommodating** [1] - 503:22
**accordance** [1] - 571:25
**according** [7] - 527:16, 571:6, 639:19, 651:10, 665:6, 665:11, 674:3
**accordingly** [1] -

**account** [4] - 524:25, 525:3, 589:16, 643:4
**accountants** [1] - 572:10
**accounts** [2] - 589:15, 633:12
**accusation** [2] - 546:1, 617:9
**accusing** [2] - 555:16, 659:9
**achieve** [1] - 544:6
**acquiescence** [1] - 655:20
**acquittal** [2] - 692:18, 693:1
**acrimonious** [1] - 541:10
**act** [12] - 522:6, 559:10, 586:14, 636:16, 666:24, 666:25, 673:2, 679:1, 679:24, 679:25, 684:21
**acted** [3] - 612:15, 650:11, 681:24
**acting** [6] - 507:16, 510:2, 518:25, 544:21, 546:6, 601:8
**action** [22] - 510:19, 523:25, 524:1, 524:2, 524:9, 524:25, 527:24, 532:1, 536:3, 538:20, 540:9, 540:13, 556:11, 557:9, 559:13, 560:7, 560:14, 583:14, 648:13, 655:7, 678:24
**actions** [2] - 540:11, 576:24
**active** [4] - 525:14, 550:6, 641:22, 653:5
**activity** [1] - 531:24
**acts** [6] - 536:19, 587:11, 666:23, 681:19, 681:23, 682:7
**actual** [12] - 524:4, 528:8, 531:7, 539:19, 541:11, 576:17, 631:22, 642:4, 642:9, 647:8, 653:21, 655:5
**add** [6] - 502:19, 614:7, 616:14, 645:14, 667:17, 667:19
**added** [1] - 609:13

**adding** [1] - 505:4
**addition** [6] - 526:18, 527:4, 586:14, 620:14, 630:6, 636:9
**additional** [2] - 515:12, 530:11
**additionally** [5] - 524:10, 525:21, 539:22, 540:8, 549:24
**address** [16] - 512:11, 513:5, 527:4, 531:5, 562:8, 566:15, 581:18, 599:25, 601:16, 614:4, 614:20, 615:1, 615:2, 617:19, 619:9, 641:2
**addressed** [20] - 536:10, 570:8, 581:5, 581:16, 582:5, 582:15, 583:7, 614:17, 626:1, 626:20, 628:14, 628:15, 629:15, 630:4, 631:4, 631:6, 649:16, 674:4, 676:24
**addresses** [1] - 627:19
**addressing** [2] - 538:4, 541:2
**adduce** [1] - 649:15
**adduced** [1] - 652:1
**adhere** [1] - 528:1
**adjourned** [1] - 693:8
**adjudication** [1] - 568:21
**ADKINS** [43] - 503:15, 507:23, 514:18, 514:21, 514:24, 515:20, 516:16, 517:23, 519:21, 521:4, 530:16, 530:24, 558:9, 558:11, 565:6, 566:10, 569:15, 572:21, 573:12, 573:23, 594:9, 594:16, 594:17, 597:4, 597:5, 599:16, 599:18, 600:8, 600:11, 602:25, 604:5, 604:9, 609:4, 613:21, 619:18, 650:22, 651:21, 666:16, 666:20, 686:22, 692:15,

692:17, 692:23
**Adkins** [4] - 616:23, 619:17, 686:15, 692:16
**administer** [1] - 684:22
**admissible** [1] - 652:2
**admission** [1] - 572:15
**admit** [1] - 560:16
**admits** [1] - 661:22
**admitted** [19] - 512:18, 530:19, 531:2, 572:10, 573:25, 574:25, 581:8, 582:18, 620:14, 624:12, 629:9, 631:3, 631:25, 634:22, 638:1, 639:7, 658:12, 681:19, 682:7
**admitting** [2] - 559:6, 574:12
**adopted** [2] - 520:22, 567:24
**adult** [1] - 529:19
**advanced** [1] - 652:12
**advantage** [1] - 523:15
**advantages** [1] - 533:22
**adversarial** [2] - 543:21, 657:19
**advice** [5] - 516:6, 533:10, 533:13, 691:24, 692:22
**advocate** [1] - 568:8
**advocating** [2] - 556:23, 567:18
**affect** [1] - 607:25
**affidavit** [3] - 530:7, 548:22, 646:21
**affidavits** [1] - 541:16
**affirmatively** [1] - 687:19
**afraid** [1] - 608:4
**afternoon** [5] - 619:4, 619:18, 659:24, 687:9, 687:11
**afterwards** [2] - 635:19, 662:13
**agencies** [1] - 539:25
**agency** [5] - 539:23, 544:15, 562:11, 649:1, 649:4
**agent** [22] - 522:10, 522:14, 522:15, 523:5, 524:14, 525:12, 525:19, 537:20, 544:16,

545:1, 551:16,
559:20, 560:17,
560:21, 571:15,
572:11, 590:25,
652:7, 652:9,
653:13, 654:21,
662:9
**Agent** [3] - 631:24,
652:23, 675:7
**agents** [1] - 533:11
**agitated** [1] - 633:18
**agree** [44] - 575:3,
578:17, 579:23,
581:2, 584:22,
586:10, 586:12,
586:19, 587:5,
587:7, 587:20,
588:17, 589:17,
589:24, 590:2,
590:6, 590:21,
590:23, 591:24,
592:7, 592:16,
593:2, 593:4, 593:9,
593:11, 593:24,
594:10, 595:2,
596:3, 596:12,
596:17, 596:21,
596:23, 597:1,
597:15, 597:19,
598:19, 599:3,
599:8, 599:9,
599:13, 635:24,
669:4, 686:22
**agreed** [2] - 523:6,
608:12
**agreement** [4] -
535:15, 559:5,
683:9, 683:19
**agreements** [1] -
541:24
**agrees** [2] - 607:10,
678:11
**ahead** [7] - 520:4,
530:4, 531:4, 547:9,
552:14, 561:22,
563:9
**ahold** [1] - 609:13
**Air** [1] - 534:20
**Alito** [2] - 657:1, 657:4
**allegation** [1] - 626:20
**allegations** [2] -
536:4, 635:20
**alleged** [6] - 507:8,
522:5, 650:19,
678:23, 679:4, 681:6
**alleges** [1] - 592:23
**alleging** [1] - 629:17
**allow** [3] - 555:3,
657:7, 659:4
**allowed** [9] - 509:11,

510:15, 511:9,
512:7, 529:16,
641:22, 646:9,
649:4, 649:16
**allowing** [1] - 560:5
**alone** [1] - 678:20
**altercation** [2] - 682:4,
682:6
**alternate** [7] - 685:3,
687:5, 687:6,
687:10, 689:9,
691:4, 693:5
**ALTERNATE** [1] -
685:10
**alternative** [7] -
584:14, 584:17,
584:21, 598:18,
600:13, 626:25,
627:2
**alternatively** [1] -
630:18
**amended** [1] - 568:1
**amendment** [6] -
504:7, 505:23,
520:22, 591:7,
630:20, 675:12
**amendments** [1] -
586:8
**America** [2] - 654:9,
688:5
**American** [1] - 533:19
**amicus** [1] - 585:4
**ample** [1] - 693:3
**analyses** [1] - 547:1
**angered** [1] - 568:16
**angry** [1] - 563:8
**animosity** [1] - 534:23
**annoyed** [1] - 656:4
**answer** [15] - 504:21,
510:14, 519:13,
520:9, 520:21,
521:22, 532:12,
536:23, 554:19,
578:4, 594:14,
626:1, 657:23,
657:24
**answered** [1] - 597:3
**answers** [1] - 662:24
**anyhow** [1] - 553:11
**anyway** [1] - 614:20
**apparent** [2] - 576:10,
623:4
**appeal** [4] - 504:2,
504:3, 614:19,
643:14
**appeals** [1] - 570:25
**Appeals** [4] - 569:1,
571:7, 643:13, 650:2
**appear** [6] - 548:19,
559:17, 572:6,

644:11, 646:5,
654:18
**appearance** [7] -
543:16, 543:24,
548:20, 555:5,
555:14, 571:14,
670:25
**appeared** [1] - 535:25
**appearing** [6] -
525:25, 563:8,
564:21, 640:11,
654:16, 658:11
**appellate** [4] - 576:21,
640:3, 640:18,
648:25
**applicable** [3] -
542:16, 575:21,
576:22
**application** [2] -
689:11, 691:18
**applications** [1] -
689:4
**applied** [4] - 542:9,
542:16, 630:2, 638:3
**applies** [2] - 672:14,
672:15
**apply** [10] - 566:14,
668:17, 668:19,
668:20, 668:24,
669:2, 669:16,
670:21, 671:20,
691:23
**appreciate** [1] -
537:16
**appropriate** [15] -
530:12, 551:18,
563:1, 567:14,
586:2, 587:10,
587:12, 587:13,
618:1, 627:3,
644:23, 650:17,
652:18, 652:19,
681:9
**approval** [3] - 528:18,
554:5, 567:17
**April** [23] - 522:16,
522:20, 524:15,
527:7, 529:21,
549:25, 561:2,
577:23, 578:23,
579:23, 587:21,
588:14, 591:21,
592:7, 593:5, 600:9,
621:22, 646:15,
652:10, 662:3,
681:17, 681:18,
682:4
**AR** [1] - 586:6
**AR-15** [1] - 636:22
**AR-15's** [3] - 586:23,

627:7, 665:5
**arbitration** [2] -
534:16, 640:14
**architecture** [1] -
631:25
**area** [5] - 533:16,
565:1, 575:8,
575:18, 576:1,
576:13, 577:4,
581:23, 584:9,
586:24, 602:1,
626:24, 628:17,
680:7, 680:10
**argue** [4] - 508:17,
608:8, 645:10, 649:8
**argument** [15] - 509:9,
509:24, 518:6,
556:19, 565:7,
565:9, 619:8,
619:10, 619:12,
623:9, 643:3,
645:12, 649:17,
657:8, 658:23
**arguments** [3] - 603:3,
619:5, 622:10
**arise** [1] - 673:4
**Armor** [2] - 631:24,
632:19
**arms** [1] - 647:15
**arraignment** [3] -
592:11, 593:5,
634:23
**arranged** [2] - 551:15,
570:14
**arrangement** [1] -
538:2
**arrivals** [1] - 556:11
**arrived** [2] - 531:10,
531:14
**Article** [2] - 654:11,
654:12
**article** [2] - 564:15,
654:10
**articles** [1] - 555:23
**articulated** [2] -
506:20, 516:2
**aside** [2] - 523:19,
652:24
**assassinated** [1] -
623:3
**assault** [1] - 586:9
**Assembly** [1] - 520:22
**assertion** [1] - 595:25
**assess** [7] - 550:8,
555:20, 617:6,
648:4, 652:17,
670:20, 671:11
**assessing** [1] - 617:3
**assessment** [2] -
655:24, 686:6

**assets** [2] - 562:22,
571:21
**assign** [4] - 570:18,
570:20, 640:9,
640:10
**assigned** [13] -
553:14, 553:15,
554:11, 639:17,
640:24, 642:4,
643:23, 644:5,
644:20, 645:19,
645:20, 646:4, 656:8
**assignee** [1] - 557:24
**assignment** [1] -
645:23
**assist** [1] - 691:19
**assistance** [1] - 680:8
**Assistant** [1] - 521:21
**associated** [1] - 625:4
**associations** [1] -
542:14
**assume** [2] - 509:24,
607:13
**assuming** [6] -
509:24, 537:22,
554:24, 556:6,
556:14, 561:10
**assumption** [2] -
580:15, 656:7
**attach** [1] - 644:23
**attached** [1] - 658:15
**attachment** [1] -
562:16
**attack** [2] - 547:21,
550:24
**attacked** [1] - 647:12
**attempt** [3] - 527:21,
622:20, 634:7
**attempted** [2] -
527:17, 576:10
**attempting** [1] -
566:12
**attended** [1] - 522:13
**attention** [10] -
573:24, 574:24,
577:3, 577:23,
578:6, 579:17,
638:19, 643:21,
673:20, 674:25
**attentive** [1] - 546:14
**attest** [1] - 549:20
**attorney** [6] - 535:13,
549:2, 550:18,
553:13, 568:19,
569:3
**Attorney** [11] - 521:22,
539:23, 540:2,
540:7, 557:5, 557:7,
577:9, 577:21,
620:17, 621:18,

675:24
**Attorney's** [3] - 507:16, 513:11, 603:18
**Attorneys** [1] - 618:9
**attorneys** [1] - 642:13
**attribute** [1] - 673:19
**audience** [2] - 556:15, 567:14
**August** [3] - 540:6, 553:15, 570:10
**AUSA** [2] - 555:6, 556:4
**authored** [1] - 595:18
**authorities** [1] - 562:12
**authority** [8] - 510:6, 528:11, 539:10, 540:22, 544:21, 547:17, 653:15, 653:17
**Authority** [1] - 545:21
**authorized** [2] - 537:23, 673:25
**authorizing** [1] - 554:10
**autopilot** [1] - 639:11
**available** [1] - 554:8
**avers** [11] - 556:18, 595:24, 608:17, 608:18, 608:21, 608:22, 631:15, 676:3, 685:25, 686:2
**avoid** [3] - 505:25, 626:14, 642:15
**aware** [14] - 507:15, 520:16, 532:10, 532:13, 539:12, 540:19, 543:17, 545:19, 551:7, 556:15, 579:24, 583:4, 678:24, 679:4

**B**

**backed** [1] - 523:8
**background** [7] - 519:17, 533:6, 620:9, 620:10, 620:20, 630:7, 652:16
**backing** [1] - 546:3
**backwards** [1] - 598:21
**bad** [3] - 559:24, 662:13, 663:11
**bag** [1] - 606:6
**bail** [1] - 641:16
**bailiff** [2] - 684:21,

684:22
**Baltimore** [3] - 554:2, 564:4, 640:17
**bankruptcy** [5] - 562:15, 562:19, 562:22, 563:6, 563:14
**banner** [1] - 546:23
**bare** [2] - 528:18, 528:20
**Barry** [2] - 569:8, 569:9
**base** [3] - 506:24, 506:25, 533:23
**based** [13] - 522:20, 523:7, 530:23, 530:24, 604:9, 645:10, 649:8, 669:12, 669:13, 672:17, 672:21, 672:23, 680:17
**bashing** [6] - 586:4, 586:21, 586:22, 627:4, 636:22, 665:1
**basic** [1] - 522:3
**basis** [12] - 512:10, 520:15, 521:10, 568:10, 593:16, 621:5, 621:14, 621:15, 621:23, 631:1, 635:8, 635:10
**bathroom** [2] - 573:13, 687:9
**bearing** [2] - 543:8, 547:22
**bears** [1] - 667:25
**became** [8] - 533:5, 533:7, 539:7, 541:10, 556:12, 633:18, 643:16, 656:4
**become** [1] - 680:6
**bed** [1] - 641:19
**began** [1] - 571:3
**begin** [4] - 512:22, 517:18, 616:1, 685:20
**beginning** [8] - 609:20, 616:6, 619:19, 667:14, 668:11, 670:19, 671:17, 672:10
**behalf** [3] - 546:6, 570:11, 682:23
**behavior** [1] - 671:1
**beheading** [3] - 586:5, 586:22, 627:6
**beheadings** [1] - 665:2
**behind** [1] - 619:25

**behold** [1] - 534:9
**Bel** [1] - 534:20
**believable** [1] - 643:6
**believes** [3] - 524:6, 577:2, 651:16
**belive** [1] - 587:17
**belonged** [1] - 553:18
**belonging** [1] - 643:24
**below** [1] - 627:18
**beneath** [1] - 564:12
**benefit** [2] - 628:5, 691:24
**benefits** [2] - 533:25, 534:2
**best** [4] - 603:9, 606:14, 606:21, 661:23
**Best** [1] - 535:12
**better** [3] - 559:5, 573:2, 606:23
**between** [10] - 521:21, 522:17, 534:24, 539:7, 608:17, 608:22, 613:10, 623:10, 633:20, 669:20
**beyond** [28] - 546:7, 609:22, 617:13, 637:17, 637:18, 637:21, 638:12, 663:14, 665:15, 668:1, 672:5, 672:8, 672:14, 672:18, 672:19, 673:8, 676:15, 677:7, 678:15, 681:4, 681:14, 682:16, 683:22, 688:9, 688:15, 688:22
**bias** [1] - 671:3
**biblical** [1] - 663:24
**big** [2] - 504:2, 664:9
**billion** [1] - 642:14
**binding** [1] - 540:24
**bit** [13] - 502:7, 533:6, 562:8, 565:7, 566:22, 613:13, 613:15, 615:13, 617:5, 625:13, 629:21, 682:24, 685:6
**black** [1] - 565:4
**blame** [1] - 655:14
**blameless** [1] - 655:1
**blank** [1] - 561:8
**blatant** [1] - 545:13
**Blewitt** [3] - 576:8, 642:2, 642:12
**Bloom** [1] - 666:4
**blue** [1] - 574:3

**board** [1] - 646:1
**bodily** [2] - 663:7, 678:8
**bold** [1] - 538:24
**border** [1] - 641:5
**bother** [1] - 544:9
**bottom** [10] - 510:21, 515:5, 530:11, 530:17, 530:24, 538:24, 546:24, 584:8, 584:15, 610:14
**boundaries** [1] - 554:3
**bounds** [1] - 520:14
**bracket** [1] - 613:18
**brackets** [1] - 613:22
**Brady** [7] - 533:5, 535:4, 535:11, 535:21, 535:22, 536:11, 550:25
**Brady's** [1] - 550:23
**break** [8] - 546:13, 572:24, 573:13, 603:5, 615:24, 665:17, 666:7, 687:9
**breaks** [1] - 573:1
**bridge** [1] - 650:15
**brief** [6] - 518:10, 569:5, 570:11, 585:4, 637:20, 644:24
**briefing** [2] - 570:22, 658:23
**briefly** [2] - 516:6, 521:20
**bring** [32] - 513:5, 517:5, 517:12, 517:19, 518:15, 520:10, 523:25, 532:1, 532:3, 534:3, 534:6, 548:12, 573:24, 574:24, 575:7, 575:17, 577:23, 578:6, 594:19, 597:25, 600:5, 618:25, 626:8, 641:5, 659:21, 662:15, 667:9, 669:6, 681:1, 689:8, 689:9, 691:3
**bringing** [3] - 548:11, 550:19, 556:16
**brings** [6] - 538:8, 554:21, 557:1, 562:7, 562:16, 606:16
**broadly** [1] - 600:21
**Brody** [1] - 503:8
**broke** [2] - 664:18, 664:19

**brought** [17] - 518:16, 532:12, 536:12, 554:2, 554:13, 573:21, 579:17, 606:3, 619:1, 627:13, 634:5, 639:24, 643:21, 667:11, 687:4, 688:1, 691:2
**Bryn** [2] - 533:18, 533:19
**budget** [1] - 525:6
**build** [1] - 661:25
**building** [12] - 527:9, 527:20, 529:23, 603:8, 605:2, 605:20, 625:15, 625:16, 625:17, 661:19
**bullet** [2] - 556:14, 567:20
**burden** [6] - 504:24, 619:5, 637:17, 667:25, 672:9, 672:15
**Bureau** [1] - 675:6
**buried** [1] - 612:23
**business** [6] - 524:6, 533:14, 533:21, 534:2, 534:8
**businesses** [1] - 533:3
**Butler** [1] - 519:20
**buy** [1] - 653:22
**buying** [1] - 535:12
**BY** [3] - 573:23, 594:17, 597:5

**C**

**c)(2** [1] - 577:16
**calculation** [1] - 534:22
**Caldwell** [2] - 531:21, 576:8
**Caleb** [12] - 538:9, 548:23, 599:10, 620:16, 621:11, 631:6, 635:8, 637:1, 648:14, 650:3, 662:12, 675:24
**cannot** [16] - 533:2, 548:12, 564:6, 564:22, 575:11, 577:7, 577:8, 577:9, 599:25, 623:13, 645:14, 646:11, 649:1, 649:8, 658:25
**capable** [1] - 679:18

**capacity** [6] - 576:9, 576:18, 576:19, 577:7, 577:15, 656:17
**Capitol** [4] - 521:24, 537:19, 556:5, 652:7
**capitol** [1] - 544:18
**caption** [2] - 642:19, 642:24
**cards** [1] - 563:2
**care** [3] - 513:6, 561:14, 600:2
**career** [1] - 624:9
**careful** [2] - 602:2, 657:18
**carefully** [3] - 672:25, 683:10, 683:20
**Carlisle** [4] - 551:8, 642:13, 642:20, 660:5
**Carlson** [2] - 531:22, 576:8
**carrier** [1] - 533:15
**Carrington** [1] - 658:16
**carry** [1] - 679:17
**carrying** [1] - 679:18
**case** [161] - 503:8, 503:16, 503:19, 503:21, 509:20, 510:9, 512:3, 516:14, 517:13, 518:19, 518:20, 519:16, 519:20, 520:1, 520:4, 520:5, 520:9, 521:5, 522:10, 523:20, 525:10, 525:14, 526:12, 529:20, 529:21, 533:3, 537:1, 537:6, 537:7, 537:18, 538:18, 538:19, 538:20, 539:20, 543:2, 543:8, 543:12, 544:12, 545:15, 546:8, 547:7, 547:13, 547:19, 548:4, 549:10, 549:11, 549:13, 550:4, 550:6, 551:4, 551:5, 551:19, 551:25, 552:20, 552:21, 553:13, 553:18, 554:20, 555:3, 557:17, 558:11, 558:12, 558:18, 559:25, 560:22, 561:22, 562:13, 563:3,
565:2, 565:3, 566:8, 566:12, 566:13, 566:14, 568:20, 568:23, 569:16, 569:17, 570:9, 571:1, 571:2, 572:5, 572:11, 573:7, 574:6, 575:4, 587:1, 591:18, 593:6, 594:18, 596:19, 596:22, 600:25, 601:10, 601:17, 602:7, 602:8, 603:4, 613:22, 614:10, 618:12, 619:20, 619:21, 620:1, 628:8, 630:2, 634:12, 636:20, 637:16, 637:24, 638:3, 638:6, 640:12, 640:14, 641:3, 641:5, 642:2, 642:11, 643:8, 643:23, 644:6, 644:7, 650:2, 650:9, 650:11, 650:17, 653:5, 653:23, 656:8, 656:10, 656:25, 660:1, 660:5, 660:6, 660:7, 660:11, 660:13, 660:18, 662:9, 665:13, 669:5, 670:2, 671:2, 671:5, 671:16, 671:22, 679:16, 680:13, 680:16, 680:23, 681:4, 683:16, 683:24, 683:25, 684:3, 688:4
**cases** [25] - 534:4, 540:17, 546:3, 547:14, 548:2, 555:3, 559:16, 560:20, 564:4, 568:22, 570:18, 570:20, 570:24, 571:24, 583:16, 624:8, 625:7, 638:4, 639:16, 640:10, 646:4, 652:11, 654:4, 661:16, 661:22
**cash** [2] - 533:24, 558:7
**category** [1] - 531:25
**caused** [2] - 658:7, 674:2
**causes** [2] - 583:16, 620:1
**causing** [1] - 558:20
**caution** [1] - 508:14
**cell** [1] - 687:17
**center** [1] - 670:2
**centered** [2] - 579:5, 579:6
**certain** [18] - 509:16, 529:17, 531:6, 534:25, 541:9, 550:23, 559:21, 570:25, 572:10, 574:17, 579:20, 579:24, 580:6, 586:25, 589:22, 593:22, 630:9, 630:10
**certainly** [3] - 519:23, 553:8, 553:20
**certainty** [1] - 672:20
**certificate** [1] - 693:6
**certificates** [1] - 690:25
**certified** [7] - 533:8, 540:4, 541:1, 549:3, 574:10, 574:17, 575:13
**Chagares** [1] - 570:15
**chain** [1] - 624:22
**challenge** [2] - 548:1, 570:3
**challenged** [1] - 632:3
**chambers** [2] - 623:19, 625:17
**chance** [2] - 600:1, 620:15
**change** [11] - 541:5, 542:13, 582:14, 582:23, 583:4, 606:19, 608:10, 608:11, 626:8, 683:12, 683:14
**changes** [4] - 603:19, 606:9, 612:9, 619:25
**channels** [1] - 648:3
**chaos** [8] - 523:3, 584:11, 585:22, 585:23, 586:11, 586:12, 636:17, 637:5
**chapter** [2] - 511:4, 542:7
**Chapter** [2] - 562:17, 562:19
**characterization** [2] - 511:12, 538:12
**characterize** [1] - 656:15
**characterized** [2] - 527:11, 655:12
**charge** [17] - 525:6,
530:4, 531:9, 531:10, 533:12, 547:9, 562:14, 577:19, 577:20, 608:23, 609:25, 615:6, 617:19, 628:23, 628:24, 673:21, 676:8
**charged** [21] - 507:7, 507:9, 521:9, 545:18, 557:21, 610:6, 617:15, 622:19, 633:23, 657:24, 658:10, 667:22, 672:13, 673:7, 673:11, 673:18, 677:2, 677:24, 681:22, 681:23, 682:1
**charges** [23] - 521:8, 521:11, 545:8, 545:20, 558:1, 593:19, 609:19, 610:12, 617:17, 617:18, 618:13, 618:14, 629:19, 653:14, 657:25, 673:22, 675:2, 675:19, 677:2, 677:17, 677:18, 677:19, 679:6
**charging** [2] - 662:14, 673:16
**charter** [2] - 533:17, 567:23
**charters** [1] - 659:18
**chased** [1] - 531:12
**chat** [1] - 567:15
**check** [3] - 525:23, 583:2, 684:17
**checking** [1] - 525:7
**chief** [5] - 540:21, 562:10, 563:18, 577:17, 638:22
**Chief** [26] - 527:10, 551:5, 553:9, 553:16, 553:17, 554:4, 563:5, 563:12, 570:14, 570:15, 581:18, 581:20, 592:24, 626:2, 639:20, 639:22, 640:17, 641:2, 650:17, 650:18, 674:5, 674:7
**child** [2] - 545:6, 547:3
**children** [2] - 556:11, 561:15
**choice** [2] - 578:15, 615:17
**choose** [1] - 543:21
**chooses** [1] - 671:18
**chose** [2] - 582:11, 583:10
**Chris** [1] - 523:4
**Christ** [1] - 626:3
**Christopher** [42] - 521:24, 522:13, 526:20, 536:2, 544:14, 560:17, 561:7, 576:7, 581:16, 582:6, 582:8, 582:19, 583:7, 588:21, 589:8, 589:16, 589:25, 590:7, 591:10, 591:25, 599:10, 626:2, 626:3, 626:20, 629:3, 629:4, 629:11, 630:9, 634:3, 634:9, 634:10, 634:14, 634:16, 635:1, 635:12, 636:24, 652:5, 658:5, 674:4, 674:7, 675:7, 682:9
**Circuit** [36] - 507:2, 507:18, 508:16, 508:22, 508:25, 520:16, 524:6, 540:25, 554:2, 554:5, 563:16, 569:1, 571:1, 571:3, 577:24, 578:10, 578:22, 579:7, 580:15, 588:14, 601:12, 607:9, 621:21, 621:23, 633:10, 639:17, 639:22, 640:3, 640:5, 640:7, 640:12, 640:19, 640:23, 644:4
**circuit** [2] - 586:5, 627:6
**Circuit's** [2] - 508:1, 617:1
**Circuits** [1] - 640:6
**circumstance** [25] - 527:16, 535:10, 539:2, 542:3, 542:6, 542:20, 543:1, 544:20, 548:9, 549:12, 550:19, 551:3, 553:21, 554:20, 555:21, 555:25, 556:3, 562:8, 567:19, 571:10, 572:5,

640:16, 645:8, 651:12, 659:4

**circumstances** [16] - 506:13, 528:9, 529:17, 545:20, 559:9, 559:18, 561:13, 651:16, 658:6, 663:3, 663:15, 664:4, 678:5, 679:10, 679:12, 679:15

**circumstantial** [3] - 662:19, 662:20, 669:20

**citation** [1] - 575:15

**cite** [2] - 576:14, 584:16

**cited** [1] - 525:14

**citizen** [4] - 546:6, 551:11, 564:16, 568:12

**citizens** [3] - 533:1, 654:5, 659:3

**Citizens** [2] - 568:10, 585:4

**civic** [1] - 657:1

**Civil** [1] - 576:24

**civil** [14] - 527:24, 540:11, 540:13, 544:5, 549:1, 555:4, 557:24, 561:22, 570:5, 574:18, 655:7, 655:19

**claim** [17] - 526:18, 547:6, 556:20, 557:8, 557:10, 557:14, 557:22, 557:24, 558:4, 559:4, 559:10, 559:13, 568:23, 596:1, 631:19, 648:1, 676:4

**claims** [4] - 560:8, 571:16, 643:17, 680:11

**clarification** [2] - 532:3, 572:23

**clarify** [2] - 558:14, 572:22

**class** [1] - 563:1

**classification** [1] - 656:16

**classified** [1] - 542:18

**classify** [1] - 556:10

**clause** [1] - 541:23

**clean** [1] - 672:1

**clear** [23] - 510:10, 512:2, 517:23, 529:15, 538:3, 543:25, 547:12,

551:14, 553:20, 557:15, 558:11, 558:13, 563:5, 579:12, 591:17, 602:11, 609:23, 630:5, 647:5, 652:25, 654:17, 681:16, 693:5

**clearly** [9] - 509:2, 524:6, 543:22, 545:2, 568:11, 639:7, 647:1, 648:5, 651:10

**Clerk** [3] - 526:8, 551:21, 552:17

**clerk** [23] - 510:7, 522:5, 522:21, 526:22, 528:17, 544:3, 546:7, 548:5, 549:4, 549:6, 554:9, 560:10, 560:15, 568:25, 573:4, 604:18, 604:21, 647:18, 648:15, 652:6, 664:19, 684:7, 684:21

**clerk's** [5] - 514:25, 625:14, 625:16, 625:22

**Clerk's** [6] - 529:24, 531:16, 625:11, 646:8, 656:13, 682:4

**clerks** [5] - 533:1, 560:3, 572:2, 655:15, 655:17

**client** [7] - 533:5, 539:8, 551:2, 558:2, 558:6, 558:21, 559:5

**clients** [10] - 535:5, 542:17, 558:25, 559:25, 561:20, 571:19, 583:13, 639:3, 659:10, 661:4

**clock** [2] - 529:10, 683:1

**close** [4] - 583:2, 593:4, 604:6, 659:25

**closed** [4] - 567:14, 571:16, 647:14, 652:22

**closely** [1] - 534:2

**closing** [14] - 518:6, 555:2, 603:2, 604:4, 616:1, 619:4, 619:8, 619:10, 619:11, 620:10, 622:10, 645:12, 657:8, 658:9

**Cluck** [3] - 534:10, 534:17, 535:2

**co** [1] - 535:21

**co-defendant** [1] - 535:21

**Cobaugh** [3] - 515:2, 529:22, 646:13

**code** [2] - 556:14, 612:22

**Code** [6] - 674:9, 675:14, 676:6, 688:8, 688:14, 688:21

**collateral** [2] - 591:8, 630:22

**colleague** [1] - 661:25

**colleagues** [1] - 669:8

**collect** [1] - 563:9

**collecting** [1] - 563:8

**collection** [3] - 551:4, 551:19, 562:20

**collections** [1] - 541:9

**collects** [1] - 562:25

**College** [3] - 533:18, 533:19, 535:4

**collegial** [1] - 541:22

**Columbia** [8] - 523:11, 523:13, 523:18, 526:7, 531:19, 538:18, 560:6, 655:8

**combination** [1] - 655:7

**Comcast** [1] - 589:15

**comfortable** [1] - 536:7

**coming** [4] - 516:15, 520:17, 579:10, 640:22

**comma** [2] - 610:8, 642:21

**Commandeering** [1] - 537:21

**comment** [2] - 563:25, 652:3

**commentary** [1] - 507:4

**comments** [4] - 564:8, 598:25, 599:3, 635:21

**commerce** [23] - 503:4, 505:3, 506:15, 609:8, 632:8, 632:10, 632:12, 632:13, 632:18, 653:20, 653:21, 654:1, 666:17, 666:19, 666:24, 675:5, 675:23, 676:11, 677:9, 678:14, 678:17, 678:19, 678:21

**commit** [3] - 612:15,

681:22, 681:23

**committed** [6] - 617:14, 638:24, 648:2, 665:14, 681:5, 681:25

**committee** [2] - 563:20, 564:11

**committing** [1] - 652:6

**common** [12] - 543:1, 567:23, 567:24, 568:2, 568:6, 568:13, 614:3, 658:10, 659:17, 670:9, 670:21, 672:24

**Common** [2] - 649:2, 649:5

**Commonwealth** [4] - 540:22, 543:15, 601:17, 649:5

**communicated** [2] - 566:14, 584:25

**communicates** [2] - 663:5, 678:7

**communicating** [4] - 544:24, 546:22, 657:19, 678:16

**communication** [46] - 503:4, 505:3, 506:15, 522:20, 525:12, 536:20, 546:24, 560:21, 565:14, 565:17, 579:22, 580:4, 580:9, 582:13, 608:2, 613:11, 622:14, 622:20, 622:23, 624:3, 629:1, 632:18, 633:4, 635:14, 636:4, 636:6, 637:1, 652:5, 656:16, 662:12, 663:13, 674:3, 675:6, 675:8, 675:23, 675:25, 676:11, 676:18, 676:22, 676:24, 677:4, 677:9, 677:10, 677:14, 678:11, 678:17

**communication;** [1] - 676:17

**communications** [33] - 516:1, 521:10, 521:16, 521:17, 522:14, 526:1, 536:9, 537:12, 558:17, 561:25, 575:12, 580:10, 585:18, 587:24,

588:10, 620:2, 620:5, 620:23, 622:22, 633:3, 634:25, 635:7, 637:4, 637:7, 655:25, 660:14, 661:21, 662:11, 662:17, 670:1, 688:6, 688:11, 688:18

**companies** [3] - 509:21, 564:6, 569:3

**Company** [1] - 642:21

**company** [6] - 524:7, 534:10, 534:24, 535:20, 551:9, 551:11

**comparative** [1] - 656:24

**compared** [1] - 542:13

**compel** [1] - 640:14

**compensation** [1] - 571:6

**competing** [1] - 649:14

**complaining** [4] - 550:14, 563:13, 570:5, 630:15

**complaint** [11] - 526:2, 528:8, 528:24, 540:1, 575:12, 576:5, 576:10, 579:13, 579:17, 653:5, 656:2

**complete** [4] - 542:21, 612:6, 649:24, 651:13

**completed** [1] - 691:13

**completely** [8] - 540:17, 546:22, 561:3, 563:5, 591:1, 640:25, 641:14, 650:4

**complex** [2] - 535:8, 691:22

**compliance** [2] - 576:6, 576:10

**compliant** [1] - 563:16

**complied** [6] - 504:15, 513:3, 514:9, 517:7, 686:18, 687:2

**Complied** [4] - 502:11, 504:10, 516:21, 604:22

**comply** [1] - 563:21

**comport** [1] - 539:15

**compound** [2] - 532:23, 568:14

**computer** [1] - 631:25

**comquat** [1] - 525:18
**concede** [1] - 555:18
**conceded** [1] - 547:25
**conceding** [3] - 508:16, 554:24, 636:6
**concept** [8] - 523:21, 532:16, 563:7, 568:7, 644:10, 647:24, 655:18, 659:17
**concepts** [1] - 679:22
**concern** [6] - 544:10, 589:3, 653:8, 654:5, 659:15, 661:10
**concerned** [7] - 502:15, 550:24, 579:21, 580:12, 646:7, 651:15, 661:2
**concerning** [1] - 588:11
**concerns** [4] - 522:21, 527:10, 570:8, 620:1
**conclude** [5] - 607:2, 661:15, 680:18, 680:19, 683:25
**concluded** [1] - 603:12
**concludes** [1] - 603:2
**conclusion** [2] - 622:10, 659:22
**conclusions** [4] - 645:13, 645:14, 680:3, 691:16
**conduct** [12] - 510:15, 510:22, 512:5, 541:21, 546:7, 585:1, 649:19, 651:19, 651:23, 659:11, 679:4, 679:15
**conducted** [1] - 660:3
**conducting** [1] - 549:22
**confer** [6] - 516:8, 516:22, 684:8, 686:15, 691:12, 692:16
**conference** [1] - 536:23
**confidential** [4] - 546:5, 546:23, 559:22, 652:22
**confirm** [1] - 542:1
**confirmation** [1] - 659:18
**conflict** [1] - 555:7
**confuse** [1] - 519:10
**confused** [8] - 601:13, 607:2, 607:4,

638:25, 642:19, 647:19, 652:25, 679:23
**confusing** [2] - 647:24, 666:14
**confusion** [3] - 543:25, 644:5, 658:7
**Congress** [2] - 537:22, 640:1
**conjecture** [2] - 672:18, 672:21
**conjunction** [1] - 627:24
**conjunctive** [1] - 615:6
**connection** [3] - 508:11, 632:20, 661:13
**Conner** [93] - 527:10, 546:9, 547:19, 550:20, 551:5, 552:21, 553:9, 553:17, 554:3, 554:14, 555:19, 559:8, 559:13, 562:9, 563:18, 564:11, 565:15, 567:21, 574:18, 576:7, 581:5, 581:12, 581:16, 581:24, 582:6, 582:9, 582:12, 582:19, 582:23, 583:8, 583:11, 584:17, 588:17, 588:24, 592:19, 592:24, 593:7, 593:15, 595:4, 597:14, 597:17, 599:4, 599:9, 601:16, 620:7, 621:6, 623:16, 623:24, 624:6, 625:8, 625:12, 625:17, 625:19, 626:2, 626:3, 626:12, 626:13, 626:20, 627:9, 627:12, 627:17, 627:19, 627:20, 627:25, 628:3, 628:15, 628:19, 629:15, 630:16, 630:17, 634:2, 634:5, 634:16, 635:2, 636:25, 638:21, 639:9, 639:19, 641:6, 642:3, 645:17, 646:7, 647:24,

647:25, 656:16, 660:20, 661:1, 662:8, 664:24, 674:4, 674:7
**Conner's** [4] - 593:25, 623:16, 663:21, 682:9
**Connolly** [2] - 638:2, 638:6
**conscience** [1] - 683:20
**conscious** [1] - 678:24
**consequence** [8] - 520:20, 532:19, 536:14, 545:8, 548:9, 557:25, 559:12, 598:20
**consequences** [9] - 511:14, 559:21, 559:24, 584:25, 593:23, 660:21, 660:23
**consequently** [1] - 556:1
**consider** [25] - 609:25, 611:6, 611:21, 611:22, 617:3, 617:17, 654:2, 663:1, 670:10, 670:24, 675:16, 677:17, 677:18, 677:20, 679:11, 680:12, 680:14, 680:15, 681:11, 681:20, 682:1, 682:8, 684:13, 687:17
**consideration** [1] - 618:1
**considerations** [3] - 552:6, 671:21
**considered** [4] - 533:19, 544:2, 670:17, 677:25
**consistency** [1] - 671:6
**consistent** [3] - 603:19, 671:8, 671:9
**conspirator** [1] - 665:9
**constant** [1] - 583:16
**constantly** [3] - 538:14, 570:20, 601:13
**constien** [1] - 575:13
**constitute** [1] - 660:14
**Constitution** [2] - 568:4, 568:5
**constitution** [13] -

516:3, 523:13, 523:19, 528:1, 528:2, 544:22, 564:15, 565:18, 567:25, 568:14, 585:8, 654:8, 671:25
**constitutional** [16] - 512:3, 520:12, 520:22, 528:10, 529:6, 532:23, 550:16, 555:11, 570:3, 570:5, 570:19, 616:18, 654:18, 670:15, 671:18, 671:24
**constitutionally** [2] - 531:24, 565:14
**constitutions** [2] - 510:23, 568:14
**constructive** [4] - 504:6, 505:23, 508:17, 508:18
**consulting** [1] - 669:11
**Consulting** [2] - 569:2
**consume** [1] - 519:11
**consuming** [1] - 546:4
**contact** [3] - 525:22, 528:20, 684:7
**contacted** [1] - 624:21
**contain** [3] - 511:24, 579:25, 580:25
**contained** [1] - 567:9, 568:2, 579:10, 581:7, 590:3, 592:22, 592:23, 593:7, 624:3, 626:21, 631:12, 675:8, 675:25, 676:18, 677:10, 682:10
**containing** [1] - 674:6
**contemplating** [1] - 664:17
**content** [1] - 579:22
**contents** [1] - 629:13
**context** [17] - 504:4, 544:23, 579:24, 599:15, 616:17, 619:24, 623:12, 625:13, 659:7, 663:3, 663:10, 663:12, 663:13, 663:14, 663:16, 664:4, 678:5
**Conti** [50] - 538:6, 547:10, 547:11, 548:13, 549:14, 550:4, 556:20, 558:12, 575:4,

575:20, 591:7, 591:11, 591:18, 591:20, 591:25, 592:1, 595:15, 595:25, 596:7, 596:15, 596:18, 596:23, 601:16, 602:10, 621:5, 621:12, 621:15, 629:12, 629:17, 630:4, 630:21, 630:23, 631:8, 631:16, 631:18, 631:19, 634:11, 634:17, 635:1, 635:16, 636:23, 637:2, 641:13, 648:24, 649:20, 650:13, 675:8, 675:12, 676:1, 676:4
**Conti's** [8] - 575:10, 576:3, 576:15, 577:4, 577:12, 597:7, 601:6
**continue** [2] - 532:18, 556:25
**continuing** [1] - 510:7
**contract** [1] - 557:15
**contracts** [2] - 509:21, 562:20, 564:6
**contradictions** [1] - 639:9
**contrary** [3] - 541:14, 561:13, 648:24
**control** [6] - 527:11, 570:13, 649:24, 656:22, 661:9, 683:1
**controls** [2] - 638:6, 660:24
**controversy** [1] - 556:12
**convened** [1] - 502:1
**convenient** [1] - 525:3
**convention** [1] - 654:10
**conversation** [7] - 543:25, 579:16, 588:21, 633:17, 653:1, 654:19
**conversations** [1] - 531:14
**convict** [1] - 672:17
**convicted** [3] - 504:2, 658:22, 664:21
**conviction** [2] - 614:18, 658:22
**convince** [1] - 672:13
**convinced** [3] - 673:6, 676:14, 683:13
**convincing** [1] - 672:4

**cooperate** [2] - 544:6, 691:20
**coordination** [1] - 652:16
**copies** [14] - 512:14, 512:19, 513:6, 516:10, 516:12, 517:24, 531:10, 603:15, 605:6, 605:11, 605:13, 605:23, 606:10
**copy** [22] - 504:8, 507:23, 512:20, 513:17, 525:9, 528:23, 539:16, 540:1, 540:3, 576:5, 576:9, 577:19, 577:20, 592:13, 592:15, 603:15, 604:18, 605:18, 606:16, 634:22, 634:23, 691:14
**core** [3] - 568:4, 568:14, 646:5
**Corporate** [1] - 538:21
**corporate** [5] - 535:22, 539:4, 542:8, 551:14, 567:23
**corporation** [15] - 538:22, 539:4, 539:5, 540:14, 540:18, 540:19, 541:19, 542:10, 542:11, 542:12, 542:18, 551:15, 562:11, 641:9, 642:14
**corporations** [1] - 540:9
**corpus** [1] - 586:7
**correct** [36] - 510:3, 515:8, 521:11, 558:1, 560:24, 572:19, 574:7, 574:23, 579:12, 580:16, 580:18, 581:11, 582:1, 582:10, 583:6, 583:9, 588:22, 588:25, 589:14, 589:23, 590:12, 590:20, 592:5, 593:1, 595:19, 595:21, 596:16, 597:8, 599:12, 602:18, 602:21, 602:22, 630:2, 639:18, 642:20, 657:15
**corrections** [1] - 513:9

**correctly** [8] - 511:2, 528:19, 538:14, 541:15, 551:6, 553:23, 555:20, 689:2
**correspondence** [2] - 626:7, 657:3
**Corricelli** [3] - 628:6, 632:1, 632:3
**Corricelli's** [1] - 629:2
**corrupt** [1] - 665:8
**corruption** [1] - 543:6
**cost** [1] - 525:4
**costly** [1] - 541:7
**counsel** [8] - 550:1, 646:11, 649:11, 691:17, 691:18, 691:19, 691:24, 692:21
**Count** [38] - 556:16, 592:16, 592:18, 621:6, 621:14, 621:15, 623:17, 626:19, 628:9, 628:13, 628:24, 629:6, 629:14, 631:1, 634:10, 634:15, 634:16, 634:25, 635:2, 635:8, 635:10, 635:18, 635:20, 658:14, 673:15, 673:22, 674:22, 675:1, 675:15, 675:16, 675:19, 676:8, 688:5, 688:11, 688:18
**count** [2] - 633:23, 684:16
**counting** [1] - 633:12
**country** [5] - 532:5, 664:15, 664:25, 665:1, 665:5
**country's** [1] - 565:3
**Counts** [4] - 593:7, 610:6, 632:14, 677:3
**counts** [23] - 504:21, 537:12, 609:19, 609:21, 610:5, 610:8, 632:17, 634:15, 638:16, 669:5, 677:5, 689:14, 689:17, 689:20, 689:23, 690:1, 690:4, 690:7, 690:10, 690:13, 690:16, 690:19, 690:22
**County** [3] - 519:20, 557:7, 569:7

**couple** [13] - 516:18, 539:25, 546:15, 574:9, 607:16, 627:13, 638:14, 663:19, 667:17, 667:19, 672:16, 674:10, 690:25
**course** [8] - 515:21, 518:25, 542:11, 565:11, 624:9, 633:17, 652:12, 682:11
**COURT** [248] - 502:3, 502:9, 502:14, 502:18, 502:22, 503:5, 503:14, 503:25, 504:8, 504:12, 504:17, 504:20, 505:8, 505:12, 505:16, 505:23, 506:3, 506:8, 506:10, 506:17, 506:21, 506:23, 507:14, 507:22, 508:4, 508:7, 508:19, 509:7, 509:14, 509:23, 510:12, 510:21, 511:5, 511:8, 511:16, 511:20, 511:23, 512:1, 512:9, 512:13, 512:16, 512:21, 512:25, 513:4, 513:9, 513:12, 513:16, 513:21, 514:1, 514:3, 514:7, 514:10, 514:14, 514:16, 514:20, 514:23, 515:4, 515:10, 515:14, 515:18, 515:24, 516:7, 516:11, 516:17, 516:23, 517:2, 517:5, 517:8, 517:10, 517:16, 517:22, 517:25, 518:2, 518:7, 518:9, 518:13, 518:17, 518:22, 519:23, 521:5, 521:8, 521:13, 521:15, 530:15, 530:21, 531:1, 537:3, 537:6, 537:8, 537:10, 537:16, 543:7, 546:11, 546:18, 551:20, 551:24, 552:3, 552:12, 552:16, 552:24,

553:5, 558:10, 558:13, 558:15, 565:8, 565:10, 565:17, 565:21, 565:25, 566:3, 566:5, 566:17, 566:22, 566:25, 567:7, 569:18, 569:21, 572:14, 572:19, 572:24, 573:7, 573:10, 573:13, 573:15, 573:20, 594:13, 597:3, 599:20, 599:23, 601:20, 601:22, 602:16, 602:20, 602:23, 603:1, 603:14, 603:19, 603:22, 603:25, 604:2, 604:8, 604:12, 604:16, 604:21, 604:23, 605:1, 605:5, 605:8, 605:12, 605:15, 605:22, 605:24, 606:1, 606:5, 606:7, 606:19, 606:25, 607:8, 607:18, 607:23, 608:13, 608:20, 609:2, 609:5, 610:20, 610:22, 611:8, 611:10, 611:16, 611:20, 612:8, 612:11, 612:14, 612:18, 612:25, 613:4, 613:9, 613:12, 613:17, 613:20, 613:24, 614:5, 614:15, 615:2, 615:5, 615:9, 615:15, 615:18, 616:5, 616:8, 616:11, 616:14, 618:5, 618:7, 618:20, 618:22, 618:25, 619:2, 638:17, 644:25, 645:5, 645:9, 645:16, 646:17, 649:7, 649:13, 650:23, 651:8, 651:25, 657:2, 657:6, 659:23, 663:17, 663:20, 665:16, 665:23, 666:6, 666:11, 666:13, 666:18, 666:22, 667:6, 667:9, 667:12,

685:1, 685:9, 685:11, 685:23, 686:7, 686:10, 686:14, 686:16, 686:19, 686:23, 687:3, 687:20, 687:25, 688:2, 689:1, 689:4, 689:6, 689:11, 690:24, 691:9, 692:14, 692:20, 692:24, 693:2
**court** [39] - 507:6, 526:10, 529:5, 537:4, 540:13, 540:24, 542:5, 543:20, 547:17, 556:20, 557:9, 557:24, 559:17, 562:16, 562:19, 563:6, 563:14, 563:15, 569:4, 569:9, 571:5, 572:9, 576:23, 586:3, 586:4, 586:5, 627:4, 627:5, 627:6, 636:19, 640:16, 642:5, 644:13, 644:14, 659:16, 660:2, 682:20
**Court** [45] - 503:8, 506:18, 511:1, 512:20, 514:7, 519:22, 525:15, 531:19, 537:22, 541:1, 543:3, 543:5, 544:7, 547:13, 547:25, 549:10, 551:22, 552:3, 552:17, 554:6, 554:10, 565:11, 566:15, 569:1, 570:6, 571:7, 572:7, 600:21, 600:25, 601:12, 602:11, 614:11, 614:19, 614:25, 643:13, 643:16, 644:15, 644:19, 644:21, 649:2, 649:4, 649:6, 650:2, 658:22, 674:5
**courthouse** [1] - 623:19
**courtroom** [3] - 537:18, 691:8, 693:5
**COURTROOM** [22] - 519:7, 573:6, 573:17, 616:2, 665:21, 685:7, 685:19, 687:22,

688:4, 689:13, 689:16, 689:19, 689:22, 689:25, 690:3, 690:6, 690:9, 690:12, 690:15, 690:18, 690:21, 691:7

**Courtroom** [1] - 684:25

**courts** [9] - 520:11, 528:11, 550:13, 564:13, 564:14, 572:3, 576:25, 602:6, 659:11

**cover** [2] - 528:10, 637:15

**covered** [8] - 557:16, 557:19, 557:20, 558:4, 680:25, 681:3, 681:15

**created** [4] - 522:21, 534:23, 558:5, 644:4

**credibility** [8] - 549:20, 550:9, 617:3, 662:23, 663:1, 670:20, 671:11, 680:24

**credit** [1] - 563:2

**crime** [15] - 502:19, 509:17, 526:23, 526:24, 544:25, 547:9, 560:11, 560:14, 609:18, 609:22, 652:6, 676:10, 676:13, 681:22, 681:25

**crimes** [6] - 522:5, 561:6, 564:12, 638:24, 648:1, 650:19

**criminal** [7] - 537:6, 546:7, 555:3, 629:19, 637:16, 665:8, 692:5

**crooked** [1] - 576:2

**cross** [8] - 523:24, 572:25, 599:24, 604:10, 623:12, 628:11, 632:2, 632:21

**CROSS** [1] - 573:22

**cross-examined** [1] - 632:2

**cross-over** [1] - 523:24

**crux** [9] - 527:2, 556:17, 557:20, 595:24, 608:16, 608:20, 631:13, 631:15, 676:2

**Cruz** [37] - 521:24, 522:11, 522:13, 523:4, 526:20, 532:9, 536:2, 544:14, 544:24, 556:5, 560:17, 561:7, 588:21, 589:8, 589:16, 589:25, 590:7, 591:10, 591:25, 592:3, 599:10, 629:4, 629:11, 630:9, 634:3, 634:9, 634:10, 634:14, 634:16, 635:1, 635:12, 636:24, 651:9, 652:5, 652:23, 658:6, 675:7

**Cruz's** [2] - 629:4, 651:23

**cue** [1] - 573:3

**Cumberland** [1] - 557:7

**curiam** [1] - 570:1

**current** [1] - 568:3

**Curtis** [1] - 675:24

**customs** [1] - 523:17

**cut** [7] - 512:6, 517:4, 575:8, 642:16, 645:8, 663:25, 664:10

**D**

**DACA** [3] - 556:6, 585:5

**Daily** [1] - 644:20

**damage** [2] - 591:8, 630:22

**damages** [3] - 524:2, 550:13, 576:17

**danger** [1] - 556:1

**dangerous** [2] - 545:5, 586:24

**data** [2] - 678:18

**date** [13] - 521:9, 521:10, 521:16, 568:20, 582:21, 595:3, 617:14, 617:15, 631:4, 681:5, 681:6, 691:12

**dated** [4] - 581:10, 591:25, 674:4, 688:25

**David** [2] - 557:5, 559:3

**Dawson** [1] - 543:2

**days** [4] - 529:14, 581:13, 638:14,

643:5

**DC** [7] - 525:8, 526:11, 531:19, 539:20, 572:9, 587:1, 656:11

**dead** [7] - 532:11, 551:1, 559:25, 561:20, 594:8, 639:3, 659:10

**Deadly** [4] - 556:21, 602:3, 631:20, 676:5

**deadly** [4] - 509:18, 593:23, 596:2

**deal** [2] - 514:16, 526:15

**dealing** [4] - 533:20, 600:7, 643:19, 652:22

**dealings** [1] - 658:8

**dealt** [1] - 554:18

**death** [9] - 536:14, 558:20, 583:13, 586:3, 586:21, 627:4, 641:19, 661:8

**deaths** [2] - 626:14, 636:23

**debilitations** [1] - 684:23

**debt** [7] - 551:4, 551:19, 562:20, 563:1, 638:20, 643:9

**debts** [1] - 642:17

**December** [1] - 571:4

**decide** [15] - 556:10, 566:3, 607:3, 668:23, 671:14, 681:9, 681:7, 681:9, 681:13, 683:21, 684:9, 686:4, 686:11, 686:25, 691:17

**decided** [2] - 521:6, 521:7

**decides** [1] - 600:24

**deciding** [3] - 681:9, 681:12, 681:21

**decision** [19] - 507:6, 519:4, 575:10, 575:19, 577:4, 585:5, 591:20, 591:24, 597:7, 617:10, 618:2, 642:9, 652:23, 669:8, 670:16, 677:20, 677:22, 677:24, 692:9

**decisions** [3] - 559:21, 621:12, 624:14

**declaratory** [9] - 524:2, 524:8,

538:20, 540:9, 548:18, 557:9, 560:7, 600:14, 655:7

**declared** [1] - 521:1

**dedicated** [1] - 667:21

**deemed** [1] - 601:3

**default** [34] - 522:7, 535:25, 543:14, 543:22, 544:2, 544:8, 544:12, 544:13, 546:1, 548:4, 548:5, 548:8, 548:10, 548:16, 549:4, 549:7, 549:11, 549:14, 551:18, 553:25, 560:10, 572:2, 584:18, 598:8, 600:18, 602:9, 627:11, 641:15, 641:24, 642:11, 642:24, 643:14, 648:15, 648:18

**defect** [1] - 660:4

**defects** [1] - 645:21

**defend** [3] - 543:21, 548:19, 548:21

**defendant** [2] - 535:21, 575:24

**Defendant** [76] - 503:1, 503:3, 503:9, 503:13, 505:2, 505:5, 506:14, 513:13, 528:22, 548:6, 548:7, 548:19, 607:1, 607:3, 607:10, 608:2, 609:21, 610:6, 610:8, 614:20, 615:12, 615:16, 621:13, 622:4, 622:5, 622:14, 625:5, 627:19, 628:12, 632:17, 633:3, 633:16, 634:3, 634:4, 636:4, 648:11, 655:19, 660:18, 662:7, 663:2, 664:11, 665:10, 665:14, 671:16, 671:17, 671:18, 672:17, 673:17, 673:24, 675:3, 675:21, 676:13, 676:16, 676:21, 677:2, 677:5, 677:8, 677:13, 678:4, 678:10, 678:16,

678:24, 679:4, 679:12, 679:17, 681:8, 681:14, 681:17, 681:21, 682:3, 682:10, 683:22, 688:10, 688:16, 688:23, 692:5

**Defendant's** [13] - 530:18, 530:19, 531:2, 573:25, 574:17, 575:5, 600:6, 625:3, 635:21, 664:7, 671:21, 679:10, 679:14

**DEFENDANT'S** [1] - 519:6

**Defendants** [2] - 548:25, 549:5

**defendants** [5] - 527:21, 529:11, 530:3, 624:9, 692:3

**defending** [2] - 511:10, 512:5

**defense** [26] - 508:25, 509:3, 509:4, 509:5, 509:11, 509:16, 510:2, 510:5, 510:16, 510:17, 510:24, 510:25, 511:1, 511:2, 511:5, 511:6, 516:2, 516:18, 516:19, 549:8, 551:9, 578:15, 602:3, 602:23, 648:13, 679:5

**Defense** [5] - 530:14, 530:22, 541:13, 588:7, 588:12

**defenses** [2] - 509:2, 511:2

**deferred** [1] - 556:10

**define** [4] - 529:4, 538:22, 540:9, 548:23

**defined** [3] - 504:24, 565:11, 614:3

**defines** [1] - 505:9

**defining** [2] - 507:5, 541:18

**definite** [1] - 548:9

**definitely** [3] - 650:5, 650:6

**definition** [13] - 539:5, 540:14, 540:16, 540:18, 540:19, 542:9, 542:21, 542:23, 542:24,

600:19, 643:24,
685:24, 686:2
**Delaware** [5] - 551:15,
551:16, 555:6,
555:10, 641:9
**delay** [6] - 510:9,
526:16, 527:1,
529:6, 568:16,
583:13
**delays** [3] - 510:9,
536:4, 550:22
**delete** [5] - 606:21,
607:24, 609:21,
610:5, 611:25
**deleted** [1] - 610:14
**deliberate** [4] - 573:8,
619:16, 669:10,
684:4
**deliberating** [6] -
603:11, 626:11,
683:24, 684:2,
685:13, 687:16
**deliberation** [2] -
667:24, 689:7
**deliberations** [9] -
617:25, 620:15,
638:7, 669:12,
684:1, 684:11,
685:5, 685:14,
685:20
**deliver** [4] - 525:8,
526:11, 575:11,
656:14
**delivered** [8] - 524:22,
576:5, 577:17,
599:15, 619:24,
628:16, 674:1, 674:2
**delivery** [1] - 524:19
**demanded** [2] -
524:10, 531:13
**democracies** [1] -
532:22
**democracy** [1] -
532:21
**demonstrated** [1] -
649:11
**denied** [3] - 569:4,
644:18, 659:19
**deny** [1] - 693:2
**Department** [2] -
538:22, 540:21
**department** [2] -
539:25, 541:9
**departure** [1] - 692:7
**deposit** [1] - 673:25
**deposited** [1] - 628:17
**depository** [1] -
673:25
**deputy** [5] - 531:9,
573:4, 684:7,

684:21, 684:25
**Deputy** [19] - 578:24,
579:2, 587:24,
588:8, 620:17,
621:18, 621:19,
621:24, 622:2,
622:16, 623:6,
633:6, 633:11,
633:14, 635:11,
662:5, 681:18, 682:6
**DEPUTY** [25] - 513:2,
519:7, 573:6,
573:17, 606:4,
606:6, 616:2,
665:21, 685:7,
685:19, 687:22,
688:4, 689:13,
689:16, 689:19,
689:22, 689:25,
690:3, 690:6, 690:9,
690:12, 690:15,
690:18, 690:21,
691:7
**describe** [9] - 522:2,
537:19, 586:11,
587:5, 590:18,
620:22, 637:16,
668:6, 678:23
**described** [10] -
579:16, 587:1,
587:7, 588:16,
590:19, 597:6,
599:6, 620:8, 645:6,
682:15
**describes** [1] - 623:8
**describing** [1] - 587:6
**description** [1] -
587:11
**deserves** [4] - 519:4,
670:12, 680:14,
682:14
**designation** [6] -
526:8, 533:18,
533:20, 640:20,
640:22, 640:23
**desire** [2] - 559:1,
571:23
**desperate** [1] - 661:15
**detail** [2] - 560:25,
623:23
**detailed** [1] - 659:8
**detailing** [1] - 638:23
**details** [4] - 534:6,
558:14, 645:5, 645:8
**detained** [2] - 531:12,
647:13
**deteriorated** [1] -
534:25
**determination** [11] -
523:23, 540:23,

544:7, 565:18,
586:7, 606:23,
607:5, 607:12,
627:8, 660:13, 678:2
**determine** [7] - 524:3,
549:23, 557:10,
572:1, 643:10,
655:20, 682:11
**determined** [4] -
555:7, 556:8, 614:3,
665:12
**determining** [2] -
541:6, 680:9
**devastated** [1] -
536:12
**devastating** [1] -
559:20
**development** [1] -
524:17
**developments** [2] -
525:20, 535:19
**deviate** [1] - 563:24
**deviation** [1] - 600:22
**device** [1] - 532:17
**DI** [6] - 514:20, 515:5,
516:11, 516:12,
516:14
**dialogue** [1] - 601:6
**diameter** [1] - 534:15
**dictate** [1] - 603:4
**die** [7] - 594:6, 623:5,
626:13, 653:12,
659:13, 661:5, 661:8
**died** [2] - 558:23,
657:13
**difference** [1] - 648:4
**different** [24] - 505:6,
510:25, 529:11,
540:17, 545:1,
553:21, 554:9,
560:18, 562:2,
568:6, 605:18,
614:8, 614:16,
624:11, 624:19,
629:14, 640:15,
640:22, 648:13,
656:16, 656:23,
662:1, 679:22
**differently** [3] - 614:8,
618:9, 683:15
**differing** [1] - 641:17
**difficult** [1] - 546:16
**difficulty** [1] - 648:10
**diligent** [1] - 583:1
**dire** [1] - 657:15
**DIRECT** [1] - 519:9
**direct** [19] - 554:4,
559:11, 584:10,
585:21, 586:14,
589:21, 597:6,

597:21, 598:24,
599:25, 626:12,
630:2, 647:2, 647:6,
648:5, 648:6, 652:4,
652:8, 669:19
**directed** [2] - 541:17,
638:21
**directions** [1] - 674:3
**directly** [7] - 510:14,
521:20, 538:23,
623:15, 642:3,
659:11, 679:8
**disability** [2] - 559:10,
559:13
**disabuse** [1] - 552:14
**disagree** [4] - 511:11,
547:14, 598:22,
598:23, 623:7,
649:13
**disaster** [1] - 520:23
**disavowed** [1] - 557:8
**discretion** [2] - 556:6
**discretionary** [2] -
560:9, 596:2
**Discretionary** [4] -
556:21, 602:3,
631:20, 676:4
**discuss** [2] - 502:4,
537:17, 579:10,
669:5, 683:23
**discussed** [9] - 553:3,
577:13, 583:17,
591:13, 603:20,
621:22, 623:18,
623:23, 633:8
**discussing** [1] -
567:15
**discussion** [6] -
507:25, 549:21,
565:11, 589:1,
597:14, 643:14
**dishonest** [1] - 651:17
**dishonored** [1] -
582:24
**disinterested** [1] -
554:16
**dismiss** [1] - 644:22
**dismissed** [5] - 563:6,
563:12, 570:1,
570:24
**dismissing** [1] - 570:2
**displayed** [1] - 666:12
**disposed** [1] - 524:12
**dispositive** [1] - 642:7
**dispute** [8] - 534:15,
539:7, 552:19,
580:20, 580:24,
591:22, 651:19,
660:8
**disputed** [2] - 551:21,

632:21
**disputes** [2] - 551:6,
553:23
**disqualified** [1] -
551:10
**disregard** [3] - 545:13,
670:8, 680:20
**disseminated** [1] -
561:17
**disseminates** [1] -
562:25
**dissuade** [1] - 527:2
**distinction** [2] - 628:1,
669:20
**District** [39] - 510:6,
520:6, 523:11,
523:12, 523:18,
525:15, 526:7,
527:8, 527:22,
531:19, 538:18,
549:14, 557:5,
557:7, 559:2, 560:6,
597:11, 601:1,
623:20, 628:19,
638:22, 639:21,
640:17, 646:8,
654:15, 655:8,
673:23, 674:5,
674:6, 675:3, 675:9,
675:20, 676:1,
676:2, 688:7,
688:13, 688:20
**district** [16] - 546:8,
552:1, 586:4, 614:1,
614:9, 614:13,
614:16, 617:22,
618:9, 618:10,
627:5, 640:16,
642:5, 687:6, 687:14
**districts** [2] - 614:8,
618:12
**disturbing** [1] - 634:6
**diversity** [3] - 540:17,
642:22
**docket** [15] - 517:3,
517:10, 524:25,
526:10, 526:19,
526:22, 539:17,
548:14, 549:1,
550:2, 624:8, 640:21
**dockets** [1] - 596:18
**Docson** [1] - 569:2
**Doctrine** [5] - 537:21,
556:22, 602:4,
631:20, 676:5
**doctrine** [3] - 596:2,
601:12, 602:11
**document** [29] -
514:19, 514:22,
515:14, 526:4,

526:9, 531:18,
548:21, 553:24,
569:12, 577:11,
578:2, 578:18,
585:15, 612:23,
626:16, 627:15,
627:16, 627:18,
627:20, 627:21,
642:19, 646:11,
646:17, 646:19,
650:8, 653:25,
659:10, 673:17
**documents** [12] -
509:21, 514:10,
531:15, 539:19,
541:12, 554:8,
567:20, 574:17,
622:24, 638:9,
658:19, 671:10
**dollar** [2] - 535:24,
642:14
**dollars** [7] - 534:22,
545:10, 558:6,
562:21, 594:8,
642:17, 661:12
**Donald** [1] - 569:10
**done** [26] - 522:8,
524:11, 528:1,
528:5, 535:17,
539:14, 540:4,
541:15, 545:24,
551:6, 553:4,
553:23, 554:4,
557:19, 580:14,
584:21, 621:8,
625:5, 639:12,
645:18, 646:1,
648:23, 657:21,
668:14, 679:11,
679:25
**door** [1] - 563:4
**doors** [1] - 647:14
**double** [3] - 542:14,
602:20, 612:13
**doubt** [38] - 609:23,
613:25, 614:2,
614:12, 615:3,
616:25, 617:14,
623:9, 637:17,
637:19, 637:20,
637:21, 637:22,
638:12, 641:18,
665:15, 668:2,
672:5, 672:8,
672:14, 672:19,
672:20, 672:23,
672:24, 673:1,
673:8, 673:10,
676:15, 677:7,
678:15, 681:5,

681:14, 682:16,
683:22, 688:9,
688:16, 688:23
**doubts** [3] - 672:20,
672:21, 672:22
**Dougherty** [123] -
503:23, 505:24,
508:8, 512:15,
512:21, 514:1,
514:11, 515:4,
515:9, 515:15,
515:25, 516:8,
516:22, 516:23,
517:11, 518:19,
518:22, 519:8,
519:25, 520:4,
521:5, 521:21,
525:13, 527:8,
538:10, 543:7,
546:1, 546:19,
553:19, 556:18,
559:17, 564:5,
564:21, 566:18,
568:22, 569:1,
570:9, 570:10,
573:24, 576:4,
577:11, 577:16,
584:9, 586:1,
587:15, 588:9,
591:5, 594:20,
594:22, 595:24,
598:16, 599:21,
602:17, 603:23,
604:12, 606:2,
608:17, 608:18,
608:21, 608:22,
609:5, 610:17,
611:3, 611:12,
612:3, 613:2, 616:5,
618:22, 619:7,
619:9, 620:3,
620:20, 620:22,
620:25, 621:25,
622:17, 622:20,
623:1, 623:23,
625:9, 625:13,
625:21, 625:24,
626:15, 627:21,
629:10, 630:8,
630:19, 631:3,
631:15, 632:24,
633:7, 633:19,
633:20, 634:7,
634:13, 638:5,
638:17, 640:24,
646:5, 646:8, 647:3,
647:9, 647:10,
650:5, 651:22,
665:6, 665:11,
670:4, 670:13,
671:23, 672:12,

673:24, 675:4,
675:11, 675:21,
676:3, 688:5,
688:10, 688:16,
688:23, 691:10
**DOUGHERTY** [76] -
504:6, 508:13,
508:21, 509:13,
509:15, 510:4,
510:17, 510:24,
511:7, 511:11,
511:19, 511:22,
511:25, 512:8,
512:10, 512:24,
514:6, 514:13,
514:15, 515:6,
515:11, 515:17,
516:9, 517:1, 517:3,
517:15, 517:20,
518:10, 518:21,
519:6, 573:14,
602:19, 602:22,
603:24, 604:14,
607:15, 607:22,
610:19, 610:21,
611:5, 611:9,
611:15, 611:18,
612:5, 613:3,
613:15, 616:7,
616:10, 616:13,
618:4, 618:6,
618:19, 618:21,
618:24, 638:18,
645:4, 645:7,
645:15, 645:17,
646:16, 646:20,
649:10, 649:18,
651:7, 651:9,
651:24, 652:4,
657:5, 657:9, 686:5,
686:9, 686:12,
687:19, 689:10,
692:13, 692:25
**Dougherty's** [5] -
537:1, 620:2, 625:7,
633:17, 641:25
**Dougherty,is** [1] -
623:8
**down** [23] - 507:25,
525:10, 533:3,
535:18, 569:7,
576:14, 578:21,
602:17, 605:4,
607:2, 608:5,
610:13, 613:13,
625:21, 639:5,
647:14, 648:7,
650:18, 650:25,
684:6, 684:10
**downstairs** [2] -

603:18, 605:14
**drafted** [2] - 508:2,
565:4
**dragging** [1] - 643:20
**draw** [2] - 645:13
**drive** [4] - 525:8,
526:11, 656:10,
656:13
**drop** [1] - 540:14
**dropped** [7] - 526:1,
545:9, 545:20,
558:2, 593:20,
653:14, 657:25
**drunk** [1] - 536:13
**due** [17] - 550:16,
554:14, 587:13,
623:4, 639:14,
643:25, 644:2,
659:16, 659:19,
664:7, 664:11,
664:14, 664:16,
664:17, 664:22,
665:4
**Dupes** [9] - 539:21,
540:8, 574:20,
576:18, 576:19,
577:6, 577:14,
577:15, 595:14
**Dupes'** [1] - 577:19
**duplicate** [1] - 553:6
**duplicative** [1] - 552:8
**during** [30] - 513:14,
515:3, 515:13,
515:21, 518:24,
571:20, 579:1,
579:5, 579:16,
584:10, 585:21,
588:7, 588:23,
589:21, 592:10,
597:6, 597:14,
597:15, 597:21,
598:24, 599:24,
620:3, 620:11,
620:13, 620:15,
620:24, 621:11,
621:20, 633:16,
670:7
**duties** [1] - 669:14
**dutifully** [1] - 508:22
**duty** [5] - 657:1,
668:17, 683:7
**dying** [1] - 557:1

**E**

**e-mail** [71] - 538:4,
538:24, 539:14,
544:17, 545:22,
554:21, 554:22,

556:4, 556:16,
557:2, 569:12,
569:25, 576:20,
577:9, 589:9,
589:13, 589:15,
589:16, 591:10,
591:15, 591:25,
592:3, 592:6,
592:16, 593:8,
593:15, 593:19,
593:25, 594:4,
594:22, 594:23,
595:3, 595:4,
595:16, 595:17,
595:18, 595:21,
596:4, 596:12,
596:13, 596:14,
599:9, 599:10,
601:24, 621:5,
627:1, 629:5,
629:11, 629:18,
630:3, 630:6, 631:4,
631:8, 631:11,
631:17, 632:17,
634:10, 634:16,
635:1, 648:23,
653:16, 653:20,
653:25, 657:22,
662:8, 662:12,
663:15
**e-mailing** [1] - 633:2
**e-mails** [13] - 525:17,
596:8, 596:22,
596:24, 599:4,
627:1, 631:12,
632:7, 632:14,
632:15, 633:25,
635:8
**E-S** [1] - 611:25
**easier** [1] - 516:24
**easily** [1] - 526:5
**easy** [1] - 684:15
**eat** [1] - 605:20
**ECF** [2] - 550:3,
584:25
**edit** [1] - 583:3
**education** [2] - 680:5,
680:17
**effect** [7] - 527:19,
529:15, 530:9,
538:15, 572:13,
586:17, 639:24
**effected** [3] - 515:7,
540:6, 660:3
**effective** [1] - 576:7
**effort** [3] - 601:7,
628:22, 683:8
**efforts** [3] - 523:8,
530:10, 654:3
**either** [11] - 512:5,

526:22, 530:2,
572:4, 608:2,
622:14, 633:3,
636:4, 676:21,
677:13, 687:21
**elaborate** [1] - 549:21
**elected** [1] - 557:6
**election** [3] - 520:18,
585:14, 657:12
**electronic** [5] -
632:13, 675:5,
675:6, 675:23
**element** [20] - 502:19,
502:24, 503:1,
505:2, 506:13,
507:7, 507:9,
509:25, 544:4,
622:12, 632:12,
632:19, 632:22,
633:8, 639:23,
668:1, 672:15,
673:7, 677:17
**elements** [22] -
618:16, 622:13,
624:2, 628:9,
628:14, 628:22,
628:25, 632:4,
632:12, 632:16,
637:18, 638:11,
651:13, 667:22,
668:2, 668:7,
672:16, 673:11,
674:24, 676:7,
677:1, 678:3
**elevator** [3] - 529:24,
646:12, 647:13
**elicit** [1] - 648:20
**elmo** [2] - 686:16,
687:1
**Elonis** [5] - 503:16,
503:19, 505:9,
505:22, 506:25
**elsewhere** [3] - 665:3,
688:13, 688:20
**embarrassing** [3] -
545:3, 643:21, 658:5
**embarrassments** [1] -
643:12
**empanel** [2] - 640:3
**employed** [2] -
520:23, 557:18
**employee** [3] - 535:22,
537:25, 545:19
**employees** [4] -
529:12, 529:13,
529:14, 550:13
**enclave** [1] - 559:2
**enclaves** [1] - 640:2
**encountered** [1] -
557:6

**encourage** [1] -
691:20
**end** [13] - 512:7,
532:22, 559:24,
586:16, 586:21,
591:7, 596:2,
636:15, 643:7,
657:7, 672:10,
683:17
**ended** [1] - 655:2
**ends** [1] - 651:18
**Enerson** [17] - 529:1,
538:9, 540:5, 548:7,
548:23, 595:9,
595:13, 599:10,
620:17, 621:11,
631:6, 635:8, 637:1,
648:14, 650:4,
662:13, 675:24
**Enerson's** [2] - 602:7,
621:19
**enforce** [6] - 520:12,
544:19, 564:14,
639:1, 643:15,
644:10
**enforced** [3] - 561:5,
643:19, 652:15
**enforcement** [4] -
544:21, 579:9,
635:6, 643:14
**enforces** [2] - 561:2,
652:13
**engage** [1] - 533:9
**engaged** [2] - 546:7,
651:10
**England** [1] - 644:14
**English** [2] - 567:24,
659:2
**enlarge** [10] - 575:7,
575:8, 575:18,
575:25, 576:13,
577:4, 577:11,
578:12, 581:23,
584:8
**enlarged** [2] - 584:9,
591:4
**enrolled** [1] - 572:11
**ensued** [1] - 534:15
**ensure** [2] - 586:6,
627:7
**enter** [15] - 543:16,
543:24, 544:13,
548:5, 548:8,
548:20, 549:4,
549:7, 560:10,
572:2, 584:18,
600:18, 627:11,
648:15, 650:8
**entered** [9] - 522:8,
526:21, 543:14,

543:22, 549:7,
580:17, 646:8,
646:13, 646:21
**entering** [1] - 559:6
**entertain** [1] - 572:3
**entertained** [1] -
691:19
**Entick** [2] - 658:16
**entire** [5] - 519:18,
522:1, 527:2, 542:7,
543:5
**entirety** [2] - 578:18,
680:21
**entities** [3] - 539:8,
541:7, 570:11
**entitled** [7] - 550:17,
554:16, 557:15,
571:6, 600:20,
659:15, 659:16
**entity** [4] - 535:23,
542:17, 641:11
**envelope** [10] -
580:18, 580:20,
581:7, 581:16,
582:7, 582:8, 583:7,
626:1, 628:14,
663:22
**envelopes** [1] - 533:25
**environment** [3] -
571:16, 652:22,
653:8
**equal** [4] - 523:22,
550:17, 585:20,
683:5
**equally** [1] - 523:1
**equate** [1] - 568:7
**Eric** [4] - 621:20,
633:6, 633:11,
633:14
**escorted** [3] - 527:19,
625:15, 685:17
**escrow** [1] - 643:10
**especially** [2] -
541:23, 572:5
**essential** [1] - 676:7
**essentially** [1] -
566:18
**essentials** [2] -
528:18, 528:20
**establish** [3] - 567:22,
586:2, 628:13
**established** [5] -
552:18, 553:11,
553:18, 640:5, 640:7
**establishes** [1] -
681:4
**estate** [3] - 545:10,
558:7, 564:9
**estimate** [1] - 604:10
**etymology** [1] -

582:24
**evaluate** [3] - 638:8,
662:23, 663:11
**evaluating** [4] -
637:23, 637:24,
638:13, 663:1
**event** [10] - 527:6,
527:10, 527:15,
529:21, 545:8,
546:20, 571:20,
590:18, 590:21,
590:22
**events** [8] - 531:7,
537:11, 545:3,
570:13, 588:20,
596:14, 662:2,
670:11
**everyday** [1] - 670:10
**everywhere** [1] -
532:21
**evict** [1] - 564:7
**evidence** [82] -
514:12, 515:15,
518:24, 519:1,
519:3, 530:14,
530:19, 552:1,
572:15, 603:2,
616:15, 616:16,
616:22, 616:23,
617:8, 617:18,
619:21, 620:12,
628:8, 632:21,
636:20, 637:23,
637:25, 638:1,
638:9, 638:14,
639:5, 645:2,
645:10, 645:12,
646:17, 646:19,
649:15, 650:23,
651:22, 651:25,
652:1, 657:3, 660:7,
662:19, 662:20,
668:15, 669:12,
669:18, 670:3,
670:5, 670:6, 670:7,
670:10, 670:11,
672:1, 672:3,
672:18, 673:1,
673:4, 673:5, 673:6,
673:17, 673:19,
673:20, 674:12,
677:19, 677:21,
679:12, 680:2,
680:9, 680:13,
680:15, 680:20,
681:4, 681:13,
681:19, 681:20,
682:1, 682:6, 682:8,
682:12, 683:8,
686:8, 693:3

**evidenced** [1] - 681:24
**evident** [1] - 544:22
**evils** [2] - 509:4,
578:15
**exact** [2] - 622:5,
635:18
**exactly** [10] - 555:24,
560:20, 580:4,
600:7, 620:6,
634:25, 642:1,
648:9, 659:7, 683:17
**EXAMINATION** [3] -
519:9, 573:22, 600:4
**examination** [5] -
572:25, 585:21,
599:25, 628:11,
632:21
**examined** [1] - 632:2
**example** [1] - 669:21
**exceed** [1] - 542:12
**except** [3] - 540:16,
643:19, 693:5
**exception** [1] - 680:4
**excerpts** [1] - 591:20
**excessive** [1] - 526:15
**excessively** [1] -
650:6
**exclusive** [1] - 534:13
**excuse** [16] - 524:19,
549:17, 553:17,
556:5, 564:5, 581:7,
600:22, 601:16,
605:6, 642:24,
645:22, 647:1,
648:13, 648:18,
665:18, 689:7
**excusing** [1] - 512:5
**execution** [4] - 584:6,
627:22, 628:2, 664:1
**executive** [15] - 510:5,
520:7, 520:13,
562:10, 562:14,
563:19, 564:11,
565:24, 576:8,
577:17, 585:7,
598:15, 638:22,
656:17
**executives** [3] - 534:1,
564:18
**Exhibit** [51] - 530:14,
530:18, 530:20,
530:22, 531:2,
539:17, 541:13,
549:25, 559:11,
573:25, 574:18,
574:20, 574:22,
574:25, 575:5,
578:1, 579:6,
579:25, 580:18,
581:8, 581:21,

582:18, 586:20,
588:7, 588:12,
588:16, 589:9,
589:12, 591:19,
594:19, 597:25,
600:6, 600:11,
600:12, 622:7,
623:22, 626:1,
626:9, 626:10,
626:16, 629:7,
630:25, 631:17,
633:10, 633:11,
633:15, 633:23,
634:10, 635:8,
658:14
**exhibit** [12] - 513:19,
515:18, 517:4,
539:16, 541:15,
572:16, 572:17,
584:7, 596:18,
629:7, 629:9, 633:16
**exhibited** [1] - 624:17
**Exhibits** [2] - 580:23,
632:15
**exhibits** [21] - 513:14,
514:3, 516:17,
516:18, 516:19,
517:12, 524:18,
572:16, 573:10,
573:25, 574:4,
574:5, 574:12,
574:16, 620:14,
638:1, 661:6,
669:24, 669:25,
682:25
**exist** [1] - 654:9
**exists** [1] - 680:4
**exits** [1] - 604:17
**expansive** [2] -
506:19, 540:19
**expect** [2] - 604:4,
642:18
**expecting** [1] - 656:21
**expedite** [1] - 619:3
**experience** [7] -
648:10, 657:11,
670:11, 672:24,
680:6, 680:8, 680:17
**experiences** [2] -
637:23, 638:13
**expert** [19] - 610:17,
611:8, 611:11,
611:17, 611:19,
611:21, 611:23,
611:24, 611:25,
631:25, 680:1,
680:4, 680:9,
680:11, 680:12,
680:15, 680:16
**explain** [10] - 515:16,

549:15, 558:16,
567:4, 569:21,
582:11, 583:10,
609:11, 626:6,
667:24
**explained** [4] -
641:16, 652:8,
663:22, 668:10
**explaining** [5] - 528:5,
528:8, 545:4,
553:14, 566:8
**explanation** [2] -
579:20, 583:15
**explanations** [1] -
624:17
**expressed** [1] - 602:4
**expressing** [1] -
522:10
**expression** [4] -
619:15, 663:6,
663:9, 678:8
**extensions** [1] -
641:20
**extensively** [2] -
525:2, 583:17
**extra** [2] - 530:10,
644:24
**extraneous** [1] - 653:4
**extreme** [1] - 661:24

**F**

**faced** [1] - 620:21
**fact** [179] - 508:21,
509:19, 510:7,
510:19, 511:12,
519:4, 519:15,
519:18, 520:11,
520:12, 520:24,
522:13, 522:15,
522:20, 522:23,
523:10, 523:16,
524:5, 524:11,
524:13, 524:15,
524:20, 524:22,
524:23, 526:4,
526:6, 526:25,
527:5, 527:20,
528:6, 528:16,
528:17, 528:22,
529:2, 529:19,
530:5, 530:8, 531:7,
531:24, 532:14,
532:18, 532:22,
533:8, 533:24,
534:15, 535:13,
536:6, 536:15,
536:18, 538:6,
538:17, 539:16,
539:19, 540:2,

540:23, 541:10,
541:14, 541:17,
543:21, 544:4,
544:16, 545:18,
545:25, 546:22,
547:24, 548:16,
549:12, 551:9,
551:11, 551:15,
551:19, 552:22,
553:14, 555:1,
555:4, 555:12,
555:19, 556:4,
556:17, 557:3,
557:10, 560:4,
560:8, 561:8,
561:20, 562:11,
563:7, 563:10,
563:14, 563:23,
564:7, 564:24,
567:12, 568:16,
568:23, 569:9,
569:11, 569:25,
570:12, 570:19,
570:25, 571:10,
571:19, 571:23,
572:10, 572:12,
574:10, 574:13,
579:20, 580:3,
580:10, 580:20,
580:24, 583:14,
585:1, 585:12,
585:19, 587:12,
587:23, 593:22,
602:10, 617:10,
632:7, 635:15,
637:7, 639:4,
639:17, 640:2,
641:3, 641:9, 642:1,
642:20, 643:4,
643:7, 643:25,
645:18, 645:24,
645:25, 646:1,
646:3, 647:3, 647:5,
647:9, 647:14,
647:17, 647:23,
647:24, 647:25,
648:8, 648:18,
649:10, 649:13,
650:1, 650:19,
650:20, 651:11,
651:21, 652:24,
653:5, 653:11,
653:12, 653:13,
654:1, 655:21,
656:22, 658:2,
658:6, 658:11,
659:13, 662:16,
668:12, 668:15,
673:17, 679:1,
680:9, 691:16
**factors** [1] - 550:23

**facts** [17] - 528:8,
537:18, 550:9,
609:22, 643:1,
645:14, 646:3,
649:12, 649:14,
658:6, 668:17,
668:25, 669:17,
677:6, 679:12,
679:15, 680:23
**factual** [1] - 567:3
**factually** [3] - 641:7,
653:11, 657:14
**fail** [1] - 679:24
**failed** [1] - 548:19
**failing** [2] - 535:9,
642:25
**failure** [1] - 548:21
**fair** [6] - 550:17,
580:15, 583:4,
595:11, 607:11,
672:23
**fairly** [2] - 554:18,
669:14
**fall** [1] - 538:3
**falls** [1] - 528:21
**false** [3] - 538:5,
593:12, 656:7
**falsely** [1] - 571:15
**familiar** [9] - 519:19,
520:9, 520:19,
547:20, 556:7,
559:20, 591:2,
639:23, 687:13
**famous** [3] - 565:2,
571:2, 658:9
**far** [6] - 511:18,
518:25, 550:24,
564:13, 650:15,
651:15
**fashion** [5] - 524:22,
555:21, 558:21,
561:19, 567:20
**fast** [1] - 686:19
**fatal** [1] - 642:25
**fatally** [1] - 656:22
**fathoming** [1] - 679:8
**favor** [1] - 550:2
**favorably** [1] - 520:6
**fax** [3] - 582:16,
582:17, 582:18
**faxed** [1] - 535:14
**FBI** [32] - 522:14,
522:15, 523:5,
524:14, 536:3,
537:20, 544:16,
545:1, 545:3, 545:5,
545:19, 559:20,
560:17, 560:21,
561:5, 571:15,
590:18, 590:22,

590:25, 593:19,
630:13, 631:24,
638:25, 652:9,
652:15, 652:23,
653:6, 653:11,
653:13, 654:21,
658:5
**fear** [1] - 669:16
**fed** [2] - 564:2, 597:16
**federal** [37] - 520:5,
520:11, 523:14,
523:20, 523:23,
525:2, 528:11,
529:12, 529:14,
530:2, 537:24,
540:16, 540:24,
542:5, 542:13,
542:18, 543:20,
544:19, 550:13,
551:10, 551:14,
561:5, 561:8,
564:14, 564:15,
592:25, 593:16,
624:7, 626:22,
639:24, 641:11,
644:14, 648:21,
652:15, 674:8,
676:9, 676:25
**Federal** [4] - 545:21,
640:5, 640:7, 675:6
**fee** [4] - 528:14,
528:15, 528:16,
656:12
**feelings** [1] - 597:7
**fees** [1] - 534:23
**fell** [2] - 545:7, 570:13
**fellow** [3] - 618:1,
659:3, 683:11
**felt** [6] - 571:14,
579:20, 579:21,
629:24, 641:10,
679:20
**few** [3] - 631:4,
632:25, 689:8
**fight** [1] - 571:12
**figure** [1] - 606:7
**file** [17] - 523:10,
524:25, 528:8,
529:8, 539:3, 539:6,
540:1, 541:6,
548:20, 559:9,
570:11, 601:10,
643:13, 648:17,
650:1, 656:11
**filed** [24] - 514:19,
524:16, 526:2,
530:4, 536:25,
553:15, 557:9,
557:24, 563:6,
569:5, 571:9,

578:22, 586:1,
591:21, 621:23,
644:6, 644:22,
650:10, 653:5,
655:6, 656:8,
656:10, 681:17
**filing** [9] - 523:12,
539:7, 562:17,
562:18, 562:19,
563:6, 622:2, 622:4,
622:6
**filings** [3] - 568:20,
657:11, 665:7
**fill** [4] - 530:6, 539:11,
542:23, 542:24
**final** [11] - 515:24,
517:24, 518:5,
603:3, 604:24,
605:12, 605:15,
606:10, 606:17,
631:23, 642:7
**finally** [3] - 536:3,
571:14, 577:10
**financial** [6] - 533:8,
533:10, 534:8,
540:20, 540:22,
572:4
**financing** [1] - 535:6
**finder** [1] - 645:24
**finders** [1] - 668:12
**findings** [3] - 509:16,
669:13, 691:16
**fine** [13] - 510:21,
517:10, 517:22,
536:10, 566:4,
576:12, 612:16,
612:18, 612:19,
612:25, 613:1,
614:15, 654:25
**finish** [5] - 504:20,
612:11, 664:6,
684:2, 687:15
**finishing** [1] - 518:11
**Finucane** [9] - 521:22,
536:24, 555:13,
595:8, 651:11,
651:20, 651:22,
651:25, 652:2
**firing** [1] - 665:5
**firm** [4] - 534:17,
535:7, 535:21, 551:9
**first** [47] - 503:1,
505:2, 506:4,
506:13, 513:19,
521:20, 522:5,
524:24, 528:25,
538:9, 541:15,
549:15, 552:21,
555:8, 556:4, 557:6,
560:12, 561:1,

563:24, 564:23,
573:24, 581:22,
583:2, 584:14,
591:14, 601:25,
602:1, 604:5, 608:9,
608:10, 610:23,
611:10, 612:12,
619:6, 619:7,
619:11, 619:20,
620:16, 654:21,
655:21, 658:20,
659:20, 668:9,
674:12, 676:8,
676:16, 677:8
**Fisher** [1] - 569:8
**five** [10] - 545:17,
559:25, 561:20,
564:4, 571:19,
605:9, 606:12,
639:4, 654:11,
659:10
**fix** [1] - 612:22
**fixed** [1] - 534:21
**flippant** [1] - 639:10
**floor** [4] - 531:12,
545:7, 605:18, 685:7
**flow** [2] - 632:6, 632:7
**flowed** [1] - 628:17
**focus** [2] - 660:6,
660:7
**folks** [1] - 605:16
**follow** [5] - 513:23,
551:22, 552:17,
636:25, 684:15
**follow-up** [1] - 513:23
**followed** [9] - 525:11,
574:9, 584:10,
589:8, 634:2, 634:9,
635:19, 636:14,
636:24
**following** [16] - 507:4,
553:10, 581:13,
592:3, 593:5,
593:25, 594:18,
609:22, 617:21,
621:18, 629:3,
639:12, 656:1,
676:15, 677:6
**follows** [1] - 528:7
**fondly** [1] - 590:22
**font** [1] - 538:24
**Force** [4] - 556:21,
602:3, 631:20, 676:5
**force** [6] - 509:19,
571:24, 596:2,
643:13, 650:2,
661:22
**forcing** [1] - 538:22
**foreclosed** [1] -
661:14

**foreclosure** [1] - 569:6
**foreign** [8] - 609:8,
609:15, 666:16,
666:19, 666:24,
675:5, 675:22,
676:11
**foreman** [1] - 689:1
**forensic** [1] - 632:1
**foreperson** [6] -
617:23, 682:20,
683:3, 684:6,
684:18, 688:25
**FOREPERSON** [2] -
688:3, 689:3
**foresee** [2] - 663:4,
678:6
**foreseeability** [1] -
663:9
**forever** [1] - 638:20
**forget** [1] - 518:2
**form** [14] - 521:10,
564:14, 564:17,
565:23, 571:17,
616:8, 616:24,
617:1, 617:19,
617:21, 637:25,
655:6, 660:21,
684:14
**forma** [1] - 546:9
**formal** [1] - 691:1
**formally** [1] - 547:10
**format** [4] - 537:15,
562:2, 568:9, 640:15
**former** [4] - 553:16,
553:17, 570:14
**forms** [1] - 663:15
**forth** [6] - 517:19,
527:6, 562:18,
598:19, 635:23,
652:16
**fortunately** [1] - 559:3
**forty** [1] - 657:13
**forum** [1] - 567:16
**forward** [5] - 534:24,
560:14, 561:21,
600:17, 657:21
**four** [1] - 639:3
**fourteenth** [1] - 586:8
**Fourth** [3] - 640:11,
640:19, 644:4
**fourth** [2] - 610:24,
676:24
**France** [3] - 563:5,
563:13, 585:9
**Franchise** [1] - 538:21
**franchise** [5] - 534:11,
534:20, 535:3,
535:4, 535:13,
535:15, 535:20,
541:20, 542:8

**frank** [1] - 561:18
**frankly** [2] - 532:15,
618:8
**fraud** [4] - 526:16,
557:22, 558:3, 656:1
**Frederick** [5] - 640:11,
640:24, 643:22,
645:19, 645:20
**free** [3] - 520:3,
534:20, 671:13
**Freed** [2] - 557:5,
559:3
**freedom** [1] - 566:18
**freely** [2] - 683:24,
684:4
**fresh** [1] - 649:21
**friend** [1] - 533:6
**friends** [1] - 661:10
**front** [7] - 504:16,
561:1, 574:3,
590:14, 591:3,
618:17, 641:23
**frustrated** [2] - 564:2,
597:16
**frustrating** [2] -
510:13, 597:8
**frustration** [5] - 557:2,
658:8, 661:18,
661:19
**fudge** [1] - 652:20
**full** [4] - 528:16,
607:16, 623:16,
685:14
**fully** [4] - 508:23,
556:15, 563:11,
563:16
**function** [1] - 576:8
**furtherance** [1] -
656:23
**furthermore** [1] -
607:25
**future** [2] - 570:15

## G

**gain** [1] - 602:8
**general** [4] - 518:3,
576:23, 667:15,
668:9
**General** [8] - 520:21,
539:23, 540:7,
577:9, 577:21,
620:17, 621:18,
675:25
**General's** [1] - 540:2
**generally** [1] - 529:18
**gentlemen** [2] - 603:1,
638:18
**Gigliaro** [2] - 535:16,

535:19
**Ginsburg** [2] - 547:14,
641:17
**given** [14] - 507:5,
507:8, 529:25,
542:11, 580:2,
609:25, 614:22,
615:3, 634:22,
642:8, 650:17,
659:7, 680:18,
682:25
**glove** [1] - 538:2
**gonna** [1] - 558:10
**goodness** [2] -
664:25, 665:2
**gosh** [1] - 660:16
**govern** [1] - 576:20
**governed** [1] - 540:11
**governing** [1] - 576:24
**government** [10] -
523:14, 523:20,
527:25, 536:19,
537:24, 562:11,
564:14, 564:17,
585:2, 594:7
**Government** [52] -
505:13, 506:5,
506:10, 512:19,
513:5, 513:17,
514:5, 516:13,
518:18, 525:25,
532:11, 539:10,
555:7, 574:25,
578:1, 589:9,
589:12, 591:19,
597:25, 603:25,
604:4, 604:24,
606:1, 609:12,
614:16, 617:13,
618:11, 618:12,
619:5, 619:10,
623:22, 626:1,
626:10, 629:7,
637:17, 638:15,
641:21, 651:5,
653:19, 667:25,
672:3, 672:8,
672:10, 672:13,
673:7, 674:14,
677:6, 681:13,
683:21, 686:20,
691:15
**Government's** [31] -
502:4, 503:7,
505:16, 505:20,
506:4, 506:8, 517:4,
524:18, 525:9,
528:25, 538:9,
538:16, 539:13,
539:16, 541:15,

549:18, 549:25,
553:13, 555:5,
559:10, 568:19,
569:12, 580:18,
582:18, 611:19,
614:18, 622:6,
626:9, 633:15,
640:21, 658:14
**governments** [1] -
523:12
**Governor** [2] - 519:20,
520:8
**governor** [1] - 520:13
**governors** [1] - 533:2
**grab** [2] - 605:4,
605:14
**grand** [6] - 545:25,
590:7, 593:8,
593:13, 630:10,
630:14
**granted** [2] - 533:18,
569:8
**granting** [1] - 520:7
**great** [5] - 534:23,
550:2, 605:15,
623:23, 667:5
**greater** [1] - 567:13
**Greenlaw** [1] - 641:20
**guarantee** [1] - 644:17
**guaranteed** [4] -
564:17, 644:1, 644:2
**guess** [8] - 502:3,
502:25, 517:13,
539:17, 580:14,
591:16, 604:9,
660:24
**guessing** [2] - 515:1,
604:7
**guideline** [1] - 692:6
**guidelines** [5] -
691:22, 691:23,
692:1, 692:7, 692:8
**guilt** [5] - 617:18,
670:18, 672:8,
672:18, 677:19
**guilty** [24] - 609:18,
609:21, 610:8,
610:9, 638:16,
671:23, 672:4,
672:7, 672:12,
672:14, 673:9,
673:12, 676:13,
677:6, 677:23,
681:8, 681:14,
683:22, 684:17,
688:10, 688:17,
688:24
**gun** [2] - 586:9,
658:20
**guy** [4] - 625:21,

662:3, 663:21

## H

**habeas** [2] - 570:4,
586:7
**hallway** [4] - 529:24,
531:13, 646:12,
647:11
**hand** [9] - 512:18,
514:7, 521:20,
525:8, 526:11,
538:2, 575:11,
656:13, 666:2
**handed** [3] - 513:16,
514:11, 604:18
**handing** [3] - 577:18,
577:20, 667:12
**handle** [2] - 624:22,
647:22
**handled** [2] - 595:15,
601:17
**handles** [1] - 532:7
**handling** [1] - 534:9
**hands** [4] - 541:5,
600:24, 655:11,
658:20
**Hanna** [15] - 578:24,
579:2, 587:24,
588:9, 588:15,
621:20, 621:24,
622:2, 623:7,
633:11, 633:14,
635:11, 654:20,
654:22, 662:5
**Hanna's** [3] - 531:5,
622:16, 633:7
**happily** [1] - 655:11
**happiness** [1] -
654:14
**happy** [1] - 624:14
**harm** [1] - 571:13
**harmful** [1] - 523:9
**Harrisburg** [2] -
624:25, 654:1
**harsh** [1] - 593:21
**head** [24] - 547:2,
547:3, 547:10,
556:20, 590:19,
591:7, 591:11,
595:25, 596:7,
596:23, 621:16,
630:21, 630:24,
631:16, 631:18,
631:19, 635:16,
636:22, 636:23,
653:12, 657:23,
675:12, 676:4,
687:19

**heads** [1] - 636:22
**health** [1] - 533:15
**hear** [17] - 520:3,
532:21, 622:9,
622:12, 624:3,
629:20, 629:21,
632:15, 633:1,
636:3, 644:15,
646:23, 653:24,
657:13, 660:1,
662:25, 691:25
**heard** [39] - 527:17,
538:8, 546:9, 559:8,
578:22, 619:11,
620:12, 621:19,
622:1, 623:15,
628:6, 629:3,
631:23, 634:13,
638:3, 638:14,
646:6, 647:1,
661:13, 668:22,
670:13, 671:10,
673:6, 673:16,
681:16, 682:3,
686:7, 689:13,
689:16, 689:19,
689:22, 689:25,
690:3, 690:6, 690:9,
690:12, 690:15,
690:18, 690:21
**hearing** [4] - 532:11,
537:4, 628:8, 639:15
**hearsay** [7] - 514:24,
530:17, 530:23,
530:24, 531:6,
572:20, 647:4
**heart** [2] - 550:24,
558:22
**held** [1] - 534:2
**Heller** [1] - 587:1
**help** [2] - 639:8, 659:1
**helped** [1] - 632:4
**helpful** [1] - 654:23
**herself** [4] - 550:4,
649:20, 650:1,
650:14
**hesitate** [2] - 673:2,
683:12
**highest** [2] - 533:19,
646:2
**highjacker** [1] - 547:2
**highlight** [9] - 578:12,
589:24, 595:18,
600:13, 620:11,
626:24, 628:5,
631:10, 664:9
**highlighted** [3] -
611:6, 635:15,
638:10
**highlighting** [1] -

631:10
**Hill** [1] - 652:7
**himself** [7] - 536:14,
537:20, 564:6,
572:4, 615:17,
625:20, 658:13
**hiring** [1] - 550:18
**historical** [2] - 580:11,
656:24
**history** [8] - 545:3,
565:3, 621:7,
657:18, 658:5,
658:10, 674:19,
692:5
**hold** [12] - 504:20,
505:8, 514:20,
517:25, 585:19,
604:3, 610:4,
616:19, 651:3,
651:11, 670:15
**holding** [2] - 545:6,
547:3
**home** [4] - 524:24,
533:14, 588:9, 684:2
**homes** [1] - 563:2
**hometown** [1] -
523:15
**honest** [3] - 527:5,
641:24, 644:21
**honestly** [3] - 652:6,
655:16, 683:19
**honesty** [1] - 658:13
**Honor** [43] - 502:6,
502:25, 503:15,
506:13, 507:13,
508:1, 508:3,
514:18, 515:6,
515:20, 516:16,
518:10, 519:21,
521:4, 530:16,
558:9, 565:6,
566:10, 569:15,
572:21, 573:12,
594:9, 594:16,
599:16, 599:19,
602:25, 603:21,
604:5, 605:21,
607:7, 608:12,
612:16, 619:18,
646:14, 651:21,
659:24, 663:19,
686:13, 686:21,
686:22, 689:3,
692:12, 692:15
**hope** [4] - 518:17,
536:13, 622:21,
659:22
**Hopewell** [1] - 568:22
**hoping** [1] - 687:9
**horrible** [5] - 545:7,

571:18, 593:21,
657:22, 664:13
**horribly** [1] - 538:11
**house** [2] - 625:1,
661:14
**hum** [11] - 521:12,
581:25, 583:24,
584:2, 590:15,
590:17, 591:12,
596:11, 597:20,
597:24, 610:21
**human** [1] - 679:9
**hunch** [1] - 672:21
**hung** [2] - 656:4,
656:6
**hurried** [1] - 618:8
**hurry** [1] - 619:15
**husband** [1] - 545:9

## I

**i.e** [1] - 576:23
**Ibrahim** [1] - 555:6
**idea** [3] - 520:25,
536:8, 544:24
**identified** [1] - 658:4
**identifies** [2] - 515:15,
515:22
**identify** [6] - 512:4,
525:25, 528:10,
539:10, 621:15,
642:21
**idiot** [1] - 665:8
**IF** [1] - 513:22
**ignorance** [2] - 679:1,
679:5
**ignores** [1] - 576:17
**illegal** [1] - 595:25
**illegitimate** [1] -
640:25
**imagine** [2] - 515:1,
566:2
**immediately** [1] -
624:21
**immigration** [1] -
556:9
**immunity** [4] - 547:6,
586:9, 653:17, 658:3
**impartial** [1] - 554:16
**impartially** [1] -
669:14
**impeached** [1] - 543:5
**implied** [1] - 562:5
**implying** [1] - 649:22
**importance** [1] - 673:2
**important** [26] -
618:17, 620:6,
621:4, 621:13,
622:8, 622:10,

626:18, 629:4,
632:23, 633:9,
633:21, 634:12,
634:18, 635:16,
635:17, 660:8,
660:9, 667:17,
667:18, 667:19,
667:23, 680:3,
683:18, 691:21,
692:10
**impose** [1] - 553:2
**impression** [9] -
538:1, 538:5, 562:3,
564:23, 565:2,
565:23, 580:2,
646:25, 652:21
**improper** [4] - 549:19,
559:21, 647:21,
649:15
**improperly** [3] -
551:10, 554:25,
649:2
**inaccurate** [1] -
641:14
**inappropriate** [4] -
527:6, 555:18,
567:15, 588:10
**inappropriately** [1] -
549:22
**incident** [13] - 514:25,
515:3, 558:19,
625:11, 625:12,
625:14, 625:22,
646:7, 646:15,
646:19, 647:4,
647:23, 655:21
**incidents** [1] - 658:5
**inclination** [1] -
687:15
**inclined** [1] - 687:10
**include** [4] - 614:14,
648:11, 665:1, 665:2
**included** [2] - 539:5,
542:22
**including** [2] - 549:1,
598:7
**Income** [1] - 538:21
**income** [3] - 541:20,
542:8, 542:18
**inconsistency** [1] -
671:6
**Incorporated** [1] -
642:21
**incorrect** [1] - 649:12
**incorrectly** [1] - 567:1
**increase** [1] - 504:24
**increased** [1] - 633:18
**indented** [1] - 612:12
**index** [1] - 504:16
**indicate** [5] - 529:5,

540:2, 556:5,
603:10, 679:13
**indicated** [28] - 509:3,
522:19, 527:17,
534:14, 539:14,
540:5, 544:11,
553:9, 553:10,
553:17, 555:5,
555:11, 562:1,
562:15, 567:21,
574:8, 580:10,
585:3, 600:24,
601:1, 638:19,
641:6, 642:3,
642:12, 643:1,
643:8, 652:11,
653:19
**indicates** [2] - 510:24,
549:18
**indicating** [18] -
520:23, 526:21,
527:24, 538:9,
538:24, 539:21,
543:14, 546:24,
555:16, 563:19,
564:5, 568:15,
570:10, 571:16,
641:20, 643:9,
653:2, 665:24
**indication** [1] - 535:14
**indicted** [13] - 554:23,
554:25, 592:3,
595:3, 617:10,
634:15, 634:18,
650:12, 650:13,
650:20, 653:13,
658:21, 662:11
**indictment** [74] -
502:16, 503:17,
503:18, 504:18,
505:1, 505:17,
505:24, 507:9,
532:12, 536:13,
537:8, 537:9,
564:24, 585:10,
585:11, 591:8,
592:7, 592:10,
592:13, 592:15,
592:18, 592:21,
592:23, 593:2,
593:3, 593:6,
593:16, 594:1,
594:18, 596:13,
597:2, 608:10,
608:14, 608:23,
609:6, 609:11,
613:21, 617:8,
617:12, 623:17,
626:19, 628:9,
628:24, 629:6,

630:22, 631:1,
631:6, 631:13,
632:13, 634:21,
634:23, 634:24,
635:10, 635:12,
635:19, 645:22,
651:14, 666:3,
666:20, 667:3,
670:5, 673:15,
673:16, 673:18,
673:22, 674:11,
674:20, 675:2,
675:18, 675:19,
681:6, 681:23,
681:24, 682:1
**indictment's** [1] -
503:2
**indictments** [3] -
562:3, 674:18,
674:19
**indignant** [1] - 645:23
**individual** [22] - 515:7,
515:11, 522:13,
522:15, 530:2,
535:11, 551:8,
572:3, 576:18,
577:7, 579:3,
621:16, 624:8,
629:22, 629:23,
629:24, 648:7,
660:15, 663:7,
678:9, 679:20,
679:21
**individually** [1] -
672:5
**individuals** [9] -
541:9, 579:18,
579:21, 579:25,
580:6, 620:1, 631:5,
635:6
**inexpensive** [4] -
510:10, 544:6,
586:7, 627:7
**inexperienced** [1] -
647:19
**infant** [1] - 545:6
**infer** [1] - 679:9
**inflict** [2] - 663:6,
678:8
**influence** [2] - 677:19,
677:23
**information** [3] -
515:13, 612:20,
630:14
**infringed** [1] - 534:11
**inherent** [2] - 654:11,
654:12
**inherently** [2] - 671:7,
671:8
**initial** [2] - 555:5,

555:14
**initiate** [2] - 528:6,
590:7
**initiated** [1] - 526:12
**injunction** [4] - 520:7,
520:17, 569:6,
600:16
**injunctive** [4] -
584:18, 598:8,
600:15, 627:11
**injure** [16] - 592:22,
592:24, 609:17,
624:4, 626:21,
635:3, 674:6, 675:8,
675:25, 676:9,
676:12, 676:19,
677:3, 677:12,
688:12, 688:19
**injury** [2] - 663:7,
678:8
**innocence** [5] - 511:2,
634:19, 670:18,
672:2, 672:6
**innocent** [1] - 671:25
**innocently** [1] -
655:18
**insert** [1] - 608:11
**inserted** [2] - 506:12,
663:25
**inside** [1] - 533:25
**insight** [1] - 637:20
**inspector** [3] - 525:25,
526:3, 628:6
**Inspector** [1] - 629:2
**instance** [6] - 552:17,
557:21, 570:4,
609:7, 658:4, 684:1
**instead** [2] - 523:8,
576:19
**instruct** [5] - 566:11,
566:12, 616:24,
637:19, 669:2
**instructed** [6] -
615:18, 615:20,
624:1, 625:10,
625:19, 628:7
**instruction** [68] -
502:17, 502:20,
502:23, 503:11,
504:1, 505:14,
506:6, 506:11,
506:24, 507:3,
507:5, 507:7,
507:12, 507:20,
507:24, 508:2,
508:4, 508:10,
607:16, 607:20,
608:1, 608:9,
608:13, 608:20,
608:23, 608:25,

609:3, 609:5,
609:10, 609:13,
609:14, 609:16,
609:24, 610:3,
610:4, 610:10,
610:16, 610:18,
611:4, 611:13,
612:9, 612:17,
613:2, 613:5, 613:7,
614:1, 614:2,
614:13, 614:21,
615:3, 615:7,
615:11, 617:11,
617:16, 622:9,
630:3, 631:21,
636:3, 666:12,
667:1, 668:10,
673:14, 674:23,
675:15, 678:1,
680:24, 681:2
**instructions** [53] -
502:3, 503:5, 503:8,
503:20, 504:9,
504:13, 507:1,
507:15, 507:18,
508:1, 508:10,
508:12, 508:15,
508:23, 513:8,
517:24, 518:4,
518:6, 529:25,
530:11, 603:3,
603:14, 604:24,
605:4, 614:10,
614:12, 614:24,
614:25, 615:21,
616:6, 616:8,
616:24, 617:1,
619:13, 622:11,
622:13, 623:25,
629:20, 629:22,
633:1, 636:3,
637:15, 665:17,
665:20, 665:25,
666:2, 667:13,
667:15, 667:18,
673:13, 678:23
**instructs** [1] - 638:6
**instrumental** [1] -
527:9
**insult** [2] - 523:9,
527:24
**insulting** [1] - 630:12
**Insurance** [1] - 569:2
**insurance** [12] -
533:11, 533:15,
533:25, 557:8,
557:10, 557:19,
557:20, 557:22,
557:24, 558:3,
558:4, 559:4

integrity [1] - 646:2
intend [3] - 514:3,
636:6, 636:8
intended [14] - 562:6,
608:2, 622:14,
633:3, 636:4, 637:7,
637:9, 653:19,
656:21, 657:20,
662:19, 676:21,
677:13, 679:17
intends [1] - 513:13
intent [12] - 504:1,
508:9, 565:22,
567:9, 608:7,
633:24, 663:6,
679:7, 679:10,
679:22, 679:24,
681:22
intention [4] - 537:1,
653:10, 678:8, 686:5
intentionally [3] -
503:9, 503:13,
567:11
interaction [2] -
522:17, 563:4
interest [1] - 671:2
interested [1] - 543:4
interesting [1] - 664:5
interfere [1] - 555:3
interfered [1] - 684:24
interferes [1] - 523:24
interfering [1] -
511:15
interject [4] - 520:2,
537:3, 649:7, 651:1
Internal [1] - 572:6
internet [5] - 561:16,
632:10, 678:15,
678:16, 678:18
interpretation [3] -
569:16, 620:7, 663:9
interpreted [3] -
663:5, 668:14, 678:6
interpreting [1] -
567:2
interrogatory [1] -
666:5
interrupt [1] - 567:1
interrupts [1] - 560:18
interstate [27] - 503:4,
505:3, 506:15,
608:15, 609:8,
632:8, 632:9,
632:12, 632:18,
653:20, 666:16,
666:19, 666:23,
675:5, 675:22,
676:11, 677:4,
677:9, 678:14,
678:17, 678:19,

678:21, 688:11,
688:18
intervention [1] -
583:16
interview [7] - 521:23,
522:12, 523:4,
532:8, 536:2,
560:15, 621:24
interviewed [3] -
588:9, 681:17, 682:5
intimidating [1] -
664:23
introduce [5] - 513:14,
514:4, 514:12,
519:22, 519:23
introduced [5] -
515:7, 520:22,
636:20, 669:13,
669:24
introduces [1] - 505:5
introducing [1] -
639:23
introduction [1] -
666:22
invalid [1] - 602:10
invested [1] - 535:7
investigate [3] -
522:4, 546:6, 630:15
investigated [2] -
652:15, 658:16
investigating [5] -
525:19, 538:6,
544:25, 562:1, 580:3
Investigation [1] -
675:7
investigation [5] -
536:8, 588:10,
630:11, 652:18,
656:9
investigator [2] -
561:9
investment [1] - 569:7
invoked [1] - 643:18
involve [1] - 544:10
involved [12] - 524:3,
533:7, 534:4, 550:5,
556:1, 557:4, 560:3,
590:18, 590:22,
595:14, 601:15,
682:4
involvement [1] -
535:17
involving [5] - 541:2,
551:4, 554:20,
557:8, 568:23
irrelevant [1] - 521:17,
591:18, 660:6
ISIS [4] - 586:5,
586:22, 627:6, 665:2
Islands [1] - 509:1

issue [23] - 504:2,
507:14, 527:5,
538:13, 552:7,
552:13, 555:22,
558:17, 560:23,
568:18, 583:18,
585:7, 606:11,
608:8, 626:15,
645:17, 646:5,
664:16, 688:9,
688:15, 688:22
issued [7] - 507:1,
528:21, 570:10,
575:20, 625:6,
625:8, 641:4
issues [10] - 505:25,
507:18, 533:20,
557:23, 571:3,
586:9, 620:21,
628:10, 644:8,
660:13
item [1] - 561:23
items [1] - 624:10
iteration [1] - 504:9
itself [4] - 522:12,
528:12, 580:9,
657:18
IV [1] - 564:15

**J**

J-U-S-T [1] - 612:7
jail [1] - 664:21
January [8] - 554:22,
594:25, 595:2,
596:3, 631:2, 635:9,
675:20, 688:19
Jared [9] - 539:21,
540:8, 574:20,
576:18, 576:19,
577:6, 577:14,
577:19
Jean [1] - 550:25
Jeffrey [6] - 521:22,
536:24, 555:13,
651:10, 651:20,
651:22
Jerrico [1] - 554:15
Jersey [4] - 504:12,
580:21, 604:18,
628:17
job [9] - 614:18,
633:19, 652:6,
668:12, 668:13,
681:8, 681:10,
681:12
Johnson [1] - 658:21
join [1] - 570:16
joined [4] - 666:23,

688:9, 688:15,
688:22
joint [3] - 521:2,
521:3, 542:14
joke [8] - 564:9, 599:1,
599:2, 599:11,
635:22, 635:24,
636:12, 657:20
jolting [1] - 657:20
Jones [2] - 531:22,
576:8
Joy [2] - 675:8, 676:1
Judge [169] - 504:16,
507:24, 513:25,
531:22, 538:6,
546:9, 547:10,
547:11, 547:19,
548:13, 549:14,
550:3, 550:20,
552:21, 553:9,
553:16, 553:17,
554:3, 554:5,
554:13, 555:19,
556:20, 558:12,
559:8, 559:13,
562:9, 563:5,
563:12, 563:18,
564:10, 565:15,
567:21, 569:9,
575:4, 575:10,
575:20, 576:3,
576:15, 577:4,
577:12, 581:5,
581:12, 581:18,
581:19, 581:20,
588:17, 588:24,
591:11, 591:18,
591:20, 591:25,
592:1, 592:19,
592:24, 593:7,
593:15, 593:25,
595:4, 595:15,
595:25, 596:7,
596:15, 596:18,
596:23, 597:7,
597:14, 597:16,
599:4, 599:9, 601:6,
601:16, 602:10,
609:1, 612:20,
613:7, 614:7,
615:11, 620:7,
621:5, 621:6,
621:12, 621:15,
623:15, 623:16,
623:24, 624:6,
625:8, 625:12,
625:17, 625:19,
626:2, 626:12,
626:13, 627:9,
627:12, 627:17,

627:19, 627:25,
628:3, 628:15,
628:19, 629:12,
629:15, 629:17,
630:4, 630:16,
630:17, 630:21,
630:23, 631:8,
631:16, 631:18,
631:19, 634:2,
634:4, 634:11,
634:15, 634:17,
635:1, 635:2,
635:16, 636:23,
636:25, 637:1,
638:2, 638:6,
638:21, 639:9,
639:12, 639:13,
639:19, 639:20,
639:22, 640:17,
641:6, 641:13,
642:3, 645:17,
646:7, 647:23,
647:25, 648:24,
649:19, 650:13,
650:17, 650:18,
656:15, 660:20,
661:1, 661:2, 662:8,
663:21, 664:18,
664:24, 666:21,
667:5, 667:8, 674:5,
674:7, 675:8, 675:9,
676:1, 676:3, 682:8
judge [49] - 503:6,
504:23, 507:19,
509:12, 512:14,
517:23, 518:5,
519:15, 524:12,
544:9, 548:17,
552:4, 553:16,
554:2, 554:11,
557:13, 564:4,
565:19, 566:20,
570:21, 574:13,
602:7, 612:10,
614:11, 622:9,
622:12, 625:2,
625:10, 625:18,
628:23, 629:20,
630:1, 631:21,
637:16, 639:18,
640:16, 641:16,
642:5, 642:9,
649:24, 649:25,
652:20, 665:7,
665:8, 665:13,
676:9, 676:25
Judges [1] - 569:8
judges [36] - 522:7,
523:16, 533:1,
547:2, 560:1, 560:2,
564:17, 564:18,

578:14, 578:16, 578:17, 586:3, 586:4, 586:6, 586:22, 623:3, 623:4, 623:5, 624:14, 626:13, 626:18, 627:4, 627:5, 627:6, 633:13, 636:22, 641:20, 646:1, 661:3, 661:17, 664:17, 665:12, 668:22, 668:23, 680:23

judges' [2] - 636:22, 640:9

judgment [14] - 524:2, 524:8, 535:24, 535:25, 538:20, 540:9, 544:2, 544:8, 548:19, 557:9, 560:7, 602:9, 655:7, 693:1

judicial [2] - 559:9, 559:12

Judiciary [1] - 574:22

judiciary [11] - 539:22, 540:7, 587:25, 588:11, 592:25, 624:7, 626:22, 635:4, 644:10, 674:8

jump [1] - 632:23

jumped [1] - 652:10

jumps [1] - 561:3

juries [1] - 640:3

jurisdiction [18] - 522:9, 528:12, 540:17, 547:12, 547:21, 548:1, 548:2, 551:10, 569:4, 576:23, 601:4, 602:8, 641:11, 642:6, 642:22, 642:23, 644:13, 649:25

jurisdictional [1] - 528:11

JUROR [13] - 685:10, 689:15, 689:18, 689:21, 689:24, 690:2, 690:5, 690:8, 690:11, 690:14, 690:17, 690:20, 690:23

juror [17] - 617:23, 682:19, 683:3, 685:1, 689:13, 689:16, 689:19, 689:22, 689:25, 690:3, 690:6, 690:9,

690:12, 690:15, 690:18, 690:21, 693:5

jurors [9] - 606:10, 609:11, 618:1, 665:24, 681:11, 682:23, 683:12, 683:13, 683:15

Jurors [1] - 546:17

jurors' [1] - 543:9

Jury [3] - 603:13, 665:22, 666:12

jury [120] - 502:2, 502:3, 502:22, 503:5, 503:7, 503:20, 504:9, 505:14, 505:18, 507:1, 507:14, 507:18, 507:24, 508:4, 508:12, 508:15, 508:22, 511:16, 512:4, 513:5, 513:8, 516:1, 517:12, 517:24, 518:15, 518:16, 524:10, 524:12, 537:11, 542:6, 545:25, 566:3, 566:11, 566:12, 566:16, 567:1, 572:1, 573:9, 573:19, 573:21, 574:13, 582:11, 590:8, 593:8, 593:13, 603:14, 604:17, 604:24, 607:1, 607:16, 607:20, 608:1, 608:9, 608:13, 608:20, 609:3, 609:14, 609:16, 610:3, 610:4, 610:10, 610:13, 611:4, 613:4, 614:9, 615:13, 616:4, 616:16, 616:18, 618:14, 618:25, 619:1, 622:9, 622:11, 623:25, 629:21, 630:10, 630:14, 631:21, 633:1, 636:2, 636:3, 637:14, 638:18, 645:13, 645:18, 645:24, 651:2, 658:9, 658:13, 666:10, 667:10, 667:11, 668:24, 669:25, 673:13, 673:14, 675:15,

678:1, 680:22, 682:25, 683:5, 685:18, 685:20, 685:22, 685:23, 686:3, 687:4, 687:8, 687:24, 688:1, 688:8, 688:15, 688:22, 689:10, 689:12, 691:8, 693:3, 693:4

justice [1] - 657:25

Justice [4] - 547:14, 641:17, 657:1, 657:3

justification [7] - 509:4, 510:18, 510:25, 511:3, 511:4, 511:6, 511:10

justified [5] - 510:1, 510:15, 510:22, 516:1

justify [1] - 651:18

justifying [1] - 512:5

## K

Kane [3] - 553:16, 639:12, 639:13

keep [4] - 519:11, 520:1, 570:1, 683:11

keeping [1] - 502:17

Keith [43] - 515:8, 519:8, 521:21, 527:8, 537:1, 538:10, 546:1, 553:19, 556:17, 559:17, 564:5, 564:21, 568:22, 569:1, 570:9, 570:10, 586:1, 591:5, 594:22, 595:24, 608:17, 608:21, 630:19, 631:15, 640:24, 641:25, 646:5, 646:8, 647:3, 647:9, 647:10, 650:5, 665:6, 665:11, 673:24, 675:4, 675:10, 675:21, 676:3, 688:5, 688:10, 688:16, 688:23

KEITH [1] - 519:6

Kenneth [7] - 533:5, 535:4, 535:11, 535:21, 535:22, 536:11, 550:23

kept [1] - 647:14

key [2] - 544:4, 663:8

kids [2] - 625:3

kill [1] - 663:7

killed [2] - 545:5, 585:13

kind [23] - 503:12, 505:1, 513:23, 516:6, 518:3, 524:17, 533:21, 536:15, 539:1, 540:13, 567:15, 579:19, 585:1, 612:22, 612:25, 620:21, 622:19, 641:12, 662:15, 664:15, 669:22, 674:18, 681:15

kinds [5] - 533:11, 534:10, 535:8, 547:1, 663:24

knowingly [21] - 503:2, 503:3, 503:9, 503:13, 503:18, 505:2, 506:14, 628:25, 632:17, 653:9, 666:15, 666:24, 673:25, 674:2, 674:17, 675:4, 675:22, 676:16, 677:8, 678:22

knowledge [18] - 608:3, 622:15, 633:4, 633:24, 636:5, 636:9, 637:10, 647:6, 648:5, 655:20, 657:11, 662:20, 670:25, 676:22, 677:14, 679:14, 680:7, 681:21

knowledgeable [1] - 680:6

knows [2] - 556:7, 641:8

## L

lack [1] - 673:4

ladies [2] - 603:1, 638:18

land [1] - 558:7

landed [1] - 589:16

lane [1] - 532:24

language [16] - 502:16, 503:3, 526:15, 596:13, 609:6, 622:3, 622:6, 631:12, 631:17, 631:18, 635:18, 656:24, 662:9, 663:12, 668:5,

674:22

large [1] - 533:23

largest [1] - 534:17

Larry [4] - 557:7, 558:5, 558:21, 644:8

last [20] - 502:7, 507:19, 516:5, 518:11, 557:2, 568:18, 570:6, 606:21, 606:22, 607:16, 607:20, 610:11, 610:14, 611:1, 612:6, 612:8, 613:2, 638:14, 641:18, 657:6

late [1] - 641:15

law [95] - 510:8, 510:23, 511:4, 511:21, 512:3, 516:3, 519:22, 521:3, 522:24, 523:24, 524:5, 525:2, 526:21, 528:9, 529:15, 532:4, 532:18, 534:17, 541:3, 541:20, 541:23, 543:19, 544:19, 544:21, 551:14, 557:18, 561:2, 561:3, 565:11, 566:11, 566:13, 566:19, 567:23, 567:24, 568:2, 568:6, 568:13, 569:3, 571:25, 572:1, 579:9, 584:11, 585:19, 585:20, 586:15, 587:13, 630:2, 635:6, 636:14, 636:16, 636:24, 636:25, 638:2, 638:3, 638:4, 638:7, 639:14, 644:2, 652:13, 652:15, 658:10, 658:12, 659:17, 659:19, 664:7, 664:12, 664:14, 664:16, 664:17, 664:19, 664:22, 665:4, 665:6, 665:10, 665:12, 665:13, 668:17, 668:18, 668:19, 668:20, 668:23, 668:24, 668:25, 669:1, 669:2, 669:20, 676:10, 679:5,

691:16
**lawful** [2] - 567:8, 602:14
**lawfully** [2] - 522:6, 685:15
**lawn** [1] - 561:1
**laws** [1] - 523:1
**lawsuit** [1] - 560:6
**lawsuits** [1] - 661:13
**lawyer** [5] - 518:25, 616:21, 624:7, 645:1, 670:14
**lawyers** [3] - 602:6, 651:5, 670:4
**lead** [4] - 523:3, 525:11, 563:19, 584:11
**leading** [2] - 585:3, 585:13
**leads** [1] - 556:2
**leaking** [1] - 546:25
**learn** [1] - 639:20
**learned** [3] - 646:11, 649:11, 658:12
**least** [8] - 528:22, 560:23, 579:24, 583:18, 593:8, 593:14, 674:17, 687:11
**leave** [3] - 605:17, 691:3
**leaving** [3] - 508:18, 531:9, 642:16
**led** [2] - 583:12, 585:11
**left** [12] - 524:24, 531:10, 573:9, 580:13, 600:7, 603:13, 642:14, 642:16, 663:18, 665:22, 685:20, 691:8
**legal** [13] - 507:9, 511:2, 516:1, 532:1, 539:25, 556:18, 556:19, 557:23, 565:10, 667:6, 674:19, 686:6, 692:22
**legalism** [2] - 675:17
**legalistic** [1] - 674:22
**legislators** [2] - 564:18, 564:19
**legitimately** [1] - 648:14
**length** [2] - 558:5, 623:18
**lent** [1] - 558:6
**LESKO** [12] - 513:8, 513:10, 603:17,

604:25, 605:3, 605:6, 605:10, 605:14, 605:23, 605:25, 608:19, 666:4
**less** [2] - 509:18, 510:19
**lesser** [1] - 509:4
**letter** [84] - 550:20, 554:21, 555:13, 555:19, 563:18, 567:5, 567:8, 569:18, 569:22, 571:2, 577:24, 578:21, 578:22, 579:7, 579:8, 579:10, 579:14, 580:9, 580:14, 581:4, 581:7, 581:8, 581:21, 581:22, 582:3, 582:5, 582:12, 582:15, 583:21, 583:25, 584:14, 584:25, 587:20, 588:14, 588:23, 589:2, 589:3, 589:7, 592:18, 593:7, 593:15, 593:25, 595:4, 597:14, 599:4, 599:9, 600:9, 620:7, 621:6, 621:21, 621:23, 623:2, 623:18, 623:21, 623:22, 624:20, 625:9, 625:20, 626:3, 627:2, 629:14, 630:16, 630:17, 631:11, 633:10, 634:4, 635:3, 641:12, 653:2, 656:15, 656:25, 657:1, 658:15, 661:1, 662:3, 662:8, 663:11, 663:14, 663:15, 681:17, 681:19, 682:9
**letters** [2] - 510:2, 511:24
**letting** [1] - 664:19
**level** [5] - 586:4, 586:6, 627:5, 627:6, 640:4
**liability** [1] - 536:1
**libel** [1] - 658:17
**liberal** [1] - 623:5
**liberty** [1] - 623:5
**license** [1] - 625:3
**licensed** [4] - 533:9,

533:13, 533:15, 572:5
**lie** [1] - 652:18
**life** [4] - 536:4, 638:13, 673:3, 678:9
**lifted** [1] - 655:9
**light** [2] - 559:8, 670:10
**likewise** [1] - 658:16
**limit** [2] - 645:12, 646:18
**limited** [5] - 599:23, 625:18, 681:20, 682:7, 682:14
**limiting** [1] - 625:10
**line** [16] - 510:21, 537:22, 581:22, 583:25, 608:11, 609:15, 609:17, 609:18, 610:10, 610:11, 610:24, 611:1, 611:24, 612:1, 612:21, 623:13
**lines** [1] - 654:2
**list** [2] - 513:19, 572:15
**listed** [1] - 569:19
**listen** [5] - 541:2, 669:7, 683:10, 683:11, 683:20
**listening** [1] - 539:13
**litigant** [4] - 527:1, 540:13, 550:15, 620:20
**litigants** [2] - 624:14, 644:7
**litigation** [8] - 520:11, 547:21, 595:14, 621:3, 621:7, 623:10, 655:19
**litigators** [1] - 641:22
**litigious** [1] - 650:6
**live** [3] - 664:25, 665:1, 665:11
**livelihood** [1] - 520:25
**lives** [2] - 561:19, 665:10
**LLC** [1] - 569:2
**lo** [1] - 534:8
**local** [6] - 563:15, 563:16, 640:2, 642:17, 644:21, 644:24
**located** [1] - 507:2
**location** [2] - 523:16, 654:1
**lodge** [1] - 691:15
**logic** [1] - 672:24
**look** [31] - 503:17,

512:20, 516:13, 554:7, 557:13, 557:14, 563:7, 567:22, 570:6, 573:3, 605:19, 626:10, 627:16, 638:9, 639:6, 640:21, 646:23, 649:21, 653:6, 656:1, 657:17, 661:2, 661:6, 662:2, 668:3, 674:12, 677:1, 681:12, 692:4
**looked** [2] - 549:24, 655:9
**looking** [18] - 506:3, 514:19, 515:21, 540:20, 542:19, 542:25, 546:21, 556:25, 557:12, 561:9, 562:12, 562:13, 571:15, 578:7, 584:7, 650:9, 655:3, 675:18
**looks** [4] - 526:13, 561:24, 655:10, 687:11
**loosely** [1] - 653:19
**lose** [1] - 650:20
**loses** [1] - 571:9
**lost** [3] - 524:17, 525:9, 558:22
**loud** [1] - 527:19
**lower** [1] - 613:22
**lowerly** [1] - 556:10
**luck** [1] - 666:2
**Lunch** [1] - 616:3
**lunch** [7] - 553:4, 603:5, 603:13, 603:16, 605:20, 606:3, 606:6

**M**

**machinations** [1] - 660:15
**magic** [1] - 655:1
**Magistrate** [2] - 531:22, 642:12
**magistrate** [5] - 533:1, 555:10, 642:2, 642:4, 642:5
**magistrates** [2] - 586:5, 627:5
**mail** [99] - 524:15, 524:19, 526:1, 526:7, 526:14, 526:16, 526:17, 534:14, 538:4,

538:24, 539:14, 540:4, 544:17, 545:22, 549:3, 554:21, 554:22, 556:4, 556:16, 557:2, 569:12, 569:25, 574:10, 574:17, 575:13, 575:22, 576:20, 577:7, 577:8, 577:9, 577:15, 580:21, 581:5, 581:13, 589:9, 589:13, 589:15, 589:16, 591:10, 591:15, 591:25, 592:3, 592:6, 592:16, 593:8, 593:15, 593:19, 593:25, 594:4, 594:22, 594:23, 595:3, 595:4, 595:16, 595:17, 595:18, 595:21, 596:4, 596:12, 596:13, 596:14, 599:9, 599:10, 601:24, 621:5, 627:1, 629:5, 629:11, 629:18, 630:3, 630:6, 631:4, 631:8, 631:11, 631:17, 632:13, 632:17, 634:10, 634:16, 635:1, 648:23, 653:16, 653:20, 653:25, 656:1, 657:22, 662:8, 662:12, 663:15, 674:1, 675:5, 675:6, 675:23
**Mail** [2] - 628:25, 676:17
**mailed** [3] - 524:18, 526:9, 531:19
**mailing** [9] - 536:8, 577:8, 585:10, 588:16, 633:2, 634:2, 634:15, 688:6
**mails** [13] - 525:17, 596:8, 596:22, 596:24, 599:4, 627:1, 631:12, 632:7, 632:14, 632:15, 633:25, 635:8
**main** [1] - 615:22
**major** [1] - 526:15
**maker** [2] - 663:5, 678:7
**male** [1] - 531:15

**man** [2] - 532:10, 565:4

**manager** [1] - 525:10

**mandamus** [2] - 643:13, 650:1

**mandatory** [2] - 560:8, 643:17

**mankind** [1] - 654:12

**manner** [3] - 577:1, 580:8, 671:1

**manslaughter** [2] - 545:18, 657:24

**manufacturing** [1] - 642:15

**March** [10] - 532:11, 588:20, 589:19, 592:6, 596:4, 596:14, 629:10, 634:2, 675:2, 688:12

**mark** [2] - 685:25, 686:2

**marked** [2] - 516:17, 575:19

**markers** [1] - 574:4

**MARSHAL** [3] - 513:2, 606:4, 606:6

**marshal** [3] - 527:13, 531:14, 646:6

**Marshal** [12] - 531:5, 588:9, 621:20, 622:2, 623:7, 624:21, 633:6, 633:11, 633:14, 646:25, 648:5, 654:20

**Marshal's** [1] - 515:8

**Marshall** [1] - 554:15

**Marshals** [9] - 512:25, 531:11, 587:21, 606:2, 633:20, 647:12, 658:18, 681:18, 682:6

**marshals** [3] - 524:14, 580:8, 662:3

**Maryland** [5] - 525:16, 534:11, 534:13, 534:18, 534:20

**mask** [1] - 502:10

**masks** [1] - 521:1

**materia** [1] - 586:8

**material** [1] - 660:13

**materialized** [1] - 535:12

**materials** [1] - 604:18

**mathematical** [1] - 672:20

**matter** [36] - 519:17, 522:25, 527:3, 530:13, 531:25, 534:7, 535:2,

540:14, 541:25, 542:13, 545:1, 547:15, 547:23, 547:25, 555:2, 556:17, 557:8, 557:13, 557:21, 568:22, 595:24, 601:9, 602:12, 603:23, 607:10, 608:17, 608:21, 631:13, 631:15, 640:13, 652:3, 668:20, 674:1, 676:3, 678:10, 680:10

**matters** [13] - 521:19, 544:7, 555:4, 564:22, 567:10, 571:11, 641:1, 642:6, 660:5, 660:9, 660:17, 673:2, 678:12

**Mawr** [2] - 533:18, 533:19

**McKee** [2] - 570:14, 641:3

**Meadow** [2] - 522:16, 522:17

**mean** [20] - 503:22, 504:1, 504:3, 511:17, 513:7, 542:12, 553:1, 582:25, 609:3, 614:5, 614:20, 615:24, 619:14, 660:10, 660:18, 672:19, 674:14, 687:10, 692:21

**meaning** [5] - 524:4, 541:19, 619:25, 620:4, 668:6

**means** [15] - 533:9, 541:3, 564:17, 569:13, 600:19, 609:12, 617:13, 640:1, 644:1, 651:18, 670:14, 674:20, 678:18, 678:24, 682:21

**meant** [11] - 564:9, 598:25, 599:2, 599:5, 599:11, 599:13, 635:22, 635:24, 636:11, 656:18

**medicine** [1] - 558:22

**meet** [2] - 588:16, 643:24

**meeting** [21] - 521:21, 523:6, 544:14,

578:24, 579:1, 579:5, 579:6, 587:21, 587:23, 587:24, 588:1, 588:3, 588:5, 588:15, 589:1, 589:8, 633:10, 634:9, 634:14, 654:21

**members** [6] - 568:9, 588:11, 592:24, 626:21, 635:3, 674:7

**memorandum** [1] - 575:3

**men** [1] - 659:2

**mental** [3] - 505:6, 505:9, 507:6

**mentally** [1] - 661:21

**mention** [5] - 512:1, 512:2, 520:10, 598:25, 664:7

**mentioned** [15] - 503:23, 527:7, 530:18, 578:23, 580:5, 583:20, 589:22, 591:10, 597:10, 597:16, 598:4, 615:7, 615:16, 621:11, 683:2

**mere** [1] - 653:20

**merely** [1] - 535:22

**merits** [3] - 583:18, 643:6, 643:8

**mess** [1] - 660:16

**met** [5] - 509:25, 524:15, 533:7, 533:14, 561:1

**metadata** [1] - 612:23

**method** [4] - 555:20, 601:18, 612:15, 681:24

**Michael** [12] - 515:1, 529:22, 535:11, 535:16, 535:19, 628:5, 632:1, 632:3, 644:20, 646:13, 654:20, 654:22

**Middle** [19] - 510:6, 527:8, 527:21, 557:5, 559:2, 597:11, 623:20, 628:19, 638:22, 639:21, 646:7, 654:15, 673:23, 674:5, 675:3, 675:20, 688:7, 688:13, 688:20

**middle** [2] - 613:16, 652:10

**midst** [1] - 534:9

**might** [17] - 520:14, 529:5, 529:7, 541:25, 543:4, 546:14, 548:7, 587:11, 587:14, 591:8, 606:22, 607:1, 625:24, 630:22, 649:13, 661:5, 663:10

**mile** [1] - 534:15

**militia** [9] - 544:21, 567:22, 568:7, 586:2, 586:25, 627:3, 660:24, 661:9

**militias** [2] - 568:6, 664:1

**million** [2] - 545:10, 594:8

**millions** [2] - 562:20, 642:17

**mind** [14] - 512:11, 519:18, 546:20, 561:24, 564:10, 633:24, 678:23, 679:9, 679:13, 679:24, 683:11, 683:12, 683:14, 690:24

**mindful** [3] - 543:9, 553:1, 553:7

**mindset** [4] - 538:3, 550:20, 558:19, 558:24, 560:20, 565:13, 567:5, 580:4, 593:20

**mine** [3] - 533:5, 539:8, 558:6

**minimum** [1] - 630:14

**ministerial** [1] - 548:9

**minute** [4] - 516:9, 517:20, 621:17, 626:25

**minutes** [10] - 573:15, 604:7, 605:9, 606:12, 663:19, 666:1, 666:7, 672:16, 689:8, 690:25

**mischaracterization** [1] - 515:8

**misconduct** [2] - 559:9, 559:12

**misconstrued** [1] - 567:16

**misread** [2] - 644:21, 644:22

**misspelled** [1] - 582:24

**misspelling** [1] -

583:3

**misstated** [1] - 509:18

**misstates** [1] - 601:14

**mistake** [6] - 571:8, 641:24, 642:1, 644:21, 653:6, 679:1

**mistakes** [1] - 641:12

**misunderstood** [1] - 511:19

**mixed** [1] - 595:24

**mocked** [1] - 590:1

**mocking** [1] - 630:13

**model** [5] - 507:1, 508:1, 508:15, 609:3, 609:10

**modify** [1] - 563:14

**moment** [4] - 516:5, 558:8, 599:16, 686:13

**momentarily** [1] - 546:17

**money** [12] - 520:12, 524:2, 527:23, 533:12, 541:5, 550:13, 562:25, 563:9, 571:21, 576:16, 656:12, 661:11

**monies** [1] - 654:4

**monitor** [1] - 625:1

**months** [3] - 526:17, 534:20, 558:23

**morning** [4] - 518:17, 603:20, 684:3, 685:8

**most** [10] - 504:8, 539:2, 540:19, 544:6, 545:3, 565:2, 566:8, 627:7, 658:5, 658:9

**mother** [2] - 547:3, 550:23

**motion** [6] - 569:5, 644:22, 648:17, 650:14, 692:18, 692:25

**motions** [1] - 691:25

**motivated** [2] - 669:15, 671:3

**motive** [4] - 661:10, 671:4, 679:22, 679:23

**Motz** [5] - 640:11, 640:24, 643:22, 645:19, 645:20

**mouth** [1] - 669:23

**move** [2] - 537:13, 543:9, 545:12, 545:24, 548:4, 552:10, 555:8, 560:22, 561:21,

572:15, 575:25,
601:2, 606:22,
607:22, 607:23,
652:3, 652:23,
657:21, 661:4,
686:19, 692:7
**moved** [6] - 544:11,
548:16, 551:18,
560:20, 607:12,
642:11
**moves** [1] - 649:19
**moving** [6] - 521:19,
536:21, 540:12,
544:17, 554:24,
600:14
**MR** [185] - 502:6,
502:12, 502:15,
502:21, 502:25,
503:6, 503:15,
504:6, 504:14,
504:16, 504:19,
504:23, 505:9,
505:15, 505:21,
505:25, 506:7,
506:9, 506:12,
506:18, 507:13,
507:19, 507:23,
508:2, 508:5,
508:13, 508:21,
509:13, 509:15,
510:4, 510:17,
510:24, 511:7,
511:11, 511:19,
511:22, 511:25,
512:8, 512:10,
512:14, 512:17,
512:24, 513:13,
513:17, 513:18,
513:24, 514:2,
514:6, 514:13,
514:15, 514:18,
514:21, 514:24,
515:6, 515:11,
515:17, 515:20,
516:5, 516:9,
516:16, 517:1,
517:3, 517:9,
517:15, 517:20,
517:23, 518:5,
518:8, 518:10,
518:21, 519:21,
521:4, 530:16,
530:24, 558:9,
558:11, 565:6,
566:10, 569:15,
572:21, 573:12,
573:14, 573:23,
594:9, 594:16,
594:17, 597:4,
597:5, 599:16,
599:18, 600:8,

600:11, 602:19,
602:22, 602:25,
603:21, 603:24,
604:1, 604:5, 604:9,
604:14, 604:20,
605:21, 606:24,
607:6, 607:15,
607:22, 608:12,
609:1, 609:4,
610:19, 610:21,
611:5, 611:9,
611:15, 611:18,
612:5, 612:10,
612:12, 612:16,
612:20, 613:3,
613:7, 613:10,
613:13, 613:15,
613:18, 613:21,
613:25, 614:7,
614:23, 615:4,
615:6, 615:10,
615:16, 616:7,
616:10, 616:13,
618:4, 618:6,
618:19, 618:21,
618:24, 619:18,
638:18, 645:4,
645:7, 645:15,
645:17, 646:14,
646:16, 646:20,
649:10, 649:18,
650:22, 651:7,
651:9, 651:21,
651:24, 652:4,
657:5, 657:9,
659:24, 663:19,
663:21, 666:16,
666:20, 667:5,
667:8, 686:5, 686:9,
686:12, 686:13,
686:21, 686:22,
687:18, 687:19,
689:5, 689:10,
692:12, 692:13,
692:15, 692:17,
692:23, 692:25
**MS** [12] - 513:8,
513:10, 603:17,
604:25, 605:3,
605:6, 605:10,
605:14, 605:23,
605:25, 608:19,
666:4
**mulls** [1] - 660:10
**multi** [1] - 642:14
**multi-billion** [1] -
642:14
**multiple** [3] - 530:2,
535:3, 553:19
**must** [45] - 511:13,

528:4, 529:15,
530:6, 530:10,
538:1, 539:5,
539:22, 540:1,
541:6, 542:23,
548:5, 548:16,
548:17, 549:4,
549:10, 560:10,
561:24, 562:22,
563:24, 570:17,
572:2, 584:18,
598:8, 600:18,
623:5, 626:15,
627:11, 640:9,
642:25, 643:1,
643:5, 643:18,
644:1, 648:15,
648:18, 672:13,
673:11, 676:14,
677:20, 683:17

# N

**NAACP** [1] - 568:8
**name** [18] - 515:2,
519:7, 519:8, 526:8,
531:14, 578:16,
578:17, 582:8,
582:14, 582:23,
583:4, 625:3, 626:3,
626:8, 665:7,
682:21, 682:22,
686:25
**named** [6] - 530:2,
535:21, 576:16,
620:2, 631:5, 650:15
**names** [2] - 572:16,
582:24
**narratives** [1] - 519:14
**narrow** [1] - 600:2
**national** [1] - 563:24
**nationwide** [1] -
657:12
**nature** [8] - 618:8,
635:14, 637:6,
673:5, 674:18,
678:12, 678:15,
692:4
**near** [3] - 512:11,
617:14, 681:5
**necessarily** [3] -
587:18, 660:10,
678:18
**necessary** [11] -
505:13, 505:15,
505:18, 505:21,
506:5, 575:15,
628:14, 639:16,
651:13, 656:9,
681:22

**necessity** [6] - 509:5,
556:21, 596:1,
602:3, 631:19, 676:4
**need** [42] - 502:7,
502:12, 513:4,
514:4, 517:19,
517:21, 537:13,
542:24, 543:1,
552:10, 558:15,
558:16, 561:20,
561:21, 563:20,
570:22, 572:23,
583:17, 594:14,
608:10, 609:17,
610:16, 611:1,
612:14, 613:10,
614:20, 615:15,
615:24, 617:17,
617:18, 619:15,
631:14, 633:12,
642:21, 645:11,
659:1, 666:7,
675:16, 683:2,
684:5, 686:19,
691:12
**needed** [3] - 545:12,
661:15
**needs** [16] - 507:22,
508:4, 564:12,
608:16, 608:21,
609:13, 609:15,
610:9, 610:11,
612:1, 612:12,
612:13, 614:17,
614:22, 615:3, 615:7
**negative** [2] - 525:20,
602:20
**neglects** [1] - 526:23
**neighborhood** [1] -
625:1
**Net** [1] - 538:21
**net** [2] - 541:19, 542:8
**network** [1] - 631:25
**neutral** [2] - 523:19,
646:12
**never** [24] - 525:21,
526:9, 535:12,
535:25, 536:25,
538:2, 625:5, 625:6,
625:7, 625:8,
638:20, 638:21,
641:3, 642:10,
646:8, 647:23,
650:10, 651:23,
653:1, 653:9, 659:6,
679:23, 684:11
**new** [2] - 645:11,
645:14
**New** [4] - 504:12,
580:21, 604:18,

628:17
**news** [1] - 657:13
**next** [29] - 507:14,
536:21, 560:17,
577:23, 585:12,
588:19, 590:5,
590:11, 605:9,
609:18, 610:7,
611:22, 611:24,
612:1, 612:21,
623:15, 627:10,
675:15, 676:7,
677:2, 678:14,
678:22, 679:7,
680:24, 681:2,
682:16, 684:3, 691:9
**night** [2] - 502:7,
507:19
**nobility** [1] - 532:5
**non** [1] - 602:6
**non-lawyers** [1] -
602:6
**none** [5] - 543:20,
561:10, 653:23,
660:5, 660:16
**nonprofit** [1] - 568:10
**normally** [5] - 513:22,
541:25, 542:3,
614:9, 640:20
**note** [14] - 513:18,
513:22, 518:11,
553:12, 620:6,
622:11, 627:17,
628:23, 684:7,
684:13, 685:23,
686:3, 686:24
**noted** [3] - 507:15,
508:8, 513:21
**notes** [1] - 580:8
**nothing** [14] - 523:6,
524:3, 556:25,
568:12, 569:24,
570:16, 580:13,
600:23, 640:12,
644:7, 645:21,
657:3, 668:13
**notice** [18] - 537:1,
540:3, 543:19,
554:11, 593:14,
593:25, 612:21,
629:11, 634:20,
634:22, 635:2,
635:6, 635:18,
644:13, 658:15,
662:14, 662:18
**noticed** [3] - 507:19,
607:15, 687:8
**notified** [1] - 625:2
**NUMBER** [12] -
689:15, 689:18,

689:21, 689:24,
690:2, 690:5, 690:8,
690:11, 690:14,
690:17, 690:20,
690:23
**number** [75] - 505:12,
506:11, 507:24,
525:15, 526:12,
527:14, 538:4,
538:5, 539:8,
544:18, 545:2,
555:18, 561:23,
569:12, 583:13,
584:8, 601:24,
606:20, 607:2,
607:16, 607:19,
607:20, 607:21,
607:23, 607:24,
608:1, 608:5, 608:9,
608:13, 608:20,
609:14, 609:16,
610:3, 610:4,
610:10, 610:13,
610:23, 611:4,
612:5, 612:10,
613:5, 613:7,
617:18, 617:23,
625:4, 633:16,
639:16, 648:12,
648:20, 651:1,
653:16, 673:14,
675:1, 675:15,
677:18, 678:1,
679:7, 680:1, 681:7,
681:15, 682:19,
683:3, 685:1,
689:13, 689:16,
689:19, 689:22,
689:25, 690:3,
690:6, 690:9,
690:12, 690:15,
690:18, 690:21
**Number** [1] - 679:22
**numbers** [3] - 572:16,
572:17, 578:7
**numerous** [2] -
547:14, 638:23

# O

**oath** [4] - 517:17,
519:2, 647:8, 684:22
**oaths** [1] - 681:11
**object** [10] - 515:22,
517:6, 520:3, 521:4,
530:16, 544:18,
565:6, 566:10,
607:13, 647:5
**objection** [28] -
508:20, 514:14,

514:17, 516:14,
517:8, 517:9,
519:16, 519:21,
521:18, 530:15,
530:22, 531:1,
536:25, 548:11,
555:10, 569:15,
572:19, 572:20,
608:6, 618:20,
646:14, 650:22,
651:21, 667:7,
687:3, 687:20
**objections** [10] -
508:8, 508:12,
515:19, 612:9,
613:1, 618:3, 670:5,
686:4, 691:15,
691:25
**objective** [1] - 607:5
**objectively** [3] -
607:10, 678:4,
678:11
**objects** [1] - 544:20
**obligation** [1] - 672:9
**observe** [1] - 670:23
**obsolete** [1] - 568:1
**obtain** [1] - 526:5
**obvious** [1] - 523:21
**obviously** [4] -
528:14, 542:10,
635:16, 692:10
**occasion** [1] - 645:11
**occasions** [1] -
627:14
**occur** [1] - 508:18
**occurred** [8] - 537:6,
537:17, 595:3,
596:13, 631:2,
647:23, 649:19,
674:15
**occurs** [1] - 634:12
**October** [1] - 536:22
**oddly** [1] - 601:1
**offend** [2] - 557:13,
571:23
**offended** [1] - 542:21
**offense** [20] - 507:7,
507:9, 526:25,
617:14, 624:2,
632:4, 662:14,
668:1, 668:3, 673:7,
673:9, 673:11,
673:12, 674:24,
677:21, 677:22,
677:24, 681:5, 692:4
**offenses** [11] - 618:16,
637:18, 638:11,
665:14, 667:22,
671:24, 672:5,
672:13, 672:15,

677:24, 678:3
**offensive** [6] - 532:17,
541:20, 561:12,
587:11, 656:17,
658:10
**offer** [3] - 552:5,
574:14, 649:14
**offered** [1] - 682:13
**office** [25] - 507:16,
514:25, 529:24,
530:3, 531:16,
531:21, 540:2,
577:19, 580:21,
580:24, 603:18,
625:11, 625:14,
625:16, 625:22,
625:23, 628:17,
644:20, 646:8,
646:9, 646:10,
647:10, 647:20,
656:13, 682:4
**Office** [2] - 577:21,
675:24
**office's** [1] - 513:11
**Officer** [2] - 556:5,
654:22
**officer** [8] - 521:24,
522:4, 537:20,
544:19, 562:11,
577:17, 691:11,
691:13
**officers** [1] - 579:9
**Official** [1] - 545:21
**official** [8] - 526:10,
539:17, 540:23,
576:9, 576:19,
577:15, 648:2,
653:14
**officially** [1] - 538:22
**often** [2] - 609:25,
610:1
**omitted** [2] - 679:11,
679:25
**once** [14] - 527:23,
528:7, 540:21,
540:22, 554:1,
554:23, 560:19,
563:4, 603:9,
626:24, 639:20,
641:15, 653:9,
656:15
**One** [1] - 599:16
**one** [136] - 505:8,
508:21, 509:10,
509:16, 509:17,
510:24, 516:5,
516:9, 516:12,
517:1, 521:3,
522:24, 525:4,
525:12, 525:14,

526:25, 527:4,
528:22, 529:11,
529:16, 529:23,
532:7, 534:4, 534:9,
535:4, 535:6,
538:24, 539:8,
539:9, 542:16,
542:21, 542:22,
544:5, 544:7,
544:12, 544:25,
545:4, 545:14,
547:13, 547:17,
547:19, 549:5,
551:6, 553:17,
553:22, 554:4,
554:10, 556:4,
559:16, 560:23,
564:3, 564:4, 564:5,
564:20, 568:18,
571:2, 571:20,
572:22, 575:9,
575:11, 578:10,
580:10, 583:18,
584:10, 594:23,
598:12, 600:6,
601:23, 606:12,
609:9, 611:11,
611:14, 611:17,
611:18, 615:12,
615:19, 619:20,
620:3, 621:10,
622:13, 623:24,
624:2, 624:11,
624:19, 625:9,
627:17, 628:24,
629:5, 629:21,
631:5, 631:23,
632:16, 633:1,
633:9, 634:11,
636:12, 636:14,
636:24, 639:13,
641:25, 642:25,
643:13, 646:3,
646:4, 646:5, 647:9,
647:10, 650:18,
651:16, 652:9,
654:20, 655:13,
655:14, 655:24,
658:4, 658:7,
659:15, 660:20,
661:4, 661:13,
661:16, 663:10,
664:5, 666:5,
673:10, 674:16,
677:22, 680:1,
682:16, 683:23,
684:22, 687:11,
689:7, 692:15
**ones** [1] - 687:8
**online** [1] - 526:5
**open** [4] - 549:10,

559:4, 563:25,
683:11
**opened** [3] - 636:13,
648:19, 663:22
**opening** [2] - 559:16,
662:16
**operate** [3] - 532:18,
533:24, 545:13
**operates** [1] - 522:24
**operating** [7] - 523:17,
530:3, 531:6,
544:20, 559:19,
560:4, 565:1
**operation** [1] - 681:24
**operations** [1] - 679:9
**opinion** [23] - 547:24,
570:7, 575:3, 576:3,
576:15, 577:12,
601:14, 611:1,
611:2, 611:8,
611:21, 641:18,
641:19, 643:17,
649:2, 668:15,
669:16, 680:10,
680:12, 680:16,
680:19, 680:20,
680:21
**opinions** [3] - 547:16,
669:6, 680:3
**opponent** [1] - 601:2
**opponents** [1] -
641:25
**opportunity** [9] -
528:16, 538:8,
594:11, 639:6,
639:19, 644:17,
649:15, 659:20,
670:22
**opposed** [2] - 576:22,
612:6
**oppress** [1] - 585:2
**option** [1] - 549:5
**options** [2] - 533:22,
544:8
**oral** [1] - 658:23
**orally** [1] - 614:4
**order** [22] - 569:7,
575:20, 584:17,
584:18, 586:3,
591:6, 594:8, 625:7,
625:8, 626:14,
626:15, 627:4,
627:10, 627:11,
630:20, 640:20,
640:23, 660:24,
668:2, 672:12,
675:11
**ordered** [2] - 633:19,
654:25
**ordering** [2] - 598:7,

657:9
**orderly** [1] - 519:11
**orders** [9] - 520:8,
548:13, 584:6,
585:7, 627:22,
628:2, 640:5,
640:22, 664:1
**ordinarily** [2] - 679:7,
680:2
**ordinary** [1] - 672:25
**organizations** [1] -
568:8
**original** [10] - 535:15,
576:21, 592:6,
592:10, 593:6,
594:1, 594:18,
613:19, 613:21,
683:13
**originally** [6] - 553:14,
553:15, 571:9,
610:6, 640:23,
656:25
**otherwise** [13] -
524:12, 537:23,
548:22, 548:24,
560:10, 561:24,
569:4, 575:13,
590:11, 591:5,
627:1, 630:18,
630:19
**ought** [1] - 669:1
**OUST** [1] - 612:6
**outcome** [3] - 559:12,
602:5, 671:2
**outcomes** [2] -
657:10, 657:15
**outline** [1] - 519:12
**outlined** [3] - 538:18,
659:8
**outlining** [2] - 509:2,
638:23
**outraged** [1] - 545:17
**outrageous** [1] -
547:1
**outside** [4] - 532:18,
586:15, 636:16,
669:11
**outweighed** [1] -
680:20
**over-the-top** [1] -
559:23
**overcomes** [1] - 672:3
**overnight** [3] - 524:19,
656:12
**overreaction** [1] -
647:19
**overrule** [1] - 531:1
**overruled** [1] - 572:20
**oversee** [2] - 641:3,
642:3

**overstepped** [2] -
520:14, 659:22
**overuse** [1] - 525:4
**owe** [1] - 539:2
**owed** [2] - 643:9,
654:4
**own** [21] - 523:1,
523:17, 532:24,
535:7, 538:13,
539:10, 539:25,
559:1, 614:11,
618:2, 633:12,
649:24, 650:14,
654:14, 657:10,
657:11, 669:6,
669:7, 673:3, 680:3,
683:17
**owned** [2] - 534:11,
551:15
**owner** [3] - 524:6,
535:2, 535:3
**owners** [2] - 533:21,
534:2

**P**

**p.m** [14] - 616:3,
616:4, 619:1,
665:22, 666:9,
666:10, 667:11,
685:20, 685:21,
687:23, 687:24,
688:1, 691:8, 693:8
**PA** [1] - 574:22
**PA's** [3] - 596:1,
631:20, 676:4
**PACER** [2] - 524:25,
525:3
**packet** [2] - 667:20,
667:21
**page** [40] - 514:21,
515:5, 530:18,
530:25, 559:11,
575:7, 575:17,
575:25, 576:1,
576:12, 577:3,
577:10, 578:6,
578:9, 584:8,
586:19, 595:17,
598:1, 600:6, 600:7,
600:11, 600:12,
601:24, 601:25,
608:19, 613:7,
623:2, 623:3, 623:4,
626:9, 626:16,
626:23, 627:18,
627:24, 627:25,
631:9, 664:8, 677:2,
684:17
**pages** [2] - 574:8,

574:9
**paid** [8] - 528:14,
528:15, 557:11,
563:10, 564:22,
571:5, 594:8, 643:10
**panel** [2] - 570:16,
640:18
**panels** [2] - 640:3,
640:9
**paper** [2] - 619:24,
684:6
**papers** [1] - 531:13
**paperwork** [1] - 586:1
**paragraph** [25] -
577:11, 584:15,
584:23, 585:24,
586:10, 587:16,
590:5, 590:6,
590:11, 590:14,
600:13, 601:25,
602:1, 606:21,
606:22, 607:2,
607:20, 607:24,
608:5, 610:14,
611:1, 611:5,
612:12, 627:10,
664:9
**paraphrasing** [1] -
586:15
**pardon** [1] - 600:10
**paren** [4] - 542:10,
542:14, 542:17,
604:4
**pari** [1] - 586:8
**Park** [1] - 535:4
**part** [14] - 506:24,
529:19, 541:13,
578:12, 585:10,
594:7, 637:15,
656:25, 661:11,
663:16, 664:15,
678:2, 680:21,
692:20
**participate** [3] - 685:4,
685:14, 685:15
**particular** [15] - 520:4,
520:20, 523:16,
535:9, 554:22,
555:21, 570:4,
624:20, 627:17,
645:2, 660:19,
663:10, 668:3,
670:22, 671:1
**particularly** [1] - 633:9
**particulars** [1] -
671:15
**parties** [7] - 544:5,
574:6, 600:20,
623:10, 671:4,
684:8, 692:7

**parts** [1] - 671:13
**party** [4] - 557:4,
575:22, 577:8,
600:23
**pass** [1] - 504:13
**passage** [1] - 595:21
**passages** [1] - 663:24
**passed** [1] - 550:23
**passing** [1] - 571:19
**passion** [3] - 623:12,
623:14
**passionate** [2] -
623:8, 623:10
**passive** [1] - 641:20
**past** [1] - 660:15
**pasted** [2] - 663:25,
664:10
**Pat** [2] - 631:23,
632:19
**patience** [1] - 619:2
**pattern** [3] - 612:17,
657:18, 681:25
**Pause** [3] - 504:11,
677:16, 684:19
**pause** [8] - 505:11,
506:22, 508:6,
516:20, 518:1,
518:12, 601:19,
606:18
**Pause.)s** [1] - 599:17
**pay** [9] - 528:14,
529:7, 534:23,
545:10, 558:6,
563:2, 656:12,
673:19, 674:25
**payment** [1] - 571:6
**payout** [2] - 661:15,
661:16
**peacefully** [1] - 541:24
**peculiar** [1] - 530:8
**peddled** [1] - 579:19
**penalty** [4] - 515:12,
530:7, 646:22, 648:8
**pending** [6] - 555:4,
584:6, 627:22,
628:2, 664:2
**Penn** [2] - 658:10,
659:1
**Pennsylvania** [71] -
510:7, 510:23,
511:4, 511:21,
512:2, 512:3, 512:4,
516:3, 520:6, 520:8,
520:21, 520:24,
521:24, 527:9,
527:22, 530:1,
535:7, 538:21,
538:25, 539:3,
539:21, 539:24,
540:7, 540:15,

540:18, 540:22,
541:2, 541:19,
541:23, 543:15,
543:18, 549:15,
551:12, 557:5,
559:2, 567:25,
568:2, 568:5,
576:21, 576:24,
576:25, 577:9,
577:17, 577:20,
577:22, 597:11,
601:1, 620:18,
623:20, 628:19,
638:23, 641:10,
642:14, 644:15,
644:19, 648:25,
654:6, 654:8,
654:15, 673:24,
674:6, 675:3,
675:10, 675:21,
675:24, 676:2,
688:7, 688:13,
688:20
**Pennsylvania's** [3] -
542:7, 556:21,
557:18
**Pennsylvanians** [1] -
659:3
**pension** [1] - 650:20
**people** [19] - 511:9,
520:25, 531:20,
532:1, 533:11,
533:13, 545:14,
551:7, 557:1, 572:8,
585:2, 585:13,
614:7, 634:6, 647:1,
654:11, 657:13,
665:5, 670:11
**people's** [1] - 561:19
**per** [2] - 570:1, 579:14
**perceived** [3] - 634:8,
662:5, 662:21
**perceiving** [3] - 580:7,
633:22, 635:7
**perception** [1] - 682:9
**perfect** [4] - 513:12,
572:7, 610:14, 655:1
**perfectly** [9] - 525:17,
536:7, 536:10,
572:1, 644:23,
650:16, 651:14,
651:18, 652:18
**perform** [1] - 669:14
**perhaps** [1] - 615:11
**period** [3] - 549:13,
608:14, 608:15
**perjury** [4] - 515:12,
530:8, 646:22, 648:8
**permit** [2] - 566:19,
680:2

**permitted** [3] - 570:11, 642:5, 645:24
**PERRI** [57] - 502:6, 502:12, 502:15, 502:21, 502:25, 504:19, 504:23, 505:9, 505:15, 505:21, 505:25, 506:7, 506:9, 506:12, 506:18, 507:13, 507:19, 508:2, 508:5, 513:13, 513:18, 513:24, 517:9, 518:5, 518:8, 603:21, 604:1, 605:21, 606:24, 607:6, 608:12, 609:1, 612:10, 612:12, 612:16, 612:20, 613:7, 613:10, 613:13, 613:18, 613:25, 614:7, 614:23, 615:4, 615:6, 615:10, 615:16, 646:14, 659:24, 663:19, 663:21, 667:5, 686:13, 686:21, 687:18, 689:5, 692:12
**Perri** [4] - 616:23, 619:17, 686:15, 692:16
**perri** [3] - 604:6, 619:19, 663:17
**person** [29] - 530:4, 531:7, 562:7, 566:19, 577:19, 577:20, 584:19, 598:8, 600:19, 624:1, 624:5, 624:16, 627:11, 637:22, 638:12, 647:20, 654:23, 658:20, 663:4, 663:8, 664:3, 664:4, 672:25, 676:12, 676:20, 677:12, 678:6, 679:23, 681:25
**personal** [6] - 509:19, 562:22, 577:6, 601:4, 624:24, 624:25
**personally** [3] - 564:3, 576:4, 644:11
**persons** [1] - 600:20
**perspective** [2] - 639:7, 639:8

**pertains** [2] - 566:13, 626:18
**Peter** [7] - 531:9, 531:13, 531:21, 538:6, 544:12, 546:1, 647:16
**petition** [16] - 523:10, 531:25, 541:22, 541:24, 564:24, 565:15, 565:23, 566:1, 567:6, 568:9, 570:4, 583:22, 584:3, 627:20, 647:18, 655:6
**phase** [1] - 691:9
**Philadelphia** [1] - 644:20
**phone** [7] - 525:16, 525:22, 633:20, 655:25, 656:4, 685:12, 687:17
**photographs** [2] - 580:25, 581:2
**phrased** [2] - 503:12, 506:19
**pick** [2] - 546:19, 617:23
**piece** [1] - 619:23
**Piper** [1] - 534:18
**place** [12] - 503:1, 523:13, 524:8, 527:15, 527:16, 538:19, 625:22, 649:1, 653:22, 660:24, 666:14, 685:6
**placed** [5] - 517:17, 519:2, 574:3, 580:20, 581:4
**placing** [1] - 581:13
**plain** [1] - 528:4
**plaintiff** [1] - 602:9
**Plaintiff** [5] - 528:22, 576:13, 576:16, 576:19, 577:1
**plaintiffs** [1] - 576:16
**plan** [3] - 512:22, 534:8, 633:24
**planner** [1] - 533:8
**planning** [2] - 612:15, 681:23
**plans** [1] - 533:24
**plate** [1] - 625:4
**plausible** [1] - 648:18
**play** [2] - 629:19, 651:1
**plea** [1] - 559:6
**plead** [1] - 643:1
**pleaded** [1] - 671:23
**pleading** [2] - 528:3,

570:5
**pleadings** [1] - 572:3
**Pleas** [2] - 649:2, 649:5
**plugged** [1] - 663:25
**plural** [1] - 611:11
**point** [73] - 520:16, 523:4, 523:8, 524:24, 525:7, 525:19, 526:13, 526:14, 528:21, 529:9, 529:10, 529:15, 536:11, 543:18, 544:17, 545:19, 547:4, 548:6, 548:10, 548:25, 549:5, 549:6, 550:3, 550:22, 551:17, 552:20, 553:7, 553:8, 554:7, 554:24, 556:13, 560:12, 560:16, 562:21, 564:10, 570:13, 570:21, 570:24, 580:13, 593:14, 596:19, 606:24, 622:24, 621:21, 622:1, 622:17, 631:20, 632:23, 636:16, 639:2, 641:14, 641:15, 642:11, 642:18, 644:9, 646:3, 647:7, 647:16, 647:22, 649:16, 649:17, 650:7, 650:25, 654:2, 656:3, 661:24, 662:15, 674:10, 674:16, 691:17, 692:2, 692:6
**pointblank** [1] - 650:7
**points** [2] - 555:19, 556:14, 567:20, 589:3, 600:5, 620:11
**Police** [2] - 556:5, 625:1
**police** [5] - 521:24, 522:4, 537:20, 544:19, 652:7
**policy** [3] - 553:18, 557:14, 558:4
**political** [3] - 543:6, 567:6, 641:17
**politics** [1] - 547:15
**poll** [1] - 689:12
**polled** [1] - 689:10
**poor** [1] - 558:7
**portion** [9] - 530:17,

575:10, 592:15, 595:18, 627:2, 630:7, 631:10, 646:20, 658:15
**portions** [1] - 631:11
**pose** [1] - 519:15
**position** [13] - 502:5, 502:7, 502:12, 505:16, 505:20, 506:4, 506:8, 510:1, 511:25, 564:11, 638:20, 648:1, 683:14
**positions** [1] - 621:3
**possible** [8] - 512:11, 571:12, 590:8, 591:9, 630:22, 672:19, 672:20, 681:11
**possibly** [1] - 664:21
**post** [4] - 580:21, 580:23, 628:17, 692:19
**post-trial** [1] - 692:19
**Postal** [2] - 628:16, 629:1
**postal** [7] - 525:24, 526:2, 628:6, 628:18, 656:11, 674:1, 674:2
**potential** [5] - 536:1, 550:13, 550:22, 561:10, 653:8
**potentially** [1] - 527:11
**power** [3] - 532:19, 536:15, 556:2
**practice** [4] - 525:1, 534:1, 614:16, 624:6, 648:21, 687:6
**practices** [1] - 618:9
**practicing** [1] - 602:6
**pre** [5] - 591:25, 691:10, 691:11, 691:12, 691:21
**pre-dated** [1] - 591:25
**pre-sentence** [4] - 691:10, 691:11, 691:12, 691:21
**precautions** [2] - 624:24, 624:25
**precedent** [6] - 508:22, 508:25, 509:6, 569:13, 569:16, 569:18
**precluding** [1] - 511:23
**predicting** [3] - 536:18, 657:10, 657:15

**prediction** [1] - 585:18
**pregnant** [2] - 687:7, 687:12
**prejudice** [3] - 552:7, 669:15, 671:3
**preliminary** [12] - 518:3, 520:7, 520:17, 569:6, 584:18, 598:7, 600:16, 615:20, 616:6, 627:10, 640:13, 642:6
**premature** [1] - 583:13
**premise** [2] - 522:3, 522:4
**preparation** [1] - 622:18
**prepare** [1] - 618:13
**prepared** [3] - 618:11, 635:13, 691:11
**present** [9] - 517:13, 518:20, 521:20, 534:21, 536:22, 537:20, 611:18, 630:14, 693:6
**presentation** [6] - 523:7, 545:25, 553:22, 560:2, 593:13, 600:23
**presented** [12] - 531:17, 562:16, 568:25, 571:15, 593:6, 600:17, 600:18, 619:21, 628:21, 632:2, 647:7, 672:15
**presenting** [3] - 541:11, 563:8, 602:18
**preservation** [1] - 567:23
**preserve** [3] - 508:14, 623:5, 654:3
**preserved** [4] - 508:20, 509:9, 511:8, 608:6
**preserving** [2] - 508:24, 511:7
**President** [1] - 658:21
**president** [1] - 658:25
**presumed** [1] - 671:25
**presumption** [4] - 634:19, 672:2, 672:4, 672:6
**presumptive** [1] - 692:6
**pretend** [1] - 556:25
**pretending** [1] - 544:19
**pretty** [4] - 539:12,

582:21, 598:14, 667:17
**prevailed** [1] - 534:19
**prevent** [4] - 510:7, 536:16, 562:6, 564:21
**preventing** [1] - 510:18
**previous** [2] - 527:25, 595:16
**previously** [7] - 574:24, 580:5, 595:4, 595:8, 596:4, 600:25, 639:12
**primary** [1] - 524:1
**print** [4] - 603:17, 604:25, 605:3, 614:5
**printer** [1] - 603:18
**printing** [2] - 513:11, 550:2
**prison** [1] - 526:17
**privacy** [1] - 546:23
**private** [1] - 624:6
**privileged** [1] - 546:24
**pro** [15] - 527:1, 546:9, 559:18, 562:18, 563:8, 615:11, 616:17, 616:18, 646:5, 651:2, 651:4, 654:17, 654:18, 658:11, 670:13
**probation** [1] - 559:6
**probative** [3] - 552:4, 552:5, 673:18
**problem** [6] - 543:3, 621:7, 644:19, 666:22, 666:25, 692:20
**problematic** [1] - 548:3
**problems** [2] - 535:1, 603:8
**procedural** [2] - 644:1, 645:20
**procedurally** [1] - 571:8
**Procedure** [1] - 576:24
**procedure** [10] - 529:2, 544:5, 548:17, 559:8, 563:15, 575:21, 575:23, 576:22, 643:2, 648:25
**procedures** [3] - 523:18, 563:17, 593:22
**proceed** [7] - 526:12, 547:18, 569:24, 570:12, 602:9,

651:2, 651:4
**proceeded** [2] - 591:13, 670:13
**Proceeding** [2] - 685:21, 693:8
**proceeding** [8] - 522:7, 523:10, 527:2, 573:18, 590:8, 616:3, 666:9, 687:23
**proceedings** [2] - 555:9, 652:11
**Proceedings** [1] - 502:1
**proceeds** [1] - 549:11
**process** [53] - 518:11, 519:12, 520:11, 522:1, 528:6, 528:7, 532:8, 536:12, 538:17, 541:7, 543:21, 550:16, 554:14, 560:25, 562:15, 563:13, 563:22, 571:20, 575:21, 575:22, 575:24, 576:6, 576:17, 576:21, 576:23, 577:1, 577:14, 587:13, 623:4, 639:8, 639:14, 643:25, 644:2, 648:11, 649:19, 650:3, 652:17, 654:7, 659:17, 659:19, 664:7, 664:12, 664:14, 664:16, 664:17, 664:22, 665:4, 691:21, 691:23, 692:2, 692:10
**processer** [2] - 646:10, 647:9
**processing** [3] - 560:9, 564:12, 643:17
**produced** [1] - 539:19
**product** [1] - 643:7
**production** [1] - 561:14
**products** [1] - 533:12
**profession** [1] - 564:7
**professional** [4] - 533:18, 533:20, 540:20, 654:23
**proffer** [1] - 574:14
**program** [1] - 541:8
**progress** [2] - 571:24, 661:22
**progressed** [1] -

534:25
**prohibits** [1] - 537:24
**prompt** [1] - 583:14
**prompts** [1] - 679:23
**proof** [11] - 515:2, 530:6, 552:5, 591:14, 619:5, 637:17, 639:15, 672:9, 672:15, 672:19, 682:16
**proofs** [2] - 541:16, 575:4
**proper** [11] - 548:17, 553:24, 559:8, 568:3, 569:24, 574:8, 575:13, 643:2, 644:16, 649:1, 649:19
**properly** [19] - 535:23, 540:4, 543:12, 548:5, 548:7, 551:17, 558:21, 574:6, 578:14, 599:6, 600:17, 641:7, 641:8, 643:10, 643:18, 656:8, 656:10, 658:4, 660:2
**property** [7] - 509:19, 511:15, 522:16, 522:17, 569:7, 623:5, 654:13
**propose** [1] - 686:3
**proposed** [4] - 503:7, 503:20, 503:21, 535:10
**prosecute** [1] - 561:22
**prosecuted** [1] - 664:20
**prosecution** [2] - 519:15, 593:12, 593:23
**prosecutor** [3] - 545:17, 562:1, 648:14
**protect** [4] - 607:1, 614:18, 654:13
**protected** [6] - 531:24, 564:25, 565:14, 565:16, 565:18, 658:24
**protecting** [1] - 568:13
**protection** [2] - 533:22, 550:17
**protections** [5] - 550:16, 555:12, 562:12, 567:13, 570:20
**prove** [13] - 509:22,

550:10, 617:13, 629:23, 632:25, 636:12, 637:9, 637:18, 674:14, 678:20, 679:3, 679:16, 679:19
**proved** [10] - 609:22, 672:8, 673:7, 676:14, 677:6, 679:7, 679:14, 681:8, 681:13, 683:21
**proven** [3] - 636:8, 637:11, 638:12
**provide** [4] - 519:13, 577:1, 645:11, 692:2
**provided** [6] - 513:19, 592:13, 619:24, 623:12, 658:17, 691:14
**proving** [3] - 667:25, 672:18, 678:19
**provision** [1] - 512:3
**provisions** [3] - 509:11, 510:16, 510:23
**public** [5] - 521:3, 561:14, 563:25, 567:16, 682:22
**publish** [2] - 531:2, 563:25
**Pugh** [2] - 588:8, 633:18
**pull** [11] - 507:25, 574:25, 578:1, 581:21, 589:12, 622:24, 629:8, 630:6, 630:24, 631:9, 647:13
**pulled** [1] - 630:25
**punishable** [1] - 526:25
**punished** [1] - 526:17
**punishment** [4] - 681:7, 681:9, 681:10, 681:12
**purpose** [15] - 523:25, 574:12, 622:16, 625:18, 629:1, 632:6, 632:11, 632:25, 637:12, 681:20, 681:21, 682:2, 682:7, 682:13, 682:14
**purposely** [2] - 555:16, 560:1
**purposes** [4] - 538:23, 542:18, 598:4, 642:22
**pursuant** [1] - 507:24

**pursue** [2] - 556:11, 654:14
**put** [29] - 503:24, 516:23, 520:17, 527:6, 529:10, 530:10, 530:14, 540:3, 563:20, 573:3, 601:25, 606:21, 607:11, 607:24, 609:20, 610:23, 610:24, 611:23, 618:15, 634:20, 634:22, 643:6, 643:10, 658:20, 658:21, 662:18, 664:8, 684:11, 686:16
**puts** [1] - 635:2
**putting** [2] - 608:4, 648:7

## Q

**qualified** [5] - 533:9, 554:17, 586:9, 653:17, 658:2
**qualifier** [1] - 587:12
**quality** [1] - 670:24
**questioned** [2] - 527:13, 651:24
**questioning** [4] - 551:5, 583:21, 591:15, 634:13
**questions** [9] - 532:7, 570:8, 598:18, 620:25, 629:12, 635:22, 648:20, 680:3, 684:5
**quick** [3] - 553:11, 600:5, 607:15
**quickly** [12] - 502:4, 515:21, 516:13, 531:5, 544:1, 552:14, 558:15, 558:16, 559:19, 571:12, 606:13, 615:12
**quite** [3] - 502:6, 568:21, 652:25
**quo** [1] - 524:13
**quorum** [1] - 639:25
**quotation** [2] - 586:1, 591:6
**quotations** [4] - 584:6, 596:1, 686:1
**quote** [6] - 507:4, 591:8, 596:2, 610:24, 675:10, 676:2

# R

races [2] - 619:14, 619:15
radar [1] - 663:22
radius [1] - 534:14
raincoat [1] - 669:21
raise [1] - 555:9
raised [3] - 599:24, 619:9, 625:15
random [5] - 641:7, 643:24, 643:25, 645:21, 645:23
randomly [7] - 570:18, 640:9, 640:10, 645:18, 646:1, 646:4
Randy [1] - 545:9
range [1] - 692:6
ratcheting [1] - 661:20
rates [1] - 642:15
rather [11] - 522:23, 523:1, 524:3, 524:12, 525:6, 526:10, 541:10, 605:18, 654:22, 657:20, 691:22
rational [1] - 693:3
reach [4] - 618:2, 683:9, 683:18, 693:3
reached [2] - 687:17, 693:4
reaching [1] - 555:25
read [40] - 506:14, 526:20, 529:1, 530:13, 530:17, 531:3, 531:4, 538:16, 541:17, 548:8, 570:17, 575:10, 575:18, 576:2, 576:15, 577:4, 577:12, 578:13, 584:15, 585:24, 586:20, 587:17, 591:3, 591:20, 595:23, 605:12, 605:16, 606:13, 606:17, 619:13, 638:2, 640:8, 646:20, 646:22, 648:14, 649:11, 667:3, 680:25, 685:24, 689:2
readiness [1] - 603:10
reading [2] - 558:1, 625:20
reads [3] - 622:12, 628:23, 663:23
ready [9] - 517:12,

518:9, 518:14, 573:4, 573:20, 618:23, 665:18, 665:25
real [9] - 531:4, 536:14, 558:6, 559:19, 561:18, 562:7, 624:10, 652:9, 653:8
realistically [1] - 649:25
reality [5] - 594:6, 600:14, 647:16, 657:16, 657:23
realization [1] - 654:7
realize [5] - 590:1, 601:8, 608:6, 630:13, 639:22
realized [1] - 678:25
really [28] - 504:24, 558:16, 571:14, 578:19, 606:8, 611:13, 614:18, 619:8, 619:25, 620:19, 620:24, 624:10, 625:18, 635:25, 636:12, 642:18, 648:20, 652:14, 661:23, 663:11, 664:14, 667:21, 669:19, 674:24, 682:21, 684:15
reason [17] - 507:11, 523:12, 538:10, 544:10, 566:7, 571:11, 584:6, 590:24, 591:21, 595:13, 605:17, 611:12, 629:5, 637:23, 638:25, 654:16, 672:23
reasonable [48] - 609:23, 613:25, 614:2, 614:12, 615:3, 616:25, 617:13, 624:1, 624:4, 624:16, 637:17, 637:19, 637:21, 637:22, 638:12, 663:4, 663:8, 664:3, 665:15, 668:1, 672:5, 672:8, 672:14, 672:19, 672:22, 672:23, 672:25, 673:8, 673:10, 676:15, 676:19, 677:7, 677:11, 678:5,

678:12, 678:15, 681:4, 681:14, 682:16, 683:8, 683:22, 687:18, 688:9, 688:16, 688:23
reasonably [3] - 617:14, 674:15, 681:5
reasoning [2] - 562:5, 639:15
reasons [2] - 650:19, 680:18
rebuttal [5] - 602:24, 604:6, 619:6, 619:8, 659:23
receipt [2] - 508:17, 540:5
receive [1] - 528:17
received [15] - 525:17, 526:5, 531:20, 581:12, 582:19, 623:19, 623:21, 624:10, 628:18, 629:18, 635:1, 635:2, 663:15, 680:12, 682:10
receiving [4] - 594:19, 631:7, 634:23, 635:5
recent [1] - 504:8
recently [1] - 547:13
recess [6] - 573:9, 573:18, 603:13, 616:3, 665:22, 666:9
Recess [1] - 687:23
recipient [7] - 624:4, 629:5, 629:15, 631:22, 676:19, 677:11, 678:13
recipients [1] - 620:1
reciting [1] - 641:19
recognize [3] - 508:23, 578:2, 594:20
recognized [1] - 523:5
recollection [1] - 538:13
recommendation [1] - 642:8
recommended [1] - 559:13
recommending [1] - 582:14
reconvened [5] - 573:19, 616:4, 666:10, 685:21, 687:24
record [23] - 513:18, 513:21, 513:22, 519:7, 529:1,

530:14, 531:18, 536:25, 538:16, 548:8, 550:10, 570:17, 572:7, 640:8, 645:3, 645:10, 646:22, 647:3, 647:8, 648:15, 649:9, 649:10, 650:8
recruit [1] - 643:22
recusal [2] - 507:17, 596:24
recuse [5] - 650:1, 650:14, 650:16
recused [4] - 550:4, 596:18, 596:21, 649:20
redacted [1] - 682:22
redirect [3] - 594:12, 599:21, 600:3
REDIRECT [1] - 600:4
redress [2] - 523:10, 531:25, 541:24, 564:24, 565:16, 565:24, 568:9, 583:22, 584:3, 627:20, 647:18, 655:6
refer [1] - 522:9
reference [13] - 527:25, 532:9, 545:11, 545:22, 555:18, 556:8, 556:13, 569:11, 569:13, 571:2, 591:1, 653:16, 658:15
referenced [9] - 534:5, 540:10, 585:4, 588:10, 592:15, 592:18, 592:21, 596:14, 646:11
references [1] - 522:22, 545:2, 580:11, 596:7, 596:10, 623:18, 663:24
referencing [4] - 552:20, 554:20, 568:6, 589:2
referred [3] - 504:25, 533:14, 633:13
referring [12] - 505:4, 526:24, 527:20, 550:7, 568:15, 569:23, 582:15, 586:25, 600:8, 611:20, 633:19, 636:18
refers [2] - 538:25,

679:24
refresh [1] - 638:9
refuse [2] - 585:19, 647:18
refused [5] - 526:22, 543:25, 544:13, 546:2, 648:11
refuses [1] - 526:23
refusing [1] - 522:5
regain [1] - 654:4
regard [8] - 512:12, 528:2, 534:6, 551:13, 565:14, 601:3, 681:18, 682:6
regarding [2] - 634:10, 634:17
regardless [1] - 524:7
regulated [2] - 586:2, 627:3
reiterate [1] - 642:25
reject [1] - 642:10
rejected [1] - 532:15
relate [3] - 537:11, 584:15, 629:13
related [23] - 522:21, 529:2, 529:21, 536:20, 540:12, 550:24, 553:13, 557:2, 558:24, 562:17, 564:11, 568:19, 571:20, 572:2, 584:18, 584:19, 586:7, 595:16, 600:19, 601:23, 627:11, 646:6, 659:11
relates [5] - 538:23, 632:14, 632:16, 633:2, 677:21
relating [3] - 591:14, 598:8, 602:7
relation [1] - 671:4
relative [7] - 517:3, 519:18, 557:3, 597:22, 598:5, 598:13, 630:3
relevance [4] - 521:4, 537:10, 537:18, 543:11
relevant [6] - 521:15, 543:10, 558:17, 616:20, 660:7, 660:10
relief [9] - 513:23, 520:23, 529:3, 529:10, 534:19, 541:18, 548:18, 600:15, 600:21
relies [1] - 576:20
religious [1] - 580:11

**relocated** [1] - 642:15
**rely** [2] - 538:12, 564:13
**relying** [1] - 658:13
**remains** [2] - 603:2, 672:9
**remake** [1] - 510:6
**remember** [26] - 503:16, 527:13, 573:7, 577:24, 584:12, 586:16, 587:25, 588:2, 588:5, 588:8, 588:11, 589:10, 590:23, 616:5, 620:16, 621:19, 624:24, 630:23, 631:1, 631:7, 631:16, 644:25, 646:20, 669:18, 669:21, 671:17
**remind** [5] - 616:16, 616:21, 616:23, 617:5, 683:6
**reminder** [1] - 681:3
**reminiscing** [1] - 557:3
**rendered** [1] - 671:5
**renew** [1] - 692:25
**renewal** [1] - 692:18
**renewed** [1] - 692:18
**renumbered** [1] - 685:3
**reopened** [1] - 643:4
**repeat** [10] - 509:7, 600:1, 615:19, 615:21, 616:11, 616:15, 617:4, 619:11, 659:5, 667:16
**repeatedly** [3] - 509:18, 525:1, 591:18
**repeating** [2] - 552:13, 553:6
**repeats** [1] - 657:18
**replaced** [1] - 626:2
**report** [10] - 525:10, 588:8, 642:8, 656:7, 657:14, 691:10, 691:13, 691:14, 691:16, 691:21
**reported** [1] - 647:23
**reports** [2] - 524:18, 527:7
**represent** [3] - 524:7, 534:16, 564:6
**representation** [5] - 524:4, 525:10, 527:6, 529:4, 553:24

**representative** [1] - 555:6
**represented** [4] - 534:7, 569:3, 572:3, 572:8
**representing** [10] - 528:15, 535:2, 535:13, 549:2, 551:3, 552:22, 557:7, 615:17, 642:13, 659:13
**reproduction** [1] - 559:11
**republic** [4] - 522:25, 532:22, 532:23, 568:15
**republican** [2] - 564:14, 564:17
**reputation** [2] - 654:4, 654:13
**request** [4] - 524:1, 546:6, 554:4, 639:21
**requested** [1] - 512:15
**require** [4] - 505:18, 537:17, 609:7, 617:20
**required** [18] - 510:18, 524:20, 526:21, 544:5, 549:6, 549:7, 570:6, 577:18, 577:21, 591:6, 600:18, 628:22, 629:23, 630:20, 671:12, 675:11, 679:3, 679:19
**requirement** [3] - 538:7, 541:22, 634:20
**requirements** [2] - 528:4, 576:17
**requires** [4] - 506:25, 552:3, 640:20, 672:6
**reread** [1] - 682:18
**research** [2] - 669:11, 685:12
**reservation** [1] - 644:14
**reserved** [2] - 644:12
**residence** [5] - 578:24, 579:1, 579:9, 621:25, 633:14
**resolution** [4] - 521:2, 521:3, 560:23, 561:21
**resolve** [3] - 547:5, 555:2, 571:11
**resolved** [3] - 520:6, 526:13, 558:21
**resort** [1] - 623:13

**resources** [1] - 556:9
**respect** [12] - 514:18, 574:4, 576:7, 576:18, 577:13, 580:14, 581:15, 583:19, 587:19, 621:3, 629:19, 692:1
**respectfully** [1] - 683:10
**respects** [2] - 671:9
**respond** [9] - 529:14, 543:15, 548:7, 583:14, 599:24, 601:2, 619:10, 642:25, 643:5
**responding** [1] - 579:13
**response** [5] - 525:21, 580:6, 601:10, 626:6, 648:7
**responsibility** [1] - 669:9
**responsible** [1] - 659:12
**rest** [2] - 518:18, 685:18
**rested** [1] - 518:19
**restored** [1] - 536:5
**restrictions** [1] - 553:2
**restroom** [2] - 665:24, 666:7
**rests** [1] - 602:24
**result** [8] - 522:6, 529:5, 530:6, 532:7, 534:16, 535:9, 544:11, 600:15, 660:4
**resulted** [1] - 520:18
**results** [1] - 545:15
**rethinking** [1] - 570:22
**retired** [2] - 563:13, 640:16
**retirement** [1] - 640:18
**return** [13] - 538:13, 539:3, 540:4, 541:6, 542:23, 542:24, 549:3, 638:15, 644:18, 673:8, 673:12, 677:21, 685:9
**returned** [2] - 592:7, 634:21
**returns** [1] - 539:11
**reveal** [2] - 682:8, 684:11
**Revenue** [2] - 540:21, 572:6
**review** [8] - 542:1, 542:6, 549:19, 563:25, 620:15,

622:25, 650:8, 684:8
**reviewed** [6] - 528:17, 542:5, 618:13, 622:2, 622:3, 622:25
**reviewing** [3] - 518:3, 559:3, 561:15
**rewards** [1] - 541:8
**rhetoric** [5] - 532:14, 561:12, 562:5, 601:6, 661:20
**rhetorical** [3] - 532:17, 559:22, 599:6
**Ridge** [3] - 591:5, 630:19, 675:10
**rights** [13] - 520:13, 527:24, 528:3, 528:10, 540:13, 544:2, 550:16, 654:11, 654:12, 655:7, 655:19, 659:2, 659:3
**rings** [1] - 619:20
**riots** [4] - 585:3, 585:9, 585:12, 657:13
**rise** [7] - 573:6, 573:17, 616:2, 665:21, 685:19, 687:22, 691:7
**risk** [1] - 566:25
**road** [2] - 535:18, 608:5
**role** [8] - 616:15, 628:8, 668:10, 668:11, 668:18, 668:22, 668:23, 668:24
**room** [14] - 526:7, 566:23, 567:15, 652:9, 667:24, 669:11, 669:25, 682:25, 683:5, 683:23, 684:4, 685:6, 685:18, 689:7
**rose** [2] - 660:25, 661:1
**row** [2] - 564:4, 643:23, 655:18
**royalty** [2] - 534:19, 534:21
**rubber** [1] - 570:2
**Ruby** [3] - 591:5, 630:19, 675:10
**Rudnick** [1] - 534:18
**ruining** [1] - 561:19
**rule** [20] - 520:2, 522:24, 530:1, 544:4, 552:1, 562:14, 570:16, 576:11, 584:11,

585:19, 601:15, 636:14, 636:24, 636:25, 640:5, 640:6, 640:8, 644:24, 648:25, 661:3
**Rule** [19] - 529:2, 545:21, 551:22, 552:13, 552:17, 560:8, 576:6, 577:16, 577:18, 577:21, 577:22, 621:1, 621:2, 648:15, 653:17, 658:2
**ruled** [4] - 509:8, 512:13, 519:22
**rules** [37] - 510:6, 510:10, 528:4, 529:4, 532:6, 532:25, 539:15, 550:15, 560:9, 563:14, 563:15, 563:16, 563:19, 563:21, 563:23, 563:24, 563:25, 572:9, 576:20, 576:21, 576:22, 576:25, 593:22, 597:22, 598:5, 617:24, 621:9, 638:4, 643:15, 643:17, 644:21, 648:21, 651:2, 651:5, 667:15, 667:16, 680:1
**Rules** [1] - 576:24
**ruling** [7] - 506:24, 511:6, 524:9, 542:13, 560:7, 583:18, 644:16
**rulings** [9] - 519:24, 519:25, 554:17, 574:13, 591:13, 597:7, 642:7, 660:16, 670:6
**run** [1] - 533:2
**Runk** [5] - 557:8, 558:5, 558:20, 558:22, 644:8
**running** [1] - 566:25
**ruse** [9] - 521:25, 522:2, 536:6, 560:16, 560:21, 651:10, 651:20, 651:23
**rushed** [1] - 573:1

# S

**sake** [1] - 509:24
**sale** [3] - 535:10, 535:14
**sample** [1] - 503:7
**Sara** [1] - 558:20
**Satan** [2] - 582:14, 626:4
**Satanopher** [6] - 581:23, 582:12, 582:23, 583:10, 584:17, 627:19
**satisfied** [1] - 672:7
**satisfy** [5] - 628:9, 628:22, 632:4, 632:11, 632:12
**save** [3] - 601:7, 641:24, 643:1
**saw** [3] - 546:15, 571:25, 615:21
**scenario** [4] - 524:11, 551:3, 551:13, 564:20
**scene** [1] - 647:17
**schedule** [1] - 603:4
**scientific** [1] - 680:7
**Scott** [1] - 515:1
**screen** [2] - 575:1, 666:12
**scroll** [2] - 611:10, 613:13
**scrutinizing** [1] - 679:8
**scrutiny** [1] - 584:20
**se** [15] - 527:1, 559:18, 562:18, 563:8, 579:14, 615:11, 616:17, 616:18, 646:5, 651:2, 651:4, 654:17, 654:18, 658:11, 670:13
**seat** [1] - 546:18
**seated** [1] - 518:17
**second** [26] - 503:6, 505:8, 517:25, 518:10, 538:8, 563:7, 563:12, 586:8, 588:1, 588:3, 591:6, 601:24, 607:24, 609:17, 610:4, 623:24, 630:20, 631:9, 655:25, 659:25, 668:17, 675:11, 676:18, 677:10, 677:16, 692:15
**secondarily** [1] - 548:15

**secondly** [1] - 506:25
**secret** [1] - 684:23
**Secretary** [1] - 658:18
**Section** [10] - 564:16, 654:12, 674:8, 675:13, 676:5, 676:10, 677:4, 688:8, 688:14, 688:21
**securities** [2] - 535:7, 535:20
**security** [1] - 603:9
**seditious** [1] - 658:17
**see** [46] - 503:5, 503:17, 504:8, 506:3, 513:15, 516:13, 518:22, 520:1, 527:1, 527:14, 531:18, 540:25, 542:15, 544:18, 545:12, 559:10, 568:3, 580:3, 587:4, 587:18, 590:16, 595:8, 606:24, 608:16, 609:11, 611:24, 626:19, 627:16, 627:25, 628:2, 629:14, 630:7, 631:18, 633:15, 640:21, 647:2, 648:8, 653:18, 661:17, 664:3, 664:5, 665:6, 673:14, 674:19, 683:15, 686:17
**seeing** [1] - 513:19
**seek** [1] - 692:8
**seeking** [4] - 510:20, 529:9, 542:5, 640:13
**seem** [1] - 547:20
**sees** [1] - 663:23
**selection** [1] - 615:14
**self** [14] - 508:25, 509:3, 509:11, 510:2, 510:4, 510:16, 510:17, 510:24, 510:25, 511:1, 516:2, 524:4, 677:8
**self-representation** [2] - 524:4, 529:4
**sell** [2] - 535:3, 653:22
**Sellers** [1] - 569:13
**selling** [2] - 533:12, 535:11
**send** [10] - 540:25, 575:11, 594:25, 595:7, 621:4, 621:6, 629:1, 633:25,

662:19, 676:17
**sending** [10] - 511:10, 546:25, 548:13, 561:25, 567:10, 567:12, 567:13, 595:13, 631:4, 653:20
**sends** [4] - 661:21, 662:8, 662:12
**senior** [4] - 554:2, 564:4, 639:17, 650:18
**sense** [9] - 604:2, 614:3, 640:15, 645:25, 646:6, 663:24, 670:9, 670:21, 672:24
**sent** [32] - 503:3, 505:3, 506:14, 532:15, 532:16, 555:16, 567:5, 568:11, 574:16, 576:5, 576:10, 577:8, 577:15, 577:16, 578:10, 582:13, 588:23, 589:13, 589:15, 589:19, 594:23, 595:3, 620:22, 628:15, 629:9, 629:10, 629:12, 632:17, 647:24, 662:17, 674:1, 677:8
**sentence** [12] - 606:22, 607:17, 609:20, 610:7, 610:25, 611:22, 612:6, 674:12, 691:10, 691:11, 691:12, 691:21
**sentences** [4] - 575:9, 664:16, 664:25, 665:2
**sentencing** [5] - 691:9, 691:23, 692:1, 692:2
**separate** [5] - 610:25, 658:24, 677:21, 677:25, 684:16
**separated** [4] - 609:15, 609:17, 610:11, 612:1
**separately** [6] - 540:8, 610:1, 617:17, 617:19, 677:18, 677:20
**September** [2] - 521:7, 544:12
**serious** [7] - 599:13, 624:21, 635:25,

636:12, 663:6, 663:9, 678:7
**seriously** [3] - 593:9, 599:5, 599:14
**serve** [6] - 527:21, 530:1, 530:4, 548:14, 575:22, 646:11
**served** [19] - 515:9, 528:23, 531:10, 531:17, 531:21, 538:14, 539:21, 539:22, 543:13, 549:1, 549:3, 549:16, 551:17, 574:6, 577:7, 593:15, 641:8
**Service** [4] - 531:11, 572:6, 624:22, 628:16
**service** [58] - 515:2, 515:7, 515:13, 526:3, 527:18, 529:15, 529:16, 529:22, 530:5, 530:6, 530:9, 531:8, 539:15, 541:12, 541:16, 549:3, 549:19, 550:11, 551:6, 551:16, 553:23, 556:9, 574:8, 574:14, 575:4, 575:12, 575:21, 575:23, 576:6, 576:17, 576:20, 576:22, 577:1, 577:6, 577:13, 577:14, 591:14, 601:4, 601:15, 601:18, 628:18, 641:13, 646:10, 646:21, 647:8, 647:19, 648:10, 648:11, 648:23, 649:12, 656:12, 660:3, 674:2, 674:3, 693:7
**serving** [1] - 647:10
**set** [10] - 523:19, 537:21, 541:7, 546:21, 565:13, 598:18, 606:10, 612:17, 662:1, 691:12
**seventh** [1] - 685:7
**several** [1] - 680:22
**sheet** [5] - 503:7, 517:10, 528:10, 682:21, 684:6
**sheets** [1] - 596:18

**shock** [2] - 599:6, 656:19
**shook** [1] - 655:11
**shoot** [14] - 556:20, 591:7, 595:25, 596:23, 603:7, 630:20, 630:23, 631:16, 631:17, 631:19, 653:12, 665:5, 675:12, 676:3
**shooting** [10] - 547:2, 547:10, 556:24, 591:11, 596:7, 596:15, 635:15, 636:22, 636:23
**short** [2] - 528:4, 645:8
**shortly** [3] - 524:16, 532:11, 563:12
**shot** [9] - 545:5, 545:16, 578:14, 590:19, 621:16, 649:23, 653:13, 657:23, 661:9
**shoulders** [1] - 655:9
**show** [11] - 517:5, 548:13, 574:13, 574:16, 622:17, 625:19, 628:22, 633:21, 634:24, 637:12, 687:1
**showed** [10] - 535:25, 574:5, 588:23, 589:7, 590:6, 596:5, 627:23, 634:25, 636:21, 653:2
**shown** [1] - 589:2
**shows** [3] - 593:19, 626:17, 634:24
**shut** [9] - 533:3, 591:7, 591:11, 621:16, 623:4, 630:21, 630:24, 650:25, 675:12
**side** [5] - 552:7, 553:11, 557:16, 566:19, 687:21
**sides** [1] - 613:23
**sight** [1] - 658:21
**sign** [5] - 559:5, 646:22, 682:21, 682:23, 684:18, 686:25
**signature** [2] - 524:20, 526:7
**signed** [6] - 526:6, 530:7, 541:16, 647:8, 656:12, 688:25
**significant** [2] -

549:13, 558:5
**significantly** [1] -
525:5
**signs** [1] - 515:12
**silent** [1] - 654:22
**similar** [4] - 543:3,
585:17, 662:9
**similarly** [1] - 679:14
**simple** [21] - 519:12,
520:10, 528:7,
531:24, 532:8,
532:23, 536:6,
548:4, 548:8, 551:3,
551:18, 555:23,
564:20, 600:14,
601:9, 619:23,
643:2, 647:16,
648:15, 648:16,
657:16
**simply** [25] - 508:14,
511:3, 520:10,
522:8, 524:1, 526:7,
530:3, 532:19,
538:20, 556:2,
556:8, 559:5,
560:22, 567:19,
585:7, 586:11,
594:6, 598:21,
601:8, 601:9, 602:5,
602:12, 653:21,
656:7, 659:13
**sincere** [1] - 639:10
**single** [2] - 570:21,
639:17
**Sirica** [1] - 570:15
**sister** [1] - 569:10
**sit** [3] - 600:24,
640:18, 655:5
**site** [1] - 523:19
**sitting** [2] - 549:24,
560:17
**situation** [15] - 524:5,
525:13, 536:7,
537:23, 539:24,
545:15, 550:9,
550:15, 550:21,
565:5, 569:14,
569:25, 624:23,
644:4, 644:9
**situations** [1] - 692:3
**six** [5] - 526:17,
534:20, 539:8,
558:23, 624:10
**skin** [2] - 624:13,
624:15
**skulls** [5] - 586:4,
586:21, 586:22,
627:5, 665:1
**slate** [1] - 672:1
**small** [2] - 533:21,

610:8
**Smith** [2] - 508:25,
570:15
**sniper** [9] - 545:5,
545:16, 545:18,
545:21, 591:6,
593:20, 630:20,
657:24, 675:11
**snippets** [1] - 555:23
**society** [1] - 522:24
**soft** [1] - 579:19
**sole** [1] - 680:23
**solely** [1] - 669:12
**someone** [34] -
509:19, 529:2,
529:19, 531:15,
532:2, 536:14,
538:14, 542:25,
544:18, 546:5,
546:23, 547:6,
555:17, 555:25,
556:7, 556:24,
576:4, 590:19,
594:5, 600:24,
601:7, 602:12,
638:22, 641:23,
645:22, 649:23,
652:17, 652:24,
653:22, 656:17,
659:10, 680:5
**sometime** [1] - 593:4
**sometimes** [1] - 583:1
**somewhat** [3] -
523:21, 527:11,
653:19
**somewhere** [2] -
537:22, 643:7
**soon** [5] - 512:1,
512:2, 605:10,
639:3, 666:1
**sorry** [15] - 502:9,
503:6, 504:20,
557:15, 578:4,
578:6, 585:24,
605:6, 618:5,
619:15, 619:17,
633:15, 658:24,
689:9
**sort** [12] - 503:2,
522:22, 529:6,
538:1, 547:6,
548:17, 564:9,
571:20, 572:4,
583:15, 650:15,
673:1
**sought** [8] - 529:3,
541:18, 544:3,
546:1, 549:14,
641:2, 641:16,
642:24

**sound** [2] - 578:18,
680:19
**sounds** [2] - 604:16,
687:18
**sovereign** [1] - 568:12
**space** [10] - 608:17,
608:22, 609:15,
609:17, 610:24,
610:25, 611:2,
611:25, 612:1,
613:10
**spaced** [1] - 612:13
**spaces** [1] - 612:14
**speaking** [7] - 529:18,
546:20, 556:15,
564:10, 590:24,
638:21, 645:1
**special** [3] - 523:13,
562:12, 666:5
**Special** [3] - 521:21,
631:24, 675:7
**specialized** [1] - 680:7
**specially** [2] - 533:9,
533:13
**specific** [9] - 529:25,
539:7, 591:16,
608:7, 628:24,
631:11, 637:5,
637:6, 659:8
**specifically** [14] -
514:21, 514:25,
537:24, 547:3,
552:21, 554:23,
581:5, 622:11,
627:14, 638:23,
653:25, 654:24,
675:10, 676:2
**specifics** [1] - 653:24
**specifies** [1] - 509:1,
640:4
**speculation** [1] -
672:21
**speech** [3] - 567:6,
658:11, 658:24
**speed** [2] - 534:7,
549:11
**speedy** [4] - 510:10,
544:6, 586:6, 627:7
**spell** [1] - 583:2
**speller** [1] - 583:1
**spite** [2] - 662:7, 662:9
**spoken** [1] - 525:16
**spotted** [1] - 612:3
**squads** [1] - 665:5
**staccato** [1] - 555:21,
567:20, 599:7
**stamped** [1] - 570:2
**stand** [12] - 512:22,
516:24, 517:17,
518:23, 520:3,

546:12, 555:5,
567:2, 631:3,
637:24, 651:24,
660:19
**stand-in** [1] - 555:5
**standard** [3] - 614:11,
614:13, 614:25
**standby** [1] - 550:1
**standpoint** [3] -
541:11, 559:19,
567:3
**stands** [1] - 523:22
**stark** [1] - 532:17
**start** [10] - 573:8,
601:13, 603:10,
603:11, 606:8,
615:25, 619:4,
668:9, 668:10,
683:24
**started** [9] - 518:13,
526:12, 534:8,
591:14, 632:7,
632:9, 632:14,
639:13, 672:1
**starters** [1] - 667:14
**starting** [7] - 575:9,
575:19, 576:2,
576:13, 578:13,
692:1, 692:6
**state** [34] - 505:6,
505:10, 507:6,
509:1, 509:5,
512:11, 519:18,
523:24, 529:11,
529:12, 537:25,
538:23, 540:10,
540:11, 544:15,
561:9, 564:13,
564:16, 575:21,
575:23, 576:23,
586:3, 590:11,
611:1, 627:4,
633:23, 644:13,
649:1, 649:4, 654:1,
678:23, 679:13,
679:24, 680:10
**State** [5] - 519:7,
520:8, 534:17,
620:17, 658:18
**statement** [20] - 528:4,
531:6, 567:17,
568:18, 624:3,
647:8, 648:7, 655:5,
662:16, 663:3,
663:4, 663:6,
663:10, 676:18,
677:10, 678:3,
678:4, 678:6, 678:7,
679:11
**statements** [11] -

543:12, 550:8,
564:8, 598:25,
599:4, 635:22,
638:10, 641:13,
653:7, 660:19,
663:13
**states** [1] - 622:14
**States** [33] - 511:1,
521:22, 543:2,
549:2, 557:4, 568:4,
572:6, 575:14,
621:20, 622:2,
623:6, 624:21,
628:16, 628:25,
629:23, 674:5,
674:9, 675:9,
675:14, 676:1,
676:6, 676:14,
676:16, 676:25,
679:3, 679:16,
679:19, 681:8,
681:18, 682:5,
688:4, 688:14,
688:21
**status** [4] - 524:13,
525:13, 536:22,
650:18
**statute** [26] - 505:22,
507:6, 509:2, 509:5,
511:13, 512:4,
524:4, 524:7,
526:16, 528:12,
529:4, 537:23,
538:25, 539:1,
539:4, 539:10,
540:10, 540:12,
542:8, 543:23,
562:6, 600:20,
639:24, 639:25,
658:25
**statutes** [2] - 511:10,
638:4
**stay** [10] - 520:17,
520:20, 555:8,
569:6, 685:5,
687:11, 689:9,
691:4, 691:5, 693:6
**stays** [2] - 532:24,
672:2
**Steager** [1] - 543:2
**step** [5] - 503:6,
602:17, 641:23,
652:24, 659:19
**stepped** [1] - 642:12
**steps** [1] - 650:18
**stick** [1] - 524:13
**sticking** [1] - 511:6
**still** [13] - 507:20,
508:17, 528:15,
547:10, 553:5,

553:23, 555:2,
559:4, 563:5, 568:3,
573:7, 635:13,
691:17
**Stilt** [1] - 601:17
**stipulations** [2] -
507:20, 507:21
**stock** [3] - 533:22,
533:23, 542:14
**stockbrokers** [1] -
533:11
**stood** [4] - 529:24,
546:17, 619:19,
646:12
**stop** [6] - 510:20,
511:14, 516:3,
520:25, 553:7, 635:5
**stopped** [2] - 549:25,
558:22
**story** [1] - 566:19
**straight** [4] - 510:12,
622:1, 625:25,
662:24
**strategy** [1] - 557:18
**street** [1] - 585:3
**streets** [2] - 585:9,
585:13
**stress** [2] - 550:24,
571:20
**stress-related** [2] -
550:24, 571:20
**strick** [1] - 584:19
**strictly** [1] - 523:25
**strike** [1] - 652:3
**strongly** [1] - 564:22
**struck** [1] - 670:6
**structure** [3] - 516:6,
551:14, 654:8
**stuck** [1] - 508:22
**stuff** [9] - 518:14,
559:4, 619:3, 660:1,
660:15, 662:4,
663:25, 691:3, 691:5
**stupid** [3] - 590:1,
630:13, 665:8
**style** [3] - 586:5,
627:6, 636:23
**styles** [1] - 585:17
**subject** [10] - 537:12,
547:16, 547:23,
547:25, 548:2,
555:24, 561:8,
579:6, 583:25, 629:6
**subjective** [3] - 504:1,
508:9, 565:22
**submit** [3] - 572:18,
614:10, 624:15
**submits** [1] - 614:17
**submitted** [2] -
557:22, 653:9

**submitting** [2] -
602:10, 678:18
**substantive** [1] -
606:19
**substitute** [1] - 668:25
**success** [1] - 568:20
**successful** [1] -
568:24
**sue** [5] - 523:14,
523:20, 649:1,
649:4, 649:5
**sued** [4] - 535:19,
576:9, 576:16, 641:9
**suffered** [2] - 529:6,
535:24
**sufficiency** [1] - 601:5
**sufficient** [3] - 678:20,
680:17, 681:3
**suggest** [3] - 547:1,
556:23, 561:13
**suggested** [2] -
582:23, 626:7
**suggesting** [3] -
547:8, 566:21,
598:21
**suggestion** [2] -
554:19, 607:7
**suggests** [2] - 586:20,
602:2
**suing** [4] - 539:23,
548:18, 551:8, 644:9
**suit** [1] - 658:18
**sum** [5] - 506:15,
548:2, 577:6,
598:14, 628:13
**summing** [1] - 565:1
**summons** [9] -
528:17, 528:21,
528:23, 540:1,
576:5, 576:9, 601:5,
641:4
**super** [2] - 532:12,
585:10
**superseding** [17] -
504:17, 585:11,
608:10, 608:11,
608:14, 623:17,
629:6, 635:19,
667:3, 673:15,
673:16, 673:22,
674:11, 675:1,
675:18, 675:19,
681:6
**supplement** [1] -
615:1
**supplies** [1] - 614:11
**supplying** [1] - 614:24
**support** [4] - 621:10,
623:17, 632:19,
680:18

**supported** [1] - 621:2
**supposed** [11] -
557:25, 560:3,
609:25, 639:1,
668:25, 669:6,
669:7, 669:15,
669:16, 670:8,
692:21
**supposedly** [1] -
554:11
**supposition** [1] -
523:22
**Supreme** [16] - 511:1,
537:21, 541:1,
543:3, 543:5,
547:13, 554:6,
554:10, 600:25,
601:12, 602:11,
643:16, 644:15,
644:19, 644:21,
658:22
**surmise** [1] - 636:19
**surplusage** [1] - 505:1
**surprise** [2] - 550:12,
659:25
**surprised** [1] - 633:18
**surprising** [1] -
544:15
**surrounding** [3] -
533:21, 679:10,
679:16
**suspicion** [1] - 672:17
**sustain** [1] - 521:18
**swear** [1] - 684:20
**SWORN** [1] - 519:6
**sworn** [1] - 684:25
**sympathy** [1] - 669:15
**system** [11] - 511:9,
526:22, 540:24,
547:12, 554:18,
600:23, 654:17,
657:19, 659:16,
667:25, 668:23

**T**

**takings** [1] - 568:23
**talks** [1] - 515:3
**tampered** [1] - 526:14
**tangled** [1] - 660:16
**targeted** [5] - 629:22,
629:23, 629:24,
679:19, 679:20
**tax** [12] - 525:1,
533:22, 533:25,
534:2, 538:23,
539:11, 541:6,
541:20, 542:8,

542:18, 542:23,
542:24
**taxes** [3] - 534:10,
539:2, 558:7
**taxpayer** [1] - 539:1
**technical** [2] - 644:12,
680:6
**technically** [1] - 522:8
**tempo** [1] - 633:17
**Tennessee** [1] -
642:16
**Teresa** [1] - 613:14
**term** [4] - 534:21,
556:18, 673:16,
678:22
**terms** [11] - 510:4,
538:3, 544:17,
578:14, 584:24,
586:24, 602:7,
622:4, 622:6, 668:6,
670:17
**terrible** [1] - 653:7
**territory** [2] - 534:12,
534:13
**testified** [7] - 566:6,
595:8, 616:22,
661:12, 662:5,
670:23, 686:7
**testify** [17] - 514:4,
566:6, 567:10,
594:11, 645:1,
645:3, 645:5, 649:8,
649:17, 657:7,
671:16, 671:18,
671:19, 680:1,
680:2, 686:7
**testifying** [5] - 566:8,
631:7, 646:14,
670:5, 671:1
**testimony** [80] - 512:7,
513:14, 513:20,
515:22, 516:4,
518:23, 519:22,
527:17, 552:8,
554:3, 572:12,
574:5, 578:23,
583:20, 584:10,
586:14, 589:21,
597:6, 597:15,
597:21, 598:24,
610:17, 610:18,
611:22, 611:24,
611:25, 617:6,
620:4, 620:13,
620:18, 620:25,
621:11, 621:19,
621:20, 621:21,
622:16, 623:16,
624:17, 628:4,
628:10, 628:13,

628:20, 628:21,
629:2, 629:3, 629:4,
632:2, 632:3, 632:6,
632:11, 632:19,
633:7, 636:8,
636:13, 636:16,
637:25, 638:5,
638:13, 639:10,
645:11, 646:6,
647:3, 649:14,
651:8, 652:8, 657:2,
657:4, 661:14,
664:11, 670:7,
671:6, 671:10,
671:12, 671:15,
671:19, 671:20,
671:22, 680:14,
681:16, 682:3
**text** [1] - 655:3
**thanking** [1] - 691:1
**THE** [294] - 502:3,
502:9, 502:14,
502:18, 502:22,
503:5, 503:14,
503:25, 504:8,
504:12, 504:17,
504:20, 505:8,
505:12, 505:16,
505:23, 506:3,
506:8, 506:10,
506:17, 506:21,
506:23, 507:14,
507:22, 508:4,
508:7, 508:19,
509:7, 509:14,
509:23, 510:12,
510:21, 511:5,
511:8, 511:16,
511:20, 511:23,
512:1, 512:9,
512:13, 512:16,
512:21, 512:25,
513:4, 513:9,
513:12, 513:16,
513:21, 514:1,
514:3, 514:7,
514:10, 514:14,
514:16, 514:20,
514:23, 515:4,
515:10, 515:14,
515:18, 515:24,
516:7, 516:11,
516:17, 516:23,
517:2, 517:5, 517:8,
517:10, 517:16,
517:22, 517:25,
518:2, 518:7, 518:9,
518:13, 518:17,
518:22, 519:8,
519:10, 519:23,
520:5, 521:5, 521:7,

521:8, 521:12,
521:13, 521:14,
521:15, 521:19,
530:15, 530:21,
531:1, 531:4, 537:3,
537:5, 537:6, 537:7,
537:8, 537:9,
537:10, 537:14,
537:16, 537:19,
543:7, 543:11,
546:11, 546:18,
546:20, 551:20,
551:23, 551:24,
552:2, 552:3,
552:11, 552:12,
552:15, 552:16,
552:20, 552:24,
553:3, 553:5, 553:8,
558:10, 558:13,
558:14, 558:15,
558:19, 565:8,
565:9, 565:10,
565:13, 565:17,
565:20, 565:21,
565:22, 565:25,
566:2, 566:3, 566:4,
566:5, 566:7,
566:17, 566:21,
566:22, 566:24,
566:25, 567:3,
567:7, 567:11,
569:18, 569:20,
569:21, 569:23,
572:14, 572:17,
572:19, 572:24,
573:7, 573:10,
573:13, 573:15,
573:20, 594:13,
597:3, 599:20,
599:22, 599:23,
600:5, 600:9,
600:12, 601:20,
601:21, 601:22,
601:23, 602:16,
602:20, 602:23,
603:1, 603:14,
603:19, 603:22,
603:25, 604:2,
604:8, 604:12,
604:16, 604:21,
604:23, 605:1,
605:5, 605:8,
605:12, 605:15,
605:22, 605:24,
606:1, 606:5, 606:7,
606:19, 606:25,
607:8, 607:18,
607:23, 608:13,
608:20, 609:2,
609:5, 610:20,
610:22, 611:8,

611:10, 611:16,
611:20, 612:8,
612:11, 612:14,
612:18, 612:25,
613:4, 613:9,
613:12, 613:17,
613:20, 613:24,
614:5, 614:15,
615:2, 615:5, 615:9,
615:15, 615:18,
616:5, 616:8,
616:11, 616:14,
618:5, 618:7,
618:20, 618:22,
618:25, 619:2,
638:17, 644:25,
645:5, 645:9,
645:16, 646:17,
649:7, 649:13,
650:23, 651:8,
651:25, 657:2,
657:6, 659:23,
663:17, 663:20,
665:16, 665:23,
666:6, 666:11,
666:13, 666:18,
666:22, 667:6,
667:9, 667:12,
685:1, 685:9,
685:11, 685:23,
686:7, 686:10,
686:14, 686:16,
686:19, 686:23,
687:3, 687:20,
687:25, 688:2,
688:3, 689:1, 689:3,
689:4, 689:6,
689:11, 690:24,
691:9, 692:14,
692:20, 692:24,
693:2

theme [1] - 585:16
themes [1] - 615:22
themselves [2] -
620:13, 654:16
theory [2] - 509:10,
516:2
therefore [12] - 510:8,
532:5, 536:4,
540:12, 542:20,
543:13, 556:10,
639:24, 641:11,
648:6, 649:6, 670:17
thereon [1] - 674:3
they've [3] - 528:5,
540:2, 650:19
thick [2] - 624:13,
624:15
thinking [10] - 502:21,
519:19, 521:16,

535:16, 536:13,
544:23, 605:8,
625:20, 633:21,
647:20
thinks [5] - 504:5,
585:2, 614:17,
650:5, 650:6
Third [25] - 507:2,
507:17, 508:1,
508:16, 508:22,
508:25, 520:16,
524:6, 540:25,
563:16, 569:1,
577:24, 578:10,
578:22, 579:7,
580:15, 588:14,
601:12, 607:9,
616:25, 621:21,
621:23, 633:9,
640:12
third [8] - 525:22,
608:2, 609:3,
609:15, 610:10,
643:23, 676:21,
677:13
Thomas [7] - 673:24,
675:4, 675:21,
688:5, 688:10,
688:16, 688:23
thoughts [2] - 686:4,
687:13
threat [78] - 511:12,
511:17, 531:23,
547:4, 562:7, 565:2,
566:13, 567:9,
567:12, 571:1,
579:14, 579:17,
579:18, 580:3,
592:22, 592:24,
606:23, 607:4,
607:12, 608:3,
608:4, 608:7, 621:5,
622:7, 622:15,
624:4, 625:2,
626:12, 626:19,
626:21, 627:14,
629:25, 631:22,
633:4, 633:5, 635:3,
636:4, 636:5, 636:7,
636:9, 636:10,
637:8, 637:10,
638:21, 647:25,
650:16, 653:9,
657:15, 657:16,
659:5, 659:6,
660:25, 661:1,
662:19, 663:2,
674:6, 675:8,
675:25, 676:9,
676:19, 676:22,

676:23, 677:3,
677:11, 677:14,
677:15, 678:2,
678:4, 678:16,
679:17, 679:18,
679:21, 682:10,
688:12, 688:19
threaten [7] - 509:11,
523:9, 527:3,
555:17, 560:1,
566:20, 658:25
threatened [5] -
503:10, 531:11,
579:21, 629:24,
679:20
threatening [24] -
532:16, 536:9,
541:21, 545:14,
554:21, 557:12,
561:25, 566:1,
571:13, 571:17,
607:11, 623:2,
653:8, 653:10,
653:11, 655:23,
656:5, 657:9,
659:10, 662:5,
662:18, 676:11,
678:11, 688:6
threats [24] - 511:10,
511:24, 523:7,
532:14, 550:22,
561:10, 561:11,
580:1, 580:7, 593:9,
622:3, 622:18,
622:21, 623:13,
624:11, 627:15,
629:16, 631:8,
634:6, 634:8, 635:7,
637:14, 660:14,
662:21
three [20] - 512:19,
514:10, 534:14,
534:15, 573:25,
586:3, 586:4, 586:5,
594:8, 605:13,
605:23, 627:4,
627:5, 627:6,
638:11, 638:16,
654:10, 662:17,
669:5, 671:23
three-mail [1] - 534:14
three-mile [1] - 534:15
threw [1] - 526:15,
658:12, 658:22
throughout [2] -
619:21, 657:17
thrown [1] - 503:2
thrust [3] - 533:4,
534:1, 654:3
tied [1] - 571:21

timeframe [1] - 597:2
timeline [7] - 588:20,
632:24, 632:25,
633:9, 634:1,
637:12, 662:1
timely [3] - 524:22,
547:18, 558:21
timing [2] - 591:16,
606:11
Tire [4] - 551:8,
642:13, 642:20,
660:5
title [2] - 627:20,
627:21
Title [6] - 674:8,
675:13, 676:6,
688:8, 688:14,
688:21
titled [3] - 574:17,
657:1, 664:1
today [18] - 568:3,
617:10, 620:4,
621:22, 622:25,
623:23, 625:24,
626:16, 629:10,
631:3, 632:24,
634:13, 635:21,
660:22, 661:12,
664:11, 684:2,
687:16
together [3] - 545:1,
640:15, 656:23
tomorrow [1] - 687:16
took [14] - 531:15,
538:15, 561:13,
593:8, 620:19,
624:10, 624:24,
624:25, 625:22,
626:14, 631:3,
637:24, 653:22,
654:16
top [10] - 559:23,
571:21, 578:7,
585:24, 586:19,
626:9, 626:23,
627:24, 631:9, 664:9
topic [1] - 625:25
total [3] - 506:16,
542:21, 598:14
totally [3] - 525:6,
532:15, 644:6
touched [1] - 615:13
township [1] - 570:10
Township [1] - 568:23
Towson [2] - 534:11,
534:13
track [1] - 524:20
tracking [1] - 503:2
tradition [1] - 682:19
tragic [3] - 545:4,

594:5, 602:5
**trained** [2] - 533:13, 665:12
**transactions** [1] - 535:8
**transfer** [4] - 510:9, 547:23, 583:17, 639:21
**transferred** [7] - 547:17, 549:13, 552:23, 639:16, 641:2, 644:5, 660:2
**transferring** [3] - 546:8, 553:19, 564:3
**transfers** [2] - 552:25, 639:11
**transmission** [3] - 632:13, 678:20
**transmit** [4] - 608:15, 675:4, 675:22, 676:10
**transmitted** [1] - 632:8
**transmitting** [1] - 677:3
**travel** [1] - 632:9
**traveled** [2] - 532:10, 678:17
**travels** [1] - 678:19
**treat** [2] - 673:20, 685:13
**treated** [1] - 567:17
**trial** [15] - 518:25, 576:25, 616:6, 620:11, 622:18, 658:9, 667:14, 668:11, 668:14, 670:19, 672:1, 672:10, 672:11, 680:4, 692:19
**tribunal** [8] - 522:9, 547:11, 547:21, 548:1, 554:16, 602:8, 649:25, 659:21
**tried** [4] - 560:1, 562:8, 647:13, 648:22
**triggered** [2] - 550:20, 570:12
**troubling** [1] - 635:17
**true** [16] - 566:17, 606:23, 607:12, 619:21, 639:13, 647:12, 650:20, 653:11, 655:13, 663:2, 676:9, 676:19, 677:11, 678:2, 678:4, 682:10
**Trump** [1] - 569:10
**trustee** [2] - 562:24

**trusty** [1] - 684:21
**truth** [5] - 547:15, 549:21, 651:12, 652:2, 652:21
**truthful** [1] - 650:4
**truthfulness** [1] - 658:13
**try** [6] - 505:25, 515:25, 519:11, 519:13, 527:1, 648:20
**trying** [27] - 503:22, 504:25, 509:15, 523:9, 532:3, 535:3, 536:16, 536:17, 560:4, 560:19, 560:22, 564:7, 564:21, 565:13, 566:17, 567:3, 571:12, 571:24, 583:14, 594:11, 598:11, 606:7, 619:3, 651:12, 652:11, 652:23, 661:22
**turn** [8] - 532:17, 571:7, 576:12, 577:3, 577:10, 595:17, 601:9, 673:13
**turned** [2] - 562:19, 650:10
**turning** [1] - 535:15
**twice** [1] - 674:17
**two** [23] - 505:4, 516:11, 516:12, 524:14, 529:10, 539:9, 545:2, 554:5, 560:18, 570:20, 599:4, 600:5, 609:19, 634:15, 640:22, 655:25, 662:11, 665:23, 669:19, 669:21, 677:1, 687:7
**type** [2] - 620:20, 676:8
**types** [7] - 509:2, 529:11, 620:21, 622:21, 669:19, 678:3
**typical** [1] - 608:24
**typically** [1] - 618:10
**typo** [4] - 607:17, 609:14, 609:16, 610:23
**typographical** [1] - 612:4

# U

**U.S** [14] - 503:15, 507:16, 513:10, 515:8, 580:21, 581:13, 587:21, 588:8, 603:17, 618:9, 633:11, 641:20, 658:14, 688:8
**U.S.C** [10] - 510:8, 522:6, 526:20, 540:10, 584:19, 590:9, 600:19, 640:1, 676:9, 677:4
**ultimately** [13] - 520:18, 523:3, 545:9, 554:1, 584:11, 589:16, 618:2, 643:16, 644:6, 655:2, 682:22, 691:25, 692:9
**um-hum** [11] - 521:12, 581:25, 583:24, 584:2, 590:15, 590:17, 591:12, 596:11, 597:20, 597:24, 610:21
**unable** [2] - 612:22, 612:24
**unaccepted** [1] - 530:9
**unambiguous** [1] - 547:18
**unanimous** [8] - 547:16, 617:25, 641:18, 643:16, 669:3, 683:7, 683:9, 683:18
**unanimously** [3] - 688:9, 688:15, 688:22
**unauthorable** [1] - 643:18
**unaware** [2] - 540:6, 658:6
**unbeknownst** [1] - 535:20
**uncertain** [2] - 622:4, 622:6
**unconstitutional** [3] - 520:24, 521:2, 553:20
**under** [56] - 506:13, 510:16, 511:20, 515:12, 516:2, 517:17, 519:2, 522:3, 522:6,

522:24, 530:7, 532:4, 536:8, 538:1, 538:5, 540:9, 540:11, 541:19, 541:23, 544:20, 554:15, 556:21, 557:18, 564:23, 565:2, 565:23, 575:19, 575:21, 575:22, 578:14, 584:19, 585:20, 591:6, 593:20, 596:1, 600:18, 600:25, 601:2, 602:9, 630:20, 631:19, 644:14, 644:22, 646:22, 646:25, 647:8, 648:8, 651:16, 652:21, 655:3, 663:3, 667:25, 671:25, 675:11, 676:4, 678:5
**underneath** [1] - 686:25
**understood** [3] - 508:19, 614:24, 629:16
**underwriter** [1] - 533:17
**undisputed** [2] - 552:24, 628:20
**unending** [2] - 510:8, 510:9, 568:16
**unfair** [2] - 552:6, 553:20
**unfavorable** [1] - 621:12
**unfortunately** [2] - 571:1, 666:4
**Unified** [1] - 574:22
**unified** [3] - 539:21, 540:7, 644:10
**uniformity** [1] - 692:2
**union** [2] - 642:15, 642:16
**unique** [5] - 539:3, 539:24, 614:10, 654:8, 681:25
**uniqueness** [1] - 547:24
**United** [35] - 511:1, 521:21, 543:2, 549:2, 557:4, 568:4, 568:10, 572:6, 575:13, 585:4, 621:20, 622:2, 623:6, 624:21, 628:16, 628:25, 629:22, 674:5,

674:9, 675:9, 675:14, 676:1, 676:6, 676:14, 676:16, 676:24, 679:3, 679:16, 679:19, 681:7, 681:18, 682:5, 688:4, 688:14, 688:21
**unlawful** [2] - 510:19, 567:8
**unlawfully** [2] - 509:21, 509:22
**unless** [7] - 502:18, 507:9, 525:4, 528:12, 539:24, 672:2, 672:7
**unlike** [3] - 518:24, 551:5, 659:9
**unlimited** [1] - 556:9
**unpaid** [1] - 642:17
**unquote** [3] - 507:10, 675:13, 676:5
**unrelated** [1] - 644:6
**unsolicited** [1] - 561:4
**unsuccessful** [2] - 527:18, 550:11
**unsure** [1] - 591:16
**unusual** [3] - 539:2, 542:6, 551:13
**up** [100] - 504:13, 506:1, 508:2, 511:17, 512:22, 513:23, 514:7, 514:11, 514:20, 518:11, 519:4, 520:10, 520:18, 523:8, 525:11, 534:4, 534:6, 535:1, 535:10, 535:25, 537:21, 538:8, 541:7, 543:3, 543:25, 544:1, 545:14, 546:3, 546:8, 546:12, 546:17, 546:19, 547:6, 547:9, 548:2, 548:12, 550:2, 554:13, 558:20, 559:18, 561:3, 564:2, 564:3, 565:1, 571:22, 572:12, 574:25, 575:7, 575:17, 578:1, 581:21, 583:2, 585:2, 585:13, 589:9, 589:12, 591:7, 591:11, 594:6, 594:19, 597:16, 597:25,

600:6, 604:18, 611:10, 612:17, 613:15, 614:6, 615:12, 619:19, 621:16, 622:24, 626:8, 627:13, 629:8, 630:7, 630:21, 630:24, 630:25, 631:9, 634:5, 639:21, 643:9, 643:12, 652:10, 656:1, 656:4, 656:6, 656:19, 657:20, 659:2, 659:3, 661:20, 663:22, 664:8, 671:14, 675:12, 692:5
**updated** [1] - 517:3
**upset** [3] - 527:3, 532:1, 542:22
**uses** [1] - 627:1
**utilizing** [1] - 555:23

## V

**vaccinations** [1] - 521:1
**valid** [4] - 557:10, 558:4, 570:7, 659:21
**value** [4] - 533:24, 534:21, 552:4, 673:18
**variances** [1] - 692:8
**varies** [1] - 687:6
**various** [5] - 510:22, 548:24, 645:20, 654:4, 666:23
**vehicles** [1] - 625:4
**vendors** [1] - 642:17
**venue** [1] - 601:4
**verbal** [1] - 682:4
**verdict** [40] - 617:19, 617:24, 668:16, 669:3, 669:4, 671:5, 673:8, 673:12, 677:22, 681:12, 682:21, 684:14, 687:25, 688:2, 689:2, 689:14, 689:17, 689:20, 689:23, 690:1, 690:4, 690:7, 690:10, 690:13, 690:16, 690:19, 690:22, 693:4
**verdicts** [2] - 638:15, 683:6
**verified** [1] - 563:11

**version** [1] - 517:24
**versus** [11] - 509:1, 519:20, 543:2, 568:22, 569:13, 570:9, 575:13, 587:1, 601:17, 641:20, 688:5
**veteran** [1] - 624:7
**vexatious** [2] - 538:11, 543:13
**via** [3] - 632:13, 675:5, 675:23
**Vicki** [4] - 545:5, 594:7, 653:12, 657:23
**victim** [1] - 509:17
**victimized** [2] - 558:25, 597:11
**video** [1] - 561:3
**Vietnam** [1] - 565:4
**view** [7] - 506:19, 611:3, 624:4, 646:23, 676:19, 677:11, 686:10
**View** [2] - 522:16, 522:17
**viewed** [17] - 583:22, 607:4, 608:3, 617:8, 622:3, 622:7, 622:15, 622:18, 622:21, 633:5, 636:5, 636:10, 637:14, 662:18, 676:23, 677:15, 678:12
**viewing** [1] - 634:6
**views** [3] - 641:18, 669:7, 669:8
**violate** [4] - 510:8, 555:11, 593:22, 681:11
**violated** [2] - 538:7, 666:23
**violating** [2] - 528:9, 537:21
**violation** [14] - 526:19, 528:2, 554:15, 570:19, 577:16, 585:8, 674:8, 675:13, 676:5, 676:9, 677:4, 688:7, 688:14, 688:21
**violations** [2] - 590:8, 630:15
**violence** [17] - 532:20, 545:14, 547:5, 586:16, 587:3, 587:4, 587:5, 587:7, 587:8, 587:16, 620:5, 636:15,

636:17, 636:21, 637:3, 637:5, 660:22
**violent** [4] - 527:12, 587:11, 587:18, 661:8
**violently** [2] - 532:22, 538:11
**Virgin** [1] - 509:1
**Virginia** [4] - 507:17, 543:3, 543:5, 543:8
**virtually** [1] - 601:14
**virtue** [1] - 683:3
**visit** [2] - 524:24, 655:25
**visited** [2] - 522:16, 652:9
**voices** [1] - 625:15
**void** [1] - 535:14
**voluminous** [1] - 548:3
**vote** [3] - 683:17, 683:18, 684:11
**votes** [1] - 683:4
**vulgar** [2] - 555:19, 656:18
**vulgarness** [1] - 562:4

## W

**W-2** [1] - 535:22
**wait** [6] - 516:11, 603:11, 604:17, 605:16, 605:18, 606:16
**waiting** [3] - 524:25, 605:17, 628:2
**waive** [2] - 601:3, 601:4
**waived** [2] - 548:11, 601:11
**waiver** [1] - 544:2
**waives** [1] - 602:9
**wake** [3] - 594:6, 656:19, 657:20
**wake-up** [2] - 656:19, 657:20
**walk** [2] - 517:16, 605:14
**wants** [7] - 503:25, 626:13, 628:3, 661:18, 662:22, 664:24
**War** [1] - 565:4
**war** [1] - 578:14
**warn** [2] - 511:13, 511:14
**warned** [1] - 662:10
**warning** [9] - 511:17, 515:25, 543:20,

622:19, 633:7, 634:5, 655:3, 655:12
**warnings** [4] - 637:13, 651:6, 655:21
**Washington** [5] - 525:8, 526:11, 539:20, 572:9, 656:11
**waste** [2] - 552:9, 659:9
**watch** [1] - 653:2
**Watts** [8] - 565:3, 565:16, 566:8, 566:13, 567:2, 567:4, 658:19
**ways** [1] - 637:11
**wealthy** [1] - 558:7
**wear** [1] - 520:25
**Weaver** [6] - 545:5, 545:9, 545:16, 594:7, 653:12, 657:23
**website** [1] - 507:3
**weigh** [3] - 552:4, 671:19, 671:20
**weighing** [2] - 670:9, 672:25
**weight** [7] - 519:3, 617:9, 670:12, 671:14, 680:13, 682:13, 683:4
**well-regulated** [2] - 586:2, 627:3
**Welsh** [8] - 531:9, 531:13, 531:21, 538:6, 544:12, 546:1, 576:9, 647:16
**West** [4] - 507:17, 543:3, 543:5, 543:7
**Western** [5] - 520:6, 549:14, 600:25, 675:9, 676:2
**whatnot** [2] - 675:17, 683:4
**whatsoever** [2] - 549:8, 648:18
**Wheel** [4] - 551:8, 642:13, 642:20, 660:5
**whereas** [6] - 562:15, 646:25, 650:21, 652:8, 652:22, 654:17
**wherein** [2] - 663:3, 678:5
**whole** [6] - 512:10, 533:4, 534:1, 536:19, 584:9, 660:1
**widespread** [1] - 556:12

**Wikipedia** [1] - 555:23
**willful** [2] - 505:17, 506:23
**willfully** [22] - 503:9, 503:13, 503:18, 503:19, 503:21, 504:17, 504:23, 505:3, 506:14, 507:3, 507:5, 507:6, 507:7, 507:8, 526:23, 608:15, 666:15, 666:25, 673:25, 674:17, 675:4, 675:22
**willfulness** [9] - 502:4, 502:19, 502:20, 502:23, 505:14, 505:19, 506:6, 506:11, 507:11
**William** [3] - 531:21, 658:10, 659:1
**willing** [7] - 506:1, 506:3, 506:18, 529:7, 556:19, 572:1, 652:20
**willingly** [2] - 503:2, 503:3
**Wilson** [1] - 569:13
**win** [2] - 644:2, 659:16
**wind** [2] - 546:8, 547:9
**window** [2] - 510:11, 545:6
**winds** [3] - 545:13, 547:6, 585:2
**Windsor** [1] - 644:13
**wins** [1] - 571:3
**wise** [1] - 594:2
**wish** [4] - 517:13, 518:19, 531:3, 623:3
**wishes** [1] - 619:10
**witness** [27] - 521:23, 529:1, 538:9, 538:16, 539:14, 549:18, 549:20, 594:9, 611:23, 611:25, 612:2, 617:6, 620:16, 623:15, 623:24, 637:24, 652:1, 661:19, 662:24, 670:22, 671:2, 671:3, 671:4, 671:20, 680:9, 680:15, 680:17
**WITNESS** [45] - 519:6, 519:8, 519:10, 520:5, 521:7, 521:12, 521:14, 521:19, 531:4, 537:5, 537:7, 537:9,

537:14, 537:19, 543:11, 546:20, 551:23, 552:2, 552:11, 552:15, 552:20, 553:3, 553:8, 558:14, 558:19, 565:9, 565:13, 565:20, 565:22, 566:2, 566:4, 566:7, 566:21, 566:24, 567:3, 567:11, 569:20, 569:23, 572:17, 599:22, 600:5, 600:9, 600:12, 601:21, 601:23

**witness's** [7] - 617:3, 669:23, 670:24, 670:25, 671:6, 671:12, 671:15

**witnesses** [11] - 583:21, 610:24, 611:6, 620:12, 620:13, 628:5, 631:23, 637:24, 671:11, 680:2, 680:5

**Wolf** [2] - 519:20, 520:8

**woman** [2] - 531:10, 531:12

**women** [2] - 687:7, 687:11

**won** [2] - 643:3

**wonder** [1] - 629:18

**wondering** [1] - 689:12

**Word** [1] - 612:25

**word** [24] - 505:17, 515:24, 575:9, 576:2, 576:13, 581:23, 582:11, 585:22, 587:3, 587:4, 587:16, 587:18, 612:21, 613:19, 613:22, 666:14, 667:2, 667:4, 670:14, 674:18, 685:25, 686:2

**wording** [1] - 663:12

**words** [25] - 504:1, 505:4, 510:1, 515:5, 547:12, 555:24, 555:25, 556:14, 556:18, 587:10, 587:13, 598:9, 605:13, 619:22, 619:25, 620:2, 622:5, 623:11,

636:11, 655:1, 661:7, 663:8, 679:15

**workers** [1] - 642:16

**works** [2] - 642:4, 691:10

**world** [3] - 655:9, 665:10, 665:11

**worried** [4] - 606:25, 607:1, 608:1, 663:20

**worry** [1] - 603:9

**worse** [1] - 560:24

**worth** [1] - 562:20

**wound** [7] - 534:4, 535:1, 535:10, 558:20, 564:3, 643:9, 643:12

**Wow** [1] - 663:23

**wow** [1] - 663:25

**wrap** [2] - 559:18, 572:12

**wrapped** [1] - 544:1

**write** [4] - 684:5, 684:10, 686:23, 686:24

**writing** [4] - 535:6, 618:15, 618:17, 633:13

**writings** [2] - 636:20, 638:5

**written** [7] - 528:3, 536:25, 547:14, 547:16, 550:20, 564:15, 570:7

**wrongs** [1] - 570:5

**wrote** [9] - 515:4, 515:10, 515:16, 530:13, 582:3, 595:21, 641:18, 644:24, 661:7

**WRTL's** [1] - 584:19

# Y

**year** [4] - 526:25, 582:13, 585:12, 657:12

**years** [7] - 545:17, 557:1, 560:13, 571:11, 624:6, 624:7, 625:2

**yesterday** [7] - 503:16, 522:15, 526:20, 549:17, 561:7, 620:8, 628:7

**York** [1] - 569:7

**YOUNG** [10] - 503:6, 504:14, 504:16, 512:14, 512:17, 513:17, 514:2,

516:5, 604:20, 667:8

**Young** [5] - 504:12, 516:8, 516:22, 604:18, 667:6

**yourself** [17] - 517:14, 529:17, 529:18, 548:21, 549:23, 550:9, 553:6, 578:23, 580:21, 638:9, 643:2, 646:12, 646:24, 648:4, 652:17, 683:21, 685:13